FILED

NOV 21 2016

THEON OWENS V-60905 FB4-207
TRUE NAME. C.D.C.R. NO.   HOUSING.
California State Prison - Sacramento
PRISON.
100 Prison Road
ADDRESS.
Folsom, C.A. 95630
CITY, STATE, ZIP.

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

## THEON OWENS
PLAINTIFF.

### VS.

CIVIL ACTION NO: 2:16 - CV - 2750 - KJN (PC)

Correctional officers, **JOSEPH DEFAZIO**, JACOB BURKE, MATTHEW BRADY, JOHN LEBECK, DAVID MATTHEWS, PETYO RASHEV, PAUL BETTENCOURT, STEVE BYERS, DAVID MARTINEZ, CHRIS DRAKE, ROGER GUFFEE, JASON MURILLO, Sergeant's, LANDON MERCADO, KENNETH BLESSING, RYAN COUCH, Lieutenant, JASON SCHULTZ, CORY MARTINCEK, Associate Warden, LAURA ELDRIDGE, Registered Nurse, ALICE OKOROIKE, and Psychiatric Technician, CLOVER STAGGS - BOATRIGHT, individually and in their official capacities.
DEFENDANTS.

## PLAINTIFF'S COMPLAINT

PLAINTIFF'S COMPLAINT FILED UNDER THE CIVIL RIGHTS ACT. 42 U.S.C. SECTION 1983. BY A STATE PRISONER.

COVER PAGE

# TABLE OF CONTENTS:

PAGE(S)

TABLE OF CONTENTS..................................................i

TABLE OF ABBREVIATIONS............................................iii

TABLE OF AUTHORITIES..............................................v

JURY TRIAL DEMANDED COMPLAINT
FOR MONEY DAMAGES................................................1

JURISDICTION AND VENUE...........................................1

SUMMARY OF THE CASE.............................................2

PARTIES........................................................3

PREVIOUS LAWSUITS BY PLAINTIFF..................................7

STATEMENT OF FACTS.............................................8

EXHAUSTION OF ADMINISTRATIVE
REMEDIES.....................................................38-A

CAUSES OF ACTION.............................................38-A

COUNT ONE: UNNECESSARY EXCESSIVE
FORCE IN VIOLATION OF THE EIGHTH
AMENDMENT TO THE CONSTITUTION................................30-A

COUNT TWO: BREACH OF DUTY TO PROTECT
IN VIOLATION OF THE EIGHTH AMENDMENT
TO THE CONSTITUTION..........................................31

COUNT THREE: INTERFERENCE WITH PRESCRIBED
TREATMENT IN VIOLATION OF THE EIGHTH
AMENDMENT TO THE CONSTITUTION................................32

COUNT FOUR: RETALIATORY TREATMENT IN
VIOLATION OF THE FIRST AMENDMENT TO
THE CONSTITUTION....................................................... 32

COUNT FIVE: FALSIFICATION OF MEDICAL
AND DEPARTMENT RECORDS IN VIOLATION
OF THE EIGHTH AMENDMENT TO THE
CONSTITUTION......................................................... 33

COUNT SIX: DENIAL OF BASIC HUMAN NEEDS
VIOLATION OF THE EIGHTH AMENDMENT TO
THE CONSTITUTION.................................................... 33

COUNT SEVEN: DENIAL OF DUE PROCESS IN
VIOLATION OF THE FOURTEENTH AMENDMENT
TO THE CONSTITUTION ............................................... 34

COUNT EIGHT: DELAY IN MEDICL TREATMENT
IN VIOLATION OF THE EIGHTH AMENDMENT TO
THE CONSTITUTION.................................................. 34

PRAYER FOR RELIEF.................................................. 35

VERIFICATION ......................................................... 38

# TABLE OF ABBREVIATIONS:

The following abbreviations appear throughout this brief and have the following significations attached to them in this case:

PAGE(S)

## A. FACILITIES: AND OTHER PLACES:

(A-Fac) A-Facility ..................................... 4
(A-TTA) A-Facility Triage And Treatment Area. ......... 16
(C.D.C.R.) California Department Of Corrections And Rehabilitation... 2
(C.S.P.-SAC) California State Prison-Sacramento. ........ 2
(G.P.) General Population. ............................ 28
(OHU) Out Patient Housing Unit. ...................... 21
(PSU) Psychiatric Services Unit. ....................... 4
(SHU) Security Housing Unit. .......................... 26

## B. TITLES AND POSITIONS:

(A.W.) Associate Warden. ............................. 4
(c/o) Correctional Officer. ........................... 5
(D.A.) District Attorney. ............................. 25
(I/M) Inmate. ....................................... 4
(L.t.) Correctional Lieutenant. ....................... 4
(M.D.) Medical Doctor. ............................... 11
(I.E.) Investigative Employee. ........................ 4
(P.T.) Psychiatric Technician. ........................ 7
(R.N.) Registered Nurse. ............................. 7
(Sgt) Correctional Sergeant. ......................... 4
(SHO) Senior Hearing Officer. ......................... 4
(S.A.) Staff Assistant. ............................... 25
(C.D.O.) Chief Disciplinary Officer. ................... 4

## C. DISCIPLINARY TITLES:

(IR.) Incident Report. ............................... 25
(R.V.R.) Rules Violation Report. ....................... 3

## D. FORM'S:

(C.D.C. 115-A) Serious Rules Violation Report. .......... 21
(C.D.C.R. 831-A1) CDCR 831-A1 Crime/Incident Report Part A1-

Supplement. ............................... 22
(C.D.C.R. 7219) Medical Report of Injury or unusual
occurrence. ............................... 16

### E. OTHER:

(B.9. No.) Badge Number. ...................... 4
(I.C.C.) Institutional Classification Committee. ........... 26
(O.I.A.) Office of the Internal Affairs. ............... 26
(S.B.I.) Serious Bodily Injury. ................... 2

# TABLE OF AUTHORITIES:

PAGE(S)

## FEDERAL:

## UNITED STATES CONSTITUTION.

Amendment 1 .................................................... 32

Amendment VIII ................................................ [2, 31, 32, 33, 35, 36]

Amendment XIV ................................................ 3, 34, 36

## FEDERAL STATUTES.

28 U.S.C. § 1331 .............................................. 1

28 U.S.C. § 1343 .............................................. 1

28 U.S.C. § 1367 .............................................. 2

28 U.S.C. § 1391 .............................................. 2

28 U.S.C. § 2201 .............................................. 1

28 U.S.C. § 2202 .............................................. 1

42 U.S.C. § 1983 .............................................. 1, 2

## FEDERAL COURT RULES.

Fed. R. Civ. P. 38 ............................................ 1

Loc. R. 201 ................................................... 1

## STATE:

## CALIFORNIA STATUTES.

Penal Code § 661.................................................. 37

C.C.R. Title 15. § 3000.......................................... 14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,

PLAINTIFF.

Case No.

vs.

JOSEPH DEFAZIO ET AL.,

DEFENDANTS.

**PLAINTIFF'S COMPLAINT FILED UNDER THE CIVIL RIGHTS ACT. 42 U.S.C. SECTION 1983. BY A STATE PRISONER.**

## I. JURY TRIAL DEMANDED
## COMPLAINT FOR MONEY DAMAGES.

Pursuant to Federal Rule of civil Procedure 38(b) and Local Rule 201. The Plaintiff demandes for jury trial.

## II. JURISDICTION AND VENUE.

1.) This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the constitution of the united states. The court has Jurisdiction under 28 U.S.C. section 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. This court has supplemental jurisdiction over Plaintiff's

State law claims pursuant to 28 U.S.C. Section 1367.

2.) The Eastern District is an appropriate venue under 28 U.S.C. Section 1391 (b) (2) because it is where the events giving rise to this claim occurred.

## III. SUMMARY OF THE CASE:

3.) This is a civil rights case filed under 42 U.S.C. section 1983, by a state prisoner in the United States District Court for the Eastern District of Sacramento California. The Plaintiff in this cause of action ensures that his Eighth Amendment right to be free from cruel and unusual punishment was violated, on February 18, 2015, when defendants employed under the California Department of Corrections And Rehabilitation (C.D.C.R.), At the california state Prison-Sacramento (C.S.P.-SAC) refused the Plaintiff basic human needs (food), and then later in the morning handcuffed him behind his back and then administered a serious beating. While he was defenseless and unable to protect him self. The Plaintiff furtherly ensure that while he was being beaten, other defendants watched without intervening in the attack, and from that failure to protect, the Eighth Amendment was broken. The Plaintiff ensures that from the beating he suffered serious bodily injuries (SBI) including two broken teeth, concussion, bone fracture, and many other injuries, The Plaintiff ensures that after the beating took place, defendants were deliberately indifferent to his serious medical needs, when

they failed to document all visual injuries, that he had suffered as a result of that froce being used upon his Person, and when they failed to Provide timely treatment for the broken teeth that he suffered. The Plaintiff ensures that one of the defendants was also deliberately indifferent to his medical need For treatment, when that defendant intentionally interfered with Prescribed treatment(ICE PACK), by denying the Plaintiff that treatment. The Plaintiff ensures that defendants falsified documentation's after the beating occurred, in an attempt to conceal, aid and abet other defendants, who were involved in the attack. The Plaintiff ensures that defendants wrote bogus Rule violation Reports(R.V.R.), on him in their attempts to cover up and conceal their behaviors, which then brought upon several fourteenth Amendment due Process violations, when defendants refused to ask questions of specifically identified witnesses, which then suppressed critical evidence for the Plaintiff to be able to receive a fair hearing. The Plaintiff ensures that defendants deprived him of his liberty when he was denied fair Procedural due Process, when defendants refused to allow witnesses to be called at the hearing, which ultimately violated the Plaintiff's Fourteen Amendment to the united states constitution. "Right to Due Process". The Plaintiff Wherefore, request's that this court correct the violations, by entering judgment in his behalf, for the violations of guaranteed constitutional rights.

## IV. PARTIES:

4.) Plaintiff, THEON OWENS, is and was at all times Mentioned herein a Prisoner of the state of california in the custody of

The C.D.C.R., He is Currently Confined in CSP-SAC, in Represa California.

5.) Defendant, LAURA ELDRIDGE (L. ELDRIDGE) is the Associate Warden (A.W.) and Chief Disciplinary officer (C.D.O.), At the CSP-SAC for A-Facility (A-Fac). She is legally responsible for the operation of all disciplinary Process, on A-Fac. And for the welfare of all the Inmates (I/M) on A-Fac.

6.) Defendant, CORY MARTINCEK (C. MARTINCEK) Badge Number (B.g. No.) 55340, is a correctional Lieutenant (L.t.) of C.D.C.R. Who at all times Mentioned in this complaint, held the rank of Supervisor L.t., and was assigned to C.S.P.-SAC A-Fac. Psychiatric Services Unit (PSU) Blocks I, II, III, and IV.

7.) Defendant, JASON SCHULTZ (J. SCHULTZ) B.g. No.: 70063, is a L.t. of C.D.C.R. Who at all times Mentioned in this complaint, held the rank of L.t., and was assigned to CSP-SAC, Who at the time of the events described below was serving as the Senior Hearing officer (SHO).

8.) Defendant, RYAN D. COUCH (R. COUCH) B.g. No.: 61097, is a correctional Sergeant (Sgt) of C.D.C.R. Who, at all times Mentioned in this complaint, held the rank of Sgt, and was assigned to CSP-SAC, Who at the time of the events described below was serving as an acting Investigative Employee (I.E)

9.) Defendant, LANDON MERCADO (L. MERCADO) B.9. No.: 73156, is a S9t of C.D.C.R. who, at all times Mentioned in this complaint, held the rank of S9t, and was assigned to CSP-SAC.

10.) Defendant, KENNETH BLESSING (K. BLESSING) B.9. No.: 63591, is a S9t of C.D.C.R. who, at all times Mentioned in this complaint, held the rank of S9t, and was assigned to CSP-SAC.

11.) Defendant, CHRIS DRAKE (C. DRAKE) B.9. No.: 64369, is a correctional officer (C/o) of C.D.C.R. who, at all times Mentioned in this complaint, held the rank of C/o, and was assigned to CSP-SAC.

12.) Defendant, JASON MURILLO (J. MURILLO) B.9. No.: 53594, is a C/o of C.D.C.R. who, at all times Mentioned in this complaint, held the rank of C/o, and was assigned to CSP-SAC.

13.) Defendant, DAVID MARTINEZ (D. MARTINEZ) B.9. No.: 64376, is a C/o of C.D.C.R. who, at all times Mentioned in this complaint, held the rank of C/o, and was assigned to CSP-SAC.

14.) Defendant, STEVE BYERS (S. BYERS) B.9. No.: 77383, is a C/o of C.D.C.R. who, at all times Mentioned in this complaint, held the rank of C/o, and was assigned to CSP-SAC.

15.) Defendant, PAUL BETTENCOURT (P. BETTENCOURT) B.9. No.: 70317, is a C/o of C.D.C.R. who, at all times Mentioned in this complaint, held the rank of C/o, and was assigned to CSP-SAC.

16.) Defendant, ROGER GUFFEE (R. GUFFEE) B.9. No.: 52959, is a CIO of C.D.C.R. Who, at all times Mentioned in this complaint, held the rank of CIO, and was assigned to CSP-SAC.

17.) Defendant, PETYO RASHEV (P. RASHEV) B.9. No.: 85243, is a CIO of C.D.C.R. Who, at all times Mentioned in this complaint, held the rank of CIO, and Was assigned to CSP-SAC.

18.) Defendant, DAVID MATTHEWS (D. MATTHEWS) B.9. No.: 54034, is a CIO of C.D.C.R. Who, at all times Mentioned in this complaint, held the rank of CIO, and was assigned to CSP-SAC.

19.) Defendant, JOHN LEBECK (J. LEBECK) B.9. No.: 59617, is a CIO of C.D.C.R. Who, at all times Mentioned in this complaint, held the rank of CIO, and was assigned to CSP-SAC.

20.) Defendant, MATTHEW BRADY (M. BRADY) B.9. No.: 67323, is a CIO of C.D.C.R. Who, at all times Mentioned in this complaint, held the rank of CIO, and was assigned to CSP-SAC.

21.) Defendant, JACOB BURKE (J. BURKE) B.9. No.: 72081, is a CIO of C.D.C.R. Who, at all times Mentioned in this complaint, held the rank of CIO, and was assigned to CSP-SAC.

22.) Defendant, JOSEPH DEFAZIO (J. DEFAZIO) B.9. No.: 71470, is a CIO of C.D.C.R. Who, at all times Mentioned in this complaint, held the rank of CIO, and was assigned to CSP-SAC.

23.) Defendant, ALICE OKOROIKE (A. OKOROIKE) is a Registered Nurse (R.N.) of C.D.C.R. Who, at all times Mentioned in this complaint, held the position of R.N., and was assigned to CSP-SAC.

24.) Defendant, CLOVER STAGGS-BOATRIGHT (C. BOATRIGHT) is a Psychiatric Technician (P.T.), of C.D.C.R. Who, at all times Mentioned in this complaint, held the position of P.T., and was assigned to CSP-SAC.

24-A.) Defendant Dental Department (DEN. DEPT.) is legally responsible for the operations of all dental Matter's, concerned in this complaint.

25.) Each defendant is sued individually and in his/her official capacity. At all times Mentioned in this complaint each defendant acted under the color of state law.

## V. PREVIOUS LAWSUITS BY PLAINTIFF:

26.) Plaintiff has filed other lawsuits dealing with the same facts involved in this action or otherwise relating to his imprisonment

27.) The parties to the previous lawsuit were Plaintiff, THEON OWENS and Defendants, JOSEPH DEFAZIO, JACOB BURKE, MATTHEW BRADY, JOHN LEBECK, DAVID MATTHEWS, PETYO RASHEV, PAUL BETTENCOURT, STEVE BYERS, NATHAN PARKER, MIKE HAMMER, DAVID MARTINEZ, CHRIS DRAKE, ROGER GUFFEE, JASON MURILLO, LANDON MERCADO, KENNETH BLESSING, RYAN COUCH, JASON SCHULTZ, CORY MARTINCEK, LAURA ELDRIDGE, ALICE OKOROIKE, And COLOVER STAGGS-BOATRIGHT, in the Eastern District of California court, Docket Number 2:15-CV-01570-EFB, under EDMUND

1  F. BRENNAN, united states Magistrate Judge. The case was

2  dismissed without Prejudice. The lawsuit was filed on JULY 22, 2015,

3  and I learned of the outcome on March 30, 2016.

4

5  28.) The Parties to the Previous lawsuit were Plaintiff, THEON OWENS

6  and Defendants, ELENA RAPOPORT, TIM V. VIRGA, E. SWARTZ, And C. PAIZIS,

7  in the Eastern District of California Court, Docket Number 2:16-CV-

8  00273-CKD, under CAROLYN K. DELANEY, united states Magistrate

9  Judge And District Judge, TROY L. NUNLEY, The case is "Pending"

10

11

12

13

14  # VI. STATEMENT OF FACTS:

15

16

17  29.) On February 18, 2015, Wednesday at approximately 0630 hours

18  defendants BYERS and RASHEV were Passing out daily breakfast

19  and Lunch Meals on the top tier, when they came across the

20  Plaintiff's cell door (FA3-232), they walked right pass the

21  Plaintiff without offering him his daily serving.

22

23  30.) The Plaintiff waited until they came back to pick up

24  trays, because he thought that maybe they had just made a

25  Mistake, as they do some times. Once they came back pass

26  the Plaintiff's cell, he asked them "can I get my Meals". both

27  defendants ignored him and did not Provide an answer for

28  their depriving of the Meals.

31.) Defendants BYERS and RASHEV acted unlawfully, willfully and without regard's for the Plaintiff's rights.

31-A.) The Plaintiff confronted non-defendant, TIM POTTER about the denial of food. POTTER was assiged as suicide watch on the day of, and who was sitting to the left of the Plaintiff's assigned cell door.

31-B.) POTTER refused to intervene in the matter and get the Plaintiff his daily serving's.

31-C.) The Plaintiff became upset with the result's of being denied his meals, and with POTTER'S reaction to the violation, and began to throw faucet water at the cell door periodically throughout the rest of the morning.

31-D.) At approximately 1225 hours defendants, MARTINCEK, BYERS, BLESSING, BETTENCOURT, RASHEV, and non-defendant, POTTER approached the Plaintiff assigned cell door, MARTINCEK informed the Plaintiff that POTTER had alleged that he had been gassed by the Plaintiff, MARTINCEK then asked the Plaintiff to submit to mechanical restraint's, so that the cell could be searched, and all containers that could hole liquid could be removed from the cell.

31-E.) The Plaintiff complied and submitted to restraint's.

31-F.) MARTINCEK instructed his subordinates, to place the

9-A of 38

1  Plaintiff in the upper tier shower. once the Plaintiff was
2  secured in the shower, MARTINCEk then instructed his
3  subordinates to search the cell and remove [all
4  containers]. in which happen under the supervision of
5  MARTINCEk.

6

7  31.-G) once the cell was fully searched. the L.t. ordered his
8  subordinates to place the Plaintiff back into his assigned
9  cell. which happen under the supervision of MARTINCEk. without
10  injury to the Plaintiff.

11

12  31-H.) Defendant. BETTENCOURT then used a wet swab. on POTTER'S
13  shirt sleeve. and then photograph's were taken of one large
14  spot left behind from the wet swab. and the Plaintiff was
15  written up for a rules infraction.

16

17  31-I.) Then POTTER came back on the tier and sat in front
18  of the Plaintiff's assigned cell door.

19

20  32.) At approximately 1315 hours defendants. DEFAZIO. BRADY.
21  LEBECk. and BURkE came to the Plaintiff's assigned cell
22  door. and instructed him to cuff up. they informed him that
23  a unidentified clo (defendant. BETTENCOURT) said that he
24  had been gassed by the Plaintiff.

25

26  33.) The Plaintiff informed them that he had not gassed
27  anyone and didnot want to come out of his cell. because
28  the allegation had already been addressed by MARTINCEk.

1  and MARTINCEk already pulled him out of the cell and searched
2  it.

3

4  34.) Defendant, DEFAZIO then told the Plaintiff that BLESSING
5  and MARTINCEk wanted him to cuff up and come down to
6  the rotunda and talk with them, and that if he refused
7  he would be extracted from the cell.

8

9  35.) The Plaintiff then complied and submitted to mechanical
10 restraints.

11

12 36.) Defendant, DEFAZIO then signaled to the tower officer,
13 MATTHEWS to open the Plaintiff's cell door. Which happen.

14

15 37.) Defendant, DEFAZIO then grabbed the Plaintiff's arm and
16 then DEFAZIO slammed the Plaintiff on the concrete floor,
17 and then all present defendants immediately began to
18 strike the Plaintiff in the face with their clenched fist's.

19
20
21
22
23
24
25
26
27
28

38.) All of which occurred in the Presence of defendant, MATTHEWS and non-defendant, A. BROWN who observed the Plaintiff being beaten from the tower, which was approximately 20 to 25 feet from were the attack occurred, neither of who attempted to stop the attack or sounded the unit alarm.

39.) After a minute or so elapsed the Plaintiff began to yell out in an attempt to deter attacker's from continuously beating him and to aware others of the attack upon him.

40.) All Present defendants continued to strike the Plaintiff in the face.

41.) The Plaintiff then attempted to shield his face by tucking it towards his chest and the floor, which had little to no effect, due to him being handcuffed behind his back.

42.) Defendant, DEFAZIO then grabbed the Plaintiff by the hair, while at the same time tearing approximately 25 to 30 dreadlocks out of the Plaintiff's head, once DEFAZIO had the Plaintiff's face in the open, he then Punched the Plaintiff in the mouth several more time's, knocking the Plaintiff's teeth completely out.

<u>10</u> of <u>38</u>

43.) once the Plaintiff observed blood gushing from his mouth, and one of his teeth laying on the concrete next to him, he then began to yell out that he had "HIV" in an attempt to stop the defendants from continuing their attack.

44.) All defendants at that time stopped striking the Plaintiff, except for defendant DEFAZIO, who then grabbed the Plaintiff by the hair and stated to him "NO YOU DONT NIGGER, YOU THINK YOU RUN THIS PLACE, YOU WALK AROUND HERE LIKE YOU RUN THIS PLACE, YOUR GOING TO LEARN NIGGER".

45.) one of the CIO'S then told MATTHEWS to sound the unit alarm, in which happen.

46.) Defendant, MARTINEZ then ran into the section and up the stairs and pulled the Plaintiff's legs up and then he kicked the Plaintiff in the testicles.

47.) Defendants, BLESSING, BETTENCOUT, and RASHEV then came into the section; RASHEV and BETTENCOUT came up the stairs, while BLESSING immediately started clearing the alarm, once the alarm was cleared, BLESSING then came up the stairs and then he kicked the Plaintiff in the face with his steel toe work boot. At which time all present defendants then began to hit and kick the Plaintiff in the face.

48.) All of which was observed by and in the presence of defendant. GUFFEE who was at the bottom of the stairs with non-defendant POTTER, both of who didnot attempt to stop the violations nor did they object to the violations occurring. defendant. MATTHEWS and non-defendant. BROWN also observed the violations occurring and didnot act to stop the violations.

49.) By this time the Plaintiff's left eye was completely swollen shut and bleeding from a cut above his eye, and his righ eye was swollen close approximately 80% and was bleeding from a cut on top of it.

50.) Defendants DRAKE and MURILLO then entered the section and came up the stairs. they were both instructed by BLESSING to take the Plaintiff to the rotunda holding cell. they then both grabbed the Plaintiff and began to drag him down the stairs.

51.) The Plaintiff was unable to catch his footing. due to the speed inwhich he was being dragged, the tightness of the ankle resistances, and because his left ankle had been fractured.

52.) once the defendants had dragged the Plaintiff to the bottom of the stair case's and as they exited the unit section door. MURILLO and DRAKE slammed the Plaintiff's head into the door frame/wall area of the unit, they both did

12 of 38

this by willfully walking the Plaintiff head first into the door frame.

53.) Once defendants MURILLO and DRAKE had dragged the Plaintiff into the rotunda next to the staff office, they then both held the Plaintiff up to allow for other defendants to strike the Plaintiff, they both did this by one holding the left arm and the other holding the right arm, while they stood on each side of the Plaintiff's limb they held.

54.) Defendants, DEFAZIO and BLESSING then beganed striking and kicking the Plaintiff in the face approximately five times.

55.) While the Plaintiff was being strucken in the head by defendants, he seen a flash of light from the blows to his head, which was a brain concussion.

56.) The Plaintiff attempted to crouch down toward the ground, to avoid being continuously struck in the face and head, but was unsuccessful, due to defendants holding him upward.

57.) Defendants MURILLO and DRAKE then threw the Plaintiff into the holding cage.

58.) As a result of the unnecessary excessive force the Plaintiff suffered three SBI: (A) Two knocked out teeth, (B) Fractured left ankle, and (C) A brain concussion, as defined in

CC.R. Title 15. Section 3000. at SBI., The Plaintiff also suffered the following serious injuries (D) A hyperextended sprained left ankle. (E) Abrasions to the lip. (F) Active bleeding from the mouth. (G) A swollen shut blacked left eye. (H) A cut on the top of the left eye. (I) Active bleeding from the top of the left eye. (J) A 80% swollen shut blacked right eye. (k) A cut on the top of the right eye. (L) Active bleeding from the top of the right eye. (M) Bruises to the left and right eye's. (N) Abrasion's and redden area to the right arm. (o) Redden area to the right knee. (P) Loss of approximately 30 dreadlooks. (Q) Mental anguish and (R) Emotional distress.

59.) The above shows the amount and extent of the injuries suffered by the plaintiff. it also shows the amount of excessive force that was used. and the mind frame of the defendants. who acted maliciously and sadistically for the purpose of causing the plaintiff harm.

60.) Defendant. BLESSING then called all the ruffian's into the office. while the plaintiff laid on the floor of the holding cage bleeding. and injured.

61.) Defendant. BLESSING then told the ruffian's "WE HAVE TO COVER OUR ASSE'S."

62.) The ruffian's then started to conspire with one another to come up with a plan to avoid punishment from the law.

63.) The Plaintiff then heard defendant. DEFAZIO say "I AM GOING TO PUT IN MY REPORT THAT HE ATTEMPTED TO HEADBUTT ME AND SPIT ON ME."

64.) The Plaintiff also heard non-defendant. POTTER tell the I/M worker to "CLEAN UP THE BLOOD AND HAIR ON THE TIER."

65.) Each defendant acted willfully. negligently. Maliciously. and knowingly that harm would befall the Plaintiff.

66.) Approximately fifteen Minute's later at 1330 hours a unidentified guard contacted the R.N. OKOROIKE. to come Medically evaluate the Plaintiff.

67.) Defendant. OKOROIKE soon after came to evaluate the Plaintiff, she seen that the Plaintiff had been seriously injured, she asked the Plaintiff what happen to him, the Plaintiff informed her that the c/o's beat him up while he was handcuffed behind his back. and that they hit and kicked him in his face.

68.) Defendant. OKOROIKE did not ask the c/o's to Pull the Plaintiff form the holding cell. so that she could Perform her duty. and do a full body inspection on him, instead she noted a few injuries. that were on the Plaintiff's face. and then she left.

69.) Approximately three Minutes later, defendant. MARTINCEK

arrived to the unit and incident area; he when into the office where the ruffians were, he remained there for approximately 30 seconds before grabbing the form CDCR 7219 Medical Report of Injury or unusual occurrence (CDCR 7219), from defendant, BLESSING.

70.) Defendant, MARTINCEK then instructed BLESSING to follow him out to the unit mini-yard, were MARTINCEK talked with BLESSING about the incident. BLESSING while talking with MARTINCEK became agitated an began to start talking loudly in an aggressive manner, the Plaintiff was unable to make out what BLESSING was saying.

71.) Defendant, MARTINCEK then walked off of the mini-yard, back into the rotunda, and then began to exit the unit door, when the Plaintiff stopped him and asked him could he talk with him, MARTINCEK then told the Plaintiff "not now, i have to go take care of something". then MARTINCEK turned to exit the unit door, as BLESSING entered the rotunda and lefted up his middle finger towards MARTINCEK and stated under his breath in a low tone "Fuck you, your GOING TO TAKE HIS SIDE OVER ME, HE IS A INMATE". as MARTINCEK left the unit.

72.) At approximately 1335 hours the Plaintiff was taken to the A-Facility Triage and Treatment Area (A-TTA), by non-defendant, C. MCCARVEL and defendants, MURILLO and DRAKE,

73.) Once at the A-TTA the Plaintiff began to complain about the symptoms he was having from the head injuries he had received, and not being able to focus his vison. due to him seeing doubles and feeling dizzy.

74.) Non-defendant, Medical Doctor (M.D.), J.R. WEDELL ensured the Plaintiff that the symptom's would pass, but that any one who suffers injuries like this, to their head would have these symptom's.

75.) Defendant, MERCADO then entered the A-TTA, to relieve non-defendant, MCCARVEL, to allow MCCARVEL to start his report on his involvement in the incident.

76.) The Plaintiff head concussion symptoms persisted and the Plaintiff became irritable with his physical condition and with the circumstances in which he was beaten by defendants. The Plaintiff then began to swear and started to state his thoughts out loudly about defendants.

77.) At which time MERCADO became aware of what the other defendants had done. and by the showing of the injuries that the Plaintiff had sustained.

78.) At that time , MERCADO decided to try and cover for involved defendants. MERCADO did this by writing the Plaintiff up for false allegation's of allegedly threatening

staff the day before. in an attempt to make it seem as if the Plaintiff had been making plans to do something to some body. and to try an justify the involved defendants use of force.

79.) While the Plaintiff received medical treatment for his injuries the Plaintiff face continued to swell up and his eye's continued to swell shut. M.D. WEDELL instructed his assistant R.N. non-defendant. B. NICOLAOU to apply a ice pack to the Plaintiff's eye's to stop them from swelling shut. the R.N. then retrieved the ordered treatment and attempted to apply it to the Plaintiff's eye's.

80.) Defendant. MERCADO became angry about medical staff casing the Plaintiff suffering with treatment. MERCADO then stated out loudly to the R.N. "No, HE CANNOT HAVE A ICE PACK." the Plaintiff then looked at MERCADO. who had a[sic] look on his face and was trying to intimidate medical staff and the Plaintiff from engaging in further treatment.

81.) The R.N. B. NICOLAOU then told the Plaintiff while she was treating him. that she would document that MERCADO said he could not have the ice pack.

82.) The Plaintiff was then taken to conduct a use of force video interview and then he was wheeled back to his cell.

83.) As the Plaintiff was being wheeled back from being treated at the A-TTA, the Plaintiff seen defendant. BYERS as he was leaving the Prison, the Plaintiff asked BYERS "is that how you are getting down, jumping on IIM'S with their hands cuffed behind their back and knocking out their teeth." BYERS replied "YEAH". From this admission and MY belief I do believe that BYERS was involved in the beating in more then one way.

84.) Approximately three hours later, at 1605 hours, after the beating to the Plaintiff and the conspiring to conceal the unlawful act's by the defendants, Defendant. DEFAZIO after realizing the extent of what he had done with other defendants, and the injuries caused by his actions, went to P.T. BOATRIGHT for help with gaining a job insurance plan, so that he wouldnot be fired for willfully choosing to violate the law.

85.) Defendant. DEFAZIO asked BOATRIGHT to write up a CDCR 7219 medical report alleging that he suffered injuries as a result of the incident and force he used on the Plaintiff.

86.) Defendant. BOATRIGHT didnot see any visual injuries. but she agreed anyway to help him evade the law. BOATRIGHT noted that DEFAZIO had pain in his chest from allegedly being headbutted by the Plaintiff, and that his hand hurt from punching the Plaintiff in the face.

19 of 38

87.) On February 19, 2015, at approximately 0635 hours the Plaintiff was denied his breakfast and lunch meals, by defendant. BYERS and non-defendant, N. PARKER, who acted willfully and maliciously with the intention to deprive the Plaintiff.

89.) At approximately 1630 hours the Plaintiff was denied his evening meal, by non-defendants, C. IGBOKWE and BABBIT, who acted willfully and maliciously with the intention to deprive the Plaintiff, after they were both manipulated by defendants.

90.) On February 20, 2015, at approximately 0645, the Plaintiff was denied his breakfast meals, by defendant, BYERS and non-defendant, PARKER.

91.) At approximately 1200 hours, the Plaintiff see defendant, MARTINCEK, the Plaintiff then called him over to his cell door, and informed him that, staff had been refusing him his food and that he feared for his safety, and that due to both of his eye's being swollen completely shut, he would not beable to see if one of the clo's jumped on him again, MARTINCEK then told the Plaintiff to say that he was suicidal, so that he would beable to get the Plaintiff out of the block. The Plaintiff then told MARTINCEK that he was suicidal and that he wanted his food that he had been refused.

92.) MARTINCEK didnot correct the wrongs described herein. However, he did remove the Plaintiff from further cruel and unusual exposure, at the hands of other defendants, and had the Plaintiff relocated to 8-Block out Patient Housing unit (OHU).

93.) At approximately 1210 hours the Plaintiff was placed into the holding cages in the rotunda, per MARTINCEK's order to have the Plaintiff evaluated by a psychologist, for claim's of being suicidal.

94.) While in the holding cage defendant MATTHEWS began to taunt the Plaintiff, by making crying and yelling sounds that mimicked the Plaintiff as he suffered while being beaten by the hands of the other defendants, when the Plaintiff yelled out in an attempt to stop attackers and make others aware of the unlawful attack, while MATTHEWS watched from the tower.

95.) On Tuesday March 3, 2015, at 11:30 hours non-defendant C/o. C.DEMPS. came to the Plaintiff's housing unit and provided him with copies of the R.V.R.'S that were written against him. DEMPS had the Plaintiff write down witnesses names that the Plaintiff wished to attend the disciplinary hearing and the documentary evidence that the Plaintiff wished to obtain for his defense. DEMPS then provided the Plaintiff with a copy of these request's on a form CDC 115-A serious Rules Violation Report (CDC 115-A).

96.) upon receiving written documentation regarding the incident of Feb 18, 2015. it was found that L.t. MARTINCEk had committed the act of deliberate indifference. by the specific act's of aiding and abeting and attempting to conceal evidence. by continuously allowing involved staff to change their story of the event. by allowing them to submit clarification reports one after the next. and by helping them on what to say. by leading them with his question's. He also tampered with evidence/Documents. by adding things that didnot happen on his CDCR 831-A1 crime/Incident Report Part A1 - supplement (CDCR 831-A1) Page 2 of 8 (e.g. "officer DEFAZIO attempted to apply a spit net to owens head and owens again tried to bite officer DEFAZIO at which time officer DEFAZIO again struck owens in the head area).and by minimizing the injuries the Plaintiff received (e.g. he stated that the Plaintiff received [A] missing tooth, [an] abrasion to the lip, [a] swollen and dislocated left eye, as well as reddened forehead area) on his CDCR 837-A1 Page 2 of 8. He also didnot have all staff that were mentioned in other reports write a report.

97.) upon receiving written documentation regarding the incident and the injuries received. due to the unnecessary excessive force. it was found that R.N. OKOROIKE had attempted to conceal injuries that the Plaintiff had suffered. by not documenting all of the injuries. and by minimizing the injuries that were visually there. with the intention's that the Prinipals may avoid

1    Punishment, if she did so. she was fully aware that
2    some type of felony had been committed. She also added
3    language to the plaintiff's statement, writing that he
4    said that the clo's kickedhim in the chest, when he
5    clearly told her that they kickedhim in his face.
6
7    98.)upon receiving written documentation regarding the
8    injuries DEFAZIO claim's he received, it was found that
9    P.T., BOATRIGHT, had committed the act's of aiding and
10   abeting the people involved in the crime, with the specific
11   act's of falsifying documentation, she knew that DEFAZIO had
12   not received a injury to his chest, due to nothing visually
13   indicating that a injury occurred in the area (e.g. like
14   redden or discolored area), yet she wrote down "pain".
15   and circled his chest, in an attempt to aid and abet
16   him. However she noted that he had pain in his hand,
17   which is likely, after continuously striking the plaintiff
18   in the face with his clenched fist.
19
20   99.) On April 2, 2015, the plaintiff was provided with a
21   I.E., defendant, COUCH. The plaintiff informed COUCH that
22   he had requested documentary evidence to be give to
23   him, so that he could prepare a defense and that the
24   requested materials were documented on the form CDCR
25   115-A, the plaintiff also told couch that there were
26   eye witnesses who saw the whole incident and that they
27   needed to be interviewed by him, so that their
28   testimony could be documented. the plaintiff informed

COUCH that these eyewitnesses names were also documented on the CDC 115-A, the Plaintiff informed him that the questions had been faxed to CSP-SAC, and COUCH acknowledged that he had received the question's. COUCH agreed that he would interview all witnesses and that he would gather the requested document's.

100.) On 4/22/2015, the Plaintiff was provided with a copy of defendant, COUCH I.E. report, at that time the Plaintiff became aware of the fact's that COUCH had attempted to conceal witnesses testimony's and had tampered with evidence, the Plaintiff noticed that COUCH had changed the CDC 115-A, wereon the Plaintiff had requested eye witnesses and documentation for the hearing, COUCH replaced the original from with a new one, wereon he removed all of the Plaintiff's request's, COUCH marked down on the new form that the Plaintiff had not requested anything, in his attempt to deprive the Plaintiff of a fair hearing, COUCH had also refused to ask all eye witnesses questions, he alleged that his reason for not asking the questions were because they were irrelevant to him, COUCH also refused to ask question of the involved CIO's, and for the questions that he decided to ask's the accuser, he changed the written language provided to him by the Plaintiff, and asked the question's in a way that made it

1  appear that the Plaintiff had admitted to
2  actually trying to bite the accuser.

3

4  101.) As a result of defendant COUCH action's of failing
5  to preform his duty as I.E. inconstancy with prison
6  policies, practices, and procedures, the Plaintiff was
7  deprived of his liberty, evidence, equal protection
8  of the law, and due process at the disciplinary hearing.

9

10

11  102.) On May 28, 2015, defendant, Lt I SHO, SCHULTZ came to
12  the correctional treatment center to have the
13  disciplinary hearing for the allegations written against
14  the Plaintiff by defendant, DEFAZIO, as a job insurance
15  plan, R.V.R. Log No.: EOP-15-02-058 and Incident Report
16  (I.R.) Log No.: SAC-PSU-15-02-0194, before the hearing,
17  the Plaintiff asked SCHULTZ about his Staff Assistant
18  (S.A.) non-defendant, PROTOVINSKY, as he was not
19  present, SCHULTZ told the Plaintiff that he assigned
20  him a new S.A. and that the Sacramento District
21  Attorney (D.A.) office didnot pick the case up, so he
22  has nothing to worry about, also the time constraints
23  had ran out, so there is nothing that he could do to
24  him anyway, SCHULTZ then proceeded with the hearing,
25  first SCHULTZ acted like he was reading the R.V.R. then
26  he did the same with the I.R., then he stated to the
27  Plaintiff "You headbutted c/o. DEFAZIO." the Plaintiff
28  replied "I never headbutted DEFAZIO. he made that up,
   as a job insurance plan, and I have eye witnesses who

1  saw the whole incident, and I would like them to
2  make a statement." SCHULTZ reponded to the
3  Plaintiff's request for witnesses by stating "this R.V.R.
4  is what I have to go off of." the Plaintiff then
5  attempted to produce documentary evidence as a
6  defense, since SCHULTZ refused to call live eye
7  witnesses, SCHULTZ then told the Plaintiff "I am not
8  going to deal with all of that. the office of the
9  Internal Affairs (O.I.A.), can deal with that since
10 they are investigating the assault and battery
11 that happen to you." SCHULTZ then told the Plaintiff
12 "I am finding you guilty."
13

14 103.) As a result of defendant, SCHULTZ's actions, of failing to
15 follow fair policies, practices, and procedures, the Plaintiff
16 was deprived of the following: (1) loss of all personal
17 property, (2) loss of all his appliances, (3) loss of his vendor
18 packages, and (4) loss of his telephone privileges for 90 days.
19 The Plaintiff was also referred to Institution classification
20 committee (I.C.C.) for a security housing unit (S.H.U.) assessment
21 which caused him "significant hardship."
22

23 104.) On June 30.2015, defendant, A.W./C.D.O., EIDRIDGE reviewed
24 the finding's of SHO. SCHULTZ's action of finding the Plaintiff
25 guilty, he reviewed all related document's, and the methods
26 used by SCHULTZ. He also reviewed the I.E.'s report and the
27 reason's given by COUCH to decline to ask question's of
28 eye witnesses, defendant, EIDRIDGE's affirmed all action's

1   taken, eventhough they were unconstitutional and there

2   were clear due process violations on the face of the

3   report.

4

5   105.) As a result of defendant, EIDRIDGE actions, of failing

6   to follow fair policies, practices, and procedures, the plaintiff

7   was deprived of his liberty.

8

9   106.) on June wednesday 17, 2015, at approximately 1955 hours,

10  while the plaintiff laided in the bed, he heard someone at

11  the cell door say to him "owens come to the door and see

12  who is here to see you". the way the person said it gave the

13  plaintiff the impression that they were trying to

14  indicate something more then just their presence, the

15  plaintiff then got off the bunk and went to the cell door,

16  at which time he realized that the person was defendant

17  "MERCADO". the plaintiff then asked him what did he want.

18  MERCADO replied with a smart comment, stating "I wanted to

19  see your smile, have they fixed your two teeth yet, let me

20  see". The plaintiff felt attacked by MERCADO'S comment and

21  felt the need to defend himself, the plaintiff then told

22  the defendant to get the fuck away from his door. MERCADO

23  then continued with his attack, by telling the plaintiff

24  "thats why you got your ass beat down and your teeth

25  knocked down your throat, you little bitch". the plaintiff and

26  MERCADO then started to argue. within that arguement

27  MERCADO stated to the plaintiff "you bitch, your lucky I

28  wasnot there, because I would have knocked out even more".

the Plaintiff then in response to MERCADO's threat of S.B.I.. Stated ~~to~~ MERCADO "You Would not have done shit. but write up a fake report. like you did". MERCADO replied by stating "you got found guilty didn't you". At that time other staff began to enter the section MERCADO noticed them and Walked away.

107.) Defendant. MERCADO acted willfully. With the intentions to harm the Plaintiff. inWhich he did. causing the Plaintiff Fear and emotional distress.

108.) on 8/26/2015. the CSP-SAC I.C.C. reviewed the finding for R.V.R. Log No. EDP-15-02-058 and defendant's. EIDRIDGE. SCHULTZ. and COUCH actions Within the Proceeding. The I.C.C. Members approved all Method's used and affirmed the findings eventhough there were unconstitutional. and with the knowledge that there were due Process violation's visually Present thereon the R.V.R. The I.C.C. sentenced the Plaintiff to the Maximum Penalty allowed for the offence. Which is an eighteen Month aggravated SHU term. to be served infull. which deprived the Plaintiff of his liberty without fair Procedural Protection being offered. because the SHU impose's significant hardship that is not endured in the General Population (G.P.). example:

109.) A.) confinement to an isolated cell for up to 22 hours a day. sometimes longer or shorter depending on the Program schedule. B.) Two visits per week. for only two

1  hours, if space is available, while the G.P. can receive
2  a definite two visit's per week, and sometimes more
3  depending on legally recognized holiday, for up to six
4  hours. C.) Denial of allowable personal property and
5  telephone privileges, while the G.P. retain these
6  privileges. D.) Limited commissary and commissary item's,
7  at a fifty five dollar limit, while the G.P. can get up to
8  two hundred and twenty dollar's, and have no
9  restriction's on item's. E.) Limited receipt of package
10 privileges and package item's, limit is one package a
11 year, while the G.P. receive four a year. F.) Limited
12 participation in educational, rehabilitative and
13 religious program's, these program's at times may not
14 even be offered to SHU inmates, while the G.P. have no
15 restrictions to these program's. G.) Restricted movement
16 to mechanical restraint's (handcuff's and leg iron's) at
17 all times, while the G.P. wear none, except in emergency
18 situations. H.) Two hours of exercise every other day, in
19 side of a 15 feet by 10 feet cage, while the G.P. receive
20 four hours daily, on a large yard. I.) Inability to
21 carry out a job in the prison system, to earn good
22 time credit's for early release, while the G.P. can work to
23 be released early. J.) Two hours of access to the law
24 library a week, while the G.P. can receive four hours a
25 day of access. etc...
26
27 110.) Upon receiving a finalized copy of the disciplinary
28 hearing conducted by SCHULTZ it was found that

1  SCHULTZ had lied in his report alleging that the Plaintiff had not
2  requested any witnesses to attend the hearing, It was also
3  found that he had not provided any reason for denying the
4  Plaintiff's request for eye witnesses, in an attempt to deprive
5  the Plaintiff of his constitutional rights, and to cover for involved
6  defendants that had unlawfully beatan the Plaintiff.

7
8  110-A.) Defendant, Den. Dept. was notified on Fed 18, 2015, that
9  the Plaintiff had been seriously injured, and sustained broken
10 teeth, after being hit in the mouth by custody staff, and that
11 as a result, the Plaintiff had to be seen by it's dentist. GLENN
12 STURGES, and that X-Ray's were taken of the injurie's to the
13 Plaintiff's mouth, and that a thorough dental examination was
14 not provided to the Plaintiff at that time, to determine if the
15 Plaintiff suffered nerve damage from the injuries.
16
17 110-B.) Medical staff at california Medical facility notified the
18 Den. Dept., that the missing teeth, were causing the Plaintiff
19 an inability to perform daily activities of life. Such as to
20 articulate correctly, eat and chew hard food's, as well as pain
21 and soreness to the gum's, and disfigurement.
22
23 110-C.) The Den. Dept., didnot act on the information provided to
24 them, by relieving the Plaintiff of the pain he suffered with or
25 by fixing the problem causing the suffering, within a reasonable
26 constitutional amount of time.
27
28 110-D.) The Den. Dept., informed the Plaintiff that "The den. Dept. is

1  backed up" and that he would just have to wait for the
2  requested treatment.

3

4  110-E.) Defendant, Den. Dept., did not provide the Plaintiff with a
5  temporary fix, for the broken teeth until 2/17/2016 - one year
6  later.

7

8  110-F.) The Den. Dept., informed the Plaintiff, in a response to an
9  appeal that the Plaintiff had filed, that a one year delay was
10 reasonable under it's policies and procedures.

11

## VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES:

13

14 111.) The Plaintiff has filed several grievances regarding the issues
15 presented in this complaint, through the highest level of appeals,
16 exhausting all available administrative remedies accessible to him.

## VIII. CAUSES OF ACTION:

18

19

20 112.) Plaintiffs reallege and incorporate by reference paragraphs
21 1-111.

22

## COUNT ONE: UNNECESSARY EXCESSIVE FORCE IN VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION.

26

27 113.) Defendants, DEFAZIO, LEBECK, BURKE, BRADY, BLESSING,
28 RASHEV, BETTENCOURT, MARTINEZ, DRAKE, and MURILLO

violated Plaintiff's Eighth Amendment right to be free fome cruel, corporal and unusual punishment, by beating Plaintiff after he submitted to Mechanical restraints.

114.) As a result of the above defendants actions, the Plaintiff suffered SBI including concussion, bone fracture, protracted loss, and disfigurement, inaddition the Plaintiff suffered many other injuries.

## COUNT TWO: BREACH OF DUTY TO PROTECT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION.

115.) Defendants, GUFFEE, and MATTHEWS exercised deliberate indifference to Plaintiff's health and safety by failing to protect him from other officers use of force, despite the opportunity and obligation to do so. If they would have acted on the opportunity and obligation, the Plaintiff would have not suffered the whole beating nor would he have suffered all of the additional injuries, if these defendants would have acted at the point inwhich they could. therefore causing the additional injuries received by the Plaintiff from their failure to act. Making them liable for the injuries caused due to their shortcoming. under the "Deliberate Indifference" cause of the Eighth Amendment.

## COUNT THREE: INTERFERENCE WITH PRESCRIBED TREATMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION.

116.) Defendant, MERCADO exercised deliberate indifference to Plaintiff's health by intentionally interfering with Medical treatment after it had been ordered by Medical officials. His action violated the Plaintiff's Eighth Amendment right to Medical care.

117.) As a result of MERCADO's deliberate indifference to Plaintiff's condition, Plaintiff suffered further pain and Mental anguish. He continued to suffer from Migraine headaches, dizziness and inability to see for several days afterwards

## COUNT FOUR: RETALIATORY TREATMENT IN VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION.

118.) Defendant, MERCADO came to the Plaintiff's cell door for the sole purpose of harassing and retaliating against the Plaintiff, for other defendants and for filing grievances.

119.) As a result of MERCADO's actions the Plaintiff suffered fear and emotional distress, the Plaintiff was also unable to have non-frivolously claims addressed by the courts, due to the Plaintiff's grievances being cancelled

1  bY MERCADO.

2

3     COUNT FIVE: FALSIFICATION OF MEDICAL AND
4     DEPARTMENT RECORDS IN VIOLATION OF THE
      EIGHTH AMENDMENT TO THE CONSTITUTION.
5

6

7  120.) Defendants MARTINCEk, and okoRoIkE exercised

8  deliberate indifference to Plaintiff's health and safety

9  bY failing to accurately and correctly document facts

10  and injuries, their actions violated Plaintiff's Eighth

11  Amendment right to be free from cruel and unusual

12  Punishment.

13

14  121.) Defendant, BOATRIGHT exercised deliberate

15  indifference to Plaintiff's health and safety, bY

16  deliberately falsifying documents, in an attempt to

17  aid and abet involved defendants, her action's

18  Violated the Plaintiff's Eighth Amendment right to be

19  free from cruel and unusual Punishment.

20

21

22     COUNT SIX: DENIAL  OF BASIC HUMAN NEEDS IN
23     VIOLATION OF THE EIGHTH AMENDMENT TO THE
       CONSTITUTION.
24

25

26  122.) Defendants, BYERS  and RASHEV, violated Plaintiff's

27  Eighth Amendment right to Basic Human Needs, bY refusing the

28  Plaintiff  his meal's for several days.

123.) As a result of the above defendant's actions the Plaintiff suffered headache's, stomach cramp's, lightheadedness and dizziness.

## COUNT SEVEN: DENIAL OF DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONTITUTION.

124.) Defendant, COUCH violated Plaintiff's fourteenth Amendment rights to due process, by failing to interview eye witnesses, gather requested documentary evidence, and by switching the original CDC 115-A, in an attempt to conceal, aid and abet defendant's.

115.) Defendant, SCHULTZ violated Plaintiff's fourteenth Amendment rights to due process, by refusing to allow live eyewitnesses and documentary evidence at the disciplinary hearing, and by not documenting any reason for the denial, to allow the eyewitnesses, and by lying in his report alleging that no witnesses were requested.

126.) Defendant, EIDRIDGE, violated Plaintiff's fourteenth Amendment rights to due process, by affirming the unconstitutional procedures used.

## COUNT EIGHT: DELAY IN MEDICAL TREATMENT IN VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION.

126-A.) Defendant, Den. Dept., exercised deliberate indifference to Plaintiff's serious medical needs by delaying needed

1  Medical treatment for one year. after they had been
2  notified of the serious injuries sustained and of the after
3  effects the injuries were causing. The Den. Dept., action's
4  violated the Plaintiff's Eighth Amendment "right to Medical care".

6  126-B.) As a result of the Den. Dept.'s deliberate indifference
7  to Plaintiff's condition. Plaintiff suffered an inability to
8  articulate correctly, to eat and chew hard food's, Pain and
9  soreness to the gum's, and disfigurement and humiliation.

26  127.) The Plaintiff has no Plain, adequate or complete remedy
27  at law to redress the wrongs described herein. Plaintiff
28  has been and will continue to be irreparably injured

<u>34-A of 38</u>

page__of__

1  by the conduct of the defendants unless this court

2  grants the declaratory relief which plaintiff seeks.

## IX. PRAYER FOR RELIEF:

WHEREFORE, Plaintiff respectfully prays that this court enter judgment granting Plaintiff:

128.) A declaration stating that the physical abuse of the Plaintiff by defendants. DEFAZIO, LEBECK, BURKE, BRADY, DRAKE, BLESSING, BETTENCOURT, RASHEV, MURILLO, and MARTINEZ violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution and constituted an assault and battery under state law.

129.) A declaration stating that Defendants GUFFEE and MATTHEW'S failure to take action to curb the physical abuse of prisoners violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution and constituted an assault and battery under state law.

130.) A declaration stating that Defendant. COUCH'S actions of refusing to obtain documentary evidence and interview witnesses, and defendant. SCHULTZ'S actions in conducting the Plaintiff's disciplinary hearing, and defendant. EIDRIDGE'S actions in sustaining it, violated the Plaintiff's rights under the Due Process clause of

the Fourteenth Amendment to the United States Constitution.

131.) A declaration stating that Defendants, BYERS and RASHEV action's of refusing the Plaintiff basic Human needs violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution and constituted cruel or unusual Punishment under Federal and State law.

132.) A declaration stating that Defendants, MARTINCEK and OKOROIKE actions of failing to accurately and correctly document the Plaintiff's injuries and facts of event's and defendant, BOATRIGHT'S actions of falsifying documents violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution and constituted "Deliberate Indifference".

133.) A declaration stating that Defendant, MERCADO actions of intentionally interfering with ordered treatment violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution.

134.) Compensatory damages in the amount of $10.000⁰⁰ against each defendant, jointly and severally, for bone fracture, concussion, disfigurement.(knocked out teeth), and all other injuries. Tax exempt.

135.) Punitive damages in the amount of $100.000.$^{00}$ against each defendant, for Mental anguish, emotional distress, fear, anxiety, humiliation, pain, suffering, cruel and unusual punishment. Tax exempt.

136.) Nominal damages in the amount of $_____ against each defendant, for constitutional violation's. Tax exempt.

137.) order C.D.C.R. to set up an appointment with clear choice or some other dental office and replace Plaintiff's two now missing teeth with permanent dental implants.

138.) Plaintiff's costs in this suit.

139.) order defendants to pay reasonable attorney fees and costs if one is acquired or appointed.

140.) For this court to apply california Penal code § 661, to defendants, DEFAZIO and BLESSING, as this court see's fit.

141.) A jury trial on all issues triable jury.

142.) Grant other just and equitable relief this Honorable court deems necessary.

Signed this _25 th_ day of ____OCTOBER____, 2016.

THEON OWENS V-60905 FB4-207
NAME, C.D.C.R. NO., HOUSING.
California State Prison - Sacramento
PRISON.
100 Prison Road
ADDRESS.
Folsom, C.A. 95630
CITY, STATE, ZIP.

# X. VERIFICATION.

I have read the foregoing complaint and hereby verify that the matters alleged therin are true, except as to matter alleged on information and belief, and, as to those, I believe them to be true. I certify and declare under penalty of perjury that the foregoing is true and correct.

Executed at California State Prison - Sacramento

THEON OWENS
DECLARANT NAME.

Theon Owens
DECLARANT SIGNATURE.

# DECLARATION OF SERVICE BY U.S. MAIL

Re: Theon Owens v. Joseph Defazio et al                    Case No.

I, the undersigned, declare that I am 18 Years of age or older and I am a Party to the within cause. I am a Prisoner incarcerated in the California Department of Corrections and Rehabilitation, at the California state Prison — Sacramento _____. I have caused to be served a true copy of the attached Plaintiff's complaint filed under the civil rights Act. 42 U.S.C. _____ on the following. by Placing same in an envelope(s) addressed as follows:

Office of the clerk, united states
District court. Eastern District
of California. 501 I St., Ste 4-200,
Sacramento C.A. 95814-2322.

_____

MY address is Theon Owens V-60905 FAC-B-4-122, Cal. State Prison-SAC. 100 Prison Road, Folsom, CA. 95630
I am familiar with the institution mailing Practice of collection and Processing corre-
spondence for mailing with the united states Postal service. In accordance with that
Practice each correspondence Placed in the internal mail collection system is de-
Posited with the united states Postal service. on the following day in the ordinary
course of Process.

I have read the above declaration of service by u.s. mail and i declare under the
Penalty of Perjury of the laws of california that the foregoing is true and correct
and that this declaration was executed at the same time of servicing, on NOV 9
____ .2016 ___ at California State Prison-Sacramento _____, california.

THEON OWENS   Theon Owens
Declarant Name, And signature.