1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   THEON OWENS,                          No. 2: 16-cv-2750 JAM KJN P

12              Plaintiff,

13        v.                               ORDER AND FINDINGS AND
                                           RECOMMENDATIONS
14   JOSEPH DEFAZIO, et al.,

15              Defendants.

16

17   I.  Introduction

18        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is defendants' motion to dismiss pursuant to

20   Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 37.)  After carefully considering the record,

21   the undersigned recommends that defendants' motion be granted in part and denied in part.

22   II.  Legal Standard for Motion to Dismiss Brought Pursuant to Federal Rule of Civil Procedure

23   12(b)(6)

24        Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

25   "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

26   considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

27   must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

28   (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

                                           1

McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

III. Background

On December 8, 2016, the undersigned ordered service of the original complaint on defendants Eldridge, Martineck, Schultz, Couch, Mercado, Blessing, Drake, Murillo, Martinez, Byers, Bettencourt, Guffee, Rashev, Matthews, Lebeck, Brady, Burke, Defazio, Okoroike and Staggs-Boatright. (ECF No. 4.)

On March 2, 2017, the undersigned referred this action to the Post-Screening ADR Project. (ECF No. 22.) On March 23, 2017, a settlement conference was held. The action did not settle.

On July 20, 2017, defendants filed the pending motion to dismiss. (ECF No. 37.) The motion to dismiss is made on behalf of Rashev, Byers, Guffee, Matthews, Mercado, Okoroike, Staggs-Boatright, Eldridge, Couch, Schultz and Martineck. The remaining defendants, i.e., defendants Blessing, Drake, Murillo, Martinez, Bettencourt, Lebeck, Brady, Burke and Defazio, request a thirty day extension of time after the court rules on the motion to dismiss to file an answer. Good cause appearing, this request is granted.

IV. Plaintiff's Allegations

To put the motion to dismiss in context, the undersigned herein describes plaintiff's allegations against all defendants.

Plaintiff alleges that on February 18, 2015, defendants Byers and Rashev were passing out the daily breakfast and lunch meals on the top tier. (ECF No. 1 at 15.) Plaintiff alleges that defendants Byers and Rashev walked past plaintiff without offering him his meals. (Id.) When defendants passed plaintiff's cell, he asked if he could get his meals. (Id.) Defendants ignored plaintiff. (Id.)

Plaintiff confronted non-defendant Potter about the denial of food. (Id. at 16.) Potter allegedly refused to intervene. (Id.) Plaintiff became upset after being denied his meals. (Id.) Plaintiff began to throw water at his cell door throughout the morning. (Id.) At approximately 1225 hours, defendants Martineck, Byers, Blessing, Bettencourt and Rashev, and Potter, approached plaintiff's cell door. (Id.) Defendant Martineck told plaintiff that Potter alleged that plaintiff had gassed him (i.e. thrown urine or feces at him). (Id.) Defendant Martineck asked plaintiff to submit to mechanical restraints so that his cell could be searched and all liquid removed from his cell. (Id.)

Plaintiff complied with defendant Martineck's request and submitted to restraints. (Id.) Plaintiff alleges that defendant Martineck then instructed his subordinates to place plaintiff in the upper tier shower. (Id. at 16-17.) Once plaintiff was in the shower, defendant Martineck instructed his subordinates to search plaintiff's cell and remove all containers. (Id. at 17.) Once the cell was searched, defendant Martineck instructed his subordinates to put plaintiff back in his cell. (Id.)

3

Defendant Bettencourt then used a wet swab on Potter's shirt sleeve. (Id.) Plaintiff was written up for a rules infraction. (Id.) Potter then sat in front of plaintiff's cell. (Id.)

At approximately 1315 hours, defendants Defazio, Brady, Lebeck and Burke came to plaintiff's cell. (Id.) These defendants instructed plaintiff to cuff up, informing him that an "unidentified c/o (defendant Bettencourt)" said that he had been gassed by plaintiff. (Id.) Plaintiff told defendants that he had not gassed anyone and did not want to come out of his cell. (Id.) Plaintiff told them that defendant Martineck had already addressed the allegation and had already searched his cell. (Id. at 17-18.)

Defendant Defazio told plaintiff that defendants Blessing and Martineck wanted him to cuff up and come down to the rotunda to talk and that if he refused, he would be extracted from his cell. (Id. at 18.) Plaintiff then agreed to submit to mechanical restraints. (Id.) Defendant Defazio then signaled for tower officer defendant Matthews to open plaintiff's cell door. (Id.) Defendant Defazio then grabbed plaintiff's arm and slammed him on the concrete floor. (Id.) Plaintiff alleges that the other defendants who were present then began to strike plaintiff in the face with their clenched fists. (Id.)

Plaintiff alleges that this beating took place in the presence of defendant Matthews and non-defendant Brown. (Id. at 19.) Plaintiff alleges that neither defendant Matthews nor non-defendant Brown attempted to stop the attack or sound the unit alarm. (Id.)

Plaintiff alleges that during the beating, defendant Defazio punched plaintiff in the mouth, knocking out several of his teeth. (Id.) Plaintiff alleges that defendant Defazio also tore 25 to 30 dreadlocks out of plaintiff's head. (Id.)

After plaintiff saw blood gushing from his mouth, he yelled out, "HIV," in an attempt to stop the attack. (Id. at 20.) At that time, all defendants stopped attacking plaintiff except for defendant Defazio. (Id.) Defendant Defazio said to plaintiff, "No you don't nigger. You think you run this place, you walk around here like you run this place. You're going to learn nigger." (Id.) One of the correctional officers then told defendant Matthews to sound the unit alarm, which then occurred. (Id.)

////

Defendant Martinez then ran into the section and up the stairs. (Id.) Defendant Martinez pulled the plaintiff's legs up and kicked him in the testicles. (Id.)

Defendants Blessing, Bettencourt and Rashev then came into the section. (Id.) Defendants Rashev and Bettencourt came up the stairs, and were later joined by defendant Blessing. (Id.) After he came up the stairs, defendant Blessing kicked plaintiff in the face with his steel work boot. (Id.) Then "all present defendants" began to kick and hit plaintiff in the face. (Id.) Defendant Guffee, who was at the bottom of the stairs, observed this violence. (Id. at 21.) Defendant Guffee did not attempt to stop this violence, nor did he object. (Id. at 21.) Plaintiff alleges that defendant Matthews also saw this violence but failed to intervene. (Id.)

By this time, plaintiff's left eye was completely swollen shut and bleeding, and his right eye was swollen shut approximately 80%. (Id.) Defendants Drake and Murillo entered the section and came up the stairs. (Id.) Defendant Blessing told defendants Drake and Murillo to take plaintiff to the rotunda holding cell. (Id.) Defendants Drake and Murillo grabbed plaintiff and began to drag him down the stairs. (Id.)

Once defendants Drake and Murillo had dragged plaintiff to the bottom of the stairs, they slammed plaintiff's head into the door frame. (Id. at 21-22.) Plaintiff alleges that once defendants Drake and Murillo had dragged him into the rotunda, they held him up so that the other defendants could strike plaintiff. (Id. at 22.) Defendants Defazio and Blessing then began striking and kicking plaintiff in the face. (Id.) While plaintiff was being struck in the head, he saw a flash of light which was a concussion. (Id.) Defendants Murillo and Drake then threw plaintiff into the holding cage. (Id.)

Plaintiff alleges that defendant Blessing then called the other defendants into the office. (Id. at 23.) Defendant Blessing told the other defendants, "We have to cover our asses." (Id.) Plaintiff alleges that the defendants began to conspire regarding how to cover-up what they had done to plaintiff. (Id.) Plaintiff heard defendant Defazio say, "I'm going to put in my report that he attempted to head butt me and spit on me." (Id. at 24.) Plaintiff heard non-defendant Potter tell the inmate worker to clean up the blood and hair on the tier. (Id.)

////

Approximately fifteen minutes later, a guard contacted defendant Nurse Okoroike, requesting that she medically evaluate plaintiff. (Id.) Defendant Okoroike asked plaintiff what happened to him. (Id.) Plaintiff told defendant Okoroike what happened, i.e., he was beaten and kicked by defendants. (Id.) Plaintiff alleges that defendant Okoroike did not ask the Correctional Officers to pull plaintiff from the holding cell so that she could perform her duty and do a full body inspection. (Id.) Defendant Okoroike noted a few injuries on plaintiff's face, then left. (Id.)

Approximately three minutes later, defendant Martineck arrived on the unit. (Id. at 24-25.) Defendant Martineck grabbed the CDCR 7219 Medical Report of Injury or Unusual Occurrence from defendant Blessing. (Id. at 25.) Defendant Martineck instructed defendant Blessing to follow him out on to the yard. (Id.) Plaintiff was unable to make out what they were saying. (Id.) While defendant Blessing was talking, defendant Martineck became agitated and began talking in a loud, aggressive manner. (Id.)

Defendant Martineck returned to the rotunda and began to exit the unit door. (Id.) Plaintiff asked if he could speak with him. (Id.) Defendant Martineck said, "not now, I have to go take care of something." (Id.) As defendant Martineck exited the unit, defendant Blessing held up his middle finger toward defendant Martineck and said in a low tone, "Fuck you. You're going to take his side over me. He is an inmate." (Id.)

At approximately 1335 hours, plaintiff was taken to A Facility Triage by non-defendant McCarvel and defendants Murillo and Drake. (Id.) Plaintiff complained that he was unable to focus his vision, seeing double and feeling dizzy. (Id. at 26.) Non-defendant Dr. Wedell told plaintiff that these symptoms would pass. (Id.) Defendant Mercado then entered the Triage area to relieve defendant McCarvel, so that McCarvel could prepare his report regarding his involvement in the incident. (Id.)

Plaintiff alleges that his concussion symptoms persisted and he became irritable because of the circumstances of the beating. (Id.) Plaintiff alleges that he began to swear and state his thoughts out loud about the defendants. (Id.) Based on plaintiff's statements, as well as plaintiff's injuries, defendant Mercado became aware of what had happened. (Id.) In an attempt

to cover-up for the defendants who had inflicted the beating, plaintiff alleges that defendant falsely charged plaintiff with threatening staff.[1]  (Id. at 26-27.)

Plaintiff alleges that non-defendant Dr. Wedell instructed his assistant, non-defendant Nurse Nicolaou, to apply an ice pack to plaintiff's eyes to stop them from swelling shut.  (Id. at 27.)  Defendant Mercado told Nurse Nicolauo, "No, he cannot have an ice pack."  (Id.)  Nurse Nicolaou told plaintiff that she would document that defendant Mercado said that he could not have an ice pack.  (Id.)

Plaintiff was then taken to a use of force interview.  (Id.)  As plaintiff was wheeled back to his cell after the interview, he saw defendant Byers.  (Id. at 28.)  Plaintiff asked defendant Byers, "is that how you are getting down, jumping on inmates with their hands cuffed behind their back and knocking out their teeth."  (Id.)  Defendant Byers replied, "Yeah."  (Id.)

Approximately three hours after the incident, defendant Defazio asked defendant Psychiatric Technician Staggs-Boatright to write a CDCR 7219 alleging that he, defendant Defazio, had suffered injuries during the incident.  (Id.)  Plaintiff alleges that defendant Staggs-Boatright did not see any injuries on defendant Defazio, but agreed to help him anyway.  (Id.)  Defendant Boatright wrote that defendant Defazio had pain in his chest from being head butted by plaintiff and that his hand hurt from punching plaintiff in the face.  (Id.)  Plaintiff alleges that this report was a "job insurance" plan so defendant Defazio would not get fired for violating the law.  (Id.)

Plaintiff alleges that on February 19, 2015, defendant Byers and non-defendant Parker denied him his breakfast and lunch.  (Id. at 29.)  Later that day, non-defendants Igbowke and Babbit denied plaintiff his evening meal.  (Id.)  On February 20, 2015, defendant Byers and non-defendant Parker denied plaintiff his "breakfast meals."  (Id.)

////

---

[1]  Plaintiff does not allege a claim against defendant Mercado for making the allegedly false charges.  In any event, the issuance of a false rules violation report does not, in and of itself, support a claim under section 1983.  See Ellis v. Foulk, 2014 WL 4676350 at *2 (E.D. Cal. 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirements as set forth in Wolff v. McDonnell.'") (citing Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984).

Later that day, plaintiff told defendant Martineck that staff was refusing to give him food. (Id.) Plaintiff also told defendant Martineck that he feared for his safety. (Id.) Defendant Martineck told plaintiff to say he was suicidal so that he could get him off the block. (Id.) Plaintiff told defendant Martineck that he was suicidal and that he wanted his food. (Id.) Defendant Martineck had plaintiff moved to a different housing block. (Id. at 29-30.)

Later that day, plaintiff was put in a holding cage, per defendant Martineck's order to have him evaluated by a psychologist based on his claims of feeling suicidal. (Id. at 30.) While he was in the holding cell, defendant Matthews began taunting plaintiff, mimicking the sounds plaintiff made as he was beaten. (Id.)

On March 3, 2015, non-defendant Demps came to plaintiff's housing unit and provided him with copies of the Rules Violation Reports that had been written against plaintiff. (Id.) Demps asked plaintiff to write down the names of any witnesses and documentary evidence he wanted to present at the disciplinary hearing. (Id.)

After reviewing the documentation regarding the incident, plaintiff discovered that defendant Martineck had helped to cover-up the incident. (Id.) Defendant Martineck had allowed staff to change their story and report things that did not happen. (Id.) Plaintiff also alleges that he discovered that defendant Okoroike had attempted to conceal the injuries that he suffered. (Id. at 31.) Plaintiff again alleges that defendant Staggs-Boatright prepared a report falsely stating that defendant Defazio had suffered injuries during the incident, i.e., pain in his chest and hand. (Id. at 32.)

Plaintiff alleges that on April 2, 2015, defendant Couch was assigned as an Investigative Employee to help plaintiff prepare for the disciplinary hearing. (Id.) Plaintiff told defendant Couch that there were witnesses and documentary evidence. (Id. at 32-33.) Plaintiff told defendant Couch that the names of the eyewitnesses were on the CDC 115-A form. (Id.) Plaintiff also told defendant Couch that he (plaintiff) had prepared questions for the witnesses. (Id. at 33.) Defendant Couch said he had received the questions and that he would interview the witnesses and gather the documents identified by plaintiff. (Id.)

////

Plaintiff alleges that on April 22, 2015, he received defendant Couch's report. (Id.) Plaintiff alleges that defendant Couch attempted to conceal witness testimony and had tampered with evidence. (Id.) Defendant Couch had prepared a new report stating that plaintiff had not requested anything. (Id.) Defendant Couch also refused to ask the witnesses the questions proposed by plaintiff. (Id.)

Plaintiff alleges that on May 28, 2015, defendant Schultz held the disciplinary hearing regarding the charges made against plaintiff by defendant Defazio. (Id. at 34.) Plaintiff alleges that defendant Schultz refused plaintiff's request for witnesses and to present documentary evidence. (Id. at 34-35.) Defendant Schultz found plaintiff guilty of head butting defendant Defazio. (Id.) Defendant Schultz told plaintiff that he would not consider his evidence and witnesses because, "I am not going to deal with all of that, the office of Internal Affairs can deal with that since they are investigating the assault and battery that happen[ed] to you." (Id. at 35.) Plaintiff alleges that defendant Schultz denied his request for witnesses by stating, "This R.V.R. [rules violation report] is what I have to go off of." (Id.)

Plaintiff alleges that after being found guilty, he was punished by being deprived of all personal property, vendor packages, and telephone privileges for 90 days. (Id. at 35, 37.) In addition, plaintiff was referred to the Classification Committee, which sentenced him to an 18 Month Aggravated Security Housing Unit ("SHU") term. (Id. at 35, 37.) Plaintiff alleges that the SHU requires that inmates are housed in an isolated cell for up to 22 hours a day. (Id. at 37.) Inmates in the SHU have limited visiting privileges, are denied personal property and telephone privileges, have limited access to the commissary, have limited access to packages, limited access to educational, rehabilitative and recreational programs, movement outside the cell is restricted to mechanical restraints, are unable to work and have limited law library access. (Id.)

Plaintiff alleges that on June 17, 2015, defendant Mercado came to his cell door and said, "I wanted to see your smile. Have they fixed your two teeth yet, let me see." (Id. at 36.) Plaintiff felt attacked by defendant Mercado's comments and told him to get the "fuck away" from the door. (Id.) Defendant Mercado then told plaintiff, "that's why you got your ass beat down and your teeth knocked down your throat, you little bitch." (Id.) Plaintiff and defendant Mercado then

began to argue. (Id.) Defendant Mercado told plaintiff, "You bitch, you're lucky I was not there because I would have knocked out even more." (Id.) Plaintiff then said, "You would not have done shit but write a fake report like you did." (Id. at 37.) Defendant Mercado replied, "You got found guilty didn't you." (Id.) At that time, other staff began to enter the section. (Id.) Defendant Mercado noticed the other staff and walked away. (Id.)

On June 30, 3015, defendant Eldridge upheld defendant Schultz's findings. (Id. at 35-36.)

On August 26, 2015, the Institutional Classification Committee ("ICC") reviewed the rules violation report. (Id. at 37.) The ICC upheld the actions and findings of defendants Eldridge, Schultz and Couch. (Id.) The ICC sentenced plaintiff to an 18 month Security Housing Unit ("SHU") term. (Id.)

V. Discussion

Defendants move to dismiss all claims against defendants Rashev, Byers, Guffee, Matthew, Mercado, Okoroike, Boatright-Staggs, Eldridge, Couch, Schultz and Martineck.

A. Defendants Rashev and Byers

*Alleged Denial of Food*

Plaintiff alleges that on February 18, 2015, defendants Byers and Rashev denied him his breakfast and lunch. Plaintiff alleges that on February 19, 2015 defendant Byers denied him his breakfast and lunch. Plaintiff alleges that he was denied his evening meal on February19, 2015, by non-defendants. Plaintiff alleges that on February 20, 2015, defendant Byers denied him his "breakfast meals."

The Eighth Amendment protects a prisoner's right to receive food "adequate to maintain health." Lemaire v. Maas, 12 F.3d 1444, 1456 (9th Cir. 1993). The Ninth Circuit has held that denial of 16 meals in 23 days "is a sufficiently serious deprivation because food is one of life's basic necessities." Foster v. Runnels, 554 F.3d 807, 812-13 (9th Cir. 2009). In that case, the court did not reach the conclusion whether the meals plaintiff did receive were adequate to maintain his health. Other cases finding a sufficiently serious deprivation involve the plaintiff being deprived of food entirely for more than two consecutive days. See Dearman v. Woodson, 429 F.2d 1288, 1289 (10th. Cir. 1970) (no food for twelve days); Reed v. McBride, 178 F.3d 849,

10

853 (7th Cir. 1999) ("infirm" plaintiff did not receive food for 3-4 days at a time); <u>Robles v. Coughlin</u>, 725 F.2d 12, 16 (2d Cir. 1983) (no food for 12 days, some consecutive, out of 53-day period). In another case, the Eighth Circuit found that depriving plaintiff of four consecutive meals in two days is a sufficiently serious deprivation. <u>Simmons v. Cook</u>, 154 F.3d 805, 809 (8th Cir. 1998).

As discussed above, plaintiff alleges that defendant Rashev denied him breakfast and lunch on one day. Based on the case law cited above, the undersigned finds that this claim against defendant Rashev does not state a potentially colorable Eighth Amendment claim. Accordingly, this claim against defendant Rashev should be dismissed.

Plaintiff alleges that Byers denied him five meals over three days. However, plaintiff is also claiming that he was denied four consecutive meals (breakfast, lunch and dinner on February 19, 2015, and breakfast on February 20, 2015), and that defendant Byers denied him three of those four meals. Even assuming defendant Byers knew that plaintiff would not and did not receive his fourth meal, for the reasons stated herein, the undersigned finds no Eighth Amendment violation.

As discussed above, in <u>Simmons v. Cook</u>, 154 F.3d 805 (1998), the Eighth Circuit found that inmates' rights were violated when they were denied four consecutive meals. The undersigned finds <u>Simmons</u> distinguishable from the instant action. In reaching this holding, the Eighth Circuit found an Eighth Amendment violation based on the totality of the conditions of the plaintiffs' confinement. 154 F.3d at 808. The inmates in <u>Simmons</u> were paraplegic, wheelchair bound and confined in inadequate maximum security cells where the defendants made sure that the plaintiffs were unable to access their food trays (their wheelchairs could not reach the food slots), and were not given the appropriate supplies and assistance so that they could have bowel movements. The Eighth Circuit found that "[s]uch conditions denied [plaintiffs] 'the minimal civilized measure of life's necessities.'" <u>Id.</u> at 808, citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).

In the instant case, plaintiff alleges that he did not receive breakfast and lunch on November 18, 2015 (thus he received dinner that day), that he received no meals on November

19, 2015, and no breakfast on November 20, 2015. Based on the case law discussed above, the undersigned finds that such facts, and the absence of any other conditions of confinement claims alleged to have occurred in combination with such deprivations on these dates, fail to state a claim under the Eighth Amendment. Accordingly, the motion to dismiss this claim against defendant Byers should be granted.

*Excessive Force*

Defendants argue that plaintiff has failed to allege sufficient facts to state a potentially colorable excessive force claim against defendant Rashev. Defendants argue that plaintiff makes no specific allegations of excessive force against defendant Rashev. Defendants argue that plaintiff merely lumps defendant Rashev with the other alleged excessive force defendants based upon his alleged presence at the incident.

When prison officials stand accused of using excessive force, the core judicial inquiry is "... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. See Whitley, 475 U.S. at 320-21. In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7.

Plaintiff's excessive force claim against defendant Rashev follows herein:

> Defendants Blessing, Bettencourt and Rashev then came into the section. Rashev and Bettencourt came up the stairs, while Blessing immediately started clearing the alarm. Once the alarm was cleared Blessing then came up the stairs and then he kicked the plaintiff in the face with his steel toe work boot. At which time all present defendants then began to kick and hit the plaintiff in the face.

(ECF No. 1 at 20.)

While defendants argue that plaintiff fails to attribute any particular alleged excessive force acts to defendant Rashev, the complaint alleges that "all present defendants," which included defendant Rashev, kicked and hit plaintiff in the face. Plaintiff also clearly describes the movements of defendant Rashev prior to the alleged excessive force, i.e., coming into the section and then going up the stairs. These allegations are more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Defendants' motion to dismiss plaintiff's excessive force claim against defendant Rashev should be denied.

B. Defendants Guffee and Matthews

Defendants move to dismiss the claims against defendants Guffee and Matthews. Plaintiff alleges that defendants Guffee and Matthews observed the alleged incidents of excessive force but failed to intervene. The undersigned describes these allegations herein.

Plaintiff alleges that defendant Matthews witnessed defendant DeFazio and other defendants beat plaintiff. (ECF No. 1 at 18.) Plaintiff alleges that defendant Matthews observed this beating while he was in the tower, which was approximately 20 to 25 feet from where the attack occurred. (Id. at 19.) Plaintiff alleges that defendant Matthews opened the cell door for defendant Defazio. (Id. at 18.) Plaintiff alleges that defendant Matthews did not attempt to stop the attack or sound the unit alarm. (Id. at 19.)

Plaintiff alleges that defendant Guffee failed to intervene when defendants Blessing, Bettencourt and Rashev kicked and hit plaintiff in the face. (Id. at 20-21.) Plaintiff alleges that defendant Guffee, who was at the bottom of the stairs when this beating occurred, did not stop the violence or object. (Id.) Plaintiff alleges that defendant Matthews also saw this violence and failed to intervene. (Id.)

A prison official who does not himself use force may violate the Eighth Amendment if he has a reasonable opportunity to intervene in other officials' use of excessive force but does not do so. See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

Defendants argue that plaintiff has not pled sufficient facts demonstrating that defendant Matthews had a reasonable opportunity to intervene. Defendants argue that plaintiff alleges that

13

defendant Matthews was in the control booth, 20-25 feet away, and has pled no facts showing that defendant Matthews was aware that defendants used excessive force. Defendants also argue that by the time defendant Matthews would have been able to observe the force, the incident would have been over by the time he arrived at the incident.

For the following reasons, the undersigned finds that plaintiff has pled sufficient facts supporting a claim that defendant Matthews saw the beatings as they occurred. As discussed above, plaintiff alleges that defendant Matthews witnessed the first beating by defendant Defazio and the other defendants, and the second beating by defendants Blessing, Bettencourt and Rasheve. Regarding the first incident, plaintiff alleges that it occurred "in the presence" of defendant Matthews, who failed to intervene. (ECF No. 1 at 19.) Regarding the second incident, plaintiff alleges that defendant Matthews "observed the violations occurring," but failed to intervene. (Id. at 21.) Plaintiff also alleges that defendant Matthews later taunted plaintiff, by mimicking the crying sounds that plaintiff made during the beatings "while Matthews watched from the tower." (Id. at 30.) Based on these allegations, the undersigned finds that plaintiff has pled sufficient facts supporting a claim that defendant Matthews was aware of the alleged beatings when they occurred.

Defendants' argument that plaintiff has not pled sufficient facts demonstrating that defendant Matthews had a reasonable opportunity to intervene is without merit. Plaintiff alleges that defendant Matthews sounded the unit alarm only after his teeth were knocked out, his dreadlocks were torn out of his head, and after he yelled, "HIV." Based on these allegations, plaintiff has stated a potentially colorable claim that defendant Matthews violated his Eighth Amendment rights by failing to sound the alarm sooner than he did. Plaintiff also alleges that defendant Matthews failed to sound the alarm when he was beaten again by defendants Blessing, Bettencourt and Rashev. Accordingly, the motion to dismiss the claims against defendant Matthews should be denied.

Defendants argue that plaintiff has not pled sufficient facts demonstrating that defendant Guffee had a reasonable opportunity to intervene. Defendants argue that plaintiff has not alleged how defendant Guffee could see the alleged excessive force if he was at the bottom of the stairs

14

1    when it occurred or how he had an opportunity to intervene.

2         Plaintiff alleges that defendant Guffee "observed" the alleged excessive force from the

3    bottom of the stairs. (ECF No. 1 at 21.) For purposes of a motion to dismiss pursuant to Rule

4    12(b)(6), these allegations are sufficient to demonstrate that defendant Guffee had knowledge of

5    the alleged excessive force. Whether defendant Guffee was actually able to see, or hear, the

6    alleged incident from this viewpoint is better left for summary judgment. These allegations are

7    also adequate to state a claim that defendant Guffee had an opportunity to intervene, either by

8    coming up the stairs or, possibly, sounding an alarm. Whether defendant Guffee was actually

9    able to intervene is also better left for summary judgment. For these reasons, the motion to

10   dismiss the claims against defendant Guffee should be denied.

11        C. Defendants Mercado, Staggs-Boatright, Okoroike and Martineck

12        Defendants argue that plaintiff's claims against defendants Mercado, Staggs-Boatright,

13   Okoroike and Martineck for violating his Eighth Amendment right to adequate medical care

14   should be dismissed. Defendants also move to dismiss plaintiff's verbal harassment claim against

15   defendant Mercado.

16        *Legal Standard for Eighth Amendment Claim Alleging Inadequate Medical Care*

17        To state an Eighth Amendment claim based on a prisoner's medical treatment, the prisoner

18   must demonstrate that the defendant was "deliberately indifferent" to his "serious medical needs."

19   Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To establish a "serious medical need," the

20   prisoner must demonstrate that "failure to treat a prisoner's condition could result in further

21   significant injury or the 'unnecessary and wanton infliction of pain.'" Jett, 439 F.3d at 1096

22   (citation omitted).

23        To establish "deliberate indifference" to such a need, the prisoner must demonstrate: "(a)

24   a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm

25   caused by the indifference." Id. Deliberate indifference "may appear when prison officials deny,

26   delay or intentionally interfere with medical treatment, or it may be shown by the way in which

27   prison physicians provide medical care." Id. (citations omitted). The defendant must have been

28   subjectively aware of a serious risk of harm and must have consciously disregarded that risk. See

<u>Farmer v. Brennan</u>, 511 U.S. 825, 845 (1994).

*Defendant Mercado-Eighth Amendment*

The undersigned restates plaintiff's Eighth Amendment claim against defendant Mercado herein.

Plaintiff alleges that after the beatings, he was seen by Dr. Wedell. (ECF No. 1 at 27.) Plaintiff alleges that Dr. Wedell instructed Nurse Nicolaou to apply an ice pack to his eyes to stop them from swelling shut. (<u>Id.</u>) Plaintiff alleges that defendant Mercado told Nurse Nicolaou that plaintiff could not have an ice pack. (<u>Id.</u>) Plaintiff alleges that Nurse Nicolaou told plaintiff that she would document that defendant Mercado stated that plaintiff could not have an ice pack. (<u>Id.</u>)

Defendants argue that plaintiff's failure to receive an ice pack does not state a claim for deliberate indifference. Defendants cite three cases in support of this argument.

First, defendants cite <u>Mouton v. Villagran</u>, 2015 WL 5935316 (N.D. Cal. 2015). In <u>Mouton</u>, the plaintiff fell down from a bus returning to jail from court. 2015 WL 5935316 at *1. The plaintiff complained of a scrape to her knee and a sore back, which she rated as a 3 on a 10 point scale. (<u>Id.</u>) The defendant cleaned and dressed the abrasion on the plaintiff's knee. (<u>Id.</u>) The plaintiff was able to walk. (<u>Id.</u>) The defendant ordered an ice pack for three days, apparently for the back injury. (<u>Id.</u>) The defendant did not provide pain medication, because the plaintiff was already receiving pain medication for an unrelated condition. (<u>Id.</u>) The defendant also did not order x-rays, because it was a minor fall with minor injuries. (<u>Id.</u>)

In addressing the summary judgment motion, the court in <u>Mouton</u> stated that it was not clear whether the plaintiff's injuries qualified as serious medical needs. (<u>Id.</u> at 3.) Assuming that the scraped knee and sore back were serious medical needs, the court found no deliberate indifference. (<u>Id.</u>) In <u>Mouton</u>, the plaintiff alleged, in part, that her failure to receive an ice pack until three hours after the incident violated her Eighth Amendment rights. (<u>Id.</u>) The district court summarily rejected this claim. (<u>Id.</u>) The district court also found that treating plaintiff's injuries with an ice pack, rather than providing additional treatment, was not unconstitutional.

<u>Mouton</u> can be distinguished from the instant case. The injuries in <u>Mouton</u>, for which ice pack was prescribed, were not clearly serious. In the instant case, plaintiff alleges that he was

16

prescribed the ice pack to prevent his eyes from swelling shut, i.e., a serious injury. In addition, the court in <u>Mouton</u> found no Eighth Amendment violation based on a three hour delay in plaintiff's receipt of the ice pack. In the instant case, plaintiff alleges defendant Mercado prevented him from receiving an ice pack. In addition, <u>Mouton</u> was decided on summary judgment, rather than on a motion to dismiss for failure to state a claim. For these reasons, the undersigned is not persuaded by defendants' citation to this case.

Defendants next cite <u>Micenheimer v. CDCR Pers. In Their Individual Capacity</u>, 2016 WL 4203819 (C.D. Cal. 2016). Defendants state that in <u>Micenheimer</u>, the court found that the plaintiff's claim that he was forced to go without ice packs following an injury was not sufficient to state a claim for deliberate indifference.

In <u>Micenheimer</u>, the plaintiff alleged that he was "denied appropriate medical care, forced to endure severe pain, denied adequate therapy, forced to walk with a buckling knee with no cane, left to develop a crippling hand disability, left to develop a deformity in his shoulder and hand, and forced to go without ice packs." 2016 WL 4203816 at *2. The court found that these allegations were "wholly conclusory and devoid of supporting facts." (<u>Id.</u> at *4.) The court found that, "merely making these conclusory statements and attaching dozens of medical records is insufficient to adequately set forth a deliberate indifference claim." (<u>Id.</u>)

<u>Micenheimer</u> can be distinguished from the instant case. The court in <u>Micenheimer</u> found that the plaintiff's claims regarding the ice pack were conclusory and devoid of supporting facts. In the instant case, plaintiff's claims regarding defendant Mercado's alleged denial of the ice pack are neither conclusory nor devoid of supporting facts.

Finally, defendants cite <u>Jones v. Blanas</u>, 2007 WL 137168 (E.D. Cal. 2007). Defendants state that in <u>Jones</u>, the court found that where deliberate indifference was based on denial of an ice pack for a swollen ankle, disagreement over whether treatment should have included icing to ease the swelling reflected a mere difference of opinion about the proper course of treatment, which does not rise to a constitutional claim.

In <u>Jones</u>, the plaintiff alleged that the defendant, Dr. Mabeus, provided inadequate medical care for his sprained ankle. Plaintiff alleged, in part, that defendant Dr. Mabeus refused

17

to give plaintiff an ice pack. 2007 WL 137168 at *7. The court granted summary judgment to defendant Dr. Mabeus on the grounds that the disagreement over whether treatment of plaintiff's sprained ankle should have included icing to ease the swelling reflects a mere difference of opinion about the proper course of treatment that does not raise to the level of a cognizable constitutional claim. (Id.)

Jones can be distinguished from the instant case. Jones involved an inmate disagreeing with a doctor regarding whether icing was the appropriate treatment for a sprained ankle. In the instant case, plaintiff alleges that defendant Mercado, a non-medical offer, directed Nurse Nicolaou to, in essence, disobey Dr. Wadell's order that plaintiff receive an ice pack to prevent his eyes from swelling shut. These allegations do not involve a mere difference of opinion regarding appropriate medical care.

Plaintiff's allegation that that defendant Mercado refused to allow plaintiff to receive the ice pack states a potentially colorable Eighth Amendment claim. Accordingly, defendants' motion to dismiss this claim should be denied.

*Defendant Staggs-Boatright*

Plaintiff alleges that defendant Staggs-Boatright prepared a report falsely stating that defendant Defazio had suffered injuries during the incident. (ECF No. 1 at 28.) Plaintiff alleges that defendant Staggs-Boatright saw no injuries on defendant Defazio, but wrote in the report that defendant had pain in his chest from being head butted by plaintiff and hand pain. (Id.) Plaintiff alleges that defendant Staggs-Boatright prepared this report as "job insurance" for defendant Defazio so he would not get fired. (Id.)

Defendants argue that the allegations against defendant Staggs-Boatright do not demonstrate that she was deliberately indifferent to plaintiff following the alleged excessive force incident. The undersigned does not construe plaintiff's allegations to state an Eighth Amendment claim for denial of adequate medical care. Instead, plaintiff is alleging that defendant Staggs-Boatright prepared a false report in order to help defendant Defazio cover-up the alleged excessive force incident, i.e., defendant Staggs-Boatright conspired with defendant Defazio to violate plaintiff's constitutional rights.

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (internal quotation marks and citation omitted), and an "actual deprivation of...constitutional rights [that] resulted from the alleged conspiracy." Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (internal quotation marks and citation omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441 (internal quotation marks and citation omitted).

Plaintiff's allegations against defendant Staggs-Boatright do not state a potentially colorable conspiracy claim for the following reasons. Plaintiff alleges that defendant Staggs-Boatright prepared a report containing defendant Defazio's description of his injuries. These injuries were not based on defendant Staggs-Boatright's personal observations of defendant Defazio, but were instead based on what he told her. These allegations do not demonstrate that defendant Staggs-Boatright falsely reported her own observations in an attempt to cover-up the alleged excessive force. Under these circumstances, defendant Staggs-Boatright's preparation of the report based on what defendant Defazio told her about his injuries does not demonstrate that she conspired with defendants to violate plaintiff's constitutional rights. Accordingly, the claims against defendant Staggs-Boatright should be dismissed.

*Defendant Okoroike*

Plaintiff alleges that after the beatings, a guard contacted defendant Nurse Okoroike, requesting that she medically evaluate plaintiff. (ECF No. 1 at 24.) Defendant Okoroike came to the holding cell where plaintiff was held and asked plaintiff what happened to him. (Id.) Plaintiff told defendant Okoroike that he had been beaten up. (Id.) Plaintiff alleges that defendant Okoroike did not ask the correctional officers to pull plaintiff from the holding cell so that she could perform her duty and do a full body inspection. (Id.) Instead, she noted a few injuries that were on plaintiff's face, and then she left. (Id.) Plaintiff alleges that defendant Okoroike prepared a false report in violation of his Eighth Amendment rights. (Id. at 43.)

////

19

Defendants argue that defendant Okoroike's failure to remove plaintiff from his cell to evaluate his injuries does not state a potentially cognizable Eighth Amendment claim.

In his opposition to the pending motion, plaintiff clarifies that he is raising two claims against defendant Okoroike. First, plaintiff is alleging that defendant Okoroike failed to provide him with adequate medical care. Second, plaintiff is alleging that defendant Okoroike prepared a report falsely documenting plaintiff's injuries in an attempt to cover-up the alleged excessive force.

The undersigned agrees that plaintiff has not pled sufficient facts to support a claim that defendant Okoroike denied him medical care in violation of the Eighth Amendment. Plaintiff alleges that later the same day, he was taken to A Facility Triage where he received treatment for his injuries. Thus, plaintiff's Eighth Amendment claim against defendant Okoroike is based on a delay in his receipt of medical treatment. A delay in treatment does not violate the Eighth Amendment unless the delay caused further harm. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992). Plaintiff does not allege that he suffered any harm as a result of the delay in his receipt of treatment. Accordingly, this Eighth Amendment claim against defendant Okoroike should be dismissed.

Plaintiff alleges that defendant Okoroike prepared a report minimizing his injuries in an attempt to cover-up the alleged excessive force. These allegations state a potentially colorable conspiracy claim. Accordingly, the motion to dismiss this claim should be denied.

*Defendant Martineck*

It appears that the gravamen of plaintiff's claim against defendant Martineck is that he attempted to cover-up the alleged excessive force by preparing false reports, etc. In relevant part, plaintiff alleges,

> Upon receiving written documentation regarding the incident of February 18, 2015, it was found that Lt. Martineck had committed the act of deliberate indifference by the specific acts of aiding and abetting and attempting to conceal evidence, by continuously allowing involved staff to change their story of the event, by allowing them to submit clarification reports one after the next, and by helping them on what to say, by leading them with his questions. He also tampered with evidence/documents by adding things that did not happen on his CDCR 831-A1 crime/incident report Part A1-

20

Supplemental (CDCR 831-A1) page 2 of 8 (e.g., "Officer Defazio attempted to apply a spit net to Owens head and Owens again tried to bite Officer Defazio at which time Officer Defazio again struck Owens in the head area), and minimizing the injuries the plaintiff suffered (e.g. he stated that the plaintiff received [A] missing tooth, [an] abrasion to the lip, [a] swollen and dislocated left eye, as well as reddened forehead area) on his CDCR 837-A1 page 2 of 8. He also did not have all staff that were mentioned in other reports write a report.

(ECF No. 1 at 31.)

Defendants argue that plaintiff is claiming that defendant Martineck, a lieutenant, merely oversaw the preparation of the crime incident report. Defendants argue that to the extent plaintiff is attempting to impose liability on defendant Martineck on a theory of supervisory liability based simply on his position as the lieutenant and supervisor of the defendants who allegedly used excessive force on plaintiff, that theory is improper.

The undersigned agrees with defendants that supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert. denied, 442 U.S. 941 (1979).

Plaintiff does not allege that defendant Martineck merely oversaw the preparation of the incident reports. Instead, plaintiff alleges that defendant Martineck directly participated in the preparation of the incident report by adding things that did not happen and minimizing plaintiff's injuries. Plaintiff also alleges that defendant Martineck allowed staff to change their story in an attempt to cover-up the alleged excessive force. These allegations state a potentially colorable claim against defendant Martineck for conspiring to cover-up the alleged incidents of excessive force. Accordingly, defendants' motion to dismiss plaintiff's conspiracy claim against defendant Martineck should be denied.

////

////

21

*Defendant Mercado-Verbal Harassment*

Defendants also move to dismiss plaintiff's claim against defendant Mercado for verbally harassing him on June 17, 2015.

"[V]erbal harassment or abuse...[alone] is insufficient to state a constitutional deprivation under 42 U.S.C. 1983." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (citation and internal quotation omitted). "A mere threat may not state a cause of action" under the Eighth Amendment, even if it is a threat against exercising the right of access to the courts. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam). Only verbal harassment clearly intended to humiliate or endanger the inmate may, in certain circumstances, violate the Constitution. See Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998); see also Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986) (finding potentially cognizable Eighth Amendment claim based on the plaintiff's allegation that a correctional officer "pointed a lethal weapon at the prisoner, cocked it, and threatened him with instant death").

Plaintiff alleges that defendant Mercado taunted him and told plaintiff what he (defendant Mercado) would have done to him had he been present during the alleged beatings. Defendant Mercado did not threaten plaintiff with imminent or future injury. Based on the law cited above, the undersigned finds that these allegations do not state a potentially colorable Eighth Amendment claim. Accordingly, the motion to dismiss this claim should be granted.

D. Defendants Couch, Schultz and Eldridge

Plaintiff's claims against defendants Couch, Schultz and Eldridge are based on their participation in the disciplinary proceedings after plaintiff was charged with a rules violation report in connection with the alleged excessive force incidents. Plaintiff alleges that these defendants violated his right to due process. (ECF No. 1 at 44.)

*Defendant Couch*

Plaintiff alleges that defendant Couch was assigned to be his Investigative Employee. Plaintiff alleges that he gave defendant Couch the names of witnesses and questions for witnesses. Plaintiff also alleges that he told defendant Couch about documentary evidence.

1    Plaintiff alleges that defendant Couch prepared a report falsely stating that plaintiff had requested

2    no investigation.

3        "Prison disciplinary proceedings are not part of a criminal prosecution, and the full

4    panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418

5    U.S. 539, 556 (1974).  With respect to prison disciplinary proceedings, the minimum procedural

6    requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between

7    the time the prisoner receives written notice and the time of the hearing, so that the prisoner may

8    prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and

9    reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present

10   documentary evidence in his defense, when permitting him to do so would not be unduly

11   hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner

12   where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563–71.

13   Confrontation and cross examination are not generally required.  Id. at 567.

14       Regarding legal assistance, the law distinguishes between staff assistants and investigative

15   employees.  A staff assistant, when assigned, is responsible for informing the inmate of his rights

16   and of the disciplinary hearing procedures, advising and assisting the inmate in preparation for the

17   hearing, and representing the inmate's position at the hearing.  Cal.Code Regs. tit. 15, § 3318(b).

18   An investigative employee, when assigned, is responsible for interviewing the charged inmate,

19   gathering information, questioning staff and inmates with relevant information, and screening

20   prospective witnesses.  Cal.Code. Regs. tit. 15, § 3318(a).

21       Plaintiff alleges that defendant Couch was an investigating employee.  Unlike a staff

22   assistant, an investigative employee is appointed to assist the hearing officer, not the inmate. Cal.

23   Code Regs. tit. 15, § 3318(a).  There is no federally recognized constitutional right to an

24   Investigative Employee.  Larkin v. Davey, 2015 WL 1440616, at *6 (E.D. Cal. Mar. 27, 2015)

25   ("[T]here is no right to a thorough investigative report or even an investigation, nor even a right

26   to assignment of an investigative employee, which was provided to petitioner in this case.");

27   Fuqua v. Swarthout, 2013 WL 5493373, *5 (E.D. Cal. Oct. 2, 2013) (no right to investigative

28   employee); Tolliver v. Santoro, 2016 WL 8732347, at *11 (C.D. Cal. May 20, 2016), report and

recommendation adopted, 2016 WL 4035958 (C.D. Cal. July 8, 2016) ("[T]he Court has been unable to locate, any authority, federal or otherwise, establishing that an inmate is guaranteed the effective assistance of his assigned investigative employee.")

Because plaintiff had no constitutional right to an investigative employee, his claim that defendant Couch failed to perform his duties as an investigative employee does not state a potentially colorable due process claim. Accordingly, defendants' motion to dismiss defendant Couch should be granted.

*Defendant Schultz*

Plaintiff alleges that defendant Schutz conducted the disciplinary hearing regarding the charges made against plaintiff by defendant Defazio. Plaintiff alleges that during the disciplinary hearing, defendant Shultz refused his request to call witnesses and present documentary evidence to rebut the charge that he headbutted defendant Defazio. Plaintiff alleges that defendant Schultz denied his request for witnesses by stating, "This R.V.R. [rules violation report] is what I have to go off of." Defendant Schultz allegedly told plaintiff, "I am not going to deal with all of that, the Office of Internal Affairs can deal with that since they are investigating the assault and battery." Defendant Schultz found plaintiff guilty of the charges.

Plaintiff alleges that defendant Schultz violated his right to due process by denying his request to call witnesses and present documentary evidence. Defendants move to dismiss this claim on the grounds that plaintiff has not alleged a sufficient liberty interest entitling him to these procedural due process protections.

The Supreme Court has held that the procedural protections guaranteed by the Fourteenth Amendment Due Process Clause only apply when a constitutionally protected liberty or property interest is at stake. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The Due Process Clause itself does not give prisoners a liberty interest in avoiding transfer to more adverse conditions of confinement. See Meachum v. Fano, 427 U.S. 215, 225 (1976). However, states may create liberty interests which are protected by the Due Process Clause. These circumstances generally involve a change in condition of confinement that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S.

472, 484 (1995).

Defendants incorrectly assert that the liberty interest plaintiff alleges is the right to be free from false charges. Plaintiff is alleging that his 18 month SHU term, imposed after being found guilty of the charges by defendant Schultz, is the liberty interest at stake. Plaintiff's description of the conditions of the SHU, set forth above, are sufficient to allege a potentially colorable liberty interest in support of his due process claim. Defendants' argument that plaintiff did not allege a sufficient liberty interest is without merit.

Plaintiff alleges that defendant Schultz denied his request for witnesses and to present documentary evidence because defendant Schultz did not want to "deal with all of that." In other words, plaintiff is claiming that defendant Schultz did not consider institutional safety or correctional goals when denying his request for witnesses and to present documentary evidence. Plaintiff has stated a potentially colorable due process claim based on the denial of his request to call witnesses and present documentary evidence.

Plaintiff also alleges that defendant Schultz's decision finding him guilty was not supported by adequate evidence. Due process is satisfied where there is "some evidence" in the record as a whole which supports the decision of the hearing officer. See Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, the "some evidence" standard does not apply where a prisoner alleges the rules violation report is false. See Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997).

Plaintiff alleges that defendant Schultz relied only on the allegedly false rules violation report to find him guilty. (ECF No. 1 at 35.) Based on plaintiff's claim that he told defendant Schultz that the charges that he head butted defendant Defazio were false, that he had witnesses who would testify in his favor, and that defendant Schultz claimed knowledge of the related Internal Affairs investigation, the undersigned finds that plaintiff has stated a potentially colorable due process claim against defendant Schultz for finding him guilty based on insufficient evidence. Accordingly, defendants' motion to dismiss this claim should be denied.

////

*Defendant Eldridge*

Plaintiff alleges that defendant Eldridge, the Associate Warden and Chief Disciplinary Officer (see ECF No. 1 at 11), reviewed and upheld defendant Schultz's decision finding him guilty of the rules violation.

> On June 30, 20-15, defendant A.W./C.D.O. Eldridge reviewed the findings of SHO Schultz's action of finding the plaintiff guilty, he reviewed all related documents, and the methods used by Schultz. He also reviewed the I.E.'s report and the reasons given by Couch to decline to ask questions of eye witnesses, defendant Eldridge's affirmed all actions taken, even though they were unconstitutional and there were clear due process violations on the face of the report.

(Id. at 35-36.)

To the extent plaintiff argues that defendant Eldridge violated his right to due process by affirming defendant Couch's failure to perform his duties as an Investigative Employee, this claim must be dismissed because (as discussed above) plaintiff has no constitutional right to an investigative employee.

Plaintiff also alleges that defendant Eldridge reviewed "the methods used by Schultz" and affirmed all actions taken "even though they were unconstitutional." Liberally construing these allegations, plaintiff is claiming that defendant Eldridge approved defendant Schultz's decision to deny plaintiff's request to call witnesses and present documentary evidence. Plaintiff is also challenging defendant Eldridge's decision to uphold the guilty finding on the grounds that it was not supported by sufficient evidence. As discussed above, plaintiff has stated a potentially colorable due process claim against defendant Schultz based on these allegations. For the same reasons, the undersigned finds that plaintiff has stated potentially colorable due process claims against defendant Eldridge. Accordingly, the motion to dismiss these claims should be denied.

VI. Plaintiff's Motion for Default

On August 31, 2017, plaintiff filed a motion requesting that default be entered against defendants Blessing, Drake, Murillo, Martinez, Bettencourt, Lebeck, Brady, Burke and Defazio. (ECF No. 43.) As discussed above, in the motion to dismiss, these defendants requested an extension of time to answer the complaint until 30 days after the court issues a final ruling on the motion to dismiss. Based on this request for extension of time, these defendants are not in

default.  Accordingly, plaintiff's motion for entry of default is denied.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for entry of default (ECF No. 43) is denied;

2.  The request for extension of time by defendants Blessing, Drake, Murillo, Martinez, Bettencourt, Lebeck, Brady, Burke and Defazio is granted; these defendants shall file an answer to the complaint on or before 30 days after the court issues a final ruling on the motion to dismiss;

IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion to dismiss (ECF No. 37) be *granted* as follows:  a) claim alleging defendants Byers and Rashev denied him food; b) conspiracy claim against defendant Staggs-Boatright; c) claim that defendant Okoroike denied plaintiff medical care in violation of the Eighth Amendment; d) claim alleging verbal harassment by defendant Mercado; e) due process claim against defendant Couch; f) claim that defendant Eldridge violated due process by upholding alleged misconduct by defendant Couch;

2.  Defendants' motion to dismiss (ECF No. 37) be *denied* as to the following claims:  a) claim alleging defendant Rashev used excessive force; b) failure to intervene claims against defendants Guffee and Matthews; c) claim alleging defendant Mercado denied plaintiff an ice pack; d) conspiracy claim against defendant Okoroike; e) conspiracy claim against defendant Martineck; f) claims alleging due process violations by defendants Schultz and Eldridge based on alleged denial of request to call witnesses and present documentary evidence, and insufficient evidence to support disciplinary conviction;

4.  Defendants Rashev, Guffee, Matthews, Mercado, Okoroike, Martinick, Schultz and Eldridge be ordered to file an answer within thirty days of the adoption of these findings and recommendations.

These findings and recommendation be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

27

objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 3, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Ow2750.mtd