UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEON OWENS, | No. 2: 16-cv-2750 JAM KJN P |
| Plaintiff, | |
| v. | ORDER |
| JOSEPH DEGAZIO, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. On October 7, 2019, the undersigned granted plaintiff thirty days to file an amended motion to compel regarding his request for inspection of things and request for production of documents addressed in his July 16, 2018 motion to compel. (ECF No. 134.) Pending before the court is plaintiff's amended motion to compel regarding his request for inspection of things and request for production of documents. (ECF No. 137.)

<u>Background</u>

This action proceeds on the original complaint against defendants Bettencourt, Blessing, Brady, Burke, Defazio, Drake, Eldridge, Guffee, Lebeck, Martnicek, Martinez, Matthews, Mercado, Murillo, Okoroike, Rashev and Schultz.[1]

---

[1] Defendants' opposition to the motion to compel does not list defendant Drake as a defendant.

1

The gravamen of this action is plaintiff's claim that on February 18, 2015, several defendants used excessive force against him. The pending motion to compel seeks documents and evidence related to those alleged incidents of excessive force.

<u>Request for Production of Things</u>

*Request No. 1*

In request no. 1, plaintiff asks defendants to produce photographs of the "personal bike glove" worn by defendants DeFazio, Blessing, Brady, Lebeck, Burk, Bettencourt and Rashev. (ECF No. 137 at 10.)

Defendants opposed request no. 1 on the grounds that it was unintelligible and vague as to the term "personal bike glove." (ECF No. 143 at 3.) In the opposition to the motion to compel, defendants state that they do not wear "bike gloves" as part of their required uniforms. (<u>Id.</u> at 4.) Defendants also argue that plaintiff is requesting that defendants create a document that does not exist, in this case a photograph, in response to his request. (<u>Id.</u>) Defendants argue that they are not required to create documents or photographs in response to discovery requests. (<u>Id.</u>)

Parties have an "obligation to construe … discovery requests in a reasonable manner." <u>Cache LaPoudre Feeds, LLC v. Land O'Lakes, Inc.</u>, 244 F.R.D. 614, 618 (D. Colo. 2007); <u>see also</u> <u>King-Hardy v. Bloomfield Board of Education</u>, 2002 WL 32506294 at *5 (D. Conn. 2002) (responding party must give discovery requests a reasonable construction, rather than strain to find ambiguity); <u>McCoo v. Denny's Inc.</u>, 192 F.R.D. 675, 694 (D. Kan. 2000) ("A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized …") (internal quotation marks omitted).

A party is not obligated to create documents that do not exist in response to a discovery request. See <u>Goolsby v. Carrasco</u>, 2011 WL 2636099 at *8-9 (E.D. Cal. July 5, 2011) (denying plaintiff's motion to compel production of documents where plaintiff's request required defendant to "create documents, as opposed to produce already existing document.")

In request no. 1, while plaintiff describes the gloves allegedly worn by defendants as "bike gloves," plaintiff clearly seeks photographs of the gloves allegedly worn by defendants on February 18, 2015 when they allegedly used excessive force against plaintiff. It is not clear

2

whether defendants are claiming no photographs of "bike gloves" exist or whether defendants are claiming that no photographs of any gloves worn by defendants on February 18, 2015 exist. Accordingly, within fourteen days of the date of this order, defendants shall file an amended response to request no. 1. If no photographs of the gloves allegedly worn by defendants on February 18, 2015 exist, then the undersigned will not order a further response to request no. 1.

*Request No. 2*

In request no. 2, plaintiff asks defendants for photographs of the work boots worn by defendants DeFazio and Blessing. (ECF No. 137 at 10.)

Without waiving objection, defendants responded that no photographs exist of defendants DeFazio and Blessing's work boots worn at the time of the February 18, 2015 incident. (ECF No. 143 at 4.)

The photographs plaintiff seeks in request no. 2 do not exist. Accordingly, plaintiff's motion to compel as to request no. 2 is denied. See Goolsby v. Carrasco, 2011 WL 2636099 at *8-9 (E.D. Cal. July 5, 2011).

*Request No. 5*

In request no. 5, plaintiff asks defendants for photographs of the tower booth taken in front of cell 232 facing the tower booth. (ECF No. 137 at 11.)

Defendants responded that no photographs exist of the tower booth taken in front of cell 232 facing the tower booth. (ECF No. 143 at 5.)

The photograph plaintiff seeks in request no. 5 does not exist. Accordingly, plaintiff's motion to compel as to request no. 5 is denied. See Goolsby v. Carrasco, 2011 WL 2636099 at *8-9 (E.D. Cal. July 5, 2011).

*Request no. 7*

In request no. 7, plaintiff asks defendants for photographs of each correctional officer defendant who was named as a participant in the February 18, 2015 beating. (ECF No. 137 at 11.) Plaintiff requests a "close up" photograph, showing just the defendant's face. (Id.) Plaintiff requests another photograph from about six feet away showing the complete body structure, from the face to the feet. (Id.)

3

Without waiving objection, defendants responded that the photographs sought in request no. 7 do no exist. (ECF No. 143 at 5.)

The photographs plaintiff seeks in request no. 7 do not exist. Accordingly, plaintiff's motion to compel as to request no. 7 is denied. See Goolsby v. Carrasco, 2011 WL 2636099 at *8-9 (E.D. Cal. July 5, 2011).

*Request no. 10*

In request no. 10, plaintiff requests inspection of the DVD videotape interview conducted by Lieutenant Rodriguez and Sergeant Olivas on February 18, 2015. (ECF No. 137 at 11.)

In response to request no. 10, defendants stated that accommodations were made with plaintiff's institution for plaintiff to view the video and take notes. (ECF No. 143 at 6.) In the motion to compel, plaintiff requests that his sister be allowed to purchase a copy of the videotape. (ECF No. 137 at 12.)

In the opposition to the motion to compel, defendants state that Federal Rule of Civil Procedure 34(a)(1) provides that a party may serve on any other party a request within the scope of Rule 26(b) to produce and permit the requesting party *or its representative* to inspect, copy, test, or sample…" items in the responding party's possession, custody or control. (Emphasis added.) Defendants argue that plaintiff's sister is not plaintiff's representative within the meaning of Rule 34(a)(1). Defendants argue that they properly responded to this request by allowing plaintiff to inspect the DVD.

The undersigned agrees that plaintiff's sister is not his representative within the meaning of Rule 34(a)(1). Because plaintiff has been allowed to view the DVD, the motion to compel as to request no. 10 is denied.

*Request No. 11*

In request no. 11, plaintiff requests inspection of the DVD videotape of the interview conducted at CMF-Vac on February 21, 2015. (ECF No. 137 at 11.)

In response to request no. 11, defendants stated that plaintiff had been provided an opportunity to view the videotape, as requested. (ECF No. 143 at 6.) In the motion to compel, plaintiff requests that his sister be allowed to purchase a copy of the videotape. (ECF No. 137 at

4

12.)

As discussed above, plaintiff's sister is not plaintiff's representative within the meaning of Rule 34(a)(1). Because plaintiff has been allowed to view the DVD, the motion to compel as to request no. 11 is denied.

*Request no. 12*

The motion to compel regarding request no. 12 is based on defendants' response to request no. 9. Request no. 9 sought a copy of all photographs taken of plaintiff following the February 18, 2015 incident. (ECF No. 137 at 43.) Defendants responded to request no. 9 by providing plaintiff with a copy of all photographs taken of plaintiff following the February 28, 2015 incident. (Id.)

In at-issue request no. 12, plaintiff requests that all photographs provided by defendants be in color for clear details. (ECF No. 137 at 12.) Defendants responded that, subject to the above objections, and safety and security of the institution, all color photographs in defendants' possession, custody and control were provided to plaintiff. (ECF No. 143 at 7.) Defendants responded that after a reasonable and diligent search, defendants were unable to find color photographs referenced in request no. 9. (Id.) Therefore, only black and white photographs were available for request no. 9. (Id.)

In the opposition to the motion to compel, defendants argue that plaintiff is asking defendants to create items that do not exist, i.e., photographs in color. The undersigned agrees. Because plaintiff seeks photographs that do not exist, the motion to compel as to request no. 12 is denied. See Goolsby v. Carrasco, 2011 WL 2636099 at *8-9 (E.D. Cal. July 5, 2011).

Request for Production of Documents

Plaintiff's motion to compel addresses defendants' responses to request for production of documents nos. 1-12, 19 and 21.

Request no. 1 sought the CDCR Form 3013 (rev. 02/10), inmate interview guidelines. (ECF No. 137 at 13; ECF No. 143 at 33.)

Request no. 2 sought the CDCR Form 3014 rev. 6/09, report of findings, inmate interview. (ECF No. 137 at 14; ECF No. 143 at 33.)

5

Request no. 3 sought the CDCR Form 3010 (rev. 6/09), incident commander review/critique use of force incident. (ECF No. 137 at 14; ECF No. 143 at 34.)

Request no. 4 sought the CDCR Form 3011 (rev. 6/09), manager's review - first level use of force incidents. (ECF No. 137 at 14; ECF No. 143 at 34.)

Request no. 5 sought the CDCR Form 3012 (rev. 6/09), manager's review - second level use of force incidents. (ECF No. 137 at 15; ECF No. 143 at 35.)

Request no. 6 sought the CDCR Form 3034 (rev. 6/09), IERC allegation review. (ECF No. 137 at 15; ECF No. 143 at 35.)

Request no. 7 sought CDCR Form 3036 (rev. 6/09), IERC critique and qualitative evaluation. (ECF No. 137 at 15; ECF No. 143 at 36.)

Request no. 8 sought the CDCR Form 3035 (rev. 6/09) IERC use of force review and further action recommendation. (ECF No. 137 at 16; ECF No. 143 at 36).

Request no. 9 sought the CDCR Form 1123 Records of Counseling. (ECF No. 137 at 16; ECF No. 143 at 37.)

Request no. 10 sought the CDCR Form 402 hiring authority review of investigation. (ECF No. 137 at 16; ECF No. 143 at 38.)

Request no. 11 sought the CDCR Form 402 justification of penalty. (ECF No. 137 at 16-17; ECF No. 143 at 38.)

Request no. 12 sought a copy of defendants' initial disclosure. (ECF No. 137 at 17; ECF No. 143 at 38.)

Request no. 19 sought the CSP-Suicide Observation Record dated 2/18/2015 at 0600-1145 hours. (ECF No. 137 at 18; ECF No. 143 at 41.).

Request no. 21 sought a copy of the decision letter prepared by OIA that was mentioned in the Third Level Response to the plaintiff's appeal log no. SAC 15-0582 and TLR Case no. 1414306. (ECF No. 137 at 18; ECF No. 143 at 42.)

*Request nos. 1-11, 21*

In the opposition to the motion to compel, defendants argue that the documents sought are protected by the official information privilege. (ECF No. 143 at 8-9.) In support of this claim,

1 | defendants cite the privilege log and declaration of Lieutenant M. Lujan, attached to the
2 | opposition. (Id.)

With respect to the claim of privilege, "[f]ederal common law recognizes a qualified privilege for official information… To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033-34 (9th Cir. 1990) (citations omitted).

A party claiming that information is privileged must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). In addition to a privilege log, a party seeking to invoke the official information privilege and prevent disclosure must submit an affidavit from an official of the agency in control of the materials sought addressing the following concerns:

> "(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made."

Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (quoting Kelly v. City of San Jose, 114 F.R.D. 653, 670 (N.D. Cal. 1987)).

In his declaration, M. Lujan states that he reviewed the documents set forth in the privilege log, i.e., request nos. 1-11 and 21. (ECF No. 143 at 25.) M. Lujan states that disclosing documents related to the investigation of use of force incidents would endanger individuals and threaten the security of the institution if released. (Id. at 26.) M. Lujan states that these documents contain information that would reveal techniques used to investigate inmate and parolee complaints against staff, and the type of corrective measures taken as a result of such an investigation. (Id.) M. Lujan states that disclosure of this information would give inmates the

tools to sabotage staff attempts to deal with disruptive conduct and undermine investigations. (Id.) M. Lujan states that disclosure of this information would also hurt staff morale, make it difficult to recruit staff and make staff and witnesses unwilling to provide information if they knew that the information would be disclosed. (Id.)

M. Lujan states that disclosure of the information in these documents would create danger that the information in the documents could be circulated to the prison population. (Id.) Such information would create a danger that the prison population would exploit the information in order to circumvent and prevent procedures designed to protect inmates and staff from inmate attacks. (Id. at 27-28.)

M. Lujan states that by maintaining confidentiality in the internal affairs investigative process, inmates and staff are encouraged to make truthful statements. (Id. at 27.) M. Lujan states that confidential investigate files must remain confidential to protect the privacy interests of the complaining inmates and inmate-witnesses. (Id.) M. Lujan states that disclosure of these documents may also disclose confidential and private information, including inmates' classification scores, sexual orientation, etc. Although plaintiff does not appear to seek grievances regarding other inmates, M. Lujan states that inmate appeals can also include an inmate's trust account balance or confidential attachments. (Id.) M. Lujan states that it is essential that private information about correctional officers contained in confidential investigative files, including their full names, addresses, etc., be kept confidential to protect the safety and security of these officer and their families. (Id.)

Finally, M. Lujan states that disclosure of the documents sought, even subject to a protective order, is inadequate to ensure the safety and security of CDCR's institutions. (Id. at 29.)

As indicated above, defendants withheld every document without regard to its content or importance to this case. Defendants did not address the importance of the documents to plaintiff, notwithstanding the case law which requires a balancing of the benefits against the harm of disclosure. See Wells v. Gonzales, 2019 WL 4054022 at *4 (E.D. Cal. Aug. 28, 2019), citing Sanchez v. City of Santa Ana, 936 F.2d 1017 at 1033-34.

Defendants have also failed to address any specific harm posed by the production of the withheld documents. Defendants do not contend that any specific document threatens the safety and security of the institution, staff or inmates based on its content. Instead, defendants rely on the declaration of M. Lujan for the proposition that disclosure of any and all withheld documents would endanger the safety of staff and inmates. However, the Lujan declaration does not specifically address any of the documents actually withheld.

Defendants' claim that they may withhold every document related to the investigation of the allegations of excessive force from discovery is not legally supported. See Wells v. Gonzales, 2019 WL 4054022 at *6 ("In conclusion, Defendant's claim that she may withheld every document regarding any grievance, confiscation slip, incident report, or investigation at the prison from discovery is not legally well supported."); Harris v. German, 2019 WL 4640503 at *8-9 (E.D. Cal. Sep. 24, 2019) (in case where prisoner alleged excessive force, court ordered defendants to produce redacted investigation report after balancing benefits against harm of disclosure); Caruso v. Solorio, 2018 WL 2021019 at *4-5 (E.D. Cal. May 1, 2018) (court overrules official information privilege as to witness statements and evidence as described in order); Watkins v. Murphy, 2018 WL 5278819 (E.D. Cal. 2018) (in case where prisoner alleged excessive force, following in camera review, court allowed prisoner to review documents sought in discovery and to take notes).

Accordingly, defendants are ordered to submit the documents sought in request nos. 1-11 and 21 for in camera review. Defendants shall submit a clean copy of these documents and a copy containing proposed redactions.[2] The undersigned will then determine whether limited and/or redacted disclosure of these documents to plaintiff is appropriate, subject to a protective order.

////

////

---

[2] The undersigned cannot determine the nature of all the documents plaintiff seeks based on their description in the pleadings. In camera review will clarify, for the undersigned, the nature of plaintiff's requests.

9

*Request Nos. 12, 19*

As discussed above, request no. 12 sought a copy of the defendants' initial disclosure. Defendants objected to this request on the grounds that the parties did not exchange initial disclosures in this matter. (ECF No. 143 at 38.) Therefore, defendants did not prepare initial disclosures and they are therefore unavailable. (Id.)

Defendants' objections to request no. 12 are well taken. Plaintiff's motion to compel as to request no. 12 is denied.

As discussed above, request no. 19 sought the CSP-suicide observation record, dated 2/18/15, at 0600-1145 hours. Defendants provided plaintiff with all responsive documents in their custody and control. (ECF No. 143 at 41.) In the motion to compel, plaintiff does not address how the documents provided by defendants in response to request no. 19 were inadequate. For this reason, the motion to compel as to request no. 19 is denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel (ECF No. 137) is denied as to request for production of things nos. 2, 5, 7, 10, 11, 12; within fourteen days of the date of this order, defendants shall file a further response to request for production of things no. 1, as discussed above;

2. Plaintiff's motion to compel (ECF No. 137) is denied as to request for production of documents nos. 12 and 19;

3. Within fourteen days of the date of this order, defendants shall submit, for in camera review, two copies of the documents sought in request for production of documents nos. 1-11 and 21; one copy shall be clean, and one copy shall contain proposed redactions.

Dated: January 10, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Ow2750.com(3)