Theon Owens
NAME
V-60905
CDCR #.
California Health Care Facility
HOUSING.
7707 South Austin Road
ADDRESS.
Stockton, C.A. 95215.
CITY, STATE, ZIP.

**FILED**

SEP 2 4 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

COURT

**THEON OWENS,**
          Plaintiff,

          vs.

**JOSEPH DEFAZIO, ET AL.,**
          Defendant(s).

Case No: 2:16-CV-02750-JAM-KJN.

District Judge: JOHN A. MENDEZ.

Magistrate Judge: KENDALL J. NEWMAN.

PLAINTIFF'S NOTICE OF SUBMISSION OF EXHIBITS AND APPENDIXES IN SUPPORT OF ALL OF PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENTS.

PLEASE TAKE NOTICE, that Plaintiff here and now Submits all of his exhibits and appendixes Mentioned in his Motions for Partial Summary Judgments.

Done this September 11th, 2020.

Theon Owens
Plaintiff's Name.

Theon Owens
Plaintiff's Signature.

# DECLARATION OF SERVICE BY U.S. MAIL

RE: Theon Owens V. Joseph Defazio, et al. Case No.: 2:16-CV-02750-JAM-KJN.

I, the undersigner, declare that I am older then eighteen years of age. I am incarcerated in the California Department of Corrections And Rehabilitation, at the California Health Care Facility ("C.H.C.F.")          , and I am familiar with the institution's Mailing Practice at the C.H.C.F. for collection and Processing of correspondence for mailing with the United States Postal Service. In accordance with California Code of Regulations Title 15. Sections 3130 through 3147 and Practice, all correspondence Placed in the internal Mail Collection System at the C.H.C.F.                     , is deposited with the United States Postal Service, on the following day in the ordinary course of Process. On September 20th, 2020          , I servied the attached Plaintiff's Notice Of Submission Of Exhibits And Appendixes In Support Of All Of Plaintiff's Motions For Partial Summary Judgment. by Placing a true and correct copy thereof enclosed in a sealed envelope with Postage fully Prepaid thereon, in the internal Mail Collection System at the C.H.C.F. _____, my address is as follows:

Theon Owens # V-60905, CHCF. 7707 South Austin Road, Stockton, C.A. 95215

Served on the below named individual(s), addressed as follows:

1. Kelli M. Hammond, Deputy Attorney
General
1300 T St., Ste. 125
P.O. Box 944255
Sacramento, C.A. 94244-2550

2. Kendall J. Newman, United States
Magistrate Judge, for The U.S.D.C.
for The Eastern District Of California
501 I St., Ste. 4-200
Sacramento, C.A. 95814-2322.

I declare under the Penalty of Perjury of the laws of the United States that the foregoing is true and correct and that this declaration was executed on September 20th    2020, at the CHC.F. - Stockton                      , California.

Theon Owens
DECLARANT NAME.

Theon Owens
DECLARANT SIGNATURE.

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750 - JAM-KJN.

A.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: "PHOTOGRAPHS OF THE PLAINTIFF"

"Hosted by the Plaintiff on 2-21-2015, at California Medical Facility. The exhibit herein demonstrates the injuries Plaintiff suffered to his Face on 2-18-2015. The Photos show that the Plaintiff's left eye was completely swollen and shut and that his right eye was swollen approximately 80% shut. Both of Plaintiff's eyes are blacked. The top and bottom of Plaintiff lips are swollen, bruising appears to be on the right side of his temporal area, and the left side of his face is swollen from the top of his temporal area to the mid area of his jaw."

NUMBER OF PAGE'S TO THIS EXHIBIT: _1-13_ PAGE'S.

#3

BEFORE ATTACK VICTIM

Date Taken*: 06/24/2014       Source*: State Institution

Facility/Office:

Type*: Front View

Date ID Card Printed: 06/24/2014       Card Sequence: 4



CDC# V60905 Date: 06/24/2014

Show Last Updated Information



#2   VICTIM   AFTER ATTACK

#1   VICTIM
AFTER ATTACK



OWEN, T
V-60905
2-21-2015 MHCBF

OWENS 044



OWENS 047









OWENS 051

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS   VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

B.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 7219 (Rev. 11/05)
MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE.
"Hosted by Registered Nurse (R.N.), ALICE OKOROIKE, and Medical
Doctor (M.D.) J.R. WEDELL, on Feb 18, 2015, At 1330 through 1335 hours, It
shows some of the injuries that the Plaintiff suffered as a result of
defendants force upon his person, It also shows the Plaintiff's claims of
deliberate indifference against defendant A. Okoroike are true, as to all
injuries not being documented that were there and it shows as well
the written statement that is in dispute."

## NUMBER OF PAGES TO THIS EXHIBIT: __1__ PAGES

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**MEDICAL REPORT OF INJURY**
**OR UNUSUAL OCCURRENCE**

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | | | | DATE |
|---|---|---|---|---|---|---|---|
| SSP/SAC | PSU II | | INJURY | | ON THE JOB INJURY | 2/18/15 | |
| | | USE OF FORCE | UNUSUAL OCCURRENCE | | PRE AD/SEG ADMISSION | | |

| THIS SECTION FOR INMATE ONLY | NAME LAST Owens | FIRST Theon | CDC NUMBER V60905 | HOUSING LOC. A3-232 | NEW HOUSING LOC |
|---|---|---|---|---|---|

| THIS SECTION FOR STAFF ONLY | NAME LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
|---|---|---|---|---|---|

| THIS SECTION FOR VISITOR ONLY | NAME LAST | FIRST | MIDDLE | DOB | OCCUPATION |
|---|---|---|---|---|---|
| | HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE A3-232 | DATE/TIME OF OCCURRENCE 2/18/15 1315 | NAME OF WITNESS(ES) Sgt. Blessing |
|---|---|---|

| TIME NOTIFIED 1330 H | TIME SEEN 1330 H | ESCORTED BY C/O Murillo, Drake | MODE OF ARRIVAL (circle) AMBULATORY LITTER WHEELCHAIR ON SITE | AGE 33 | RACE BLK | SEX M |
|---|---|---|---|---|---|---|

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"They jumped on me, kicked me on my chest, knocked my tooth out, pulled my hair out."

| INJURIES FOUND? | YES / NO |
|---|---|
| Abrasion/Scratch | ① |
| Active Bleeding | ② |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | ⑥ |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | ⑭ |
| Skin Flap | 15 |
| Swollen Area | ⑯ |
| Other | 17 |
| | 18 |
| | 19 |

#14  #6  #16  #2 tooths out  #1

| O.C. SPRAY EXPOSURE? | YES / NO |
|---|---|
| DECONTAMINATED? | YES / NO |
| Self-decontamination instructions given? | YES / NO |
| Refused decontamination? | YES / NO |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| Alice O'connule 1330 | DR. Wedell 1335 |

TIME/DISPOSITION
1335 - To ATTA / Dental

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|
| A. O'connule RN / | 1110 | Tue |
| | 997 | Wed |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PiNK - Health and Safety / RTW Coordinator (only work related injury)

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

C.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 7464 (01/13) TRIAGE AND TREATMENT SERVICES FLOW SHEET.

Hosted by Medical Doctor (M.D.) J.R. WEDELL And Registered Nurse (R.N.) B. NICOLAOU. on 2/18/2015. At 1335 through 1435 hours. It shows some of the visual injuries the two noted the Plaintiff suffered (e.g. two missing teeth, left eye nearly swollen shut, and nausea. It also shows the deliberate indifference the Plaintiff suffered, when defendant L. MERCADO interfered with prescribed treatment and refused to let medical personnel treat the Plaintiff's nearly swollen shut left eye. The R.N. noted "custody said could not have ice.'"

NUMBER OF PAGE'S TO THIS EXHIBIT: ___1-2___ PAGE'S.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**TRIAGE & TREATMENT SERVICES FLOW SHEET**
CDCR 7464 (01/13)

| MEDICATIONS GIVEN IN TTA | INITIALS | TIME | SOL | SITE | GAUGE | RATE | # ATTEMPTS | INITIALS | LAB/XRAY |
|---|---|---|---|---|---|---|---|---|---|
| Ibuprofen 600mg PO BN | BN | 1435 | | | | | | | |
| Peridex/PerioGard S Tpo | BN | 1435 | | | | | | | |
| Tyl #3 ⊤ crushed | BN | 1430 | | | | | | | |
| | | | TOTAL AMOUNT IN: | | | | | | |

**PATIENT PROGRESS (SOAPE)**

1335. Seen by Dental prior to TTA ⇒ checked. 2 teeth missing
⊤ in front upper, ⊤ on bottom. Bleeding controlled —

1345 I/P angry + yelling. Speech clear. MAE wnl. No LOC per I/P — BN

1400 Dr's bedell & exam. Attempted eye acuity but ⊤ both eyes: 20/30
then became impatient + refused to do more. ® eye nearly
swollen shut. Custody said could not have ice on block — BN

1425 All wounds cleaned + antibiotic ointment applied. ① inner
thigh ⊤ 3 lg areas of abrasions where I/P cuts on self. Cleaned
w/NS + antibiotic + bandaids applied. Remains vague, GCS
15. Continues yelling about being homicidal + "going ⊤ to kill
custody." I/P bloody on suicide precaution in cell. States
"I'm eviscerated + dizzy but amb. ⊤ steady gait ⊤ custody BN

| SUPERVISOR'S REVIEW | | | | PATIENT INFORMATION | |
|---|---|---|---|---|---|
| NAME | TITLE | DATE | | NAME: LAST, FIRST  OWENS, THEON | CDC#  V60905 |
| | | | | DOB  8/12/82 | AGE  32 |
| | | | | INSTITUTION  CSP-SAC | HOUSING  A3-232 |

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☑ P/I asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☑ P/I summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DNS ☑ Basic ☐ Transcribe | ☐ Not reached* | |
| ☐ DDP | ☑ Reached | |
| ☑ Not Applicable ☐ Other | *See chrono/notes | |

Comments: TABE 4.5

Confidential Saved 2015-05-26T15:15:44Z

STATE OF CALIFORNIA
**TRIAGE & TREATMENT SERVICES FLOW SHEET**
CDCR 7464 (01/13)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Date: 2/18/15   Time In: 1345   Time Out: 1435
Category: ☐ Non-Urgent ● Urgent ☐ Emergent
Allergies: _Fluphenazine HCl, Lactose_

_Haldol Tristhiazine Perk_

| NOTIFICATION | TIME | BY | ARRIVAL TIME | DEPARTURE TIME | PATIENT DISPOSITION | | | DISCHARGE CONDITION | |
|---|---|---|---|---|---|---|---|---|---|
| TTA | | BN | 1345 | 1435 | ✓ RTC | CORONER | | STABLE | ✓ |
| WATCH COMM | | | | | OHU ADMIT | COMMUNITY HSP | | UNSTABLE | |
| EMS | | | | | CTC ADMIT | via: | | CRITICAL | |
| PCP | | BN | 1400 | 1435 | GACH ADMIT | STATE VEHICLE | | | |
| SUPERVISOR | | | | | MH REFERRAL | AMBULANCE CODE | | DECEASED | TIME |

CHIEF COMPLAINT: _1330 - Altercation c custody_   INCIDENT TIME _1330_   INCIDENT LOCATION _cell_   MODE OF ARRIVAL _W/C_

| RESPIRATORY | SKIN | EENT | GU | TRAUMA |
|---|---|---|---|---|
| ✓ EQUAL | ✓ PINK/NORMAL | NO COMPLAINT | ✓ NO COMPLAINT | DENIES |
| ✓ CLEAR | ✓ WARM ✓ DRY | EYE R L subclera | URGENCY | MECHANISM OF INJURY |
| ✓ NORMAL | MOIST/DIAPHORETIC | EAR R L | FREQUENCY | GSW |
| RAPID | CYANOTIC | NOSE | RETENTION | SPORTS INJURY |
| DECREASED | JAUNDICED | THROAT | HEMATURIA | ON THE JOB INJURY |
| SHALLOW | ASHEN PALE | PAIN REDNESS | BLADDER INCONT | ✗ ALTERCATION |
| DEEP | FLUSHED | DRAINAGE | PAIN ON URINATION | FALL |
| LABORED | HOT | FOREIGN BODY | URETHRAL DISCHARGE | BURN |
| RETRACTION | MOTTLED | | FLANK PAIN ☐ R ☐ L | |
| NASAL FLARE | COOL COLD | GI | EMOTIONAL | OB/GYN |
| RHONCHI | RASH: | NO COMPLAINT | ✓ COOPERATIVE ✗ Y ☐ N | ✗ NOT APPLICABLE |
| CRACKLES | CIRCULATION R L R L | ✗ NAUSEA VOMITING | ✗ ANXIOUS | NO COMPLAINT |
| HEMOPTYSIS | PULSE A A L L | DIARRHEA CONSTIPATION | COMBATIVE | LMP |
| COUGH | | REBOUND GUARDING | DELUSIONAL | VAGINAL DISCHARGE |
| WHEEZING | PRESENT P P | TENDERNESS LLQ tenderness | HALLUCINATIONS | VAGINAL BLEEDING |
| | | BOWEL INCONTINENCE | SUICIDAL IDEATION | CRAMPING |
| VISUAL ACUITY | QUALITY S S | BOWEL SOUNDS ☐ 1 ☐ 2 ☐ 3 ☐ 4 | SUICIDE THREAT | FHT |
| OD | | ☐ HYPO ☐ HYPER ✗ NORMAL ☐ ABSENT | | PREGNANT |
| OS | CAPILLARY REFILL | MELENA RECTAL BLEED | | IGR P KB |
| CORRECTED | ✓ BRISK ☐ DELAYED | HEMATEMESIS | | |

| NEUROLOGICAL | | | TIME | | | | | |
|---|---|---|---|---|---|---|---|---|
| ✓ ALERT ✓ PERL | | | | | | | | |
| ✓ ORIENTED X 4 | EYE OPENING RESPONSE | SPONTANEOUS | 4 | 4 | 4 | 4 | 3 4 5 6 7 8 | |
| LOC X MIN | | TO VOICE | 3 | 3 | 3 | 3 | | |
| CONFUSED | | TO PAIN | 2 | 2 | 2 | 2 | | |
| DROWSY | | NONE | 1 | 1 | 1 | 1 | | |
| DECREASED LOC | VERBAL RESPONSE | ORIENTED | 5 | 5 | 5 | 5 | | |
| UNCONSCIOUS | | CONFUSED | 4 | 4 | 4 | 4 | | |
| HEADACHE | | INAPPROPRIATE WORDS | 3 | 3 | 3 | 3 | TIME | 1410 |
| DIZZINESS | | INCOMPREHENSIBLE | 2 | 2 | 2 | 2 | PUPIL R | Bsubclera |
| ETOH ODOR | | NONE | 1 | 1 | 1 | 1 | RESPONSE L | B |
| GRIPS R 5 L 5 | MOTOR RESPONSE | OBEYS COMMANDS | 6 | 6 | 6 | 6 | PUPIL SIZE R | 5 |
| S=STRONG W=WEAK | | LOCALIZES PAIN | 5 | 5 | 5 | 5 | L | 5 |
| POST-ICTAL | | WITHDRAWS FROM PAIN | 4 | 4 | 4 | 4 | | |
| | | ABNORMAL FLEXION | 3 | 3 | 3 | 3 | KEY: C = CLOSED | AB= ABRASION   ED= EDEMA |
| | | ABNORMAL EXTENSION | 2 | 2 | 2 | 2 | B = BRISK | AMP= AMPUTATION   F= FRACTURE |
| | | NO MOTOR RESPONSE | 1 | 1 | 1 | 1 | F = FIXED | BR= BURN %   H= HEMATOMA |
| | GCS SCORE | | 15 | | | | SL = SLUGGISH | D= DEFORMITY   L= LACERATION |
| | | | | | | | | E= ECCHYMOSIS   P= PUNCTURE |

| VITAL SIGNS | | | | | | | | PARTICIPANTS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ORTHO VS | ✗ BP P | | ↑ BP P | | ✗ BP P | | NAME | TITLE | INITIALS | NAME | TITLE | INITIALS | |
| TIME | T | BP | P | R | P. OX % | PAIN | | Drake | CO | | | | |
| 1350 | 98 | 136/92 | 116 | 20 | 100% | 10/10 | | Murillo | CO | | | | |
| 1415 | | 134/87 | 114 | 16 | 100% | 10/10 | | BNicotena | RN | | | | |

| NAME: LAST, FIRST | CDC# |
|---|---|
| OWENS, THEON | V60905 |

| DOB | AGE | TB CODE | INSTITUTION | HOUSING |
|---|---|---|---|---|
| 8/12/82 | 32 | | CSP-SAC | A3-232 |

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN

D.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 237-C-1 (Rev. 08/20)
SUPPLEMENTAL DENTAL PROGRESS NOTES.

Hosted by Dentist, DDS, GLENN STURGES, on 2/18/2015. At 1345 hours, It shows that there was a 'Emergency call' made to dental, that said ["inmate got hit and two teeth broke off."]. which shows that Prison officials were fully aware that the plaintiff was struck in the mouth by defendants, and that as a result of the strike's two teeth were completely knocked out. It also shows that after an examination it was found that "tooths #8 and #26 had been completely knocked out". It also shows a X-Ray Photograph of the two completely missing tooths areas, taken at 1:45:07 through 1:45:44 P.M. which shows that pictures were taken of the plaintiff serious bodily injury."

## NUMBER OF PAGES TO THIS EXHIBIT: ___2___ PAGES.




STATE OF CALIFORNIA
**Supplemental Dental Progress Notes**
CDCR 237-C-1 (REV. 08/10)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 1 of 2*

**Prior to each treatment, the clinician *must* review the inmate-patient's health history, note changes or specify no change. Use S.O.A.P.E. format to document patient care.**

| Date (mm/dd/yy) | Tooth # | PROGRESS NOTES (include signature at the end of each data entry) | DPC After Encounter | Prison Acronym |
|---|---|---|---|---|
| 2/8/15 | 1345 | **1. Disability Code:** ☑TABE score ≤ 4.0 ☐ DPH ☐ DPV ☐ LD ☐ DPS ☐ DNH ☐ DNS ☐ DDP ☐ Other* Comments: 2-6 Tabe Score **2. Accommodation:** ☑Additional time ☐ Equipment ☐ SLI ☐ Louder ☐ Slower ☐Basic ☐ Transcribe *See chrono/notes **3. Effective Communication:** ☑P/I asked questions ☑P/I summed information **Please check one:** ☐ Not reached* ☑Reached | | |
| | | Emergency Call-over/custody escort. S: It says he got hit and two teeth broke off. He says he doesn't know where teeth are, C/O says they couldn't find any tooth fragments. O: 2 PA' taken. Tooth #8 and #26 have been completely knocked out. Bleeding has already stopped, with no gingival or soft tissue lacerations, and no suture is needed. Adjacent teeth are not damaged or mobile. Lower jaw has normal range of motion when opening wide, and lateral/protrusive excursions. H&R: Pen Allergic, No changes. A: (Ext.) sites #8 & 26 should heal easily. Will follow-up next week to assess healing. P: Triage done. Released to medical for further assessment. N.V. Post op ✓     Glenn Sturges, DDS CSP-SAC   [signature] | 1:1 2:9 1:0 1:1 1:2 2:0 2:8 | |
| | | | 3 | |

DRUG ALLERGIES?   *PEN*
☐ NO   ☑ YES

**SUPPLEMENTAL DENTAL PROGRESS NOTES CDCR 237- C - 1**

| CDC Number: | V 6 0 9 0 5 |
|---|---|
| Inmate Name: | Owens, Theon (Last, First, Middle Initial) |
| Date of Birth: | 0 8 / 2 8 / 2 (mm/dd/yy) |

CDCR 237-C-1 SUPPLEMENTAL DENTAL PROGRESS NOTES

Confidential Saved 2015-05-26T16:27:39Z

California Correctional Health Care Services

5/28/2015 8:25:19 AM



2/18/2015, 1:45:07 PM

2/18/2015, 1:45:44 PM

Patient: THEON OWENS
Patient ID: 11993700
Sex: M
Series name BW 2, Created: 2/18/2015 1:43:36 PM

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE <u>EASTERN</u> DISTRICT OF CALIFORNIA

THEON OWENS.        VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: <u>2:16-CV-02750-JAM-KJN</u>.

E.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: (DCR 7230 (Rev. 04/03) INTERDIS CIPLINARY PROGRESS NOTES.

"Hosted by Psychiatric Technician (P.T.), JACKSON. on 12/18/2015. At 1523 through 1830 hours. It shows the Plaintiff mental state after being beaten. Which confirms the Plaintiff's mental and emotional claims. It also shows the Plaintiff suffering from a concussion and it's symptoms (dizziness), which shows that a concussion and it's symptoms were present, but untreated and or diagnosed. which shows deliberate indifference. as claimed in the complaint. And it shows some of the visual facial injuries the Plaintiff suffered (e.g. Swollen left eye and brusing on face)."

## NUMBER OF PAGE'S TO THIS EXHIBIT: ___1___ PAGE'S.

| DATE | TIME | |
|---|---|---|
| 7.18.15 | 1520 | Due to I/P agitation Custody wouldn't bring out I/P for Safty reasons. Talked to inmate he was highly agitated and angry about what had happened, I/P was pacing in his Cell, I/P had a swollen left eye and brusing on face. Was unable to do full neurological assessment due to I/P Agitation. Oriented x4, responds to Verbal comands. noted by Jackson PT @ 1520 2/8 |
| 2.18.15 | 1620 | Due to Safty, wasn't able to due Full Assessment. I/P Oriented x 4, responds to verbal commands. I/P Stated that he felt dizzy and was laying on bed and was told to drink plenty fluids and to take his meds when they come to help with the pain and dizziness noted by Jackson PT @ 1620 2.18.15 |
| 2.18.15 | 1830 | Inmate was brought down to PSuII 4block triage from 3block had a steady gait. I/P had vital Signs taken and neurological Check. I/P was within |

INSTITUTION: CSP-SAC  HOUSING UNIT: PSuII 3Block A3-125

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH
Owens, 1
V60905
8/12/1982

**INTERDISCIPLINARY PROGRESS NOTES**

CDC 7230 (Rev 04/03)
STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS

1 of 2

Confidential Saved 2015-05-26T15:15:44Z

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS,    VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

F.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDC 7221 (4/90) PHYSICIAN'S ORDERS.

"Hosted by Medical Doctor. J.R. WEDELL And Registered Nurse (R.N.). B. NICOLAOU. on 2/18/2015. At 1700 hours. It shows a perception written by Dr. J.R. WEDELL. for an "ICE PACK PRN swelling x 24 hrs". InWhich the Plaintiff never received. due to defendant. L. MERCADO interfering with that prescribed treatment. by denying said treatment to the Plaintiff. causing the Plaintiff to suffer even more, When his eyes both swelled shut after not being treated."

NUMBER OF PAGE'S TO THIS EXHIBIT: ___1___ PAGE'S.

FTP, 6229, 3864

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 2/18/15 1445 | | | _(illegible handwritten order)_ form sent to PT + reviewed c̄ PT via phone R _(illegible)_ |
| | | | _(illegible)_ given @ 1435 BN |
| | | | _(illegible)_ 1400 given BN |
| | | | _(illegible)_ 1435 BN given |
| | | | _(illegible)_ |
| | | | _(illegible signature)_ |
| | | | Noted B. Niccolaou RN 2/18/15 @ 1450 |
| 2/18/15 | 1700 | | 1) Ice packs to face c̄ dishtissel between skin + ice pack. On 20 min, off 20 min PRN swelling x 24 hrs. |
| | | | T.O. Dr Wedell / B. Niccolaou RN |
| | | | Noted B. Niccolaou RN 2/18/15 @ 1700 |

ALLERGIES: Fluphenazine HCl, lactose, Thiothixene, PCN, Haldol

INSTITUTION: CSP84 C

ROOM / WING: A3.232

CDC NUMBER, NAME (LAST, FIRST, MI):
Owens, T
8/12/82
V60905

Confidential client information
See W & I Code, Sections 4514 and 5328

**PHYSICIAN'S ORDERS**

CDC 7221 (4/90)
STATE OF CALIFORNIA        OSP 09 116447        DEPARTMENT OF CORRECTIONS

Confidential Saved 2015-05-26T15:04:17Z

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT FOR THE <u>EASTERN</u> DISTRICT OF CALIFORNIA

THEON OWENS,         VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750 - JAM-KJN.

G.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: (DC 7202(4/93)C SP-SACRAMENTO OUT PATIENT HOUSING UNIT NURSING INTAKE ASSESSMENT FORM. Hosted by Medical Doctor (M.D.) FIELDER, And unidentified Registered Nurse (R.N.), on 2/20/2015, At 1520 hours, It Shows their noted evaluation on the Plaintiff. The two noted "I/m was unable to open his eyes due to being swollen orbital area" Which shows that both of the Plaintiff's eye were swollen completly shut. The two noted "Ice pack provided" which shows that the Plaintiff was finally provided treatment for his swelling two day after he was beaten. The two noted "tooths missing, bruises to face, and a large patch of hair missing from head.""

NUMBER OF PAGE'S TO THIS EXHIBIT: _____2_____ PAGE'S.

Placement Date: 2/20/15   Time: 1620   OLD HOUSE A3/23  OHU RM: 214

ADMITTING DIAGNOSIS   Danger to self.

ALLERGIES  : Fluphenazine, lactose. Throthixent DOB   PCN   05/12/82
IT: Ref (6:2) W: Ref (199) Glasses: N/A    (Haldo)    Dentures: N/A     Hearing aids: N/A.

V/S  Temp: Ref (96.9)   Pulse: Ref (82)   Resp: Ref (78)   B/P 140/96 Ref   O2 Sat: Ref (100%)
Pain Scale: Scale of 0 - 10   Ref   (with 0 no pain and 10 with extreme pain)   Location:

CHRONIC CARE PROGRAM: ☑ Not a Chronic Care Program I/P   ☐ Renal   ☐ Respiratory
☐ Cardiac   ☐ Diabetes   ☐ GI   ☐ Seizure

HX of injuries and surgeries:   Head + eye injury  2/18/15  @ block.
☐ Denies tobacco, etoh, drug abuse   ☑ Tobacco   ☑ Alcohol   ☐ Hx of Drug Abuse
☐ DD/ADA Issues   N/A
Chronos: _____ N/A   TB code: 22   ☐ HIV  ☐ HEP A  ☐ HEP B  ☐ HEP C   N/A.

☐ Keyhea:  ☐ GD   ☐ DO   ☐ DS   Expiration Date: N/A
☑ SUICIDE HX   multiple Hx of SA.
☑ Suicide Precautions   ☐ Suicide Watch   ☑ Limited Issue   ☑ No Sharps or Plastics
☐ Q 2Hrs Observations   ☐ _____   HRS ordered observations

| Date | Labs/Appts/Consults | To Do Date | Date Done | PAST MEDS |
|---|---|---|---|---|
| | | | | SEE UNIT HEALTH RECORD |
| | | | | CURRENT MEDS |
| | | | | SEE PHARMACY PROFILE |

Nursing Intake Assessment (Continue in back page)

'/m arrived to OHU on slp. on arrival, not willing to answer the Questions, stating," I'm not suicidal. I had Head, eye & tooth injury 2 days ago @ block by Custody. I need to go to CTC." Informed '/p that no CTC bed's available @ this time. '/m just answering." They sent me over here because of investigation status," not able to obtain mental status. '/m refused psych meds but took pain med & Bactrim. Amb c steady gait, → cont'd.

AdmitING RN Signature:   Cello   Date: 2/20/15

Discharge Date: 2/21/15   To Unit: CMF   Time: 1450
D/C Report to:   D/C REPORT GIVEN BY:

CSP SACRAMENTO
OUT PATIENT HOUSING UNIT
NURSING INTAKE
ASSESSMENT FORM

Last Name, First Name, CDC #, Birthdate:
Owens, Theon
V60905
8 / 12 / 82

Confidential Saved 2015-05-26T15:15:44Z

## NEUROLOGICAL STATUS

**LEVEL OF CONSCIOUSNESS**

- [x] ALERT
- [ ] CONFUSED
- [ ] HISTORY OF SEIZURES
- [x] ORIENTED
- [ ] SLOW TO RESPOND / COMPREHEND
- [ ] DISORIENTED
- [ ] LETHARGIC

**SENSORY LIMITATIONS**

- [x] NONE NOTED
- [ ] TOUCH
- [ ] SMELL
- [ ] SIGHT — GLASSES
- [ ] CONTACT LENSES — IF PATIENT USES [ ] RIGHT [ ] LEFT — IF WITH PATIENT [ ]
- [ ] TASTE
- [ ] SPEECH
- [ ] HEARING — HEARING AID — [ ] RIGHT [ ] LEFT [ ]

### RESPIRATORY

- [x] NORMAL LIMITS (RATE)
- [ ] COUGH
- [ ] NASAL FLARING
- [ ] ACCESSORY MUSCLES
- [ ] ABNORMAL BREATH SOUNDS
- [ ] TRACHEOSTOMY
- [ ] DYSPNEA
- [ ] SEASONAL BREATHING DIFFICULTIES
- [ ] SECRETIONS
- [ ] ORTHOPNEA
- [ ] OXYGEN
- [ ] OTHER

### CARDIOVASCULAR

- [x] REGULAR RHYTHM
- [ ] ABNORMAL PULSES
- [ ] JUGULAR VEIN DISTENTION
- [ ] RATE WITHIN NORMAL LIMITS
- [ ] APICAL / RADIAL / PEDAL
- [ ] CALF TENDERNESS
- [ ] ABNORMAL HEART SOUNDS
- [ ] PACEMAKER
- [ ] OTHER

### ELIMINATION

**BLADDER**
- [x] DENIES PROBLEM
- [ ] NOCTURIA
- [ ] URINARY FREQUENCY
- [ ] BURNING
- [ ] CATHETER:
- [ ] URGENCY — DATE PLACED
- [ ] URINARY INCONTINENCE
- [ ] OTHER

**BOWEL**
- [x] DENIES PROBLEM
- [ ] USUAL BOWEL PATTERN
- [ ] LAST BM ( Ref to answer)
- [ ] LAXATIVE USE (LIST UNDER MEDICATION)
- [ ] OTHER AIDS
- [ ] OSTOMY - TYPE

### FUNCTIONAL STATUS (LEVEL OF SELF CARE)

**MOBILITY LIMITATIONS**
- [x] NO LIMITATIONS
- [ ] WALKING
- [ ] STAIRS
- [ ] TRANSFER
- [ ] STANDING
- [ ] OTHER
- [ ] TURNING IN BED
- [ ] GENERALIZED WEAKNESS

**DEVICES TO AID MOBILITY**
- [x] NONE
- [ ] CANE / CRUTCHES / WALKER — IF PATIENT USES [ ] IF WITH PATIENT [ ]
- [ ] ARTIFICIAL LIMBS [ ] R [ ] L

**WEAKNESS/PARALYSIS**
- [ ] UPPER EXTREMITY [ ] R [ ] L
- [ ] LOWER EXTREMITY [ ] R [ ] L
- [ ] BRACE [ ] R [ ] L

**ASSISTANCE REQUIRED**
- [ ] HYGIENE / GROOMING
- [ ] DRESSING
- [ ] MEALS
- [ ] OTHER

### SKIN

- [x] NORMAL TURGOR, TEMPERATURE & COLOR
- [ ] INTACT, MOIST MUCOUS MEMBRANES
- [ ] EDEMA
- [ ] CYANOTIC
- [ ] DRY
- [ ] FLUSHED
- [ ] DIAPHORETIC
- [ ] PALE
- [ ] JAUNDICED
- [ ] RASH
- [ ] SCALY
- [ ] OTHER

(handwritten on diagram) t/p injury 2 days ago — pain — swelling — bruises — missing tooth

**SKIN ASSESSMENT CODE**
- [ ] NO PROBLEM
- B - BRUISES
- D - DECUBITIS
    GRADE I II III IV (CIRCLE)
- L - LACERATIONS
- S - SCAR
- R - RASH
- A - ABRASIONS
- BU - BURN

**COMMENTS**

I/m was unable to open his eyes due to being swollen orbital areas. ice pack provided. I/m advised to keep head elevated to ↓ swollen.

I/m verbalized understand. Clear speech.

VS 96.9 82 18 140/96 100 %.

Ø agitation or self harm threats observed — Celeck

(date stamp) 2015 FEB 23 AM 8:45

**SIGNATURE** Celio (RN)

**FACILITY** A-fac

**PHYSICIAN** Dr. Fielder

**ROOM NO.** A8 214

**CDC NUMBER, NAME (LAST, FIRST, MD)**
Owens, Theon
V60905.
8/12/82

## ADMISSION ASSESSMENT
CONTINUED FROM REVERSE

CDC 7202 (4/93)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

Confidential Saved 2015-09-23T14:44:03Z

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,         VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

H.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDC 7212 NURSING CARE RECORD.

Hosted by a unidentified Registered Nurse (R.N.), JOHN DOE. on 2/21/2015. At 0904 hours. It shows the Plaintiff's emotional state after being beaten by defendants. It also shows the R.N [visual] evaluation of the Plaintiff's injuries. the R.N. noted "both eyes are swollen and blacked, right eye able to open and see. While left eye still close due to swelling. upper and lower lips slightly swollen." It also shows the Plaintiff complaining of concussion symptoms to the R.N., the R.N. note "throbbing pain temporal area.""

NUMBER OF PAGE'S TO THIS EXHIBIT: ___1___ PAGE'S.

| Disability Code: | Accommodation: | Effective | Disability Code: | Accommodation: | Effective | Disability Code: | Accommodation: | Effective |
|---|---|---|---|---|---|---|---|---|
| ☐ TABE ≤ 4.0, | ☐ Additional time | Communication | ☐ TABE ≤ 4.0, | ☑ Additional time | Communication: | ☐ TABE ≤ 4.0, | ☐ Additional time | Communication: |
| ☐ DPH ☐ DPV | ☐ Equipment ☐ SLI | ☐ P/I asked questions | ☐ DPH ☐ DPV | ☐ Equipment ☐ SLI | ☑ P/I asked questions | ☐ DPH ☐ DPV | ☐ Equipment ☐ SLI | ☑ P/I asked questions |
| ☐ LD | ☐ Louder ☐ Slower | ☐ P/I summed | ☐ LD | ☐ Louder ☑ Slower | ☑ P/I summed | ☐ LD ☑ | ☐ Louder ☐ Slower | ☑ P/I summed |
| ☐ DPS ☐ DNH | ☐ Basic | information | ☐ DPS ☐ DNH | ☑ Basic | information | ☐ DPS ☐ DMH | ☑ Basic | information |
| ☐ DNS ☐ DDP | ☐ Transcribe | Please check one: | ☐ DNS ☐ DDP | ☐ Transcribe | Please check one: | ☐ DNS ☐ DDP | ☐ Transcribe | Please check one: |
| ☐ Other | *See chrono/notes | ☐ Not reached* | ☑ Other | *See chrono/notes | ☐ Not reached* | ☐ Other | *See chrono/notes | ☐ Not reached* |
| Comments: | | ☐ Reached | Comments: | | ☐ Reached | Comments: | | ☑ Reached |
| TABE 4.5. | Cresting | | TABE 4.5 | | | TABE 4.5 | | |

| Date | Time | |
|---|---|---|
| 2/21/15 | 0100 | I/m remains on s/p 4 resting Quietly w/o any |
| | | complaints. No agitation or self harm behavior |
| | | observed. Will continue to monitor —— Ceew-RN |
| 2/21/15 | 0904 | Standing by the cell door when I approached his cell. |
| | | I/P was teary, he expressed multiple mix of emotions about |
| | | the what he described as custody assaults going style. |
| | | Both eyes are black, ® eye able to open + see, while left |
| | | eye still close/due to swelling. Upper + lower lips slightly swollen. |
| | | C/o throbbing pain temporal area, claimed his hair has been |
| | | pulled, grabbed to drag him, throbbing pain on periorbital area |
| | | + tender face, that cause tensed, moderate pain when he tried to |
| | | eat. Dental on call notified to obtain pain medications + fluid |
| | | supplement, + dental on call (Dr Sandhu) said will come to see |
| | | him. No noted distress at this time. Ate abt. 50% breakfast. Ceew-RN |
| 2/21/15 | 1450 | I/m transferred to CMF. Calm & Quiet. θ agitation |
| | | or acute distress noted. —— Ceew-RN |

| INSTITUTION | PHYSICIAN | ROOM | CDC NUMBER, NAME (LAST, FIRST, MI) |
|---|---|---|---|
| CSP SACRAMENTO | | A8-214 | Owens, Theon. |
| | | DATE 2/21/15 | V 60905 |

**NURSING CARE RECORD**
(CONTINUED) CDC 7212

STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS

8/12/82.

Confidential Saved 2015-05-26T15:15:44Z

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS _____ VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750 - JAM-KJN.

I.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: DOCTOR'S NOTES.

"Hosted by Medical Doctor (M.D.), DAVID MATHIS. on 2/21/2015. At 9:06 P.M. It shows the M.D.'s notes on the Plaintiff. The M.D. notes "AOD recommended repeat medical clearance due to injuries... Large BMIP w/ou Moderate inferior.... Minimal swelling... Tender over the nasal bridge... Minor bruises on the legs... A: Subacute facial contusions... Absent teeth. acute". Which shows some of the injuries the Plaintiff received from being beaten by defendants."

NUMBER OF PAGE'S TO THIS EXHIBIT: 1 ____ PAGE'S.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
CALIFORNIA MEDICAL FACILITY
1600 California Drive, Vacaville, CA 95687
Tel: 707-448-6841
B-1 clinic ext: 2422
ER ext: 2318

2/21/2015 9:06 PM
Owens, T      V60905      A214   8/12/82

32 y/o BMIP direct admit to MHCB from SAC ~ 17:00. AOD recommended repeat medical clearance due to injuries. IM has injuries on his inner thighs that he says are ~ 4 days old. IM has facial injuries that he says are about 3 days old.

Med Rec: reviewed
Allergies: fluphenazine, lactose, thiothixene, PCN, haloperidol

Large BMIP w/ OU moderate inferior, medial periorbital ecchymosis, minimal swelling. Lids move normally. EOM normal. Pupils equal and reactive. Nose intact w/ good air movement. Tender over the nasal bridge, but not swollen. Bilaterally tender zygomatic prominences. Absent right bicuspids, acute, both maxillary and mandibular w/ dry sockets. Tongue w/o trauma. Mandible and maxilla intact to traction. Neck ROM full. Ear canals w/o blood. Hands w/o trauma. Chest wall NTTP. Lungs CTA. Heart RRR w/o m/g. Broad subacute abrasions on both medial thighs. Walking w/o difficulty. Minor bruises on the legs. Knees w/o effusion.

A: Subacute facial contusions w/o evidence of fracture. No X-ray required. Absent teeth, acute.

P: Cleared for MHCB.

| 1. Disability Code: | 2. Accommodation | 3. Effective Communication: |
|---|---|---|
| ☐ TABE Score <4.0x | ☐ Additional Time | ☐ ● P/I Asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment SLI | ● P/I Summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please Check one: |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ● Reached |
| ● Not Applicable | ☐ Other* | |
| 4. Comments: | | |

David Mathis MD
MOD

 
CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES

2015 FEB 23  AM 7 17

1

Confidential Saved 2015-09-23T14:44:03Z

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

J.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 237-C-2 (REV. 08/10)
SUPPLEMENTAL DENTAL PROGRESS NOTES.
Hosted by Dentist. DDS. J. SANDHU. on 2/22/2015. At 9:15 AM. It Shows that
an R.N. name LINSEY called the dental department, to notify them that
the Plaintiff was having pain on the left side of face and jaw. From recent
beating and knocked out teeth by defendants. The writter noted "inmate/
Patient had recent trauma and surgery on face and head." Which shows that
the Plaintiff was in alot of pain three days after having teeth knocked
out, and that treatment was deemed appropriate by the R.N. It also
shows that the Plaintiff had trauma and cutting on his face and head at
the time he was observed by the R.N.".

NUMBER OF PAGE'S TO THIS EXHIBIT: ___1___ PAGE'S.




STATE OF CALIFORNIA
**Supplemental Dental Progress Notes**
CDCR 237-C-1 (REV. 08/10)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 1 of 2*

**Prior to each treatment, the clinician *must* review the inmate-patient's health history, note changes or specify no change. Use S.O.A.P.E. format to document patient care.**

| Date (mm/dd/yy) | Tooth # | PROGRESS NOTES (include signature at the end of each data entry) | DPC After Encounter | Prison Acronym |
|---|---|---|---|---|
| 2 21 15 9:15 am | | Rn Linsey called from OHU. Pt. is having pain on left side. I/p had recent trauma and surgery on face and head. Informed Rn that - will come to back to Institution. | | |
| 2 21 15 10:38 am | | Rn Linsey called again. Indicated that I/p Owens is being transferred to CMF right now and his tmt. will be continued at CMF. NV. as needed. | | |

J. SANDHU, DDS
CSP-SAC

1. Disability Code:
☑ TABE score ≤ 4.0  ☐ DPH ☐ DPV ☐ LD  ☐ DPS ☐ DNH  ☐ DNS ☐ DDP  ☐ Other*
Comments: Tabe 2.6 -

2. Accommodation:
☑ Additional time  ☐ Equipment ☐ SLI  ☐ Louder ☐ Slower  ☑ Basic ☐ Transcribe  *See chrono/notes

3. Effective Communication:
☑ I/P asked questions  ☑ I/P summed information
Please check one:
☐ Not reached*  ☑ Reached

2015 FEB 23   AM 8:45   SAC

Pen.

DRUG ALLERGIES?
☐ NO   ☑ YES

**SUPPLEMENTAL DENTAL PROGRESS NOTES**
CDCR 237- C - 1

| CDC Number: | V 6 0 9 0 5 |
|---|---|
| Inmate Name: | Owens, Theon |
| | (Last, First, Middle Initial) |
| Date of Birth: | 0 8 1 2 8 2 |
| | (mm/dd/yy) |

CDCR 237-C-1 SUPPLEMENTAL DENTAL PROGRESS NOTES

Confidential Saved 2015-05-26T16:27:39Z

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS.          VS. JOSEPH DEFAZIO. ET AL.

CAES No.: 2:16-CV-02750-JAM-KJN

k.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: (DCR 7230 (REV. 02/13)
INTERDISCIPLINARY PROGRESS NOTES.
"Hosted by Registered Nurse (R.N.). MANAGO. on 2/21/2015. At 1700 hours. It shows the R.N.'S medical evaluation of the Plaintiff. The R.N. noted "observed several injuries on the body: inmate Patient had Periorbital swelling, bruises on both eyes, abrasion of different sizes, on his right upper arm, left thigh, right knee, and on both lower tibia, inmate Patient allegedly claiming that the custody officers in CSP-SAC is responsible for all the injuries he got. He lost two right lateral incisor teeth." Which shows many of the visual injuries the Plaintiff sustain. It also show the facts ensured in the complaint."

NUMBER OF PAGE'S TO THIS EXHIBIT: __1__ PAGE'S.

STATE OF CALIFORNIA
**INTERDISCIPLINARY PROGRESS NOTES**
CDCR 7230 (REV. 02/13)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| DATE mm/dd/yy | TIME hh:mm AM/PM | |
|---|---|---|
| 2/21/15 | 1700Hrs | S - "I'm gonna be suicidal if they send me back to CSP Sac. Homicidal? Not here but over |
| | | where I came from.... Yes."   IP denied AH/VH, agitation, (+) depression and headache 8/10 |
| | | O- Received inmate AOX3, ambulatory with steady gait. IP is sent here for being danger to |
| | | Self and others. IP is calm and cooperative with staff during intake. Observed several injuries |
| | | On the body: IP had periorbital swelling, bruises on both eyes, abrasion of different sizes on |
| | | His right upper arm, left thigh, right knee, and on both lower tibia. IP allegedly claiming that |
| | | The custody officer in CSP Sac is responsible for all the injuries he got. He lost 2 right lateral |
| | | incisor teeth. V/S BP 154/95, HR 78, RR16, T 99.4, O2 sat 100%, Ht 74 inches, Wt 212.5 lbs. |
| | | A – Risk for suicide related to bipolar disorder aeb IP recent verbalization of SI/ HI and stated |
| | | That if ever he will be sent back to CSP Sac he will kill himself and the custody responsible for |
| | | His injuries |
| | | P - Maintain a calm and safe environment. Assess IP for behavioral issues and report any |
| | | thoughts of suicide/ homicide, agitation/ depression and pain. Provide medication and |
| | | treatment as indicated / prescribed. Encourage IP to express self and verbalize any |
| | | psychiatric and medical concerns. |
| | | E - Emphasize importance of his compliance with his medication and treatment regimen. |
| | | RN Manago---------------------------- |
| | | |
| | | |
| | | |
| | | |
| | | |

| Institution CMF-MHCBF | Housing Unit B2 |
|---|---|

| 1. Disability Code: ☐TABE score ≤ 4.0 ☐DPH ☐DPV ☐LD ☐DPS ☐DNH ☐DNS ☐DDP ☐Not Applicable | 2. Accommodation: ☐Additional time ☐Equipment ☐SLI ☐Louder ☐Slower ☐Basic ☐Transcribe ☐Other* | 3. Effective Communication: ☐P/I asked questions ☐P/I summed information Please check one: ☐Not reached* ☐Reached *See chrono/notes | CDCR# :V60905 Last Name: Owens First Name: Theon DOB: 8/12/1982         MI |

4. Comments:

Confidential Saved 2015-09-23T14:44:03Z

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT FOR THE <u>EASTERN</u> DISTRICT OF CALIFORNIA

THEON OWENS _____ VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750 - JAM-KJN.

L.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 7219 (Rev. 11/05) MED-ICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE.

"Hosted by Registered Nurse (R.N.), C. VALEVA, on 2/21/2015, at 1700 hours. It shows all of the visual injuries that the Plaintiff suffered by defendants beating him while handcuffed behind his back. The R.N. notes "Abrasion's, scratch's, bruising, discolored area, dry blood, and swelling to the left eye, Abrasion's, scratch's, bruising, discolored area, dry blood, and swelling to the right eye, Abrasions, scratch's, reddened area to right mid arm, Abrasion's, scratch's, and reddened area to the right knee, Abrasions, scratch's to the left ankle, Abrasions, and scratch's to the right ankle, and two missing teeth". All of these injuries show the amount of injuries, the extent of the injuries suffered to the Plaintiff, it also shows the amount of unnecessary excessive force that was used on a handcuffed prisoner, the Mind Frame of the defendants, who all acted willfully, maliciously and sadiscical-ly for the purpose of causing the Plaintiff harm, inwhich they did just that."

NUMBER OF PAGE'S TO THIS EXHIBIT: ___1___ PAGE'S.

MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE

(Pre-Crisis unit admission)

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | | | DATE |
|---|---|---|---|---|---|---|
| CMF | MHCB | USE OF FORCE | **INJURY** | ON THE JOB INJURY | | 2-21-15 |
| | | | UNUSUAL OCCURRENCE | PRE AD/SEG ADMISSION | | |

| THIS SECTION FOR INMATE ONLY | NAME | LAST Owen | FIRST Theon | CDC NUMBER V60905 | HOUSING LOC. MHCBB-2 | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME | LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME | LAST | FIRST | MIDDLE | DOB | OCCUPATION |
| | HOME ADDRESS | | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE CSP SAC | DATE/TIME OF OCCURRENCE (?) 2-17-15 | NAME OF WITNESS(ES) |
|---|---|---|

| TIME NOTIFIED 1700 | TIME SEEN 1700 | ESCORTED BY C.O. | MODE OF ARRIVAL *(circle)* AMBULATORY  LITTER  WHEELCHAIR  ON SITE | AGE 32 | RACE Black | SEX Male |
|---|---|---|---|---|---|---|

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"These C.O. beat me and dragged me."
"This happened 3-4 days ago."

| INJURIES FOUND?  YES / NO | |
|---|---|
| Abrasion/Scratch | (1) |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | (4) |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | (7) |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | (14) |
| Skin Flap | 15 |
| Swollen Area | (16) |
| Other Missing teeth | (17) |
| Healing of scabs | 18 |
| | 19 |

#1,4,7,14,16
#1,4,7,14,14
#17 2 missing teeth
#1,14
#1,14
#1,18
#1,4,7,14,14
#1
#1

| O.C. SPRAY EXPOSURE?  YES / (NO) | |
|---|---|
| DECONTAMINATED? | YES / (NO) |
| Self-decontamination instructions given? | YES / (NO) |
| Refused decontamination? | YES / (NO) |
| Q 15 min. checks | ✓ |
| Staff issued exposure packet?  YES / NO | |

| RN NOTIFIED/TIME RN C.Valera 1700 | PHYSICIAN NOTIFIED/TIME |
|---|---|

E/DISPOSITION
Stable, RTC

| REPORT COMPLETED BY/TITLE  (PRINT AND SIGN) RN C. Valera | BADGE # | RDOs Tues Wed |
|---|---|---|

INMATE APPEALS
MAR 04 2016
CMF

(Medical data is to be included in progress note or emergency care record filed in UHR)

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS _____ VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750 - JAM-KJN.

M.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDC 7230 INTERDISCIPLIN-ARY PROGRESS NOTES.
Hosted by Registered Nurse (R.N.). PLASENCIA. on 2/21/2015. At 2046 hours. It shows the R.N.'S evaluation of the Plaintiff. The R.N. noted "Face swollen, still bruising on left eye Moderate swelling, left eye blood shot, right eye Paitla but swollen and bruised." Which shows that the Plaintiff hole face was seriously injured."

NUMBER OF PAGE'S TO THIS EXHIBIT: ___1___ PAGE'S.

| DATE | TIME | |
|------|------|---|
| 2.21.15 | 2046 | S: 32 yr brought from MHCB - for medical clearance. He was a direct Admission @ 1700 - (±) 44 o+3 face is swollen — |
| 7219 | HCB | |
| | | I/P states "I got beat up two days ago." O₂ 6.1 Bruises on both |
| | | Eyes moderate swelling - Able to speak and answer questions - PERLA |
| | | Ambulatory in stretcher seat & shackles on - Eyes (L) = R Bloodshot PERLA |
| | | O Rₓ PERLA but swollen and bruised outer aspect - U/S T99³ P. 69. R 16 |
| | | BIP 129/79 O₂ sat 99% calm and cooperative. Skin warm and dry. |
| | | A: Medical Clearance to continue stay MHCB. P: Medical clearance |
| | | Done- Discussed & I/P if in the event of Experiencing severe |
| | | H/A, Double Vision, slurred speech, uncoordination, seizures |
| | | to report to medical staff in MHCB. Stable to return |
| | | to MHCB- _____ RN PLASENCIA |

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | 4. Comments: |
|---|---|---|---|
| ☐TABE score ≤ 4.0 | ☐Additional time | ☐P/I asked questions | |
| ☐DPH ☐DPV ☐LD | ☐Equipment ☐SLI | ☐P/I summed information | |
| ☐DPS ☐DNH | ☐Louder ☐Slower | Please check one: | |
| ☐DNS ☐DDP | ☐Basic ☐Transcribe | ☐Not reached* ☐Reached | |
| ☐Not Applicable | ☐Other* | *See chrono/notes | |

| INSTITUTION | HOUSING UNIT |
|---|---|

INTERDISCIPLINARY PROGRESS NOTES   2015 FEB 23   AM 7:18

Owens, Theo
L-60905
8-12-1982

CDC 7230
STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS

Confidential Saved 2015-09-23T14:44:03Z

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT FOR THE <u>EASTERN</u> DISTRICT OF CALIFORNIA

THEON OWENS.        VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

N.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: MEDICAL HISTORY AND PHYSICAL.

"Hosted by JOHN WIELAND, Medical Doctor (M.D.) on 2/22/2015, at 12:30 P.M., It shows the M.D.'s notes on the Plaintiff. Whereon the M.D. notes "Describes lightheadedness sometimes when getting up. like stomach turning", which shows the Plaintiff was still at that time suffering from brain injury. The M.D. notes "Pain in face and jaw area, face somewhat swollen including peri-orbitally. Ecchymoses below both eyes. Blood evident in left sclera, several superficial abrasions around face including tiny lacertion to Right eyelid, one upper and one lower incisor absent. Abrasions Right upper arm, superficial lacerations above ankles." which shows many of the physical injuries suffered to the Plaintiff."

NUMBER OF PAGES TO THIS EXHIBIT: ____1____ PAGE'S.



### 2/22/15    12:30    Medical History & Physical

Hx – 32 y/o black male admitted to CB from SAC on 2/21/15 for S.I.

    Discharged from DSH Stockton 12/8/14. Discharged from CB at SAC 2/17/15.

Med Hx – Denies ht dz, asthma, sz, DM, sig head injury. Says hx of fx R shoulder. Says had H Pylori in past treated.

Surg Hx – Biopsy from groin and back: negative.

Meds – Bactrim thru 2/24, Naproxen 500 prn, MultiVit, Olanzapine, Lithium, Depakote hs

Allergies – Fluphenazine, Thiothixene, PCN, Haldol.. Listed as lactose intolerant.

Family Hx – + DM. G'mother had unknown cancer.

Social – Incarceration date 2004 with EPRD of 2021.

Public Health – PPD 0mm on 4/28/14.

System Review – Describes lightheadedness sometimes when getting up. No SOB, coughing or chest pains. No
    heartburn, N, V, D or C though c/o feeling "like stomach turning" which can occur at any time unrelated to
    activity or meals. No urinary pains, blood or discharge. c/o pain in face and jaw area.

Labs – 2/11/15: Hep A and B antibodies +, Hep C neg,

    11/19/14: CMP ess nl, CBC nl with Hgb 13.1,

    10/28/14: B-12 nl at 455, Folate 23. Serum copper low at 69.

Accommodations/Chronos – TABE 4.5.

Advance Directives – TABE 4.5. 128C3 5/8/14 for Full Duty, Med Med Risk, Basic Nursing, Cocci 2 restricted.

Exam – 99.4, P 78, 154/95, R 16, ox sat 100% on RA, 6' 2", 213 lb.

    Repeat today: 98.3, 135/85 RA.

    Alert. Walks easily.

    Face somewhat swollen including peri-orbitally. Ecchymoses below both eyes. Blood evident in L sclera.
    Several superficial abrasions around face including tiny lacertion R eyelid. Ears appear normal. One upper
    and one lower incisor absent with no sign bleeding or infection in sockets. Abrasions R upper arm and left
    inner thigh. Superficial lacerations above ankles.

    Neck has no nodes or masses.

    Back straight with no evident tenderness.

    Lungs clear

    Heart RR without murmurs

    Abd flat with no masses or tenderness

    Ext – no calf tenderness or edema.

Imp – Psyche issues

    Mult abrasions: no sign fracture. Pt says already seen by dentist at SAC.

Plan – Psyche care

    Vitals - Routinely

Education – reviewed f/u with PCP, fall prevention by standing slowly.

John Wieland MD

| 1. Disability Code: | 2. Accommodation | 3. Effective Communication: | CMF, MHCB B-2 |
|---|---|---|---|
| ☐ TABE Score <4.0x | ☐Additional Time | ☐P/I Asked questions | Owens, Theon, V60905, 8/12/82 |
| ☐DPH ☐DPV ☐LD | ☐Equipment SLI | ☐P/I Summed information | |
| ☐DPS ☐DNH | ☐Louder ☐Slower | Please Check one: | |
| ☐DNS ☐DDP | ☐Basic ☐Transcribe | ☐Not reached* ☐Reached | |
| ☒Not Applicable | ☐Other* | | |
| 4. Comments: | | | |

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS _____ VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

O.

EXHIBIT

DESCRIPTION OF THIS EXHIBIT: CDCR 237-C] (REV. 08 Ho)
SUPPLEMENTAL DENTAL PROGRESS NOTES.

"hosted by V. HU., Supervising Dentist, at California Medical Facility - Vacaville. on 2/23/2015. at 10:20 A.M.. It shows Mr. V. HU dental examination of the Plaintiff. the examiner notes tooths #8 and #26 are missing and that they (teeth) are sore, but getting better. It also shows the Dental X-Ray taken on the day of. which confirm's the teeth are missing."

NUMBER OF PAGE'S TO THIS EXHIBIT: _____2_____ PAGE'S



STATE OF CALIFORNIA
**Supplemental Dental Progress Notes**
CDCR 237-C-1 (REV. 08/10)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 1 of 2*

**Prior to each treatment, the clinician *must* review the inmate-patient's health history, note changes or specify no change. Use S.O.A.P.E. format to document patient care.**

| Date (mm/dd/yy) | Tooth # | PROGRESS NOTES (include signature at the end of each data entry) | DPC After Encounter | Prison Acronym |
|---|---|---|---|---|
| 2 23 15 | | BP: 116/71 Pulse: 80    10:20am AoSE = ECCORT | | CMF |
| | #8 | RECENT TRANSFER (2-21-15) FROM SAC SP INTUBULATED | | |
| | | TOOTH 8/26 SINCE 2-18-15 - IN CTCB-1 | | |
| | 12/6 | S: / 7EE1 SORE MISSING TEETH IN SETTING, BETTER | | |
| | | O: HtR H/o H7N, Acp ?, TINITUL SPISODIC | | |
| | #21 | EXCESSIVE THIRST SECONDARY to Meds TAKING | | |
| | | Naproxyn 500, Divalproex 500, SeRoquel 450 | | |
| | | Clanzapine 10, Sulfamethoxazole 800 & Rizzan | | |
| | | Changes. Provider maintaining Meds. A. Evaluation | | |
| | | Swelling (+) Exfoliation TM118 Secondary to | | |
| | | Gross Plaque & Food Debris. Particularly at Bont | | |
| | | Area. No Proximon / Terre Pano R/o Transfrom | | |
| | | Nor PAP / Foreign Body #21 Secondary ORIO, tree | | |
| | | A: Healing WNL Retaining Dentition in | | |
| | | good repair except #21 OOB Decoave Compromise | | |
| | | P: CaR 1 O3P PSP Decoave Procedures Informal | | |
| | | I/F Demonstro Understanding Consent to Proceed | | |
| | | Repair #21 NV #21 OOB Then Cond Than | | |
| | | E: Ox1 Self Care Brush/Foss Daily O | | |
| | | Verbal by Roa/Das RTC - Followup | | |
| | | Discontinue VMA Eoc 7582 or Gazz Roughb | | |
| | | | | |
| | | V. Hu, D.D.S. Vincent Cohl Supervising Dentist, CF | | 2.3 CMF |
| | | | | 19 |

Print Inmate-Patient Name (Last, First, Middle Initial)    Queens    96090

Signature

Date    9/20/20

I request further dental treatment and understand I may be charged $5.00 co-pay fee at my next visit.

CDCR #    K60502

3. Effective Communication: (P) asked questions (P) summed information Please check one: Not reached* Reached *See chrono/notes
Basic □ Transcribe □ Louder □ Slower □ Equipment □ SLI □ Other _____ WE SAMPLE BC/PCA SSUES NO

2. Accommodation: □ Additional time

1. Disability Code: □ TABE score 4.0 or below □ DPH □ DPV □ DPS □ DNH □ DNS □ DDP Not Applicable
4. Comments: _____

DRUG ALLERGIES? PCN    ☐ NO    ☒ YES

**SUPPLEMENTAL DENTAL PROGRESS NOTES**
**CDCR 237- C - 1**

CDC Number:  V 6 0 9 0 5

Inmate Name:  Queens, Theon
(Last, First, Middle Initial)

Date of Birth:  0 8 1 2 8 2
(mm/dd/yy)

C3PRO 12-24-21

CDCR 237-C-1 SUPPLEMENTAL DENTAL PROGRESS NOTES

Confidential Saved 2015-05-26T16:27:39Z

California Correctional Health Care Services

5/27/2015 2:52:54 PM



2/23/2015  10:25:02 AM

Patient: THEON OWENS
Patient ID: 11993700
Sex: M
Series name Panoramic, Created 2/23/2015  10:25:02 AM

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,        VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-kJN.

P.

EXHIBIT

DESCRIPTION OF THIS EXHIBIT: CDCR MH-7230A (Rev. 01/12)
INTERDISCIPLINARY PROGRESS NOTES - GENERAL.
hosted by LATOYA BROGDON. Psychologist. on 02/24/2015. at 2015 hours.
It shows L. BROGDON notes of her evaluation of the Plaintiff on the day
of. she notes: "altercation with cops. has teeth broken." She notes at the
time that the Plaintiff was having pain in "his lower back. the side of his
head. and his shoulders hurt." she notes that "his face is still swollen.
his eyes swollen and his left eye is red. she notes that the Plaintiff "Reports
having difficulty speaking clearly because his 'teeth were knocked out." She
    "speech was notable for some mild articulation problems. Presumably
related to the missing teeth". She notes that the "IP does appear in some
distress regarding the incident that occurred at CSP-SAC" which shows the
Plaintiff's mental and emotion injuries. it also shows some of the physical
injuries suffered".

NUMBER OF PAGE'S TO THIS EXHIBIT: ____1____ PAGE'S



State of California                                          Department of Corrections and Rehabilitation
**Interdisciplinary Progress Notes – General**
CDCR MH-7230A (Rev. 01/12)

**Comments (Use SOAPE Format):**

**Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant.
**Main reason for admit:** 'Unpredictable'  **Reason for Referral:** DTS

IP was seen cell side for 1:1 clinical contact

S: IP reports he is doing okay, but is in pain. Specifically he states his lower back, the side of his head, and his shoulders hurt. He reports that the physician wrote him an order for pain medication. IP discusses his recent altercation with the CO's at CSP-SAC. He reports that he is suicidal, but without any specific plan or means to carry out an action. He reports having thoughts about hurting others, specifically, the CO's that he reports beat him at CSP-SAC. He clarified that he was not homicidal, but just wanted them to go through the same thing they put him through. He denies any questions or concerns at this time.

O: IP wearing white t-shirt and shorts. He appears cooperative, but angry about what he says happened to him. ADLs appear intact. His face is still swollen, his eyes swollen and his left eye is red. Mental status was generally intact. IP was oriented x 4. He reports have difficulty speaking clearly because his "teeth were knocked out." Speech was notable for some mild articulation problems, presumably related to the missing teeth. Otherwise, speech was fluent, spontaneous, and understandable. Thought processes were logical, linear, and goal oriented. Thought content was focused on the incident he was involved in at CSP-SAC; no bizarre thought content was discussed. IP denied auditory hallucinations, visual hallucinations or any other crises at this time. He was not noted to be responding to internal stimuli. Insight and judgment appear fair.

A: IP does appear in some distress regarding the incident that occurred at CSP-SAC. Risk is lowered due to setting.

P: Continue MHCB protocol at this time. Protocol includes monitoring for safety, medication management, 1:1 daily clinical interaction, recreation and yard as appropriate and weekly IDTT.

E: Encouraged IP to notify staff if he needs anything.

| Date: | 2015.02.24 | Time: | 1015 | Housing: | B-02 |
|---|---|---|---|---|---|
| Institution: | CMF-MHCB | Clinician: | L. Brogdon, Ph.D. | Signature: | *R. Brogdon PhD* |

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | Name, CDCR#, DOB |
|---|---|---|---|
| ☒ TABE Score ≤ 4.0 | ☒ Additional Time | ☒ P/I Asked Questions | **Owens, Theon** |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I Summed Information | **V60905** |
| ☐ DPS ☐ DNH | ☐ Louder ☒ Slower | Please Check One: | **08/12/82** |
| | | ☐ Not Reached* ☒ Reached | |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | | |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes | |
| 4. Comments: TABE=2.6 | | | |

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE __EASTERN__ DISTRICT OF CALIFORNIA

THEON OWENS,         VS. JOSEPH DEFAZIO, ET AL.

CAES No.: 2:16-CV-02750-JNM-kJN.

Q.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR MH-7230F INTERDIS
CIPLINARY PROGRESS NOTES - GENERAL PSYCHIATRY.
"Hosted by W. BILL WHITE, Medical Doctor (M.D.), on Wednesday 2/25/2015
at 13:19-13:41 hours. It shows the M.D.'s notes of his evaluation
of the Plaintiff on the day of. Whereon the M.D. notes "Face & eyes
appear a little less swollen & bruised, 2 teeth on right side (one upper,
one lower) missing, left eye still red, but both eyes opening wider today."
It also shows the mental anguish and emotional distress that the Plaintiff
was suffering from. The M.D. notes on his S/I section "I feel like hurting
myself, but not like killing myself, it's just when my emotions get high,
& I look at my situation as a failure since I wasn't able to protect
myself as a Man"" The Plaintiff Appetite after the traumatic event was
noted as "kinda poor, maybe because I'm stressed & too busy thinking
about everything that happened." Which also shows that the Plaintiff was
traumatized by the attack."

## NUMBER OF PAGES TO THIS EXHIBIT: 1         PAGE'S.

State of California                                      Department of Corrections and Rehabilitation
**Interdisciplinary Progress Notes- General Psychiatry**
CDCR MH-7230F

| Identifying Information | Date: | Wednesday, 2015/02/25 | Time: | 13:19-13:47 | | Location: CMF CTC-B-Side |
|---|---|---|---|---|---|---|
| | Level of Care: ☐ CCMS ☐ EOP ☐ OHU ☒ MHCB | | | Custody Housing: ☐ GP ☐ RC ☐ ASU ☒ CTC ☐ SNY ☐ SHU | | |

**Identifying Factors:** Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3). Custody Level: Maximum. Placement Score: 532. Custody Suffix: S.
Received CDCR: 12/09/2004. **EPRD: 12/24/2021.** Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission:** From Referral 7230: **Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to to staff CSP Sac OHU; has no IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant. **Main reason for admit:** 'Unpredictable'. **Reason for Referral:** DTS.
Per IP 02/22/15: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

## II. Comments / Data:

**Psych Rx:** Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization.
Lithium Carbonate ER 450 mg po BID for mood stabilization.
Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours.

**Medical Rx:** Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bactrim DS to 2/24. Naproxen PRN.
**Allergies per Maxor:** Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins, Haldol (haloperidol).
**EKG:** 02/21/15: Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.
**Labs:** See Dr. Wieland's H&P for recent labs from CSP-Sac. Labs reordered today after IP told nursing he'd reconsider after 3 refusals.
**Most Recent Shift Reports** 2w, 3w, 1w: 2015/02/24-25: **2w:** Refused AM labs. Calm, quiet & cooperative, reading at times. PRN Tylenol 650mg given for 6/10 body pain @ 1324. States he feels suicidal & homicidal. Didn't elaborate on it he said "They know already". **3w:** Standing at door for shift on & off. Requesting to shave. PRN Naproxen 500mg given for 7/10 body ache @ 1945. **1w:** Pt resting. No distress noted. Movements & repositioning observed. Monitoring for safety continues.

| **S** Sub-jective | **General Dispo:** IP lobbying today for waist restraint chrono, & didn't want to accept that this needed to be done by PCP at his assigned institution. "I'd like to go back to Stockton, except the law library is very poor there." **Activities:** "I've been writing page after page; getting ready for witnesses, etc., in case they write me up." IP said has books, but no time to read since too busy writing. **Sleep:** "I've been sleeping good, way more than usual, from 9 to 9." **Appetite:** "Kinda poor; maybe because I'm stressed & too busy thinking about everything that happened." **Rx Response:** Medication helps level me, but I still get manic at times. I don't take the Zyprexa PRN, because it's too much. I get manic & hear voices when I take Effexor or Zoloft." |
|---|---|
| **O** Ob-jec-tive: | Seen for psychiatry contact ● IDTT Room ● Confidential. <br> **Presentation:** 6' 2" Overweight black male with dreaded hair, good eye contact, dressed in jumpsuit. Face & eyes appear a little less swollen & bruised; 2 teeth on right side (one upper, one lower) missing. Left eye still red, but both eyes opening wider today. **Speech:** Talkative, irritable, mild pressure, but not manic. **Mood:** "I'm stressed out, depressed." **Affect:** IP was overtly anxious, distressed, with slight depressive flavor at times, irritable at others. **S/I:** "I feel like hurting myself, but not like killing myself. It's just when my emotions get high, & I look at my situation as a failure since I wasn't able to protect myself as a man." IP reported he was recently cutting himself at SAC in protest to Dr. Gardner moving to Ad-Seg, & need to change to another clinician, but says only thought about cutting, but hasn't. **H/I:** "I have thoughts about fucking up the people who did this to me." **Psychosis:** "I only hear voices when I get mad or manic or take antidepressants; not hearing them since a couple months ago." **Cognitive:** Appears intact, oriented. **Movement/AIMS:** Normal range. No overt evidence of Tardive Dyskinesia seen. |
| **A** | **Axis I:** 296.80 Bipolar Disorder NOS. 304.80 Polysubstance Dependence (cannabis, PCP, Alcohol). **Axis II:** 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. **Axis III:** Low back pain. History of leucopenia, granulocytopenia. Recent facial & eye trauma, broken teeth. **Axis IV:** Incarceration. Recent altercation with custody. Mother's death November 2014; grandmother's death December 2014. **Axis V:** GAF: 30. |
| | **As-sess** | IP with hx of mood instability suggestive of bipolar disorder, significant axis II cluster B issues, here in MHCB due to recent events at CSP-Sac in which he was physically injured; relatively stable on current Rx. |
| **P-Plan** | As risk appears to be primarily at Sac, continue privileges as follows: full issue, reading materials, extra blanket, eyeglasses, yard, shaving privileges, eyeglasses in cell, crayon, pen filler, jumpsuit. Continue Rx as above for indications listed. |
| **E-Education** | Allowing time to develop appropriate restraint. Depakote risks/benefits discussed in light of impulse reduction need. |

Psychiatrist's Name: W. B. White, M.D.   Signature: _WBWhite_

| 1. **Disability Code:** | 2. **Accommodation:** | 3. **Effective Communication:** | Inmate's Name (Last, First, MI), CDC Number, DOB: |
|---|---|---|---|
| ☐ TABE Score <4.0 | ☐ Additional Time | ☒ P/I Asked questions | |
| ☐ DPH  ☐ DPV ☐ LD | ☐ Equipment  ☐ SLI | ☒ P/I Summed information | **Owens**, Theon |
| ☐ DPS  ☐ DNH | ☐ Louder  ☐ Slower | Please Check one: | |
| ☐ DNS  ☐ DDP | ☒ Basic  ☐ Transcribe | ☐ Not reached*  ☒ Reached | **V60905** |
| ☒ **Not Applicable** | ☐ Other* | | |
| 4. Comments: **Tabe:** 4.5 (01/30/2015). NCF. | | | DOB: 08/12/1982   **CMF MHCB B-02** |

Confidential Saved 2015-09-23T14:44:03Z

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,            VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

R.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR MH-7230A(Rev.01/
12) INTERDISCIPLINARY PROGRESS NOTES - GENERAL.
"Hosted by LATOYA BROGDON, Psychologist (PSYC) on 03/01/2015, At 12:05 A.M., It shows the notes of an evaluation done by the PSYC on the Plaintiff, wherein the PSYC notes "IP does appear in some distress regarding the incident that occurred at CSP-SAC" which shows that the Plaintiff did suffer from Mental injuries. The PSYC also notes that "He continues to report being upset about his missing teeth" which shows that the Plaintiff also suffered from emotional injuries, as well as physical injuries. The PSYC notes that "speech was notable from some Mild articulation problems, presumably related to the missing teeth". Which shows that the injuries the Plaintiff suffered are significant and caused the Plaintiff limitation of the ability to articulate and to perform the daily activities of life (speak effectively)."

NUMBER OF PAGE'S TO THIS EXHIBIT: ___1___ PAGE'S.



State of California                                    Department of Corrections and Rehabilitation

**Interdisciplinary Progress Notes – General**
CDCR MH-7230A (Rev. 01/12)

| Comments (Use SOAPE Format) |
|---|

**Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant.
**Main reason for admit:** 'Unpredictable'   **Reason for Referral:** DTS

IP was seen cell side for 1:1 clinical contact. IP refused to meet in confidential treatment module.

S: IP reports "I'm not getting all of my food. I'm still feeling depressed, manic. I need my medications adjusted." IP reports suicidal ideations, and the desire to cut self in order to relieve his stress. He states he is not going to act on these thoughts because then he won't be able to get the placement he wants. He reports still having thoughts about hurting others, specifically, the CO's that he reports beat him at CSP-SAC. He denies any questions or concerns at this time, but wants the PC to read his complaint form. It was explained that the clinician does not have time to do this.

O: IP wearing white t-shirt and shorts. He appears cooperative. ADLs appear intact. Mental status was generally intact. IP was oriented x 4.  He continues to report being upset about his missing teeth.  Speech was notable for some mild articulation problems, presumably related to the missing teeth, speech was pressured at times. Otherwise, speech was fluent, spontaneous, and understandable.  Thought processes were logical, linear, and goal oriented. Thought content was focused on the incident he was involved in at CSP-SAC; no bizarre thought content was discussed. He described his sleep as "good" and his appetite as "great." IP denied auditory hallucinations, visual hallucinations or any other crises at this time. He was not noted to be responding to internal stimuli. Insight and judgment appear limited.

A: IP does appear in some distress regarding the incident that occurred at CSP-SAC, but appears to be de-escalating some.  Risk is lowered due to setting.

P: Continue MHCB protocol at this time. Protocol includes monitoring for safety, medication management, 1:1 daily clinical interaction, recreation and yard as appropriate and weekly IDTT.

E: Encouraged IP to notify staff if he needs anything. Encouraged to come out to speak with clinicians when prompted by officers.

| Date: | 2015.03.01 | Time: | 12:05 | Housing: | B-02 |
|---|---|---|---|---|---|
| Institution: | CMF-MHCB | Clinician: | L. Brogdon, Ph.D. | Signature: | _K. Brogdon Ph.D._ |

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | Name, CDCR#, DOB |
|---|---|---|---|
| ☒ TABE Score ≤ 4.0 | ☒ Additional Time | ☒ P/I Asked Questions | Owens, Theon |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I Summed Information | V60905 |
| ☐ DPS ☐ DNH | ☐ Louder ☒ Slower | **Please Check One:** | 08/12/82 |
| | | ☐ Not Reached* ☒ Reached | |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | *See chrono/notes | |
| ☐ Not Applicable | ☐ Other* | | |
| 4. Comments: TABE=2.6 | | | |

Confidential Saved 2015-09-23T14:44:03Z

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS,_____ VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16 CV-02750 — JAM-KJN.

S.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: DOCTOR NOTES.

"Hosted by **DAVID MATHIS**. Medical Doctor (M.D.). on 3/2/2015. At 12:57 P.M. It shows the M.D. evaluation of the Plaintiff. Whereon the M.D. noted "He complained to nursing today in the MHCB that he has decreased VA esp on the left. C/o darkness OS? OD in visual field. c/o blurred vision" which shows that the Plaintiff was still suffering from a concussion and it's symptom (e.g. decreased vision, darkness in eye, blurred vision, etc...), the M.D. also noted "S/P facial contusions w/o evidence of fracture", which shows the Plaintiff suffed facial contusions, due to defendants clenched fist strikes to his face. The M.D. notes "subconjunctival hemorrhage, but new c/o visual changes requiring specialt examination." which shows the injuries the Plaintiff suffered to his eyes (busted blood vessels)."

## NUMBER OF PAGES TO THIS EXHIBIT: ___1___ PAGES.

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**
**CALIFORNIA MEDICAL FACILITY**
**1600 California Drive, Vacaville, CA 95687**
**Tel: 707-448-6841**
**B-1 clinic ext: 2422**
**ER ext: 2318**

3/2/2015 12:57 PM
Owens, Thuan V60905        B-2 MHCB        8/12/82

32 y/o BMIP direct admit to MHCB from SAC ~ 17:00 on 2/22/15. He complained to nursing today in the MHCB that he has decreased VA esp on the left. c/o darkness OS > OD in visual field. c/o blurred vision. Does not have his glasses.

Med Rec: reviewed. Optometry exam 10/24/13 showed 20/20/20, corrected 20/15/15/13.

Allergies: fluphenazine, lactose, thiothixene, PCN, haloperidol

O: No persistent periorbital edema. EOM intact. Light reflexes normal. Pupils 2 mm, reactive. Discs bilaterally sharp.

A: s/p facial contusions w/o evidence of fracture. Persistent, improving OS subconjunctival hemorrhage, but new c/o visual changes requiring specialty examination.

P: RFS for opthalmology exam, requested urgent.

| 1. Disability Code: | 2. Accommodation | 3. Effective Communication: |
|---|---|---|
| ■ TABE Score <4.0x | □Additional Time | □●P/I Asked questions |
| □DPH □DPV □LD | □Equipment  SLI | ●P/I Summed information |
| □DPS □DNH | □Louder □Slower | Please Check one: |
| □DNS □DDP | ■Basic  □Transcribe | □Not reached*  ●Reached |
| Not Applicable | □Other | |

4. Comments:
David Mathis MD
MOD



**CALIFORNIA CORRECTIONAL**
**HEALTH CARE SERVICES**

1

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS,        VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

T.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDC 7243 (Rev. 11/02)
PHYSICIAN REQUEST FOR SERVICES (RFS).
"Hosted by Medical Doctor. D. MATHIS. on 3/2/2015. It shows a urgent
request was put in to the optometrist, because the Plaintiff was having
vision problems. From altercation   with cops at CSP-SAC. on Feb 18, 2015."

NUMBER OF PAGE'S TO THIS EXHIBIT: ____1____ PAGE'S.

STATE OF CALIFORNIA

**HEALTH CARE SERVICES**
**PHYSICIAN REQUEST FOR SERVICES**
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

DEPARTMENT OF CORRECTIONS

UM Recd 3/2/15

| PATIENT NAME OWENS THEON | CDC NUMBER V60905 | INSTITUTION CMF/MHCBF B-2 |

| DATE OF BIRTH 8/12/82 | EPRD DATE | GENDER male |

| PRINCIPLE DIAGNOSIS OU trauma, acute & VA | ICD-9 CODE | CPT CODE(S) |

| REQUESTED SERVICE(S) Opthalmology Consult | | # OF DAYS RECOMMENDED |

*Please circle all that apply:* Diagnostic Procedure/Consultation    (Outpatient)/Inpatient    Initial/Follow-up

Requested Treatment/Service is:    **EMERGENT**    (URGENT)    **ROUTINE**

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: Leeson.  _____  Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity (briefly describe the clinical situation: the history of the illness, treatments used, pertinent lab and imaging studies, or questions for consultant): VA 20/20/20  2013, VA 20/30/50/40 today. S/P assault w/ periorbital trauma, persistent OS subconjunctival/or hemorrhage

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): Please refer to 3/2 & 2/22 notes

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME MATHIS | APPROVED / AUTHORIZED / DENIED / DEFERRED BY Bisk    DATE 3/2/15 |

| REQUESTING PHYSICIAN SIGNATURE | DATE 3/2/15 | Utilization management tracking # CMF-UM-85316 |

| DATE OF CONSULTATION | PRINTED NAME OF CONSULTANT |

FINDINGS: Pretzett 3/6/15
_____
_____
_____

RECOMMENDATIONS: _____
_____
_____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
| ETA RN SIGNATURE | DATE | OWENS, THEON V60905   08/12/82 BLA |
| PCP SIGNATURE | DATE | |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN    - TO UHR PENDING ORIGINAL
CANARY   - CONSULTANT
PINK     - UM
GOLD     - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)    CDC 7243 (Rev. 11/02)

Confidential Saved 2015-05-26T16:14:09Z

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,            VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

U.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 7388 (Rev. 06106)
MENTAL HEALTH TREATMENT PLAN.

"Hosted by W. BILL WHITE, Medical Doctor (M.D.), And LATOYA BROGDON Psychologist (PSYC), on 03/08/2015. It shows the treatment team members notes. Wereon they noted "he is constantly replaying the situation over in his mind where he alleges he was assaulted by officers" Which clearly shows that the Plaintiff has been traumatized by the defendants beating assaulte. The team notes "he reports on longer wanting to hurt officer at CSP-SAC and states he just wants justice" which shows that the Plaintiff decided not to retaliate against the defendants, but to allow the justice system to work for him. The team notes "He reported his appetite is poor, and contributed this to having his teeth knocked out and inability to bite hard pieces of food because of this". this shows that the injury to the Plaintiff's teeth caused eating problems

## NUMBER OF PAGES TO THIS EXHIBIT: 1-2 ____ PAGES.

# MENTAL HEALTH TREATMENT PLAN

| ☐ Initial | ☒ Update | ☐ Bi-Weekly MHCB Review | ☐ Quarterly Review | ☒ Annual Review |
|---|---|---|---|---|

*(double click boxes to check throughout document)*

| **I. General Information** | Current Level of Care: ☐ NONE ☐ CCCMS | **TODAY'S DATE:** |
|---|---|---|
| **Treatment Setting: MHCBF** | ☐ EOP    ☒ MHCB    ☐ OTHER | **03/08/2015** |

| Arrival Date This Treatment Setting: **02/21/2015** | | |
|---|---|---|
| **From: CSP-SAC** | Current Housing: ☐ RC ☐ GP ☒ CTC<br>☐ ASU ☐ PSU ☐ SHU ☐ OTHER | **NEXT UPDATE**<br>**03/15/2015** |
| Committing Offense: **Assault w/Semi auto Firearm on PO/Fireman** | | |

| Custody Level: I/ II/ III/ IV/ AdSeg/ SHU | | EPRD: **12/24/2021** | | |
|---|---|---|---|---|
| Date Reviewed: | Initials: | Date Reviewed: | Initials: | Date Reviewed: | Initials: |

## II. CLINICAL SUMMARY

**Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant.

**Main reason for admit: 'Unpredictable'   Reason for Referral: DTS**

Prior to his reported altercation with the CO's IP reported to the clinician that he had become suicidal after his clinician was changed. He reports he did not want to work with anyone else as he had liked his original clinician.

Per IP 02/22/15 during IPE: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, and officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there." IP reported he's been cutting on himself since age 14, last cut February 9th, 2015. IP reported only time he really wanted to die was when he got long sentence & wanted to jump off tier at the courthouse. "I was at Napa State Hospital from age 17 to 21, & hospitals in Vallejo, John George Forensic, Alta Bates Hospital Forensics, & more."

IP has an extensive history of aggressive behavior that includes multiple charges of battery on a peace officer and battery on an inmate. He also has a history of IEX. His controlling offense is assault on a PO with use of Firearm. His EPRD is 12/24/2021 and he is serving a SHU term that exceeds that date.

IP has a long psychiatric history dating back to age 8, when he was hospitalized involuntarily due to violent behavior. As a child, he was diagnosed with ADHD and prescribed Ritalin. In 2002, he attempted to jump off a tier in jail. He has been admitted to NSH twice (1999-2005) on PC 1370. He has a prior admission at VPP from 8/26/2005-9/30/2005. He attempted to hang himself in 2008. In 2012 he has 3 MHCB admissions. He was at VPP again from 3/5/2013-4/12/2013 for SI (and threatening to swallow a foreign body) after he was transferred from SAC to PBSP for a SHU term. He has had 3 MHCB admissions in the past 6 months. Records indicate that he has had 3 MHCB admissions in the past that were due to LOC change, dissatisfaction with medical treatment or conflict with treating psychiatrist. Substance Abuse history is significant for alcohol (since age 14), marijuana and ecstasy (since age 17) and PCP. Socially, IP reports recent family deaths including his mother, grandmother, and aunt. He reports not having grieved these deaths.

2/23/2015: During today's IDT, IP wearing white jumpsuit. ADLs appeared intact. Eyes bruised and teeth missing from recent altercation. IP appeared cooperative. He was agitated at times, primarily when discussing the incident that occurred at CSP-SAC (he reports he was cuffed and beaten by officers). He describes being depressed and stressed about what happened to him. Affect was mood congruent. IP reports he was on suicidal watch while at CSP-SAC for cutting because he was having issues related to his mental health clinician relocating to another program. Mental status intact and IP oriented x 4. Speech fluent and spontaneous. Thought processes logical, linear and goal oriented. Thought content not bizarre at this time. IP was not noted to be responding to internal stimuli. He reports no current auditory hallucinations, although he reports hearing voices when he is manic. He reports a history of 115's for aggression, making threats, and hypersexual behavior (though he hasn't had any recently). IP reports feeling suicidal, but with no concrete plan. He is unable to contract or give his word that he will not engage in suicidal or self-injurious behaviors, but agrees that he will let the psychiatrist know if he begins to

| **MENTAL HEALTH TREATMENT PLAN**<br>**CDCR 7388 (Rev. 06/06)**<br>Confidential Client/Patient Information | Name (Last, First, MI), CDCR#, DOB<br>**Owens, Theon**<br>**V60905**<br>**08/12/1982** |
|---|---|

Confidential Saved 2015-09-23T14:44:03Z

have these fee⬛gs. He also reports homicidal ideations directed to⬛ds "those who did this to me." No specific plan wa⬛ ⬛cussed. At this time, will continue MHCB treatment protocol (monitoring for safety, medication management, 1:1 daily clinical contact, recreation and yard as appropriate).

**03/02/2015:** IP arrived to treatment module wearing white jumpsuit. ADLs appeared fair. IP appeared cooperative. Mental status was generally intact and IP was generally oriented x 4. He was explained the purpose of the meeting and indicated understanding. Speech was fluent and understandable; at times speech was pressured, but interruptions were possible. Thought processes were logical, linear and goal oriented. Thought content was focused on treatment as well as the incident where he reports being beaten. He was redirected several times to focus on treatment at this time and was mostly re-directable. Mood was reported as "out of it, I feel high" and with more prompting he described his mood as in the middle, not happy, nor sad. Mood appeared irritable, but he was able to contain his emotions. Affect was congruent. No difficulties were reported with his appetite, except he complained that he believed he was not getting the correct number of beverages. Sleep was reported as "I slept from 12 until 4am. I only need about 3 hours of sleep to get through 24 hours." He denied auditory hallucinations, and other psychotic symptoms were not reported. He was not noted to be responding to internal stimuli. Medications were adjusted taking into consideration his concerns about Zyprexa and the risk of developing diabetes. IP reports he has a significant family history of diabetes and does not want to take Zyprexa. He also complained about back pain and vision problems, and will be seen the internist. Upon questioning, he reported that he was having thought about cutting himself to experience relief. He reports no true suicidal ideations, desire to die, or plans to engage in suicidal or self injurious behaviors. He stated, "I'm not going to do that." He reported having thoughts about harming officers at CSP-SAC who he alleged assaulted him. When asked if he planned to act on those thought if given the opportunity, he asked "what would you do" but did not endorse or deny any plans to engage in assaulting anyone else. He did not endorse homicidal ideations. Goals were discussed including working on his problematic suicidal ideations and depression by attending his 1:1 psychotherapy sessions where CBT/DBT will be explored. We also discussed his medication compliance and he agreed to continue taking medications as prescribed for his mood stability. He was able to summarize his treatment plan with reiteration and expressed understanding. Disposition to EOP LOC was discussed; IP lobbying not to return to CSP-SAC and he was informed that this is a custody decision, not clinical. He indicated understanding.

**03/08/2015:** IP wearing white jumpsuit with white t-shirt. ADL are fair. Mental status in intact. IP aware of purpose of IDTT. Speech was spontaneous, fluent, and normal for rate, rhythm, and prosody. Thought processes logical and goal oriented. Thought content focused on incident he reports at CSP SAC. He reports having racing thoughts, feeling slower, and feeling depressed (rated a 5/10). He is constantly replaying the situation over in his mind where he alleges he was assaulted by officers. He reports thoughts to hurt himself by cutting in order to feel relief. He also endorses suicidal ideations that are contingent upon his return to CSP-SAC. No specific plan was reported. He denies homicidal ideations, plans or intent; he reports no longer wanting to hurt officers at CSP-SAC and states he just wants justice. He made requests to speak with the CCI and Sgt to try to obtain additional information about the use of force policy. The RT noted that he was provided the manual to review, but that the manual does not include recent updates. He reports his appetite is poor, and contributed this to having his teeth knocked out and inability to bite hard pieces of food because of this. Sleep was reported as good last night (slept all night) and was attributed to receiving a prn. He asked to have his Lithium increase. He denies auditory hallucinations or other symptoms of psychosis; he reports the last time he heard voices was about four months ago. In terms of treatment, will continue to explore CBT/DBT, although personality factors appear to be hindering his psychotherapy treatment potential at this time. Medications are being adjusted. Disposition to EOP was rescinded after he made suicidal statements just as he was being prepared to transfer back to CSP-SAC. APP referral will be made at this time given the following: 1) His persistent statements that he wants to kill himself if returned to CSP-SAC; 2) His persistent reports about wanting to cut himself for relief; and 3) inconsistent statements about wanting to harm officers at CSP-SAC (today he denies this), but he appears too inconsistent and impulsive at this time. Continue MHCB treatment protocol (monitoring for safety, medication management, 1:1 daily clinical contact, recreation and yard as appropriate) until transfer.

### III. PROBLEM LIST

| Number | Problem | Intervention/Clinician | Goal | Progress/Date |
|---|---|---|---|---|
| 1<br>2<br>3 | SI/SIB<br>HI<br>Mgmt of bipolar d/o | Medication<br>1:1 psychotherapy | Reduce suicidal ideations and self-injurious behaviors. Maintain mood stability and continue to treat his bipolar symptoms. | Ongoing-03/08/2015 |

### IV. PSYCHOTROPIC MEDICATION

| Number | Problem/Target Symptom | Medication | Goal | Progress/Date |
|---|---|---|---|---|
| 1<br>2<br>3 | Mood dysregulation<br>Restlessness<br>Psychoses | Depakote-ER<br>Lithium Carbonate<br>ER Zydis (olanzapine<br>RapDis Wafer) PRN<br>Stelazine PRN | Stabilize mood<br>Reduce restlessness<br>Maintain | Ongoing-03/08/2015 |

**MENTAL HEALTH TREATMENT PLAN**
**CDCR 7388 (Rev. 06/06)**
Confidential Client/Patient Information

Name (Last, First, MI), CDCR#, DOB
**Owens, Theon**
**V60905**
**08/12/1982**

Confidential Saved 2015-09-23T14:44:03Z

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750 - JAM ·KJN

V.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: MEDICAL CONSULTATION, AND
OPHTHALMOLOGY CONSULT OPH-627 (Rev. 03/09)
Hosted by DONNA B. SEABROOKS. Medical Doctor (M.D.), on 3/06/2015. at 09:
50:00 A.M. It shows the comprehensive eye evaluation of the Plaintiff. She
notes "He is a 32-year-old black Male that complains that he had injur-
ies to his face and eyes on 02/18/2015." She notes from her Assessment/Recom-
Mendations: "1. status post contusion to the left eye with resolving Subcon-
junctival hemorrhage, 3. Mild eye irritation""

NUMBER OF PAGE'S TO THIS EXHIBIT: 1-4       PAGE'S.

California Correctional Health Care Services                    CALIFORNIA MEDICAL FACILITY

## MEDICAL CONSULTATION

| NAME: OWENS, THEON | CDCR#: V60905 | DATE OF SERVICE: 03/06/2015 |
|---|---|---|
| DATE OF BIRTH: 08/12/1982 | HOUSING: S CTCB1002001LP | PAROLE DATE: |

REQUESTING PROVIDER: Dr. Soares

CONSULTING PROVIDER: Donna R. Seabrooks, MD

DATE OF CONSULTATION: 03/06/2015

REASON FOR CONSULTATION: I had the opportunity to do a comprehensive eye evaluation on your patient. He is a 32-year-old black male that complains that he had injuries to his face and eyes on 02/18/2005. He now complains that he is having trouble adjusting to light and glare in his left eye.

OBJECTIVE FINDINGS: Evaluation shows a visual acuity of 20/30 in both eyes. Ocular tensions are about 20. The patient is squeezing his eyelids throughout the examination. Anterior segment shows mild ptosis with lid edema in the left periocular area. The left eye shows a resolving subconjunctival hemorrhage temporally. The remainder of the anterior segment and the posterior segments of both eyes are within normal limits.

ASSESSMENT / RECOMMENDATIONS:
1. Status post contusion to the left eye with resolving subconjunctival hemorrhage. The patient should continue to do well without any sequelae from his injuries.
2. The patient lost his glasses.
3. Mild eye irritation.

DISPOSITION: Artificial Tears should be available to the patient to use on an as-needed basis. I have put in a referral to the optometrist if he cannot locate his glasses. He can follow up with us on an as-needed basis.

DISABILITY CODE:
( ) TABE score less than 4.0
( ) DPH ( ) DPV ( ) LD
( ) DPS ( ) DNH
( ) DNS ( ) DDP
( ) Not Applicable

ACCOMMODATION:
( ) Additional time
( ) Equipment ( ) SLI
( ) Louder ( ) Slower
( ) Basic ( ) Transcribe
( ) Other*

EFFECTIVE COMMUNICATION:
( ) Patient-inmate asked questions.
( ) Patient-inmate summed information
PLEASE CHECK ONE
( ) Not reached* ( ) Reached
  *See Chrono/notes

COMMENTS:

X  _____
[Signer]
[Draft Message]

DS/dr   D: 03/06/2015 09:50:00 am          T: 03/09/2015 08:28:31 am          Job #: 1148514

DICTATED BY Donna R. Seabrooks, MD
OWENS THEON

Confidential Saved 2015-05-26T16: V60905

2015 MAR 6 AM 7 23

| DATE: 3 6 15 | PCP: |
|---|---|

REFERRED BY:

CC: _2 po bM C/oes_

HISTORY: _a_ _Contusions_
_on X 2/18/15_
_for trouble, adjusta_
_to light / diar in OS_

| | |
|---|---|
| Location: | OD   OS   OU |
| | Central  Peripheral  Diffuse |
| Quality/Severity: | MILD   MOD   SEVERE |
| Duration: | _____ |
| Timing: | INTERM  SUDDEN  PROGRESSIVE |
| Context: | NONE   DRIVING  T.V.  READING |
| Assoc Sx's/Signs: | NONE  PAIN  VF cut  FLASHES/FLOATERS |
| Mod. Factor: | NONE_____ |

POH:  CE  OD ___  OS ___          LASER OD ___   OS ___

GLAUCOMA                    INJURY / AMBLYOPIA

Ocular Meds:  Timoptic  Betoptic  Betagan  Xalatan  Alphagan  Cosopt  Trusopt  Iopidine  Diamox  Tears
Other:

| Meds: | Drug Allergies:   NKA |
|---|---|
| _in chart_ | Past Surgery: |
| | Other: |

**ROS / Medical Hx**

| | |
|---|---|
| Eyes (see HPI) | Fever - Wt. Loss - Pain |
| Constitutional | Tinnitus - Hearing Loss |
| ENT and mouth | Angina - MI - Arrythmia - Htn |
| Cardiovascular | Stroke – Seizures - HA |
| Neurological | DM |
| Endocrinologic | SOB – Asthma - Emphysema |
| Respiratory | Hepatitis – N/V |
| Gastrointestinal | Arthritis - Edema |
| Musculoskeletal | Rash |
| Psychiatric | Memory Loss - Depression |
| Genitourinary | |
| Allergic/Immunologic | Hayfever |
| Hematologic/Lymphatic | Bleeding Tendency |
| Pregnant | |
| Cancer | |

_HTN_
_Bipolar_

◯ =positive response          Technician:          Reviewed, supplemented if needed,
                                                   and confirmed with patient by:

**Family Hx**   Retinal dz / RD          Blindness     Glaucoma

**Social Hx**   Smoking ____  PPD ____   Alcohol      Occupation _Salesman_ Retired

| |
|---|
| Last Name, First: _Owens, Theon_ |
| DOB: _8 12 82_   Age: _____ |
| Medical Record #: _V60905_ |

**Ophthalmology Consult**

FILE UNDER CONSULT TAB
OPH-627 (Rev. 03/09)
Confidential Saved 2015-05-26T16:14:09Z

V (SC) CC OD 20/30   PH 20/25   T OD 20   P APD OD OS
          OS /30          /30    AOS
☐ 1 gtt fluress

M OD ___   W OD ___   HVF OD ___
  OS          OS          OS

NL  ABNL

| | | | |
|---|---|---|---|
| Adnexae lids, glands, nodes | OD OS | ptosis Drainage, blepharochalasis | OS _____ |
| Conjunctiva bulbar, palpebral | OD OS | injection Papillae, follicles | |
| Cornea tear film epith, stroma, endoth | OD OS | dry eye, epith defect Edema, scar, guttate | Scant SC haze |
| Ant Chamber depth, cell/flare | OD OS | shallow, hypopyon ___ c/l, heme, fibrin | **Vitreous**  Clear Abnl   Clear Abnl |
| Pupil, iris shape rxn, size, morph | OD OS | irregular, miosis Anisocoria, decr rxn | |
| Lens clarity cortex, nucl, caps | OD OS | NSC, CS, PSC, PCO IOL: AC, PC, pYAG | |
| Motility alignment, sens | OD OS N | ET, XT restricted EOM | |
| Visual Field CF confrontation periph | OD OS | VF defect | |
| Mental Status: Mood Oriented X3 | | Anxious, depressed disoriented | |

Gonio   Angle open, -NV, - PAS, GR

**RETINA / VITREOUS**                              OD OU OS
NL  ABNL                                   π Extended Ophthalmoscopy
                                           Scleral Depression 360
| Optic Disc NFL appearance, C/D | OD OS | cupping, atrophy swelling | 90 / 78 D exam |
| Retina / Vit vessels, periphery | OD OS | | Contact / 3 mirror |



C/D 0.4  SPV
NC U, M, R

X    O    O    X

Owens, Theon
DOB 8/12/82
V60905

Impression: Plan

1. S/P contusion ī no subg sc hour
   OS Poces well.

2. lost glasses

3. Ø out. teans
   off on
   flu fm

4.

Doctor requesting Consult (after communication of eval) suggested:

❑ He/she will treat
❑ RC to initiate pt care/ RX

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ P/I asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached |
| | ☐ Other | *See chrono/notes |
| 4. Comments: TABE 2.15 | | |

☑ Pt to return immediately if VA deteriorates or symptoms increase
☑ Patient and family education
☑ Diagnosis, studies, prognosis discussed
❑ Risk factor reduction, Amsler grid, multivits
❑ Diabetes, Htn control discussed      ❑ Brochure given      ❑ Video shown

Dictated  Yes  No      Laser next visit: OD OS  Dilate next visit: OD OS OU  No

Follow up:_____ days / wks / mos / yrs / prn      Signature: _____

Last Name, First: Owens, Theon
DOB: 8/12/82      Age: _____
Medical Record #: V160905

**Ophthalmology Consult**

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

W.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR MH-7230 A (Rev. 01/12)
INTERDISCIPLINARY PROGRESS NOTES - GENERAL.
Hosted by R. SILVERMAN, Psychologist, on March 7, 2015, at 10:15 A.M. It
Shows the Mental anguish and emotional distress injuries that the Plaintiff
Suffered, which is a result of the defendant's beating him while handcuffed behind
his back. It also satisfies the Prison Litigation Reform Act (PLRA), as the
Plaintiff in fact suffered Multiple physical injuries. The PLRA states: "No
federal civil action may be brought by a prisoner confined in a jail, Prison
, or other correctional facility, for Mental or emotional injury suffered
while in custody without a prior showing of physical injury." Some courts
have ruled that an inmate's physical injury must be more than de minimis (very
small or trifling), but not necessarily significant."

NUMBER OF PAGE'S TO THIS EXHIBIT: ___1___ PAGE'S.



State of California                                    Department of Corrections and Rehabilitation
**Interdisciplinary Progress Notes – General**
CDCR MH-7230A (Rev. 01/12)

| Comments (Use SOAPE Format) |
|---|

Mr. Owens was seen for 1:1 contact at cell-front.

S: Very upset about the incident precipitating his receiving an RVR. Wanted me to read all of the documents, and persuade me of his position, which is that he was beaten up by CO's. Mr. Owens could not focus on anything else. He said he didn't sleep well, and hasn't since the incident. He said "I think I'm getting manic." Mr. Owens said he is waiting for Dr. White to return so he can adjust his medication. He trusts Dr. White and he didn't want to talk to anyone else about medication. Mr. Owens said he is thinking a lot about cutting his arms and legs. He does think about killing himself, but he is not at risk of that now. I pointed out to him that it seems he's taking the anger he feels at the CO's out on himself. I also told him, based on what he said (that the CO admitted to punching him in the face), that he had a pretty strong case to defeat the RVR and possibly resolve all of this in his favor. Mr. Owens immediately wanted to tell me he hadn't done anything to deserve the beating. I cut him off, and said, "From what you're telling me, you were hand-cuffed, and there were 4 CO's present. It doesn't matter what you did. Nothing justifies punching you in the face and knocking your teeth out." Mr. Owens was calmed by my taking a supportive tone with him, but his perseveration on the details picked right up.

O: I don't know what did or didn't happen, but in my opinion, Mr. Owens is having a traumatic stress reaction to what he believes happened. Whether the action was justified or not, Mr. Owens was clearly injured in the subject incident, and his teeth being knocked out and hair being pulled out in particular seems to have deeply unsettled him. He is saying he feels manic. It's possible his anger over the incident is causing a manic reaction, but my impression is the observed perseveration, racing thoughts, rapid speech, gross motor agitation, and quick anger, along with sleep disturbance result from a traumatic stress response. I consulted with Dr. Ploesser, who viewed Mr. Owens's medical record. Dr. White prescribed Zyprexia prn, for if Mr. Owens felt he needed it. I talked with him about taking the medication to take the edge off of his distress. He agreed. I also arranged for Mr. Owens to have yard time. He has been here three weeks, cleared for yard, but hasn't been out. Apparently, he was cleared by medical but not by corrections.

A: Agitated, angry, vigilant. Speech was loud and rapid. Gross motor agitation (couldn't stop moving). Thoughts were coherent and linear, but perseverative in content.

P: Zyprexa prn as prescribed, 1:1 daily clinical contact, medication review and management.

| Date: | 3-7-15 | Time: | 10:15 | Housing: | MHCB A-02 |
|---|---|---|---|---|---|
| Institution: | CMF | Clinician: | R. Silverman | Signature: | R. Silverman Ph.D |

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | Name, CDCR#, DOB |
|---|---|---|---|
| ☒ TABE Score ≤ 4.0<br>☐ DPH ☐ DPV ☐ LD<br>☐ DPS ☐ DNH<br><br>☐ DNS ☐ DDP<br>☒ Not Applicable | ☐ Additional Time<br>☐ Equipment ☐ SLI<br>☐ Louder ☒ Slower<br><br>☒ Basic ☐ Transcribe<br>☐ Other* | ☒ P/I Asked Questions<br>☒ P/I Summed Information<br>Please Check One:<br>☐ Not Reached*☒Reached<br>*See chrono/notes | Owens, Theon<br>V60905<br>08/12/82 |
| 4. Comments: | | | |

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE <u>EASTERN</u> DISTRICT OF CALIFORNIA

THEON OWENS.        VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

X.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR MH-7230A (Rev. 0162)
INTERDISCIPLINARY PROGRESS NOTES-GENERAL.
"Hosted by Psychologist(PSYC), S. KINDERMANN. on 03/12/2015. at 08:55
hours. It Shows the PSYC notes of the Plaintiff on the date she noted. The
PSYC noted "He said he had been working with Dr. White to deal with his ideas
of revenge on the Clo's who 'attacked' him." Which shows that the Plaintiff
suffered emotional injuries and felt like he needed to avenge him self for
being attacked. The PSYC note's "He complained of Pain 6-7/10 in his foot when it
was extened" Which shows that Prison officials were aware of ankle injury,
but didnot respond reasonably. The PSYC notes "He didnot know whether it was a
Sprain. a torn tendon or what. 'it's been 3 weeks[since his altercation with
the Clo's at SAC] and it ain't healed yet. there's somethin wrong." Which shows
that the Plaintiff didnot know what kind of injury he had. due to him being a
lay person, and not a Medical Profession, but he did know however, that something
was wrong. The PSYC noted that her and the Plaintiff "Discussed that his
legal remedies were his best alternative since revenge would only have
disciplinary consequences for him as well and could or would hurt his case.""
NUMBER OF PAGES TO THIS EXHIBIT: __1__ PAGE'S.

State of California
**Interdisciplinary Progress Notes - General**
CDCR MH-7230A (Rev. 01/12)

Department of Corrections and Rehabilitation

### Comments (Use SOAPE format)

S: Mr. Owens was approached cellside for this contact. He denied SI and HI ("it's lessened"). He said he has been working with Dr. White to deal with his ideas of revenge on the C/Os who "attacked" him. Considering hiring an attorney through his sister. He went into a long discourse about "an eye for an eye and a tooth for a tooth" and how the law and the state in the US were separated but it wasn't like that in, e.g., Iraq, Iran, Syria, "the Muslim countries" and Israel. The law and the state were "the same there." He held up a book by Lerner, "Jewish Renewal," and said it was a book about transformation and he quoted from the part about "an eye for an eye" at length. He went on to say that if he swore to tell the truth on a Bible in the US, he would be swearing on the flag because of the separation of the law and the state. He complained of pain 6-7/10 in his foot when it was extended. He talked about exercise being good for his bipolar and he said he needed to get back to it. "Dr. White raised my lithium dose." He talked about lifting weights, 300 lbs twenty times, in high school. He likened the pain of doing that for the first time to the pain he felt in his foot. He didn't know whether it was a sprain, a torn tendon or what. "It's been 3 weeks [since his altercation with the C/Os at SAC] an' it ain't healed yet. There's somethin' wrong." Discussed that his legal remedies were his best alternative since revenge would only have disciplinary consequences for him as well and could or would hurt his case. I emphasized that he did not have to accept what happened, only deal with it in terms of who had the power if he tried to hurt anyone. He said he was sleeping 4-5 h/night. Appetite: "I got all this food over here" (he pointed to two trays placed against the rear wall of his cell). He brought an apple to the door and mimed eating it by holding it near the left side of his jaw rather than straight in front, saying "I can't." I encouraged him to eat so he could resume exercising - he needed calories for that. He denied needing anything for his cell.

O: Mr. Owens was observed standing at the door of his cell when I arrived, talking to nursing about his pain. Eye contact was appropriate. Demeanor was calmer than in the past. The patient was loquacious but not pressured; speech was of normal rate and prosody without latencies or paraphasic errors. Thought process was linear, goal directed and coherent; thought content was mostly focused on his legal issues. He was oriented to person and situation. Nursing reported that he denied SI, HI, AH, VH and depression on 3W yesterday. No behavioral disturbances were noted for this patient on any of the prior 3 watches.

A: Diagnoses from 7388 of 3/11/15: Bipolar Disorder I Disorder, Most recent episode Manic (With Mood Congruent Psychotic Features); Substance Use Disorder (Alcohol , Cannabis, PCP) in a controlled setting; Antisocial Personality Disorder; Borderline Personality Disorder; Imprisonment or Other Incarceration.
He seems to wear his purported inability to bite into an apple as a badge of honor.

P: EOP discharge was rescinded in favor of APP referral. Nursing is aware of the patient's complaint of pain.

E: Reinforced the patient for speaking with me. Reinforced his willingness to let the legal system work for him.

☐ Page 2  (Note continued on page 2)

| | | | | | |
|---|---|---|---|---|---|
| Date: | 03-12-15 | Time: | 08:55 | Housing: | B-2 |
| Institution: | CMF/MHCBF | Clinician: | S. Kindermann, Ph.D. | Signature: | |

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional Time | ☒ P/I asked questions | Name, Owens, Theon |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I summed information | CDCR#, V60905 |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | DOB 08/12/82 |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not Reached* ☒ Reached | MI: |
| ☒ Not Applicable | ☐ Other* | *See chrono/notes | |
| 4. Comments: | TABE 4.5; NCF. Received CDCR 12/9/04; release date 12/24/21. | | |

Interdisciplinary Progress Notes - General, CDCR MH-7230A (Rev. 01/12)

Page 1

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN

Y.

EXHIBIT

DESCRIPTION OF THIS EXHIBIT: CDCR MH-7230A (Rev. 01/12) INTERDISCIPLINARY PROGRESS NOTES - GENERAL. Hosted by LATOYA BROGDON, Psychologist (PSYC), on 03/22/2015, At 1345 hours. It shows the PSYC notes on the Plaintiff. She notes "he is being provided food that he cannot eat, such as onions". which shows that the Plaintiff after losing two front teeth, was unable to eat hard foods, such as whole onions. The PSYC notes "nursing staff at CSP-SAC did not document his injuries appropriately." which Exhibit [L] clearly shows compared to Exhibit [D] and from this it could be found by a reasonable judge and jury that defendant's attempted to conceal injuries. The PSYC notes "he is emotionally impacted by the loss of his teeth" which shows that the Plaintiff suffered emotional injuries as a result of defendant's clenched fist striks that completely knocked out two of his teeth. The PSYC notes "He has trouble moving past events when he feels he has been wronged" which shows that the Plaintiff has not gotten over the event, as it has traumatized him."

NUMBER OF PAGES TO THIS EXHIBIT: ___1___ PAGES

State of California

Department of Corrections and Rehabilitation

**Interdisciplinary Progress Notes – General**

CDCR MH-7230A (Rev. 01/12)

| Comments (Use SOAPE Format) |
|---|

**Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant.

**Main reason for admit:** 'Unpredictable' **Reason for Referral:** DTS

IP (Owens V60905) was seen in confidential treatment module for his 1:1 daily clinical contact.

S: I've been trying to focus on writing this letter. He discussed a number of complaints such as he is not getting the proper amount of food; he is being provided food that he cannot eat such as onions; nursing staff at CSP-SAC did not document his injuries appropriately; he is emotionally impacted by the loss of his teeth; he is unable to concentrate in his cell because he can see women in the window and they are a distraction; it is too cold in his cell, etc.. IP asked if he could be referred to ICF rather than DSH. Informed that this is not possible because he reports he is suicidal, and recently cut himself on the food port while in the MHCB. Despite explanation, IP continues lobbying for an ICF referral, stating that in the past he was discharged from APP to ICF when he was still cutting himself. Advised that this will not occur from the MHCB, but he continued to state "you can write them a letter and explain my situation." IP was encouraged to focus on his mental health each day (i.e., 30 minutes to an hour of meditation or focused positive thinking). He appears agreeable. IP reports suicidal ideations, but without any specific plan, intent, or desire to act upon the thoughts. He denies homicidal ideations, plans, and intent.

O: IP wearing white t-shirt and jumpsuit. Cell is clean and papers are organized. He was noted to have papers on partially covering his windows. Demeanor is cooperative, but a bit on edge. ADLs appear intact. Mental status was generally intact. IP was generally oriented x 4. Speech was fluent, spontaneous, and a bit pressured. Thought processes were linear, and goal oriented. Thought content was not bizarre, but focused on complaints about CDCR (diet, documentation procedures). He has trouble moving past events when he feels he has been wronged. Insight is limited and judgment appears poor and impulsive. No problems with sleep or appetite were reported. He denied any auditory or visual hallucinations. He was not noted to be responding to internal stimuli. He spends his time reading and writing complaint forms, letters to family, etc.

A: Diagnoses: Bipolar I disorder, Most recent episode Manic (with mood congruent psychotic features); Substance Use Disorder (Alcohol, Cannabis, PCP); Antisocial Personality Disorder; Borderline Personality Disorder; V62.5 Imprisonment or Other Incarceration; and (newly added) V62.4 target of perceived adverse discrimination or persecution. IP does not appear to be in any acute distress at this time.

P: IP referred to APP LOC, has been accepted and is awaiting placement at this time. Continue MHCB protocol which includes monitoring for safety; medication management; 1:1 daily clinical interaction to provide supportive psychotherapy; recreation and yard as appropriate and weekly IDTT.

E: Encouraged IP to notify staff of any problems. As above.

| Date: | 2015.03.22 | Time: | 1345 | Housing: | B-02 |
|---|---|---|---|---|---|
| Institution: | CMF-MHCB | Clinician: | L. Brogdon, Ph.D. | Signature: | *[signature]* |

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | |
|---|---|---|---|
| ☐ TABE Score ≤ 4.0 | ☒ Additional Time | ☒ P/I Asked Questions | Name, CDCR#, DOB |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I Summed Information | Owens, Theon |
| ☐ DPS ☐ DNH | ☐ Louder ☒ Slower | **Please Check One:** | V60905 |
| | | ☐ Not Reached* ☒ Reached | 08/12/82 |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | *See chrono/notes | |
| ☒ Not Applicable | ☐ Other* | | |
| 4. Comments: TABE=4.5 (Previous 2.4) | | | |

Confidential Saved 2015-09-23T14:44:03Z

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,        VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

Z.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: DOCTOR'S NOTES.

"Hosted by Medical Doctor (M.D.), A. NANGALAMA, on 4/23/2015, at 10:32 A.M.,
It shows the M.D. notes from a X-Ray examination on the Plaintiff's left
ankle. the M.D. notes reflect that "there is a tiny avulsion fracture
arising from the medial malleolus". the M.D. also notes that there is
"Mild soft tissue swelling" The M.D's impression of the injury is noted as
a "Medial ankle avulsion injury.""

## NUMBER OF PAGE'S TO THIS EXHIBIT: __1__ PAGE'S.

 CALIFORNIA CORRECTIONAL
**HEALTH CARE SERVICES**

California State Prison Sacramento

| | | | |
|---|---|---|---|
| **Name:** | THEON OWENS | **Patient ID:** | 11993700 |
| **DOB:** | 08/12/1982 | **Secondary ID:** V60905 | |
| **Exam Name:** | XR ANKLE LEFT \| 73610 | | |
| **Referring Physician:** A. Nangalama, MD | | **Exam Date:** | 04/23/2015 10:32 AM |

CLINICAL INDICATION: lt ankle pain, hx of injury 2 mo ago.
COMPARISON: None
TECHNIQUE: Three views of the ankle.

FINDINGS:

There is a tiny avulsion fracture arising from the medial malleolus. No
additional fractures are identified. No dislocation. Ankle mortise is intact.
Mild soft tissue swelling.

IMPRESSION:

Medial ankle avulsion injury.

**Report Electronically Signed by:** R Waters MD
**Report Electronically Signed on:** 04/23/2015 01:38 PM

4/27/15

A. NANGALAMA, M.D.
CSP-SAC

ORIGINAL
Date: 4-23-15
Sign:
RADIOLOGY

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

AA.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: DENTAL X-RAYS.

"X-Ray Photographs taken on July 2, 2015, at 10:55:49 A.M., It shows in three of the Photos taken that there is two teeth missing from the Plaintiff's Mouth, one tooth is missing from the top Right Front of the Mouth and the another is missing from the bottom right front, both teeth show as being completely knocked out, which was a result of the defendants clenched fist striks to the Plaintiff's facial area."

NUMBER OF PAGE'S TO THIS EXHIBIT: _2_ PAGE'S.

California Corre...onal Health Care Services

9/23/2015 8:40:26 AM



Patient: THEON OWENS
Patient ID: 11993700
Sex: M
Series name FMX 18, Created: 7/2/2015  10:55:49 AM

**California Correctional Health Care Services**

9/23/2015 8:40:06 AM



7/2/2015, 11 26 23 AM

Patient: THEON OWENS
Patient ID: 11993700
Sex: M
Series name Panoramic, Created: 7/2/2015 10:55:49 AM

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE <u>EASTERN</u> DISTRICT OF CALIFORNIA

THEON OWENS          VS. JOSEPH DEFAZIO, ET AL.

CAES No.: <u>2:16-CV-02750-JAM-KJN.</u>

BB.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDC 7202 (4/93) ADMISSION ASSESSMENT.

"Hosted by Medical Doctor (M.D.) SOARES. At California Medical Facility. Time: unknown. It shows the Plaintiff's mental state after being beaten by defendants, the M.D. noted "depression eight out of ten (8/10) from what happened to him." It also shows many of the injuries the Plaintiff suffered. The M.D. noted "two missing teeth, face and eyes have swelling, bruising, and abrasions. Right upper arm, left thigh, right knee and both lower ankles have abrasions". It also shows that the Plaintiff was still suffering from concussion symptoms. The M.D. noted Plus pain at left temporal area of the head eight out of ten."

## NUMBER OF PAGES TO THIS EXHIBIT: <u>   1   </u>  PAGES.

## NEUROLOGICAL STATUS

**LEVEL OF CONSCIOUSNESS**

- ☑ ALERT
- ☐ CONFUSED
- ☑ ORIENTED
- ☐ SLOW TO RESPOND / COMPREHEND
- ☐ DISORIENTED
- ☐ LETHARGIC
- ☐ HISTORY OF SEIZURES

**SENSORY LIMITATIONS**

- ☐ NONE NOTED
- ☐ TOUCH
- ☐ TASTE
- ☐ SPEECH
- ☐ SMELL
- ☐ SIGHT
- ☐ HEARING
- ☐ GLASSES
- ☐ CONTACT LENSES
- ☐ HEARING AID

| | IF PATIENT USES | IF WITH PATIENT |
|---|---|---|
| ☐ RIGHT ☐ LEFT | ☐ | ☐ |
| ☐ RIGHT ☐ LEFT | ☐ | ☐ |

## RESPIRATORY

- ☑ NORMAL LIMITS (RATE)
- ☐ ACCESSORY MUSCLES
- ☐ DSYPNEA
- ☐ ORTHOPNEA
- ☐ COUGH
- ☐ ABNORMAL BREATH SOUNDS
- ☐ SEASONAL BREATHING DIFFICULTIES
- ☐ OXYGEN
- ☐ NASAL FLARING
- ☐ TRACHEOSTOMY
- ☐ SECRETIONS
- ☐ OTHER

## CARDIOVASCULAR

- ☑ REGULAR RHYTHM
- ☐ RATE WITHIN NORMAL LIMITS
- ☐ ABNORMAL HEART SOUNDS
- ☐ ABNORMAL PULSES
- ☐ APICAL / RADIAL / PEDAL
- ☐ PACEMAKER
- ☐ JUGULAR VEIN DISTENTION
- ☐ CALF TENDERNESS
- ☐ OTHER

## ELIMINATION

**BLADDER** ☑ DENIES PROBLEM

- ☐ NOCTURIA
- ☐ BURNING
- ☐ URGENCY
- ☐ URINARY INCONTINENCE
- ☐ OTHER
- URINARY FREQUENCY_____
- ☐ CATHETER: _____
- DATE PLACED_____

**BOWEL** ☑ DENIES PROBLEM

- USUAL BOWEL PATTERN_____
- LAST BM_____
- ☐ LAXATIVE USE (LIST UNDER MEDICATION)
- ☐ OTHER AIDS_____
- ☐ OSTOMY - TYPE_____

## FUNCTIONAL STATUS (LEVEL OF SELF CARE)

**MOBILITY LIMITATIONS** ☑ NO LIMITATIONS

- ☐ WALKING
- ☐ TRANSFER
- ☐ TURNING IN BED
- ☐ STAIRS
- ☐ STANDING
- ☐ OTHER

**DEVICES TO AID MOBILITY**

| | IF PATIENT USES | IF WITH PATIENT |
|---|---|---|
| ☐ NONE | | |
| ☐ CANE / CRUTCHES / WALKER | ☐ | ☐ |
| ☐ ARTIFICIAL LIMBS ☐ R ☐ L | ☐ | ☐ |

**WEAKNESS/PARALYSIS**

- ☐ UPPER EXTREMITY ☐ R ☐ L
- ☐ ASSISTANCE REQUIRED
- ☐ LOWER EXTREMITY ☐ R ☐ L
- ☐ HYGIENE / GROOMING
- ☐ GENERALIZED WEAKNESS
- ☐ DRESSING
- **BRACE**
- ☐ MEALS ☐ OTHER

## SKIN

- ☐ NORMAL TURGOR, TEMPERATURE & COLOR
- ☐ INTACT, MOIST MUCOUS MEMBRANES
- ☐ EDEMA
- ☐ DRY
- ☐ DIAPHORETIC
- ☐ JAUNDICED
- ☐ SCALY
- ☐ CYANOTIC
- ☐ FLUSHED
- ☐ PALE
- ☐ RASH
- ☐ OTHER

**SKIN ASSESSMENT CODE**

- ☐ NO PROBLEM
- B) BRUISES
- D - DECUBITIS
  - GRADE I II III IV (CIRCLE)
- L - LACERATIONS
- S - SCAR
- R - RASH
- A - ABRASIONS
- BU - BURN

*2 missing teeth*
*A) upper & lower lateral incisor*
*periorbital swelling and abrasions*



**COMMENTS**

Received inmate AOX3, ambulatory ō pleasant grit. IP is calm and cooperative ō staff. IP is here for being danger to self and others, and altercation with cops in CSP-SAC. IP stated that he will be suicidal if sent back to CSP-SAC. He is not danger to others right now and denied SI & HI. No c/o of MM/VH, ① depression ⁸/₁₀ for what happened to him ② pain @ ① temporal area of the head⁸/₁₀. IP had periorbital swelling & bruises, abrasion of different sizes on his ② upper arm, ① thigh, ② knee and both lower tibia. IP also showed that he lost 2 teeth on the right and lower & right upper quadrant - ② upper lateral incisor & ① lower lateral incisor.

_RN Manansa_

**SIGNATURE** _____ **RN**

| FACILITY | PHYSICIAN | ROOM NO. |
|---|---|---|
| CMF | Dr. Soares | B-2 |

**CDC NUMBER, NAME (LAST, FIRST, MI)**

V60905

OWENS, THEON

08/12/82

B-2

## ADMISSION ASSESSMENT

CONTINUED FROM REVERSE

CDC 7202 (4/93)

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT FOR THE __EASTERN__ DISTRICT OF CALIFORNIA

THEON OWENS,         VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750 - JAM-KJN.

[C.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: DECLARATION OF THEON OWENS.

"Declaration of THEON OWENS CDCR NO. V-60905, declared on 5/11/2015, as true, against defendants, JOSEPH DEFAZIO CDCR Badge (B.9.) No. 71470, MATTHEW BRADY B.9. No. 67323, JACOB BURKE B.9. No. 72081, JOHN LEBECK B.9. No. 59617, KENNETH BLESSING B.9. No. 63591, JASON MURILLO B.9. No. 53594, CHRIS DRAKE B.9. No. 64369, DAVID MATTHEWS B.9. No. 54034, PAUL BETTENCOURT B.9. No. 70317, PETYO RASHEV B9. No. 85243, DAVID MARTINEZ B.9. No. 64376."

NUMBER OF PAGE'S TO THIS EXHIBIT: __3__ PAGE'S.

1  Theon Owens
NAME.
2  V-60905
CDCR #.
3  California Health Care Facility
HOUSING.
4  7707 South Austin Road
ADDRESS.
5  Stockton, C.A. 95215
CITY, STATE, ZIP.
6

7  IN THE UNITED STATES DISTRICT COURT
8  FOR THE EASTERN DISTRICT OF CALIFORNIA
COURT
9

10  THEON OWENS,
       Plaintiff,                    Case No: 2:16-CV-02750-JAM-KJN.
11
                                      District Judge: JOHN A. MENDEZ.
       vs.
12                                    Magistrate Judge: KENDALL J. NEWMAN.
13
                                      DECLARATION OF PLAINTIFF,
14  JOSEPH DEFAZIO, ET AL.,           THEON OWENS UNDER PENALTY
       Defendant(s).                  OF PERJURY.
15
                                              28 U.S.C. Sec. 1146.
16

17  NOW COMES THE PLAINTIFF, THEON OWENS, who hereby declares that:

18

19  I am the Plaintiff in this cause of action, and I am competent to make this
20  declaration, as I have personal knowledge of the matter stated herein.
    therefore, I declare pursuant to 28 U.S.C. Sec 1146, that the following is true
21  and correct:

22

23  I had been incarcerated at the California State Prison-Sacramento (CSP-SAC)
    New Folsom since 2006, in 2015, Wednesday February 18, at approximately 1315
24  hours I was housed in cell(FA5-232). When correctional officer (c/o) JOSEPH DEFAZIO,
25  JACOB BURKE, MATTHEW BRADY, and JOHN LEBECK, came to my assigned cell, and
    instructed me to submit " to mechanical restraints, they told me that an
26  unidentified officer (later identified as c/o, PAUL BETTENCOURT) said that I had gassed
    him, I informed all present c/o that I didnot gas anyone and did not want to
27  exit my assigned housing, because correctional Lieutenant (L.t.) CORY MARTINCEK
28  already pulled me out of the cell regarding those allegations, c/o, DEFAZIO stated to

1 Me that another CIO also said that I gassed him as well, and that
2 correctional sergeant (sgt.), KENNETH BLESSING and L.t., MARTINCEK wanted
3 me to submit to mechanical restraints and that if I refused to complie
4 I would be cell extracted. At that time I complied with the order and
turned around and submitted to mechanical restraints, CIO, DEFAZIO then
5 signaled to the control booth tower CIO, DAVID MATTHEWS to open my assiged
6 cell door, once the cell door opened fully, CIO, DEFAZIO grabbed me by my arm
and slammed me extremely violently on the concrete floor and once there CIO,
7 DEFAZIO and all other present CIO'S began to strike me in the face and head
8 area with their clenched fists. After a minute or so elapsed I started to yell out
in an attempt to deter attackers and to aware others of the attack upon me,
9 all present CIO'S continued to violently beat me, by striking me in the face, I
10 then attempted to protect myself from being knocked on conscious, by tucking
my face towords my chest and the floor to shield it, which had little to no
11 effect, do to CIO, DEFAZIO grabbing me by the hair and pulling my head up for
12 further exposure, while at the same time tearing out approximately 25 to 30
13 of my dreadlocks on the upper right side of my head, from the amount of force
he gratuitously used, once CIO, DEFAZIO had my head fully exposed again, he
14 struck me in the mouth several times with his clenched fist, completely
15 knocking out two of my permanent teeth, once I observed blood gushing from
16 my mouth and one of my teeth laying on the concrete floor next to me, I began
to yell out that "I have HIV." in a despair attempt to stop the beating, at
17 that time all the present CIO'S stopped striking me in the face except for
18 CIO, DEFAZIO, who then grabbed me by the hair and stated to me loudly in
19 the ear "NO YOU DONT NIGGER, YOU THINK YOU RUN THIS PLACE, YOU WALK AROUND
HERE LIKE YOU RUN THIS PLACE, YOUR GOING TO LEARN NIGGER." one of the CIO'S
20 then yelled to the tower CIO, MATTHEWS, who was standing at the booth watching
21 the beating, to sound the unit alarm, once the alarm was sound and
additional CIO'S begain to enter the section's door, CIO, DAVID MARTINEZ then
22 ran into the section and then up the stairs and pulled my legs up and then
23 kicked me extremely hard in the testicles, sgt, BLESSING and CIO'S, BETTENCOURT
and PETYO RASHEV ran into the section, BETTENCOURT and RASHEV came up the
24 stairs were I laied on the ground beaten in mechanical restraints, while
25 sgt, BLESSING immediately started clearing the unit alarm, to divert
26 uninvolved CIO'S, once the alarm was shut off, sgt, BLESSING then came up the
stairs and kicked me in the face, with his steel toe work boot, at which
27 time all present CIO'S begain kicking and punching me in the face again,
28 More CIO'S entered the section, By this time my left eye was completely

1  swollen shut and bleeding from a cut above it. My right eye was swollen up
2  as well and was bleeding from a cut above it, leaving me with approximately
   15 to 20% visibility in my right eye. Sgt. BLESSING instructed CIO's. CHRIS
3  DRAKE, and JASON MURILLO, to take me to the unit's rotunda and holding
4  cell, both of them grabbed me off the ground and proceeded to drag me
   down the stairs very quickly and aggressively, causing me an inability to
5  catch my footing. once they dragged me to the bottom of the stairs casing
6  and proceeded to exit the section with me in hand. they both slammed my head
   into the steel door frame/concrete wall area of the unit's door. violently, as
7  they continued to drag me into the rotunda. once in the rotunda next to the
8  CIO's office. they stopped and began to pull me upwards to allow for other CIO's
9  to began striking me again. CIO. DEFAZIO and Sgt. BLESSING started striking
   and kicking me in the head and face area approximately five additional
10 times, with their clenched fist and steel toe work boots, causing me to
11 sustain a brain concussion from their blows. I then attempted to protect
12 myself, from continuously being struck in the face and head, by
13 crouch down toward the ground, but was unsuccessful, due to being
   held upward by CIO. DRAKE and MURILLO, and being in mechanical
14 restraints. MURILLO and DRAKE then threw me into the holding cage. Sgt.
15 BLESSING then called all involved ruffians into the office and told them all
16 "WE HAVE TO COVER OUR ASSES". all ruffians then started to conspire with one
   anther. After about fifteen minutes or so. Registered Nurse(R.N.)ALICE
17 OKONOIKE came to medically evaluate me. She noted down a few injuries she
18 seen on my face and quickly left out of fear of the CIO's. Minutes later I was
   taken to the A-facility Triage and Treatment Area(A-TTA). by Sgt.C.McCARVEL and
19 CIO's. DRAKE and MURILLO. for furthere evaluation and treatment.
20
21 **DONE this on the** <u>11th</u> **day of** <u>May</u>     **2015.**
22
23
24 Pursuant to 28 U.S.C. Section 1746. I declare under penalty of perjury that
   the facts presented hereon are true and correct.
25
26
27 Executed at Represa, California.
28 <u>Theon owens</u>                          <u>Theon owens</u>
   DECLARANT NAME.                           DECLARANT   SIGNATURE.

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS          VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

D.D.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: DECLARATION OF TAMAYO WALTER.

Declaration of TAMAYO WALTER CDCR NO. H-42205, declared on JULY 4, 2015, against defendant, LANDON MERCADO CDCR Badge No. 73156."

NUMBER OF PAGE'S TO THIS EXHIBIT: _2_ PAGE'S

1

2

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

4

5

6

7

8

TAMAYO WALTER'S DECLARATION
IN SUPPORT OF PLAINTIFF'S
COMPLAINT.

9 THEON OWENS V-60905,
PLAINTIFF,

10 V.

11

12 Correctional officer. DEFAZIO, JOSEPH 71470. et al.,
DEFENDANTS.

13

14 DECLARTION. OF TAMAYO WALTER  H-42205

15 Civil Action No. 2:16-CV-02750-JAM-KJN.

16 TAMAYO WALTER hereby declares:

17 I have been incarcerated at the California State Prison -

18 Sacramento (CSP-SAC) New Folsom Since 2015. i have been

19 housed in FB7-Block -C Section Since 2015. I Was in cell

20 (FB7-127) on June 17, 2015. When Correctional Sergeant

21 (Sgt). L. Mercado at approximately 7:55 P.M. Came into

22 C-Section. I Was standing at MY cell door When i seen

23 him go up the stairs an approach (cell FB7-227), Solely

24 occupied by inmate Owens (V-60905), right above MY cell.

25 the Sgt appear to be holding a folder in his hand, With

26 What appear to be Some CDCR 602's and other Papers in it,

27 I heard him tell inmate Owens V-60905 to come to his cell

28 door Front and see who's hear to see him. I could hear

1  Owens V-60905 getting off of his bed and coming
2  to the cell door, I heard inmate Owens V-60905 ask
3  Sgt. L. Mercado. "What did he want." Sgt.L. Mercado an-
4  swered and stated "I wanted to see Your smile, have
5  they fixed Your two teeth Yet, let me see." Owens then
6  stated in a loud voice for Sgt. L. Mercado to remove
7  him self from the door, I heard an argument immediately
8  break out between the two. Wherein the argument Sgt.
9  L. Mercado began to antagonize and harass inmate
10  Owens V-60905 by stating to him "that's why You got
11  Your ass beat down and Your teeth knocked down Your
12  throat. You little bitch." he continued by saying "bitch
13  You lucky I wasnot there, because I would have knock-
14  ed out even more." I could hear that inmate Owens was
15  angry when he stated to Sgt. L. Mercado "You would not
16  have done shit, but write up a fake report like You did."
17  Sgt. L. Mercado replied "You got found guilty didn't You."
18  Sgt. L. Mercado then turned around as other staff came
19  into the section, he then left Owens V-60905 cell and
20  walked off the tier out of the section.
21
22  I declare under Penalty of Perjury under the laws of the
23  United States of America that the foregoing information is
24  true and correct.
25  Executed at California State Prison - Sacramento. Represa.
26  California.
27  ___Tamara Walter___     ___# 42205___        ___7-04-2015___
    SIGNATURE                CDCR #                 DATE
28

                        2 of 2

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

EE.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: DECLARATION OF THEON OWENS.

"Declaration. of THEON OWENS V-60905, declared on August. 11, 2020 against defendant. JASON SCHURTZ CDCR Badge No. 70063."

NUMBER OF PAGE'S TO THIS EXHIBIT: 1-2-4 PAGE'S.

1  Theon Owens # V-60905
   NAME. CDCR#. HOUSING,
   California Health Care Facility
2  PRISON,
   7707 South Austin Road
3  ADDRESS,
   Stockton C.A. 95215.
   ADDRESS

4           IN THE UNITED STATES DISTRICT COURT
5       FOR THE EASTERN DISTRICT OF CALIFORNIA.

6

7  THEON OWENS.
8  PLAINTIFF,

9              V.                    DECLARATION IN SUPPORT
                                     OF PLAINTIFF'S FOURTEENTH
10 JOSEPH DEFAZIO.ET AL.             AMENDMENT CLAIM
   DEFENDANTS.
11                                   AGAINST DEFENDANTS
12                                   SCHURTZ. AND ELDRIDGE.
   DECLARATION: OF x THEON OWENS
13                     NAME
   CIVIL ACTION NO. 2:16-CV-02750-JAM-KJN

14 THEON OWENS
15 NAME                            hereby declares.

16 I am competent to make this declaration and having personal knowledge of the
   matters stated therein. declares Pursuant to 28 U.S.C. Section 1746. That i have
17 been incarcerated at the California State Prison — Sacramento
                                                      PRISON NAME
18 since 2006 of July . I was in Cell INF 007 . At the time of the
         MM/DD      YY              CELL No.
19 incident.

   On May 28. 2015. While housed in the Prison's infirmary Lieutenant (L.t.) JASON
20 SCHURTZ# 70063 came to my assigned cell (INF 007). acting as the Senior Hearing
21 Officer (SHO) to have a hearing for the allegations written against me by Defendant
   - JOSEPH DEFAZIO# 71470. as a job insurance plan on Feb. 18. 2015. for allegedly "Battery
22 on a Peace officer". Rules Violation Report (R.V.R.) Log No.: EOP-15-02-058. and
23 Incident Report Log No.: SAC-FSU-15-02-0194.

24 Before the hearing I asked the SHO. Where is my Staff Assistant (S.A.). as the S.A.
25 was not Present. and is required to be Present for Prison Policy during this
26 proceeding. See CCR. Tit. 15.§

27 The SHO informed me that he assigned me a new S.A. and "that the District Attorney
28 (D.A.) office didn't pick the case up. So I have nothing to worry about and the time
                              1 of 4

1  restraints have ran out. So there nothing I can do to you any way".

2

3  The SHO then began to proceed with the hering, despite the procedure due

4  process violation that had just occurred. fir t the SHO read the R.V.R. and
   then he stated to me "You headbutted correctional officer (c/o.) DEFAZIO." -

5

6  I responded to the false allegation stating "I never headbutted DEFAZIO,
   he made that up as a job insurance plan, and I have witnesses who saw

7  the hole incident, and I would like them to make a statement."

8

9  The SHO. told me that "This R.V.R. is what I have to go off of." at which time I

10  attempted to provide other evidence as a defense and in mitigation of the

11  charges, like photograph's, letters, and medical reports.

12  The SHO. told me that "I am not going to deal with all of that, the office of the

13  Internal Affairs, can deal with that. Since they are investigating the assault

14  and battery, that happen to you". The SHO. then stated to me "I am finding you

15  guilty".

16  During the above proceeding the SHO. flat out denied me a fair hearing, by (1.)

17  Not providing me with a notice of change of S.A., (2.) Finding me guilty of

18  something that I didnot do. (3.) Deprived me of my liberty without offering me

19  fair procedural due process. when he know that it was more likely than not

20  that something else happen, and that the R.V.R. was just a cove up. for what

   actually happen. (4.) By not allowing me to call eye witnesses at the time of the

21  hearing. (5.) Not allowing me to display a defense, or evidence, or taking that

22  evidence that was attempted to be displaied into account. (6.) And by

23  attempting to put this on the O.I.A., who dont deal with R.V.R. hearings. In his

24  attempt to deny me due process of law, and get out of doing the right thing.

25  Prior to the hearing occurring the SHO. didnot confer with the Investigative

26  Employee (I.E.) on the plaintiff's requested witnesses and documentary

27  evidence, before the I.E. elected to refuse to interview and provide the

28  requests.

After the hearing Defendant-LAVAN ELDRIDGE who was assigned as the Chief Disciplinary Officer ("C.D.O.") during this process, seen that the Plaintiff had requested witnesses Prior to the hearing, to attend the hearing on his behalf, and that those specifically identified witnesses were not allowed to attend. The CDO. also seen that the reason given for them not attending was inaccurate, yet she affirmed the findings anyway.

The C.D.O. also seen that the Plaintiff had requested documentary evidence for his defense at the hearing, and that the request was not provided or addressed in the disciplinary summary, yet the C.D.O. affirmed the finding anyway.

The C.D.O. seen that the SHO. had falsely documented in his summary of the hearing, that the Plaintiff did not request any witnesses to attain the hearing. Eventhough, the undisputed record shows that the Plaintiff did in fact request live eye witnesses to attend the hearing. Despite this knowledge the c.DO. affirmed the finding and the hearing.

The C.D.O. seen that SCHULTZ didnot confer with he I.I., nor did the I.I. confer with SCHULTZ on the Plaintiff's requested witnesses and documentary evidence, before the I.I. elected to refuse to interview and Provide the requests, yet the C.D.O. affirmed the findings and hearing anyway.

The C.D.O. seen that SCHULTZ didnot screen the Plaintiff's requested eye witnesses out or in, Yet the C.D.O. affirmed the SHO's findings at the hearing.

The C.D.O. was aware that the Plaintiff was found guilty of the R.V.R. and was immediately deprived of his Personal Property, vendor Packages, Appliances, and telephone Privileges for 90 days, without fair Procedural due Process being offered by SCHULTZ.

On 8/26/2015, the CSP-SAC. I.CC. reviewed the findings of the C.D.O. affirming the methods and actions taken within the disciplinary Process, and the SHO actions within the summary of the .disciplinary hearing, and all other documentation related to the disciplinary Process and affirmed all methods

1   and actions taken within the Process, and Sentenced the Plaintiff to the
    MaxiMuM Penalty allowed for the alleged offence, eighteen Months SHU. terM.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22   DONE this on 11th day of August 2020

23

24   Theon Owens                          Theon Owens
          DECLARANT NAME.              DECLARANT SIGNATURE.

25

     Pursuant to 28 U.S.C. Section 1746, I declare under Penalty of Perjury that the Foregoing
26   is true and correct.
     Executed at Stockton,                  California,
27

28                          4 OF 4

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS,  VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

F F.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: DECLARATION OF: THEON OWENS.

Declaration of THEON OWENS V-60905, declared on 8/30/2020 against defendants. LAVRA ELDRIDGE, And LANDON MERCADO CDCR Badge Number 73156."

NUMBER OF PAGE'S TO THIS EXHIBIT: ___2___ PAGE'S.

1 | Theon Owens  V-60905
NAME, CDCR#, HOUSING.
2 | California Health Care Facility
PRISON.
3 | 7707 South Austin Road
ADDRESS
Stockton, C.A. 95215
4 | ADDRESS
PLAINTIFF IN PRO-SE
5 | IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
6 |
7 | THEON OWENS
Plaintiff,
8 |
9 | v.
10 | JOSEPH DEFAZIO ET AL.,
Defendants.                                    CASE No.: 2:16-CV-02750-JAM-KJN.
11 |
12 |
13 | DECLARATION: OF THEON OWENS
14 | THEON OWENS hereby declares:
15 |
16 | I am the Plaintiff to the cause of action. and I have been incarcerated at the
17 | California State Prison - Sacramento (CSP-SAC) since december 2014, and I am compe-
tent to make this declaration and have personal knowledge of the matter stated
18 | within the complaint filed under the Civil Right Act. 42 U.S.C. Section 1983, as I
19 | was there an witnessed the matter with my eye's and ear's, with that clear I
declare pursuant to 28 U.S.C. Section 1746. That on tuesday June 9, 2015.
20 | Associate warden, LAVRA ELDRIDGE assigned sergeant (sgt), LANDON MERCADO to
21 | gather information for a complaint that the Plaintiff had filed regarding prison
22 | officials Deliberate Indifference to him. L. ELDRIDGE directed L. MERCADO to conduct an
interview with the Plaintiff regarding his filing, L. ELDRIDGE permitted this interview
23 | to occur with the knowledge that L. MERCADO had been mentioned in the beating
24 | incident that had occurred on wednessday February 18, 2015, as a escorting sgt from
his report. and that he had lied on the Plaintiff and fabricate a incident on a
25 | Rules violation Report Log No.: EOP-15-02051. to try an cover for involved officers,
26 | L. ELDRIDGE was aware of this lying because L. ELDRIDGE is also the Chief
27 | Disciplinary Officer (C.D.O.) and had review the final report. and seen that L.
MERCADO could not name one other staff that was there on the day he alleges
28 | and ensures they were. ELDRIDGE failures to establish adequate procedures.

<u>1</u> OF <u>3</u>

## CONTINUATION OF DECLARATION OF THEON OWENS.   PAGE TWO:

1  for controlling the use of involved employees in pasted incidents in the
2  interviewing of Prisoners rights to petition the government for a redress of
   their grievances. knowing that this failure could create a grave risk to
3  Prisoners federal constitutional First Amendment, and state constitutional
4  article 1 section 3. rights. constitutes "Deliberate Indifference".

5  On June Wednessday 17. 2015. L. MERCADO as directed came to the Plaintiff's assigned
6  housing (FB7-227) at approximately 1955 hours, while I was laying down on the
   cell bunk. when I heard someone say "Owens come to the door and see who is
7  here to see you". the way the person said it. Made me feel as if they were
8  trying to indicate something more then just their presence. I got off of the
9  bunk and went to the cell door. and at that time I realized that the person
   was LANDON MERCADO badge number 73156. the sgt that had refused me medical
10 treatment at the A-Yard Triage and Treatment Area (A-TTA) on Feb 18. 2015.
11 When I recognized it was L. MERCADO, I asked him what did he want. he replied
   with a smart comment. stating "I wanted to see your smile. have they fixed
12 your two teeth yet. let me see." I started to feel attacked by his comment
13 and felt a need to defend my self. I told him to get the fuck away from my
14 door. he then continued his attack. by saying "thats why you got your
   ass beat down and your teeth knocked down your throat. you little bitch."
15 we started to argue and he stated to me within that arguement "you bitch.
16 you lucky I wasnot there because I would have knocked out even more." I
17 then told L. MERCADO that you would not have done shit, but write up a
   fake report. like you did. L. MERCADO replied by saying "you got found guilty didnt you"
18 at that time other staff working in the block. started to come in the section. L.
19 MERCADO notice them and walked away from my assigned cell. after the brief
   interaction it became clear to me that L. MERCADO came to my cell for the
20 purpose of harassing and retaliating against me, never once did he mention any
21 thing about the complaint he was sent to do a interview on.

22

23 After the encounter with MERCADO at my assigned cell door. he aided and
24 abetted other defendants in the retaliation against me, for filing
25 grievances against them for using unnecessary excessive force on me,
26 on February 18. 2015. One of the way he assisted Defendants was after
27 leaving my cell front. he cancelled my grievance he was there to review,
   because i continued to use the grievance system.
28

1   As a result of MERCADO aiding and abetting other Defendants in
2   retaliating against me, and Cancelling my grievance for using the grievance
3   system, I was prevented from having non frivolous  claims addressed by
    the court.
4

5   MERCADO while at my assigned door mentioned nothing about his
6   assignment as the grievance reviewer, and appeared to only be there to
7   aid and abet  other defendants.

8   MERCADO'S actions of retaliating against me for filing grievances to access
9   the court, is a violation of my          First Amendment right.

10
11
12
13
14
15
16
17
18  I, declare under the penalty of perjury that the foregoing is true and correct.
19
20  DONE this 30th day of August 2020.
21
22                                          Theon Owens
23                                          Theon Owens
24                                          V-60905
25                                          California Health Care Facility
26                                          7707 South Austin Road
                                            Stockton, C.A. 95215.
27
28

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE <u>EASTERN</u> DISTRICT OF CALIFORNIA

<u>THEON OWENS,</u>   vs. <u>JOSEPH DEFAZIO,</u> ET AL.

CAES NO.: <u>2:16-CV-02750-JAM-KJN.</u>

G.C.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: DECLARATION: OF TERRELL WOLFE.

Hosted by Declarant - **TERRELL WOLFE.** on 11/3/16. at california State Prison-Sacramento. The exhibit herein shows the statement given by **WOLFE** agains defendants; It also clarifies the ensuring claims by the Plaintiff, as to being beatten by defendants. While handcuffed behind the back and defenseless.

NUMBER OF PAGE'S TO THIS EXHIBIT:   2   PAGE'S.

TERRELL WOLFE
NAME, CDCR #, HOUSING,
CSP-SACRAMENTO
PRISON,
REPRESA CA 90671
ADDRESS,

ADDRESS

IN THE UNITED STATES DISTRICT COURT
FOR THE **EASTERN** DISTRICT OF CALIFORNIA

**THEON OWENS**
PLAINTIFF,

TERRELL WOLFE'S
DECLARATION IN SUPPORT OF
PLAINTIFF'S COMPLAINT.

V.

**JOSEPH DEFAZIO. ET AL.,**
DEFENDANTS.

DECLARATION: OF x _TERRELL WOLFE_
                    NAME
CIVIL ACTION NO. _2:16-CV-02750-JAM-KJN._

_TERRELL WOLFE_____ hereby declares:
NAME

I am competent to make this declaration and having personal knowledge of the matters stated therein. declares pursuant to 28 U.S.C. Section 1746, That i have been incarcerated at the California State Prison – **Sacramento**
                                                    PRISON NAME
since _2/8/2015_ of _2015_____. I was in cell PSU A3-130. At the time of the
       MM/DD        YY                    Cell No.
incident. on Wednesday February 18. 2015, I seen four correctional officers (c/o) J. DEFAZIO, M. BRADY, J. BURKE, and J. LEBECK. enter C-Section and go up Stair's to cell #232 sole occupied by inmate (I/M) OWENS V-60905. I heard C/o. DEFAZIO tell I/M. OWENS to submit to mechanical restraints. because C/o.P. BETTENCOURT told them that OWENS had gassed him. I then heard I/M.OWENS say that he had already been pulled from the cell by correctional Lieutenant (L.t.).c. MARTINCEK. and that he did not want to leave the cell. DEFAZIO then told OWENS that correctional Sergeant (sgt)k.BLESSING and L.t. C. MARTINCEK wanted him to cuff up and come down to the rotunda and that if he refuse's that he would be cell extracted. I then saw I/M. OWENS complie by turning around and submitting to handcuff. from the reflection off the unit's tower window. C/o. DEFAZIO then motioned to the tower C/o. D. MATTHEWS to open OWENS cell door. once the cell door opened fully, DEFAZIO grabbed OWENS by the arm and slammed him on

_1_ of _2_

1  the floor and then began to Punch OWENS in the face. C/o's LEBECK, BRADY, and
2  BURKE Joined DEFAZIO and started kicking and Punching OWENS in the
   uper body area. I then hear OWENS began to yell out in Pain "All right, all
3  right, ok, ok, aaaaaaaa". all of the C/o's continued to beat OWENS.
4  approximately two minute's later. I/M. OWENS began yelling again "I have
   HIV, I got HIV" at that time the C/o's stopped striking OWENS. DEFAZIO
5  then grabbed OWENS by the dreadlocks and started to Pull the dreads out.
6  C/o. LEBECK then told MATTHEWS to "hit the alarm, C/o. D. MARTINEZ. then ran
   into the section up the stairs and grabbed OWENS leg's and lifted them up
7  and then he kicked OWENS in the testicles. C/o's. P. BETTENCOURT and P.
8  BASHEV and Sgt. BLESSING came into the Section BLESSING then gave his
   keys to MATTHEWS and told him to shut the alarm off. BETTENCOURT, BASHEV
9  and BLESSIN then all went up the Stairs. BLESSING then kicked OWENS in
10 the face and then all of the C/o's and Sgt began to Punch and kick on
   OWENS. after a minute or so Past, C/o's C. DRAKE and J. MURILLO came into
11 the section and went up the Stairs, BLESSING told the two to escorte
12 OWENS to the rotunda, I then seen approximately ten C/o's dragging
   OWENS down the stairs, they were holding OWENS by the dreadlocks as
13 they dragged him. I could see that OWENS was bleeding Profusely from
14 his face and mouth. C/o. MURILLO walked  OWENS head first into the door
   frame and dragged him into the rotunda. approximately twenty
15 minute's later BLESSING and DEFAZIO came back into the section and they
16 went up the stairs. I could see that they were looking for something, I then
   saw DEFAZIO Pick up something off the floor. He told BLESSING here they
17 are, then DEFAZIO handed something to BLESSING. the two then walked
18 down the stairs. BLESSING then stopped at the trash can and looked at
   DEFAZIO with a smile on his face and stated "o'well" and throw two
19 white objects in the trash. the two then both started lauging and
20 walked out of the section.
21
22
23  TERRELL WOLFE                          [signature]
    DECLARANT NAME.                        DECLARANT SIGNATURE.
24
25
26  Pursuant to 28 U.S.C. Section 1746, I declare under Penalty of Perjury that the foregoing
    is true and correct.
27  Executed at Represa                    California, on 11/3/16
28
                    2  of  2

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS._____ VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

HH.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: "EIGHTH AMENDMENT TO THE U.S. CONSTITUTION DECLARATION."

Hosted by Declarant - Plaintiff THEON OWENS. on 8/30/2020, as true. against Defendants - J. Defazio, J. Lebeck, J. Burke, M. Brady And k. Blessing.

NUMBER OF PAGE'S TO THIS EXHIBIT:__2___ PAGE'S

1  Theon owens
   NAME.

2  V-60905
   CDCR #.

3  California Health Care Facility
   HOUSING.

4  7707 South Austin Road
   ADDRESS.

5  Stockton, C.A. 95215
   CITY, STATE, ZIP.

6

7      UNITED STATES DISTRICT COURT
8      IN THE EASTERN DISTRICT OF CALIFORNIA

9

10  Theon owens.
    Plaintiff,

11      VS.                              CASE NO. 2:16-CV-02750-JAM-KJN.

12                                       Eighth Amendment to the
                                         U.S. Constitution
13  Joseph Defazio, ET AL.               DECLARATION.
    Defendant(s).

14

15

16  under the Eighth Amendment to the u.S. Constitution. it is unlawful to
17  impose "cruel and unusual Punishment" against Prisoners. use of force against
18  a Prisoner May be "cruel and unusual Punishment" if excessive force was appl-
19  -ied "Maliciously and Sadistically to cause harm". Whitley v. Albers (1986) 475 u.s.
20  312, 319-321; Hudson v. McMillan (1992) 503 u.S. 1. 6-7. A constitutional claim
21  involves examination of both the degree of force used and the Mental state
    of the officer or other Staff Person who applied the force. For the first factor,
22  the force Must be More than "de Minimis" or Minor. A simple Push or Shove.
23  or use of vulgar language alone. are not enough to violate the constitution.
24  Hudson, Supra. 503 u.S. at P. 9.; oltarzewski v. Ruggiero (9th cir. 1987) 830 F.2d
25  136, 139. However, a Prisoner does not actually have to suffer a serious
    injury to Show that the force was excessive. Wilkins v. Gaddy (2010) __ u.s. __.
26  130 S.Ct. 1115. For the Second factor, the Prisoner Must show that the Staff-
27  -Person acted "Maliciously and sadistically for the very Purpose of causing
    harm." and not in a good-faith effort to Maintain or restore discipline. Hudson.

28
           1 of 2

1 Supra, 503 U.S. at PP. 6-7, Whitley, Supra, 475 U.S. at PP. 319-321. Force that is
2 applied recklessly or negligently during an emergency does not violate the
Constitution. See, eg., Jeffers v. Gomez (9th cir. 2001) 267 f.3d 895, 912. Higher
3 -ranking Prison officials like wardens May be liable for excessive force
4 used by lower-level Prison employees. through their deliberate indifference.
if the supervising officials permitted and condoned a pattern of excess
5 ive force against Prisoners or failed to establish adequte Procedures
6 for controlling use of force by Prison staff. despite knowing that this
failure created grave risks to Prisoner's safety. Madrid v. Gomez (N.D. Cal.
7 1995) 889 F. Supp. 1146. 1247-1255. California state laws also Prohibit use of
8 excessive force against Prisoners. California Penal Code sec's 2650-2652
9 Prohibit cruel, corporal or unusual punishments or punishments not "authorized
by the Director of Corrections." A Person who injures a Prisoner is subject to the
10 same laws as a person who injures a non-Prisoner. Also, Prison officers and
11 staff May be subject to criminal charges for abusing Prisoners. Cal. Pen.
12 Cod. sec. 149. When Prison official's conduct offends the Eighth Amendment
Federal courts will discharge their duty to Protect the u.s. Constitution.
13 See cal. Pen. cod. sec. 661

14
15
16
17
18 Pursuant to 28 U.S.C. Section 1746. I declare under Penalty of Perjury that the
19 foregoing is true and correct.
Executed at California Health Care facility, Stockton, California.
20
21
22 DONE this on 30th day of August 2020.
23 Theon Owens                                          Thear Owens
DECLARANT NAME                                    DECLARANT SIGNATURE.
24
25
26
27
28                              2 of 2

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750—JAM-KJN.

## I I.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: "DECLARATION OF THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION"

Hosted by the Plaintiff, on Aug/24/2020. The exhibit herein shows the Plaintiff's rights were violated by defendants. declared as true. against Defendants— Defazio, Martinez, Rashev, Matthews, Murillo, Bettencourt, Drake, Burke, Brady, Blessing, Lebeck.

NUMBER OF PAGE'S TO THIS EXHIBIT: _2_ PAGE'S.

Theon Owens, #V-60705, B7A # 122
**NAME. C.D.C.R.# HOUSING.**
California Health Care Facility
**PRISON NAME.**
7707 South Austin Road
**ADDRESS.**
Stockton, C.A. 95215.
**CITY. STATE. ZIP.**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T. OWENS | Case No.: 2:16-CV-02750-JAM-KIN |
| vs. | DECLARATION OF THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION. |
| J. DEFAZIO, et al., | |

I am competent to make this declaration and hereby declare the following as true. and for that of which that i do not know presonally I believe it to be true to the best of my knowledge and understanding.

The Eighth Amendment to the united states constitution protects prisoners from physical brutality. it forbids "cruel and unusal punishment" and is probably the most important amendment for prisoners. It has been interpreted to prohibit excessive force and guard brutality as well as unsanitary dangerous or overly restrictive conditions. it's also the source for prisoners right's to medical care in prison.

Courts have held that "EXCESSIVE FORCE" by correctional officer's in prison constitutes cruel and unusual punishment. In one very important supreme court case <u>Hudson v. McMillian, 503 U.S.1 (1992)</u> The court found a violation of the VIII. Amend. when prison officials punched and kicked a shackled inmate in the mouth. eyes. chest. and stomach. As a result of the force they used. the prisoner teeth were loosened. his partial dental plate was cracked. and he suffered minor bruises and swelling on his face and mouth. the court held that a guard's use of force violates the VIII. Amend. when it's not applied "in a good faith effort to maintain or restore discipline." but instead is used

<u>1 OF 2</u>

1   to "Maliciously and Sadistically cause harm" in other words. "Excessive force"
2   is any Physical contact by a Correctional officer that is Meant to cause
3   harm, rather than keep order. The State and Mind of the Correctional Officer
    is important in excessive force case's. Courts have found violations of the
4   VIII. Amendment where Correctional officer were responsible for "the unecessary
5   and wanton infliction of Pain" "wanton" Means Malicious. or uncalled-for,
    a Prisoner can Meet this by showing the force used was not a necessary
6   Part of Prison discipline. Example court found an VIII. Amendment violation
7   When Correctional officer repeatedly hit a Prisoner eventhough the
    Prisoner had immediately obeyed order to lie face down and was being
8   restrained by four other officers Estate of Davis by ostenfeld v. Delo. 115
9   F.3d 1388 (8th Cir. 1997). However 9th Circuit held no violation of the VIII.
    Amendment when Prisoner was Shot in the neck during a riot. Jeffers v.
10  Gomez, 267 F.3d 895 (9th Cir. 2001). To decide what force is excessive. Judges
11  consider the following (1) The need for force.(2) The relationship between the
12  need and the amount of force that was used. (3) The extet of the injuries
    suffered by the inmate. (4) The extet of the alleged threat to the safety of
13  Staff and inmates.(5) Any efforts Made to temper the severceful response.
14  To win a Prisoner has to show that force was used against him, but he
15  doesnot have to show a serious injury. some courts have ruled that an
    inmate's Physical injury Must be More than de Minimis (very small or
16  trifling), but not necessarily significant.

17

18

19

20  Pursuant to 28 U.S.C. Section 1746. I declare under Penalty of Perjury
21  that the foregoing is true and correct.
22  Executed at California Health Care Facility - Stockton, California.

23  DONE this on 21th day of August 2020.

24

25

26  Theon Owens
    DECLARANT NAME.                          DECLARANT SIGNATURE.

27

28
                            2 OF 2

# EXHIBIT COVER PAGE

1
2
3
## IN THE UNITED STATES DISTRICT COURT
4
## FOR THE __EASTERN__ DISTRICT OF CALIFORNIA
5
6 THEON OWENS. ____ VS. JOSEPH DEFAZIO, ET AL.
7
8 CAES NO.: 2:16-CV-02750-JAM-KJN. ____
9

```
JJ.

EXHIBIT.
```

10
11
12
13 DESCRIPTION OF THIS EXHIBIT: PLAINTIFF'S DECLARATION
IN SUPPORT OF CLAIMS AGAINST DEFENDANTS.
14 Hosted by the plaintiff, T.OWENS. On 8/30/2018. The exhibit herein shows the
15 truth declared by the declarant under penalty of perjury, against defendants
in this case.
16
17
18
19
20
21
22
23
24
25 NUMBER OF PAGE'S TO THIS EXHIBIT: 1-5 ____ PAGE'S.
26
27
28

1    Theon Owens
     NAME.
2    V-60905
     CDCR NO.:
     California Health Care Facility
3    HOUSING.
     7707 South Austin Road
4    ADDRESS.
     Stockton, C.A. 95215
     CITY. STATE. ZIP.
5

6              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF CALIFORNIA.
7

8

9    THEON OWENS,
     Plaintiff.
10                              Civil Action No.: 2:16-CV-02750-JAM-KJN.
                                District Judge.: JOHN A. MENDEZ.
11         V.                   Magistrate Judge.: KENDALL J. NEWMAN
12

13   JOSEPH DEFAZIO. ET AL.     PLAINTIFF'S DECLARATION IN
     Defendant(s).              SUPPORT OF CLAIMS AGAINST
14                              DEFENDANTS
15

16

17

18

19   Plaintiff, Theon Owens, hereby declares.

20   1.) I am the Plaintiff to this civil action, and I am competent to make this
21   declaration, and I have Personal knowledge of the matters pertaining to this
22   case, therefore, I state the following.

23   2.) On Feb. 18. 2015. I was seriously beaten by Prison guards after they deprived
24   me of my food, and I began to throw faucet water.
25

26   3.) Prior to defendants coming to my cell and beating me, they conspired
27   among one another, to assault and batter me and conceal their beating
28   upon me.

4.) Defendants falsly accused me of attempting to headbutt and bite them. to conceal their beating on me, and deprive me of constitutional rights.

5.) On Feb. 18, 2018. I was falsly accused of gassing a non-defendant. after one of the defendants falsly framed me. by using a wet swab on the non-defendants shirt sleeve and charged me with the wet spot.

6.) After I was beaten, additional defendants attempted to assist the guards who had beaten me, by not requiring them to provide incidents reports on their participation in the incidents.

7.) After I was beaten defendants falsified medical reports, minimizing the injuries that were actually suffered to me.

8.) After I was beaten by defendants, medical staff witness that I was seriously injured. Yet they didnot document so.

9.) Days after I was beaten. I was evaluated by none biassed medical staff and they correctly documented all of the injuries suffered to me except for the broken ankle sustained.

10.) Defendants provided false information in their incident report that they knew was untrue. In an attempt to cover up the excessive force.

11.) Defendants knew from their actions that a substantial risk of harm would befall the plaintiff from their deliberate actions, and that their actions were clearly likely to harm the plaintiff and make things worse for him.

12.) As a result of the injuries sustained from the beating. I was prescribed a medical treatment to case the continuous swelling of my face and eyes.

13.) Defendents intentionally denied me medical treatment after I was beaten. Their actions were clearly intended to harm me, and therefore, their actions were not medically justified.

14.) The Defendant that deprived me of prescribed medical treatment is not a licensed medical provider, and was not qualified to make such a decision.

15.) Each Defendant conspired along with the other, to harm the plaintiff and deprive me of constitutional rights.

16.) Each Defendant violated my constitutional right, and either acted willfully, intention, maliciously, sadistically, or deliberate and indifferently.

17.) After I was beaten a medical defendant was summoned to complete an evaluation on me, upon he arrival I notified he of the manner inwhich the injuries were administered.

18.) From my information and belief Defendant - BLESSING is the one who gave the order for the other defendants to attack me, for the past incident that was alleged to have be caused by me earlier in the morning.

19.) While I was being beaten by defendants, other defendants watched without intervening in any way. These defendants were aware that I faced a serious risk of being harmed if they didnot intervene.

20.) The Defendants who watched other defendants beating on me, enabled the beating to continue through their refusal to intervene and silence in approval.

21.) The Defendants who watched other defendants beating on me, seen that I was injured and continuing to be injured by defendants.

22.) Defendants failure to intervene caused me to suffer additional beating and injuries.

23.) One of the defendants who did not intervene in the beating, watched out for

the other defendants after he opened up my assigned cell door. This same defendant made harassing jokes at me days after I was beaten.

24.) None of the defendants who chose not to intervene have any vision problems which would have prevented them from seeing what occurred nor do they have any medical problems which would have prevented them from reacting.

25.) If defendants who didnot intervene would have acted on the opportunities and obligations that they had, I would not have suffered the beating, nor would I have sustained all of the injuries that i suffered.

26.) I had to receive medical treatment for the medical problems associated with defendants action.

27.) Defendants knew or reasonably should have known of the serious medical need I had.

28.) Defendants response to my serious medical need was deliberately indifferent.

29.) There was no need for defendants to apply force on my.

30.) The amount of force Defendants used was disproportionate to the need to do so.

31.) Defendants had no reasonable basis for believing that I posed a threat while in mechanical restraints.

32.) Defendants made no effects at the time to temper the severity of their forceful response.

33.) The injuries caused by Defendants force, shows intention to cause me harm, and not to restore order.

34.) I have a constitutional Eight Amendment right to receive Medical treatment for injuries sustained while in Prison.

35.) A none defendant sitting in front of MY cell door, alleged that some of the water thrown at the cell door, made contact with his shirt sleeve. This none Defendant left the area and contacted a Sulervisor of his claim.

36.) The Sulervisor came to the area where the water allegedly made contact with the none Defendant and removed me from the cell.

37.) I complied with the Sulervisor and submitted to mechanical restraints.

38.) I was placed in the upper tier shower and my cell was thoroughly searched, all containers were removed from MY cell, and I was placed back into the cell without harm.

39.) After i was beaten by Defendants on February 18, 2015, Defendant-MERCADO came to MY cell door on June 11, 2015, and called me in a sadistic manner, once i came to the door to see who it was, Defendant-MERCADO immediately started attacking me about the two teeth i loss from Defendants beating me.

40.) Defendant-MERCADO continued to attack me as i stood at the door and made verbal threats toward me,

41.) On the date Defendant-MERCADO came to MY cell door, he was assigned to conduct a review of a Jrievance that i filed on MY health and safety, and to gather information related to the facts of MY Jrievance.

42.) Instead of conducting a review of MY Jrievance and gathering facts related to MY Jrievance, Defendant-MERCADO elected to aid and abet other defendants and cancelled MY Jrievance in retaliation for me using the Jrievance system and filing complaints.

43.) Defendant-MERCADO falsely claimed that i refused to come out of my cell, to dishonestly justify his retaliation and cancelling of my grievance.

44.) Defendant-MERCADO's actions in interfering in my grievance process, chilled my exercise in the protected conduct, because his actions prevented me from having my grievance claims addressed by the court. In addition, Defendant-MERCADO's actions on the day in question could not be thought of as advancing a legitimate penological goal, and could only be viewed as retaliation for the purpose of chilling my protective exercise.

I declare under the penalty of perjury that the foregoing is true and correct.

Respectfully Submitted.

Theon Owens #V-60905
NAME and C.D.C.R.#
California Health Care Facility
ADDRESS.
7707 South Austin Road
ADDRESS.
Stockton, C.A. 95215.
CTY. STATE. ZIP.

DONE this on 30th day of August 2020.

THEON OWENS
Plaintiff Name.

Theon Owens
Plaintiff Signature.

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.

CAES No.: 2:16-CV-02750 - JAM-KJN.

k k.

EXHIBIT

DESCRIPTION OF THIS EXHIBIT: DECLARATION OF CARLOS
HENDON.

Hosted by witness/declarant CARLOS HENDON on May/24/2017. The exhibit herein
shows the eye witness account of the events complained of in the Plaintiff's
complaint. The exhibit also shows that the Plaintiff's rights were violated by
Defendants.

NUMBER OF PAGE'S TO THIS EXHIBIT: ____2____ PAGE'S

United States District Court
Eastern District of California

Theon Owens,
            plaintiff,

v.

Defazio, et al.,
            Defendants.

Case No. : 2:16-CV-02750-JAM-KJN

Declaration of Carlos Hendon

I, Carlos Hendon, declare:

1. I am not the plaintiff in this case, and I am more than 18 years of age. If called as a witness, I could and would testify to the facts recited in this declaration from personal knowledge.

2. I am currently, and was during the time period relevant to this suit, an inmate at the California State Prison - Sacramento (CSP-Sac) in Represa, California. I am familiar with the misuse of force on the part of officers J. Defazio, D. Martinez, J. Burke, M. Brady, and J. Lebeok.

3. I have seen Owens's complaint he says officers Defazio, Martinez, Burke, Brady, and Lebeok used excessive force while he was not resisting or a threat.

4. I have reason to believe these allegations are true, because I was housed in A Facility, building 3, on the bottom tier, at the time, and I had heard and observed, through the reflection of the control booth

1 of 2

window, officers Defazio, Martinez, Burke, Brady, and Lebeok on the top tior handcuffing Owens's behind his back, then had his cell door opened, and officer Defazio proceeded to throw Owens's against the wall and struck him to the face, knocked him to the floor, where he was kicked and struck with clenched fists by officers Defazio, Martinez, Burke, Brady, and Lebeok without need or provocation. I, including other eyewitnesses and/or ear-witnesses to the incident, could describe Owens's behavior as nonthreatening.

5. The facts stated in Owens's complaint are true to my knowledge.

I declare under penalty of perjury that the foregoing is true and correct. Signed this 24th day of May 2017.

Carlos Hendon

Carlos Hendon   J62763

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,         VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

LL.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 602 (REV. 08|09)
INMATE/PAROLEE APPEAL. LOG NO.: SAC-B-15-02451.

Hosted by The Plaintiff. THEON OWENS, correctional Counselor one (CCI) N. FAY, Warden, JEFF MACOMBER, Appeals Examiner (A.E.) K.J. ALLEN. and Chief Appeals officer (Ch. APP.O.) M.VOONG. on different dates. The exhibits herein show the grievance filed on Defendant L. MERCADO for the claims ensured in the complaint . It also shows the responses from Supervising Prison officials. The exhibits also show exhaustion of available administrative remedies. And the exhibits show that Department appeals policies were violated.

## NUMBER OF PAGE'S TO THIS EXHIBIT: 1-7-11 PAGE'S.

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,_____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## LL-1.
EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 602 (REV.08/09) INMATE / PAROLEE APPEAL LOG NO.: SAC-B-15-02451.

Hosted by the Plaintiff, **THEON OWENS**, on 7/20/2015. The exhibit herein shows the facts persent by the Plaintiff in regards to the claims ensured against Defendants - **L.ELDRIDGE** and **L.MERCADO** in the complaint. The exhibit clearly shows that the Plaintiff put forth all the facts and exhausted all available administrative remedies.as to these defendants. The exhibit clearly shows that the Plaintiff provided a significant amount of information's for supervising prison officials to determine that <u>CCR. Tit. 15. sec. 3084.6(c)</u> (B) applied. However, **Exhibit LL-2.**. shows that official did not act on the aforesaid information and awareness, despite that knowledge.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 2 PAGE'S.

# STAFF MISCONDUCT HARASSMENT AND RETALIATION

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

**IAB USE ONLY**

8843

V60905

| Institution/Parole Region: | Log #: | Category: |
|---|---|---|
| SAC - B | 15-02451 | 10 |

**FOR STAFF USE ONLY**

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations, Title 15, (CCR) Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.          **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Owens T | V-60905 | FB7-227 | EOP/PSU III |

**State briefly the subject of your appeal** (Example: damaged TV, job removal, etc.): Misuse of STAFF That were involved in a serious incident that cause SBI to an inmate for the Purpose of an Appeal hearing that cause a conflict of interest an conflict

**A. Explain your issue** (If you need more space, use Section A of the CDCR 602-A): I am filing this appeal on appeal Log No. SAC-P-14-01732 and Associate Warden L. Eldridge, the hearing officer at the FLR because the FLR committed the act of deliberate indifference, by Permitting L. Mercado to be the one to come over hear with the

**B. Action requested** (If you need more space, use Section B of the CDCR 602-A): For appeal Log No. SAC-P-14-01732 to be accepted and hear by a competent, Professional sergent (2) for Disciplinary action to be handed down to L. Mercado, for his harassing unProfessional conduct (3) interview all witnesses, officers working FB7 the day of.

**Supporting Documents: Refer to CCR 3084.3.**

☒ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

Appeal Log No. SAC-P-14-01732 and all attachments.

Declartion by Witness.          R.V.R. EOP-15-02-051

☐ No, I have not attached any supporting documents. Reason :

Inmate/Parolee Signature: _Theo owen_          Date Submitted: 7/20/2015

☐ **By placing my initials in this box, I waive my right to receive an interview.**

**C. First Level - Staff Use Only**          Staff – Check One: Is CDCR 602-A Attached?  ☐ Yes  ☐ No

This appeal has been:

☐ Bypassed at the First Level of Review. Go to Section E

☒ Rejected (See attached letter for instruction) Date: 08/04/15 - A10   Date:        Date:        Date:

☐ Cancelled (See attached letter) Date:

☐ Accepted at the First Level of Review.

Assigned to:          Title:          Date Assigned:          Date Due:

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview:          Interview Location:

Your appeal issue is:  ☐ Granted  ☐ Granted Part  ☐ Denied  ☐ Other:

**BYPASS**

See attached letter. If dissatisfied with First level response, complete Section D.

Interviewer:          (Print Name)          Title:          Signature:          Date completed:

Reviewer:          (Print Name)          Title:          Signature:

Date received by AC:

Reviewed by HA          7 to 10

| AC Use Only |
|---|
| Date mailed/delivered to appellant ____ / ____ / ____ |

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 602 (REV. 08/09)
Side 2

**D. If you are dissatisfied with the First Level response**, explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response.   If you need more space, use Section D of the CDCR 602-A.

BYPASS

Inmate/Parolee Signature: _____     Date Submitted : _____

**E. Second Level - Staff Use Only**     Staff – Check One: Is CDCR 602-A Attached?   ☑ Yes   ☐ No

This appeal has been:

☐ By-passed at Second Level of Review.  Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)
☑ Accepted at the Second Level of Review

Assigned to: N. Fay _____ Title: CCT(A) Date Assigned: 9/10/15 Date Due: 10/9/15

Second Level Responder:  Complete a Second Level response.  If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: 1/4/16     Interview Location: B Facility, 7 Block

Your appeal issue is:  ☐ Granted     ☐ Granted in Part     ☑ Denied     ☐ Other: _____

See attached letter.  If dissatisfied with Second Level response, complete Section F below.

Interviewer: N. Fay _____ Title: CCT(A) Signature: _____ Date completed : 1/4/16
(Print Name)

Reviewer: S. Macomber _____ Title: Warden Signature: _____
(Print Name)

Date received by AC: 01/06/16

| | AC Use Only |
|---|---|
| | Date mailed/delivered to appellant 01-06-16 |

**F. If you are dissatisfied with the Second Level response**, explain reason below; attach supporting documents and submit by mail for Third Level Review.  It must be received within 30 calendar days of receipt of prior response.  Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001.  If you need more space, use Section F of the CDCR 602-A.

LANDON MERCADO #73156 violated this appellant's right to appeal. The appeals office fail to interview witness. L. Mercado also refused the appellant' medical treatment he told the R.N. "No, he cannot have a ice pack" when my face was swollen up after being beaten. The appeal office has gave no good reason for not inquirying in to this matter it is clear that L. Mercado wanted the appellant to suffer and that is why he stated what he stated and refused the appellant medical treatment in the Post. Please interview

Inmate/Parolee Signature: Theon Am     Date Submitted: 2/1/2016

**G. Third Level - Staff Use Only**

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)   Date: _____
☑ Accepted at the Third Level of Review.  Your appeal issue is ☐ Granted   ☐ Granted in Part   ☑ Denied   ☐ Other: _____
See attached Third Level response.

| | Third Level Use Only |
|---|---|
| | Date mailed/delivered to appellant APR 0 6 2016 |

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____

_____

_____

_____

_____ Inmate/Parolee Signature: _____ Date: _____

Print Staff Name: _____ Title: _____ Signature: _____ Date: _____

STAFF MISCONDUCT
HARASSMENT AND
RETALIATION

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| 1508843 | SAC - B - 15-02451 | 10 |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| OWENS J | V-60905 | B7-227 | EOP/PSU III |

A. Continuation of CDCR 602, Section A only (Explain your issue): knowledge that he was Mention
in the incident report, and had lied on this appeliate on the R.V.R. that he alleged
he wrote the day after A.W. L Eldridge failure to establish adequate Procedures
For controlling the use of involved employee in incident, knowing that this
Failure could create grave risks to this Prisoner constitution First Amendment
right. on 5-11-2015 at approximately 7.55 L. Mercado came to my cell door. I was laying
own on the cell Bunk, when I heard him say "owens come to the door and see who is hear
o see You. the way he said it made me feel as if he was trying to indicate something
ore then just his Presence. I came to the door, and realized that it was L. Mercado one
F the officers who name was indicated in the incident report log No. Sac -PSU-15-02-01
1, a escorting staff, and who lie on me in the R.V.R. Mention in the report, in an att
M. to cover for involved staff, and to justify their action for their assault, due to
neir assault causing S.B.I. to Me, when I recognized it was L. Mercado. I aske him
hat did he want. he replied with a smart comment, stating "I wanted to see Your smile,
ave they fixed Your two teeth yet. let Me see." (please refer to CDCR 7219 dated 2-18 and
-11-2015 for reference.) I felt attacked by his comment and felt the need to defend my
elf, I told him to get the fuck away from My door, he then continued his attack, by
saying "that's why you got your ass beat down and your teeth knocked down Your
(Report continues on Section "B" continuation section)

Inmate/Parolee Signature: Theon owen          Date Submitted: 7/20/2015

A
JUL 27 AM 10:43
INMATE APPEALS
2014 AUG 28 PM 2:54
RECEIVED FEB -4 2016 INMATE APPEALS BRANCH

B. Continuation of CDCR 602, Section B only (Action requested): and inmate and declarer TaMaro Walter H42205 (4) com
Pensatory damages and Punitive damages.
(Report continues From Section "A" continuation section)
throat, you little bitch." We continue to argue and he state to me "you bitch, you lucky I was not ther
ecause I would have knocked out even More." I then told him that he would not have done shit, but
Irite up a Fake report, like he did, he replied "You got Found guilty didnt you." at that time other Staff
Iorking in the block started to come in the section, sgt L. Mercado notice them and walked away from M
ell door, It is clear to me that L. Mercado came to my cell for the Purpose of harassing and retaliating
g  nst Me, never once did he mention anything about a 602, nor did he ask me to come out for an inte
view, I asked the block officers Working the day off, did he ask them to Pull me out." they told me tha
they never was informed by L. Mercado to Pull me out.

Inmate/Parolee Signature: Theon owen          Date Submitted: 7/20/2015

**D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Inmate/Parolee Signature:** _____   **Date Submitted:** _____

**F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):** witness, because it does not matter if he was down stairs. he heard what happen. L. Mercado also lied on the R.V.R. and cant name one other staff who he alleged were there, all staff need to do is read what he said happen and then look at the answer he gave after the I.E. talked with him.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Inmate/Parolee Signature:** Thean an   **Date Submitted:** 2 / 11 / 2016

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,        VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

LL-2.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: SECOND LEVEL REVIEWER RESPONSE TO APPEAL LOG NO.: SAC-B-15-02451.

Hosted by correctional counselor one (CC1). N. FAY. And warden. JEFF MACOMBER. on January 4, 2016. The exhibit herein Shows the Second level's unreasonable response to the Plaintiff's grievance filed on "Defendant ·L. MERCADO'S retalialtory treatment and facts ensured within the complaint. The exhibit Shows that reviewing officials are in violation of CCR. Tit. 15. Sec. 3084.6(c)(6), as the information contained within this grievance is Significant to warrant application of the aforementioned Section. However, the exhibit Shows that the Plaintiff's witness was not interviewed "due to... not housed on the Same tier, or on either Side of... the cell. Which Shows officials reasons for not wanting to find the Plaintiff's factual account as true, as the witness was housed directly under the Plaintiff and heard the whole interaction. The exhibit Shows that reviewing officials dishonestly claimed that "There is no evidence to Suggest that" the FLR was biased toward you..." Which is untrue, as the witness Signed a Declaration of his account. **Exhibit DD**, Which →

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 3 PAGE'S.

Shows that conflict of interest and the grievance it's self Show that conflict in grater detail. See **Exhibit LL-1**. and FF.

**CONTINUATION OF**

**LL-2.**

**EXHIBIT.**

# EXHIBIT SEPARATION CONTINUATION PAGE.

**RE**  California State Prison-Sacramento (SAC)
Second Level Reviewer Response
Appeal Log #: SAC-B-15-02451
Date: January 4, 2016

Inmate: OWENS (V-60905)

## APPEAL ISSUE

Legal

## APPEAL DECISION

Denied

## APPEAL RESPONSE

Warden Jeff Macomber is the reviewer of this appeal at the Second Level of Review (SLR). Correctional Counselor I (CCI) (A), N. Fay, was designated by Warden Macomber to conduct an inquiry into your appeal on his behalf, which included performing any necessary interviews and gathering the facts of this case. All submitted documentation and supporting arguments have been considered, including the interview conducted at the Second Level of Review. Additionally, a thorough inquiry was conducted regarding the claim presented by you and evaluated in accordance with SAC Operational Procedures (OP), the Departmental Operations Manual (DOM), and the California Code of Regulations (CCR), Title 15.

**This appeal was also reviewed and evaluated by the hiring authority, per DOM Section 31140.4.10, and deemed not to meet the criteria for a staff complaint issue.**

**Be advised, staffing issues in the Appeals Office have delayed the processing of appeals, however; your time constraints are intact.**

## SUMMARY OF APPEAL

You are appealing the cancellation of Appeal Log #: SAC-P-14-01732. Specifically, you state that the Sergeant that responded to your appeal at the First Level of Review is biased towards you due to him responding and being involved in several incidents that you were the subject of. You state that you did not refuse to be interviewed by the FLR and that you were never asked to come out of your cell to be interviewed.

You are requesting Appeal Log #: SAC-P-14-01732 get processed and assigned for a First Level Review (FLR). You are asking for Sergeant L. Mercado to be disciplined for his unprofessional conduct and for all Officers and Inmates in B Facility 7 Block to be interviewed. You are also requesting compensatory and punitive damages.

## SUMMARY OF INQUIRY

The Department's rules regarding this issue are contained in the following CCR sections and DOM sections:

- **CCR 3084.6(c)(8)**  **Rejection, Cancellation, and Withdrawal Criteria**
- **DOM 54100.11**  **Reasons for Rejection, Cancellation, and Withdrawal of Appeals**

A review of the Test of Adult Basic Education (TABE) list revealed that you have a TABE score listed of 4.5. Your Developmental Disability Program (DDP) code is Normal Cognitive Functioning (NCF) indicating you do not require adaptive functioning evaluation. SLR noted that you spoke English and were

California State Prison-Sacramento (SAC)
Second Level Reviewer Response
Appeal Log #: SAC-B-15-02451
Date: ' January 4, 2016
Inmate: OWENS (V-60905)
Page 2 of 3

able to answer questions related to this appeal. You did not appear to have any difficulty communicating and you did not display any misunderstanding of the appeal issues.

The SLR conducted an inquiry into your concerns on January 4, 2016, at which time you were interviewed by CCI (A), N. Fay, in B Facility, 7 Block. During the interview, you reiterated the contents of your appeal and stated you had nothing new to add. The inquiry included a review of the Inmate Appeals Tracking System (IATS), a review of relevant CCR and DOM sections and the documentation provided by you.

A review of IATS revealed that Appeal Log #: SAC-P-14-01732 was dated May 26, 2014, and was received by the Appeals Office Staff on June 18, 2014. The appeal was screened back to you on July 14, 2014, for not having the necessary supporting documents attached. You returned the appeal to the Appeals Office and it was received by the Appeals Office Staff on October 6, 2014. The appeal was cancelled on October 6, 2014, due to you not returning the appeal within the 30 day time frame outlined in the CCR and DOM.

Then, according to IATS, you filed Appeal Log #: SAC-P-14-03307. This appeal was filed to appeal the cancellation of Appeal Log #: SAC-P-14-01732. The appeal was screened back to you on December 22, 2014, due to you being in a Mental Health Crisis Bed (MHCB) and staff were not able to interview you. You were advised on the CDC 695 that once you were released from the MHCB you could resubmit the appeal. You resubmitted the appeal on January 20, 2015, and the appeal was assigned for a SLR on January 21, 2015. The appeal was completed on April 15, 2015, and was granted in part in that you were allowed to process Appeal Log #: SAC-P-4-01732 for a FLR.

Appeal Log #: SAC-P-14-01732 was received again by the Appeals Office Staff on May 13, 2015, and was assigned for a FLR on June 9, 2015. The appeal was reviewed by Associate Warden L. Eldridge and Sergeant L. Mercado was directed to gather information and conduct any interviews that were necessary in gathering information related to the facts of the appeal. On June 17, 2015, Sergeant Mercado attempted to interview you. According to the FLR dated June 21, 2015, you refused to come out of your cell to be interviewed. You stated, "I really have nothing to say to you. You can either grant it, or deny it. Do whatever you want." The appeal was completed on June 29, 2015, and was cancelled due to you refusing to be interviewed for the FLR.

On July 27, 2015, you filed Appeal Log #: SAC-B-15-02451 dated July 20, 2015. The appeal was received by the Appeals Office Staff on July 27, 2015 and was screened back to you on August 4, 2015 due to it not being an appeal. You were told on the CDC 695 that you cannot file a 602 requesting that a previous 602 be processed. You sent the appeal back to the Appeals Office and the Staff received it on August 28, 2015. At that time, the appeal was assigned at the SLR.

The SLR noted the attached Rules Violation Report (CDC-115) authored by Sergeant Mercado dated February 17, 2015 for Threatening Staff. The SLR also noted Incident Report Log #: SAC-PSU-15-02-0194 dated February 18, 2015, to which Sergeant Mercado was a responder and did write a report which is included in the Incident Report. In the report Sergeant Mercado states that you make several threats toward staff and he also references the CDC-115 dated February 17, 2015 that he authored.

In regards to Appeal Log #: SAC-P-14-01732, the SLR notes that if you were dissatisfied with the response that was given at the FLR and the fact that the appeal was cancelled, you needed to fill out section 'F' of the reviewed appeal and submit the appeal and all attachments to the Third Level for review. Your claim that the FLR was biased toward you due to prior history between yourself and Sergeant Mercado is unfounded in that the SLR was unable to substantiate your claims that Sergeant Mercado acted unprofessionally or was harassing you the day the interview was conducted. You provided the interviewer no witnesses that had direct observation of the alleged staff misconduct. Inmate

California State Prison-Sacramento (SAC)
Second Level Reviewer Response
Appeal Log #: SAC-B-15-02451
Date:    January 4, 2016
Inmate: OWENS (V-60905)
Page 3 of 3

Case 2:16-cv-02750-JAM-RJN   Document 200   Filed 09/24/20   Page 121 of 535

TAMAYO H-42205 was not interviewed due to the fact that he was not housed on the same tier or on either side of you during your interaction with the Sergeant.  Therefore, he could not directly observe what transpired between you and Sergeant Mercado.    According to the CCR 3391 all employees shall be professional in their dealings with inmates. There is no evidence to suggest that the FLR was biased toward you when you were asked to be interviewed.

All submitted documentation and supporting arguments have been considered, and you have failed to raise any new significant issues or evidence in appealing this matter to the SLR. Based on the review of this matter and the supporting documentation you provided, Appeal Log #: SAC-P-14-01732, was cancelled appropriately as outlined in the CCR and DOM. Your request to have the appeal resubmitted for the FLR is denied.  The appeal was reviewed at the FLR and was cancelled due to you refusing to be interviewed. According to the CCR and DOM, an appeal can be cancelled based on the appellant's refusal to be interviewed. Your request for Sergeant L. Mercado to be disciplined for his unprofessional conduct is denied in that it goes beyond the scope of this appeal. Your request for all Officers and Inmates in B Facility 7 Block to be interviewed is denied in that the request goes beyond the scope of this appeal. Your request for compensatory and punitive damages is denied.  Your request goes beyond the scope of this appeal. Based on the review of this matter, the SLR finds staff's actions were appropriate and in accordance with state law, the CCR, and the DOM.

**APPEAL DECISION**

For the reasons cited above, your appeal is **DENIED.**

JEFF MACOMBER
Warden

JM: nf

cc: Inmate Appeals Unit
    Central File

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

## LL-3.
### EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: THIRD LEVEL APPEAL
DECISION TO APPEAL LOG NO.: SAC-15-02451.

Hosted by K.J. ALLEN. Appeals Examiner (A.E.), And M. VOONG. Chief Appeals
officer (Ch. App. o.). on Apr 05, 2016. The exhibit herein shows the third level's
response to the Plaintiff's grievance filed on "Defendant-L. MERCADO'S
retalialtory treatment and violation of the first Amendment to the u.s.
const., The exhibit shows that the third level apparently agrees with the
constitutional violation, as it notes "... this review finds no evidence of a
violation of existing "Policy or regulation... based upon the arguments and
evidence presented." Which is unclear, as any one who reads the grievance
could see how the acts written within constitute a violation, as it is
currantly illegal in the states to (1) interfere with ordered medication, (2)
interfere with one's Petitioning of the government for a redress of grievance
filed, And (3) interfere with one' who wishes to access the court by harassing
that person for that protected conduct. The exhibit also shows exhaustion
of administrative remedy, as the third level notes "This decision exhausts
the administrative remedy available to the appellant within CDCR."

## NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 2    PAGE'S.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## THIRD LEVEL APPEAL DECISION

Date:  **APR 05 2016**

In re:   Theon Owens, V60905
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

TLR Case No.: 1508843          Local Log No.: SAC-15-02451

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner K. J. Allen. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that his submitted appeal was incorrectly processed by appeals staff at the California State Prison - Sacramento (SAC). The appellant states that the decision to cancel his appeal was in error, as the Correctional Sergeant that responded to the appeal in question was biased towards him as he was involved in the issue being appealed.

The appellant adds that he did not refuse to be interviewed at the First Level of Review (FLR) and that he was never asked to come out of his cell to be interviewed. He requests that his previously cancelled appeal (SAC Log #14-01732) be accepted and processed by a competent Correctional Sergeant. The appellant also requests that disciplinary action be taken against Correctional Sergeant (Sgt.) Mercado for his harassing and unprofessional conduct. Lastly, the appellant requests that he be awarded compensatory and punitive damages.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the institution is in compliance with all departmental rules and regulations in the processing of inmate appeals. The reviewer noted that appeal in question was rejected on July 14, 2014, and the appellant was issued a CDC Form 695, Inmate/Parolee Appeals Screening Form. The appellant was informed to obtain missing necessary supporting documents. However, the appellant did not return the appeal until October 6, 2014, which was more than the allowable 30 calendar days from the date the appeal was rejected.

The reviewer noted that a separately submitted appeal was granted that allowed the appellant to resubmit the cancelled appeal (SAC Log #14-01732). At the FLR, Sgt. Mercado attempted to interview the appellant to gather information related to the facts of the appeal. The appellant refused to come out of his cell to be interviewed; the appellant informed Sgt. Mercado that he had nothing to say and he could "do whatever you want." Pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(8), the appeal was cancelled as the appellant failed to be interviewed as required within departmental regulations. Based upon the conducted inquiry, the appeal was denied at the Second Level of Review in that SAC Log #14-01732 was properly cancelled. It was noted that in accordance with departmental rules the appeal was reviewed by the institution's hiring authority. A determination was made that the appeal did not warrant processing as a staff complaint.

**III  THIRD LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** Following analysis of the submitted documentation, the Appeals Examiner has determined that the appellant's allegations have been reviewed and properly evaluated by administrative staff at the SAC. An appeal inquiry was conducted by appropriate supervising staff and the appeal was reviewed by the institution's Warden. Despite the appellant's dissatisfaction, this review finds no evidence of a violation of existing policy or regulation by the institution based upon the arguments and evidence presented.

THEON OWENS, V60905
CASE NO. 1508843
PAGE 2

Pursuant to the CCR 3084.6(c)(8), an appeal may be cancelled if the appellant refuses to be interviewed or to cooperate with the reviewer. In that the appellant clearly refused to be interviewed, his appeal was correctly cancelled in accordance with departmental rules and regulations. Relief in this matter at the Third Level of Review is not warranted. Although the appellant has the right to submit an appeal, his requests for disciplinary action against staff and for monetary compensation are beyond the scope of the departmental appeals process.

**B. BASIS FOR THE DECISION:**
CCR: 3001, 3084.1, 3084.5, 3084.6, 3084.7, 3380
CDCR Operations Manual, Section: 31140.14, 54100.1, 54100.4

**C. ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.


K. J. ALLEN, Appeals Examiner
Office of Appeals

M. VOONG, Chief
Office of Appeals

cc:    Warden, SAC
       Appeals Coordinator, SAC

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, _____ VS. JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

LL-4.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 602 (REV. 03/12) Inmate/
Parolee Appeal. Log No.: SAC-P-14-01732./ First Level Reviewer's Response.

Hosted by The Plaintiff, THEON OWENS. On 5-26-2014. The exhibit herein
shows the Grievance that the Plaintiff filed on his health and safety,
that Defendant-L-MERCADO was assigned to by Defendant-L-ELORIDE
to gather information related to the facts of the Grievance on her
behalf as the First Level Reviewer ("FLR") on June 17, 2015. The
exhibit shows that Defendant-MERCADO cancelled Plaintiff's Grievance
after Going to the Plaintiff's assigned housing, and harassing and
threatening him in retaliation for other Defendants (compl. at PP.106)And
for using the Grievance System to redress Defendants use of
unnecessary force on him (compl. at PP.118-19) The exhibit shows the lie
Provided by Defendant-MERCADO to Conceal his violation of rights
and Cancellation of the Plaintiff's Grievance, as it is noted by
MERCADO, that the Plaintiff refused to come out of his cell for the interview"
NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1-4. PAGE'S.

CONFIDENTIAL
EMERGENCY

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

NON-EMERGENCY Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| 1508843 | SAC - P | 14·01732 | 9 |

*FOR STAFF USE ONLY*

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations (CCR), Title 15, Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084.2 for further guidance on the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.       WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Chiens  :T | V-60905 | A-4-118 | |

**State briefly the subject of your appeal** (Example: damaged TV, job removal, etc.): Inmate dangerous contra nd (hand cuff keys) that endangers institution security. And a incident that happen on my -14 on 3 watch and 3 inmates misuse of a Medical appliances. That _____ endangers st.tuton security and life.

A. **Explain your issue** (If you need more space, use Section A of the CDCR 602-A): I am filing this appeal be use on 5-26-2014, an inmate in 4-black -Psu. made some type of hand cuff key, and came t of his hand cuff on the cart at yard time. The inmate targeted me and got off the cart _____ officers working the day of didn't respond the way

B. **Action requested** (If you need more space, use Section B of the CDCR 602-A): I would like money dam ies. _____

**Supporting Documents: Refer to CCR 3084.3.**
☒ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

CDCR-128-B authored on 5/27/2014.        CDCR 7230 dated 5-27-14

CDCR MH-7230 dated 5-27-2014       CDC XXXX dated  5-26-2014
                                    CDC XXXX dated  5-26-2014

☒ No, I have not attached any supporting documents. Reason : Not needed Please see C/o M. Johnkin report.

Inmate/Parolee Signature: Thia cour       Date Submitted: 5 - 26 - 14

☐ By placing my initials in this box, I waive my right to receive an interview.

C. First Level - Staff Use Only       Staff – Check One: Is CDCR 602-A Attached? ☒ Yes  ☐ No
This appeal has been:                  R3, R7, A3
☐ Bypassed at the First Level of Review. Go to Section E.
☒ Rejected (See attached letter for instruction)  Date: 7-14-14  Date: ____ Date: ____ Date: ____
☒ Cancelled (See attached letter)  Date: 10/06/14 - C.10
☐ Accepted at the First Level of Review.
Assigned to: L. MERCADO       Title: SGT       Date Assigned: 6.9.15   Date Due: 7.9.15

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: 6/17/15       Interview Location: FB 7
Your appeal issue is: ☐ Granted  ☒ Granted in Part  ☐ Denied  ☒ Other: Cancelled
See attached letter. If dissatisfied with First Level response, complete Section D.
Interviewer: MERCADO  Title: SGT  Signature: _____   Date completed: 6/21/15
(Print Name)
Reviewer: C. ANNEK   Title: AWA)  Signature: CILS
(Print Name)
Date received by AC: 06/29/15

AC Use Only
Date mailed/delivered to appellant 06/29/15

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| | IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|---|
| 1508843 | | SAC - P | 14-01732 | 7 |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.

WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Owens, I | V-60965 | A-4-118 | N/A |

A. Continuation of CDCR 602, Section A only (Explain your issue): they should have No explanable
stun and or O.C. was used, Nor did they use a reasonable amount of Physical
orce. To deter the inmate from his misbehavior. there Their lack of action cause me
o have to get off the cart and i backed into one of the steam yellow Pipe line on the
and, ~~████████████████████~~ inwhich caused me to receive first
egree burns to the back of my leg. (Please see Medical reports). ~~████~~

Inmate/Parolee Signature: Thru Owen     Date Submitted:
5-26-2014

B. Continuation of CDCR 602, Section B only (Action requested): ~~████████████████~~) I
~~████████████████~~
would like my actions requested and this incident refer to the inspector General office and or to the
internal affairs for investigation.[5] I would like money damages for the first degree burns to the back of my
leg and for the ~~state~~ scaring on my leg that i now have.[6] I would like some type of Protecter barrier Placed
round all steam yellow Pipe lines To ensure no one gets hurt, Injured or burned like i did. (7) I would like the
money damages iam request in the form ~~of~~ of donated Property items consistent with sections
584.9 and 3191 (c). IF such items are not available via donated Property. Then Monetary compen
ation. Has to be Paid before i will discharge the state from further liability for the claim if requir
d Pursuant to Government Code section 965.

Inmate/Parolee Signature: Thru. Owen     Date Submitted: 5·26-2014

INMATE APPEALS BRANCH

2014 MAY 13 PM 0 48
CSPSAC RECEIVED APPEALS

RECEIVED NOV 2 4 2014 STAFF

RECEIVED 2015 JUN-10 AM 10:11 STAFF APPEALS

RECEIVED CCII STAFF APPEALS

RE: First Level Reviewer's Response
Appeal Log #: SAC-P-14-01732
Date: June 21, 2015

Inmate: Owens (V60905)

## APPEAL ISSUE

Living Conditions

## APPEAL DECISION

Cancelled

## APPEAL RESPONSE

L. Eldridge, Associate Warden, has directed Correctional Sergeant, (Sgt.) L. Mercado to gather information related to the facts of this appeal on her behalf at the First Level of Review (FLR). All submitted documentation and supporting arguments have been considered, including the interview conducted at the FLR. A thorough inquiry was conducted regarding the claim presented by the appellant and evaluated in accordance with SAC Operational Procedures (OP), the Department Operations Manual (DOM), and the California Code of Regulations (CCR), Title 15.

## SUMMARY OF APPEAL

The appellant is claiming on May 26, 2014, an inmate (un-named) slipped out of his waist restraints during an escort and battered the appellant. The appellant alleges custody staff did not respond how they should have by not using any kind of force, and due to their lack of action, the appellant had to get off of a golf cart and back into a steam pipe, which cause 1st degree burns to the back of the appellant's leg.
The appellant is requesting the following:
1) "Money damages" for the assault that happened, or for the inmate who assaulted him to have his waist restraint chrono removed for misuse of it.
2) For the inmate who assaulted the appellant to be put on small security cuff status with his hands behind his back.
3) For the inmate who assaulted the appellant to be put on no group escorts status and modified escorts.
4) For the incident to be referred to the Inspector General Office and/or Office of Internal Affairs for investigation.
5) "Money damages" for the first degree burns to the back of his legs and for the scaring on his legs.
6) For some type of protective barrier to be placed around all yellow steam pipe lines.

## SUMMARY OF INQUIRY

The Department's rules regarding this issue are contained in the following sections:

| | | |
|---|---|---|
| ➢ | **OP 129** | **Inmate-Patient Restrictions** |
| ➢ | **DOM 31140.4.10** | **Hiring Authority** |
| ➢ | **CCR Title 15 3268** | **Use of Force** |
| ➢ | **CCR Title 15 3084.6** | **Rejection Cancellation and Withdrawal Criteria** |

I attempted to interview the appellant on June 17, 2015. He refused to come out of his cell for the interview and stated, "I really have nothing to say to you. You can either grant it, or deny it. Do whatever you want." A review of the Test of Adult Basic Education (TABE) list reveals the appellant's TABE score is 4.5. The appellant's Developmental Disability Program code is Normal Cognitive Function, indicating he does not require adaptive functioning services. The FLR noted the appellant spoke English and was able to effectively communicate his refusal to participate in the interview process for this appeal at the FLR.

Due to your lack of cooperation with the interview process, this appeal shall be cancelled per CCR Title 15, Section 3084.6 (c) (8).

California State Prison Sacramento
First Level Reviewer's Response
Appeal Log #: SAC-P-14-01732
Date: June 21, 2015
Inmate: Owens (V60905)
Page: 2 of 2

## APPEAL DECISION

For the reasons cited above, this appeal is **Cancelled.**

Prepared by: L. Mercado
           Correctional Sergeant
           CSP-SAC

Reviewed by: L. Eldridge
           Associate Warden
           Administrative Segregations Unit (ASU)

cc: Inmate Appeals Unit
    Central File

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE <u>EASTERN</u> DISTRICT OF CALIFORNIA

THEON OWENS,            VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750 - JAM-KJM.

MM.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 602 (REV.08/09)
INMATE / PAROLEE APPEAL LOG NO.: SAC-15-00582.

Hosted by the Plaintiff, **THEON OWENS**, Correctional Lieutenant (Lt.) **ROBERT SPARKS**, Warden. **JEFF MACOMBER**, Appeals Examiner **(A.E.) I. BENAVIDEZ**, And Chief (N) Appeals officer (ch.APP.o.) **M VOONG**, on different dates. The exhibits herein shows the grievance filed by the Plaintiff on "The beating / unnecessary excessive force resulting in serious bodily injuries / Racial hate crime" and facts persented in this case here. The exhibits show the responses by supervising prison officials to the appeal on each level. The exhibits show that many appeals procedures and safeguards were violated during the process of investigation. The exhibits show prison officials inability to conduct a fair and honest investigation, due to the matters in interest. The exhibits also show exhaustion of administrative remedy.

NUMBER OF PAGE'S TO THIS EXHIBIT: <u>1-9</u>   PAGE'S.

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, _____ vs. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

### MM-1
### EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 602 (REV. 08/09)INMATE /PAROLEE APPEAL LOG NO.: SAC-15-00582.

Hosted by the Plaintiff, **THEON OWENS**, on February 28, 2015. The exhibit Shows the facts presented by the Plaintiff in relation to the beating he endure at the hands of defendants. The exhibit shows that all staff names are mentioned and that the facts are properly stated. The exhibit Shows the names of the eye witnesses who observed the beating as occurring. The exhibit shows that the appeals office staff removed the CDCR 602 A (08/09) Inmate/Parolee Appeal form Attachment "side 2. Sections D. and F." to stop the Plaintiff from further pleadings of facts. The exhibit Shows that the Plaintiff was never interviewed regarding the ensuring claims persented. Which is a direct violation of appeals procedures. See C.C.R. Tit. 15. Sec. 3084.7. sub.sec. (e). Which require that "at least one face -to-face interview shall be conducted with the appellant at the first level of review, or the Second level if the first level... is bypassed ..." and was only not provided to deprive the Plaintiff of a fair investigation.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: ___3___ PAGE'S.

**OFFENCE EMERGENCY**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**STAFF COMPLAINT**

**BEATING ON AN INMATE**   Side 1

1414306

V60905

IAB USE ONLY

ORIGINAL

| | Institution/Parole Region: | Log #: | Category |
|---|---|---|---|
| SAC | 15-00587 | 7 |

FOR STAFF USE ONLY

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.      WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: Cell-2 | Assignment: |
|---|---|---|---|
| OWENS T | V-60905 | CMF-CTC-MHCB-A2 | EOP/CTC |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

OVERUSE OF FORCE With SERIOUS BODILY INJURY/RACIALL HATE CRIME

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): Iam Filing this Appeal on the facts that on 2-18-15 c/o DeFazio, J. Lebeck, M. Brady and Burke came to my door & Instructed me to cuff up They stated that an unnamed c/o said that i gassed him. I informed c/o DeFazio that i did not gas anyone i Did not Want to come

B. Action requested (If you need more space, use Section B of the CDCR 602-A): Iam requesting (1) that CDCR replace my two missing teeth with permanet dental implants (NOT PARTIALS). Iam requesting that all Witnesses be interviewed These Witnesses are as follows. cell A-3 130 (3/m WolF), cell A-3 230. cell A-3 129. cell A-3-126 (3/m HENDOS T-62763). And 3/m EDDIE

Supporting Documents: Refer to CCR 3084.3.

☒ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

Photo of my Face i eyes swollen shut & Dreadlocks missing from the right side of head.

Medical Report of Injury or unusual occurrence CDCR 7219

☒ Yes, I have attached supporting documents. Reason : _____

Inmate/Parolee Signature: _Theo owen_   Date Submitted: 2-28-15

☐ By placing my initials in this box, I waive my right to receive an interview.

C. First Level - Staff Use Only      Staff – Check One: Is CDCR 602-A Attached?   ☐ Yes   ☐ No

This appeal has been:
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter) Date: _____
☐ Accepted at the First Level of Review.

Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: _____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _____   Interview Location: _____

Your appeal issue is:  ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other

**BYPASS**

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: _____ (Print Name)   Title: _____   Signature: _____   Date completed: _____

Reviewer: _____ (Print Name)   Title: _____   Signature: _____

Date received by AC: _____

| AC Use Only |
|---|
| Date mailed/delivered to appellant ___ / ___ / ___ |

2015 MAR -5 PM 12:36

RECEIVED CSP-SAC APPEALS

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL **EMERGENCY**   **TREAT AS ORIGINAL** DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 602 (REV. 08/09)

STAFF COMPLAINT

D. If you are dissatisfied with the First Level response, explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

then C/o T. Murillo slammed my head into the wall, then they dragged me into the hall way, Right next to the A-3 Staff office. Sgt. k. Blessing & C/o I Defazio started to hit & kick me in the face officer - 5 times. Then they threw me into the cage. Sgt. k. Blessing told all the c/o's into the office. I n then heard Sgt. Blessing tell the c/os. "we have to cover our asses". I also heard c/o I Defazio say he would put in the report that i attempted to head butt him! spit on him. I heard an unidentified c/o tell the ³/m worker to clean up the blood & hair on the tier! After that another Sgt. came & took me to see a doctor & dentist in the A-TTA...

Inmate/Parolee Signature: _Theon Overr_   Date Submitted: _____

E. Second Level - Staff Use Only   Staff – Check One: Is CDCR 602-A Attached?   ☐ Yes   ☐ No

This appeal has been:
☐ By-passed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)
☐ Accepted at the Second Level of Review
Assigned to: _R SPARKS_   Title: _LT_   Date Assigned: _3/25/15_   Date Due: _____

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: _N/A_   Interview Location: _OIA REFERRAL_

Your appeal issue is:   ☐ Granted   ☒ Granted in Part   ☐ Denied   ☐ Other: _____

See attached letter. If dissatisfied with Second Level response, complete Section F below.
Interviewer: _N/A_   Title: _LT_   Signature: _____   Date completed: _4/13/15_
_R SPARKS_
Reviewer: _M Carbon_   Title: _Warden_ Signature: _____
Date received by AC: _04/29/15_

AC Use Only
Date mailed/delivered to appellant _04/29/15_

F. If you are dissatisfied with the Second Level response, explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

I am not satisfy with this, I want my two teeth fix with permanet dental implants and i want to be finacially compensated for my pain & suffering & cruel & unusual punishment in the amount of $1,000,000.00, I want the staff that were involved fired (Please see EXHIBIT A & B) STAFF DID VIOLATE CDCR POLICY and i want them punished...

Inmate/Parolee Signature: _Theon Overr_   Date Submitted: _5-27-15_

G. Third Level - Staff Use Only

This appeal has been:
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter)   Date: _____
☒ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted   ☐ Granted in Part   ☒ Denied   ☐ Other: _____
See attached Third Level response.

Third Level Use Only
Date mailed/delivered to appellant _AUG 19 2015_

Request to Withdraw Appeal: I request that this appeal be withdrawn from further review because: State reason. If withdrawal is conditional, list conditions.)

_____
_____
_____
_____

_____ Inmate/Parolee Signature: _____   Date: _____
Print Staff Name: _____ Title: _____ Signature: _____   Date: _____

EMERGENCY

**EMERGENCY**

STAFF COMPLAINT

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)

**BRUTAL BEATING ON AN INMATE**

TREAT AS ORIGINAL

| Institution/Parole Region: | Log #: | Category: |
|---|---|---|
| SAC-P- | 15-00582 | 7 |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.      WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Owens T | V-60905 | MHCB B-2 -cell-2 | EOP/CTC-CMF |

A. Continuation of CDCR 602, Section A only (Explain your issue): Out MY cell. Because @ Lt. C Martin
ek already Pulled me cut of the cell for said allegations. C/o J. DeFazie Stated that another
er c/o also said i gassed him as well. That SGT. k. Blessing i Lt. c Martincek wanted me
to cuff up or i would be cell extracted. I turned around i cuffed up. Tower c/o matthews
opened the door i ck I Defazie grabbed me by the arm i slammed me on the floor. i at that
time. Him i All Present c/o's began to strike me in my face. After a minute elapsed i began to
'al in attempt to stop attacker i to make others aware of the attack. All present
c/o's continued to strike me. I tried to shield my face by tucking it towards my che-
it i floor which had little to no effect. c/o DeFazie began to grab my hair to pull my
ead up. He pulled approx- 25-30 dreadlocks on the right side of my head. once c/o. J. DeF
zio had my head up. He punched me in my mouth several times. knocking out two of my
... When i observed the blood gushing out of my mouth i one of my teeth on the floor
xr to me. I began to yell out that i have "HIV" in an attempt to stop the attack. All the
c/o's then stopped striking me except c/o J. Defazie he then grabbed my hair i said to me,
o you dont, nigger you think you run this place. you walk around hear like you run this
ace. your going to learn nigger" one of the other c/o's told the tower to hit the ala-
rm. when other staff responed. SGt. k. Blessing came up the stairs i kicked me in the
ace i other c/o's began to bit i kick me again. one c/os (martinez) then Pulled my legs up
kicked me in the testicles. They then drassed me down the stairs (CONTINUED→D

Inmate/Parolee Signature: Theon Owens          Date Submitted: 2-28-15

B. Continuation of CDCR 602, Section B only (Action requested): Sanchez k-62067. Iam requesting (3) To be finacially com
nsated for my pain i suffering i cruel i unusual punishment in the amount of $1,000,000.00 (one million
ollars) Tax exempt. Furthermore, I seek #(4) To have SGt k. Blessing i c/o J. Defazio to be fired immed
ately. With out any severence nor retirement benefits to be afforded to them. In addition to
(1) involved c/o's to be punished i Reprimaned accordingly. These other c/o's are as follows. Martinez, D.
Matthews, Guffre, J.Murillo, c.Drake, R.Bettencourt, I Rotter, Parker, Hammer, J.Lerch, M.Brady. Burke and P.Rashev, and S.
eyers.

Inmate/Parolee Signature: Theon Owens          Date Submitted: 2-28-15

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,            VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## MM-2.
### EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: STAFF COMPLAINT RESPONSE-
APPEAL # SAC-P-15-00582 SECOND LEVEL RESPONSE.

Hosted by correctional Lieutenant (Lt.) ROBERT SPARKS. And warden, JEFF
MACOMBER. on April 3, 2015. The exhibit herein shows the second level response
to the Plaintiff's grievance filed on "the beating, unnecessary excessive force,
Racial hate crime, and facts persented in this case." The exhibit shows that
the ensuring claims were "referred to office of Internal Affairs." Which
shows that the ensuring claims within the complaint have merit to them.
The exhibit shows that the "...appeal is PARTIALLY GRANTED in that: [an]
investigation" was to occur. Which shows that there is merit to the Plaintiff's
case and claims. The exhibit shows that "All staff personnel matters are
confidential in nature. As such, the details of any inquiry will not be shared
with ... members of the public, [or the jury] or offender appellant." Which is
the Departments way of say "were not showing any thing, so just go home
because theres nothing to see here." which shows guilt, as if every thing
was done according to Policy, they should want to show "see everybody,
we followed the rules and did every thing right."

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 2    PAGE'S.

State of California

Attachment E-1
Department of Corrections and Rehabilitation

# Memorandum

Date : April 3, 2015

To : OWENS, V-60905
CTC-MHCB-B2, CALIFORNIA MEDICAL FACILITY

Subject: **STAFF COMPLAINT RESPONSE - APPEAL # SAC-P-15-00582 *SECOND* LEVEL RESPONSE**

APPEAL ISSUE: You claim on February 18, 2015, that Officers Defazio, J. Lebeck, M. Brady, and Burke came to your door and instructed you to cuff up and come out for a cell search due to allegations you had gassed someone earlier. You claim you submitted to handcuffs and the cell door was opened. As the cell door opened, Officer Defazio grabbed you by the arm and slammed you on the ground. Other unknown staff began to strike you in the face. You claim after a minute elapsed, you began to yell out to make others aware of the attack and get them to stop but they continued to strike you. Officer Defazio grabbed your hair pulling out 25-30 dreadlocks from the right side of your head, and then he punched you in the mouth several times, knocking two of your teeth out. You then yelled out, "I have HIV" and all the officers stopped except for Officer Defazio, who grabbed your hair and made some derogatory comments towards you. You claim Sergeant Blessing kicked you in the face and other officers began to hit and kick you. Officer Martinez grabbed your legs and kicked you in the testicles. You claim the officers dragged you down the stairs and Officer J. Murillo slammed your head into the wall, and then dragged you into the hallway next to the staff office. Once in front of the office, Sergeant Blessing and Officer Defazio started to hit and kick you in the face approximately 5 times, and then threw you into a cage.

All issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint. If you are unable to name all involved staff you may request assistance in establishing their identity.

**DETERMINATION OF ISSUE**: A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal is:

➢ Being referred to Office of Internal Affairs.

You will be interviewed during the process of your inquiry/investigation.

Staff Complaint Response - Appeal #SAC-P-15-00582
OWENS (V-60905)
April 3, 2015
Page 2 of 2

Attachment E-1

Page 2

**Your appeal is PARTIALLY GRANTED in that:**

➢ **Investigation**

This matter has been referred to the Office of Internal Affairs for follow-up and a possible investigation. If investigated, upon completion of that investigation, you will be notified as to whether the allegations were SUSTAINED, NOT SUSTAINED, UNFOUNDED, EXONERATED or there was NO FINDING. In the event that the matter is not investigated, but returned by OIA to the institution or region to conduct an Appeal Inquiry, you will be notified upon the completion of that inquiry whether it was determined that staff did, or did not, violate policy.

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.

- As such, the details of any inquiry will not be shared with staff, members of the public, or offender appellants.
- Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. A variety of personnel actions may be initiated by the Department based upon the content of your complaint and the outcome of any investigation or inquiry conducted as a result of your complaint.
- Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.

If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level, administrative remedies will be considered exhausted.

Print: _R SPARKS_____ Sign: _____ Date: _4/3/15_
Interviewer

Print: _S Macombe__ Sign: _____ Date: _4-9-15_
Reviewing Authority

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,              VS.   JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## MM-3.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: THIRD LEVEL APPEAL DECISION TO APPEAL LOG NO.: SAC-15-00582.

Hosted by Appeals Examiner (A.E.) J. BENAVIDEZ, And Chief (A) Appeals officer (Ch. App.o.) M. VOONG, on Aug 6, 2015. The exhibit herein shows the third levels response to the Plaintiff's grievance and facts persented in this case. The exhibit shows the Third Level of Review (TLR) concluded that "the appellant's allegation was appropriately reviewed and evaluated by administrative staff." Which shows that the TLR did not investigate into the Plaintiff's ensuring claims of being beaten by prison guard while in mechanical restraints, and just took the institutional Level's review at face value without further inquiry. The TLR ensures that "...The OIA was contacted [by] ... the TLR and provided information that the decision letter prepared by the OIA has been sent to the institution hiring authority". Which shows that a letter exists with information regarding the facts presented in this matter. The exhibit also shows exhaustion of administrative remedies, as the TLR states "... This decision exhausts the administrative remedy available to the appellant within CDCR".

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 2    PAGE'S.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
OFFICE OF APPEALS
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## THIRD LEVEL APPEAL DECISION

Date: **AUG 0 6 2015**

In re: Theon Owens, V60905
California State Prison, Sacramento
P.O. Box 29
Represa, CA 95671

TLR Case No.: 1414306      Local Log No.: SAC-15-00582

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Benavidez. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that Correctional Officers (CO) DeFazio, J. Lebeck, M. Brady, Burke and Correctional Sergeant (Sgt.) K. Blessing of the California State Prison - Sacramento (SAC) used unnecessary and/or excessive force upon his person. The appellant alleges that on February 18, 2015, COs DeFazio, Lebeck, Brady and Burke come to his door and instructed him to "cuff up" because they were informed that he had "gassed" an unidentified staff. The appellant asserts that he was already removed from his cell for the aforementioned allegation and did not want to come out of his cell. The appellant contends that CO DeFazio told him that he was to "cuff up" or a cell extraction would be conducted. The appellant alleges that he agreed and once the cell door was opened, CO DeFazio and the other staff battered him in a manner that caused him injury. The appellant alleges that CO DeFazio slammed him on the floor and the other staff began to strike him in the face; CO DeFazio pulled his head up by his "dreadlocks" and punched him in the face which resulted in him losing two teeth. The appellant contends that in attempt to stop the excessive Use Of Force he yelled "I have HIV" and all of the staff stopped the attacked with the exception of CO DeFazio. The appellant requests that he receive permanent dental implants as a replacement for his missing teeth, that all witnesses be interviewed, be monetarily compensated in the amount of $1,000,000.00, that Sgt. Blessing and CO DeFazio be terminated immediately without retirement benefits and that all identified COs be reprimanded accordingly.

**II   SECOND LEVEL'S DECISION:** The reviewer found a basis to partially grant this appeal. The review of the allegation of staff misconduct presented in the written complaint was completed and based upon this review the appellant's appeal will be referred to the Office of Internal Affairs (OIA) for follow-up and possible investigation. If investigated, upon completion of that investigation, the appellant will be notified as to whether the allegations were Sustained, Not Sustained, Unfounded, Exonerated, or that No Finding was possible. In the event the matter is not investigated, but returned by the OIA to the institution or region to conduct a confidential inquiry, the appellant will be notified upon the completion of that inquiry as to whether it was determined that staff violated or did not violate policy. The appeal was partially granted in that this matter was referred to the OIA for review and possible investigation.

**III   THIRD LEVEL DECISION:** Appeal is denied.

**A.   FINDINGS:** Upon review of the documentation submitted, it was determined at the Third Level of Review (TLR) that the appellant's allegation was appropriately reviewed and evaluated by administrative staff. All staff personnel matters are confidential in nature and will not be disclosed to other staff, the general public, the inmate population, or the appellant. If the conduct of staff was determined to not be in compliance with policy, the institution will take the appropriate course of action. In this case, the Second Level of Review informed the appellant that this matter was referred to the OIA for review and a possible investigation.

THEON OWENS, V60905
CASE NO. 1414306
PAGE 2

While the appellant has the right to submit an appeal as a staff complaint, requests for: administrative action regarding staff; the placement of documentation in a staff member's personnel file; to reprimand staff; to remove staff from a position; and/or requests for monetary compensation, are beyond the scope of the appeals process. The OIA was contacted at the TLR and provided information that the decision letter prepared by the OIA has been sent to the institution hiring authority. No relief is warranted at the TLR.

The appellant indicated that the appeal was to be considered as an emergency. Following review of the issues, it was found not to have met the emergency criteria as described in California Code of Regulations, Title 15, Section (CCR) 3084.9(a). The appeal was processed as a routine matter.

**B. BASIS FOR THE DECISION:**
California Penal Code Section: 832.5, 832.7
California Code of Regulations, Title 15, Section: 3000, 3001, 3190, 3268, 3268.1, 3270, 3287, 3380, 3391

**C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

J. BENAVIDEZ, Appeals Examiner
Office of Appeals

cc:     Warden, SAC
        Appeals Coordinator, SAC

M. VOONG, Chief (A)
Office of Appeals

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,                    VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

MM-4.
EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: E-MAIL CORRESPONDENCE

Hosted by Appeals Coordinator, **C. BURNETT.** And Lieutenant, **ROBERT SPARKS.**
on different dates at different times. The exhibit herein shows the
correspondence between the two regarding the issuses presented in this
case, The exhibit shows that the Departments finding on the investigation into
the Plaintiff's beating were "not sustained" despite the amount of injuries
sustained to the Plaintiff while he was in Mechanical restraint. The finding
show the cover up that occurs each and every time a Police officer beats
an american black Male. Which shows that the state holds no accountable
for it's ruffian cops.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 2   PAGE'S.

**Burnett, Cicely K.@CDCR**

| | |
|---|---|
| **From:** | Sparks, Robert@CDCR |
| **Sent:** | Thursday, February 04, 2016 11:46 AM |
| **To:** | Burnett, Cicely K.@CDCR |
| **Subject:** | RE: OIA Determination for Owens V60905 |

January 19, 2016 is the date of the closure Memo and the findings were not sustained.

**From:** Burnett, Cicely K.@CDCR
**Sent:** Thursday, February 04, 2016 11:43 AM
**To:** Sparks, Robert@CDCR
**Subject:** RE: OIA Determination for Owens V60905

Two questions, when did they close it and what was the determination?

**From:** Sparks, Robert@CDCR
**Sent:** Thursday, February 04, 2016 11:42 AM
**To:** Burnett, Cicely K.@CDCR
**Subject:** RE: OIA Determination for Owens V60905

The investigation is complete, the case is officially closed.

**From:** Burnett, Cicely K.@CDCR
**Sent:** Wednesday, February 03, 2016 3:36 PM
**To:** Sparks, Robert@CDCR
**Subject:** FW: OIA Determination for Owens V60905

Hello Rob,

Can you reach out to OIA regarding this one, I'm getting a little worried watching the dates.  If you want me to do it, just give me the contact information.

**From:** Burnett, Cicely K.@CDCR
**Sent:** Tuesday, February 02, 2016 11:23 AM
**To:** Sparks, Robert@CDCR
**Subject:** RE: OIA Determination for Owens V60905

We are fast approaching the 365-day mark for 2/18/15.  I hope we hear something soon.

**From:** Sparks, Robert@CDCR
**Sent:** Tuesday, February 02, 2016 11:16 AM
**To:** Burnett, Cicely K.@CDCR
**Cc:** Caron, Elijah W.@CDCR
**Subject:** RE: OIA Determination for Owens V60905

We have not received anything back from OIA yet. Still ongoing investigation.

**From:** Burnett, Cicely K.@CDCR
**Sent:** Tuesday, February 02, 2016 9:23 AM
**To:** Sparks, Robert@CDCR

Cc: Caron, Elijah W.@CDCR
Subject: OIA Determination for Owens V60905

Good morning,

Can you please tell me if OIA has gotten back to us on appeal Log# number SAC-P-15-00582? Below are our notes on the matter.

I/M claims on 2/18/15, C/Os Defazio, J Lebeck, M. Brady and Burke came to his door and told him to Cuff up. Claims a C/Os said they were told he gassed another C/O. Claims he told them he did not want to come out of his cell and that a Lt. have already pulled him out for those allegations. Claims he was told to cuff up or be cell extracted. Claims he was placed in handcuffs and when the door opened, C/O Defazio grabbed him by the arm and slammed him on the floor. Claims all the C/Os present began to strike him in his face. Claims C/O Defazio grabbed his hair and pulled out approximately 25-30 dreadlocks on the right side of his head. Claims the C/O punched him in his mouth several times knocking out two of his teeth. Claims he yelled out that he had HIV to get them to stop. Claims C/O Defazio grabbed his hair and stated, dblquote No you donquote t nigger, you think you run this place. Claims the C/O stated, dblquote Youquote re going to learn nigger.dblquote Claims Sgt. kicked him in his face and other C/Os began to hit and kick him again. Claims C/O Martinez pulled his legs up and kicked him in the testicles. Claims he was dragged down the stairs. Claims C/O Murillo slammed his head into the wall and dragged him in the hall. Claims Sgt and C/O Defazio hit and kicked him in the face approximately 5 times. Claims Sgt. called all C/Os into the office. Claims he heard them say to cover it up. Claims C/O Defazio said he would put in his report that the I/M attempted to head butt and spit on him.

3/5/15 e-mailed appeal to HA for review.

03/26/2015 1st Ext @SLR from 03/25/2015 to 04/08/2015. -RC

05/04/2015 2nd Ext @SLR from 04/08/2015 to 04/29/2015. -RC
Matter was referred to OIA. ckb...

Cicely

C. Burnett
Appeals Coordinator
CSP-Sacramento
(916) 985-8610, ext. 5067



2

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,_____ vs. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.



MM-5.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: STAFF COMPLAINT RESPONSE - APPEAL NO.: SAC-P-15-00582.

Hosted by Appeals Coordinator (AC) CICELY K. BURNETT, on February 11, 2016. The exhibit herein shows the Departments conclusion of the investigation it conducted internally. The exhibit shows that internal investigations dont work, as any reasonable person could look at the photos taken of the Plaintiff, and at the medical report and find in favor of the Plaintiff, as know one should look as the Plaintiff did under reasonable force, including the fact that the Plaintiff was under the control of mechanical restraints during the whole event and could not have posed a significant threat to four unrestrained train prison guards. Show that excessive force occurred.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1___ PAGE'S.

State of California

Attachment E-4
Department of Corrections and Rehabilitation

# **Memorandum**

Date   :   February 11, 2016

To    :   OWENS, # V60905
B7-112L, CSP-Sacramento

Subject:   **STAFF COMPLAINT RESPONSE - APPEAL # SAC-P-15-00582**

Allegations raised in your complaint dated February 28, 2015, have been
evaluated. Our review indicates that there was no violation of California Department
of Corrections and Rehabilitation policy. Accordingly, no further action will be taken
with regard to your complaint.

**This response does not limit or restrict the availability of further relief via the
inmate appeals process.** If you have not already done so, and you wish to further
appeal the decision, you must submit your staff complaint appeal through all levels of
appeal review up to, and including, the Secretary's Level of Review.

With the rendering of a decision at the Third Level of Review your administrative
remedies will be considered exhausted.

Name: C. Burnett        Signature: _C. Burnett_        Date: _2/11/16_
Appeals Coordinator

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,                    VS.  JOSEPH DEFAZIO, ET. AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

MM-6.

EXHIBIT

DESCRIPTION OF THIS EXHIBIT: GOVERNMENT CLAIMS
PROGRAM LOG NO.: G623624.

Hosted by The Victim Compensation and Government Claims Board (Board).
on April 08. 2015. And May 29, 2015. The exhibit shows the Board's response
to the Plaintiff's grievance and facts persented in this case. The exhibit
Shows that the Board "rejected" the Plaintiff's request for action "Based on
its review of [the] claim. [the]...Board...believes that the court system
is the appropriate means for resolution of these claims"... The exhibit
Shows extra exhaustion of administrative remedies.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 2  PAGE'S.



STATE OF CALIFORNIA
EDMUND G. BROWN JR., Governor

GOVERNMENT CLAIMS PROGRAM
400 R Street, 5ᵗʰ Floor ♦ Sacramento, California 95811
Mailing Address: P.O. Box 3035 ♦ Sacramento, California 95812
Toll Free Telephone Number 1-800-955-0045 ♦ Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

MARYBEL BATJER
Secretary
Government Operations Agency
Chairperson
BETTY T. YEE
State Controller
Board Member
MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member
JULIE NAUMAN
Executive Officer

Government Claims Program

APR 2 1 2015

RECEIVED

Theon Owens V60905
PO Box 2000
Vacaville, CA 95696

April 08, 2015

RE: Claim G623624 for Theon Owens, V60905

Dear Theon Owens,

The Victim Compensation and Government Claims Board (Board) received your claim on March 17, 2015.

Based on its review of your claim, Victim Compensation and Government Claims Board (Board) staff believes that the court system is the appropriate means for resolution of these claims, because the issues presented are complex and outside the scope of analysis and interpretation typically undertaken by the Board. The Board will act on your claim at the May 21, 2015 meeting. You do not need to appear at this meeting. The Board's rejection of your claim will allow you to initiate litigation should you wish to pursue this matter further.

If you have questions about this matter, please mention letter reference 99 and claim number G623624 when you call or write your claim technician/analyst at (800) 955-0045 or (916) 491-3700.

Sincerely,

Government Claims Program
Victim Compensation and Government Claims Board

cc: Corrections and Rehabilitation

Ltr 99 Complex Issue Reject

**VCGCB**
Victim Compensation & Government Claims Board

STATE OF CALIFORNIA
EDMUND G. BROWN JR., Governor

GOVERNMENT CLAIMS PROGRAM
400 R Street, 5th Floor ♦ Sacramento, California 95811
Mailing Address: P.O. Box 3035 ♦ Sacramento, California 95812
Toll Free Telephone Number 1-800-955-0045 ♦ Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

MARYBEL BATJER
Secretary
Government Operations Agency
Chairperson
BETTY T. YEE
State Controller
Board Member
MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member
JULIE NAUMAN
Executive Officer

Theon Owens V60905
PO Box 290066
Represa, CA 95671

May 29, 2015

RE: Claim G623624 for Theon Owens, V60905

Dear Theon Owens,

The Victim Compensation and Government Claims Board (Board) rejected your claim at its meeting on May 21, 2015.

If you have questions about this matter, please mention letter reference 123 and claim number G623624 when you call or write your claim technician or analyst at (800) 955-0045 or (916) 491-3700.

cc: Corrections and Rehabilitation

Ltr 123 Claim Rejection

---

### WARNING

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code Section 945.6. You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

---

### DECLARATION OF SERVICE BY U.S. MAIL

Name of Claimant: Theon Owens
VCGCB File no.: G623624

I am employed by the California Victim Compensation and Government Claims Board. I am 18 years of age or older. I am familiar with the business practice at the California Victim Compensation and Government Claims Board for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Victim Compensation and Government Claims Board is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business. On May 29, 2015, I served the attached letter by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Victim Compensation and Government Claims Board, located at 400 R St. Sacramento, CA 95811, addressed as follows:

Theon Owens
PO Box 290066
Represa, CA 95671

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS.       VS. JOSEPH DEFAZIO, ET AL.

CAES No.: 2:16-CV-02750-JAM-KJN.

00.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: DEPARTMENT OPERATIONAL MANUAL. CHAPTER THREE AND FIVE.

Hosted by the California Department Of Corrections And Rehabilitation (CDCR). The exhibit herein Shows the rules, regulations, and policies that the CDCR, and it's employee must adhere to. The exhibit shows that the Plaintiff's rights were violated by Defendant's. The exhibit shows the policies that Defendants' didn't follow when violating Plaintiff's constitutional rights. The exhibit shows that the injuries sustained by Plaintiff in this case, are currently defined by the DOM as "serious Bodily Injury" (see sec. 51020-1). The exhibit shows that Defendants were not suppose   to pull Plaintiff out of the cell under controlled use of force guidelines (see sec. 51020.11) without a lieutenant's presence. The exhibit shows that any employee who uses or observes force being used on an inmate, shall prepare a report (see sec. 51020.17.1) And that employees shall not collaborate with each other in the preparation of reports (see Id.). The exhibit that staff are required to describe in their reports the injuries sustained to the inmate and how these injuries came about (see Id. which did not happen in Plaintiff's case. The exhibit shows that Defendant-OKONKWE was suppose   to

NUMBER OF PAGE'S TO THIS EXHIBIT: 1- 20.    PAGE'S.

Complete and Submit a Crime/Incident staff report (cdcr 837-C) after She heard MY allegations of unnecessary use of force during the reportable incident (see sec. 51020.17.6) which did not happen in MY case.

unavailable to assume this responsibility, an uninvolved Correctional Lieutenant shall do so.

**51020.20.2 Deadly Force Investigation Team Responsibility**

Trained Department investigators assigned to a Deadly Force Investigation Team shall conduct criminal and administrative investigations of every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force. All DFIT criminal investigations will be referred to the local District Attorney for review where MOU's provide for referral.

Based on certain local Memoranda of Understanding, criminal investigations may instead be conducted by an outside police department or sheriff's office. If an outside law enforcement agency is conducting the criminal investigation, the DFIT investigator will monitor the progress of the criminal investigation while providing appropriate support.

Although defined as deadly force, DFIT need not investigate the discharge of a warning shot inside an institution/facility if an ISU Sergeant or above, or an uninvolved Correctional Lieutenant, confirms that the discharge of deadly force was a warning shot and that no injuries were caused by the shot. All warning shots shall be reported to the Office of Internal Affairs/DFIT and the Office of the Inspector General (OIG).

**51020.20.3 Deadly Force Review Board**

The DFRB is the board responsible for conducting a full and complete review of all incidents involving a use of deadly force (except warning shots) and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

The DFRB shall be composed of at least four members. Three shall be non-departmental law enforcement professionals. One (1) shall be a Division, Parole Region, or Institutional/facility manager (i.e. Associate Directors, Division of Juvenile Justice Superintendents, Chiefs or designees) from outside the chain of command of the involved employee(s). Additional members may be designated by the Secretary or designee.

The reports and findings generated from the separate investigative bodies (DFIT and local law enforcement if applicable) will be presented to the DFRB. The DFRB shall be convened as soon as possible after the criminal and administrative investigations are completed.

The DFRB shall examine all aspects of the incident to determine the extent to which the use of force complied with departmental policies and procedures, and to determine the need for policy, training, and/or equipment modifications.

The DFRB shall report its findings and recommendations in writing, to the Undersecretary assigned to oversee the DAI.

**51020.21 External Review of the Use of Force - The Use of Force Coordinator Responsibility**

For purposes of an external review, the Use of Force Coordinator shall identify and retain use of force cases closed by the IERC during the review period. External reviews of closed use of force cases shall be conducted at least every 24 months

**51020.22 Revisions - Use of Force Joint Use Committee (JUC)**

The Use of Force JUC is a committee of field staff tasked with reviewing and evaluating recommended revisions to the CDCR's Use of Force Policy and Procedures.

The JUC shall be comprised of the following field staff:

- At least one Institution Head, as chairperson
- At least one staff member from each DAI, mission based region, at the level of Lieutenant or Captain
- At least one Use of Force Coordinator,
- At least three representatives from the CCPOA, as designated by the CCPOA
- At least one Mental Health Regional Administrator
- The Chief of OIG or designee, and
- Others as needed and assigned by the Deputy Director, DAI.

The JUC shall meet quarterly as necessary, but not less than annually, to review recommended revisions.

**51020.22.1 Revisions Approval**

Any recommendations for revisions to this Article shall be referred to the Use of Force Joint Use Committee. After review and consideration, the Use of Force JUC shall refer revisions to the Director, DAI, for approval, via the Deputy Director.

Only the Director of DAI, or the Director's designee, may issue clarification memoranda to this Article.

**51020.23 Revisions**

The Director, DAI, or designee shall be responsible for ensuring that the contents of this Article are kept current and accurate.

**51020.24 References**

PC § 118.1, 196, 197, 243, 835, 835a, 843.

CCR (15) § 3258, 3268.1, 3268.2, 3275, 3276, 3278, and 3397.

Hudson v. McMillian, 503 U.S. 1 (1992).

Madrid v. Gomez, 889 F.Supp. 1146 (N. D. Cal. 1995).

Remedial Order regarding Madrid v. Gomez, dated June 17, 1996.

Madrid v. Cate (U.S.D.C. N.D. Cal. C90-3094 TEH).

Coleman v. Brown, No. CIV. S-90-520 LKK/DAD (PC) (2014).

## ARTICLE 3 — INCIDENT REPORT

*Effective December 27, 1989*

**51030.1 Policy**

Incidents, events and activities that occur within the jurisdiction of institutions and parole regions of immediate interest to the Department, other governmental agencies or the news media, shall be reported to the Director, the departmental Officer-of-the-Day or the Deputy Director, P&CSD as described in this section.

**51030.2 Purpose**

This procedure defines staff responsibility and provides procedures and criteria for reporting incidents occurring within the Department.

**51030.3 Reportable Incidents**

Examples of incidents which shall be reported:

- All felonies committed by inmates, parolees, employees or the public on institution property, during transportation or under the jurisdiction of parole regions.
- General or partial lockdowns.
- Riots, inmate strikes or general demonstrations.
- Major power failures.
- Serious accidents or injuries.
- Deaths.
- Significant damage or destruction of state property.
- Escapes or attempted escapes, (refer to DOM 55040, Escape Pursuit).
- Any state of emergency as described in CCR 3383.
- Any use or discharge of weapons, chemical agents or tasers.
- Threats against the President or Vice-President of the United States, or threats against state officials.
- Safety grievances (employees).
- Employee job actions.

**51030.4 Incident Reporting Procedures (Institutions)**

All reportable incidents shall be conveyed by telecopier on a CDCR Form 837 series, Administrative Officer-of-the-Day (AOD) Incident Report, to the Director, by the 24-hour-a-day Identification and Warrants (ID) Unit.

The current public and ATSS telephone numbers of the ID Unit shall be included in the telecopier and AOD instruction booklets or memos.

**51030.4.1 Administrative Officer-of-the-Day Incident Report, CDCR Form 837 Series**

The Administrative Officer-of-the-Day Incident Report, CDCR Form 837 series, is the Department's initial written report to Central Office that an incident of departmental interest has occurred. It is essential that all information available at the time of the incident be entered into this report. Any subsequent updating of information relating to the incident should be forwarded to Central Office using the AOD 837 Log Number of that particular incident.

    Initial Report Content

Initial reports by telecopier shall include all pertinent available information. New information significant to the incident shall be telecopied as received.

OWENS 168

Supervisor and Managers. The Use of Force Coordinator shall request any clarification or additional information necessary to complete his/her analysis.

The Use of Force Coordinator shall complete the IERC Use of Force Review & Further Action Recommendation (CDCR 3035), and Institutional Executive Review Committee (IERC) Critique and Qualitative Evaluation (CDCR 3036), documenting his/her findings regarding whether the force used was in compliance with policy, procedure, and training, as well as identifying any recommended revision to policy, procedure, or training.

If a completed incident package has not been received by the Use of Force Coordinator in time to allow for IERC review within 30 days of the incident, the Use of Force Coordinator shall present the initial incident package to the IERC for an initial review. The initial review of the initial incident package is intended to give the IERC an opportunity to conduct a preliminarily review and document obvious procedural concerns. During the initial review, the CDCR 3035 or CDCR 3036 do not need to be completed. Once the completed incident package is received, the CDCR 3035 and CDCR 3036 shall be completed by the Use of Force Coordinator for presentation to the IERC.

In cases involving allegations of excessive or unnecessary force, whether or not the allegation was part of a reported use of force, the Use of Force Coordinator shall prepare an Institutional Executive Review Committee Allegation Review (CDCR 3034), for review by the IERC.

The Use of Force Coordinator shall prepare complete copies of the incident packages to be reviewed by the IERC during the scheduled meeting. The OIG shall be provided reasonable notice and copies of the packages to be reviewed in advance of the meetings.

If the IERC determines additional information or clarification is required, the Use of Force Coordinator will forward a request for this information to the responsible Manager and track the assignment.

The Use of Force Coordinator will maintain a copy of the completed incident package until the information or clarification is received. The Use of Force Coordinator will then complete the analysis and resubmit the case to the IERC.

The Use of Force Coordinator will ensure the IERC findings are documented on the CDCR 3035 and CDCR 3036 following final IERC review of the completed incident package.

After final review by the IERC, any copies of staff disciplinary documents will be removed from the incident package and routed to the appropriate Manager for placement into the appropriate file.

The IERC Chairperson and the Use of Force Coordinator shall review the status of all pending use of force cases following each IERC meeting to evaluate the readiness for final review of the cases.

By the fifth day of each month, the Use of Force Coordinator shall forward a memorandum to the respective Associate Director listing the date of IERC meetings, incident package log numbers, specific crime, and disposition of all incident packages reviewed during the previous month.

**51020.19.5 Institution Executive Review Committee Monitoring Responsibility**

The IERC is a committee of executive staff tasked with reviewing reported use of force incidents and allegations of excessive or unnecessary force. The IERC shall normally be comprised of the following institutional staff:

Institution Head or Chief Deputy Warden, as chairperson and final decision maker,

At least one other manager assigned on a rotational basis,

- In-Service Training Manager,
- One health care staff, and
- A Use of Force Coordinator.

A licensed mental health practitioner shall participate in the IERC for all controlled use of force incidents. A licensed mental health practitioner shall also participate in the IERC for any immediate use of force incidents involving an inmate participant in the Mental Health Services Delivery System.

Other designated supervisors and rank and file staff may also attend, as determined by the appointing authority. A representative of the OIG may also attend and monitor IERC meetings.

The IERC shall meet to review its cases on at least a monthly basis, or on a schedule to ensure all cases are reviewed within 30 days. Unless there are outstanding issues or a corresponding investigation, this review will be both an initial/final review.

The IERC Chairperson shall personally view all video recordings arising from controlled use of force incidents. This viewing can be accomplished either before or during the IERC.

During the IERC, at a minimum, the committee members shall view the portions of the controlled use of force video from the admonishment through the last use of force.

Should an incident or allegation warrant a request for direct action or investigation by the DFIT, the OIA, or any other outside investigating agency, the IERC shall suspend all review of that incident until the investigation is completed. Upon the Hiring Authority determining a finding for the referred allegation(s), the IERC shall apply the findings as part of its own review.

The IERC shall determine if the use of force was reasonable and in compliance with policy, procedures and training. The IERC shall also examine the critique and conclusions of the managers and supervisors, and ensure the appropriateness of completed documentation.

The IERC shall complete an Allegation Review of all allegations of excessive or unnecessary force.

The IERC may initiate requests for additional information or clarification (clarification requests will be routed to the responsible Manager and tracked by the Use of Force Coordinator). The final review will determine whether the use of force was reasonable.

The IERC may recommend changes to procedure or training. The IERC is also responsible for identifying possible employee misconduct and recommending the initiation of training, corrective action or disciplinary action in such cases. However, only IERC members in supervisory or management roles (including the Use of Force Coordinator) and the OIG may participate in discussions involving the initiation of corrective or disciplinary action.

The hiring authority may initiate changes to local procedure or training based on the findings or recommendations of the IERC, or forward a recommendation of change to the IERC policy or procedure via the Associate Director. The Institution Head may also initiate corrective or adverse employee action based upon the findings or recommendations of the IERC.

**51020.19.6 Department Executive Review Committee Monitoring Responsibility**

The Department Executive Review Committee is a committee of staff selected by, and including, the Associate Director who oversees the respective Mission-based group. The DERC shall review all incidents involving deadly force, serious injury, great bodily injury, or death. The DERC shall also review those incidents referred to the DERC by the IERC Chairperson or otherwise requested by the DERC.

The DERC shall conduct a review of the incident and document its findings on the DERC Use of Force Review form. The DERC shall also review the actions of the IERC and in the event the DERC has questions or concerns with actions taken by the IERC, the DERC shall take appropriate action.

The Director of DAI may choose to provide final review for any incident reviewed by the DERC.

**51020.20 Investigating Deadly Force and Any Use of Force That Could Have Caused Death or Great Bodily Injury**

Every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force shall be investigated by the DFIT and reviewed by the DFRB.

**51020.20.1 Investigative Services Unit (ISU) Monitoring the Use of Deadly Force**

For incidents occurring in an institutional setting, involving the use of deadly force and any use of force resulting in death or GBI, the ISU shall take preliminary charge of the investigation and will remain in charge of the investigation while contacting the DFIT to inform them of the incident.

For incidents occurring in a community setting, local law enforcement and the DFIT shall take preliminary charge of the investigation.

For every discharge of deadly force from a firearm, an ISU Sergeant or above shall be tasked with making the prompt determination of whether the deadly force was a warning shot and whether anyone suffered any injuries as a result of the deadly force. The ISU shall verbally notify the DFIT of its determination as soon as possible and shall confirm its determination, along with the reasons in support of it, in a written memorandum to be forwarded to the DFIT. If the ISU is

**OWENS 167**

investigation information, such as case findings, disciplinary action, and legal action.

Users include OIA Central Intake staff, OIA staff, Vertical Advocates, BIR, Hiring Authorities, ERO/Disciplinary Officers, and designated local Internal Affairs investigators. The OIA may, at its discretion, grant CMS access to other Department staff having significant roles in the employee disciplinary process. For purposes of security and investigative integrity, the OIA shall also have the sole authority to grant or remove access to the CMS for any CDCR employee.

The OIA shall create and maintain a user manual for the CMS that shall provide detailed operating procedures for OIA employees and other authorized CMS users.

- **New Cases**

 As investigative requests are evaluated by the CIU, the request/case shall be opened in CMS and key information, such as allegation, case type, and initial case decisions shall be recorded in CMS. If an investigation is opened, case assignment information shall be entered in CMS.

- **Ongoing Cases**

 Investigators. and authorized users shall use CMS to record case activity, monitor case progress, and provide a real-time record of decisions. Other authorized users may use CMS to monitor case activity or record pertinent actions, activities, and decisions.

- **Closing Cases**

 Investigators, Vertical Advocates, and Hiring Authorities shall refer to and comply with DOM, Section 3, Article 22 regarding investigative review and case closure.

### 31140.20    Criminal Investigations

A criminal investigation should be conducted for an allegation of employee misconduct when there is reason to believe the employee has committed a violation of criminal law and an outside law enforcement agency is not conducting an investigation. The CIU shall identify and document the potential criminal violation and the facts and evidence represented in support of the complaint. The CIU shall refer the case to a SAC for the respective region who will assign the criminal investigation to a Senior Special Agent for supervision.

Upon case initiation, the Senior Special Agent or the Special Agent shall confer with the Vertical Advocate, for designated cases, and the SAIG for cases monitored by the BIR. Upon completion of the investigation, if probable cause exists to believe that a crime has been committed, the investigation shall be referred to the appropriate agency for prosecution.

Criminal investigations shall be conducted in compliance with all laws, regulations, and departmental policies.

### 31140.21    Administrative Investigations

An administrative investigation shall be conducted into allegations of staff misconduct that are violations of policy, procedure, or law. Administrative investigations may be conducted concurrently or subsequent to a criminal investigation. The determination of whether to conduct the administrative investigation concurrently with the criminal investigation shall be made by the Senior Special Agent in consultation with the Vertical Advocate and BIR in conjunction with the prosecuting agency. In addition, the prosecuting agency shall be consulted prior to any compelled subject interview when criminal charges or court proceedings are pending. If the prosecuting agency requests the Internal Affairs investigation be delayed pending criminal prosecution, that request shall be documented in the case file and in CMS. An administrative investigation, adverse action, or both, shall not be delayed unless it clearly would jeopardize the criminal prosecution.

In an administrative investigation, an employee does not have a right to refuse to answer questions likely to lead to the discovery of relevant evidence as determined by the investigating entity. When the employee is compelled to answer these questions, the answers cannot be used against the employee in a criminal or state court civil proceeding subject to certain exceptions. In an administrative investigation of a peace officer involving possible criminal conduct, the peace officer shall be advised of his/her constitutional rights before questioning, followed by the "Lybarger warning" if he/she refuses to answer the questions on the grounds the answer may be self-incriminating. [Refer to Government Code Section 3303 (f) and (h).]

### 31140.22    Retaliation Investigations

OIA is responsible for investigating retaliation as defined under the California Whistleblower Protection Act and other California retaliation protective statutes, except for retaliation associated with EEO complaints and processes which fall under the responsibility of the OCR. EEO related retaliation complaints that are received by OIA shall normally be forwarded to OCR for review and consideration.

Upon receipt, the OIA CIU shall conduct a review and analysis of all non-EEO related retaliation complaints. Each complaint shall be evaluated on its merits to determine if a prima facie case of retaliation can be established.

In order for a complaint or referral for investigation to establish a prima facie case of retaliation and be accepted by OIA, the following must be established:

- That an employee directly or indirectly used or attempted to use official authority or influence for the purposes of intimidating, threatening, coercing, commanding, or attempting to intimidate, threaten, coerce, or command for the purpose of interfering with the reporting of an improper governmental activity or making a protected disclosure; **or**

- That the employee: a) made a disclosure to a manager or supervisor of what is believed to be an improper governmental activity; b) was or is cooperating in an investigation of improper governmental activity; or c) refused to obey an illegal order or directive; **and**

- The alleged retaliator was aware of the protected activity, protected disclosures, or failure to obey an illegal order; **and**

- The employee subsequently suffered reprisal, retaliation, threats, coercion, intimidation, or similar acts; **and**

- There was a causal connection between the protected disclosure, protected activity, or refusal to obey an illegal order and the adverse acts.

### 31140.23    Workers Compensation Fraud Investigations

The OIA is responsible for investigating Workers' Compensation fraud. Penal Code Section 550 and Insurance Code Section 1871.4 define the law relating to Workers' Compensation insurance fraud.

It is a felony to present a false or fraudulent claim to receive Workers' Compensation benefits. Fraud can occur at any time during the life of a Workers' Compensation claim, from the initial filing of the claim, to false statements to the employer, doctor, medical care personnel, physical therapist, claim representative, or anyone else involved in the administration of the claim and the determination of available benefits. Fraud can occur even if the initial injury was legitimate and the filing of the claim was warranted if the employee later makes a material false statement or misrepresentation.

### 31140.24    Deadly Force Investigations

The OIA investigates all reported use of deadly force incidents resulting in injury and all reported uses of nondeadly force resulting in death or fatal injury. These deadly force incidents do not generally include inmate assault/battery on staff or warning shots in an institution/facility setting. The OIA shall deploy separate Deadly Force Investigation Teams (DFIT) to conduct criminal and administrative investigations as soon as is reasonably practical after receiving a report of such an incident.

- **DFIT–Criminal Team**

 The DFIT–Criminal Team conducts deadly force criminal investigations either independently or in conjunction with appropriate local law enforcement agencies or district attorney's office. In some cases and locations, the criminal investigation will be conducted by the local law enforcement agency in accordance with MOU's between the Department and the local law enforcement agency. In these cases, the DFIT–Criminal Team will monitor the progress of local law enforcement and assist when appropriate.

- **DFIT–Administrative Team**

 The DFIT–Administrative Team conducts deadly force administrative investigations as required to determine whether the use of force complied with department policies and procedures and to identify any need for policy, procedure, training and/or equipment modifications. The DFIT–Administrative Team refers and presents the completed investigation to the Deadly Force Review Board for disposition.

The OIA shall also refer to CCR Section 3268.1 for additional guidance and requirements governing deadly force investigations.

### 31140.25    Employee Representation Rights

Employees are entitled to representation during investigative interviews consistent with MOU's, Public Safety Officers Procedural Bill of Rights Act, and other State and federal laws. A personal advisor, attorney, or another state employee designated by the subject or witness may attend any interview that may lead to adverse action. Employees who are possible subjects or witnesses in the investigation are excluded as employee representatives.

OWENS 153

**31140.26     Temporary Authorization (TAU) Appointments**

Employees with a temporary authorization (TAU) appointment status are not entitled to have a representative present during an interview which is preparatory to a separation from the TAU appointment. However, if a proposed action against an employee in this status is attributable to a specific incident that would have resulted in an adverse action, investigatory interviews shall be handled like adverse action cases and employee representation shall be allowed as prescribed by law.

**31140.27     State Time**

Use of State time for investigative matters shall be approved by the employee's supervisor. Absent an emergency, employees may request and shall be allowed reasonable State time by the supervisor to contact/secure a representative and to discuss the matter prior to any meeting/interview that may lead to adverse action. The employee shall also be allowed reasonable State time to prepare for the interview/meeting with the representative.

**31140.28     Statute of Limitations**

Government Code Section 3304(d) and (g) for public safety officers and Government Code Section 19635 for nonpublic safety employees shall be adhered to regarding statute of limitations for administrative investigations.

**31140.29     Memoranda of Understanding**

In addition to complying with the provisions of law and regulation, OIA staff shall also adhere to conditions detailed in the various bargaining unit MOU's. All investigators shall be familiar with the employee investigation requirements of these agreements and their application to the investigation process.

**31140.30     Investigator's Field Guide**

Internal Affairs investigations shall be conducted with due diligence and completed in a timely manner in accordance with the law, applicable MOU's, and the OIA's Investigator's Field Guide.

**31140.31     Subject Interviews**

All departmental employees under investigation and subject to interview by an investigator shall be informed of the following before such interview: (1) Name and classification of the investigator; (2) Name and classification of all other persons to be present during the interview; and (3) The nature of the investigation in sufficient detail to allow the employee to respond to the allegations.

**31140.32     Witness Interviews**

If during a witness interview, facts are discovered that indicate the witness may have committed misconduct, the OIA investigator shall immediately discontinue the interview, even if the facts/admissions are not related to the incident being investigated. The OIA investigator shall reschedule the interview applying all employee procedural safeguards related to a subject of investigation/inquiry.

**31140.33     Recording Interviews During an Investigation**

During OIA investigations, all noticed employee interviews concerning matters that could lead to an adverse action shall be audiotape-recorded.

Any audiotape recording of a noticed investigatory interview shall be as follows:

1. Made openly and with the full knowledge of the employee being interviewed;

2. Completely documented as part of the final report; and

3. Retained for later transcription, if needed.

An employee being interviewed as the subject of an investigation may audiotape-record any portion of the interview and have access to the Department's audiotape recordings if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. If a subject audiotape-records the interview, he/she may retain possession of his/her audiotape upon the conclusion of the interview.

An employee being interviewed as a witness of an investigation may audiotape-record the interview, but may not retain the original or a copy of the audiotape recording. Digital recorders shall not be allowed in witness interviews, unless the employee agrees to relinquish possession of the recorder at the end of the interview. The employee shall have access to the audiotape recordings made by the Department and the employee before any subsequent interview.

All audiotape recordings shall be retained with the original investigative/inquiry report. Audio recordings are part of the investigative/inquiry report and are confidential.

This Section does not apply to surreptitious recordings conducted during a criminal investigation.

**31140.34     Criminal Investigations - Witness Assertion of Fifth Amendment Privilege Against Self-Incrimination**

A witness in a criminal investigation has the right to assert his/her Fifth Amendment privilege against self-incrimination when: (1) He/she has reasonable grounds to believe that his/her testimony may be used against him/her in the criminal matter under investigation or in a future criminal proceeding; or (2) That his/her testimony might uncover other evidence against him/her in a criminal matter.

Witnesses cannot assert the Fifth Amendment privilege against self-incrimination solely to protect others from possible criminal prosecution or solely to avoid providing information to investigators.

**31140.35     Administrative Immunity from Disciplinary Action**

Requests to confer administrative immunity during an investigation must be processed in accordance with the CDCR's Policy on Immunity during Internal Affairs Investigations. The policy may be obtained by contacting the OIA.

**31140.36     Criminal Misconduct Discovered During an Investigation/Inquiry**

If an investigation or allegation inquiry reveals a possible violation of criminal law, the OIA investigator shall present the facts of the case to the Regional SAC.

- The SAC shall coordinate with the CIU so that the additional allegation can be presented to the CIP. If urgent circumstances exist that require immediate investigative response, the SAC should initiate such action and advise the CIU subsequently.

- If approved by the CIP, a criminal investigation by OIA shall be conducted, and the case presented to the local prosecuting agency for possible prosecution if there is probable cause to believe a crime has been committed.

- When criminal prosecution is possible, the designated Special Agent should consult with the prosecuting authorities before interviewing the involved employees.

- If, in a criminal case, the prosecuting agency declines to prosecute, this fact and the reason for the decision not to prosecute shall be documented in the CMS by the assigned investigator.

**31140.37     Administrative Misconduct Discovered During an Investigation/Inquiry**

If an investigation/inquiry of alleged employee misconduct reveals possible additional misconduct, the OIA investigator shall present the facts of the case to the SAC. The SAC shall promptly notify the Hiring Authority and consult with the Vertical Advocate to determine if the additional allegations should be included with the existing investigation/inquiry or presented to the CIP. After consultation with the SAC, additional allegations shall be added if appropriate and the investigation of the additional allegations shall be conducted by OIA.

**31140.38     Confidentiality of Investigations**

All investigative records of the OIA are confidential. OIA investigators, locally designated investigators, OIA support staff, and others involved in an investigation/inquiry shall not discuss with others, except Department legal counsel and the OIG, any aspect of any investigation/inquiry record without approval of OIA.

All other Department staff not mentioned above involved in an investigation/inquiry, including witnesses and administrators, shall not discuss any aspect of any investigation without approval of OIA excepting discussions with their employee representative and legal counsel.

**31140.39     Correspondence Relating to Any Internal Affairs Investigation**

All correspondence related to any Internal Affairs investigation shall be clearly marked "CONFIDENTIAL." Correspondence includes, but is not limited to, reports, evidence, recordings, photographs, documents, or investigative material concerning any Internal Affairs investigation. When sending correspondence through the United States Postal Service, departmental mail, United Parcel Service, or other courier service, such material shall be sealed in a manner designed to prevent or reduce unauthorized access.

**31140.40     Investigative Report**

All reports shall be submitted in the standard format provided by the OIA beginning with a statement of the allegation or complaint, shall provide all relevant facts, and shall include the investigator's signature. The report shall address material contradictions, but shall not include any conclusions regarding disposition of the investigation.

OWENS 154

## 31140.41    Distribution of Investigations

Upon completion of each Internal Affairs investigation, the investigator shall forward the investigative report, all supporting documents, investigative notes, and case file documents to the SAC; the Vertical Advocate for designated cases; and the SAIG for cases monitored by the BIR. For designated cases and cases monitored by the BIR, the forwarding and distribution of copies shall be undertaken consistent with DOM, Section 3, Article 22. The investigator shall store his/her investigative report in CMS.

For all other cases, upon approval of the completed investigation, the Regional SAC shall forward a complete copy, including a copy of all exhibits, investigative notes, and case file documents to the Hiring Authority who requested the investigation. In the event that the requesting Hiring Authority became a witness or a subject of the completed investigation, the investigative report and supporting documentation shall be forwarded to the Hiring Authority's immediate supervisor.

Upon completion of any additional investigation that may be requested by the Hiring Authority, Vertical Advocate for designated cases, or the SAIG for cases monitored by the BIR, the Regional SAC should forward a letter to the subject of the investigation advising the subject that the investigation has been referred to the Hiring Authority. The Hiring Authority shall review the investigation package, determine the investigative findings, and initiate disciplinary action, if necessary, consistent with DOM, Section 3, Article 22.

A complete copy of the investigation and case file shall be maintained by the OIA.

## 31140.42    Maintenance of Investigation/Inquiry Records, Files, and Complaints

All reports, documents, evidence, and other materials or information relative to any investigation shall be processed and stored in a manner precluding unauthorized access or disclosure (refer to Penal Code Sections 832.7 and 832.8, and Evidence Code Sections 1043 and 1046).

The Hiring Authority shall ensure the proper maintenance and security of investigation/inquiry records and files pursuant to Penal Code Sections 832.5 and 832.7.

## 31140.43    Purging Investigation/Inquiry Records

Investigation records shall be purged and destroyed as provided in the Records Retention Schedule. Purging may be postponed if litigation or potential litigation is pending, or if there are other justifiable reasons. The OIA shall forward a request, by memorandum, regarding approval/disapproval to purge investigative records to the Hiring Authority of each employee investigation and to the OLA. The Hiring Authority and OLA shall review current litigation with appropriate staff before authorizing, in writing, the purging of these records.

## 31140.44    Revisions

The Assistant Secretary, OIA, or designee shall be responsible for ensuring that the contents of this Article are kept current and accurate.

## 31140.45    References

GC §§ 3303(f) and (h), 3304(d) and (g), 8547, 11182, 19635.

PC §§ 550, 832.5, 832.5(b), 832.7 and 832.8, 6065(b)(1), 6065(b)(2), 6126.1, 6126.1(c).

EC §§ 1043 and 1046.

IC § 1871.4.

CCR (15) § 3268.1and 3291(b).

Madrid v. Tilton, (USDC, No C90-3094 TEH) December 2006.

Fifth Amendment.

Public Safety Officers Procedural Bill of Rights Act.

California Whistleblower Protection Act.

### ARTICLE 15 — RELEASE OF PAYROLL WARRANTS

*Revised September 3, 2013*

## 31155.1    Policy

It is the policy of the Department that all employees receive a payroll warrant each payday. For all fulltime and fractional timebase employees, payday is the last working day of each pay period (Master Payroll). For intermittent/hourly employees, payday is no later than the 15th day of the following month. These dates may be affected by any late payroll adjustments (e.g., late dock).

State Administrative Manual (SAM) 8580.2 states that when a pay period ends on a normal workday (Monday through Friday), departments may

release salary warrants anytime on that day after the employee has completed the work for the pay period. When the pay period ends on a Saturday, Sunday, or a holiday, departments may release salary warrants anytime on the last preceding normal workday (Monday through Friday) provided the employee has completed the work for the pay period. If employees are going to deposit or cash their warrants prior to the issue date, they should be cautioned to do so just before bank closing time, or 4:00 p.m., on those days when the banks are open until 6:00 p.m.

Generally, Master Payroll warrants are not to be released until the completion of work on payday or before 3:00 p.m. on payday, whichever is earlier. Payroll warrants released earlier, or at 3:00 p.m., shall not be deposited or cashed before 4:00 p.m.

In the event of staff use of informal administrative time off as granted by the Governor, payroll warrants shall not be released earlier than 12:00 noon of the last working day in December.

SAM provides for salary advances only when errors or delays in submitting or processing documents make it impossible for the State Controller's Office (SCO) to prepare and deliver proper payroll warrants within a reasonable amount of time. The Memorandum of Understanding (MOU) limit the number of annual salary advances, and identify the time frame in which late dock salary advances shall be issued.

## 31155.2    Purpose

This Article sets forth the procedures for the early release of payroll warrants and the release of payroll warrants after normal work hours, and addresses late dock salary advances.

## 31155.3    Direct Deposit

Employees may avoid this process by signing up for Direct Deposit (DD) of their payroll warrants. It is strongly urged that employees make arrangements for DD of their payroll warrants. STD Form 699, Direct Deposit Enrollment Authorization, may be obtained from the Personnel Office. The bank routing number from the financial institution will be necessary: It will take approximately 30 to 45 days from the time the SCO receives the STD Form 699 to credit the employee's payroll warrant to the designated bank account.

## 31155.4    Early Release of Payroll Warrant

Payroll warrants may be approved for early release, but no earlier than one day prior to the normal payday. Early release of the Master Payroll warrants may be allowed for the following reasons:

- Employees are required to travel on State business on payday.
- Employees are called away on personal emergencies or for unforeseen urgent matters on payday.

### Acceptable Reasons

Examples of personal emergencies or unforeseen urgent matters include, but are not limited to, the following:

- Death in the immediate family.
- Medical emergency or sudden illness in the family.
- Acts of vandalism which have caused significant damage to a vehicle which requires immediate repair.
- Emergency home repairs due to unforeseen events such as fire, flooding, storm damage, theft, or vandalism.

Good judgment should be used in requesting and approving early release of payroll warrants.

## 31155.4.1    Responsibilities of an Employee Requesting an Early Release of a Payroll Warrant

To request an early release of a payroll warrant, an employee shall complete a CDCR Form 1816, Request for Early Release of Payroll Warrant, and include:

- The need for an early release of a payroll warrant with sufficient explanation of the circumstances, i.e., away from the work place on payday due to State business travel, personal emergency, or unforeseen urgent matter and not on leave status.
- Employee's signature stating the payroll warrant will not be deposited or cashed before 4:00 p.m. on the official payday.

Early release of payroll warrants shall not be approved if the employee is:

- Utilizing leave credits for other than personal emergency or unforeseen urgent matters on payday.
- On extended sick leave.

Employees in these situations have the following options:

OWENS 155

## CHAPTER 5 — ADULT CUSTODY AND SECURITY

### OPERATIONS

#### ARTICLE 1 — PEACE OFFICER AUTHORITY

*Revised February 29, 2009*

**51010.1     Policy**

It is the policy of the California Department of Corrections and Rehabilitation (CDCR) to ensure that CDCR peace officer authority comports with applicable State statutes, regulation and mutual aid agreements.

**51010.2     Purpose**

The purpose of this Article is to clarify CDCR peace officer authority as it relates to inmates, parolees, and California law enforcement requests for assistance.

**51010.3     Peace Officer Authority**

CDCR peace officer authority is outlined in Penal Code (PC) Sections 830.2(d)(1) & (2) and PC 830.5. While normal CDCR peace officer authority applies generally to custody of inmates either inside or outside of a CDCR facility (e.g. escape pursuit and transportation/hospital custody, etc.) and parolees, appropriately trained and equipped CDCR peace officers can be authorized to act outside of normal duties during emergency and non-emergency situations as specified by law.

A CDCR peace officer has authority that extends to any place in the State while engaged in the performance of the duties of his/her respective employment and for the purposes of carrying out the primary function of his/her employment or as required under Sections 8597, 8598, and 8617 of the Government Code (GC).

**51010.4     Emergency Assistance**

When a government agency (city, county, state, federal) makes an emergency mutual aid request that meets the criteria contained in the State Mutual Aid Plan or the Law Enforcement Mutual Aid Plan, response protocol provided in these plans shall be followed.

GC Section 8597 authorizes that when the appropriate state official proclaims a state of emergency or when a state of war emergency exists, PC Section 830.5 CDCR peace officers have full powers and authority as outlined in PC Section 830.1. Criteria for activation of these plans include, but are not limited to, disasters which may result from flood, fire, earthquake, war, sabotage, or riots.

GC Section 8598 authorizes that when a local emergency exists, PC Section 830.5 peace officers have full powers and authority as outlined in PC Section 830.1.

When acting as peace officers under PC Section 830.1, CDCR peace officers are authorized to exercise any powers which are appropriate or which may be directed by their superior officers.

**51010.5     Non-Emergency Assistance (General Law Enforcement Assistance)**

GC Section 8617 provides that the CDCR may exercise non-emergency mutual aid powers in accordance with the Master Mutual Aid Agreement and local ordinances, resolutions, agreements, or plans.

**51010.6     Provision of Assistance in Emergency and Non-Emergency Situations**

CDCR hiring authorities (e.g. Wardens, Regional Parole Administrators) are authorized to provide CDCR peace officer assistance to law enforcement agencies in emergency and non-emergency situations as consistent with the authority discussed herein. Hiring authorities will notify their supervisors of provision of assistance (e.g. Wardens will notify their Associate Directors). Specially trained and equipped peace officers include, but are not limited to, Crisis Response Team members and Emergency Operations Unit personnel conducting tactical and negotiation operations, and Investigative Services Unit members conducting investigative operations, and should be deployed as appropriate for the particular circumstances.

When CDCR peace officers are assigned to provide emergency or non-emergency law enforcement assistance, these tasks become the primary function of their employment for the duration of the assignment. Unless other agreements have been made, all costs associated with this assistance are the responsibility of the CDCR.

**51010.7     Revisions**

The Assistant Secretary, Office of Correctional Safety, shall ensure that the content of this Article is current and accurate.

**51010.8     References**

PC §§ 830.1, 830.2(d)(1) & (2).
GC §§ 8597, 8598, & 8617.

#### ARTICLE 2 — USE OF FORCE

*Revised October 30, 2014*

**51020.1     Policy**

It is the policy of the California Department of Corrections and Rehabilitation's (CDCR), Division of Adult Institutions (DAI), to accomplish custodial and correctional functions with minimal reliance on the use of force. Employees may use reasonable force as required in the performance of their duties, but shall not use unnecessary or excessive force. Staff may, at any point, determine the situation can be resolved without the use of force and terminate the use of force process.

This policy, in conjunction with related procedures and training, defines staff responsibilities and requirements concerning the use of force.

This policy will assist staff in identifying when and how much force is appropriate under different circumstances, ensure that supervision, monitoring, and evaluation of the use of force is consistent with procedures and training, and ensure the investigation of possible unnecessary or excessive use of force. Staff found culpable of violations of the Use of Force Policy will be subject to disciplinary (preventive, corrective, or adverse action) procedures.

**51020.2     Purpose**

The purpose of this Article is to outline DAI's procedures pertaining to the use of force, as set forth in CCR, Title 15, Section 3268.

**51020.3     Responsibility**

It is the responsibility of all employees to understand and comply with the Use of Force policy, related procedures, ongoing training, and applicable law.

It is the responsibility of each Institution Head:

- To ensure that all employees receive appropriate training annually and understand the Use of Force policy and procedures, including both the application of force and subsequent reporting and documentation requirements.

- To record and track all training and discipline related to the use of force.

**51020.4     Definitions**

The following shall define language usage in this Article:

**Reasonable Force**

Reasonable force is the force that an objective, trained, and competent correctional employee faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order.

**Unnecessary Force**

Unnecessary force is the use of force when none is required or appropriate.

**Excessive Force**

Excessive force is the use of more force than is objectively reasonable to accomplish a lawful purpose.

**Immediate Use of Force**

Immediate use of force is the force used to respond without delay to a situation or circumstance that constitutes an imminent threat to security or the safety of persons. Employees may use immediate force without prior authorization from a higher official.

**Imminent Threat**

An imminent threat is any situation or circumstance that jeopardizes the safety of persons or compromises the security of the institution, requiring immediate action to stop the threat. Some examples include, but are not limited to: an attempt to escape, on-going physical harm or active physical resistance.

**Controlled Use of Force**

A controlled use of force is the force used in an institution/facility setting, when an inmate's presence or conduct poses a threat to safety or security and the inmate is located in an area that can be controlled or isolated. These situations do not normally involve the immediate threat to loss of life or immediate threat to institution security. All controlled use of force situations requires the authorization and the presence of a First or Second Level Manager during business hours. During non-business hours, the on-site manager shall be the Administrative

323

OWENS 156

• Martin Chein

The following restraints may be used as specified below:

• Safety Triangle: This device is a handcuff retention device, used to prevent inmates from pulling restraint equipment into their cell and may be used at the discretion of on duty staff. Some reasons for using the safety triangle include, but are not limited to: rehousing an inmate who has threatened violence or an inmate who was just involved in a use of force incident. The safety triangle may remain attached to the handcuffs if the inmate is being relocated in the housing unit and if attaching and detaching the safety triangle to and from the handcuffs presents a safety concern. The safety triangle is not intended to control the inmate outside of the cell. Therefore controlling the safety triangle must be vigilant and efforts should be directed to prevent the inmate from pulling their hands inside the cell while the door is being closed.

• In the event that an inmate who is attached to a triangle refuses to place their hands in the food/security port to allow the handcuffs to be removed, it may be necessary to pull the safety triangle to retrieve the handcuffs. When it is necessary to pull the safety triangle, a single staff member shall slowly move away from the door while holding onto the safety triangle, in order to bring the inmate's hands through the port. This will be conducted with extreme caution in order to minimize the risk of injury to the inmate. Additional staff may be needed to assist with the safety triangle in the event that the one staff member is insufficient to get the inmate's hands through the food port. Once the inmate's hands, wrists, and forearms are through the port, staff will grasp the inmate's forearms, the tension on the safety triangle shall be released, and the handcuffs removed.

Prior to using a safety triangle on an inmate confirmed or suspected by health care staff to be pregnant, a physician must be consulted and any potential risks fully discussed.

The final decision to place the device on the pregnant inmate will rest with the Warden or Chief Deputy Warden (CDW) and the reviewing physician. The consultation and its outcome must be documented for inclusion in the inmate's health record and central file.

• Leather Restraints: Leather restraints are used for four/five point restraint in a Correctional Treatment Center, General Acute Care Hospital, or community hospital. Authorization for application of four/five point restraints shall only be given by health care staff in accordance with California Code of Regulations, Title 22, Section 79801 Clinical Restraint, Treatment Restraint, and Clinical Seclusion, and the Mental Health Program Services Delivery System Program Guide, Chapter 10, Suicide Prevention and Response. Use of restraint equipment at the direction of medical staff shall be fully documented in the inmate's health record.

• Hand Isolation Devices (HID): These devices (e.g., hand mittens, etc.) are used as an additional measure to restrict an inmate's ability to use his/her hands. HIDs may only be purchased from an approved vendor and used at an institution when authorized, in writing, by the Warden or CDW. Inmates in HIDs must have constant and direct visual supervision at all times. In instances where HIDs are used for Contraband Surveillance Watch (CSW), staff must maintain a log (CDCR Form 114A) which reflects usage times and correlating actions (e.g., 1200 hrs. - One HID was removed so the inmate could eat lunch). Prior to placing a HID on an inmate confirmed, or suspected by health care staff to be pregnant, a physician must be consulted and any potential risks fully discussed. The final decision to place the device on the pregnant inmate will rest with the Warden or CDW and the reviewing physician. The consultation and its outcome must be documented for inclusion in the inmate's health care record and central file. Equipment Hygiene - HIDs must be cleaned and sanitized on an ongoing basis (e.g., if soiled after a bowel movement, after termination of the CSW, etc.).

Mechanical restraint equipment shall not be used in any manner described in CCR, Title 15, Section 3268.2(c), Use of Restraints. The use of restraint equipment not identified in this section must be preapproved at the level of Associate Director or higher. As part of the mechanical restraint maintenance process, restraints should be routinely cleaned and sanitized to adhere to an acceptable equipment hygiene standard.

Inmates who have a disability that prevents standard search methods or application of restraint equipment in the prescribed manner shall be afforded reasonable accommodation under the direction of the Response Supervisor. Mechanical restraints shall be applied to ensure effective application while reasonably accommodating the inmate's disability.

### 51020.7     Deadly Force

The CDCR recognizes the sanctity of human life. Therefore, deadly force will only be used when it is reasonably necessary to:

• Defend the employee or other persons from an immediate threat of death or great bodily injury.

• Prevent an escape from custody.

• Stop acts such as riots or arson that constitute an immediate jeopardy to institutional security and, because of the magnitude, are likely to result in escapes, great bodily injury, or the death of other persons.

• Additionally, CDCR operates facilities that maintain livestock or are situated in remote areas. CDCR recognizes the need to dispose of seriously injured or dangerous animals when no other disposition is practical.

• A firearm shall not be discharged if there is a reason to believe that persons other than the intended target will be injured.

### 51020.7.1     Warning Shots

A warning shot discharged from a lethal weapon is deadly force. Firearms may be discharged as a warning only in the safe area of an institutional/facility setting, and only when the use of deadly force is warranted.

### 51020.8     Non-deadly Force

Non-deadly force will only be used when reasonably necessary to:

• Subdue an attacker.

• Overcome resistance.

• Effect custody, or to

• Gain compliance with a lawful order.

Immediate force may be necessary to subdue an attacker, overcome resistance or effect custody.

If it is necessary to use force solely to gain compliance with a lawful order, controlled force shall be used.

### 51020.9     Medical Evaluation

When force is used, a medical evaluation shall be provided as soon as practical.

### 51020.10     Application of Force

Employees may use force in circumstances that require immediate action in response to an imminent threat, or in circumstances that require a controlled use of force. Any application of force, whether immediate or controlled, must be reasonable and in accord with the applicable standards for deadly or non-deadly force.

### 51020.11     Immediate Use of Force

When time and circumstances do not permit advanced planning, staffing and organization, and an imminent threat exists to security or safety of persons, immediate force may be used.

If time and resources allow, an immediate use of force should be video recorded. If an immediate use of force is recorded, the recording shall be submitted into evidence.

If an immediate use of force is captured on security cameras (i.e. yard or visiting cameras), those recordings shall be placed into evidence.

### 51020.11.1     Immediate Use of Force in Cells

When immediate force is necessary due to an imminent threat, for inmates confined in their cells, Oleoresin Capsicum (OC) is the preferred option for carrying out the immediate use of force. Whenever possible, a verbal warning shall be given before force is used.

### 51020.11.2     In-Cell Assaults

Unit staff discovering an in-cell assault shall sound an alarm and order the inmates to stop fighting. If the inmates continue to fight or once inmate continues to assault the other, staff are authorized to use chemical agents to stop the incident.

The cell door should not be opened until sufficient staff is present to evaluate the situation. At least two officers shall be present, prior to the door being opened.

The on-scene staff may use their discretion to order the opening of the cell without both inmates restrained in handcuffs. This discretion would apply in the event of incapacitating injuries, illness, or overriding security concerns.

Should the use of chemical agents fail to stop the incident, the supervisor shall order the assembly of a controlled use of force team and immediate physical force

OWENS 158

Officer of the Day (AOD) who is responsible for the authorization of any controlled use of force and whose presence is required during any controlled use of force. Staff shall make every effort to identify disabilities, to include mental health issues, and note any accommodations that may need to be considered.

#### Non-conventional Force

Non-conventional Force is force that utilizes techniques or instruments that are not specifically authorized in policy, procedures, or training. Depending on the circumstances, non-conventional force can be necessary and reasonable; it can also be unnecessary or excessive.

#### Non-deadly Force

Non-deadly force is any use of force that is not likely to result in death.

#### Deadly Force

Deadly force is any use of force that is likely to result in death. Any discharge of a firearm other than the lawful discharge during weapons qualifications, firearms training, or other legal recreational use of a firearm, is deadly force.

#### Great Bodily Injury (GBI)

Great bodily injury is any bodily injury that creates a substantial risk of death.

#### Serious Bodily Injury

Serious bodily injury means a serious impairment of physical condition, including, but not limited to the following:

- Loss of consciousness;
- Concussion;
- Bone fracture;
- Protracted loss or impairment of function of any bodily member or organ;
- A wound requiring suturing, or
- Disfigurement.

#### Response Supervisor

The Response Supervisor is the first line supervisor in an institution/facility responsible for the area where an incident occurs.

#### Incident Commander (IC)

The Incident Commander is the second line supervisor in an institution/facility responsible for the area where an incident occurs or an allegation of excessive or unnecessary force is received.

#### First Level Manager

A First Level Manager in an institution/facility is a Captain, or the AOD.

#### Second Level Manager

A Second Level Manager in an institution/facility is an Associate Warden.

#### Institution Head

The Institution Head is a Warden or designee.

#### Institutional Executive Review Committee (IERC)

The IERC is a committee of institution staff chaired by the respective Institution Head tasked with reviewing all uses of force and every allegation of excessive or unnecessary force. The IERC is the final institutional level of review.

#### Department Executive Review Committee (DERC)

The DERC is a committee of staff selected by, and including, the Associate Director who oversees the respective institution/facility Mission-based group. The DERC has oversight responsibility and final review authority over the IERC. The DERC shall review every use of deadly force and every serious injury, great bodily injury or death that could have been caused by a staff use of force. The DERC shall also review those incidents referred to the DERC by the IERC Chairperson or otherwise requested by the DERC.

#### Deadly Force Investigation Teams (DFIT)

DFIT is a team of trained department investigators that shall conducts criminal and administrative investigations into every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force, except the lawful discharge of a firearm during weapons qualifications or firearms training, or other legal recreational uses of a firearm. Based on certain local Memoranda of Understanding, criminal investigations may instead be conducted by an outside police department or sheriff's office. Although defined as deadly force DFIT need not investigate the discharge of a warning shot inside an institution/facility if an Investigative Services Unit Sergeant or above, or an uninvolved Correctional Lieutenant, confirms that the discharge of deadly force was a warning shot and that no injuries were caused by the shot. All warning shots shall be reported to the Office of Internal Affairs/DFIT and the Office of the Inspector General (OIG).

#### Deadly Force Review Board (DFRB)

The DFRB conducts a full and complete review of all incidents involving a use of deadly force (except warning shots) and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

#### Joint Use Committee (JUC)

The JUC is a committee of field staff from the DAI tasked with reviewing and evaluating recommended revisions to the Division's Use of Force Policy and Procedures.

#### Holding Cells

All holding cells shall be located within buildings or sheltered areas. A holding cell shall not be used as a means of punishment, housing or long-term placement. If clothing is taken from an inmate when they are placed in a holding cell, alternate clothing shall immediately be provided unless security concerns preclude issuance.

#### 51020.5    Use of Force Options

Use of Force options do not have to be utilized in any particular sequence, but should be the force option staff reasonably believes is sufficient. Verbal persuasion or orders should be issued prior to resorting to force and are required to be provided before controlled force is used. The unresisted searching or escorting of an inmate and the unresisted application of authorized restraint equipment is not a use of force. Use of force options include but are not limited to:

- Chemical agents
- Hand-held batons
- Physical strength and holds. A choke hold or any other physical restraint which prevents the person from swallowing or breathing shall not be used unless the use of deadly force would be authorized.
- Less-lethal weapons. A less lethal weapon is any weapon that when used is not likely to cause death. A 37mm or 40mm launcher and any other weapon used to fire less-lethal projectiles is a less lethal weapon.
- Lethal weapons: A firearm is a lethal weapon because it is used to fire lethal projectiles. A lethal weapon is any weapon that when used is likely to result in death.

#### 51020.6    Use of Restraints

The unresisted application of authorized restraint equipment is not a use of force. When mechanical restraint is required, handcuffs, alone or attached to a waist chain, will be the means of restraint normally used. However, additional mechanical restraints, including leg irons, additional chains, leather cuffs, or other specialized restraint equipment may be used when the circumstances indicate the need for the level of control that such devices will provide. Restrained inmates shall never be left unsupervised.

Use of mechanical restraints on persons confirmed, or suspected by health care staff to be pregnant shall be subject to the following requirements found in California Code of Regulations (CCR) Title 15 Sections 3268.2 (d) and (e):

- No leg restraints or waist chains shall be applied.
- If handcuffs are applied, the person's arms shall be brought to the front of her body for application.

Mechanical restraints shall not be placed on an inmate during labor, including during transport to a hospital, during delivery, and while in recovery after giving birth, unless circumstances exist that require the immediate application of mechanical restraints to avoid the imminent threat of death, escape, or great bodily injury. In this case, mechanical restraints may be used only for the period during which such threat exists.

The following state-issued restraints and equipment are authorized for use at the discretion of on-duty staff:

- Handcuffs
- Waist Chain
- Leg Irons
- Escort Chains
- Padlocks
- Security Chain
- Spit Hood

324

OWENS 157

Each controlled use of force shall be video recorded. The camera operator shall procure the camera, videotape or media, backup videotape or media, and backup battery. Prior to initiating video recording, the Incident Commander shall ensure the staff member operating the camera is familiar with the operation of the camera, and the expectations of the camera operator while recording the introductions and extraction in accordance with 51020.12.1 Controlled Uses of Force-Video Recording Requirements.

Only one incident shall be recorded on each video recording (videotape or video media will not include multiple incidents).

If the proposed controlled force involves a cell extraction of two inmates, two camera operators shall be used. Each camera operator will be designated an inmate prior to the application of the controlled use of force and concentrate on that inmate during the recording. The camera operator(s) will be positioned as close as possible to the immediate area to record as much of the incident as possible, yet at a sufficient distance so as to ensure no interference with the extraction team or jeopardy to their own safety.

The camera operator shall ensure that an accurate date and time is displayed on the recording. Filming shall begin with the camera operator stating their name, rank, date, time, and location of the controlled use of force.

The Incident Commander shall identify the inmate involved and state the circumstances of the proposed controlled use of force and/or extraction. The circumstances shall include a summary of the events leading up to the controlled use of force and what efforts have been made toward mitigation, to include the duration of the cool down period, as well as custody, supervisory, medical, and mental health intervention, as applicable. The Incident Commander shall explain the tactical plan, rationale of the plan, and the intended use of force.

The on-site manager shall identify themselves on camera and confirm they are authorizing the controlled use of force, including the force options as stated by the Incident Commander. The on-site manager shall also ensure the video introduction includes all required information.

The on-site LNS shall identify themselves on camera and confirm they reviewed the inmate's health record. The LNS shall indicate if the inmate has any health conditions that will put them at increased risk for adverse outcome from the use of chemical agents or other force options. The LNS shall also note any known disabilities the inmate has that will require any accommodation before, during or after the controlled use of force. The LNS shall not include specific conditions or any other protected health information.

The LNS that will be on-site during the controlled use of force shall also identify themselves on camera as performing that role and having the necessary medical equipment.

The licensed mental health practitioner who provides clinical intervention shall identify themselves on camera and provide a detailed timeline of his/her efforts. This narrative shall not include specific conditions or any other protected health information but shall include a summary of the inmate's reaction. The actual clinical intervention shall not be video recorded.

The Response Supervisor and members of the controlled use of force team shall identify themselves on camera and state their roles in the controlled use of force.

Following the introduction, the camera operator shall continue filming enroute to the scene of the proposed controlled use of force and record the events.

Prior to the application of force, the camera operator should videotape the interior of the cell/area and the inmate's actions.

The incident commander shall issue a verbal warning prior to initiating the application of force.

The verbal warning shall contain the following five elements:

* Address the inmate by name.
* Advise the inmate that they are being video recorded.
* Order the inmate to voluntarily comply.
* Advise the inmate of the intent to use chemical agents and/or physical force if they do not comply.
* Advise the inmate that sufficient force will be used to remove them from the area, administer medications, etc.

After the introduction of chemical agents, the camera operator should again video record the inmate and the interior of the cell/area.

If the video recording is interrupted for any reason once the incident/extraction has begun, the camera operator will give a verbal explanation of the interruption once recording has resumed. The entire incident must be video recorded in one segment or scene.

Once the inmate has been extracted, the LNS shall conduct an initial medical evaluation of the inmate and provide any necessary initial treatment. While the inmate is being evaluated or treated the camera shall continue recording, but will not be aimed at the inmate or the LNS. During this time the camera should be aimed at a clock, floor, wall, etc. If it becomes necessary for staff to use force on the inmate while they are being examined or treated, the camera will immediately be aimed at the inmate until such time as the inmate is no longer resistive and the medical evaluation resumes.

If the purpose of the controlled use of force was to administer medications, video recording shall continue as the medications are administered, and until the controlled use of force team disengages from the inmate.

If chemical agents were used and the inmate is allowed to decontaminate, ensure the decontamination is filmed.

The Incident Commander shall determine when the incident has concluded and video recording shall end. This is typically when the inmate is placed in a holding cell/area or re-housed.

**51020.12.4       Controlled Use of Force in Health Care Facilities**

When circumstances are such that a controlled use of force is considered within a health care facility (departmental hospital, infirmary, Correctional Treatment Center (CTC), Skilled Nursing Facility (SNF), Psychiatric Inpatient Program (PIP), Outpatient Housing Unit (OHU), etc.), the LNS shall consider the impact on medical conditions and the possible need to relocate uninvolved inmates in the immediate vicinity during a controlled use of force.

Administration of Involuntary Medication or Medical Treatment (PC 2602/Probate Code 3200): When force is necessary to administer medication or medical treatment within a health care facility, on-duty health care staff shall ensure medical authorization for the involuntary medication or treatment exists. Health care staff shall also consult with the treating psychiatrist, primary care provider or mid-level provider, if available, to verify the current and critical need for involuntary medication or treatment. If the treating psychiatrist, primary care provider or mid-level provider is not available, the physician or psychiatrist on call shall be consulted. Health care staff shall advise the Incident Commander of such prior to the application of controlled use of force procedures.

Application of Four/Five point Restraints: Only departmentally approved four/five point restraints shall be applied by authorized LNS in health care facilities. Authorization for application of four/five point restraints shall only be given by health care staff in accordance with California Code of Regulations, Title 22, Section 79801 Clinical Restraint, Treatment Restraint, and Clinical Seclusion, and the Mental Health Program Services Delivery System Program Guide, Chapter 10, Suicide Prevention and Response. On-duty health care staff shall ensure authorization exists, and shall advise the Incident Commander of such prior to the controlled use of force under these circumstances.

Inmate Refusal of Admission, Discharge, or Transfer to/from a Health Care Facility: When a clinician with admitting privileges to a CDCR Health Care Facility has determined it is necessary to admit, discharge, or transfer an inmate into/from a health care facility, health care staff shall ensure that a written order for the admission, discharge, or transfer exists, and shall advise the Incident Commander of such, prior to the controlled use of force.

**51020.12.5       Food Trays**

Accountability for food trays is an operational concern for the safety and security of institutions. It is important that the staff who issue food trays to inmates in cells account for all trays after the meal is concluded.

If an inmate attempts to break a food tray, the immediate use of chemical agents is authorized to stop the threat of the inmate obtaining dangerous contraband.

If the inmate refuses to return a food tray, the supervisor and the First or Second Level Managers shall be notified. Staff shall document the inmate's refusal to return the food tray on a CDC-115, Rules Violation Report.

The inmate will be advised that they shall not receive another meal until the first scheduled mealtime after the tray is returned. Additionally, the inmate – and all other inmates in the pod/section – will be placed on escort/restraint status to prevent passing of contraband items. Inmates may exit their cells to acquire various services. If the cell is vacated, staff will use that opportunity to retrieve the food tray.

Notice shall be provided to staff members working subsequent shifts to ensure their awareness of the circumstances. Institution/facility staff shall implement

OWENS 161

security measures to deter and prevent the movement of the retained food tray from one cell to another.

If the inmate retains control of the food tray for a period of 24 hours, the Manager shall determine if controlled force will be used to retrieve the tray. This does not preclude the Manager from making a determination, based on safety and security concerns, to retrieve the tray using force prior to the 24-hour time frame.

If the goal of the controlled use of force is only to retrieve the tray, all staff shall be informed of this in advance. If the inmate has retreated to the back of the cell and the tray can be safely retrieved without the application of force, then staff shall retrieve the tray and exit the cell.

**51020.13        Video Equipment and Records**

Video equipment, including cameras, batteries, and blank tapes or discs shall be stored in a designated area at each institution. Video recordings shall be maintained for a period of five years from the date of the incident, or longer if warranted.

Video recordings shall be processed as follows:

* The camera operator shall label the tape with the date, time, inmate's name and CDCR number, the camera operator's name, and incident log number, if applicable.

* The Incident Commander shall, prior to being relieved from duty, forward to the designated area for storage any video recordings of controlled uses of force and any video recordings of inmate injuries or interviews following an immediate use of force or an allegation of excessive or unnecessary force. The Incident Commander shall ensure that all such recordings are secured, logged and processed in a manner to preserve evidentiary value.

Based upon individual institution space availability, an institution may maintain evidentiary related video recordings and non-evidentiary video recordings in separate locations, which shall be identified within a local supplement to this section.

**51020.14        Use of Less Lethal Weapons**

The 37 mm and 40 mm launchers are weapons designed to discharge less lethal impact munitions or chemical agents. They are authorized for use in all areas including segregated housing units, general population housing units, cells, dayrooms, dining halls, concrete yards, exercise yards and work areas. It is recommended a Response Supervisor be assigned the duties of discharging less lethal impact munitions during controlled use of force-cell extraction.

**51020.14.1    Use of Less Lethal Weapons During Controlled Uses of Force**

During the formation of the tactical plan defined in 51020.12, the on-site manager may authorize the use of less lethal impact munitions during controlled use of force situations in a cell, if the inmate is barricaded, or if circumstances are serious in nature calling for extreme measures to protect staff or inmates (i.e., the inmate is armed with a deadly weapon).

**51020.14.2    Use of Less Lethal Weapons for Inmates with Mental Health Issues**

In controlled use of force situations for inmates who are housed in Mental Health Crisis Bed, PIP, OHU, Psychiatric Services Unit (PSU), or have an Enhanced Outpatient Program (EOP) level of care designation, or do not possess the ability to understand orders, or have difficulty complying with orders due to mental health issues, or are at substantial risk of decompensation from the use of force, the use of less lethal weapons is prohibited for direct or indirect use, (i.e., body or barricade removal), unless the Warden or Chief Deputy Warden authorize their use. If circumstances are serious in nature and involve an imminent threat, the use of less lethal weapons in accordance with this section may be authorized. In immediate use of force situations involving an imminent threat, staff are not precluded from using less lethal weapons to gain control of a disturbance involving inmates who may have mental health issues.

**51020.15        Chemical Agents**

Departmentally approved chemical agents include, but are not limited to the following: Oleoresin Capsicum (OC), Chloroacetophenone (CN), and Orthochlorobenzalmalononitrile (CS). OC may be issued to all on-duty departmentally trained peace officers, certified in the use of chemical agents. Employees shall only administer the amount of chemical agents necessary and reasonable to accomplish the lawful objective.

While in the community, non-uniformed peace officers that are issued OC products shall carry the product in a concealed manner, unless the peace officer has a badge clearly displayed.

**51020.15.1    Chemical Agent Use During Controlled Use of Force – Small Space**

During a controlled use of force in a cell, single person holding cell, shower, or other small space, only the chemical agent products listed in 51020.15.1 may be deployed. Any future additional products authorized by the Office of Correctional Safety, Emergency Operations Unit, and approved by the Director, Division of Adult Institutions must be specifically authorized for controlled use of force in a cell or other small space in order to be utilized for this purpose.

* MK-9 OC Vapor - limited to a single burst of 1-3 seconds in duration per application with a maximum of two applications.

* MK-9 OC Fogger – limited to a single burst of 1-5 seconds in duration per application with a maximum of four applications.

* MK-9 OC Foam – limited to a single burst of 1-5 seconds in duration per application with a maximum of four applications.

* OC Vapor Grenade – limited to 2 devices

* OC Flameless Expulsion Grenade – limited to 2 devices

* X-10 Barricade Removal Device – limited to a single burst of 1-5 seconds in duration per application with a maximum of four applications. Chemical agents may only be deployed from the X-10 during the removal of a barricade. The X-10 is not to be used solely as a delivery device for chemical agents.

Regardless of which chemical agents are deployed, or in what combination, no more than a total of four chemical agent applications shall be administered. In unusual circumstances or when circumstances call for extreme measures to protect staff or inmates, it may be necessary to exceed the four allowed applications. In this event, the Incident Commander shall consult with the on-site manager, who can authorize additional chemical agent applications. For each *additional* chemical agent application authorized, the on-site Manager shall verbalize to the camera, the chemical agent application being authorized and the rationale for the decision.

The amount of time needed for the chemical agents to become effective will vary based upon the delivery method, individual tolerance levels, and environment. A minimum of three minutes shall lapse between each application of chemical agents before additional chemical agents may be applied.

It is recommended a Response Supervisor be assigned the duties of administering chemical agents during controlled use of force in a cell or other small space. Prior to each use of a chemical agent, the staff member applying it shall display the device in view of the camera and state out loud for the camera the time of application and the type of device being applied.

After each application of a chemical agent, the Incident Commander and Response Supervisor shall assess the effectiveness or lack thereof. In the event chemical agents have not proven effective, the Incident Commander and Response Supervisor should carefully weigh the continued use of chemical agents versus use of physical force to complete the extraction. If a decision is made to apply additional chemical agents, the Incident Commander shall verbalize to the camera the rationale for the decision. For example: "A vapor grenade was deployed. It has been three minutes. The inmate is not showing any visible reaction, is using a personal barrier, and is shouting. We will now attempt to strike the personal barrier with a fogger product."

Staff shall make every reasonable effort to maintain visual contact with an inmate when administering chemical agents and until the inmate is decontaminated.

**51020.15.2    Chemical Agent Use During Controlled Use of Force – Large Area**

During a controlled use of force in larger areas such as rotundas, small management yards, large holding cells, segregated housing unit exercise yards, etc., departmentally approved chemical agents may be used in accordance with the Restricted DOM, Section 55050- Armory, Armed Posts, and Weapons, and applicable training. In these situations, dependent on the size of the area, number of inmates involved, and complexity of the incident, it may be necessary to administer chemical agents in a larger quantity and more frequently than would occur during a controlled use of force in a small space.

**51020.15.3    Use of Chemical Agents for Inmates with Mental Health Issues**

In controlled use of force situations for inmates who are housed in Mental Health Crisis Bed, PIP, OHU, PSU, EOP, or an Administrative Segregation Unit-EOP Hub, or do not possess the ability to understand orders, have difficulty complying with orders due to mental health issues, or are at increased risk of substantial decompensation from the use of force, the use of chemical agents is prohibited,

329

- Description of why force was used and description of the threat perceived.
- Description of any identified disabilities ascertained through any tracking system and what form of reasonable accommodation and/or assistance was provided during and after the controlled use of force.
- Description and observations of staff or inmate injuries and the cause of the injury, if known.
- Description of observations of decontamination of chemical agents or medical attention given.
- Description of observations or knowledge of the steps taken to decontaminate the housing unit, and those inmates not directly exposed to chemical agents.
- Documentation of any inmate allegation of an unnecessary or excessive use of force.

§1020.17.2    Involved Staff-Additional Reporting Requirement for Deadly Force

An employee, who intentionally or accidentally uses deadly force, whether on or off-duty, shall ensure that a supervisory employee is verbally notified of the incident without delay. A written report shall also be required. This reporting is not a requirement for the lawful discharge of a firearm during weapon's qualifications, firearms training, or other legal recreational use of a firearm.

51020.17.3    Video Records Made After Uses of Force That Cause Serious Bodily Injury, Great Bodily Injury, or Result in Allegations of Unnecessary or Excessive Force

Under the following circumstances, a video recorded interview of an inmate shall be conducted in accordance with the Inmate Interview Guidelines form (CDCR 3013) and documented on the Report of Findings-Inmate Interview form (CDCR 3014):

- The inmate has sustained a serious bodily injury or great bodily injury that could have been caused by a staff use of force.
- The inmate has made an allegation of an unnecessary or excessive use of force.

Any visible or alleged injuries shall be video recorded. The video recording shall be conducted by custodial supervisors (sergeants or lieutenants) who did not use, or observe the force used, in the incident.

The video recording should be made as soon as possible, but no later than 48 hours from discovery of the injury or allegation.

The video recording shall also include a request of the inmate to be interviewed regarding the circumstances of the incident. If the inmate refuses to be video recorded, such refusal shall be recorded.

51020.17.4    Response Supervisor- Reporting Requirements

In addition to writing his/her own report when applicable, prior to being relieved from duty the Response Supervisor shall:

- Gather written reports from staff involved in the use of force incident.
- Serve as the first level of review for all subordinates' reports and shall ensure that all necessary information is contained in these reports. The Response Supervisor is expected to ensure that each employee's report is prepared independent of any other report.
- Ensure no involved employee is relieved of duty prior to receiving his/her written report, unless the employee is physically unable to prepare the report due to an injury. If due to the circumstances a verbal report is not possible, the Response Supervisor shall explain the reason for not taking a verbal report.
- Obtain applicable medical reports from health care staff, inspect the form(s) and determine if all relevant information is present.
- If applicable, complete Report of Occupational Injury or Illness Form (SCIF-3067).
- If applicable, complete State Compensation Insurance Fund Employee Claim for Workers' Compensation Benefits Form (SCIF-3301).
- If applicable, complete Department of Health Services Report of Request and Decision for HIV Testing (CDC-8439) in cases of potential exposure to blood borne pathogens.

51020.17.5    Response    Supervisor-Additional    Reporting Requirements for Deadly Force

When there has been a use of deadly force, the on-duty/Response Supervisor shall ensure that the chain of command is notified and all necessary health and safety, medical, and security measures are initiated. The supervisor shall go to the location and ensure that the scene is protected.

For incidents occurring in an institutional setting, the Watch Commander shall contact the institution's Investigative Services Unit (ISU).

For incidents occurring in a community setting, the on-duty supervisor or Watch Commander shall ensure local law enforcement is contacted.

The on-duty/Response Supervisor shall ask the employee who used deadly force to provide a public safety statement immediately after the incident. This is the employee's oral statement. This statement helps determine the general circumstances of the incident, assess the need for resources, set the perimeter, locate injured persons, and determine the nature of the evidence to be sought. It shall provide basic information such as the number of persons involved in the incident, the number not yet in custody and number and direction of shots fired. The statement shall not include, and the employee should not be asked to provide, a step-by-step narrative of the incident or a motive for his/her actions.

The supervisor shall capture the essence of the oral statement in writing and submit it to the Incident Commander.

In circumstances where the use of deadly force results in death or GBI, the staff using the force will be placed on administrative time off (ATO) for 72 hours in order to facilitate department interviews and staff wellness. These 72 hours will be paid contiguous time off, unless they are scheduled regular days off (RDO). RDOs will count toward the contiguous 72 hours but will not be paid unless the employee is called to work. If the 72 hours ATO overlap with a period of pre-scheduled time off (i.e. vacation, holiday, sick leave, etc.) the ATO will be used in lieu of, not in addition to the affected employee's leave credits.

As soon after the incident as is practical, the on-duty/Response Supervisor or Incident Commander must also initiate Peer Support Program (PSP) protocols as delineated in DOM Section 31040.3.2

51020.17.6    Health Care Staff Use of Force-Reporting Requirements

Health Care Services staff shall complete and submit a Crime/Incident Staff Report (CDCR 837-C) whenever a health care staff member:

- Observes use of force.
- Uses force on an inmate.
- Provides clinical intervention prior to a use of force.
- Reviews the health record for conditions that may put an inmate at increased risk for adverse outcome from the use of force.
- Hears an inmate allegation of an unnecessary or excessive use of force during a reportable incident if not already reported on a Notice of Injury or Unusual Occurrence form (CDCR 7219).

On the CDCR 837-C, the licensed mental health practitioner shall provide a timeline for the clinical assessment and intervention process. They shall also document if the inmate had the ability to understand orders, had difficulty complying with orders based on mental health issues or was at increased risk of substantial decompensation due to mental illness.

If it was determined the inmate had difficulty complying with orders or was at increased risk of substantial decompensation, the licensed mental health practitioner shall:

- Document that strategies were developed.
- Document if the strategies were implemented.
- Document whether those strategies were successful.

On the CDCR 7230, Interdisciplinary Progress Note, the licensed mental health practitioner shall document information regarding the clinical assessment and intervention process. The licensed mental health practitioner shall document the rationale for the assessment results regarding the inmate's ability to understand direction, any difficulty complying with direction or substantial risk of decompensation. If strategies were developed, the licensed mental health practitioner shall document specific strategies, whether the strategies were implemented, and the results.

In addition to the requirements noted above, the LNS shall complete and submit a CDC 7219 upon conducting a medical evaluation after a use of force. The CDCR 7219 shall be completed and submitted to the Response Supervisor prior to the LNS leaving the institution and shall:

- Include a quote of the inmate's own words in the patient comment section.
- After examination, document observations of the area on the inmate where force was applied.
- Include comments or information garnered from custody staff regarding the type and amount of force used.

331

OWENS 164

unless the Warden, Chief Deputy Warden (or AOD during non-business hours) authorize the use.

If circumstances involve an imminent threat, the use of chemical agents is authorized in accordance with this section for use against an inmate who may not possess the ability to understand orders or to gain control of a disturbance involving inmates who may have mental health issues.

**51020.15.4      Decontamination from Chemical Agents – General**

Any inmate exposed to a chemical agent shall be afforded an opportunity to decontaminate as soon as practical. Staff shall provide reasonable accommodation to disabled inmates who require assistance exiting a contaminated area and during the decontamination process.

If an inmate refuses to decontaminate, no other action is necessary, unless the inmate was exposed in a cell and not removed from the cell where the exposure occurred. In these instances, refer to Section 51020.15.6. If an inmate refuses decontamination, the LNS shall be responsible to explain the importance ·of· decontamination and encourage the inmate to decontaminate.

Inmates in an adjacent cell or in the general area where chemical agents are used shall be questioned by custody staff to ,determine if decontamination is warranted.

Decontamination of those inmates not directly exposed to ·chemical agents will be based upon obvious, physical effects of the chemical agent.

The need to medically treat an inmate for serious injury may supersede the need to decontaminate from the effects of exposure to chemical agents.

Inmates exposed to chemical agents shall be allowed to change their clothes as soon as practical.

Inmates exposed to chemical agents in a cell shall be afforded the opportunity to exchange linens and bedding, including the safety blanket, when applicable.

**51020.15.5      Decontamination from Oleoresin Capsicum**

Decontamination from OC may be accomplished by exposing the individual to fresh moving air, or flushing the affected body area with cool water, e.g., shower, sink water, or wet cloths and providing clean clothing.

Except when it is determined that removing an inmate from a cell would result in additional force or give rise to an imminent threat, the inmate will be provided an opportunity to decontaminate outside of a cell in which OC has been used.

Force shall not be used to decontaminate inmates from the effects of OC unless a serious threat to the inmate's health is present and LNS determines the inmate must be decontaminated.

No other decontamination is necessary for inmates who have been medically treated and LNS has determined the inmate has been decontaminated.

As soon as it is practical and safe to do so, decontamination of the affected cell and housing unit shall be accomplished by ventilating the area to remove the airborne agent. Open doors and windows as permitted, or use portable fans to speed up the process. If applicable manually turn the air exchange system to high. A fan and the use of the air exchange system is not recommended for any dry agent that is utilized (i.e., expulsion grenades or muzzle blast). Wiping the area down with damp cloths or mopping is only necessary if a noticeable amount of residue is visible.

After decontamination, the inmate should not be returned to a contaminated cell until sufficient time has elapsed to allow for dissipation of the OC or until the cell has been cleaned.

**51020.16      Application of Spit Hoods or Masks**

Only departmentally approved spit hoods/masks are authorized for use. A spit hood/mask shall not be placed upon an inmate who:

* Is in a state of altered consciousness (visibly drowsy, stuporous, or unconscious) or;
* Has any visible signs of a seizure; or ·
* Is vomiting or exhibits signs of beginning to vomit.
* A spit hood/mask may be applied to an inmate if:
* There is verbal or physical intent by the inmate to contaminate others with spit or other bodily fluids from the nose or mouth; or
*· The inmate is not able to control expelling fluids from the nose or

mouth (with the exception of vomit); or

* The inmate was on authorized security precautions according to the procedures of the unit where the inmate is housed.
* If the inmate was contaminated with OC before the mask was applied, the mask shall be kept on until the inmate is afforded decontamination unless the inmate is in a state of altered consciousness (visibly drowsy, stuporous, or unconscious); or has any visible signs of a seizure; or is vomiting or exhibits signs of beginning to vomit. In this case the spit hood/mask will be removed immediately and appropriate treatment will be administered.

If the inmate is decontaminated with fresh moving air, the spit hood/mask may remain on during decontamination and can be exchanged for a new spit hood/mask when decontamination is complete. If the inmate is decontaminated with water, the spit hood/mask shall be removed during decontamination and a new spit hood/mask can be placed on the inmate when decontamination is complete.

If an inmate has been exposed to chemical agents after the spit hood/mask is applied, the spit hood/mask shall be replaced with a new one when it is safe to do so.

If a spit hood/mask was applied and the inmate loses consciousness, begins seizing, or begins vomiting the spit hood/mask shall be removed immediately and appropriate treatment will be administered.

If a spit hood/mask is applied to an inmate, it is imperative that constant supervision of the inmate be maintained for signs of respiratory distress. If any respiratory distress is observed, the spit hood/mask shall be removed until the signs of respiratory distress have dissipated.

Once an inmate is exposed to chemical agents and/or if a spit hood/mask is placed on the inmate, staff shall not place them on their stomachs, or in a position that allows the inmate to end up on their stomach, for any period longer than necessary to secure (e.g. handcuff) and/or gain control of the inmate. A prone position makes it difficult for any exposed individual to breathe and may be a contributing factor in positional asphyxia. Positional asphyxia occurs when an individual's body position interferes with respiration, resulting in death.

If an exposed individual is in handcuffs and requires transportation via a gurney, stokes litter, etc., they shall be positioned on their back or side.

**51020.17      Uses of Force-Reporting Requirements**

Every staff use of force is an incident that shall be reported. Uses of force include non-deadly force, deadly force, immediate force, controlled force and non-conventional force. Verbal commands, the unresisted application of restraints or escort of an unresisting inmate and the movement of an unconscious or otherwise incapacitated inmate are not uses of force.

Any employee who uses force or observes a staff use of force shall report it to a supervisor as soon as practical and follow up with appropriate documentation prior to being relieved from duty.

The CDCR 837 Crime/Incident Report forms are used for reporting uses of force. Written reports regarding both immediate and controlled use of force shall be documented on a CDCR 837.

Documentation shall identify any witnesses to the incident and describe the circumstances giving rise to the use of force, whether the inmate is a participant in the Mental Health Services Delivery System and the nature and extent of the force used. The documentation shall also describe any involvement of licensed mental health practitioners prior to or during the use of force incident, if de-escalation strategies were attempted prior to the use of force, and the outcomes of any strategies used.

**51020.17.1      Involved Staff-Reporting Requirements**

Written reports regarding staff uses force shall be documented on a Crime/Incident Staff Report (CDCR 837-C). This requirement includes the on-site manager authorizing the use of controlled force. This requirement includes a First or Second Level Manager/AOD authorizing the use of controlled force.

Reports shall be prepared by any employee who uses or observes the use of force. The reports shall be submitted to, and reviewed by, the Response Supervisor prior to being relieved from duty. Staff shall not collaborate with each other in the preparation of reports.

If possible, identify important information in the contents of the report as follows:

* Identities of staff that observed and/or participated in the use of force.
* Description of the actions of the inmate and circumstances leading to the use of force.
* Description of the specific force used or observed.
* If chemical agents were used, identify the type of projector used, and from what distance.
* Description of the inmate's level of resistance.

OWENS 163

Commander learns that the verbal allegation is part of a reported incident, the incident package shall be included with the Report of Findings. Correspondingly, if the Appeals Coordinator learns that the written allegation is part of a reported incident, the incident package shall be included with the appeal for administrative review.

## 51020.19 Reviewing the Use of Force

Each Institution Head shall establish and chair an IERC to evaluate and review every use of force and every allegation of excessive or unnecessary force. Each incident or allegation shall be evaluated at both supervisory and management levels to determine if the force used was reasonable under policy, procedure, and training.

For reported incidents, a good faith effort must be made at all levels of review in order to reach a judgment whether the force used was in compliance with policy, procedure and training and follow-up action if necessary. The following factors must be evaluated:

- The threat perceived by the responsible individual applying the force.
- The need for the application of force.
- The relationship between that need and the amount of force used.
- The extent of the injury suffered.
- What steps were taken to avoid and/or minimize the need for/level of force used.

Should an incident or allegation warrant investigation by the DFIT, the OIA, or any other outside investigating agency, or if direct action has been requested for any incident or allegation, the IERC shall suspend all review of that incident until the investigation/direct action is complete. Examples of what may be referred for investigation include but are not limited to:

- Unexplained injuries.
- Impact strikes to lethal target areas (head, eyes, throat, or spine).
- Incomplete/conflicting reports.
- The application of weaponry that exceeds what would normally be expected for the type of force reported.

The IERC shall apply the findings of the Hiring Authority or the DFRB as part of its review.

### 51020.19.1 Incident Commander Review

The Incident Commander shall review the complete incident package documentation to ensure that it is adequately prepared and shall reach a judgment whether the force used was in compliance with policy, procedure, and training.

The Incident Commander shall:

- Review all incident reports for quality, accuracy, and content, including the Report of Finding-Inmate Interview (CDCR 3014).
- Clarify incomplete reports with involved staff by completing a Crime Incident Report Review Notice (CDCR 837-C-2 to the applicable employee.
- Complete an Incident Commander's Review/Critique Use of Force Incidents CDCR 3010). This report shall contain:
  o The description of inmate injuries due to force used.
  o An explanation of why force was needed.
  o A description of the threat that required force to be used.
  o What steps were taken to minimize the need for force.
  o Any relevant comments.

In the event the Incident Commander believes an investigation may be necessary, the Incident Commander shall suspend review and recommend that the case be referred for investigation.

### 51020.19.2 First Level Manager Review

The First Level Manager of the area where the incident or allegation occurs shall reach a judgment whether the force used was in compliance with policy, procedure, and training.

The manager shall:

- Review all documentation in the incident package, including the Report of Finding-Inmate Interview (CDCR 3014).
- Review the quality of all reports to ensure the use of force was properly documented and reviewed. This includes a review of the Incident Commander's conclusions.

- Determine if any corrective action taken by his/her subordinates in relation to the incident was adequate/proper.
- Conduct an in depth analysis to determine if the use of force described in the incident package was within the guidelines of the Use of Force policy, as well as other policies, procedures and training. This analysis should address any non-compliance not identified earlier.
- Complete a review of the incident on the Manager's Review – First Level Use of Force Incidents (CDCR 3011).
- In the event the First Level Manager believes an investigation may be necessary, they shall suspend review and recommend that the case be referred for investigation.

### 51020.19.3 Second Level Manager Review

The Second Level Manager is the final level of review prior to the completed incident package being sent to the Use of Force Coordinator for review by the (IERC). The Second Level Manager shall reach a judgment whether the force used was in compliance with policy, procedure, and training.

The second level manager shall:

- Review all documentation in the incident package, including the Report of Finding-Inmate Interview (CDCR 3014).
- Review the quality of all reports to ensure the use of force was properly documented and reviewed. This includes a review of the Incident Commander's conclusions and the First Level Manager's conclusions.
- Determine if any corrective action taken by his/her subordinates in relation to the incident was adequate/proper.
- Conduct an in depth analysis to determine if the use of force described in the incident package was within the guidelines of the Use of Force policy, as well as other policies, procedures and training. This analysis should address any non-compliance not identified earlier.
- Complete a review of the incident on the Manager's Review – Second Level Use of Force Incidents (CDCR 3012).
- In the event the Second Level Manager believes an investigation may be necessary, they shall suspend review and recommend that the case be referred for investigation.

### 51020.19.4 Use of Force Coordinator Responsibility

The Use of Force Coordinator shall log and track all use of force incidents and all allegations of excessive or unnecessary force (including those originating from inmate appeals) to ensure thorough and timely review by the IERC. The log should be capable of producing statistical reports to monitor trends and patterns of force used, whether the report is received in the form of an incident report, a verbal allegation of excessive or unnecessary force, or an allegation contained in an inmate appeal. At a minimum, the log should address the following categories:

- Incident Log Number
- Incident Date
- Specific Area of Institution
- Specific Crime
- Controlled or Immediate Use of Force
- Allegations of Unnecessary or Excessive Use of Force
- Significant Injury (SBI, GBI, or Death)
- Injuries caused by Use of Force
- Staff Involved
- Inmate(s) Involved
- Mental Health Status
- Type of Force Option(s) Utilized
- Ethnicity.
- Security Threat Group Status.

The Use of Force Coordinator shall schedule use of force incident packages for presentation to the IERC within 30 days from the date of incident. If an investigation or request for direct action has been initiated for a use of force incident, the Use of Force Coordinator will track and maintain the completed incident package until the Hiring Authority has determined a finding upon conclusion of the investigation or request for direct action.

Upon determination of finding for the matter referred for investigation or direct action, the Hiring Authority shall apprise the Use of Force Coordinator of the allegation(s) findings.

The Use of Force Coordinator shall conduct an in-depth analysis of the documentation from each use of force incident, including the conclusions of the

OWENS 166

- Document the injuries sustained and the medical treatment rendered.
- Document if the inmate refuses medical examination and/or treatment.
- Document any alternative assistive device provided and any medical recommendation / accommodation suggested during and after the use of force.
- Document in-cell decontamination instructions and times of 15-minute checks, if applicable.

In addition to the above requirements, LNS shall be responsible for providing custody staff and the Use of Force Coordinator, with notification and updated information in the event that the aftercare treatment process reveals new facts about the severity of an injury.

### 51020.17.7    Incident Commander-Reporting Requirements

It is the responsibility of the Incident Commander to notify the Office of Internal Affairs (OIA) and the Office of Inspector General (OIG) as soon as possible, but no later than one hour from the time the incident is discovered, of any use of deadly force and every death, great bodily injury or serious bodily injury that could have been caused by a staff use of force. Depending on the specific Memorandum of Understanding (MOU) and the nature of the incident, a call to the county sheriff or police department may also occur.

Prior to being relieved from duty the Incident Commander or designee shall:

- Initiate the initial incident report, consisting of the Crime/Incident Report Cover Sheet (CDCR 837-A/A1), the Crime/Incident Report Supplement (CDCR837-A1), and the Crime/Incident Report Inmate/Staff/Visitor, Other (CDCR 837-B1/2/3) reports. This shall be an accurate summary of the events as described in the written reports submitted by all employees.
- Prepare the initial incident package. This includes the CDCR 837-A/A1, B and C forms and any other applicable forms or documents.
- Review all incident reports for quality, accuracy and content.
- Clarify incomplete reports with involved staff by completing a CDCR 837-C-2 Review Notice.

In controlled use of force cases in institutions/facilities involving involuntary medication, placement into four/five point restraints, or admission into a licensed health care facility, the Incident Commander shall include in the CDCR 837-A/A1, the name and title of the on-duty health care staff that verified the appropriate medical authorization existed prior to the use of force.

- Prepare and submit a separate CDCR 837-C if they actually used force during an incident, or observed the use of force.

In normal circumstances, it is the expectation that within 24 hours of the incident the Incident Commander or designee will ensure the initial incident report (CDCR 837-A/A1 and CDCR 837-B ) is uploaded in the Daily Information Reporting System (DIRS).

Ensure all force related video recordings of inmate injuries or interviews and recordings of controlled force are forwarded to the appropriate location, as set forth in Section 51020.13.

Initiate the Use of Force Review process as set forth in Section 51020.19.1.

Should an incident or allegation warrant investigation by the DFIT, the OIA, or any other outside investigating agency, the Incident Commander shall suspend all review of that incident until the investigation is complete.

### 51020.17.8    First/Second    Level    Manager-Reporting Requirements for Controlled Uses of Force

The on-site manager authorizing the use of controlled force is required to be present during the use of force and document involvement on a CDCR 837C.

Any institutional managers consulted regarding a disagreement among the collaborative team members during a controlled use of force shall submit a CDCR Crime/Incident Staff Report (CDCR 837-C) detailing their involvement.

If the Regional Administrators (Medical or Mental Health) or the Associate Director are contacted, they shall submit a CDCR Crime/Incident Staff Report (CDCR 837-C) detailing their involvement.

### 51020.18    Reporting Allegations of Unnecessary or Excessive Force

Any employee who observes a use of force that is unnecessary or excessive shall attempt to stop the violation. Any employee who becomes aware of an allegation of unnecessary or excessive force, whether it occurs during a reportable incident or not, shall verbally report the allegation to a custody supervisor as soon as possible, followed with appropriate documentation.

If the allegation occurs in conjunction with a reportable incident, the incident shall be reported in accordance with the requirements set forth in this Article and any such allegation shall be documented and included in the incident report package. Each involved employee shall document all details regarding any allegations or observations of use of force that is unnecessary or excessive. This includes a quote of the allegation, or what was seen or heard, including observations of any apparent injuries, and the name of the supervisor the employee reported the allegation to.

All reports shall be submitted to a custody supervisor.

### 51020.18.1    Allegations of Excessive or Unnecessary Force-Supervisor Reporting Requirements

Whether or not the allegation of excessive or unnecessary force is made in conjunction with a reported use of force, a supervisor who learns of such an allegation shall:

- Make a verbal notification to the Incident Commander as soon as practical.
- Arrange for the inmate to be medically examined and request a full medical assessment of injuries, if any.
- Ensure every staff member who witnessed the allegations and/or staff who witnessed the event leading to the allegations immediately submits the applicable report.
- Review any reports for clarity.
- Submit a package of all documents relating to the allegation, including a copy of the medical report, to the Incident Commander.

### 51020.18.2    Allegations of Excessive or Unnecessary Force-Incident Commander and Appeals Coordinator Reporting Requirements

When informed of allegations of the use of unnecessary or excessive force, the Incident Commander and/or the Appeals Coordinator shall make an initial assessment of the information received and notify the appropriate First or Second Level Manager as soon as practical.

Additionally, the Incident Commander and/or the Appeals Coordinator shall:

- Ensure LNS has evaluated the inmate and a CDCR 7219 has been completed.
- Review written reports of witnesses and obtain statements from inmate witnesses, if any.
- Ensure that the inmate's injuries are video recorded and the inmate is interviewed within 48 hours in accordance with the requirements set forth in DOM, Section 51020.17.3. This shall be done as soon as possible upon receiving verbal notification of the allegation.

When an allegation is received, whether verbally or through the appeals process, the Appeals Coordinator or Incident Commander shall contact ISU or the Watch Commander and determine if the related incident report exists. The respective Appeals Coordinator or Incident Commander shall note the existence of the incident report by log number in their submittal prior to forwarding the allegation for administrative review.

If the inmate has suffered serious bodily injury or great bodily injury, the Incident Commander shall notify the OIA and the OIG as soon as possible, but no later than one hour from the time the incident is discovered. In instances where the allegation was submitted through the inmate appeal process and there is no corresponding incident report, the Appeals Coordinator shall, in consultation with the hiring authority, notify the OIA and OIG.

If, at any point in the review, the Incident Commander and/or the Appeals Coordinator discovers information that leads them to reasonably believe or suspect an employee has committed any serious misconduct, the Incident Commander and/or Appeals Coordinator shall:

- Immediately forward all information to the Institution Head via the chain of command, recommending an internal affairs investigation if appropriate.
- Prepare a Report of Findings-Inmate Interview (CDCR 3014) and/or Appeal Inquiry. The report shall contain the allegations made, an explanation of the incident, the written or verbal statements of the witnesses, the health care information, and a conclusion and recommendation.
- Submit the Report of Findings and/or Appeal Inquiry and evidence through the chain of command to the Institution Head. The evidence shall include copies of the medical reports, and any other documentation that is deemed significant to further document the incident/allegation. If the Incident

OWENS 165

may be used to extract the inmates from the cell. While the team is being formed, at least one staff member shall remain at the cell to continue observation of the incident for documentation purposes.

### 51020.11.3 Food/Security Ports

If during routine duties, correctional officers encounter an inmate who refuses to allow staff to close and lock the food/security port:

The officer shall verbally order the inmate to relinquish control of the food port and allow staff to secure it.

If the inmate relinquishes control of the food/security port, it will be secured.

In the event the inmate does not relinquish control of the food port, the officer shall back away from the cell and contact and advise the custody supervisor of the situation. Controlled force may be initiated in accordance with DOM Section 51020.12, while custody staff continues to monitor the inmate.

### 51020.12 Controlled Use of Force General Requirements

When force is necessary but does not involve an imminent threat to subdue an attacker, effect custody or to overcome resistance, the force shall be controlled.

The controlled Use of Force involves advance planning, staffing and organization. A controlled use of force requires authorization and the presence of a First or Second Level Manager, or an AOD (on-site manager) during non-business hours. The on-site manager is ultimately responsible for the controlled use of force incident. The Incident Commander shall supervise the controlled use of force process. The Response Supervisor shall direct the controlled use of force team.

Once a situation exists that may result in a controlled use of force, a custody staff member shall remain at the location to monitor the inmate and continue to attempt to gain compliance from the inmate through attempts at verbal persuasion until the controlled use of force team arrives and the staff member is relieved by the Incident Commander to resume their regular duties. The custody staff member will be positioned as close as possible to the affected location, without jeopardizing their own safety.

All controlled uses of force shall be preceded by a cool down period to allow the inmate an opportunity to comply with custody staff orders. The cool down period shall include clinical intervention (attempts to verbally counsel and persuade the inmate to voluntarily exit the area) by a licensed mental health practitioner and may include similar attempts by custody staff if authorized by the on-site manager. This intervention shall take place for all inmates and is not limited to participants in the Mental Health Services Delivery System.

During the cool down period:

- Licensed Nursing Staff (LNS) (i.e., Registered Nurse (RN), Licensed Vocational Nurse, and Psychiatric Technician) shall review the inmate's health record for medical conditions which put the inmate at increased risk for adverse outcome from the use of chemical agents and or physical force. In addition the LNS shall review the health record for any known disabilities that will require accommodation during the controlled use of force. For inmates housed in an inpatient setting the Inpatient RN shall conduct the review. For all other inmates the review shall be conducted by the Triage and Treatment Area RN.

- If the licensed mental health practitioner is not the treating clinician, they shall review the inmate's health record to determine if the inmate has any previous or current mental health issues. The licensed mental health practitioner shall use that information along with information gained during the clinical intervention to advise the on-site manager of any mental health issues that impact the inmate's ability to understand orders, make it difficult for the inmate to comply with orders, or could lead to a substantial risk of decompensation.

If it is determined the inmate does not have the ability to understand orders, chemical agents shall not be used without authorization from the Warden, Chief Deputy Warden or AOD. Any decision to proceed with the use of chemical agents shall be documented, along with the details of the underlying reasons to proceed, and the outcome. When serious circumstances exist, calling for extreme measures to protect staff or inmates, (i.e., the inmate may be armed with a deadly weapon) the Warden, Chief Deputy Warden or AOD may authorize use of chemical agents when the inmate does not have the ability to understand orders.

If it is determined an inmate has the ability to understand orders but has difficulty complying due to mental health issues, or when a licensed mental health practitioner believes the inmate's mental health issues are such that the controlled use of force could lead to a substantial risk of decompensation, a licensed mental health practitioner shall propose reasonable strategies to employ in an effort to gain compliance. Some strategies to consider may include, but are not limited to: verbal persuasion, positive behavior modification, and/or other de-escalation/intervention techniques by the licensed mental health practitioner, or engaging additional clinicians that have an established rapport with the inmate. If the efforts are not successful, it may be necessary for the controlled use of force to proceed. Chemical agents shall not be used without authorization from the Warden, Chief Deputy Warden (or AOD during non-business hours).

The cool down period may also include use of other available resources/options such as dialogue via religious leaders, correctional counselors, correctional officers and other custody and non-custody staff that have an established rapport with the inmate. The on-site manager and licensed mental health practitioner shall collaborate on efforts to be made during the cool down period. The length of the cool down period can vary depending upon the circumstances, but should be allowed to continue until all reasonable interventions have been attempted, or an imminent threat exists.

When the on-site manager and licensed mental health practitioner together determine that reasonable efforts have been exhausted, the cool down period will end and the controlled use of force will be initiated.

If there is disagreement among the collaborative team members (medical, nursing, mental health and custody) regarding the strategies to be employed, or length/termination of the cool down period, the issue shall be elevated to the appropriate clinical and custodial managers up to and including the Chief of Mental Health (or designee), Chief Medical Executive (or designee), and Warden or Chief Deputy Warden.

In the event the disagreement is not resolved at the institution level, the issue shall be elevated to the Regional Administrators (Mental Health and Medical), and the appropriate Associate Director.

The Incident Commander shall document the start time and duration of the cool down period on the CDCR 837-A/A1.

During the cool down period, a tactical plan for the potential controlled use of force will be developed by the Incident Commander in collaboration with the Response Supervisor and on-site manager, with input from the LNS and a licensed mental health practitioner. During the collaboration, the possible use of chemical agents, physical force, or other approved force options that may be used to complete the lawful objective will be discussed utilizing their collective knowledge, training, and experience, as well as an evaluation of the totality of circumstances.

General circumstances to consider include but are not limited to:

- The inmate's current demeanor, (i.e., verbal vs. physical aggression / passive vs. active resistance).
- Prior incidents of violence toward staff.
- The safety of inmates and staff.
- Possession of a weapon.
- The use of barriers, barricades or a personal barrier (i.e., cloth or plastic placed about the inmates face and head).
- The inmate's actions during any prior controlled uses of force.
- Physical design of the cell.
- The location of cell with regard to cross contamination (i.e., OHU/CTC/PIP/PSU, open cell front).
- Effective communication needs as identified by the Disability and Effective Communications System (DECS).
- Input from the assigned housing unit staff.

Health care concerns to consider include but are not limited to:

- Current medical health.
- Current and prior mental health issues.
- The inmate's ability to understand orders or difficulty complying with orders due to mental health issues.
- Potential for substantial risk of decompensation.
- Developmental/intellectual disabilities.

A decision to use chemical agents for the extraction should be based on more than passive resistance to placement in restraints or refusal to follow orders. If the inmate has not responded to staff for an extended period of time, and it appears that the inmate does not present an imminent physical threat, additional

OWENS 159

consideration and evaluation should occur before the use of chemical agents is authorized.

Based on the collaborative effort, the tactical plan will be finalized and approved by the on-site manager.

A controlled use of force shall not be accomplished without the physical presence of LNS. The LNS shall be in close proximity to the incident to facilitate an immediate medical response, but not so near as to become involved in the controlled use of force. The LNS is not required to don controlled use of force team equipment such as a helmet, Personal Protective Equipment kit, etc. Prior to commencing with the controlled use of force, the Incident Commander shall ensure the LNS is in possession of the appropriate medical supplies and equipment to respond to a medical emergency. The LNS who reviewed the health record and the LNS that is on-site during the controlled use of force is not required to be the same person.

### 51020.12.1    Controlled Use of Force Without Extraction

Not all controlled use of force situations are conducted to remove an inmate from a cell or other location. Controlled use of force may also be used to administer medications (PC 2602), provide medical treatment, or to complete mandated testing (i.e., TB testing, DNA, etc.) When circumstances are such that a controlled use of force is considered within a cell, on-duty health care staff shall ensure medical authorization for the involuntary medication exists. Health care staff shall also consult with the treating psychiatrist, primary care provider or mid-level provider, if available, to verify the current and critical need for involuntary medication or treatment. If the treating psychiatrist, primary care provider or mid-level provider is not available, the physician or psychiatrist on call shall be consulted. Health care staff shall advise the Incident Commander of such prior to the application of controlled use of force procedures. In these circumstances a controlled use of force team may enter the cell, physically restrain the inmate while medications/treatment are administered, and exit the cell.

The Incident Commander shall determine what, if any, safety equipment to be utilized (as identified in 51020.12.2). The decision shall be based on the totality of circumstances to include, but not be limited to:

- The inmate's current demeanor (passive resistance vs. physical aggression).
- Prior incidents toward staff.
- The inmate's actions during prior controlled use of force incidents.
- Current medical health.
- Current mental health.
- Specific purpose of the controlled use of force.

These incidents shall be video recorded; therefore, a video camera with backup videotape or media and backup batteries is required.

### 51020.12.2    Extractions

An extraction is the involuntary removal of an inmate from an area and usually occurs when the inmate is in a confined area such as a cell, holding cell, shower, or small exercise yard.

Controlled extractions occur when no imminent threat exists but an inmate's refusal to comply with orders and presence in a cell, yard, or other previously identified location poses a threat to safety and security, or disrupts the normal operation of the housing unit, facility, or institution.

Immediate extractions occur when an imminent threat exists. Some examples of when an immediate extraction may be necessary include but are not limited to; prevent or stop, great bodily injury and/or serious bodily injury, attempted suicide, self-harm, in-cell assault, or for medical concerns such as an inmate who is non-responsive, convulsing, or seizing.

The presence of supervisors, managers or health care staff is not required to conduct an immediate extraction.

If a controlled extraction becomes necessary, extraction team members shall be issued extraction equipment:

- Riot helmet with protective face shield, protective vest, respirator, elbow and shin protectors, gloves, Kevlar neck protector, and bloodborne pathogen protective suit.
- Protective shield, approximately 22" wide and 48" long.

- Expandable baton(s), handcuffs, and leg restraints.
- Video camera(s) with a backup videotape or disc and back up batteries.

If an immediate extraction in a Security Housing Unit/Administrative Segregation Unit becomes necessary, extraction team members shall be issued extraction equipment:

- Riot helmet with protective face shield, and protective vest.
- Protective shield, approximately 22" wide and 48" long.
- Expandable baton(s) and handcuffs.

The bloodborne pathogens protective suit can be used in an immediate extraction if needed. The suit is not required if bodily fluids are not present in sufficient quantities which present a threat to staff.

The bloodborne pathogens protective suits, riot helmets, and protective shields are to be stored in locations that are readily accessible to the staff responding to conduct an immediate cell extraction so as not to delay entry/response.

Prior to a controlled extraction, the Response Supervisor or Incident Commander shall ensure that the members of the extraction team do not include any staff member who was directly involved in the incident precipitating the need for extracting the inmate.

The Incident Commander will ensure the Response Supervisor and extraction team members clearly understand their roles, appropriate signals, and are familiar with the departmental use of force policy.

A briefing, including possible tactics to be used, shall be given to the extraction team by the Response Supervisor and/or Incident Commander. This briefing shall not be video recorded and should be completed away from the presence of any inmates.

If time permits prior to the actual extraction, a mock extraction may be conducted in a vacated area with participating staff in order to ensure that custodial staff are familiar with their roles during the extraction. Several simulated operations will ensure smoothness, and timing during the actual extraction.

Prior to the extraction, the Incident Commander will communicate with the officer responsible/assigned to open/close cell doors and establish verbal/non-verbal signals specific to the controlled use of force.

The Incident Commander shall ensure the control officer understands that only the Incident Commander shall authorize the opening and closing of affected doors.

For the safety of staff, prior to being removed from a cell, it is preferred that the inmate submit to a visual search. The inmate should remove all clothing, except his/her underwear, and move back far enough from the cell door to allow a visual inspection. The inmate shall be visually inspected from head to toe, front and back. The inmate will run his/her fingers around the inside waistband of his/her underwear. The inmate shall be allowed to retain his/her underwear while being restrained and removed from the cell.

If the inmate refuses to cooperate with the visual search, but is willing to submit to restraints, the inmate shall be placed in restraints and removed from the cell. The application of restraints shall not be delayed due to the inmate's refusal to submit to being searched, or to have the inmate remove any clothing. Upon removal from the cell, the inmate should be subjected to search for staff safety.

Placement of an inmate on the stomach for a short period of time to restrain an inmate is authorized; however once the inmate is exposed to chemical agents and/or if a spit hood/mask is placed on the inmate, staff shall not place the inmate on his/her stomach, or in a position that allows the inmate to end up on his/her stomach, for any period longer than necessary to gain or maintain control.

The procedure for cell extractions where two inmates are in the cell remains the same as for a single celled inmate with the following additions:

- Additional team members shall be assigned as determined by the Incident Commander.
- In the event one of the inmates is compliant with staff's instructions, and if in the judgment of the Incident Commander it is safe to open the cell door, the inmate shall be removed.
- If it is unsafe to remove the compliant inmate, they shall be required to remain in the cell and appropriate instructions shall be issued for the duration of the incident.

The procedures for an extraction from a holding cell, shower, small exercise yard, etc., whether in a segregated housing unit or general population remain the same as cell extractions except as follows:

- Additional extraction team members or an additional extraction team may be assigned as determined by the Incident Commander.
- In the event two or more inmates are to be extracted from the same area, at least one additional supervisor shall be assigned.

### 51020.12.3    Controlled Uses of Force-Video Recording Requirements

327

OWENS 160

the ability to move with quickness, speed and balance. The participant may start from a standing position if the prone posture would exacerbate a physical injury or disability.

*Note:* Participant chooses either the Sit and Reach Test or the Sit-ups Test.
Each employee shall be allowed two attempts. Employees unsuccessful on their first attempt have 60 days during which they may retest.

#### PFIPP Coordinator

Each Warden and RPA shall designate a PFIPP coordinator for their institution or region.

The PFIPP coordinator shall:

- Locate an indoor testing space measuring at least 40 feet x 50 feet x 12 feet.
- Identify eligible employees.
- Schedule test dates.
- Prepare and distribute a memorandum to all employees currently receiving the incentive pay.
- Instruct the employees to sign and date the memorandum and return it to the PFIPP coordinator.
- Distribute the following to each eligible employee:
    - Letter to participant.
    - Physical Fitness Incentive Pay Testing Medical History Questionnaire, Form 5.511.
    - DJJ/CDCR Physical Fitness Incentive Pay Testing Medical Release Form, Form 5.513.

#### Employee Responsibility

Employees who choose to participate shall:

- Obtain a medical release prior to testing.
- Train and test on their own time and at their expense.

#### 31130.11 Housing Stipend

Specified employees may be eligible for a housing stipend if employed at certain specified institutions as follows:

- Employees in Bargaining Unit 6 shall receive compensation in accordance with the provisions of the Bargaining Unit 6 Memorandum of Understanding.
- Supervisors and managers of employees in Bargaining Unit 6 shall receive compensation in accordance with the provisions of a pay letter issued by the DPA.

#### 31130.12 Revision

The Deputy Director, Human Resources, shall ensure that the content of this Article is accurate and current.

#### 31130.13 References

GC §§ 7290 - 7299.8, 13921, 16304.1, 19780, 19836, 19991.4, and 19991.7. CCR (2) §§ 599.677, 599.687(d), 599.810, 624, 630, 631, and 632.

#### ARTICLE 14 - INTERNAL AFFAIRS INVESTIGATIONS

*Effective January 2007*

#### 31140.1 Policy

Every allegation of employee misconduct within the California Department of Corrections and Rehabilitation (CDCR or Department) shall be promptly reported, objectively reviewed, and investigated when appropriate.

#### 31140.2 Purpose

To ensure allegations of employee misconduct are addressed and investigations are conducted in a fair and consistent manner.

#### 31140.3 Definitions

**Allegation Inquiry** – The collection of preliminary information concerning an allegation of employee misconduct necessary to evaluate whether a matter shall be referred to the Central Intake Unit.

**Appointing Power** - The Secretary of the Department.

**Assistant General Counsel** (AGC) – An individual responsible for managing the Employment Advocacy and Prosecution Team (EAPT) in the Department's Office of Legal Affairs (OLA).

**Assistant Secretary, Office of Internal Affairs** (OIA) - An individual responsible for the operation and functions of the OIA.

**Bureau of Independent Review** (BIR) – A unit within the Office of the Inspector General (OIG) responsible for contemporaneous public oversight of the Department's investigative and disciplinary processes.

**Case Management System** (CMS) – An electronic system that allows real-time documentation on investigative case activity and allows various participants within the employee disciplinary process to monitor cases and record key decisions and due dates. The CMS tracks all investigative requests, case acceptance and rejections, and case activity on all Internal Affairs investigations, as well as direct adverse actions that impose penalties without an investigation.

**Central Intake Panel** (CIP) – A collection of stakeholders led by the OIA that ensures all referred allegations of employee misconduct are evaluated consistently and assigned appropriately throughout the Department. Individuals who participate regularly in the CIP include, but are not limited to, the following: Assistant Secretary, OIA, or designee; Chief Assistant Inspector General (CAIG), BIR, or designee; AGC, EAPT, or designee, assigned Special Agents; and other pertinent Department representatives. The Assistant Secretary, OIA, has the authority to initiate Internal Affairs investigations and is ultimately responsible for the acceptance and rejection of all cases that come before the CIP.

**Central Intake Unit** (CIU) – A team of Special Agents, supervisors, and support staff within the OIA responsible for receiving, screening, and analyzing allegation inquiries for presentation to the CIP.

**Chief Assistant Inspector General** (CAIG) – An individual responsible for the operation and functions of the BIR, OIG.

**Deputy Inspector General** – An investigator employed by the OIG.

**Designated Cases** - Those cases assigned to the Vertical Advocates, including matters involving staff integrity and/or dishonesty, abuse of authority, sexual misconduct, use of force in which an inmate suffers death or serious injury, use of deadly force, serious allegations made against supervisors, and high profile or dismissal cases assigned to the Vertical Advocate by the AGC.

**Employee Relations Officer** (ERO)/**Disciplinary Officer** – An employee designated by the Hiring Authority to coordinate adverse actions.

**Employment Advocacy and Prosecution Team** (EAPT) - The team in the Department's OIA responsible for operation of the Vertical Advocacy Program.

**Hiring Authority** – The Undersecretary, General Counsel, Chief Information Officer, or any Assistant Secretary, Executive Officer, Chief Deputy Secretary, Director, Deputy Director, Associate Director, Warden, Parole Administrator, Superintendent, Superintendent of Education, Assistant Superintendent of Education, Health Care Manager, Regional Health Care Administrator, or any other person authorized by the appointing power to hire, discipline, and dismiss staff under his/her signature authority. The Administrator at the Richard A. McGee Correctional Training Center shall serve as the Hiring Authority for Correctional Officer Cadets. The appointing power includes a Hiring Authority for purposes of this Article.

**Investigation** - The collection of evidence that supports or refutes an allegation of misconduct, including criminal investigations, administrative investigations, retaliation investigations, or allegation inquiries.

**Locally Designated Investigator(s)** - A local investigator or a team of local investigators who meet the requirements to conduct Internal Affairs investigations and who perform allegation inquiries and conduct local Internal Affairs investigations as delegated and assigned by OIA regional offices.

**Office of Civil Rights** (OCR) – The entity with authority to investigate complaints related to Equal Employment Opportunity (EEO) issues.

**Office of Internal Affairs** - The entity with authority to investigate allegations of employee misconduct.

**Senior and Special Assistant Inspectors General** (SAIG) – Attorneys employed by the BIR who report to the CAIG.

**Vertical Advocacy Model** – A system that ensures legal representation for the Department during the investigative and employee disciplinary process in order to hold staff accountable for misconduct by way of thorough and complete internal investigations, principled decision-making, assessment of the investigations, and consistent and appropriate discipline.

**Vertical Advocate** – An EAPT attorney assigned to one or more specific Hiring Authority locations to consult with investigators and Hiring

184

OWENS 149

Authorities concerning investigative findings, disciplinary decisions, and to prosecute designated cases.

### 31140.4      Responsibility

### 31140.4.1      Appointing Power

The appointing power shall ensure compliance with the Department's Internal Affairs investigatory policy and procedures.

### 31140.4.2      Chief Deputy Secretary

Each Chief Deputy Secretary shall be responsible for ensuring compliance with the Department's Internal Affairs investigatory policy and procedures within his/her respective area.

### 31140.4.3      Office of Internal Affairs

The OIA is responsible for determining which allegations of staff misconduct warrant an Internal Affairs investigation and for completing all investigations in a timely and thorough manner.

### 31140.4.4      Assistant Secretary, OIA

The Assistant Secretary shall be responsible for the following:

* Overseeing the Department's investigative program and ensuring systemwide implementation of the Internal Affairs investigatory policy and procedures;

* Establishing guidelines, priorities, training, and management systems to ensure an efficient and effective Internal Affairs operation;

* Participating in the development, implementation, and evaluation of strategic and operational plans;

* Coordinating with the CAIG, or designee for cases monitored by the BIR and the AGC, EAPT, for designated cases;

* Coordinating with and informing the appropriate Chief Deputy Secretary, the Undersecretary, and the Secretary regarding high-profile investigations being monitored by the BIR.

### 31140.4.5      Chief, OIA

Each Chief shall be responsible for the following:

* Overseeing the Department's Internal Affairs investigative program and ensuring systemwide application of the Internal Affairs investigatory policy and procedures;

* Participating in the strategic and operational plans;

* Coordinating with the CAIG or designee on cases monitored by the BIR and the AGC or designee for designated cases;

* Elevating cases to the Assistant Secretary, OIA, as necessary.

### 31140.4.6      Special Agent-In-Charge (SAC)

Each Special Agent-In-Change shall be responsible for the following:

* Overseeing operations of the OIA Headquarters or regional office as well as the local Internal Affairs investigations in the respective region;

* Cooperating with and providing continual real-time consultation among OIA, the Vertical Advocate for designated cases, and the BIR for cases the BIR is monitoring;

* Ensuring OIA staff assigned to conduct investigations are properly trained and qualified;

* Monitoring all cases under his/her control to ensure cases are being investigated in a timely manner;

* Serving as a liaison between the OIA and Hiring Authorities regarding personnel investigations.

### 31140.4.7      Senior Special Agent

Each Senior Special Agent shall be responsible for the following:

* Assigning and supervising Internal Affairs investigations conducted by Special Agents or locally designated investigators;

* Cooperating with and providing continual real-time consultation among OIA, the Vertical Advocate for designated cases, and the BIR for cases the BIR is monitoring.

### 31140.4.8      Special Agent

Special Agents shall be responsible for the following:

* Conducting investigations in a manner that provides a complete and thorough presentation of all facts regarding the allegation or complaint;

* Cooperating with and providing continual real-time consultation with OIA, the Vertical Advocate for designated cases, and the BIR for cases the BIR is monitoring;

* Providing the Hiring Authority with consultation on investigative reports and providing a complete recitation of the facts, while refraining from conjecture or opinion;

* Updating case activity in the CMS.

### 31140.4.9      Central Intake Unit

The CIU, consisting of OIA personnel, shall ensure all referred acts of employee misconduct are analyzed and presented to the CIP, and the CIP shall ensure that all referred acts of misconduct are evaluated consistently and assigned appropriately throughout the Department.

### 31140.4.10      Hiring Authority

Each Hiring Authority shall be responsible for the following:

* Ensuring each allegation of employee misconduct is logged (regardless of whether the allegation is referred for investigation), receives prompt attention, and is addressed appropriately;

* Requesting investigations and direct adverse action by completing and forwarding to OIA CDC Form 989, Confidential Request, for Internal Affairs Investigation/Notification of Direct Adverse Action;

* Reviewing investigative reports, determining investigative findings, and making determinations of appropriate discipline;

* Notifying each subject in writing following the Hiring Authority's determination of investigative findings. Refer to DOM Chapter 3, Article 22, Section 33030.13.2, "Investigative Closure Memorandum," for direction regarding notification to the subject of an investigation;

* Notifying each complainant, including citizen, inmate, or employee complainants, in writing, of the finding on the original complaint within thirty (30) days of the determination of the disposition of the investigation regarding the original complaint. The Hiring Authority shall not notify the complainant of specific investigative findings, but shall make a separate finding on the original complaint. At no time should the specifics related to any personnel action be discussed with the complainant in the matter. The notification of the finding on the complaint shall be limited to whether the original complaint is sustained, not sustained, exonerated, or unfounded;

* Coordinating and consulting with the Vertical Advocate for designated cases and the SAIG for cases monitored by the BIR before making investigative findings or disciplinary determinations and prior to approving any settlement agreements.

### 31140.4.11      Supervisors and Managers

Each supervisor and manager shall be responsible for referring alleged misconduct and requests for investigation or adverse action to the Hiring Authority immediately following discovery of facts which may constitute misconduct.

### 31140.4.12      Locally Designated Investigators

Locally designated investigators shall be responsible for the following:

* Conducting investigations, as assigned by OIA regional offices, in a manner that provides a complete and thorough presentation of all facts regarding the allegation or complaint;

* Maintaining integrity and the confidentiality of the investigative process, unless prior approval to discuss a case with the Hiring Authority is obtained through the SAC;

* Cooperating with and providing continual real-time consultation among OIA, the Vertical Advocate for designated cases, and the BIR for cases the BIR is monitoring;

* Identifying issues related to allegations of employee misconduct and assisting the Hiring Authority, Vertical Advocate for designated cases, and the SAIG for cases monitored by the BIR;

* Updating case activity in CMS.

### 31140.4.13      Vertical Advocate

The Vertical Advocate shall be responsible for the following:

* Coordinating with the assigned investigator for designated cases for the duration of an investigation and evaluating completed investigations for legal sufficiency to prosecute an administrative action;

* Monitoring and coordinating with the ERO/Disciplinary Officer the adverse action process for all designated cases, from the onset of an investigation, including calculation of statute of limitations expiration dates;

* Providing legal consultation for all designated cases to the assigned investigator, including developing the investigative plan, assisting with

OWENS 150

Allegation inquiries shall be conducted at the direction of the Hiring Authority when there is an allegation of misconduct, which if true could lead to adverse action, and the subject(s), allegation(s), or both are not clearly defined or more information is necessary to determine if misconduct may have occurred. Each allegation inquiry shall be promptly performed by locally designated investigators approved by the OIA or OIA investigators. A written allegation inquiry report shall be provided to the Hiring Authority and shall document the collection of preliminary information that supports or refutes alleged misconduct. All applicable sections of Memoranda of Understanding (MOU) related to personnel investigations shall be followed.

The Hiring Authority, or designee, shall indicate on the CDCR Form 2140, in the designated area, if an allegation inquiry is being conducted and the resulting action from the allegation inquiry (e.g., referred to CIU for investigation, processed as a CDC Form 602, Inmate/Parolee Appeal Form, or found to not have merit).

If, during the course of the allegation inquiry, sufficient information is obtained to warrant an Internal Affairs investigation, the locally designated investigators approved by the OIA or the OIA investigator shall notify the Hiring Authority. The Hiring Authority shall forward a CDC Form 989 to the OIA CIU requesting an Internal Affairs investigation. If the allegation inquiry reveals sufficient evidence for the Hiring Authority to impose direct adverse action, the Hiring Authority shall forward a CDC Form 989 to the OIA CIU requesting to impose direct adverse action.

### 31140.15    Requests for Internal Affairs Investigation

The CDC Form 989 and the corresponding Documents and Materials checklist shall be promptly completed and forwarded to the OIA CIU, by the Hiring Authority for processing as soon as is reasonably practical. The Hiring Authority shall complete the CDC Form 989 and shall submit copies of all documents and materials pertinent to the request. Original documents and evidence shall be maintained by the requesting Hiring Authority unless otherwise agreed to and ordered by the SAC.

The Hiring Authority or designee shall note the complainants name and contact information, the supervisor/manager who discovered the misconduct, and the discovery date as follows:

- Complainant: Individual (inmate, ward, parolee, citizen, staff, or other) who brought the misconduct allegation to the attention of CDCR staff.
- Discovery: Date that an uninvolved manager or supervisor observed, was advised of, or otherwise discovered the misconduct.

The Hiring Authority or designee shall note any special information on the CDC Form 989 such as the employee being placed on administrative time off, temporarily reassigned pending the investigation, issued a firearm restriction, or other pertinent information. The CDC Form 989, with supporting documentation, shall be forwarded to the OIA CIU by special mail processing (express/receipts) or personal delivery. The transmittal envelope shall be sealed and clearly marked "CONFIDENTIAL" with appropriate return address information.

A limited exception to the Central Intake requirements exists for urgent matters involving potential employee misconduct requiring immediate investigative action. If immediate investigative action is believed to be necessary, the Hiring Authority shall request assistance from the OIA Regional Office. If OIA is unable to respond, the Hiring Authority may take independent action but is required to report such action to the OIA Regional Office no later than the next business day.

### 31140.16    Review, Evaluation, and Disposition

The CIU shall review each CDC Form 989 and all supporting documentation and shall evaluate and make a determination regarding each matter within thirty (30) calendar days.

Requests for investigation shall receive a case number and be evaluated using a priority approach. Outcomes of the evaluation are as follows:

1. **Accepted for Investigation**

   Allegations of misconduct accepted by the CIU for investigation shall be forwarded to one of the OIA regional offices for assignment. Once received, the OIA regional will assign the investigation as follows:

   - Assign the investigation to a Special Agent from the OIA regional office within ten (10) calendar days;
   - Assign the investigation to a locally designated investigator within ten (10) calendar days. The investigation shall be supervised and monitored by a Senior Special Agent from the respective OIA Regional Office.

   The SAC, CIU, shall provide written acceptance of the case by memorandum to the Hiring Authority. The memorandum shall include

the OIA regional office with case responsibility and the CMS case number. This acceptance memorandum shall remain a permanent record in the Internal Affairs investigator's case file.

2. **Referred for Investigation**

   These cases contain allegations that are more appropriately investigated by other entities (i.e., outside law enforcement, the OIG, or OCR).

3. **Returned to the Hiring Authority Without Investigation**

   Investigation requests may be returned to the Hiring Authority for failing to provide all necessary information, for failing to meet the criteria for an Internal Affairs investigation, or when the CIU determines no investigation is warranted. These requests are returned to the Hiring Authority with a recommendation for the following:

   - **Direct Discipline/Supervisory Action:**

     If misconduct is sufficiently well-documented, the case may be referred back to the Hiring Authority for direct adverse action with consultation from an assigned Vertical Advocate for designated cases or in consultation with the Vertical Advocate for all other cases. If the Vertical Advocate or ERO/Disciplinary Officer determines that a subject interview or other interview(s) is necessary, the Vertical Advocate or ERO/Disciplinary Officer shall notify the CIU and request an interview(s). Locally designated investigators are not authorized to initiate investigations or conduct interviews without approval of OIA.

     Some misconduct should be addressed by taking corrective action, such as training, policy or procedure change, or other progressive discipline measures.

   - **Further Investigation or Inquiry Required:**

     Some requests for investigation may require the Hiring Authority to provide additional information or investigation. When the CIU determines insufficient information or documentation was submitted with the CDC Form 989, CIU staff shall contact the Hiring Authority or designee and request additional information. The requested information and/or documentation shall be provided to the CIU within ten (10) calendar days, if the information is available.

   - **No action:**

     Some requests may not warrant any corrective or adverse action.

   For requests returned without investigation, a memorandum shall be completed by the SAC and forwarded to the Hiring Authority. The memorandum shall include a detailed explanation for the action taken and shall direct the Hiring Authority, as appropriate, to determine the appropriate disciplinary action while taking into account any prior misconduct by the employee or corrective action imposed. A copy of the memorandum shall be retained in the CIU file. In addition to responding in writing, the SAC shall be available to the Hiring Authority to discuss the decision for the return of the investigation. The Hiring Authority may appeal the decision in writing to the Chief, OIA, Headquarters Operations, promptly following issuance of a returned case memorandum.

### 31140.17    Case Assignment

When a request for investigation is accepted, the case shall be assigned to an OIA regional office (Headquarters, Northern, Central, or Southern). If the case is assigned by the OIA region to a locally designated investigator, the case shall receive a case number and be supervised by a Senior Special Agent from the OIA regional office. The locally designated investigator shall complete the case and return it to the Senior Special Agent for final review before it is noted as complete in the CMS.

### 31140.18    Logging Allegations

In accordance with Penal Code Section 6065(b)(2), all Internal Affairs allegations or complaints, whether investigated or not, shall be logged into CMS and numbered sequentially on an annual basis. The log shall specify, but not be limited to, the following information: The sequential number of the allegation or complaint, the date of receipt of the allegation or complaint, the location or facility to which the allegation or complaint pertains, and the disposition of all actions taken, including any final action taken. The log shall be made available to the Inspector General.

### 31140.19    Case Management System

The OIA Information Technology personnel shall maintain, control, and secure an electronic CMS for purposes of security and efficiency and to allow real-time documentation of case activity by investigators, Vertical Advocates, and ERO/Disciplinary Officers. In addition to capturing information during the course of an investigation, the CMS will capture post-

OWENS 152

preparation of investigative interviews, and attending investigative interviews, as appropriate, to assess witness demeanor and credibility;

• Providing legal consultation to the Hiring Authority on all designated cases and coordinating with the SAIG for cases monitored by the BIR.

### 31140.4.14    Office of Civil Rights

The OCR may initiate investigations when an employee files a complaint with the OCR regarding discrimination, harassment, or EEO related retaliation. Following completion of OCR's evaluation, and if the OCR determines that an OIA investigation may be necessary, the OCR shall forward a copy of the intake document and all related information to the OIA for investigation consideration.

### 31140.5    Employee Expectations & Reporting

Each employee, regardless of classification or rank, shall adhere to the Department's Employee Performance Standards as defined in DOM, Section 3, Article 22, Subsection 33030.3. Each employee shall report misconduct or any unethical or illegal activity in a timely manner. Failure to report employee misconduct or any unethical or illegal activity in an investigation or allegation inquiry shall be grounds for corrective action, disciplinary action, or both. Employees shall not make false statements when questioned, interviewed, or in reports submitted.

### 31140.5.1    Employee Duty to Cooperate

Each employee of the CDCR is required to comply and cooperate as follows:

• If requested to make a statement in any official internal investigation conducted by the Department, employees shall make full, complete, and truthful statements. Failure or refusal to make statements or making false statements during Department Internal Affairs investigations may result in disciplinary action.

• Employees shall not take any action which would interfere with, delay, distort, or unduly influence any official investigation conducted by the Department or any other government agency. Any employee who knowingly gives false evidence, withholds evidence, or interferes in any way during such an investigation, or requests or encourages another to do so, may be subject to disciplinary action.

• Employees have a duty to cooperate with investigators of the Department and with officials from other law enforcement agencies who are conducting a criminal investigation. Employees shall make full, complete, and truthful statements. Failure to cooperate may result in disciplinary action.

### 31140.6    Authority to Conduct Investigations

Pursuant to Government Code Section 11182, the Secretary of the Department delegates the authority to initiate and conduct investigations to the Assistant Secretary, OIA.

### 31140.7    Requirements for Hiring Internal Affairs Investigators

Investigators shall be hired in accordance with Penal Code Sections 6065 (b)(1) and 6126.1(c).

### 31140.8    Required Training

All Internal Affairs investigators shall complete investigation training and be certified as mandated by Penal Code Section 6126.1 and the OIA Investigation Training Requirements. In addition, Internal Affairs investigators shall complete advanced investigative training as outlined in the OIA Investigation Training Requirements.

### 31140.9    Filing an Allegation of Employee Misconduct with a Hiring Authority

Information regarding alleged employee misconduct shall be reported promptly by staff to a supervisor or other appropriate departmental, governmental, or law enforcement entity. If information is reported verbally to a supervisor, the staff person shall also submit a written report to the supervisor. The supervisor shall prepare a separate written report regarding the allegation(s) and shall submit his/her report and the staff person's report to the Hiring Authority or to the Hiring Authority's supervisor if the allegation(s) are against the Hiring Authority. Such reports shall include all pertinent information concerning the allegation(s), the timeline, and the source(s) of the information.

Any allegation of misconduct which is believed by staff to constitute an emergency shall be reported immediately to a supervisor, locally designated investigators, or the OIA. In the event of such an emergency, staff shall follow-up with the written report within one (1) day of learning of the information. Some instances that constitute an emergency are as follows:

• Possible loss of life or serious bodily injury;

• Serious breach of facility security;

• Further aggravation of a potentially dangerous situation;

• Activities which seriously compromise or jeopardize an investigation;

• An illegal activity which may occur imminently.

### 31140.10    Reporting Misconduct and Protecting Employees from Retaliation

To encourage and protect employees that confront and report serious misconduct, the Department has strengthened its policies and procedures to provide additional protections beyond those included in the California Whistleblower Protection Act (Government Code section 8547 et seq.) and other California protective statutes. This reporting of misconduct process and the protection offered by the Department are detailed in the Department's "Policy and Procedure for Reporting Serious Misconduct and Protecting Employees from Retaliation." The procedures may be obtained by contacting the OIA.

### 31140.11    Inmate, Ward, or Parolee Complaints Against Staff.

All inmate, ward, or parolee complaints against staff shall be processed in accordance with DOM, Section 54100.

### 31140.12    Complaints by Members of the Public Against Department Employees

Pursuant to Penal Code Section 832.5, it is the policy of the Department, as an employer of peace officers, to have a procedure for investigating a complaint by a member of the public against its peace officers.

Any person, other than an inmate, ward, parolee, or departmental employee, who wishes to file a complaint of misconduct by a departmental peace officer as defined in the California Code of Regulations (CCR), Title 15, Section 3291(b), shall be advised to submit a complaint. Complaints of misconduct will normally be recorded on a CDCR Form 2142, Citizen's Complaint Against Employee of the California Department of Corrections.

A complaint may be made at any time, day or night, to any on-duty departmental supervisor. The complainant may also choose to mail or deliver his/her complaint directly to the Hiring Authority or any Department Head. Whenever possible, the complainant shall be requested to personally meet with or talk to the Hiring Authority or designee at the time of the original complaint.

Upon initial receipt of a complaint by a member of the public, the supervisor accepting the complaint shall confirm the complaint involves a Department employee(s). Complaints determined to involve personnel from other agencies shall be forwarded to the appropriate authority through the appropriate chain of command. The supervisor accepting the complaint shall prepare a Citizen's Complaint Receipt Acknowledgment and forward it to the complainant within five (5) working days.

Upon receipt of a written complaint or CDCR Form 2142 from a member of the public, the departmental supervisor accepting the complaint shall forward the complaint to the Hiring Authority for review. The Hiring Authority shall evaluate the complaint and determine whether the issue is supervisory in nature, if a CDCR Form 989 is required, or if a written response to the member of the public will suffice. If the complaint is regarding sexual harassment or discrimination based on race, gender, national origin, religion, sexual orientation, or disability, the complaint shall be referred to the OCR for investigation and appropriate disposition.

Complaints and reports and findings relating to the complaints made by members of the public shall be retained for a period of at least five (5) years pursuant to Penal Code Section 832.5 (b).

### 31140.13    Logging Allegations of Employee Misconduct

The Hiring Authority or designee shall log each allegation of employee misconduct, regardless of whether the allegation is referred for investigation, on the CDCR Form 2140, Internal Affairs Allegation Log. The log shall be incident-driven; therefore, more that one employee can be listed under one log entry. Log numbers shall be assigned using a standard logging system, utilizing the following format: ABC-001-06.

• The first identifier "ABC" indicates the institution (i.e. CMF), field office, or other work site by the acronym.

• The second identifier "001" indicates the sequential number. The sequence continues throughout the year.

• The third identifier indicates the calendar year in which the allegation of misconducted was initiated for action.

To ensure department-wide standerdization and compliance with departmental audit tools, the CDCR Form 2140 shall be utilized by each Hiring Authority for tracking.

### 31140.14    Allegation Inquiry

OWENS 151

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,            VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-kIN

PP.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR-837 (REV.10/06)
CRIME/INCIDENT REPORT. LOG NO.: SAC-PSU-15-02-0194A1.
Hosted by Defendants. C.MARTINCEK, K.BLESSING, J.MUNILLO, C.DRAKE,
P.BETTENCOURT, L.MERCADO, D.MATTHEWS, J.LEBECK, M.BRADY, J.BURKE,
J.DEFAZIO, and C.BOATRIGHT on 02/18/2015. hours. the exhibits
herein Show the reports written by defendants after the beating to
the Plaintiff, in their attempts to Mislead Superver's and conceal their
unlawful beating to the Plaintiff, with the hope's of getting away with
their attack. The exhibits herein show Some of the names of officer's. who
were involved in the beating, but who didnot provide reports on their
Participation, which is a violation of department Poilcy. The exhibits
Show that Superving officials Minimized the injuries suffered to the
Plaintiff and that they added thing to defendants reports that were not
written in defendants reports, in their attempt to aid and abet
involved defendants. and that they lead involved defendants on what
to Say, in the concealing of their unlawful beating upon the Plaintiff,
by issuing Clarification reports to them. The exhibits show that

## NUMBER OF PAGE'S TO THIS EXHIBIT: 1-31    PAGE'S
Superving Prison officials. were fully aweat that defendants gave no
warnings during their beating to the Plaintiff when Punching him in
the face multiple times while the Plaintiff was defenseless and handcuffed
behind his back. The exhibits show    the excessive force use by defendants. on the
Plaintiff, that caused SBI.

# EXHIBIT SEPARATION PAGE.

THEON OWENS,_____ vs. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

PP- 1.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 837-A (REV. 10/06)
## CRIME/INCIDENT REPORT PART A- COVER SHEET.

Hosted by defendant-Lieutenant. CORY MARTINCEK, on 02/18/
2015 at 1315 hours. The exhibit herein Shows the report given by
defendant-MARTINCEK, whereon he noted that the Plaintiff, was
charged with the allegation of "Battery on a Peace Officer." The
exhibit also Shows that the allegation was referred to the D.A.'S
office. The exhibit also Shows that Supervising Prison officials were
fully aware that involved defendants gave no verbal warning
while gratuitously Punching the Plaintiff numerous time's in the
face, with their clenched fist's, as MARTINCEK noted "# Warning":
0...4 Punches." which Shows that defendants never Said "Stop
resisting" to the allegedly resisting Plaintiff, which Shows
excessive force was used.

# CRIME / INCIDENT REPORT
DV-1.5.4

## PART A - COVER SHEET
CDCR 837-A (REV. 10/06)

Page 1 of 8

| INCIDENT LOG NUMBER | INCIDENT DATE | INCIDENT TIME |
|---|---|---|
| SAC-PSU-15-02-0194A1 | 02/18/2015 | 13:15 |

| INSTITUTION | FACILITY | FACILITY LEVEL | INCIDENT SITE | LOCATION | PROGRAM | AD/SEG YARD | USE OF FORCE: |
|---|---|---|---|---|---|---|---|
| SAC | PSU - 180 DESIGN | ☐ I ☐ II ☐ RC ☐ III ☑ IV | FACILTIY A | FA 3 BLOCK | PSU | N/A | Yes |

**SPECIFIC CRIME / INCIDENT**
Battery on a Peace Officer Resulting in Use of Force - (PHYSICAL)

☑ CCR ☐ PC ☐ N/A NUMBER / SUBSECTION
3005-d1 Force or Violence

| D.A. REFERRAL ELIGIBLE | CRISIS RESPONSE TEAM ACTIVATED | MUTUAL AID | PIO/AA NOTIFIED |
|---|---|---|---|
| ☑ Yes ☐ No | ☐ Yes ☑ No | ☐ Yes ☑ No | ☑ Yes ☐ No |

**RELATED INFORMATION (CHECK ALL THAT APPLY OR N/A)**

| DEATH AND CAUSE OF DEATH | ASSAULT / BATTERY | TYPE OF ASSAULT / BATTERY |
|---|---|---|
| ☑ N/A | ☐ N/A<br>1. STAFF | ☐ N/A<br>1. BATTERY ON STAFF<br><br>Other Desc: |

| SERIOUS INJURY | INMATE WEAPONS | TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|---|
| ☑ N/A | ☐ N/A<br>1. Head - | ☐ N/A<br>1. PHYSICAL FORCE -<br>#Warning: 0 #Effect: 0 #Chemical: 0<br>2. PHYSICAL FORCE - OTHER<br>#Warning: 0 #Effect: 0 #Chemical: 0<br>Other Description: 4 PUNCHES |

**ESCAPES**
☑ N/A

| CONTROLLED SUBSTANCE | WEIGHT/ In Grams | PROGRAM STATUS | EXCEPTIONAL ACTIVITY |
|---|---|---|---|
| ☑ N/A | | ☑ N/A | ☑ N/A<br><br><br><br><br>**EXTRACTION:**<br>☑ N/A |

**BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES)**
On Wednesday, February 18, 2015, at approximately 1315 hours, inmate OWENS (V-60905, FA3-232) violated the California Code of Regulations, Title 15, Section 3005 (d) (1) when he committed the act of Battery on a Peace Officer Resulting in Use Of Force (Physical).

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID# | BADGE # |
|---|---|---|---|
| CORY MARTINCEK | CORRECTIONAL LIEUTENANT | | 0 |
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE | DATE |
| | | | 2/18/2015 |
| NAME OF WARDEN / AOD (PRINT/ SIGN) | | TITLE | DATE |
| JEFF MACOMBER | | WARDEN | 3/5/15 |

# EXHIBIT SEPARATION PAGE.

THEON OWENS, _____ VS. JOSEPH DEFAZIO. ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

PP-2.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-A1 (REV.10/06)(CRIME /INCIDENT REPORT PART A1-SUPPLEMENT.

Hosted by defendant-Lieutenant (L.t.) CORY MARTINCEK on 2/18/2015, at 15:15 hours. The exhibit herein shows the Continuation of the report given by MARTINCEK. Whereon he wrote things that were not written in any of the involved defendants reports (e.g. on scene officers BRADY, LEBECK, and BURKE all grabbed owens arms, and legs physically trying to... prevent further injury to... "inmate" without success.), which was never stated in involved defendants reports, as defendants were not trying to prevent any thing, but were rather trying to cause the plaintiff physical harm. And (e.g. officer DEFAZIO attempted to apply a spit net to OWENS head and OWENS again tried to bite DEFAZIO. at which time officer DEFAZIO again struck OWENS in the head area.) which was never stated in involved defendants reports. Which shows the intention deliberate indifference in MARTINCEK's attempt to mislead and conceal the incident. The exhibit also shows MARTINCEK's intention deliberate indifference to the plaintiff's injuries sustained from the incident (e.g.... he sustained "a" missing tooth, and abrasion" "to his lip." "a" swollen and dislocated left eye. as well as reddened forehead area.) which shows the concealing.

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART A1 - SUPPLEMENT**
CDCR 837-A1 (REV. 10/06)

DV-1.5.4

| | | Page 2 of 8 | INCIDENT LOG NUMBER SAC-PSU-15-02-0194 |
|---|---|---|---|

| INSTITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| SAC | PSU - 180 DESIGN | 02/18/2015 | 13:15 |

TYPE OF INFORMATION:

☑ SYNOPSIS/SUMMARY OF INCIDENT ☐ SUPPLEMENTAL INFORMATION ☐ AMENDED INFORMATION ☐ CLOSURE REPORT

On Wednesday, February 18, 2015, at approximately 1315 hours, inmate OWENS (V-60905, FA3-232) violated the California Code of Regulations, Title 15, Section 3005 (d) (1) when he committed the act of Battery on a Peace Officer Resulting in Use Of Force (Physical).

Specifically, on Wednesday, February 18, 2015, at approximately 1315 hours, Officers, J. Defazio, J. Burke, J. Lebeck and M. Brady arrived at cell, FA3-232 solely occupied by inmate OWENS (V-60905) in order to conduct a cell search as a result of a staff gassing he had just committed. Officer Lebeck ordered OWENS to submit to hand cuffs to which he complied and motioned for control booth Officer D. Matthews to open the cell door. As OWENS was backing out of his assigned cell, he quickly spun his body and struck Officer Defazio in the chest with his head. Control booth Officer D. Matthews activated his personal alarm and summoned for assistance via institutional radio. Officer Defazio used immediate physical force to cease OWEN's attack and punched him in the facial area with his left fist, while simultaneously pulling him to the ground. Once on the ground OWENS continued his attack by thrashing his body from side to side and kicking his legs attempting to further batter staff. On scene Officers, Brady, Lebeck and Burke all grabbed OWENS arms and legs, physically trying to hold OWENS on the ground and prevent further injury to staff or inmate without success. OWENS refocused his attack on Officer Defazio and attempted to bite his left hand while Officer Defazio was trying to maintain control of OWENS upper body. Officer Defazio quickly removed his left hand away from OWENS mouth and struck him twice in his head area with his clenched left fist with no effect. Officer Defazio attempted to apply a spit net to Owens head and OWENS again tried to bite Officer Defazio at which time, Officer Defazio again struck OWENS in the head area. Officer Lebeck and Brady secured OWENS legs and placed him in leg restraints. Owens complied with all further orders and spit net was applied to OWENS' head for precautionary reasons.

Officers C. Drake and J. Murillo escorted OWENS from the upper tier to the FA3 Block rotunda for an initial medical assessment and then down to the A Facility Triage and Treatment Area (A-TTA) for further medical evaluation. Due to OWENS highly combative behavior, Sergeant C. McCarvel provided additional supervision during this escort. Upon medical clearance OWENS' was rehoused in FA3-125 without further incident.

Registered Nurse (RN) A. Okoroike completed a Medical Report of Injury (7219) on OWENS noting he sustained a missing tooth, an abrasion to his lip, a swollen and dislocated left eye, as well a reddened forehead area.

Psychiatric Technician (PT) C. Boatright completed a Medical Report of Injury (7219) on Officer Defazio noting he had pain to his chest and right hand.

Staff and inmate were injured as a result of this incident. An alarm was sounded. Physical force was used. All appropriate Administrative Staff were notified including the Sacramento County District Attorney's Office via notifications and the distribution of this report.

A Rules Violation Report (CDC 115) will be generated charging inmate OWENS with violation of CCR 3005 (d)(1) for Battery on a Peace Officer Resulting in Use of Force (Physical).

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) C. MARTINCEK | TITLE: CORRECTIONAL LIEUTENANT | ID# | BADGE # |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE | DATE 2/18/2015 |
| NAME OF WARDEN / AOD (PRINT/ SIGN) JEFF MACOMBER | | TITLE WARDEN | DATE 3/5/15 |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          vs.  JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

PP-3.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-B1 (REV. 10/06)
CRIME/INCIDENT REPORT PART B1-INMATE.

Hosted by Defendant-**CORY MARTINCEK**, Lieutenant, on 2/18/2015. The exhibit herein shows the continuation of **MARTINCEK'S** report. Whereon he notes "Missing tooth, Laceration to lip, Dislocation/Swollen left eye, Reddened forehead" Which shows the deliberate Minimizing of the injuries suffered to the Plaintiff. **MARTINCEK** notes "(injury locations: **1.** head cause: Staff-Physical force, **2.** Face-Staff-Physical force)". Which shows that **MARTINCEK** was fully aware that Staff use of Physical force caused all the injuries, and that the Majority of the injuries inflicted by Staff were to the Plaintiff's face and head. **MARTINCEK** noted that the Plaintiff was treated for the injuries, received at the "A-TTA" and that a "7219" was done. Which shows that the Plaintiff had to be treated for the serious injuries he suffered as a result of Staff use of Physical force.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION:  1   PAGE'S.

STATE OF CALIFORNIA Case 2:16-cv-02750-JAM-KJN Document 200 Filed 08/24/20

# CRIME / INCIDENT REPORT
## PART B1 - INMATE
CDCR 837-B1 (REV. 10/06)

Page 3 of 8

| INSTIUTTION | FACILITY | | | | | INCIDENT LOG NUMBER | | | |
|---|---|---|---|---|---|---|---|---|---|
| SAC | PSU - 180 DESIGN | | | | | SAC-PSU-15-02-0194 | | | |

**INMATE (ENTIRE SHEET)**

| NAME: LAST | | FIRST | | MI | CDC # | SEX | ETHNICITY | FBI #: | | CII # |
|---|---|---|---|---|---|---|---|---|---|---|
| OWENS | | THEON | | O | V-60905 | M | BLA | 296063FB6 | | A11838830 |

| PARTICIPANT | CLASS SCORE | PVRTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | RELEASE Date Type | EXTRACTION | DOB | HOUSING |
|---|---|---|---|---|---|---|---|---|---|
| SUSPECT | 532 | NO | 12/17/2004 | 12/27/2013 | 12/24/2021 | EPRD | NO | 08/12/1982 | FA3 232 |

| CURRENT INMATE LEVEL | ☐ N/A | ☐ CCMS | ☑ EOP | ☐ DMH | COMMITMENT OFFENSE | | COUNTY OF COMMITMENT |
|---|---|---|---|---|---|---|---|
| IV | ☐ MHCB | ☐ DDP | ☐ DPP | | ASLT ON P.O. W/FIREARM | | ALAMEDA |

☐ N/A   DESCRIPTION OF INJURIES, LOCATIONS AND CAUSE

MISSING TOOTH, LACERATION TO LIP, DISLOCATION/SWOLLEN LEFT EYE, REDDENED FOREHEAD. (INJURY LOCATIONS: 1. HEAD CAUSE: STAFF - PHYSICAL FORCE 2. FACE - STAFF - PHYSICAL FORCE)

| ☐ N/A | ☑ TREATED AND RELEASED | ☐ HOSPITALIZED | | NAME/ LOCATION OF HOSP/ TREATMENT FACILITY |
|---|---|---|---|---|
| ☐ DECEASED DATE | | ☐ REFUSED TREATMENT | ☐ N/A | A-TTA (7219) |

| Reason For Death: | Is There ASCA Seious Injur ☑ N/A | PRISON GANG / DISRUPTIVE GROUP | VALIDATED / ASSOCIATED |
|---|---|---|---|
| | ◉ No   ○ Yes | | |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,                VS.   JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-4
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-B2 (Rev. 10106) CRIME/
INCIDENT REPORT PART B2-STAFF.

Hosted by Defendant-CORY MARTINCEK, Lieutenant, on 2/18/2016. The exhibit
herein shows the continuation of MARTINCEK'S report, whereon he names
all the staff who he requested to provide reports, on the incident and their
participation in it. The exhibit also shows that none of the staff are
named as the alleged "victim", not even the accuser of the alleged headbutt,
and attempted biting, which shows that MARTINCEK was fully aware
that the Plaintiff never did what is alleged he did, and that staff made
up the story, after beating the Plaintiff up, as the Plaintiff is the only
one noted with actual visual injuries. MARTINCEK notes under defendant.
J.DEFAZIO'S name that DEFAZIO participantion role in the incident was as a
'Primary'. which shows that MARTINCEK knew that DEFAZIO was not a victim
as he claims. MARTINCEK notes DEFAZIO as having pain in his hand and chest
areas, which shows that DEFAZIO didnot suffer an actual injury to his chest.
just the claims of such as a job insurance plain. MARTINCEK notes "(injury location:.1
chest-inmate-head)". but as you will clearly see MARTINCEK doesnot disclose how DEFAZIO'S
hand injury number two occurred, which show MARTINCEK'S intentional deliberate indifference.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

**CRIME / INCIDENT REPORT**
DV-1.5.4
**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

| Page 4 of 8 |
|---|

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| SAC | PSU - 180 DESIGN | SAC-PSU-15-02-0194A1 |

**STAFF (ENTIRE SHEET)**

| NAME: LAST | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|
| MARTINCEK | Cl | | | CORRECTIONAL LIEUTENANT | | M | WHI | S/S |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| INCIDENT COMMANDER | | | 240104 | A PSU LIEUTENANT |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☐ Yes ☑ No TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | | | |

Is There ASCA Serious Injury  ⦿ No  ◯ Yes

| NAME: LAST | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|
| BLESSING | KI | | | CORRECTIONAL SERGEANT | | M | WHI | F/S |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | 1 | 8 | 240346 | PSU #1 SGT |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☐ Yes ☑ No TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | | | |

Is There ASCA Serious Injury  ⦿ No  ◯ Yes

| NAME: LAST | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|
| MCCARVEL | Ch | | | CORRECTIONAL SERGEANT | | M | WHI | S/M |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | | | 250356 | A EOP SERGEANT |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☐ Yes ☑ No TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | | | |

Is There ASCA Serious Injury  ⦿ No  ◯ Yes

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

DV-1.5.4

Page 5 of 8

| INSTITUTION | FACILITY | | INCIDENT LOG NUMBER |
|---|---|---|---|
| SAC | PSU - 180 DESIGN | | SAC-PSU-15-02-0194A1 |

**STAFF (ENTIRE SHEET)**

| NAME: LAST | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|
| MERCADO | L/ | | I 1l | CORRECTIONAL SERGEANT | | M | WHI | F/S |
| PARTICIPANT | BADGE # | ID # | | | POST ASSIGN # | | POSITION | |
| RESPONDER | | | | | 340363 | | A FAC SGT PSU 2 | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☐ Yes ☑ No TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury ⦿ No ○ Yes | | |

| NAME: LAST | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|
| OLIVAS | BR | | | CORRECTIONAL SERGEANT | | M | HIS | M/T |
| PARTICIPANT | BADGE # | ID # | | | POST ASSIGN # | | POSITION | |
| CAMERA | | 3 | | | 350358 | | A FAC SGT | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☐ Yes ☑ No TYPE OF FORCE: | PROCESSED EVIDENCE ☑ Yes ☐ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury ⦿ No ○ Yes | | |

| NAME: LAST | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|
| BRADY | MA | | | CORRECTIONAL OFFICER | | M | WHI | M/T |
| PARTICIPANT | BADGE # | ID # | | | POST ASSIGN # | | POSITION | |
| RESPONDER | | . . . | | | 246371 | | A 01 FLOOR 2 PSU | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A ☐ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☑ Yes ☐ No TYPE OF FORCE: PHYSICAL FORCE | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury ⦿ No ○ Yes | | |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

DV-1.5.4

| Page 6 of 8 |
|---|

| INSTITUTION | FACILITY | | INCIDENT LOG NUMBER |
|---|---|---|---|
| SAC | PSU - 180 DESIGN | | SAC-PSU-15-02-0194A1 |

**STAFF (ENTIRE SHEET)**

| NAME: LAST | FIRST | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|
| BURKE | JA | | CORRECTIONAL OFFICER | | M | WHI | S/S |
| PARTICIPANT | BADGE # | ID # | | POST ASSIGN # | | POSITION | |
| PRIMARY | - | | | 285343 | | A ESCORT PSU | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☑ Yes ☐ No | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | | TYPE OF FORCE: PHYSICAL FORCE | |
| | Is There ASCA Serious Injury ◉ No ○ Yes | | |

| NAME: LAST | FIRST | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|
| DEFAZIO | JC | | CORRECTIONAL OFFICER | | M | WHI | F/S |
| PARTICIPANT | BADGE # | ID # | | POST ASSIGN # | | POSITION | |
| PRIMARY | | | | 285243 | | A1 FLOOR | |

☐ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:
INJURED LEFT HAND  AND PAIN ON CHEST AREA (Injury Location: 1. CHEST - INMATE - Head)

| ☐ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☐ N/A   ☑ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☑ Yes ☐ No | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| FA3 BLOCK ROTUNDA | | TYPE OF FORCE: PHYSICAL FORCE | |
| Reason For Death | Is There ASCA Serious Injury ◉ No ○ Yes | | |

| NAME: LAST | FIRST | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|
| DRAKE | CH | | CORRECTIONAL OFFICER | | M | WHI | S/S |
| PARTICIPANT | BADGE # | ID # | | POST ASSIGN # | | POSITION | |
| RESPONDER | | | | 285342 | | HCA A2 ESCORT 3 | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☐ Yes ☑ No | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury ◉ No ○ Yes | | |

# CRIME INCIDENT REPORT
## PART B2 - STAFF
CDCR 837-B2 (REV. 10/06)

Page 7 of 8

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| SAC | PSU - 180 DESIGN. | SAC-PSU-15-02-0194A1 |

### STAFF (ENTIRE SHEET)

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| LEBECK | JC | . | CORRECTIONAL OFFICER | M | WHI | S/S |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| PRIMARY | ! | | 285268 | HCA ESCORT 1 |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED   ☐ REFUSED TREATMENT ☐ HOSPITALIZED   ☐ DECEASED DATE | USED FORCE ☑ Yes ☐ No   TYPE OF FORCE: PHYSICAL FORCE | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury   ⦿ No ○ Yes | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| MATTHEWS | D, | | CORRECTIONAL OFFICER | M | WHI | M/T |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| WITNESS | | | 246384 | A3 CONTROL |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED   ☐ REFUSED TREATMENT ☐ HOSPITALIZED   ☐ DECEASED DATE | USED FORCE ☐ Yes ☑ No   TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury   ⦿ No ○ Yes | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| MURILLO | JA | | CORRECTIONAL OFFICER | M | WHI | S/S |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | | /1 | 246399 | A4 FLOOR |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED   ☐ REFUSED TREATMENT ☐ HOSPITALIZED   ☐ DECEASED DATE | USED FORCE ☐ Yes ☑ No   TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury   ⦿ No ○ Yes | | |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**

**PART B2 - STAFF**

CDCR 837-B2 (REV. 10/06)

DV-1.5.4

Page 8 of 8

| INSTITUTION | FACILITY | | INCIDENT LOG NUMBER | |
|---|---|---|---|---|
| SAC | PSU - 180 DESIGN | | SAC-PSU-15-02-0194A1 | |

**STAFF (ENTIRE SHEET)**

| NAME: LAST | | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|---|
| OKOROIKE | | AL· | | | REGISTERED NURSE | | F | BLA | T/W |
| PARTICIPANT | | BADGE # | | ID # | | POST ASSIGN # | | POSITION | |
| OBSERVER, MED | | N/A | | · | | N/A | | PT | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A  ☐ REFUSED TREATMENT  ☐ DECEASED DATE | ☐ TREATED AND RELEASED  ☐ HOSPITALIZED | USED FORCE  ☐ Yes  ☑ No  TYPE OF FORCE: | PROCESSED EVIDENCE  ☐ Yes  ☑ No |
|---|---|---|---|---|
| Reason For Death | | | | |
| | Is There ASCA Serious Injury   ⊙ No  ○ Yes | | | |

| NAME: LAST | | FIRST | | MI | TITLE | | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|---|---|---|
| STAGGS-BOATRIGHT | | CL | | | PSYCHIATRIC TECHNICIAN | | F | WHI | S/M |
| PARTICIPANT | | BADGE # | | ID # | | POST ASSIGN # | | POSITION | |
| OBSERVER, MED | | N/A | | ... ... | | N/A | | PT | |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A  ☐ REFUSED TREATMENT  ☐ DECEASED DATE | ☐ TREATED AND RELEASED  ☐ HOSPITALIZED | USED FORCE  ☐ Yes  ☑ No  TYPE OF FORCE: | PROCESSED EVIDENCE  ☐ Yes  ☑ No |
|---|---|---|---|---|
| Reason For Death | | | | |
| | Is There ASCA Serious Injury   ⊙ No  ○ Yes | | | |

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,_____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-5.
### EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: HOLDING CELL LOG.(REV.2/14)

Hosted by Defendants—KENNETH BLESSING, Correctional Sergeant, CHRIS DRAKE, JASON MURILLO, And PAUL BETTENCOURT, correctional officers. on 2/18/2015, at approximately 1320 hours. The exhibit herein shows the holding cell Log record, that was filled out by involved defendants, after they beat the Plaintiff significantly while he was in Mechanical restraints. The exhibit shows that the Plaintiff was Placed in the holding cell for a Medical examination after being beaten and injured. and that Defendant. BETTENCOURT was involved in the incident, which shows that superving officials were fully aware that BETTENCOURT was involved in the incident, and that he didnot Provide any required report on his involvement. an therefore a department Policy violation occurred, as he was allowed to Participate in the incident, but was not required or didnot Provide a report, which shows the intentional deliberate indifference in the concealing of staff involvement. The exhibit also shows that no LVN/RN signed off on the form, or commented on the Plaintiff's "behavior/Disposition" Part on the form. and that involved defendants wrote "Aggitated". to Make it appear as if the nursing staff wrote agitated.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: ___1__ PAGE'S.

# HOLDING CELL LOG

DATE: ___2/18/__   HOLDING CELL #: ___1___

INMATE: ___OLUANS___   CDC NUMBER: V___   HOUSING: A3 232

CEMENT ORDERED BY: T.Y. Blessing
Print Name                                        Signature

REASON FOR PLACEMENT: ___7219 MEDICAL EVAL.___

STAFF PLACING INMATE IN HOLDING CELL: ___C. Drake___
                                        Print Name                    Signature

___J Murillo___
Print Name                    Signature

HOLDING CELL SEARCHED BY: ___Bettencourt___
                            Print Name                    Signature

RESULTS OF SEARCH: ___N/A___

CLOTHING ISSUED: ☐ YES ☑ NO        TIME PLACED IN HOLDING CELL: ___1320___ HOURS

(The inmate's welfare will be checked every 15 minutes. The inmate will be offered access to water and toilet facilities at reasonable intervals)
(COMMENT SECTION TO BE COMPLETED)

| TIME CHECKED | PRINT STAFF NAME | SIGNATURE | COMMENTS |
|---|---|---|---|
| 1320 | Bettencourt | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

STAFF RELEASING INMATE FROM HOLDING CELL: ___K. BLESSING___  ___(sig)___
                                            Print Name          Signature

_____
Print Name                    Signature

TIME RELEASED FROM HOLDING CELL: ___1323___ HOURS   TOTAL TIME IN CELL: ___ HR ___3___ MIN

PURPOSE FOR DURATION OF RETENTION: _____

MEDICAL EXAM ☑ YES ☐ NO        LVN/RN: _____
                                        Print Name                    Signature

COMMENTS ON INMATE'S BEHAVIOR/DISPOSITION: ___Aggitated___

Revised 2/14

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

PP-6.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (REV. 07/14) CRIME / INCIDENT REPORT PART C-STAFF REPORT.

Hosted by Defendant- JOSEPH DEFAZIO, correctional officer (c/o), on 2/18/2015, at 1315 hours. The exhibit herein shows the report given by DEFAZIO, after he and other defendants beat the plaintiff significantly, for a past incident that occurred earlier in the morning while the plaintiff was in mechanical restraints and defenseless. The exhibit shows DEFAZIO'S attempt to conceal his and other involved defendants unlawful beating upon the plaintiff. DEFAZIO writes "it was brought to my attention that officer, BETTENCOURT had just been gassed". which shows DEFAZIO'S motive for attacking the plaintiff. DEFAZIO writes "with my left fist I struck inmate OWENS in his face area". which shows that the plaintiff was punched in his face by defendants. The exhibit also shows under the "your role" section of the form, that DEFAZIO identified his role as PRIMARY. which shows that DEFAZIO was not headbutted or allegedly attemptedly bitten, by the plaintiff, as if this was the case DEFAZIO would have identified his role on the form as "VICTIM". The exhibit also shows under the "DESCRIPTION OF INJURY" section of the form, that DEFAZIO wrote "injured left hand and pain on my chest area". which shows that DEFAZIO'S chest was not injured, and that he just alleged that he had pain in that area, just as he alleged he was headbutted, which is nothing more then a job insurance claim. The exhibit shows under the "SCIF 3301/3067 COMPLETED" section of the form that DEFAZIO naked "No". Which is critical to his allegation of being allegedly battered by the plaintiff, as it shows →

## NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT

## PART C – STAFF REPORT

CDCR 837-C (Rev. 07/14)

Page 1 of 2

| | | | | | | INCIDENT LOG NUMBER | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | SAC-PSU-15-02-0194 | | |

| NAME: LAST | | | FIRST | | | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|---|---|---|---|
| DEFAZIO | | | JC | | | | 2/18/2015 | 1315 |

| POST # | POSITION | | YEARS OF SERVICE | | | DATE OF REPORT | LOCATION OF INCIDENT | |
|---|---|---|---|---|---|---|---|---|
| 285243 | A1 FLOOR | | 8 YR. 11 MO. | | | 2/18/2015 | FA3-232 | |

| RDO's | DUTY HOURS | BATTERY ON A PEACE OFFICER RESULTING IN THE USE OF FORCE | CCR SECTION / RULE |
|---|---|---|---|
| F'S | 0600/1400 | | 3005 (d)(1) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|---|
| ☒ PRIMARY | (S) | C/O LEBECK | (S) OWENS V-60905 |
| ☐ RESPONDER | (S) | C/O BURKE | |
| ☐ WITNESS | (S) | C/O BRADY | |
| ☐ VICTIM | (S) | SGT. BLESSING | |
| ☐ CAMERA | (S) | | |
| ☐ SCRIBE | | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE | | | | | | |
|---|---|---|---|---|---|---|---|
| | PHYSICAL: | WEAPON: | WARNING: | EFFECT: LAUNCHER: | EFFECT: | CHEMICAL / TYPE: | |
| ☒ PHYSICAL | | | | | | | |
| ☐ CHEMICAL | ☐ EXPANDABLE BATON | ☐ MINI 14 | | ☐ 37MM | | ☒ N/A | |
| ☐ WEAPON | ☐ RESTRAINT TECHNIQUES | ☐ .38 CAL | | ☐ L8 | | ☐ OC | |
| ☐ NONE | ☒ HANDS | ☐ 9MM | | ☐ 40MM | | ☐ CN | |
| | ☐ FEET | ☐ SHOTGUN | | ☐ 40MM MULTI | | ☐ CS | |
| FORCE OBSERVED BY YOU | | ☐ X10 | | ☐ HFWRS | | ☐ OTHER | |
| ☒ PHYSICAL | ☐ OTHER FORCE NOT LISTED ABOVE: | | | | | | |

| ☐ CHEMICAL | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ WEAPON | ☒ N/A | ☒ N/A | | |
| ☐ NONE | | | ☐ Yes | ☒ Yes |
| EVIDENCE COLLECTED BY | | | ☒ No | ☐ No |

| | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ Yes ☒ No | ☐ N/A | ☒ N/A | ☒ N/A | |
| REPORTING STAFF INJURED | Injured left hand and pain on my chest area | | ☐ BODILY | ☐ Yes |
| ☒ Yes ☐ No | | | ☐ UNKNOWN ☐ OTHER | ☒ No |

NARRATIVE:

On Wednesday February 18, 2015 at approximately 1315 hours while working HCA A1 ESCORT PSU #1. I responded to a radio announcement saying I need a code 1 response; I need additional staff to A3. I responded to FA3 block when I arrived to A3 block I responded to C section. The incident was code 4 at the time of arrival. It was brought to my attention that officer Bettencourt had just been gassed. Sgt Blessing ordered Officer Burke and I to go pull inmate OWENS, (V-60905, FA3-232) out of his cell so that Officers M. Brady and J. Lebeck can search the house for contraband inmate OWENS was using to gas staff. Inmate OWENS complied with my direct order to submit to handcuffs. I signaled to have cell FA3- 232 opened. Cell FA3-232 opened and inmate OWENS spun around before I could grab his left forearm. Inmate OWENS sudden attack made me fear for my safety and I stepped back as he was attempting to strike my facial area with his forehead/head area. I could not step back fast enough to completely avoid being struck and inmate OWENS struck me in my chest area with his head. I used immediate force to subdue OWENS and overcome his attack. With my left fist I struck inmate OWENS in his facial area to stop his assault with his head. I grabbed inmate OWENS by the back of his head, grabbing a handful of his hair with my right hand; with my left hand I grabbed inmate OWENS by his left arm bicep area and pushed inmate OWENS to the ground. Inmate OWENS struck the tier floor face first. As I re-adjusted my right hand I noticed several pieces of inmate OWENS hair on the tier floor, loose from his head.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL OFFICER | | | BADGE # | ID# | DATE 2/18/15 |
|---|---|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) Sergeant Ken Blessing | DATE RECEIVED 2/18/15 | APPROVED ☒ Yes ☐ No | CLARIFICATION NEEDED ☒ Yes ☐ No | | | DATE 2/19/2015 |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, _____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

PP-7.
EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (REV.05/08)(CRIME/INCIDENT REPORT PART C1-SUPPLEMENT.

Hosted by Defendant-**JOSEPH DEFAZIO**, Correctional officer, on 21/8/2015. at 1315 hours. The exhibit herein shows the continuation of the report given by **DEFAZIO**, after he and other defendants beat the Plaintiff significantly, for a incident occurring earlier in the Morning, while the Plaintiff was handcuffed behind his back and defenseless. The exhibit shows **DEFAZIO'S** attempt to conceal his and other defendants unlawful beating upon the Plaintiff. **DEFAZIO** writes "...hitting **OWENS** with MY left fist "approximately" 2 times to his facial area". which shows that the Plaintiff was punched in the face by defendants an unspecificated amount of times. **DEFAZIO** writes " MY punches had no effect on inmate **OWENS**". which shows that **DEFAZIO** was using gratuitous force, as the Plaintiff hole face shows the effects of **DEFAZIO'S** punches. See Exhibit "A". that caused SBI. **DEFAZIO** writes "with MY left fist I struck inmate **OWENS** in his facial area". which shows that the Plaintiff was punched in the face by defendants. **DEFAZIO** writes "officer, **BRADY** at this time grabbed inmate. **OWENS** head and forced it down to the ground causing his face to strike the ground". which shows that defendants used excessive force agaist the Plaintiff. causing injury to the forehead of the Plaintiff.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1 PAGE'S.

# CRIME / INCIDENT REPORT

| PART C1 – SUPPLEMENT | | INCIDENT LOG NUMBER | |
|---|---|---|---|
| CDCR 837-C1 (Rev. 05/08) | Page __2__ of __2__ | SAC-PSU-15-02-0194 | |
| NAME: LAST | FIRST | | MI |
| DEFAZIO | J( | | -- |

| TYPE OF INFORMATION | | | |
|---|---|---|---|
| ☒ CONTINUATION OF REPORT | ☐ ADDITIONAL INFORMATION | ☐ CLARIFICATION REQUEST | |

My left hand was now positioned on inmate OWENS shoulder area. Inmate OWENS continued thrashing his body around on the ground attempting to batter on scene staff. Inmate OWENS at this time spun his head in my direction and attempted to bite my left hand. I immediately moved my left hand away from inmate OWENS attack while simultaneously hitting OWENS with my left fist approximately 2 times to his facial area. My punches had no effect on inmate OWENS and he continued to try and bite me. Inmate OWENS continued to spin his head in my direction attempting to bite me again. At this time with my left fist I struck inmate OWENS in his facial area 1 time. The last strike I struck inmate OWENS facial area stopped him from attempting to bite me further. Officer Brady at this time grabbed inmate OWENS head and forced it down to the ground causing his face to strike the ground. Officer Brady then assisted me in holding down inmate OWENS head by utilizing both hands on the back of his head. Inmate OWENS continued to violently thrash his body from side to side. Inmate OWENS continued to kick at Officer Lebeck and Officer M. Brady went to OWENS legs and applied leg irons to inmate OWENS. Once we had inmate OWENS head area under control officer Brady re-positioned himself to his lower body. I went to place the spit net on inmate OWENS, as I was applying the spit net to inmate OWENS he began throwing his head from side to side. Due to the thrashing of his head I could not properly apply the spit net. I removed the spit net and was able to properly apply it to inmate OWENS head. At this time Officer J. Murrilo and Officer C. Drake relieved us and escorted inmate OWENS to the FA3 rotunda holding cell. This concludes my involvement in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL OFFICER | | BADGE # | ID# | DATE 2/18/2015 |
|---|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) *Sergeant Ken Blessing /u* | DATE RECEIVED 2/18/2015 | APPROVED ☒ Yes ☐ No | CLARIFICATION NEEDED ☒ Yes ☐ No | | DATE 7/17/2015 |
| Distribution: Original: Incident Package | Copy: Reporting Employee | Copy: Reviewing Supervisor | | | |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,  VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-8.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C2 (REV. 09/03)
CRIME/INCIDENT REPORT PART C2-REVIEW NOTICE.

Hosted by Defendant-CORY MARTINCEK, correctional Lieutenant(L.t.), on 2/18/2015. The exhibit herein shows the leading clarification questions requested by MARTINCEK of defendant-J.DEFAZIO, which were "Due by: 2/20/2015," and were suppose to be returned directly into "L.t..MARTINCEK." Which didnot occur when and as it was directed to occur. Which shows the bad intentions, as DEFAZIO didnot follow the orders given to him. See Exhibit PP-9 , due to him first having to check  with other involved defendant, to get their story  straight. Which allowed for DEFAZIO to further lie and conceal his and other defendants unlawful beating on the Plaintiff.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION:  1  PAGE'S.

**PART C2-REVIEW NOTICE**
CDC837-C2 (Rev 09/03)

Page 1 of 1

| REPORTING EMPLOYEE NAME (PRINT/TYPE) | | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|---|
| LAST DEFAZIO | FIRST JC | MI. | SAC-PSU-15-02-0194 | 02/18/2015 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

☒  Prepare, a CDC 837-C1 supplemental report clarifying the issues listed below.

☐  Prepare, a CDC 837-C1 supplemental report providing additional information regarding the issues listed below.

DUE BY:  02/20/2015                           RETURN TO: LT. MARTINCEK

1) In your report you indicate that while on the ground, inmate OWENS was thrashing his body from side to side attempting to further batter staff. During this time did you or any responding staff give verbal orders to OWENS to stop his resistive behavior?

2) In the conclusion of your report you state that you applied a spit net to OWENS head and then were relieved by escorting Officer's J. Murrillo and C. Drake. Was OWENS compliant at this time or did he continue to resist staff?

3) Upon responding to OWENS cell, FA3-232, was his cell windows papered up?

4) In your report, you state that you grabbed a handful or OWENS hair with your right hand and placed your left hand on OWENS left bicep and forced him to the ground. You further state that you removed and re-adjusted your right hand upon impact with the ground. Where did you re-adjust your right hand to?

5) In your report, you state that while on the ground, OWENS attempted to batter on scene staff? Who were the on scene staff you are referring to?

6) Finally you state OWENS attempted to bite you several times on the hand. How close was your hand to OWENS mouth?

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL PART C2

| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | DATE |
|---|---|---|---|
| C. MARTINCEK | LIEUTENANT | | 2/18/15 |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

PP- 9.
EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (REV. 05/08) CRIME/INCIDENT REPORT PART C1-SUPPLEMENT.

Hosted by Defendant- **JOSEPH DEFAZIO**, correctional officer (c/o), on 2/22/2015.
The exhibit herein shows the clarification report requested by Defendant
**C. MARTINCEK**, and given by **DEFAZIO**. The exhibit shows **DEFAZIO'S** attempt to
further conceal his and other defendants unlawful beating upon
the Plaintiff. **DEFAZIO** writes "**1.)** I gave orders to **OWENS** to stop
resisting..." Which shows **DEFAZIO** lying, as **DEFAZIO'S** report doesnot
indicate that this occurred. See **Exhibit PP-6-7**, and done only in hindsight.
The exhibit also shows that **DEFAZIO** didnot return his report into
"**MARTINCEK**" as directed, and that Defendant. **k. BLESSING** was the one
who signed off on the report. Which shows the covering up and concealing.
The exhibit shows that the report was returned four days later. Which
was two days pass the due date and time limit  requirement, without
any legitimate explanation for this violation of policy. Which shows
that **DEFAZIO** had to allow **BLESSING** to screen the report first before
turning it in to the administration. See compl. at P. 14. PP. 60-61., to see
why.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1   PAGE'S.

**CRIME/INCIDENT REPORT**

| PART C1 – SUPPLEMENT | | INCIDENT LOG NUMBER | |
|---|---|---|---|
| CDCR 837-C1 (Rev. 05/08) | Page __1__ of __1__ | SAC-PSU-15-02-0194 | |
| NAME: LAST | FIRST | | MI |
| DEFAZIO | J( | | -- |

TYPE OF INFORMATION

☒ CONTINUATION OF REPORT ☐ ADDITIONAL INFORMATION ☒ CLARIFICATION REQUEST

1.) I gave orders to OWENS to stop resisting and I recall hearing orders given to OWENS to stop resisting as well.

2.) To the best of my recollection OWENS was compliant when Officers Murillo and Drake escorted OWENS away from the incident.

3.) I responded to OWENS cell FA3-232 for the purpose of removing him from his cell. The purpose for OWENS removal was for a cell search so any contraband which could be used to gas staff could be removed. OWENS had his cell windows papered up. I could not accurately determine what type of paper was utilized to paper up his cell windows.

4.) I believe once OWENS was on the ground I readjusted my right hand and placed it on OWENS upper middle back area. At this time I pushed down with my right hand attempting to restrain OWENS.

5.) At this moment OWENS was thrashing his body and legs towards on scene staff. The on scene staff I was referring to in my report was Officers J. Lebeck, and M. Brady.

6.) My left hand was placed on OWENS left upper shoulder area and I was applying downward pressure to his shoulder. Due to my hand placement on his shoulder my hand and wrist area was approximately six inches from his mouth. Each time he quickly spun his head towards me attempting to bite me I had to release my grasp on his left shoulder because OWENS would have been able to bite me had I kept my hand on his left shoulder. Furthermore, each time I struck OWENS with my left fist I would reassess the situation and determine if the threat from OWENS was gone before striking OWENS again.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL OFFICER | | | BADGE # | ID# | DATE 2/22/2015 |
|---|---|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) Sergeant Ken Blessing KMJ | DATE RECEIVED 2/22/2015 | APPROVED ☒ Yes ☐ No | CLARIFICATION NEEDED ☐☐ Yes ☒ No | | | DATE 2/22/2015 |
| Distribution: Original: Incident Package Copy: Reporting Employee Copy: Reviewing Supervisor | | | | | | |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.



PP-10.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 7219(REV. 11/05) MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE.

Hosted by Defendants-CLOVER STAGGS-BOATRIGHT, psychiatric Technician(P.T.) And JOSEPH DEFAZIO, correctional officer (c/o), on 2/18/2015, at 1605 hours. The exhibit herein shows the fabricated medical report done for DEFAZIO as a job insurance receipt. Whereon BOATRIGHT documents "injuries found?: Yes... Pain." Which shows that DEFAZIO complained of pain to his chest, and that some how BOATRIGHT found that pain, without evidence of any visual injury being presently there. BOATRIGHT also noted on the form that DEFAZIO had pain to his hand, which is likely after looking at the plaintiff's face. See Exhibit A., which appears beatten, swollen, and battered, from DEFAZIO'S and other defendants hands. BOATRIGHT quoted DEFAZIO as saying "... I have soreness on my left hand from trying to subdue inmate OWENS." Which shows that DEFAZIO made no efforts to temper the force that he gratuitously used on the plaintiff's face, as he hit the plaintiff with enough force to have caused himself an injury, which shows excessive force was used.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1    PAGE'S.

STATE OF CALIFORNIA                                                                DEPARTMENT OF CORRECTIONS AND REHABILITATION

**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | | DATE |
|---|---|---|---|---|---|
| CSP- Sac | A-3 | INJURY / USE OF FORCE / UNUSUAL OCCURRENCE | (ON THE JOB INJURY) / PRE AD/SEG ADMISSION | | 2/18/15 |

| THIS SECTION FOR INMATE ONLY | NAME   LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME   LAST   Defazio, J. | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs   Fri/Sat. |
| THIS SECTION FOR VISITOR ONLY | NAME   LAST | FIRST   MIDDLE | | DOB | OCCUPATION |
| | HOME ADDRESS | CITY   STATE   ZIP | | | HOME PHONE |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) | | |
|---|---|---|---|---|
| A-3 232 | 2/18/15 @ 1250 | C/O Burke | | |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL *(circle)*   AMBULATORY   LITTER   WHEELCHAIR   ON SITE | AGE | RACE | SEX |
|---|---|---|---|---|---|---|
| 1605 | 1605 | | | | | |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"Inmate Owens head butted me in the upper chest area and I have soreness on my left hand from trying to subdue inmate owens."

| INJURIES FOUND? YES / NO | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |



| O.C. SPRAY EXPOSURE? | YES / NO |
|---|---|
| DECONTAMINATED? | YES / NO |
| Self-decontamination instructions given? | YES / NO |
| Refused decontamination? | YES / NO |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| Bennett 1605 | N/A |

TIME/DISPOSITION

1605  Back to Post

| REPORT COMPLETED BY/TITLE   (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|
| C. Boatright Pr / | 1160 | Sun-Mon. |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator (only work related injury)

# EXHIBIT SEPARATION PAGE.

THEON OWENS,          vs. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

PP-11.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (REV. 10/11)
CRIME/INCIDENT REPORT PART C-STAFF REPORT.

Hosted by Defendant. M. BRADY, on 2/18/2015, at approximately 1315
hours. The exhibit herein shows the report given by BRADY after him and
other defendants beat the plaintiff significantly while the plaintiff
was defenseless, and handcuffed behind his back, for a past
incident occurring earlier in the morning. The exhibit also shows
BRADY'S attempt to conceal his and other defendants unlawful
attack upon the plaintiff, with the hopes of evading the law. The
exhibit also shows the name of defendant, P. BETTENCOURT as being
involved in the incident, who didnot provide a report on his
participation in the incident, which is a department violation, as
he was involved and named by others who were involved, but did-
not provide a report on his involvement. which shows BETTENCOURT'S
attempt to escape his participation and battery on the plaintiff.
The exhibit also shows that MARTINCEK deliberately failed to
require that BETTENCOURT provide a report. See CCR. Tit. 15. Sec.
3268.1 (a)(1), which shows that deliberate indifference. and the
concealing of involved defendants.

STATE OF CALIFORNIA
**CRIME/INCIDENT REPORT**
**PART C-STAFF REPORT**
CDCR 837-C (Rev 10/11)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

INCIDENT LOG NUMBER
SAC-PSU-15-02-0194

| NAME: LAST | FIRST | | MI | | DATE OF INCIDENT | | TIME OF INCIDENT |
|---|---|---|---|---|---|---|---|
| BRADY | M/ | | | | 02/18/2015 | | 1315 HOURS |

| POST # | POSITION | | YEARS/MONTHS OF SERVICE | DATE OF REPORT | | LOCATION OF INCIDENT |
|---|---|---|---|---|---|---|
| 246371 | A 01 FLOOR 2 PSU | | 1 / 9 | 02/18/2015 | | FA3-232 |

| RDOS | DUTY HOURS | DESCRIPTION OF CRIME/INCIDENT | | CCR SECTION/RULE | |
|---|---|---|---|---|---|
| M/T | 0600-1400 | BATTERY ON A PEACE OFFICER RESULTING IN THE USE OF FORCE (PHYSICAL) | | 3005(d)(1) | ☐ N/A |

| YOUR ROLE | WITNESSES | (PREFACE (S) - STAFF, (V) - VISITOR, (O) - OTHER) | | INMATES | (PREFACE (S) - SUSPECT, (V) - VICTIM, (W) - WITNESS) |
|---|---|---|---|---|---|
| ☐ PRIMARY | C/O J. DEFAZIO | | C/O C. DRAKE | OWENS (V-60905) | |
| ☒ RESPONDER | C/O J. BURKE | | C/O J. MURILLO | DEAVER (V-41056) | |
| ☐ WITNESS | C/O J. LEBECK | | | | |
| ☐ VICTIM | C/O P. BETTENCOURT | | | | |
| ☐ CAMERA | SGT. K. BLESSING | | | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | CHEMICALS USED BY YOU | | | SHOTS FIRED BY YOU | |
|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ EXPANDABLE BATON | CHEMICAL | TYPE | TYPE OF ROUNDS | | # OF ROUNDS |
| ☒ PHYSICAL ☐ CHEMICAL | ☐ MINI 14 | ☐ OC | | MINI 14 | | |
| ☐ NONE | ☐ 38 CALIBER | ☐ CN | | 38 CALIBER | | |
| FORCE OBSERVED BY YOU | ☐ 40 MM | ☐ CS | | 40 MM | | |
| ☐ WEAPON | ☐ 40 MM MULTI | ☐ OTHER | | 40 MM MULTI | | |
| ☒ PHYSICAL ☐ CHEMICAL | ☐ 9 MM | | | 9 MM | | |
| ☐ NONE | ☐ HFWRS   ☒ N/A | ☒ N/A | | ☒ N/A | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
|---|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | | ☐ YES ☒ NO | ☒ YES ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL/CLINIC) | FLUID EXPOSURE | | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY   ☒ N/A ☐ UNKNOWN ☐ OTHER | ☐ YES ☒ NO | |

**NARRATIVE**

On Wednesday February 18, 2015, at approximately 1245 hours while performing my duties as an A1 block floor Officer, I heard a radio announcement for additional staff needed for a code 1 response in A3 block. I responded to the C-section dayroom of A3 block to see two officers escorting inmate DEAVER,(V-41056;FA3-132) from cell FA3-132 down to the A-TTA. Sergeant K. Blessing instructed Officer's J. Defazio, J. Burke, J. Lebeck, and I, to pull inmate OWENS,(V-60905;FA3-232) out of his cell. The reason for removing OWENS from his cell was OWENS gassed Officer P. Bettencourt, and follow up search was needed of OWENS cell in order to remove contraband that could be used for another gassing. Officer Defazio grabbed the shield and walked up the stairs toward cell FA3-232, solely occupied by OWENS, followed by Officer's Burke, and Lebeck. OWENS had papered up his windows in his cell obstructing our view into his cell. Officer's Defazio and Burke were able to talk OWENS into removing the paper from his cell windows and cuffing up so Officer Lebeck and I could search his cell. Officer Defazio signaled for the cell door to be open, and once the cell door opened, OWENS took one step back and quickly turned around lunging his upper body forward, toward Officer Defazio. Officer Defazio acted immediately, taking OWENS down to the ground. OWENS fell, face first, striking his face on the ground. From my vantage point off to the right of FA3-232 I could not accurately see how Officer Defazio took Owens down. Once on the ground OWENS started thrashing his body and head violently side to side, up and down, kicking his feet towards myself and on scene staff.

| ☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1 | | | | | |
|---|---|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | | DATE |
| | CORRECTIONAL OFFICER | | | | 02/18/2015 |
| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | | CLARIFICATION NEEDED | DATE |
| Sergeant Ken Blessing | 2/18/2015 | ☒ YES  ☐ NO | | ☐ YES  ☐ NO | 02/18/2015 |
| STATE OF CALIFORNIA | | | | DEPARTMENT OF CORRECTIONS AND REHABILITATION | |

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, _____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-12.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (REV.10/11)
CRIME/INCIDENT REPORT PART C1- SUPPLEMENTAL.

Hosted by Defendant, MATTHEW BRADY, correctional officer (c/o) on 2/18/2015, at approximately 1315 hours. The exhibit herein shows the continuation of the report given by BRADY after he and other defendants beat the Plaintiff significantly, while he was in mechanical restraints and defenseless, due to a past incident occurring earlier in the morning. The exhibit shows BRADY'S attempt to conceal his unlawful attack upon the Plaintiff, with the hopes of evading the law.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

| CRIME/INCIDENT REPORT | | |
|---|---|---|
| **PART C1-SUPPLEMENTAL**<br>CDCR 837-C1 (Rev 10/11) | Page **2** of **2** | INCIDENT LOG NUMBER<br>SAC-PSU-15-02-0194 |
| NAME: LAST<br>BRADY | FIRST<br>M/ _____ ./ | MI |
| TYPE OF INFORMATION | | |
| ☒ CONTINUATION OF REPORT | ☐ CLARIFICATION OF REPORT | ☐ ADDITIONAL INFORMATION |

Officer Lebeck attempted to restrain OWENS legs by grabbing OWENS ankles and holding them to the ground. Officer Burke was restraining OWENS mid-back and torso area by placing his knees and hands on OWENS mid back area and using his body weight to hold OWENS on the ground. OWENS was still whipping his head around violently trying to head-butt and bite Officer Defazio. Officer Defazio had to use immediate force to protect himself and he punched OWENS on the side of the head and facial area approximately two times. OWENS continued to whip his head around violently trying to bite Officer Defazio even after Officer Defazio struck OWENS. I grabbed OWENS by the back of his head and forced his head down; and OWENS face hit the ground. While trying to hold OWENS head down I was grasping his hair because of his large amount of braids. OWENS was thrashing his head so violently while I was grasping his head and braids some of OWENS braids came off his head. I was applying downward pressure so he could not head-butt me or bite me. Once Officer Defazio was able to gain control of OWENS upper body and head, OWENS was still trying to kick his legs around, so I moved to OWENS leg area and assisted Officer Lebeck in restraining OWENS legs by grabbing his ankles and knees and pushing his legs to the ground by applying downward pressure. OWENS stopped resisting once responding staff arrived on the upper tier. I was able to place leg restraints on the ankles of OWENS, and Officer Defazio placed a spit net over the face of OWENS. Sergeant Blessing arrived and instructed Officer's C. Drake and J. Murillo to escort OWENS down to the A3 rotunda so medical staff could conduct a 7219 medical evaluation on OWENS. Officer's Drake and Murillo helped OWENS to his feet and escorted OWENS down to the A3 rotunda. This ended my involvement in this incident.

| ☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1 | | | | | |
|---|---|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | TITLE<br>CORRECTIONAL OFFICER | | BADGE #<br>{ | ID #<br>)2 | DATE<br>02/18/2015 |
| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE)<br>Sergeant Ken Blessing /Kh | DATE RECEIVED<br>2/17/2015 | APPROVED<br>☒ YES  ☐ NO | | CLARIFICATION NEEDED<br>☒ YES  ☐ NO | DATE<br>02/18/2015 |

# EXHIBIT SEPARATION PAGE:

THEON OWENS,              vs. JOSEPH DEFAZIO. ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

PP-13.

EXHIBIT

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C2 (Rev. 09/03)
CRIME/INCIDENT REPORT PART C2 - REVIEW NOTICE.

Hosted by by defendant. C. MARTINCEK, on 2/20/2015. The exhibit herein
shows the clarification question requested by MARTINCEK from BRADY.

STATE OF CALIFORNIA                                                                                    DEPARTMENT OF CORRECTIONS
**CRIME/INCIDENT REPORT**
**PART C2-REVIEW NOTICE**
CDC837-C2 (Rev 09/03)                                                              Page 1 of 1

| REPORTING EMPLOYEE NAME (PRINT/TYPE) | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|
| LAST BRADY | FIRST M/ | SAC-PSU-15-02-0194 | 02/18/2015 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

☐ Prepare, a CDC 837-C1 supplemental report clarifying the issues listed below.

☐ Prepare, a CDC 837-C1 supplemental report providing additional information regarding the issues listed below.

DUE BY:  02/21/2015                          RETURN TO: LT. MARTINCEK

1) Where was Officer J. Defazio positioned when he punched OWENS? Did Officer Defazio punch OWENS prior to Officer J. Lebeck and J. Burke arriving to assist in this incident?

2) Was Officer J. Defazio still holding OWENS head down as you applied leg restraints to OWENS ankles?

| ☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL PART C2 | | | |
|---|---|---|---|
| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | DATE |
| C. MARTINCEK | LIEUTENANT | | 2/20/15 |

# EXHIBIT SEPARATION PAGE.

THEON OWENS,                VS.  JOSEPH DEFAZIO. ETAL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

PP-14.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (Rev. 10/11) CRIME
/INCIDENT REPORT PART C1-SUPPLEMENTAL.

Hosted by defendant, M. BRADY on 2/20/2015. The exhibit herein
shows the clarification report given by BRADY in his attempt to
further conceal his and other defendants involvement in the
incident.

**CRIME/INCIDENT REPORT**

| PART C1-SUPPLEMENTAL<br>CDCR 837-C1 (Rev 10/11) | Page **1** of **1** | INCIDENT LOG NUMBER<br>SAC-PSU-15-02-0194 |
|---|---|---|
| NAME: LAST<br>BRADY | FIRST<br>MA   ··· | MI |

TYPE OF INFORMATION

☐ CONTINUATION OF REPORT     ☒ CLARIFICATION OF REPORT     ☐ ADDITIONAL INFORMATION

NARRATIVE

1.a) Officer J. Defazio was positioned over OWENS upper back and shoulder area, trying to restrain OWENS when Officer J. Defazio punched OWENS.

1.b) Due to my position on the top of the stairs and the other Officers standing in front of me, I could not see if Officer Defazio punched OWENS prior to Officer's J. Lebeck and J. Burke responding to assist in this incident.

2.) I could not see if Officer J. Defazio was still holding OWENS head down because I was kneeled down on the right side of OWENS legs, facing OWENS ankles, with my back towards Officer J. Defazio while I was applying leg restraints.

| CHECK IF NARRATIVE IS CONTINUED ON PART C1 | | | | | |
|---|---|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | TITLE | | BADGE # | ID # | DATE |
| | CORRECTIONAL OFFICER | | ·- | ·- | 02/20/2015 |
| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | | CLARIFICATION NEEDED | DATE |
| C. MARTINCEK | 2/20/15 | ☒ YES ☐ NO | | ☐ YES ☒ NO | 2/20/15 |

# EXHIBIT SEPARATION PAGE:

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION No.: 2:16-CV-02750-JAM-KJN.

## PP-15.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (Rev. 07/14) CRIME / INCIDENT REPORT PART C - STAFF REPORT.

Hosted by defendant. JOHN LEBECK, on 2/18/2015, at approximately 13:15, hours. The exhibit herein shows the report given by LEBECK, after he and other defendants beat the Plaintiff significantly, for a pasted incident that occurred earlier in the morning. While the Plaintiff was defenseless and handcuffed behind his back. In LEBECK'S attempt to conceal his and other defendants unlawful attack. LEBECK writes "The door opened and I instructed inmate. OWENS to back out". which shows what the Plaintiff stated is true, as to the door opening up fully, and it contradict's defendant-D. MATTHEWS'S statement. See Exhibit PP-28 ,as MATTHEWS claims 'OWENS stepped side ways out of the door as ".it opened" ... which didnot occur. LEBECK writes "... inmate. OWENS backed out. When inmate. OWENS cleared the threshold of the door he suddenly... spun around and attempted to strike ... DEFAZIO in the face with his head." Which contradicts all of the other reports, as every other report allege's that once the door opened OWENS spun around and headbutted DEFAZIO in the chest area, not that the Plaintiff backed out of the cell, clearing the threshold first, then spening and headbutting. Which shows how defendants are just making up stories as they go alone.

**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**

CDCR 837-C (Rev. 07/14)

| | | Page 1 of 2 | INCIDENT LOG NUMBER |
|---|---|---|---|
| | | | SAC-PSU-15-02-0198 *HJL* |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| LEBECK | JC | | 02-18-15 | 1315 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 285268 | HCA ESCORT # 1 | 16 YR. 0 MO. | 02-18-15 | A-3-232 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| S/S | 0600-1400 | Aggravated Battery on a P/O (GASSING) ~~Resulting in~~ UOF | 3005(d)1 |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|---|
| ☒ PRIMARY | (S) C. DRAKE | | (S) OWENS (V-60905) |
| ☐ RESPONDER | (S) J. BURKE | | |
| ☐ WITNESS | (S) J. DEFAZIO | | |
| ☐ VICTIM | (S) M. BRADY | | |
| ☐ CAMERA | (S) J. MURILLO | | |
| ☐ SCRIBE | (S) D. MATHEWS | | |

**FORCE USED BY YOU**

**FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE**

| FORCE USED BY YOU | PHYSICAL: | WEAPON: | WARNING: EFFECT: | LAUNCHER: | EFFECT: | CHEMICAL / TYPE: |
|---|---|---|---|---|---|---|
| ☒ PHYSICAL | ☐ EXPANDABLE BATON | ☐ MINI 14 | | ☐ 37MM | | ☐ N/A |
| ☐ CHEMICAL | ☐ RESTRAINT TECHNIQUES | ☐ .38 CAL | | ☐ L8 | | ☐ OC |
| ☐ WEAPON | ☒ HANDS | ☐ 9MM | | ☐ 40MM | | ☐ CN |
| ☐ NONE | ☐ FEET | ☐ SHOTGUN | | ☐ 40MM MULTI | | ☐ CS |
| | | ☐ X10 | | ☐ HFWRS | | ☐ OTHER |

**FORCE OBSERVED BY YOU**
☒ PHYSICAL
☐ CHEMICAL
☐ WEAPON
☐ NONE

☐ OTHER FORCE NOT LISTED ABOVE: _____

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|
| ☒ N/A | ☒ N/A | ☐ Yes / ☒ No | ☒ Yes / ☐ No |

**EVIDENCE COLLECTED BY**

| | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ Yes ☒ No | ☒ N/A | ☒ N/A | ☒ N/A ☐ BODILY ☐ UNKNOWN ☐ OTHER | ☐ Yes ☒ No |

**REPORTING STAFF INJURED**
☐ Yes
☒ No

NARRATIVE:

On Wednesday 2-18-15 I was assigned as HCA Escort Officer #1. At approximately 1315 hours Officers J. DeFazio, J. Burke, M. Brady and I went to cell A-3-232, solely occupied by Inmate OWENS (V-60905), to remove him in order to search his cell for any items that he might use to gas again. Inmate OWENS had gassed two officers earlier in the shift. Two officers were going to stand by Inmate OWENS while the other two searched his cell. I asked Inmate OWENS to turn around and submit to hand cuff. OWENS stated he wanted waist restraint. I said that there is no indication of that on the door and that this will be brief. OWENS said ok and he turned around and complied with being hand cuffed behind his back. I turned and motioned for Control Booth Officer D. Mathews to open cell A-3-232. The door opened and I instructed Inmate OWENS to back out. I was standing to the right of the open door as inmate OWENS backed out. When inmate OWENS cleared the threshold of the door he suddenly and unexpectedly spun around and attempted to strike Officer J. DeFazio in the face with his head. Officer DeFazio leaned back avoiding being struck in the face. OWENS forehead struck Officer DeFazio in the chest. Officer DeFazio struck Inmate OWENS in the face with his left fist. Officer DeFazio then grabbed Inmate OWENS by the left arm and back of the head and forced Inmate OWENS to the ground.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE Correctional Officer | BADGE # IID# | DATE 02-18-15 |
|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) Sergeant Ken Blessing | DATE RECEIVED 2/18/2015 | APPROVED ☒ Yes ☐ No | CLARIFICATION NEEDED ☒ Yes ☐ No | DATE 2/18/2015 |

# EXHIBIT SEPARATION PAGE.

THEON OWENS,                    VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-16.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-1C (REV. 05/08)
CRIME / INCIDENT REPORT PART C1 - SUPPLEMENT.

Hosted by Defendant. JOHN LEBECK, on 2/18/2015, at approximately
1315 hours. The exhibit herein shows the continuation of LEBECK's
report. Given after he and other defendants beat the Plaintiff
significantly. While the Plaintiff was defenseless, unable to protect
himself, and handcuffed behind his back. Given in LEBECK'S attempt
to conceal his and other defendants unlawful attack. upon the
Plaintiff, The exhibit also shows how LEBECK attempted to conceal
defendant-BURKE'S use of force, as LEBECK's report only make
reference to BURKE'S name once, as going to the Plaintiff's assigned
cell. LEBECK excluded BURKE from the rest of the report, as if
BURKE was just standing there doing nothing. Which shows LEBECK's
concealing of the event. The exhibit also shows that LEBECK's
report mention's nothing about, the Plaintiff allegedly resising
Defendant-DEFAZIO'S ability to put the spit net on the Plaintiff.
Which shows that the Plaintiff was not resising

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**PART C1 – SUPPLEMENT**

CDCR 837-C1 (Rev. 05/08)

Page __2__ of __2__

INCIDENT LOG NUMBER

SAC-PSU-15-02-0193 4

| NAME: LAST | FIRST | | MI |
|---|---|---|---|
| LEBECK | J( | | |

TYPE OF INFORMATION

☒ CONTINUATION OF REPORT ☐ ADDITIONAL INFORMATION ☐ CLARIFICATION REQUEST

Inmate OWENS was still resisting by swinging his head back and forth and kicking with his legs trying to strike us. I observed Officer DeFazio punch Inmate OWENS once again. I heard Officer DeFazio yell that OWENS was trying to bite him. I grabbed Inmate OWENS's ankles and crossed his legs to keep him from kicking me. I continued to order Inmate OWENS to stop resisting. The whole time I was holding Inmate OWENS by the ankles he was trying to kick me and force me away by forcefully extending his legs. Officer M. Brady applied leg restraints to Inmate OWENS as I continued to hold his ankles. Officer DeFazio put a spit net on Inmate OWENS. Officers C. Drake and J. Murillo arrived on scene and assisted Inmate OWENS to his feet and escorted him off the tier. This concludes my involvement in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | | | BADGE # | ID# | DATE |
|---|---|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | | DATE RECEIVED | APPROVED ☐ Yes ☐ No | CLARIFICATION NEEDED ☐ Yes ☐ No | | DATE |
| Sergeant Ken Blassing / ian | | 2/18/2015 | | | | 2/18/2015 |

Distribution: Original: Incident Package  Copy: Reporting Employee  Copy: Reviewing Supervisor

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, _____ vs. JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

### PP-17.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C2 (REV: 09/03) CRIME/INCIDENT REPORT PART C2-REVIEW NOTICE.

Hosted by Defendant-CORY MARTINCEK, correctional Lieutenant(L.t.) on 2/20/2015. The exhibit herein shows the leading Clarification Questions requested by MARTINCEK of Defendant-LEBECK. Which allowed for LEBECK to correct the Mistakes Made in his report by the guidance of the Supervising L.t., which allowed for this defendant to further lie and conceal his and other defendants unlawful beating upon the Plaintiff.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1 PAGE'S.

**PART C2-REVIEW NOTICE**
CDC837-C2 (Rev 09/03)

Page 1 of 1

| REPORTING EMPLOYEE NAME (PRINT/TYPE) | | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|---|
| LAST LEBECK | FIRST JO | MI: | SAC-PSU-15-02-0194 | 02/18/2015 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

☐ Prepare, a CDC 837-C1 supplemental report clarifying the issues listed below.

☐ Prepare, a CDC 837-C1 supplemental report providing additional information regarding the issues listed below.

DUE BY: 02/21/2015                    RETURN TO: LT. MARTINCEK

1) When you approached cell, FA3-232 solely occupied by inmate OWENS (V-60905), were his cell windows papered up? Who placed OWENS in hand cuffs?

2) Where was Officer Defazio positioned upon OWENS backing out of his assigned cell?

3) In your report, you stated that Officer Defazio punched OWENS on to separate occasions during this incident. How many times did Officer Defazio strike OWENS with his closed fist?

4) What role did Officer Burke serve in this incident? Did you observe Officer Burke utilize force?

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL PART C2

| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | DATE |
|---|---|---|---|
| C. MARTINCEK | LIEUTENANT | | 2/26/15 |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS.  JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

### PP-18.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C 1 (REV. 10/11)
CRIME/INCIDENT REPORT PART C1-SUPPLEMENTAL.

Hosted by Defendant- JOHN LEBECK, correctional officer (c/o), on 2/20/2015, The exhibit herein shows the clarification report requested by Defendant-C. MARTINCEK, and given by LEBECK. The exhibit shows LEBECK'S attempt to further conceal his and other defendants involvement in the unlawful beating upon the Plaintiff, and given to Mislead Supervising Prison officials.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

| STATE OF CALIFORNIA | | DEPARTMENT OF CORRECTIONS AND REHABILITATION |
|---|---|---|
| CRIME/INCIDENT REPORT PART C1-SUPPLEMENTAL CDCR 837-C1 (Rev 10/11) | Page 1 of 1 | INCIDENT LOG NUMBER SAC-PSU-15-02-0192 |

| NAME: LAST | FIRST | MI |
|---|---|---|
| LEBECK | JC | |

TYPE OF INFORMATION

☐ CONTINUATION OF REPORT     ☒ CLARIFICATION OF REPORT     ☐ ADDITIONAL INFORMATION

NARRATIVE

1) When we approached cell A-3-232 his windows were covered with paper. OWENS took the paper down to talk to us. Officer DeFazio placed OWENS in handcuffs.
2) Officer DeFazio was directly to my left in front of the cell door.
3) I observed Officer DeFazio strike inmate OWENS twice. The first time was after OWENS struck Officer DeFazio with his head. The second time was on the ground when OWENS was attempting to bite Officer DeFazio.
4) Once we were on the ground Officer Burke was to my left I did not observe him use any force.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | | BADGE # | ID # | DATE |
|---|---|---|---|---|---|
| John Lebeck | Correctional Officer | | | | 2-20-15 |

| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| C. MARTINEZ / LT | 2/20/15 | ☒ YES ☐ NO | ☐ YES ☒ NO | 2/20/15 |

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,_____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

## PP-19.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C  (REV. 10/11)
CRIME/INCIDENT REPORT PART C-STAFF REPORT.

Hosted by Defendant-JACOB BURKE, correctional officer (c/o), on 2/18/2015, at approximately 1315 hours, The exhibit herein shows the report given by BURKE, after he and other defendants beat the plaintiff significantly for a past incident occurring earlier in the morning, while the plaintiff was handcuffed behind his back and defenseless. The exhibit shows BURKE'S attempt to conceal his and other defendants unlawful attack upon the plaintiff, BURKE writes "... DEFAZIO then placed restraints on inmate, OWENS and motioned for the door to be opened". which shows that Defendant, J.LEBECK was not the one who motioned for the door to be opened, as LEBECK alleges was the case. see Exhibit PP-15. and compl. at P.9-C  PP. 36. BURKE writes "I observed officer DEFAZIO strike inmate, OWENS with his left fist... in inmate, OWENS facial area". which shows that the plaintiff was punched in the face, by defendants. BURKE writes "I heard officer DEFAZIO say that OWENS is 'ATTEPTING' to bite me". which DEFAZIO'S report does not say that he said this. which shows how defendants are just saying anything they can to conceal and cover up what actully occurred. BURKE writes "DEFAZIO use... force with his left fist and strike inmate, OWENS in the facial area 'APPROXIMATELY' two time's". which shows that the plaintiff was punched in the face by defendants a unspecificated amount of times. The Exhibit on it's

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

Face shows excessive force occurred.

CONTINUATION OF

PP-19.

EXHIBIT.

EXHIBIT SEPARATION CONTINUATION PAGE.

PART C-STAFF REPORT
CDCR 837-C (Rev 10/11)

| | | | | Page 1 of 2 | | INCIDENT LOG NUMBER | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | SAC-PSU-15-02-0194 | | |

| NAME: LAST | | FIRST | | MI | | DATE OF INCIDENT | | TIME OF INCIDENT |
|---|---|---|---|---|---|---|---|---|
| Burke | | Ja゛ | | | | 2/18/15 | | 1315hrs |

| POST # | | POSITION | | YEARS/MONTHS OF SERVICE | | DATE OF REPORT | | LOCATION OF INCIDENT |
|---|---|---|---|---|---|---|---|---|
| 285343 | | A escort # 1 PSU | | 8yr. 7mo. | | 02/18/15 | | A3 232 |

| RDOS | DUTY HOURS | | DESCRIPTION OF CRIME/INCIDENT | | | | | CCR SECTION/RULE |
|---|---|---|---|---|---|---|---|---|
| S/S | 0600/1400 | | Battery on a Peace Officer Resulting In U.O.F (Physical) | | | | | 3005 D1 ☐ N/A |

| YOUR ROLE | WITNESSES (PREFACE (S) - STAFF, (V) - VISITOR, (O) - OTHER) | | | | INMATES (PREFACE (S) - SUSPECT, (V) - VICTIM, (W) - WITNESS) | | | |
|---|---|---|---|---|---|---|---|---|
| ☒ PRIMARY | (s) J. Defazio | | (s) K..Blessing | | (s) Owens (V60905) | | | |
| ☐ RESPONDER | (s) J. Lebeck | | | | | | | |
| ☐ WITNESS | (s)M. Brady | | | | | | | |
| ☐ VICTIM | (s) J. Murrillo | | | | | | | |
| ☐ CAMERA | (s) C. Drake | | | | | | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | CHEMICALS USED BY YOU | | SHOTS FIRED BY YOU | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ EXPANDABLE BATON | | CHEMICAL | TYPE | TYPE OF ROUNDS | | # OF ROUNDS | |
| ☒ PHYSICAL ☐ CHEMICAL | ☐ MINI 14 | | ☐ OC | | MINI 14 | | | |
| ☐ NONE | ☐ 38 CALIBER | | ☐ CN | | 38 CALIBER | | | |
| FORCE OBSERVED BY YOU | ☐ 40 MM | | ☐ CS | | 40 MM | | | |
| ☐ WEAPON | ☐ 40 MM MULTI | | ☐ OTHER | | 40 MM MULTI | | | |
| ☒ PHYSICAL ☐ CHEMICAL | ☐ 9 MM | | | | 9 MM | | | |
| ☐ NONE | ☐ HFWRS ☒ N/A | | ☒ N/A | | ☒ N/A | | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | | EVIDENCE DISPOSITION | | | BIO HAZARD | PPE |
|---|---|---|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | | ☒ N/A | | | ☐ YES ☒ NO | ☒ YES ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | | LOCATION TREATED (HOSPITAL/CLINIC) | FLUID EXPOSURE | | SGF 3301/3067 COMPLETED |
|---|---|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER _____ | | ☐ YES ☒ NO |

NARRATIVE

On 2/18/15 at approximately 1315 hrs. While performing my duties as A Facility Escort Officer #1 PSU I responded to an alarm in A facility 3 block with officers J. DeFazio and M. Brady. When arriving to the block we were ordered by SGT. K. Blessing to go to cell A3 232 solely occupied by inmate Owens (V60905) and pull him out for a cell search and check for any dangerous contraband he could use to gas another staff member. Officers J. DeFazio, J.Lebeck, M. Brady and I approached cell 232 and ordered inmate Owens to submit to restraints and exit the cell for a cell search to which he complied. Officer J. DeFazio then placed restraints on inmate Owens and motioned for the door to be opened. Once the door opened Inmate Owens spun towards Officer J. DeFazio and lunged forward with his head striking Officer J. DeFazio in the upper chest area forcing Officer DeFazio to move back at which time I observed Officer DeFazio strike inmate Owens with his left fist 1 time in inmate Owens facial area. Officer DeFazio grabbed inmate Owens head with his right hand and with his left hand on his left bicep area and pushed inmate Owens to the ground. Once on the ground Owens continued to resist by moving his head and body side to side and kicking his legs up and down. I responded to the middle lower back area of Owens by placing my knees on his back and used my hands with my body weight pushing down on Owens back yelling stop resisting. Officer Lebeck was attempting to restrain inmate Owens legs. Inmate Owens continued to resist by moving his head side to side and I heard Officer DeFazio say that Owens is attempting to bite me. I observed Officer DeFazio use immediate force with his left fist and strike inmate Owens in the facial area approximately two times in order to stop the threat of Owens.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | | BADGE # | ID # | DATE |
|---|---|---|---|---|---|
| ~J~Burk | Correctional Officer | | ---- | | 02/18/15 |

| AME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| Sergeant Ken Blessing /un | 2/19/2015 ☒YES ☐NO | | ☒YES ☐NO | 2/19/2015 |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,_____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

PP-20.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (REV. 10/11)
## CRIME/INCIDENT REPORT PART C1-SUPPLEMENT.

Hosted by Defendant- JACOB BURKE, correctional officer (c/o), on 2/18/2015, at approximately 1315 hours. The exhibit herein shows the continuation of BURKES report given after he and other defendants beat the plaintiff significantly, for a past incident occurring earlier in the morning, while the plaintiff was in mechanical restraints and defenseless. The exhibit shows BURKE'S attempt to conceal his and other defendant's unlawful attack upon the plaintiff. BURKE writes "DEFAZIO" was" able to get a spit net on inmate. OWENS, which shows that defendants are just making up their stories as they go alone, as this report ensures that DEFAZIO was able to get the spit net on the first time he did.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1 PAGE'S.

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION

## CRIME / INCIDENT REPORT

| PART C1 – SUPPLEMENT | | INCIDENT LOG NUMBER | |
|---|---|---|---|
| CDCR 837-C1  (Rev. 05/08) | Page __1__ of __1__ | SAC-PSU-15-02-0194 | |
| NAME: LAST | FIRST | | MI |
| BURKE | JA | | |

TYPE OF INFORMATION

| ☐ CONTINUATION OF REPORT | ☐ ADDITIONAL INFORMATION | ☒ CLARIFICATION |
|---|---|---|

1. Due to my vantage point from OWENS' lower back area and my focus on restraining an actively resisting inmate, I was unable to clearly see what Inmate OWENS was doing. I heard Officer DeFazio yell, "He is trying to bite me!" I observed OWENS moving his head towards Officer DeFazio prior to Officer DeFazio striking OWENS in his facial area. I was unable to clearly see OWENS trying to bite or assault Officer DeFazio with his head at this time.

2. When Inmate OWENS was moving his head from side to side Officer DeFazio was no longer grasping OWENS' head.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | | BADGE # | ID# | DATE |
|---|---|---|---|---|---|
| | CORRECTIONAL OFFICER | | | | 2/23/2015 |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | | DATE |
| MARTINEZ C/LT | 2/23/15 | ☒ Yes ☐ No | ☐ Yes ☒ No | | 2/23/15 |

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,            VS.   JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-21.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C2 (REV. 09/03)(CRIME / INCIDENT REPORT PART C2-REVIEW NOTICE.

Hosted by Defendant - CORY MARTINCEk. correctional Lieutenant (Lt.) on 2/20/2015. The exhibit herein shows the leading clarification questions requested by MARTINCEk of Defendant - J. BURKE. Which allowed for BURKE to correct the mistakes made in his report by the guidance of the supervising L.t., which allowed for defendants to further lie and conceal their unlawful beating on the Plaintiff.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1  PAGE'S.

STATE OF CALIFORNIA  
DEPARTMENT OF CORRECTIONS

**CRIME/INCIDENT REPORT**

**PART C2-REVIEW NOTICE**

CDC837-C2 (Rev 09/03)

| | | | | Page 1 of 1 | |
|---|---|---|---|---|---|

| REPORTING EMPLOYEE NAME (PRINT/TYPE) | | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|---|
| LAST BURKE | FIRST JAː | MI | SAC-PSU-15-02-0194 | 02/18/2015 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

☐  Prepare, a CDC 837-C1 supplemental report clarifying the issues listed below.

☐  Prepare, a CDC 837-C1 supplemental report providing additional information regarding the issues listed below.

DUE BY:  02/21/2015                    RETURN TO: LT. MARTINCEK

1) Did you see OWENS attempt to bite Officer J. Defazio? If so, how close was Officer Defazios hand from being bitten?

2) When OWENS was moving his head from side to side, did Officer J. Defazio lose grasp of OWENS head?

| | CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL PART C2 | | | |
|---|---|---|---|---|
| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | | DATE |
| C. MARTINCEK | LIEUTENANT | | | 2/20/15 |

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

## PP-22.
### EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (REV.05/08)
CRIME/INCIDENT REPORT PART C1-SUPPLEMENT.

Hosted by Defendant-**JACOB BURKE**, correctional officer (C/O), on 2/23/2015. The exhibit herein shows the clarification report requested by Defendant-**C. MARTINCEK**, and given by **BURKE**. The exhibit shows **BURKE'S** attempt to further conceal his and other defendants unlawful beating attack on the Plaintiff, by continuing to mislead supervising officials, with informations that he knew was untrue, with the hopes of getting away with his crime.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1   PAGE'S.

| STATE OF CALIFORNIA<br>CRIME/INCIDENT REPORT | | |
|---|---|---|
| **PART C1-SUPPLEMENTAL**<br>CDCR 837-C1 (Rev 10/11) | Page 2 of 2 | **INCIDENT LOG NUMBER**<br>SAC-PSU-15-02-0194 |
| **NAME: LAST**<br>Burke | **FIRST**<br>Ja | **MI** |

| TYPE OF INFORMATION |
|---|
| ☒ CONTINUATION OF REPORT      ☐ CLARIFICATION OF REPORT      ☐ ADDITIONAL INFORMATION |

**NARRATIVE**

I observed Officer Brady move towards inmate Owens leg area to help Officer Lebeck gain control of inmate Owens legs. Officer Brady was able to apply leg restraints on inmate Owens ankles. Officer DeFazio was able to get a spit net on inmate Owens. Officer C. Drake and J. Murrillo were ordered to escort inmate Owens down to the rotunda to have a 7219 completed. This concludes my involvement in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | | BADGE # | ID # | DATE |
|---|---|---|---|---|---|
| | Correctional Officer | | | | 02/18/15 |
| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | | CLARIFICATION NEEDED | DATE |
| Sergeant Ken Blessing /Un | 2/18/2015 | ☒ YES ☐ NO | | ☒ YES ☐ NO | 2/18/2015 |

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,_____ vs. JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-23.
### EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (REV.10/11)(CRIME INCIDENT REPORT PART C- STAFF REPORT.

Hosted by Defendant-**KENNETH BLESSING**. correctional sergeant(59+).on 2/18/2015. at approximately 1315 hours. The exhibit herein shows the report given by **BLESSING**. after he ordered Ruffians-defendants to beat the Plaintiff significantly and then participated in that beating upon the Plaintiff. While the Plaintiff was in mechanical restraints and defenseless. due to a Past incident occurring earlier in the morning. The exhibit shows **BLESSINGS** attempt to cover up and conceal his and other defendants unlawful attack upon the Plaintiff. **BLESSING** writes "I could not clearly observe all involved staff member's attempting to restrain OWENS due to 'my active involvement in clearing the alarm'". which shows that **BLESSING** violated department policy. as it is the policy of the department to not clear an active alarm. until the incident has cased. clearly an allegedly actively resisting inmate is not a cased incident. which shows **BLESSING'S** bad intentions. The exhibit also shows that **BLESSING** excluded Defendant-**BURKE** from his incident report. as there were initial only four defendants who were instructed to go to the Plaintiff by **BLESSING**. and **BURKE'S** name is the only one not mentioned. which shows **BLESSING'S** attempt to conceal involved staff participation. The exhibit also collaborate's with the →

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

Plaintiff's account of what happened, as to the Plaintiff attempting to crouch down toward the ground, to avoid being continuously struck in the face and head by defendants. See Compl. at P.13. PP. 54-56., as **BLESSING** writes" once in the A-3 rotunda...**OWENS** started to

**CONTINUATION OF**

**PP- 23.**

**EXHIBIT.**

let his body slump down..."which shows the approximate time the attack was occurring.

**EXHIBIT SEPARATION CONTINUATION PAGE.**

| | | | | | INCIDENT LOG NUMBER | | |
|---|---|---|---|---|---|---|---|
| | | | Page 1 of 1 | | SAC-PSU-15-02-0194 | | |

| NAME: LAST | FIRST | | MI | | DATE OF INCIDENT | | TIME OF INCIDENT |
|---|---|---|---|---|---|---|---|
| Blessing | Ke | | | | 2/18/2015 | | 1315 |

| POST # | POSITION | | YEARS/MONTHS OF SERVICE | DATE OF REPORT | | LOCATION OF INCIDENT | |
|---|---|---|---|---|---|---|---|
| 240346 | PSU #1 | | 13yrs 7 month | 02/18/2015 | | FA3-223 | |

| RDOS | DUTY HOURS | DESCRIPTION OF CRIME/INCIDENT | | | | CCR SECTION/RULE | |
|---|---|---|---|---|---|---|---|
| F/S | 0600-1400 | BATTERY ON A PEACE OFFICER RESULTING IN THE USE OF FORCE | | | | 3005 (d) 1 | ☐ N/A |

| YOUR ROLE | WITNESSES | (PREFACE (S) - STAFF, (V) - VISITOR, (O) - OTHER) | | | INMATES | (PREFACE (S) - SUSPECT, (V) - VICTIM, (W) - WITNESS) | |
|---|---|---|---|---|---|---|---|
| ☐ PRIMARY | (s) C. Drake | | | | (s) Owens (V-60905) | | |
| ☒ RESPONDER | (s) J. Defazio | | | | | | |
| ☐ WITNESS | (s) J. Lebeck | | | | | | |
| ☐ VICTIM | (s) J. Murillo | | | | | | |
| ☐ CAMERA | (s) | | | | | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | CHEMICALS USED BY YOU | | | SHOTS FIRED BY YOU | | |
|---|---|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ EXPANDABLE BATON | | CHEMICAL | TYPE | TYPE OF ROUNDS | | # OF ROUNDS | |
| ☐ PHYSICAL | | | | | | | | |
| ☐ CHEMICAL | ☐ MINI 14 | | ☐ OC | | MINI 14 | | | |
| ☒ NONE | ☐ 38 CALIBER | | ☐ CN | | 38 CALIBER | | | |
| FORCE OBSERVED BY YOU | ☐ 40 MM | | ☐ CS | | 40 MM | | | |
| ☐ WEAPON | ☐ 40 MM MULTI | | ☐ OTHER | | 40 MM MULTI | | | |
| ☒ PHYSICAL | ☐ 9 MM | | | | 9 MM | | | |
| ☐ CHEMICAL | | | | | | | | |
| ☐ NONE | ☐ HFWRS | ☒ N/A | ☒ N/A | | | ☒ N/A | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | | EVIDENCE DISPOSITION | | | | BIO HAZARD | PPE |
|---|---|---|---|---|---|---|---|---|
| ☐ YES | | | | | | | | |
| ☒ NO | | | | | | | ☐ YES | ☒ YES |
| | ☒ N/A | | ☒ N/A | | | | ☒ NO | ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | | LOCATION TREATED (HOSPITAL/CLINIC) | | FLUID EXPOSURE | | | SGF 3301/3067 COMPLETED |
|---|---|---|---|---|---|---|---|---|
| ☐ YES | | | | | ☐ BODILY | ☒ N/A | ☐ YES | |
| ☒ NO | | | | | ☐ UNKNOWN | | ☒ NO | |
| | ☒ N/A | | ☒ N/A | | ☐ OTHER | | | |

NARRATIVE

On Wednesday February 18, 2015 at approximately 1315 I responded to a code 1 alarm in A-3 block C-section. When I entered C-section I observed an inmate identified as OWENS (V-60905) lying in the prone position on his stomach and was actively resisting. Inmate OWENS was resisting by thrashing his body from side to side and his head from side to side. I observed on scene staff using their hands to push down on various body parts of OWENS and trying to overcome the resistance of OWENS. I observed Officer Lebeck using his hands to push down on Owens ankles. I observed Officer Brady using his hands to push down on OWENS legs. I could not clearly observe all involved staff members attempt to restrain OWENS due to my active involvement in clearing the alarm. I observed Officer Defazio attempt to place a spit net on OWENS but, was not able to because OWENS was moving his head from side making it difficult for the spit net to be placed on him. After a second attempt Officer Defazio was able to place a spit net on OWENS. I noticed OWENS was starting to calm down and I asked on scene staff who utilized force. At this time Officers C. Drake and J. Murillo arrived on scene and I ordered them to escort OWENS for a 7219 medical clearance due to force used and bleeding from his mouth area. Officers Murillo and Drake each lifted OWENS to his feet where he walked under his own power. Once in the A-3 rotunda it appeared OWENS started to let his body slump down and

| ☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1 | | | | | |
|---|---|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | TITLE | | BADGE # | ID # | DATE |
| | Correctional Sergeant | | | | 02/18/2015 |
| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | | DATE |
| C. MARTINEZ  C/LT | 2/18/15 | ☒ YES ☐ NO | ☐ YES ☒ NO | | 2/18/15 |
| STATE OF CALIFORNIA | | | | DEPARTMENT OF CORRECTIONS AND REHABILITATION | |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, _____ vs. JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-24.
### EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (REV. 10/11)
CRIME/INCIDENT REPORT PART C1-SUPPLEMENTAL.

Hosted by Defendant-KENNETH BLESSING, correctional sergeant (sgt) on 2/18/2015, at approximately 1315 hours. The exhibit herein shows the continuation of BLESSING'S report after he ordered defendants to beat the Plaintiff significantly and then participated in the battery. While the Plaintiff was in Mechanical restraints and helpless. The exhibit also shows BLESSING'S attempt to cover up and conceal his and other defendants unlawful attack on the Plaintiff.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1 PAGE'S.

**CRIME/INCIDENT REPORT**
**PART C1-SUPPLEMENTAL**
CDCR 837-C1 (Rev 10/11)

Page **2** of **2**

INCIDENT LOG NUMBER
SAC-PSU-15-02-0194

| NAME: LAST | FIRST | MI |
|---|---|---|
| Blessing | K | |

TYPE OF INFORMATION

☒ CONTINUATION OF REPORT ☐ CLARIFICATION OF REPORT ☐ ADDITIONAL INFORMATION

NARRATIVE

Officers Murillo and Drake had to support OWENS weight while he was walking. OWENS was escorted to the holding cell in A-3 and a 7219 medical clearance was completed. The responding RN. determined OWENS needed more extensive medical treatment and he was transported via a wheelchair by Officers J. Murillo and C. Drake.

☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| | Correctional Sergeant | | | 02/18/2015 |

| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| C. MARTINCEK, | 2/18/15 | YES ☑ | NO ☑ | 2/18/2015 |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, _____ VS. JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

PP-25.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (REV.07/14)
## CRIME/INCIDENT REPORT PART C-STAFF REPORT.

Hosted by Defendant-**DAVID MATTHEWS**, correctional officer (clo),on 21
18/2015, at approximately 1315 hours. The exhibit herein shows the
report given by **MATTHEWS** after the beating to the plaintiff that caused
S.B.I.,while **MATTHEWS** watched from the tower without intervening
in the battery. The exhibit shows **MATTHEWS** attempt to conceal his and
other defendants unlawful conduct, by trying to make it appear as if he
has vision problems and did not see the attack occurring. The exhibit
also shows something that none of the other defendants were willing
to disclose in their reports. **MATTHEWS** wrote "**OWENS**... was repeatedly
yelling something..." which shows that **MATTHEWS** heard and seen the
plaintiff yelling out for help,in an attempt to deter the attacker's and
make others aware of the attack upon him. see COMPl. at P. 10. PP. 39..which
shows that **MATTHEWS** is trying to conceal his knowledge of the beating
he observed. The exhibit also shows that **MATTHEWS** never mentioned
the plaintiff as being punched,by defendants. which occurred right in his
presence, eventhough,defendants already addmitted to punching the →
<u>NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION:</u> __1__ PAGE'S.

Plaintiff in the face Multiple times. Which shows that MATTHEWS is trying to conceal his Knowledg of the incident.

CONTINUATION OF

PP-25.

EXHIBIT.

EXHIBIT SEPARATION CONTINUATION PAGE.

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (Rev. 07/14)

| | |
|---|---|
| Page __1__ of __2__ | INCIDENT LOG NUMBER<br>Sac-psu-15-02-0194 |

| NAME: LAST | FIRST | | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|---|
| Matthews | D: | | | 2-18-15 | 1315 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 246384 | A-3 control | 18  YR.  10  MO. | 2-18-15 | FA3-232 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| M-T | 0600-1400 | Battery on a P.O. resulting in U.O.F. (physical) | 3005 (d)1 |

| YOUR ROLE | WITNESSES (PREFACE  S-STAFF, V-VISITOR, O-OTHER) | | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|---|
| ☐ PRIMARY | (S)  J. DEFAZIO | | (S)  OWENS (V-60905) |
| ☐ RESPONDER | (S)  J. LEBECK | | |
| ☒ WITNESS | (S)  J. BURKE | | |
| ☐ VICTIM | (S)  M. BRADY | | |
| ☐ CAMERA | (S)  J. MURILLO | | |
| ☐ SCRIBE | (S)  C. DRAKE | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|

**PHYSICAL:**   **WEAPON:**   **WARNING:**   **EFFECT:**   **LAUNCHER:**   **EFFECT:**   **CHEMICAL / TYPE:**

| FORCE USED BY YOU | | | | | | |
|---|---|---|---|---|---|---|
| ☐ PHYSICAL | ☐ EXPANDABLE BATON | ☐ MINI 14 | | ☐ 37MM | | ☒ N/A |
| ☐ CHEMICAL | ☐ RESTRAINT TECHNIQUES | ☐ .38 CAL | | ☐ L8 | | ☐ OC |
| ☐ WEAPON | ☐ HANDS | ☐ 9MM | | ☐ 40MM | | ☐ CN |
| ☒ NONE | ☐ FEET | ☐ SHOTGUN | | ☐ 40MM MULTI | | ☐ CS |
| | | ☐ X10 | | ☐ HFWRS | | ☐ OTHER |

| FORCE OBSERVED BY YOU | |
|---|---|
| ☒ PHYSICAL | ☐ OTHER FORCE NOT LISTED ABOVE: |
| ☐ CHEMICAL | |
| ☐ WEAPON | |
| ☐ NONE | |

| | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| EVIDENCE COLLECTED BY | ☒ N/A | ☒ N/A | ☐ Yes<br>☒ No | ☒ Yes<br>☐ No |

| | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | |
|---|---|---|---|---|
| ☐ Yes<br>☒ No | ☒ N/A | ☒ N/A | ☒ N/A<br>☐ BODILY<br>☐ UNKNOWN<br>☐ OTHER | SCIF3301/3067 COMPLETED<br>☐ Yes<br>☒ No |
| REPORTING STAFF INJURED<br>☐ Yes<br>☒ No | | | | |

**NARRATIVE**

On Wednesday February 18, 2015 at approximately 1315 hours an incident occurred in A facility three block involving inmate OWENS (V-60905) housed in FA-3-232. This incident occurred when officers J. Defazio, J.Lebek, J. Berke and M.Brady attempted to remove inmate OWENS from his cell because of an earlier gassing incident involving OWENS. An officer applied handcuffs to OWENS through the food port and waived the cell door open. I opened the cell door and noticed that some sort of struggle occurred as OWENS came out of the cell. From my vantage point, it was difficult to determine what actions led to the incident, but it appeared as though OWENS came out of his cell and faced the officers. A flurry of rapid movement occurred and OWENS ended up in a prone position on the tier just outside of the cell. I activated my housing unit alarm and made a radio transmission stating "we have a code one in A facility three block" I focused in on the incident and noticed that the officers were having to put downward pressure to OWENS torso in an attempt to prevent him from moving. Responding staff began to arrive and I noticed at one point an officer I could not recognize was having trouble placing a spit mask onto OWENS head as OWENS seemed to be moving his head back and forth to prevent its application. OWENS seemed to be angry and was repeatedly yelling something that I could not understand. Officers C. Drake and J. Murillo got a hold of each of OWENS arms and escorted him down the second tier and into the three block rotunda holding cell for a medical evaluation. OWENS was placed onto a wheelchair and wheeled to the A facility triage treatment

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE<br>Correctional officer | BADGE # | ID# | DATE<br>2-18-15 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)<br>*Sergeant Ken Blessing 1kBig* | DATE RECEIVED<br>2/18/2015 | APPROVED<br>☒Yes ☐ No | CLARIFICATION NEEDED<br>☒ Yes ☐ No | DATE<br>2/18/2015 |

Distribution:                    Original: Incident Package          Copy: Reporting Employee          Copy: Reviewing Supervisor

# EXHIBIT SEPARATION PAGE.

THEON OWENS,  _____  VS.  JOSEPH DEFAZIO, ET AL.,  _____

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

> PP-26.
> EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (REV. 05/08)
CRIME/INCIDENT REPORT C1-SUPPLEMENT.

Hosted by Defendant. D. MATTHEWS on 2/18/2015. at approximately 1315 hours. The exhibit herein shows the continuation of MATTHEWS report. given after the beaten to the Plaintiff. While handcuffed behind his back. While MATTHEWS watched from the tower without pressing the unit alarm or intervening in the attack. The exhibit also shows MATTHEWS attempt to conceal his and other defendants involvement in the unlawful beaten.

| PART C1 – SUPPLEMENT | | INCIDENT LOG NUMBER | |
|---|---|---|---|
| CDCR 837-C1 (Rev. 05/08) | Page 2 of 2 | SAC-PSU-15-02-0194 | |
| NAME: LAST | FIRST | | MI |
| MATTHEWS | D. | | |

| TYPE OF INFORMATION | | | |
|---|---|---|---|
| ☒ CONTINUATION OF REPORT | ☐ ADDITIONAL INFORMATION | ☐ CLARIFICATION REQUEST | |

area by officers J. Murillo and C. Drake. A short time later inmate OWENS was escorted back to three block and placed into cell FA-3-125.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL OFFICER | | BADGE # | ID# | DATE 2-18-15 |
|---|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) Sergeant Ken Blessing /KM | DATE REQEIVED 2/18/2015 | APPROVED ☑ Yes ☐ No | CLARIFICATION NEEDED ☐ Yes ☐ No | | DATE 2/18/2015 |
| Distribution: Original: Incident Package | Copy: Reporting Employee | Copy: Reviewing Supervisor | | | |

# EXHIBIT SEPARATION PAGE.

THEON OWENS,                    VS.   JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-27.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C2 (REV. 09/03)
CRIME/INCIDENT REPORT PART C2 - STAFF REPORT.

Hosted by non-defendant. D.GONZALES. on 2/19/2015. The exhibit herein
shows the clarification questions requested by correctional sergeant.
GONZALES from D. MATTHEWS.

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C2-STAFF REPORT**
CDC 837-C2 (Rev. 09/03)

DEPARTMENT OF CORRECTIONS

PAGE __1__ OF __1__

| REPORTING EMPLOYEE NAME *(PRINT/TYPE)* | | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|---|
| LAST: MATTHEWS | FIRST: DA\ | MI: | SAC-PSU-15-02-0194 | 02/19/15 |

**Your report concerning the above referenced incident has been reviewed and the following information is required:**

☒  Prepare a CDC 837-C1 supplement report clarifying the issues listed below:

☐  Prepare a CDC 837-C1 supplemental report providing additional information regarding the issues listed below:

DUE BY:  02/19/15                    RETURN TO:  SERGEANT D. GONZALES

1.) In your report you state, an Officer applied handcuffs to OWENS through the food port and waived the cell door open. Can you identify which Officer applied the handcuffs and waived for the cell door to be opened?

2.) In your report you state, a flurry of rapid movement occurred and OWENS ended up in a prone position on the tier just outside the cell. Did you observe any force used by the Officer's? If so, by which Officer's and describe the force used.

3.) Did you observe OWENS being resistive?

4.) Which Officer's were using downward pressure to OWENS torso in attempt to prevent him from moving? Describe how they applied downward pressure.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL  C2

| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | DATE |
|---|---|---|---|
| D. GONZALES | SERGEANT | | 02/19/15 |

Distribution:    Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

# EXHIBIT SEPARATION PAGE.

THEON OWENS,                VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-28.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (REV. 07/05)
CRIME/INCIDENT REPORT PART C1-SUPPLEMENTAL.

Hosted by defendant, **D. MATTHEWS**, on 2/19/2015. The exhibit herein
shows the clarification report given by **MATTHEWS**, in his attempt to
conceal his and other defendants involvement. The exhibit also shows
that **MATTHEWS** is trying vary hard to get out of the incident, by
using words like "unable to recall, appeared, seemed, and looked."
in attempt to not say or see anything, when he had the best view
of the beating from the tower, approximately 20 feet away. from
the attack, as **MATTHEWS** knows and seen exactly what happened,
and knows that the Plaintiff was beaten by other defendants
unlawfully, and that the Plaintiff never attempted or actually
headbutted **DEFAZIO**, or tried to bite **DEFAZIO**, and that the beating
was for a past incident.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

PAGE _1_ OF _1_

INCIDENT LOG NUMBER
_SAC-PSU-15-02-0194_

| NAME: LAST | FIRST | MI |
|---|---|---|
| Matthews | D. | |

TYPE OF INFORMATION:

☐ CONTINUATION OF REPORT   ☒ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

NARRATIVE:

(1) I am unable to recall specifically who applied the handcuffs to Owens or who waived The cell door opened.

(2) I seem to recall that Owens stepped sideways out of the cell door as it opened, then turned to his left. A rapid series of movements followed and I recall inmate Owens ending up face down on the tier with what appeared to be several officers crouching above and around him as he lay on the tier. My view of the incident was mostly obscured by the officers gathered around Owens, but I do recall some staff who appeared to be using their hands to push down on Owens in an effort to prevent him from moving.

(3) At one point, inmate Owens seemed to be resisting staff's efforts to place a spit net on him by moving his head from side to side.

(4) There seemed to be numerous officers surrounding Owens by this point and it was impossible for me to determine who was doing what. I did however recognise that some officers looked as if they were having to use their hands to push down on Owens.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL PART C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # | DATE 2-19-15 |
|---|---|---|---|
| Maint | | 5 ... | |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| SGT. D. GONZALES | 02/19/15 | ☒YES ☐NO | ☐ YES ☒ NO | 02/19/15 |

# EXHIBIT SEPARATION PAGE:

THEON OWENS,                    VS. JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-29.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (REV. 10/11)
CRIME/INCIDENT REPORT PART C-STAFF REPORT.

Hosted by defendant, JASON MURILLO. on 2/18/2015. at approximately
1315 hours. The exhibit herein shows the report given by MURILLO.
after him and other defendants battered the plaintiff, for a past
incident. The exhibit also shows MURILLO'S attempt to conceal his
conduct and minimizes his participation in the battery.

**PART C-STAFF REPORT**
CDCR 837-C (Rev 10/11)

Page 1 of 1

INCIDENT LOG NUMBER

SAC-PSU-15-02-0194

| NAME: LAST | | FIRST | | MI | | | DATE OF INCIDENT | | TIME OF INCIDENT |
|---|---|---|---|---|---|---|---|---|---|
| MURILLO | | JA | N | | | | 02/18/15 | | 1315 |

| POST # | POSITION | | YEARS/MONTHS OF SERVICE | DATE OF REPORT | | LOCATION OF INCIDENT |
|---|---|---|---|---|---|---|
| 246399 | A-4 FLOOR | | 19YRS 1 MO | 02/18/15 | | A-3 C SECTION |

| RDOS | DUTY HOURS | DESCRIPTION OF CRIME/INCIDENT | | | CCR SECTION/RULE | |
|---|---|---|---|---|---|---|
| S/S | 0600-1400 | BATTERY ON A PEACE OFFICER | | | 3005 D 1 | ☐ N/A |

| YOUR ROLE | WITNESSES | (PREFACE (S) - STAFF, (V) - VISITOR, (O) - OTHER) | | | INMATES | (PREFACE (S) - SUSPECT, (V) - VICTIM, (W) - WITNESS) | |
|---|---|---|---|---|---|---|---|
| ☐ PRIMARY | (s) c/o Drake | | | | (S) OWENS V-60905 | | |
| ☒ RESPONDER | (s) Sgt Olivas | | | | | | |
| ☐ WITNESS | (Lt) Rodriquez | | | | | | |
| ☐ VICTIM | | | | | | | |
| ☐ CAMERA | | | | | | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | CHEMICALS USED BY YOU | | | | SHOTS FIRED BY YOU | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ EXPANDABLE BATON | | CHEMICAL | TYPE | | TYPE OF ROUNDS | | # OF ROUNDS | |
| ☐ PHYSICAL | ☐ MINI 14 | | ☐ OC | | | MINI 14 | | | |
| ☐ CHEMICAL | | | | | | | | | |
| ☒ NONE | ☐ 38 CALIBER | | ☐ CN | | | 38 CALIBER | | | |
| FORCE OBSERVED BY YOU | ☐ 40 MM | | ☐ CS | | | 40 MM | | | |
| ☐ WEAPON | ☐ 40 MM MULTI | | ☐ OTHER | | | 40 MM MULTI | | | |
| ☐ PHYSICAL | ☐ 9 MM | | | | | 9 MM | | | |
| ☐ CHEMICAL | | | | | | | | | |
| ☒ NONE | ☐ HFWRS | ☒ N/A | ☒ N/A | | | | ☒ N/A | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
|---|---|---|---|---|---|
| ☐ YES | | | | ☐ YES | ☒ YES |
| ☒ NO | ☒ N/A | ☒ N/A | | ☒ NO | ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL/CLINIC) | FLUID EXPOSURE | | SGF 3301/3067 COMPLETED |
|---|---|---|---|---|---|
| ☐ YES | | | ☐ BODILY | ☒ N/A | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☐ UNKNOWN | | ☐ NO |
| | | | ☐ OTHER | | |

**NARRATIVE**

On February 18, 2015 at approximately 1315 hours while performing my duties as the A-4 Floor Officer an audible alarm was sounded in A-3 C section. When I entered the section I saw several staff members holding Inmate OWENS (V-60905) down on the floor with their hands attempting to restrain OWENS in front of cell 232. Due to my vantage point while responding to the incident location I could not accurately see who was holding OWENS down or how they were holding him down. I could see on scene staff was having trouble restraining OWENS because he was thrashing his body from side to side. When I arrived on the top tier Sergeant Blessing told officer Drake and I to escort OWENS for a 7219 medical clearance. Officer Drake and I escorted OWENS down to the A-3 Rotunda and we placed him in the Holding Cell located in the rotunda. A 7219 medical clearance was completed and it was determined by the A-4 RN OWENS needed additional medical attention. At this time Officer Drake and I escorted OWENS down to the facility A-TTA via wheelchair. Inmate OWENS was evaluated by the on scene doctor and he determined an x-ray was needed of OWENS mouth. OWENS was then interviewed by SGT Olivas and L.T Rodriquez. When the interview was finished Officer Drake and I escorted OWENS back to A-3 C section Cell 125S without further incident.

| ☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1 | | | | | |
|---|---|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | TITLE | | BADGE # | ID # | DATE |
| | 4/0 | | | | 2/18/15 |
| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | | CLARIFICATION NEEDED | DATE |
| Sergeant Ken Blessing Wblm | 4/18/2015 | ☒ YES ☐ NO | | ☐ YES ☒ NO | 2/18/2015 |

# EXHIBIT SEPARATION PAGE.

THEON OWENS, _____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-30.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (REV. 10/11) CRIME/INCIDENT REPORT PART C-STAFF REPORT.

Hosted by Defendant - C. DRAKE. on 2/18/2015. at approximately 1315 hours. The exhibit herein shows the report given by DRAKE, after he and other defendants battered the plaintiff while the plaintiff was handcuffed behind his back. The exhibit also shows DRAKE'S attempt to conceal his and other defendants unlawful attack upon the plaintiff. DRAKE writes "Prior to placing 'OWENS' in the holding cell. I searched it to ensure there was no contraband in the cell." Which contradicts with the holding cell Log. See **Exhibit PP-5**. .. which shows defendant. P. BETTENCOURT name and signature as allegedly searching the holding cell. Which shows that defendants are just falsifing reports and making up stories of events as they go alone, to conceal their unlawful beating upon the plaintiff.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**CRIME/INCIDENT REPORT**
**PART C-STAFF REPORT**
CDCR 837-C (Rev 10/11)

| Page 1 of 1 | INCIDENT LOG NUMBER |
|---|---|
| | SAC-PSU -15-02-0194 |

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| DRAKE | CI | Γ | 2-18-15 | 1315 |

| POST # | POSITION | YEARS/MONTHS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 285342 | HCA-A2 ESCORT #3 PSU | 13 years 3 months | 2-18-15 | FA3-232 |

| RDOS | DUTY HOURS | DESCRIPTION OF CRIME/INCIDENT | CCR SECTION/RULE | |
|---|---|---|---|---|
| S/S | 0600/1400 | BATTERY ON A PEACE OFFICER | 3005(d)(1) | ☐ N/A |

| YOUR ROLE | WITNESSES | (PREFACE (S) - STAFF, (V) - VISITOR, (O) - OTHER) | | INMATES | (PREFACE (S) - SUSPECT, (V) - VICTIM, (W) - WITNESS) |
|---|---|---|---|---|---|
| ☐ PRIMARY | (S) SGT.K BLESSING | | | (S)OWENS (V-60905) | |
| ☒ RESPONDER | (S) SGT.B OLIVAS | | | | |
| ☐ WITNESS | (S) LT.RODRIGUEZ | | | | |
| ☐ VICTIM | (S) C\O J. LEBECK | | | | |
| ☐ CAMERA | (S) C\OJ. MURRILLO | | | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | CHEMICALS USED BY YOU | | SHOTS FIRED BY YOU | |
|---|---|---|---|---|---|
| ☐ WEAPON | ☐ EXPANDABLE BATON | CHEMICAL | TYPE | TYPE OF ROUNDS | # OF ROUNDS |
| ☐ PHYSICAL | ☐ MINI 14 | ☐ OC | | MINI 14 | |
| ☐ CHEMICAL | | | | | |
| ☒ NONE | ☐ 38 CALIBER | ☐ CN | | 38 CALIBER | |
| FORCE OBSERVED BY YOU | ☐ 40 MM | ☐ CS | | 40 MM | |
| ☐ WEAPON | ☐ 40 MM MULTI | ☐ OTHER | | 40 MM MULTI | |
| ☒ PHYSICAL | ☐ 9 MM | | | 9 MM | |
| ☐ CHEMICAL | | | | | |
| ☐ NONE | ☐ HFWRS | ☒ N/A | ☒ N/A | ☒ N/A | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
|---|---|---|---|---|---|
| ☐ YES | | | | ☐ YES | ☒ YES |
| ☒ NO | ☒ N/A | ☒ N/A | | ☒ NO | ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL/CLINIC) | FLUID EXPOSURE | | SGF 3301/3067 COMPLETED |
|---|---|---|---|---|---|
| ☐ YES | | | ☐ BODILY | ☒ N/A | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☐ UNKNOWN | | ☒ NO |
| | | | ☐ OTHER | | |

**NARRATIVE**

On Wednesday February 18, 2015 at approximately 1315 hours I responded to an audible alarm in Facility A 3 building, when I arrived I responded to the tier where staff members were restraining OWENS on the ground. I was instructed by SGT. K. Blessing to escort Inmate OWENS (V-60905) from the tier in front of cell FA3-232, I took a hold of OWENS left bicep with my right hand and Officer J. Murrillo took a hold of OWENS right arm and we stood OWENS up. And Officer Murrillo and I walked him down the stairs to the holding cell in FA3 building rotunda. Prior to placing him in the holding cell I searched it to ensure there was no contraband in the cell, and then placed OWENS in the holding cell where a medical evaluation was completed. At the conclusion of the medical evaluation Officer Murrillo and I were instructed to escort OWENS to the ATTA for further medical evaluation, we placed OWENS in a wheelchair and escorted him to the ATTA where we were instructed to take OWENS to A facility dental where X rays were taken of his mouth. After that was complete we then took him down the hall to the ATTA where further medical evaluation was completed. At the conclusion of that medical evaluation we had OWENS sit in the wheelchair again and we escorted him down the hall to a vacant office where a video interview was completed by LT. Rodriguez and SGT. Olivas At the conclusion of the video interview Officer Murrillo and I escorted OWENS via wheelchair to cell FA3 125.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| | Correctional Officer | | - - - - - - | 02-18-15 |

| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| Sergeant Ken Blessing | 2/18/2015 | ☒ YES ☐ NO | ☐ YES ☒ NO | 2/19/2015 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          vs.  JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

## PP-31.
### EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (REV.07/14)(CRIME /INCIDENT REPORT PART C-STAFF REPORT.

Hosted by None Defendant - C. MCCARVEL, correctional sergeant (s9t), on 2/18/2015, at approximately 1315 hours. The exhibit herein shows the report given by MCCARVEL, after the beating to the Plaintiff, by involved defendants. The exhibit also shows that supervising officer, C. MARTINCEK didnot review MCCARVEL report, and that Defendant-k. BLESSING a peer of MCCARVEL signed off on the report, which is a direct violation of department policy, as it is the policy of the department to have a highter ranking officer review a subordinate's report, CCR. Tit. 15. Sec. 3268 1.. which shows the bad intentions and the concealing on part of defendant BLESSING.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1 PAGE'S.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME/INCIDENT REPORT**
**PART C-STAFF REPORT**
CDCR 837-C (Rev 07/14)

Page 1 of 1

| INCIDENT LOG NUMBER |
| --- |
| SAC-PSU-15-02-0194 |

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
| --- | --- | --- | --- | --- |
| McCarvel | Ch. | l | 2-18-2015 | 1315 |

| POST # | POSITION | YEARS/MONTHS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
| --- | --- | --- | --- | --- |
| 250356 | A EOP Sergeant | 16 years 6 months | 2-18-2015 | FA3-A Section |

| RDOS | DUTY HOURS | DESCRIPTION OF CRIME/INCIDENT | | CCR SECTION/RULE | |
| --- | --- | --- | --- | --- | --- |
| S/M | 0600-1400 | Battery on a P.O. Resulting in U.O.F. Physical | | 3005(d)(1) | ☐ N/A |

| YOUR ROLE | WITNESSES (PREFACE (S) - STAFF, (V) - VISITOR, (O) - OTHER) | | INMATES (PREFACE (S) - SUSPECT, (V) - VICTIM, (W) - WITNESS) | |
| --- | --- | --- | --- | --- |
| ☐ PRIMARY | (s) K. Blessing SERGEANT | | (s) OWENS #V-60905 | FA-3-232 |
| ☒ RESPONDER | (s) L. Mercado SERGEANT | | | |
| ☐ WITNESS | (s) C. Drake C/O | | | |
| ☐ VICTIM | (s) J.E. Murillo C/O | | | |
| ☐ CAMERA | | | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | CHEMICALS USED BY YOU | | | SHOTS FIRED BY YOU | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| ☐ WEAPON | ☐ EXPANDABLE BATON | | CHEMICAL | TYPE | TYPE OF ROUNDS | | # OF ROUNDS | |
| ☐ PHYSICAL | | | | | | | | |
| ☐ CHEMICAL | ☐ MINI 14 | | ☐ OC | | MINI 14 | | | |
| ☒ NONE. | ☐ 38 CALIBER | | ☐ CN | | 38 CALIBER | | | |
| FORCE OBSERVED BY YOU | ☐ 40 MM | | ☐ CS | | 40 MM | | | |
| ☐ WEAPON | ☐ 40 MM MULTI. | | ☐ OTHER | | 40 MM MULTI | | | |
| ☐ PHYSICAL | ☐ 9 MM | | | | 9 MM | | | |
| ☐ CHEMICAL | | | | | | | | |
| ☒ NONE | ☐ HFWRS | ☒ N/A | ☒ N/A | | | ☒ N/A | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
| --- | --- | --- | --- | --- | --- |
| ☐ YES | | | | | |
| ☒ NO | ☒ N/A | ☒ N/A | | ☐ YES ☒ NO | ☒ YES ☐ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL/CLINIC) | FLUID EXPOSURE | | SCIF 3301/3067 COMPLETED |
| --- | --- | --- | --- | --- | --- |
| ☐ YES | | | ☐ BODILY | ☒ N/A | ☐ YES |
| ☒ NO | ☒ N/A | ☒ N/A | ☐ UNKNOWN | | ☒ NO |
| | | | ☐ OTHER | | |

**NARRATIVE**

On Wednesday, February 18, at approximately 1315 hours, while conducting my duties as the A Facility Enhanced Out Patient (EOP) Sergeant, I responded to FA-3 Block to assist Psychiatric Services Unit (PSU) Correctional Sergeant #1 K. Blessing with his Sergeant duties due to the high amount of incidents he was dealing with occurring from FA-3 block that day. Once I arrived at FA-3 Block I observed inmate OWENS (#V-60905, FA-3-232) sitting in Holding cell #9 located in the FA-3 rotunda. I asked Sergeant Blessing if he needed me to assist escorting OWENS to the A Facility Treatment and Triage Area (A-TTA). Sergeant Blessing said, "Yes". I assisted Correctional Officers C. Drake and J.E. Murillo with escorting inmate OWENS to the A-TTA for medical evaluation without incident. Third Watch Psychiatric Services Unit (PSU) #2 Sergeant L. Mercado relieved me at the A-TTA of my escorting and Supervising duties at 1400 hours. This concludes my involvement with this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
| --- | --- | --- | --- | --- |
| | Correctional Sergeant | ---- | | 2-18-2015 |

| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
| --- | --- | --- | --- | --- |
| Sergeant Ken Blessing | 7/17/2015 | ☒ YES ☐ NO | ☐ YES ☒ NO | 2/19/2015 |

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

PP-32.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (REV.07/14)CRIME / INCIDENT REPORT PART C-STAFF REPORT.

Hosted by None Defendant. **B.OLIVAS**, correctional Sergeant. on 2.18.2015, at approximately 1441 hours. The exhibit herein shows the report given by **OLIVAS**, after the plaintiff was beaten by involved defendants, while in Mechanical restraints. Significantly causing S.B.I. to the plaintiff. The exhibit also Shows that a video interview was conducted, regarding the plaintiff's ensuring claims and facts persented in the complaint that unnecessary excessive force had been used on him by involved defendants. The exhibit also shows that videofootage exist of the plaintiff and injuries sustained directly after the beaten occurred.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

# CRIME / INCIDENT REPORT

## PART C – STAFF REPORT

| CDCR 837-C (Rev. 07/14) | | | | Page 1 of 1 | | INCIDENT LOG NUMBER SAC-PSU-15-02-0194 | | |
|---|---|---|---|---|---|---|---|---|

| NAME: LAST OLIVAS | | | | FIRST B | | MI | INCIDENT DATE 02/18/2015 | INCIDENT TIME 1315 |
|---|---|---|---|---|---|---|---|---|

| POST # 350358 | | POSITION A FAC. SGT | | YEARS OF SERVICE 7 YR. 2 MO. | DATE OF REPORT 02/18/2015 | | LOCATION OF INCIDENT FA3 C SECTION | |
|---|---|---|---|---|---|---|---|---|

| RDO's M/T | DUTY HOURS 1400-2200 | DESCRIPTION OF CRIME / INCIDENT Battery on Peace Officer resulting in U.O.F (Physical) | | | | | CCR SECTION / RULE 3005(d)(1) | |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) | | |
|---|---|---|---|---|---|---|
| ☐ PRIMARY | (S) LT. E. RODRIGUEZ | | | (S) OWENS (V-60905) | | |
| ☐ RESPONDER | | | | | | |
| ☐ WITNESS | | | | | | |
| ☐ VICTIM | | | | | | |
| ☒ CAMERA | | | | | | |
| ☐ SCRIBE | | | | | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | PHYSICAL: | WEAPON: | WARNING: | EFFECT: | LAUNCHER: | EFFECT: | CHEMICAL / TYPE: | |
| ☐ PHYSICAL | | | | | | | | |
| ☐ CHEMICAL | ☐ EXPANDABLE BATON | ☐ MINI 14 | | | ☐ 37MM | | ☒ N/A | |
| ☐ WEAPON | ☐ RESTRAINT TECHNIQUES | ☐ .38 CAL | | | ☐ L8 | | ☐ OC | |
| ☒ NONE | ☐ HANDS | ☐ 9MM | | | ☐ 40MM | | ☐ CN | |
| | ☐ FEET | ☐ SHOTGUN | | | ☐ 40MM MULTI | | ☐ CS | |
| FORCE OBSERVED BY YOU | | ☐ X10 | | | ☐ HFWRS | | ☐ OTHER | |
| ☐ PHYSICAL | ☐ OTHER FORCE NOT LISTED ABOVE: | | | | | | | |

| ☐ CHEMICAL | EVIDENCE DESCRIPTION | | EVIDENCE DISPOSITION | | | BIO HAZARD | PPE |
|---|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ N/A | DVD disk containing Use of Force Interview | ☐ N/A | DVD disk containing Use of Force Interview secured in evidence locker #3 in A facility control. | | ☐ Yes | ☒ Yes |
| ☒ NONE | | | | | | ☒ No | ☐ No |
| EVIDENCE COLLECTED BY | | | | | | | |

| | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | | SCIF3301/3067 COMPLETED |
|---|---|---|---|---|---|
| ☒ Yes ☐ No | ☒ N/A | ☒ N/A | ☒ N/A ☐ BODILY ☐ UNKNOWN ☐ OTHER | | ☐ Yes ☒ No |
| REPORTING STAFF INJURED ☐ Yes ☒ No | | | | | |

NARRATIVE:

On February 18, 2015 Lt. E. Rodriguez assigned me to be the video camera operator in a Use of Force interview of inmate OWENS (V-60905, A3-232) regarding IR# SAC-PSU-15-02-0194. The interview was conducted in the A-Facility Central Clinic #2 office at approximately 1441 hours. I recorded the interview and when the interview was concluded I downloaded the interview onto a DVD disk. I processed the disk into an evidence envelope and secured the envelope with its contents in evidence locker #3 in A-Facility Control.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL SERGEANT | | | # | ID# | DATE 02/18/2015 |
|---|---|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED 02-18-15 | APPROVED ☒ Yes ☐ No | CLARIFICATION NEEDED ☐ Yes ☒ No | | | DATE 02-18-20 |
| Distribution: | Original: Incident Package | | Copy: Reporting Employee | | Copy: Reviewing Supervisor | |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,        VS. JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## PP-33.
### EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (REV.07/14)
CRIME / INCIDENT REPORT PART C- STAFF REPORT.

Hosted by Defendant-**LANDON MERCADO**, correctional Sergeant (Sgt), on 2/18/2015, at approximately 1315 hours. The exhibit herein Shows the report given by **MERCADO**, after the Plaintiff was beaten by other defendants, while handcuffed behind his back, and after **MERCADO** wrote the Plaintiff up in attempt to aid and abet involved defendants in their unlawful beating upon the Plaintiff. and after **MERCADO** intentionally interfered in ordered Medical treatment that was being Provided to the Plaintiff for diagnosed injuries. The exhibit also Shows that **MERCADO'S** report was not reviewed by a Supervisor, and that a Peer Defendant. **K. BLESSING** signed off on the report. Which is a violation of department Policy, as it is the Policy of the department to have a highter ranking officer review the reports of a serious incident. CCR. Tit. 15. Sec. 3268.1., which shows the bad intentions and concealing of the incident.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

# CRIME / INCIDENT REPORT
## PART C – STAFF REPORT
CDCR 837-C (Rev. 07/14)

Page __1__ of __1__

| | | |
|---|---|---|
| INCIDENT LOG NUMBER | | |
| SAC-PSU-15-02-0194 | | |

| NAME: LAST | | | | FIRST | | | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|---|---|---|---|---|
| Mercado | | | | La | | | I | 2/18/2015 | 1315 |

| POST # | POSITION | | YEARS OF SERVICE | | | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|---|---|---|
| 340363 | A Fac Sgt PSU II | 8 YR. | 1 | MO. | 2/18/15 | FA3-A Section |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | | CCR SECTION / RULE |
|---|---|---|---|---|
| F/S | 1400/2200 | Battery on a P.O. Resulting in U.O.F. (Physical) | | 3005(d)(1) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) | | |
|---|---|---|---|---|---|---|
| ☐ PRIMARY | (S) C. MCCARVEL | | | (S) OWENS (V60905) | FA3-232 | |
| ☒ RESPONDER | (S) C. DRAKE | | | | | |
| ☐ WITNESS | (S) J. MURILLO | | | | | |
| ☐ VICTIM | (S) E. RODRIGUEZ | | | | | |
| ☐ CAMERA | (S) B. OLIVAS | | | | | |
| ☐ SCRIBE | | | | | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | PHYSICAL: | WEAPON: | WARNING: | EFFECT: | LAUNCHER: | EFFECT: | CHEMICAL / TYPE: | |

| FORCE USED BY YOU | | | | | |
|---|---|---|---|---|---|
| ☐ PHYSICAL | ☐ EXPANDABLE BATON | ☐ MINI 14 | _____ _____ | ☐ 37MM _____ | ☒ N/A |
| ☐ CHEMICAL | ☐ RESTRAINT TECHNIQUES | ☐ .38 CAL | _____ _____ | ☐ L8 _____ | ☐ OC _____ |
| ☐ WEAPON | ☐ HANDS | ☐ 9MM | _____ _____ | ☐ 40MM _____ | ☐ CN _____ |
| ☒ NONE | ☐ FEET | ☐ SHOTGUN | _____ _____ | ☐ 40MM MULTI _____ | ☐ CS _____ |
| | | ☐ X10 | _____ _____ | ☐ HFWRS _____ | ☐ OTHER _____ |

| FORCE OBSERVED BY YOU | OTHER FORCE NOT LISTED ABOVE: |
|---|---|
| ☐ PHYSICAL | ☐ OTHER FORCE NOT LISTED ABOVE: |
| ☐ CHEMICAL | |
| ☐ WEAPON | |
| ☒ NONE | |

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|
| ☒ N/A | ☒ N/A | ☐ Yes | ☒ Yes |
| | | ☒ No | ☐ No |

EVIDENCE COLLECTED BY

| DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF3301/3067 COMPLETED |
|---|---|---|---|
| ☒ N/A | ☒ N/A | ☒ N/A | |
| | | ☐ BODILY | ☐ Yes |
| | | ☐ UNKNOWN | ☒ No |
| | | ☐ OTHER | |

☐ Yes
☒ No

REPORTING STAFF INJURED
☐ Yes
☒ No

NARRATIVE:

On Wednesday, February 18, 2015, at approximately 1400 hours, I was working as the A PSU II Sergeant on Third Watch. I was informed by Sergeant C. McCarvel that inmate OWENS, (V60905), was in the A Triage and Treatment Area (TTA) receiving medical treatment after resisting staff and having force used on him. Sergeant McCarvel told me OWENS was highly agitated and I should supervise all dealings with him. While being treated by medical OWENS stated, "I'm going to kill one of you. I'm going to slice your throat. When I get back to C Yard, then one of you is *going* to die!" OWENS continued to yelled belligerently making continuous threats such as, "I'm gonna cut off your dick, and shove it in your mouth!" And, "As soon as I can get out of cuffs, one of you is dead!" After medical treatment was complete, a use of force interview was conducted on OWENS by Lieutenant E. Rodriguez and Sergeant B Olivas. During the interview OWENS was calm and non-threatening. OWENS was then escorted back to A3 Block via wheelchair by Officer's J. Murillo and C. Drake with no further incident.

It should be noted when medical asked about cuts on OWENS' leg, OWENS stated the cuts were self-inflicted.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | | BADGE # | ID# | DATE |
|---|---|---|---|---|---|
| | Sergeant L. Mercado | | | | 2/18/15 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| Sergeant Ken Blessing | 2/18/2015 | ☒ Yes ☐ No | ☐ Yes ☒ No | 2/18/2015 |

Distribution: Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, _____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

PP-34.
EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (REV. 05/08)
## CRIME/INCIDENT REPORT PART C1-SUPPLEMENT.

Hosted by Defendant-**LANDON MERCADO**, correctional sergeant (sgt.), on 2/18/2015, at approximately 1400 hours. The exhibit herein shows the additional fabricated information allowed to be introduced into the incident report by defendant-**C. MARTINCEK** of defendant-**MERCADO**, which allowed for **MERCADO** to defer and mislead reviewing officers, with unrelated general allegations that didnot derive from a single event, and turn out to be unfounded. The exhibit shows **MERCADO** attempt to aid and abet involved defendants after they beat the plaintiff, with the hope's of covering for defendants, justifying their unnecessary excessive force, and gaining sympathy for involved defendants from "white" reviewing supervisors.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: ___1___ PAGE'S.

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART C1 – SUPPLEMENT
### CDCR 837-C1  (Rev. 05/08)

| Page __1__ of __1__ | INCIDENT LOG NUMBER |
| --- | --- |
| | SAC-PSU-15-02-0194 |

| NAME: LAST | FIRST | MI |
| --- | --- | --- |
| MERCADO | L. | |

TYPE OF INFORMATION

CONTINUATION OF REPORT  [X]  ADDITIONAL INFORMATION    [ ]  CLARIFICATION REQUEST

It should be noted on February 17, 2015, at approximately 2030 hours inmate OWENS (V60905) threatened to kill a white staff member. (Refer to Rules Violation Report authored by Correctional Sergeant L. Mercado)

[ ] CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE<br>Correctional Sergeant | BADGE # | ID# | DATE<br>2/18/15 |
| --- | --- | --- | --- | --- |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)<br>C. MARTINCEK  C/LT | DATE<br>RECEIVED<br>2/18/15 | APPROVED<br>[X] Yes  [ ] No | CLARIFICATION<br>NEEDED<br>[ ] Yes  [X] No | DATE<br>2/18/15 |

Distribution:  Original: Incident Package    Copy: Reporting Employee   Copy: Reviewing Supervisor

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS.      VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750- JAM-KJN.

Q Q.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDC 115 (7/89)\RULES VIOLATION REPORT/SERIOUS RULES VIOLATION REPORT LOG NO.: EOP-15-02-058.

Hosted by Defendant-correctional officer. **JOSEPH DEFAZIO.** on 2/18/2015. at 1315 hours. The exhibits herein show the original R.V.R. and 115-A. that was issued to the plaintiff on 3/3/2015. at 1130 hours. by witness/officer-**C. DEMPS.** The exhibits show the hyper-animated story fabricated by defendants as a job insurance plan. The exhibits herein show that excessive physical force was used on the plaintiff and that he was struck by defendants multiple times in the face. The exhibits herein show that Defendants made no efforts to temper the severity of the force they used. The exhibits show that the plaintiff in fact requested witnesses and documentary evidence to be persent at his disciplinary hearing. The exhibits' herein show that the plaintiff's requested witnesses and documentary evidence was not screened. and that the plaintiff did not request that his hearing be postponed.

NUMBER OF PAGE'S TO THIS EXHIBIT: 1-3-6   PAGE'S.

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,            vs. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

QQ-1.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDC 115 (7/89) RULES VIOLATION REPORT. LOG NO.: EOP-15-02-058.

Hosted by Defendant- **JOSEPH DEFAZIO**, on 2/18/2015, at 1315 hours. The exhibit herein Shows the original R.V.R. issued to the Plaintiff on 3/3/2015, at 1130 hours, by correctional officer/witness- **C. DEMPS**. The exhibit Shows the hyper-Story put together by defendants as their job insurance plan, and to conceal their illegal conduct. after they maliciously and Sadistically beat the Plaintiff Significantly while he was under the control of mechanical restraints and defenseless. The exhibit also shows the addmission given by **DEFAZIO**, as to striking the Plaintiff in the face with his clenched fist. **DEFAZIO** writes "...with my left fist I struck **OWENS** in his facial area"... which shows excessive physical force was used, as the Plaintiff was in restraints and **DEFAZIO'S** Strike caused the Plaintiff to Sustain Serious bodily injuries to the face and head. The exhibit also shows that **DEFAZIO** never alleges that he said "stop resisting" to the allegedly resisting Plaintiff, as he does on **Exhibit PP-9**., in hindsight. which shows that no efforts were actual made to temper the severity of the force that he gratuitously used on the Plaintiff's face. See **Exhibit A**..

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1    PAGE'S.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT**

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| V-60905 | OWENS | | | SAC | FA3-232 | SOD-15-02-059 |

| VIOLATED RULE NO(S). | | SPECIFIC ACTS | | LOCATION | DATE | TIME |
|---|---|---|---|---|---|---|
| 3005(d)(1) | | BATTERY ON A PEACE OFFICER | | A3-232 | 2/18/15 | 1315 HRS. |

CIRCUMSTANCES

1       On 2/18/15, at approximately 1315 hours, while working HCA A1 Escort PSU #1, I responded to a radio
2 announcement saying "I need a code 1 response; I need additional staff to A3." I responded to FA3 Block when I
3 arrived to A3 block, I responded to section. The incident was a code 4 at my time of arrival. It was brought to my
4 attention that Correctional Officer Bettencourt had just been gassed. Correctional Sergeant Blessing ordered
5 Correctional Officer Burke and I to go pull inmate OWENS (V-60905,FA3-232) out of his cell so the Correctional
6 Officers M. Brady and J. Lebeck can search the house for contraband OWENS was using to gas staff. OWENS
7 complied with my direct order to submit to handcuffs. I signaled to have cell FA3-232 opened. Cell 232 opened
8 and OWENS spun around before I could grab his left forearm. OWENS sudden attack made me fear for my safety
9 and I stepped back as he was attempting to strike my facial area with his forehead/head area. I could not step back
10 fast enough to completely avoid being struck and OWENS struck me in my chest area with his head. I used
11 immediate force to subdue OWENS and overcome his attack. With my left fist I struck OWENS in his facial area to

### RULES VIOLATION REPORT CONTINUED ON NEXT PAGE, PART C

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ J. DEGRAZIO, CORRECTIONAL Officer | | 2/27/15 | 285243 | F/SA |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | INMATE SEGREGATED PENDING HEARING | | |
|---|---|---|---|---|
| ▶ K. BLESSING, CORRECTIONAL SERGEANT | 2-25-15 | DATE   N/A | LOC. | N/A |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | B | 03/02/15 | ▶ R. KOZUALK | ☐ HO ☒ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| | ▶ C. DOSS | 3/3/15 | 1130 | CDCR-115MH |

| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| SAC-FSU-15-02-0194 | ▶ | | | ▶ | 3/4/15 | 1230 |

HEARING

REFERRED TO ☐ CLASSIFICATION    ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | | SIGNATURE | DATE | TIME |
|---|---|---|---|---|
| | | ▶ | | |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ | | ▶ | |

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | | DATE | TIME |
|---|---|---|---|---|
| | ▶ | | | |

CDC 115 (7/88)

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, _____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

QQ-2.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDC 115-C (5/95) RULES VIOLATION REPORT-PART C. LOG NO.: EOP-15-02-058.

Hosted by correctional officers (c/o) Defendant- JOSEPH DEFAZIO, and Witness- C. DEMPS, on different dates, the exhibit herein shows the continuation of the hyper-animated story constructed by DEFAZIO and other ruffians on 2/18/2015, after they all beat the plaintiff significantly, while he was under the control of mechanical restraints, and defenseless. The exhibit shows that the plaintiff was struck in the face multiple time by Defendants. DAFAZIO writes "... With MY left fist I struck OWENS in his facial area 1 time." Which shows excessive force, as the plaintiff was in the control of restraints when he was assaulted. DEFAZIO writes I hit "OWENS with MY left fist "approximately" two (2) times to his facial area." Which show that excessive force was used, as no less physical options were used like (e.g. chemical agents or hand-held batons to the lower extremities). DEFAZIO writes "...The last strike I struck OWENS facial area stopped him ... officer BRADY at this time grabbed OWENS head and forced it down to the ground causing his face to strike the ground." Which shows →

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| V-60905 | OWENS | EOP-15-02-058 | SAC | 2/18/15 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☒ 115 CIRCUMSTANCES ☐ HEARING ☐ IE REPORT ☐ OTHER____

## CONTINUATION OF RULES VIOLATION REPORT

12. stop his assault with his head. I grabbed OWENS by the back of his head, grabbing a handful of his hair with my
13. right hand; with my left hand I grabbed OWENS by his left arm bicep area and pushed OWENS to the ground.
14. OWENS struck the tier floor face first. As I re-adjusted my right hand, I noticed several pieces of OWENS hair on
15. the tier floor, loose from his head. My left hand was now positioned on OWENS shoulder area. OWENS
16. continued thrashing his body around on the ground attempting to batter on scene staff. OWENS at this time
17. spun his head in my direction and attempted to bite my left hand. I immediately moved my left hand away from
18. OWENS attack while simultaneously hitting OWENS with my left fist approximately two (2) times to his facial
19. area. My punches had no effect on OWENS and he continued to try and bite me. OWENS continued to spin his
20. head in my direction attempting to bite me again. At this time with my left fist I struck OWENS in his facial area 1
21. time. The last strike I struck OWENS facial area stopped him from attempting to bite me further. Officer Brady at
22. this time grabbed OWENS head and forced it down to the ground causing his face to strike the ground. Officer
23. Brady then assisted me in holding down OWENS head by utilizing both his hands on the back of his head.
24. OWENS continued to violently thrash his body from side to side. OWENS continued to kick at Officer Lebeck
25. and Officer Brady went to OWENS legs and applied leg restraints to OWENS. Once we had OWENS head area
26. under control Officer Brady repositioned himself to his lower body. I went to place the spit net on OWENS, as I
27. weas applying the spit net to OWENS, he began throwing his head from side to side. Due to the thrashing of his
28. head I could not properly apply the spit net. I removed the spit net and was able to properly apply it to OWENS
29. head. At this time Correctional Officers J. Murillo and C. Drake relieved us and escorted OWENS to the A3
30. rotunda holding cell. This concludes my involvement in this incident. OWENS is a participant in the Mental
31. Health Services Delivery System at the EOP level of care. OWENS reads above a 4.0 reading level.

## END RULES VIOLATION REPORT

| | SIGNATURE OF WRITER J. DEFAZIO, CORRECTIONAL Officer | | DATE SIGNED 2/27/15 |
|---|---|---|---|
| ☑ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 3/3/15 | TIME SIGNED 1130 |

CDC 115-C (5/95)

OSP 99 25082

# EXHIBIT SEPARATION PAGE:

THEON OWENS,           VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

QQ-3

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDC 115-A (7/88)
SERIOUS RULES VIOLATION REPORT.

Hosted by correctional officer (C/O), C. DEMPS and the
Plaintiff, THEON OWENS. On March 3, 2015, At 1130 hours, It shows
that the Plaintiff infact did request witnesses for the hearing,
as will as documentation for evidence, none of which was
offered to him at the hearing, which establish's the Plaintiff's
claim of a due process violation as true, due to him being
denied witnesses and documentation at the hearing, without
proper justification and or being provided a copy of the
reason why he could not receive these specifically identified
witnesses to be interviewed by the Investigative Employee.
or to attend the hearing, which did not happen, which prove the
Plaintiff's fourteenth Amendment claim hands down, as it puts
all doubt on it's face. The exhibit shows that none of the Plaintiff's
witnesses were screened by defendants, and that the Plaintiff didnot
request that his hearing be postponed, as defendants falsely contend
he did. See Exhibit AA-1..

STATE OF CALIFORNIA

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| V-60905 | OWENS | 3005(d)(1) | 2/18/15 | SAC | EDP-15-02-058 |

| REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT | ☒☒ YES | ☐ NO |
|---|---|---|

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☒ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ X RTS | ☒ RTD |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▶ | DATE |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I REVOKE my request for postponement. | ▶ | |

## STAFF ASSISTANT

| STAFF ASSISTANT | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☐ REQUESTED | ☐ WAIVED BY INMATE | ▶ X Theon Owen | ✗ 3-3-15 |
| ☒ ASSIGNED | DATE 3/3/15   NAME OF STAFF 90 | ▶ Owens / 3/18/15  Protovinsky | |
| ☐ NOT ASSIGNED | REASON | | |

INMATE ☐ DOES ☐ DOES NOT MEET THE CRITERIA PER CCR TITLE 15 §3315(D)(2).

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☒ REQUESTED | ☒ WAIVED BY INMATE | ▶ X Theon owe | ✗ 3-3-15 |
| ☒ ASSIGNED | DATE        NAME OF STAFF | | |
| ☐ NOT ASSIGNED | REASON | | |

INMATE ☐ DOES ☐ DOES NOT MEET THE CRITERIA PER CCR TITLE 15 §3315(D)(1).

EVIDENCE / INFORMATION REQUESTED BY INMATE:

Medcal Report CDCR 7219, Photos taken on the bay of emc, dental reports and RN reports.

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

| ☐ REPORTING EMPLOYEE | ☐ STAFF ASSISTANT | ☐ INVESTIGATIVE EMPLOYEE ☒ OTHER Inmates | | ☐ NONE |
|---|---|---|---|---|

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| A-3-130 (3/M Wolf) , Cell A-3-230 | ☐ | ☐ | (3/M Hendos J-62763) | ☐ | ☐ |
| Cell A-3-129  ,  Cell A-3-126 | ☐ | ☐ | (3/M EDDIE sanchez k-62067) | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE | DATE |
|---|---|---|
| | ▶ | |

| ☒ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ C.1 hps | TIME 1130 | DATE 3/3/15 |
|---|---|---|---|

CDC 115-A (7/88)

*— If additional space is required use supplemental pages —*

# EXHIBIT SEPARATION PAGE.

THEON OWENS. _____ VS. JOSEPH DEFAZIO, ET AL.

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

QQ-4.

**EXHIBIT.**

DESCRIPTION OF THIS EXHIBIT: MEMORANDUM-CDC-115 FOR INMATE OWENS (CV-WPOS), LOG # EOP-15-02-058. / RULES VIOLATION REPORT-PART C. /CDCR 115-MH (Rev. 06/06) RULES VIOLATION REPORT: MENTAL HEALTH ASSESSMENT REQUEST.

Hosted by Correctional Officer C. DeMES, on 3/3/2015. The exhibits herein show the Memorandum generated on Rules Violation Report (R.V.R.) Log No: EOP-15-02-058. regarding the need for the time constraints to be met. Which they were not. See Ex. AA-1. The exhibits shows the effective communication provided during the disciplinary process. The exhibits show that no Mental health factors May have caused the Plaintiff to some how want to allegedly "Batter a fence officer". as alleged.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __3__ PAGE'S.

**MEMORANDUM**

MHCB

To: Officer Demps

Date:   March 16, 2015

To:   Classification and Parole Representative
       California Medical Facility (CMF)

From:   **California State Prison, Sacramento - Represa, CA 95671-0022**

Subject:   **CDC-115 FOR INMATE OWENS (V-60905), LOG# EOP-15-02-058**

Inmate OWENS was transferred to your facility with a pending Division "B" Rules Violation Report (CDC 115) for an incident that occurred on 2/18/2015. This matter was inadvertently not completed prior to the inmate being transferred to your facility.

We respectfully request that your staff adjudicate inmate OWENS' attached CDC 115 EOP-15-02-058 and please issue the following documents prior to hearing the 115:

1. **Complete** Mental Health Assessment

2. **Issue** Mental Health Assessment

3. **Issue** SA

4. **Issue** IE

5. **Issue** Incident Report

**In order for time constraints to be met in this matter, Inmate OWENS' CDC-115 must be adjudicated by 4/02/15.**

Upon completion of the adjudication process, please forward a completed copy of the CDC-115 to Correctional Officer J. Stigelmayer at the California State Prison, Sacramento, A Facility Disciplinary Office, PO Box 290022, Represa, CA 95671-0022.

Thank you for your cooperation in this matter. Don't hesitate to contact me at telephone number **(916) 985-8610 extension 6124** or on the GLOBAL if you have any questions.

J. Stigelmayer
PSU Disciplinary Officer
California State Prison - Sacramento
(916) 985-8610 EXT: 6124
FAX: (916) 294-3055

STATE OF CALIFORNIA
RULES VIOLATION REPORT - PART C

DEPARTMENT OF CORRECTIONS AND REHABILITATION
PAGE ___1___ OF ___2___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| V-60905 | OWENS | EOP-15-02-058 | CMF | 3/3/15 |

## CDC-115 EFFECTIVE COMMUNICATION

**ENSURE DISABILITY AND EFFECTIVE COMMUNICATION (DEC) SYSTEM IS REVIEWED AND THE INMATE IS QUERIED FOR EFFECTIVE COMMUNICATION NEEDS** (Required for all inmates TABE 4.0 or below)

☐ No disabilities or issues requiring equally effective communication (If checked, no further completion of form necessary)

☐ Hearing (DPH, DNH)
☐ Learning Disability (LD)
☒ Mental Health Crisis Bed (MHCB)
☐ Developmental Disability (DD1, DD2, DD3) *Ensure confidentiality.*

☐ Vision (DPV)
☐ Correctional Clinical Case Management System (CCCMS)
☐ Foreign Language Speaking

☐ Speech (DPS, DNS)
☐ Enhanced Outpatient (EOP)
☐ DSH

☐ TABE 4.0 or lower, 'S' TABE score: UNKNOWN

**Primary** method of communication: (Refer to DEC/Central File and query inmate) _ENG/t.s/H_
**Alternate** method of communication: (Refer to DEC/Central File and query inmate) _STAFF ASSISTANT_
NOTE: The primary method of communication shall be used to ensure effective communication in due process proceedings.
Staff MUST document the reason if an inmate's primary means of communication is not used.

### INITIAL SERVICE

Name of staff: __C/O DEMPS__          Date: __3/3/15__

**Assistance provided to ensure effective communication:**
☐ Use of Text Magnifier
☐ Read Documents to "S"
☐ Lip Reading
☐ Foreign Language Interpreter
☒ "S" stated he/she did not need any assistance for Effective Communication
☐ Other: ___

☐ Sign Language Interpreter___
☐ Written Notes (see attached notes)
☐ Simple English Spoken Slowly & Clearly
☐ "S" was wearing his/her hearing aid(s)

3/4/15 -Issued MHA

**Method used to determine communication was effective:**
☐ "S" reiterated in his/her own words, what was explained
☐ "S" provided appropriate, substantive responses to questions asked
☒ "S" asked appropriate questions regarding the information provided
☐ "S" did not appear to understand communication, even though primary method was used
☐ Other ___

### STAFF ASSISTANT (S/A)   ☐ N/A (Do not complete this section if S/A served initial copy)

Name of staff: __Protovinsky__          Date: __03-19-15__   1030 hours

**Assistance provided to ensure effective communication:**
☐ Use of Text Magnifier
☐ Read Documents to "S"
☐ Lip Reading
☐ Foreign Language Interpreter
☐ "S" stated he/she did not need any assistance for Effective Communication
☐ Other: ___

☐ Sign Language Interpreter___
☐ Written Notes (see attached notes)
☒ Simple English Spoken Slowly & Clearly
☒ "S" was wearing his/her hearing aid(s)

OVOH-US ASSISTED OWENS WITH TELEPHONE IE.

**Method used to determine communication was effective:**
☐ "S" reiterated in his/her own words, what was explained
☒ "S" provided appropriate, substantive responses to questions asked
☐ "S" asked appropriate questions regarding the information provided
☐ "S" did not appear to understand communication, even though primary method was used
☐ Other ___

## RULES VIOLATION REPORT: MENTAL HEALTH ASSESSMENT REQUEST

| REVIEWING CUSTODY SUPERVISOR |
|---|

A CDC 115, Rules Violation Report (RVR), has been written on the following inmate, who requires a mental health assessment.

Inmate Name: **OWENS**                                    CDC Number: **V-60905**

RVR Log Number: **EOP-15-02-058**          Date of Violation: **2/18/15**          Housing: **MHCB B-2**

Specific Act Charged: **BATTERY ON A PEACE OFFICER**

The inmate's current Mental Health Level of Care is: (check one)

☐ NOT IN MHSDS PROGRAM*    ☐ CCCMS*    ☐ EOP    ☑ MHCB    ☐ DMH

**\*CCCMS AND NON-MHSDS PROGRAM PARTICIPANTS WILL BE REFERRED FOR A MENTAL HEALTH ASSESSMENT FOR BEHAVIOR THAT IS BIZARRE OR UNUSUAL FOR ANY INMATE, OR THAT IS UNCHARACTERISTIC FOR THIS INMATE.**

Sent to Mental Health: **3/3/15**  By: **C.DEMPS**                    /
                        Date              Print Name              Signature

Return this form to: **C/O DEMPS**                      *By: **ASAP**                ,
                              Print Name                              Date

*(CCCMS and non-MHSDS, 5 working days; EOP/MHCB/DMH, 15 calendar days)*

| MENTAL HEALTH CLINICIAN |
|---|

Conducted non-confidential interview:  **3|4|15**          (Inmate informed of non-confidentiality).
                                          Date

1. CCCMS/NON-MHSDS only. Are there any mental health factors that would cause the inmate to experience difficulty in understanding the disciplinary process and representing his/her interests in the hearing that would indicate the need for the assignment of a Staff Assistant?   ☐ Yes   ☒ No

Explain "yes" response: _____

2. In your opinion, did the inmate's mental disorder appear to contribute to the behavior that led to the RVR?
☐ Yes   ☒ No   Explain "yes" response: _____

3. If the inmate is found guilty of the offense, are there any mental health factors that the hearing officer should consider in assessing the penalty?   ☐ Yes   ☒ No  Explain "yes" response: _____

| INSTITUTION: | CLINICIAN NAME (Print) | SIGNATURE | DATE |
|---|---|---|---|
| CMF/MHCBP | S·KINDERMAU, Pt.D. | | 3/4/15 |
| RECEIVED BY : | CUSTODY STAFF NAME (Print) | SIGNATURE | DATE |

DISTRIBUTION:
Original : Central File With Adjudicated RVR
Blue : 115 Unit Health Record
Pink : Inmate

| CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|
| V-60905 |
| OWENS |

## RULES VIOLATION REPORT:
## MENTAL HEALTH ASSESSMENT REQUEST

CDCR 115-MH (Rev. 06/06)
STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS AND REHABILITATION

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE <u>EASTERN</u> DISTRICT OF CALIFORNIA

THEON OWENS.          VS. JOSEPH DEFAZIO, ET AL.

CAES No.: <u>2:16-CV-02750-JAM-KJN</u>.

RR.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 115 (7/89) RULES VIOLATION REPORT: EOP-15-02-058. Hosted by defendants JOSEPH DEFAZIO, KENNETH BLESSING, JASON SCHULTZ. And LAURA ELDRIDGE, on different dates. The exhibits herein show the summery of the disciplinary hearing, that was held on 5/28/2015, and was conducted by defendant Senior Hearing officer (SHO) SCHULTZ. for the allegations alleged against the Plaintiff by defendants, as a Job insurance plain. The exhibits also clarifys the ensuring claims against Defendant-Chief Disciplinary officer. ELDRIDGE, as to affirming the finding of a unconstitutional hearing. Without fair procedural due process being offered. And defendant-SHO. SCHULTZ. as to the denial of specificly identified eye witnesses and the documentary evidence requested by the Plaintiff before and during the hearing, for the hearing. and as to the false statement documented in the summery by the SHO. reflecting that the Plaintiff did not request witnesses. The exhibits also shows the new CDC 115-A. that Defendant-COUCH switched in place of the original one issued to the Plaintiff on

NUMBER OF PAGE'S TO THIS EXHIBIT: <u>1-5-16.</u> PAGE'S 3/3/2015. The exhibits also confirms all ensuring claims against Defendants-COUCH and SCHULTZ that are within the complaint.

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,  VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## RR-1.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: **CDC 115 (7188) RULES VIOLATION REPORT. LOG NO.: EOP-15-02-058.**

Hosted by Defendants- Correctional officer, **JOSEPH DEFAZIO**, Correctional Sergeant (Sgt) - **KENNETH BLESSING**, Correctional Lieutenant (Lt.)/Senior Hearing officer (SHO) - **JASON SCHULTZ**, And Associate Warden (A.W) - **LAURA ELDRIGE**, on different dates. The exhibit herein show the hyper-animated story constructed by Defendants on 2/18/2015, after they all beat the Plaintiff significantly, while he was under the control of Mechanical restraints, The exhibit shows that the plaintiff was struck in the face and that excessive force was used by defendants. The exhibit shows that **ELDRIDGE** affirmed the unconstitutional disciplinary hearing on 7/11/15, eventhough, **ELDRIDGE** was fully aware that the plaintiff had in fact requested witnesses and was not allowed to call them, which shows that a "Due Process" violation occurred. The exhibit shows that Defendant- **BLESSING** signed off as the reviewing supervisor, eventhough, he was fully aware that the allegations→

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1-2__ PAGE'S.

**CSR REVIEWED**

STATE OF CALIFORNIA

**RULES VIOLATION REPORT** *"D.A."*

| : NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| V-60905 | OWENS | | | SAC | FA3-232 | ECB-15-02-059 |
| VIOLATED RULE NO(S). | | SPECIFIC ACTS | | LOCATION | DATE | TIME |
| 3005(d)(1) | | BATTERY ON A PEACE OFFICER | | A3-232 | 2/18/15 | 1315 HRS. |

CIRCUMSTANCES

On 2/18/15, at approximately 1315 hours, while working HCA A1 Escort PSU #1, I responded to a radio announcement saying "I need a code 1 response; I need additional staff to A3." I responded to FA3 Block when I arrived to A3 block, I responded to section. The incident was a code 4 at my time of arrival. It was brought to my attention that Correctional Officer Bettencourt had just been gassed. Correctional Sergeant Blessing ordered Correctional Officer Burke and I to go pull inmate OWENS (V-60905,FA3-232) out of his cell so the Correctional Officers M. Brady and J. Lebeck can search the house for contraband OWENS was using to gas staff. OWENS complied with my direct order to submit to handcuffs. I signaled to have cell FA3-232 opened. Cell 232 opened and OWENS spun around before I could grab his left forearm. OWENS sudden attack made me fear for my safety and I stepped back as he was attempting to strike my facial area with his forehead/head area. I could not step back fast enough to completely avoid being struck and OWENS struck me in my chest area with his head. I used immediate force to subdue OWENS and overcome his attack. With my left fist I struck OWENS in his facial area to

## RULES VIOLATION REPORT CONTINUED ON NEXT PAGE, PART C

| REPORTING EMPLOYEE (Typed Name and Signature) | | | DATE | | ASSIGNMENT | RDO'S |
|---|---|---|---|---|---|---|
| ▶ J. DEGAZIO, CORRECTIONAL Officer | | | 2/27/15 | | 285243 | F/SA |
| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | INMATE SEGREGATED PENDING HEARING | | | |
| ▶ K. BLESSING, CORRECTIONAL SERGEANT | | 2-25-15 | DATE ___ N/A ___ LOC. ___ N/A | | | |
| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | | HEARING REFERRED TO | |
| ☐ ADMINISTRATIVE | | 03/02/15 | | | ☐ HO ☒ SHO ☐ SC ☐ FC | |
| ☒ SERIOUS | B | | ▶ O. KERRIALEZ | | | |

COPIES GIVEN INMATE BEFORE HEARING

| CDC 115 | BY: (STAFF'S SIGNATURE) | | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|---|
| | ▶ | | | | CDCR-115MH | | |
| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
| SAO-PSU-15-02-0154 | ▶ | | | | ▶ | | |

HEARING

## FINDING: GUILTY 0 Days Credit Forfeiture

Inmate OWENS (V-60905) appeared before the Senior Hearing Officer on 5/28/15, at 1300 hours. He acknowledged receipt of the Rules Violation Report on 3/03/15, and all other reports to be used in evidence. OWENS was properly identified and stated he was in good health and ready to proceed with the hearing in the A Facility Cto-1 Conference Room. OWENS is a participant in the Mental Health Services Delivery System at the EOP level of care. The entire CDCR-115MH Mental Health Assessment Form was reviewed and taken into consideration during this disciplinary proceeding. OWENS was assigned a Staff Assistant. OWENS was assigned an I.E. All time constraints HAVE NOT been met, due to the hearing not having taken place within 30 Days of issuance. All reports were issued more than 24 hours prior to the hearing.

*DA REFERRAL:* OWENS REQUESTED postponement pending outcome of referral for prosecution on 3/03/15. The District Attorney's Office DECLINED to prosecute and notice was received by ISU on 4/27/15. This matter was postponed past the 30 day time constraint at OWENS's request pending the outcome of felony referral.

## DISPOSITION CONTINUED ON NEXT PAGE, PART C

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | | SIGNATURE | DATE | TIME |
|---|---|---|---|---|
| J. SCHULTZ, CORRECTIONAL LIEUTENANT | | J. Shltz | 08/15/15 | 1/35 |
| REVIEWED BY: (SIGNATURE) | DATE | CHIEF-DISCIPLINARY OFFICER'S SIGNATURE | DATE | |
| ▶ C. CANNEDY, A FACILITY CAPTAIN | 6/24/15 | ▶ L. ELDRIDGE, AW-A/ASU | 06/30/15 | |
| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | | DATE | TIME |
| | ▶ | | 7/11/15 | 14:00 |

CDC 115 (7/88)

| OC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|-----------|---------------|------------|-------------|--------------|
| V-60905   | OWENS         | EOP-15-02-058 | SAC      | 2/18/15      |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:   ☒ 115 CIRCUMSTANCES   ☐ HEARING   ☐ IE REPORT   ☐ OTHER_____

## CONTINUATION OF RULES VIOLATION REPORT

stop his assault with his head. I grabbed OWENS by the back of his head, grabbing a handful of his hair with my right hand; with my left hand I grabbed OWENS by his left arm bicep area and pushed OWENS to the ground. OWENS struck the tier floor face first. As I re-adjusted my right hand, I noticed several pieces of OWENS hair on the tier floor, loose from his head. My left hand was now positioned on OWENS shoulder area. OWENS continued thrashing his body around on the ground attempting to batter on scene staff. OWENS at this time spun his head in my direction and attempted to bite my left hand. I immediately moved my left hand away from OWENS attack while simultaneously hitting OWENS with my left fist approximately two (2) times to his facial area. My punches had no effect on OWENS and he continued to try and bite me. OWENS continued to spin his head in my direction attempting to bite me again. At this time with my left fist I struck OWENS in his facial area 1 time. The last strike I struck OWENS facial area stopped him from attempting to bite me further. Officer Brady at this time grabbed OWENS head and forced it down to the ground causing his face to strike the ground. Officer Brady then assisted me in holding down OWENS head by utilizing both his hands on the back of his head. OWENS continued to violently thrash his body from side to side. OWENS continued to kick at Officer Lebeck and Officer Brady went to OWENS legs and applied leg restraints to OWENS. Once we had OWENS head area under control Officer Brady repositioned himself to his lower body. I went to place the spit net on OWENS, as I weas applying the spit net to OWENS, he began throwing his head from side to side. Due to the thrashing of his head I could not properly apply the spit net. I removed the spit net and was able to properly apply it to OWENS head. At this time Correctional Officers J. Murillo and C. Drake relieved us and escorted OWENS to the A3 rotunda holding cell. This concludes my involvement in this incident. OWENS is a participant in the Mental Health Services Delivery System at the EOP level of care. OWENS reads above a 4.0 reading level.

## END RULES VIOLATION REPORT

| SIGNATURE OF WRITER J. DEFAZIO, CORRECTIONAL Officer | | DATE SIGNED 2/27/15 |
|---|---|---|
| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | |

CDC 115-C (5/95)

OSP 98 25082

# EXHIBIT SEPARATION PAGE.

THEON OWENS,                 VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

RR-2.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDC 115-C (5/95) RULES VIOLATION REPORT-PART C: LOG NO.: EOP-15-02-058.

Hosted by defendant-Senior Hearing office (SHO) JASON SCHULTZ on 5/28/2015 The exhibit herein shows the continuation of the summery of the disciplinary hearing, whereon you will find the fabricated notation made by the SHO, alleging that "inmate OWENS requested no witnesses at the time of the disciplinary hearing" in his attempt to deprive the plaintiff of witnesses testimony. as Exhibit QQ-3. clearly shows the eyewitnesses that were requested before and at the hearing, which confirms a due process violation occurred. The exhibit also shows the only defense the plaintiff was allowed to persent, which was a statement, noted as," It never happen, I was assaulted and battered by these officers". The exhibit also shows that the SHO didnot address the documentary evidence or witnesses requested at the hearing, as there is no notes of reference of the requested documentary evidence or of the documentation attempted to be introducted at the time of the hearing, and or of the eyewitnesses questions provided to the investigative Employee being screened in or out by the SHO, and or of the witnesses names on Exhibit QQ-3. , being granted or denied. clearly confirming a due process violation occurred.

| DC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| V-60905 | **OWENS** | EOP-15-02-058 | SAC | 5/28/15 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER____

## CONTINUATION OF DISPOSITION

*STAFF ASSISTANT:* The original Staff Assistant, Correctional Officer J. Protivinsky, was not available at the time of the disciplinary hearing. Therefore, Correctional Officer S. Bartlett was assigned as the new Staff Assistant on 4/27/15, but was not available at the time of the disciplinary hearing either. Correctional Officer B. Schroeder was assigned as the final Staff Assistant on 5/26/15 and was present at the hearing. Officer Schroeder indicated that he met with and explained all non-confidential reports to OWENS at least 24 hours prior to the hearing and that OWENS fully understood the charges brought against him. The Staff Assistant represented OWENS at the hearing, ensuring that OWENS understood the decisions reached.

*PLEA:* Inmate OWENS was read the charges and he pled NOT GUILTY, stating, "It never happened. I was assaulted and battered by these Officers." The SHO then asked inmate OWENS the following two (2) questions:

**Q1:** "Did you do anything to provoke this incident?"
**A1:** "I threw water out of the door."
**Q2:** "Did you come out of the cell and batter anyone?"
**A2:** "On Jesus Christ I didn't. I was the one that was battered."

*WITNESSES:* Inmate OWENS requested ^NO witnesses at the time of the disciplinary hearing.

*FINDINGS:* Inmate OWENS was found GUILTY of violating CCR §3005(d)(1), *"BATTERY ON A PEACE OFFICER."* The preponderance of evidence submitted at the hearing substantiates the charge. This evidence included:

1) The written Rules Violation Report by Correctional Officer J. Defazio, which states in part, "I signaled to have cell FA3-232 opened. Cell 232 opened and OWENS spun around before I could grab his left forearm. OWENS sudden attack made me fear for my safety and I stepped back as he was attempting to strike my facial area with his forehead/head area. I could not step back fast enough to completely avoid being struck and OWENS struck me in my chest area with his head."

2) The CDCR-837C Incident Report authored by Correctional Officer J. Burke, which states in part, "Once the door opened inmate OWENS spun towards Officer J. DeFazio and lunged forward with his head striking Officer J. DeFazio in the upper chest area forcing Officer DeFazio to move back."

## DISPOSITION CONTINUED ON NEXT PAGE, PART C

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | **J. SCHULTZ, CORRECTIONAL LIEUTENANT** | O 6/15/15 |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY (Staff's Signature) | DATE SIGNED 7/11/15 — TIME SIGNED 1400 |

OSP 11 123876

# EXHIBIT SEPARATION PAGE.

THEON OWENS,                    VS.  JOSEPH DEFAZIO. ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

RR-3.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDC 115-C (5195) RULES VIOLATION REPORT- PART C. LOG NO.: EOP-15-02-058.

Hosted by defendant- Senior Hearing Office (SHO) JASON SCHULTZ. on 5/28/2015. The exhibit herein shows the continuation of the disciplinary hearing summery. Whereon it is noted by the SHO that the plaintiff was found guilty of the allegation of allegedly Battering staff. Without being able to call any witnesses and or able to use any documents as a defense. Which deprived the plaintiff of his XIV Amendment right to "Due Process". The exhibit also shows that the plaintiff was immediately deprived of all of his "Personal property, vendor packages, Appliances and telephone privileges for 90 days". Without fair procedural due process being offered. The exhibit also shows that the plaintiff was referred to the Institutional classification committee for a security Housing unit assessment. Which deprived the plaintiff of his liberty Without fair due process of law. as the plaintiff was subsequently sentenced to an eighteen month aggravated SHU term.

| DC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| V-60905 | OWENS | EOP-15-02-058 | SAC | 5/28/15 |

☐ SUPPLEMENTAL ☒☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒☒ HEARING ☐ IE REPORT ☐ OTHER_____

## CONTINUATION OF DISPOSITION

*EFFECTIVE COMMUNICATION:* Due to OWENS's level of care, SHO established effective communication by using simple English spoken slowly and clearly. OWENS reiterated in his own words what was explained, provided appropriate and substantive responses to questions asked and asked appropriate questions regarding information provided.

*MENTAL HEALTH:* Information provided by Clinical Staff has been reviewed and taken into consideration during this CDCR-115 hearing and in the disposition of this CDCR-115. Clinical Staff indicate OWENS's behavior was not influenced by mental illness. Clinical Staff also indicated that if OWENS is found guilty, there are no Mental Health factors the SHO should consider in assessing the penalty. The SHO chooses to hold OWENS accountable for his actions.

*SPECIAL NOTATION:* The SHO notes Rules Violation Report Log# EOP-15-02-058 has lost the Time Constraints due to the hearing not having taken place within 30 Days of issuance. Specifically, this RVR was due to be heard by 4/02/15. It was sent to California Medical Facility via email and CSO on 3/03/15 to be heard. It was sent back on 4/13/15 having lost the Time Constraints due to it not having been heard *(refer to memorandum authored by Correctional Officer J. Stigelmayer and dated 4/28/15).*

*DISPOSITION:* Based on a finding of GUILTY, inmate OWENS is assessed 0 Days loss of credit under a Division "B" Offense. Counseled and Reprimanded. Due to the PSU Behavioral Incentive Program, loss of privileges shall be assessed from the date of the incident. Assessed loss of Personal Property, Vendor Packages, Appliances and Telephone privileges for 90 Days, from 2/18/15 to 5/19/15. Refer to ICC for SHU assessment. OWENS was advised of his right to, and procedure for, appeal of this action. He was also advised of the credit restoration process and that he would receive a copy of the completed CDCR-115 upon final audit by the Chief Disciplinary Officer.

## END OF DISPOSITION

| SIGNATURE OF WRITER J. SCHULTZ CORRECTIONAL LIEUTENANT | DATE SIGNED 06/15/15 | |
|---|---|---|
| GIVEN BY: (Staff's Signature) | DATE SIGNED 7/11/15 | TIME SIGNED 1400 |

☒ COPY OF CDC 115-C GIVEN TO INMATE

# EXHIBIT SEPARATION PAGE.

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

RR-4.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 115-A SERIOUS RULES VIOLATION REPORT. LOG NO.: EOP-15-02-058.

Hosted by Defendant-Investigative Employee (I.E.) RAY D. COUCH, on April 27, 2015. The exhibit herein shows the I.E.'s report provided to the plaintiff, whereon the I.E. misrepresented the plaintiff's statement, noting the plaintiff as saying "...I want to know who broke MY teeth." which the plaintiff never said, as the plaintiff knows exactly which defendant knocked out his teeth. The exhibit also shows the new CDC 115-A, that COUCH switched in place of the original one, and you can clearly see how none of the plaintiff's requested witnesses and documentary evidence is noted on the form. Which confirms the ensuing claims against defendant-COUCH in the compl. are true. Also see Exhibit QQ-3., to see the requests that were made, which comfirms a due process violation occurred, as the plaintiff requested eyewitnesses and document for the hearing as a defense. The exhibit also shows that many department procedural due process violations occurred, as no where on the form did the plaintiff sign, as receiving a notice of the RVR/charges, which violates the plaintiff's XIV. Amendment right to a "written notice of the disciplinary violation.

| CDC NUMBER V-60905 | INMATE'S NAME OWENS | VIOLATED RULE NO(S). 3005(d)(1) | DATE 2/18/15 | INSTITUTION SAC | LOG NO. EOP-15-02-059 |

REFERRAL FOR FELONY PROSECUTION

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▶ | DATE |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION | | |
|---|---|---|---|
| | | INMATE'S SIGNATURE | DATE |
| ☐ I REVOKE my request for postponement. | | ▶ | |

## STAFF ASSISTANT

| STAFF ASSISTANT | | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|---|
| ☐ REQUESTED | ☐ WAIVED BY INMATE | | ▶ | |
| ☒ ASSIGNED | DATE 4-2-15 | NAME OF STAFF Hotunitsky | | |
| ☐ NOT ASSIGNED | REASON | INMATE ☒ DOES ☐ DOES NOT MEET THE CRITERIA PER CCR TITLE 15 § 3315(D)(2). | | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|---|
| ☐ REQUESTED | ☐ WAIVED BY INMATE | | ▶ | |
| ☒ ASSIGNED | DATE 4-2-15 | NAME OF STAFF R. Casch | | |
| ☐ NOT ASSIGNED | REASON | INMATE ☐ DOES ☐ DOES NOT MEET THE CRITERIA PER CCR TITLE 15 §3315(D)(1). | | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

| ☐ REPORTING EMPLOYEE | ☐ STAFF ASSISTANT | ☐ INVESTIGATIVE EMPLOYEE | ☐ OTHER _____ | ☒ NONE |

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

On 4/09/15, I completed the duties of Investigative Employee for CDC 115 Log #EOP-15-02-058, in regard to inmate OWENS (V-60905). I informed inmate OWENS of my assignment, and that my role as I.E. is as a fact finder for the Senior Hearing Officer. Inmate OWENS stated that he had no objection to my serving in this capacity.

*DEFENDANT'S STATEMENT:* Inmate OWENS stated, "I have a lot of questions. I want to know who broke my teeth."

*REPORTING EMPLOYEE'S STATEMENT:* Correctional Officer J. Defazio stated, "Sergeant Blessing ordered Officer Burke and I to go pull inmate OWENS out of his cell so Officers M. Brady and Lebeck can search the house for contraband OWENS was using to gas staff. I handcuffed OWENS then signaled to have his cell opened. Cell 232 opened and OWENS spun around before I could grab him. I stepped back as he was attempting to strike my facial area with his forehead/head area. OWENS struck me in my chest area with his head. I used immediate force to subdue OWENS and overcome his attack. I struck OWENS in his facial area to stop his assault with his head. I grabbed OWENS by the back of his head and his left arm bicep area and pushed OWENS to the ground. OWENS continued thrashing his body around on the ground attempting to batter on scene staff. OWENS attempted to bite my left hand. I immediately moved my leg and away from OWENS attack while simultaneously hitting OWENS with my left fist to his facial area. OWENS continued to try and bite me. OWENS continued attempting to bite me again. I struck OWENS in his facial area and stopped him from attempting to bite me further. Officer Brady grabbed OWENS head and forced it down to the ground. Officer Brady then assisted me in holding down OWENS head. OWENS continued to violently thrash his body. OWENS continued to kick at Officer Lebeck and Officer Brady went to OWENS legs and applied leg restraints."

INVESTIGATIVE EMPLOYEE'S REPORT CONTINUED ON NEXT PAGE, PART C

| ISSUED TO INMATE ON: 4-27-15 AT: 0930 | | | | |
|---|---|---|---|---|
| BY: J Higelmey | | INVESTIGATOR'S SIGNATURE ▶ C/O R. D. COUCH | | DATE 4-27-15 |
| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | | TIME | DATE |

CDC 115-A (7/88)          — *If additional space is required use supplemental pages* —

# EXHIBIT SEPARATION PAGE.

THEON OWENS,_____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

RR-5.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDC 115-C (5/95) RULES VIOLATION REPORT-PART C: LOG NO.: EOP-15-02-058.

Hosted by Defendant-Investigative Employee (I.E.) MAY D. COUCH. on 4/27/2015. The exhibit herein shows the I.E.'s report provided to the plaintiff. Whereon the I.E. addmits that the plaintiff provided him with 120 questions to be asked of both staff and inmates, that were persent at the time of the incident. the I.E. noted that [he] "found most of the questions irrelevant to the specific charge". which clearly confirms the procedural due process violation ensured against COUCH, as it is not the role of the I.E. to deny witnesses, this denal should only be determined by the Senior Hearing officer (SHO) CCR. Tit. 15. Sec. 3315 (e)(1.)., This exhibit also shows that the I.E. didnot confer on any of the questions with the SHO, as it is not documented in the I.E.'S report or in the SHO's summery, that were provided to the plaintiff, that screening occurred, which confirms the procedural due process violation ensured in the complaint. This exhibit also shows that the I.E. only chose to ask five of the questions provided to him by the plaintiff, and of the five questions he elected to ask, he changed the witten language of the questions in a way that made it appear as if the plaintiff had additted to allegedly trying to bite someone. which is a violation.

| DC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|-----------|---------------|------------|-------------|--------------|
| V-60905 | OWENS | EOP-15-02-058 | SAC | 4/09/15 |

☐ SUPPLEMENTAL ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☒ IE REPORT ☐ OTHER_____

## INVESTIGATIVE EMPLOYEE'S REPORT CONTINUED

_WITNESSES_: Inmate OWENS provided the I.E. with a list of one hundred twenty (120) questions and requested the I.E. interview twenty-two (22) witnesses, both Staff and inmates. **(See Attached)** The I.E. found most of the questions irrelevant to the specific charge. However, the I.E. did interview the Reporting Employee Correctional Officer J. Defazio and asked him three (3) of the questions provided by inmate OWENS. Additionally, the I.E. did interview the Correctional Sergeant K. Blessing and asked him two (2) of the questions provided by inmate OWENS.

_STAFF WITNESS #1:_ Reporting Employee Correctional Officer J. Defazio.
The I.E. asked Officer Defazio the following questions:
**Q1:** "What is your dominant hand?"
**A1:** "Right."
**Q2:** "When you allegedly pushed OWENS down to the ground, what side of his body were you on at the time?"
**A2:** "Left."
**Q3:** "why did you keep putting your left hand near OWENS's face if he kept trying to bite you?"
**A3:** "To maintain control of inmate OWENS

_STAFF WITNESS #2:_ Correctional Sergeant K. Blessing.
**Q1:** "You state in your report that you could see OWENS thrashing his body from side to side and that he was actively resisting, but you could not see everything because you were try to clear the alarm?"
**A1:** "I saw you thrashing your body."
**Q2:** "You stated that Defazio was able to put a spit net on OWENS. How long did it take him to do it and was he able to get it done the first time?"
**A2:** "Don't recall."

_I.E. NOTE:_ Inmate OWENS provided the I.E. with a list of one hundred twenty (120) questions and requested the I.E. interview twenty-two (22) witnesses, both Staff and inmates. **(See Attached)**. It should be noted that I conducted my interview with OWENS over the phone at CMF-DSH, while he was in the presence of the assigned Staff Assistant, Correctional Officer Protovinsky.

## END OF INVESTIGATIVE EMPLOYEE'S REPORT

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| _B. COUGH_ Correctional Sergeant | 4-27-15 |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | | 4/27/15 | 0930 |

CDC 115-C (5/95)

OSP 11 123876

# INVESTIGATIVE EMPLOYEE REPORT

SSP Sacramento

On _____, I was assigned the duties of the Investigative Employee for

CDC Form 115 Log Number: _Fop-15-02-058_. I advised inmate _____Owens_____

CDC Number: _V60905_, of my assignment and that as the Investigative Employee, my role is as a fact finder for the Senior Hearing Officer. He stated that he did not have any objections to my serving in this capacity.

☒ Inmate _____Owens_____ was assigned a Staff Assistant. Staff Assistant _____
was present each time I conversed with him and:
☒ effective communication was established by speaking slowly, utilizing small words and short sentences.
☐ effective communication was established with the use of a bilingual interpreter.
☐ effective communication was established with the use of a sign language interpreter.
☐ effective communication was established by exchanging hand written notes (The notes must remain with the Investigative Employee Report).
☐ other _____

Defendant's Statement: On _____, I interviewed inmate _Owens_

CDC Number: _V60905_, regarding the charges and he stated:
___I HAVE A LOT OF QUESTIONS. I WANT TO KNOW WHO___
___BROKE my TEETH.___

I asked inmate: _____ the following questions:

Question: _____

Answer: _____

Question: _____

Answer: _____

Question: _____

Answer: _____

Inmate: _____Owens_____ requested the following witnesses/evidence to be present at the hearing:

___NO WITNESSES REQUESTED - ONLY WANTED QUESTIONS ANWERED___
___IN IE REPORT___

3

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, _____ vs. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

BB-6.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: "QUESTIONS: FOR A.V.R. No.:
EOP-15-02-058."

Hosted by the Plaintiff, THEON OWENS, on March 3, 2015. The exhibit herein
shows the Questions Plaintiff provided Prison officials to be asked of his
eye witnesses, and involved Staff Members. The exhibit also shows the
names and or detail of each Person having information pertaining to the
facts and Matters of this case. The exhibit also shows that each
Question Presented is relevant to the case and Matters at hand. The
exhibit also shows that each Question is reasonably calculated to lead
to the discovery of admissible evidence.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1-9 PAGE'S.

A.) Lieutenant. C. Martincek:

1.) Did You tell clo. Defazio and other clos. to pull Me out the cell? And that You and Sgt. k. Blessing wanted to talk with Me? and that You were in the hall waiting for Me?

2.) Did You know what was happening to Me?

3.) Did You already pull Me out the cell and search the cell for all cups and containers?

4.) I am not accusing You of any crime. I am just trying to find out who gave the order for the ruffians to pull Me out. Do You know who?

5.) When You pulled I/M. Owens out of his cell. did he try to headbutt. bite. or resist?

6.) When were You notified of the second alleged gassing?

7.) Does Owens have a history of trying to headbut or bite staff?

8.) You state on Your 837-A1 Report that I. Defazio had injuries to his chest and right hand. but the injury report doesnot state any visual injuries were found?

9.) You state in Your report that Defazio tried to apply a spit net to MY head an I tried to bite him? But Defazio's report does not say I tried to bite him while he was applying the spit net. why is that?

B.) Officer D. Martinez:

1.) Who kicked I/M. Owens in the testicles? and why?

2.) When You came up the stairs and owens was on the ground. What were other staff doing to him?

3.) Was Owens bleeding at that time?

4.) Who knocked out two of owens teeth and called him a nigger?

5.) While other staff beat I/M. Owens. What did You do?

6.) How Many times did You hit and kick I/M. OWENS?

7.) What is You guys definition of a "nigger"?

8.) How long did it take You to respond to the incident?

C.) Officer. Guffee:

1.) Who knocked out two of Owens teeth and called him a nigger?

1 of 9

2.) Who slammed Owens head into the wall?
3.) While other staff beat Owens, What did You do?
4.) What is You guys definition of a "nigger"?

D.) Inmate. Graham. CDCR No: G-46009.
1.) What did You hear and see happening to I/M. Owens on the 18 of feb. 2018?

E.) Medical Doctor. J. Wedell.
1.) When You evaluated I/M. Owens after he was violently attacked by over five Clos. and a Sgt. What did You find?
2.) In Your professional opinion how do You think these type of Injuries occurred?
3.) Was the trauma that Owens Suffered Serious?
7.) In Your opinion how Many times Would a Person need to be kicked and Punched to receive this amount of Swollen to the face and eyes?
5.) In Your opinion how Much Pressure Would need to be used to knock out. not one but two teeth?

F.) Registered Nurse. A. Okoroike.
1.) How did I/M. Owens look When he came into the A. TTA?
2.) Was there blood all over his face?
3.) Was his face and eyes swollen up?
4.) Was he Missing two teeth and bleeding from his Mouth?
5.) In Your opinion What was these injuries constant with as happening to I/M. Owens?
6.) When You tried to give Owens an Ice-Pack. and the Clo told You not to give it to him. Why Was that?
7.) Why did You not document the Swelling to Owens left eye. and the bleeding coming from a cut on it?
8.) Why did not You document the abrasions to Owens arm (Left) and left leg?
9.) Why did not You document the Missing hair. on the top right side of Owens head?
G.) Doctor Of Dental Surgery. G. Sturges.
1.) When You seen I/M. Owens after he Was beaten by over five Clos. and had his two teeth knocked out by them. What did You do?
2.) Why didnot You try and save I/M. Owens teeth?
3.) How Much Pressure Would need to be used to knock out. not one but two teeth?

H.) Sergeant. C. McCarrel.

1.) You state in your report that you C.Drake and J. Murillo took owens to the A-TTA.. did you use force on owens at any time while escorting him?

2.) Did owens go on his owe well?.. Did owens have any problems while you escorted him? Was he agitated?

3.) Did You tell R.N..A. Okoroike that owens was resisting You at some point during the escorte?

4.) Did You tell any one that owens was agitated or resisting during the escorte?

I.) Sergeant. L. Mercado.

1.) You state in your report that owens threaten staff on Feb. 17, 2015. What does that have to do with the event that happen on the 18th of Feb. 2015? Or are You implying that owens had a beating coming?

2.) Where You there when owens was beatten up?

3.) Did You see what happen. If so What?

4.) You are trying to involve Multiple issues that do not derive from a single event. or are not directly related. Are You trying to cover for Your partners?

5.) Why did You write the R.V.R. Log No. FOP-15-02-051 on the 18th of Feb. 2015. When You allege that the incident occurred on Feb. 17, 2015.?

6.) Are You willing to submit to a polygraph examination. regarding this information and other incidents involving You?

J.) Psychiatric Technician. Boatright.

1.) Why did You put right side on the left side and left side on the right. of the CDCR 7219? Did Defazio ask You to do that?

2.) He stated to You that he had pain. but You didnot write down that you Visual seen any injuries. Did You See his Pain?

3.) You know that Defazio had no real injury? and that when he was saying he was having pain in his hand. he was pionting to his right hand. that is why You worte right side. is not that true?

k.) Officer. D. Matthews.

3 of 9

1.) You state that I/M. Owens was crying while being beaten. How so?

2.) Are you saying that I/M. Owens was in a lot of pain?

3.) When C/o. Defazio came and talked with you about jumping on I/M. Owens. Why did not you tell him no, that you were not opening the door?

4.) How come you opened the cell door, knowing that staff wanted to beat I/M. Owens up with handcuffs on?

5.) You were asked who put the cuffs on Owens (see CDCR-837-C2), and you stated your unable to recall (see CDCR-837-C1). How Is that when you had the best view?

6.) You stated that you hit the alarm, but Owens was already beaten up by that time, so why did you wait to get a signal before hitting the alarm?

7.) Responding staff stated that they responded within a matter of seconds. So how did Owens get all these injuries within seconds?

8.) You stated in your report that you could see Owens head moving from side to side. How can you see a person's head no bigger then 8" inchs long and 6" inchs wide, but you didnot write down how many times Owens got hit and by who?

9.) How May times did you see Owens get hit?

L.) Officer. S. Byers:

1.) When I/M. Owens asked you, Is that how you guys are getting down, jumping on I/MS with handcuffs on and knocking their teeth out. You responded "Yeah". What do you mean by this?

2.) When you responded to the area. How many times did you hit and kick Owens, before his eyes swollen shut?

3.) When C/o. Defazio was calling I/M. Owens nigger, why didnot you stop him and others from violently attacking Owens?

4.) How did Owens get all these serious injuries?

5.) What is you guys definition of a "Nigger"?

M.) Officer. N. Parker:

1.) How many times did you hit and kick I/M. Owens, before he started to suffer from serious injuries?

2.) When C/o. Defazio was calling I/M. Owens nigger, why didnot you stop him and others from violently attacking Owens?

3.) What is you guys definition of a "Nigger"?

4 of 9

N.) Officer. M. Hammer.
1.) Who knocked out two of owens teeth? And called him a nigger?
2.) Who Slammed owens head into the wall?
3.) While other staff beat I/M. Owens violently. What did you do?
4.) What is you guys definition of a "Nigger"?

O.) Officer. C. Drake.
1.) Who slammed I/M. Owens head into the wall?
2.) Who dragged I/M. owens down the Stairs?
3.) Who dragged I/M. Owens into the hall way next to the A-3-Staff office?
   held him while Blessing? Defazio hit and kick him?
4.) Who threw I/M. owens into the holding cage?
5.) What is you guys definition of a "Nigger"?
6.) Who knocked out owens teeth? called him a nigger?
7.) How long did it take you to respond to the incident area from 4-Block to 3-Block?

P.) Officer. P. Nashev.
1.) When you came to my cell door, with the other ruffians and cuffed owens up, and the door open and Defazio Slammed owens. Why didn't you Stop him?
2.) Why are you saying that you did not come to the door, when owens remembers you Standing on the stairs?
3.) Even if it was the case, that you did not jump on owens while he was handcuffed or came up the stairs. Why didn't you stop them, when they were Plotting their attack or when they were attacking? Since you are    asigned to 3-Block?

Q.) Officer. J. Murillo.
1.) Who slammed I/M. owens head into the wall?
2.) Who dragged I/M. Owens down the stairs?
3.) Who dragged I/M. Owens into the hall way next to the A-3-Staff office? held him while Blessing? Defazio hit and kicked him?
4.) Who threw I/M. Owens into the cage?
5.) What is you guys definition of a "Nigger"?
6.) Who knocked out owens teeth? called him a nigger?
7.) How long did it take you to respond to the incident area from 4-Block to 3-Block.

A.) Inmate. Wolf: CDCR No.: F-11442.
1.) Who did you see kicking I/M. Owens?
2.) Who did you see hitting I/M. Owens?
3.) What did you see and hear happening to I/M. Owens?
4.) Did staff refuse Owens his food for three days after they beat him?

S.) Inmate. C. Hendos. CDCR No.: J-62163
1.) What did you see and hear happening to I/M. Owens?
2.) Did staff after beating Owens refuse him food for three days?

T.) Inmate. E. Sanchez. CDCR No.: K-62067.
1.) Who slammed Owens head into the door?
2.) Who called Owens a nigger?
3.) Who swollen Owens eyes shut?
4.) Who did you see kicking Owens in the face?
5.) Could you see who knocked out Owens two teeth?
6.) Who cleaned up Owens blood, teeth, and dreadlocks, evidence?
7.) Who did you see pulling out Owens dreadlocks?
8.) What else did you see and hear?

U.) Inmate. Potts. CDCR No.: F-51586.
1.) What did you see happening to Owens by officers on the 18 of Feb. 2015?
2.) Did you hear staff call Owens a nigger?
3.) Who was hitting and kicking on Owens to the best of your knowledge?

V.) Officer. J. Lebeck.
1.) Were you involved in the gassing allegation incident that happen early in the day of Feb. 18. 2015.?
2.) Were does it say in Title 15, The D.O.M., or the OP. that you are suppose to remove inmates from their cell, when there is no immediate threat and the inmate is safely locked up behind a cell door?
3.) We already know who swollen Owens right eye shut and did all the damage to the right side of Owens face. So did you swell up the left side of Owens face and put swelling on the top of the left side of Owens head and swell his left eye shut?
4.) You were seen hitting and kicking Owens approximately 15 times or more. Why so

6 of 9

Many times.

5.) Who knocked out Owens two teeth. Was it You When Owens face was facing Your Way?

6.) What is You Guys definition of a "Nigger"?

7.) When Owens cuffed up, who Motioned to have the cell door opened?

8.) So did Owens back out the cell, or did he step sideways out of the cell door as it opened?

9.) You keep saying You seen Defazio do this and do that in Your report. What Were You doing while all of this was allegedly going on?

W.) Officer. M. Brady:

1.) Were does it say in Title 15., The D.O.M., or The O.P., that You are suppose to remove inmates from their cells, When there is no immediate threat and the inmate is safely locked up behind a cell door?

2.) We already know who swollen Owens right eye shut and did all the damage to the right side of Owens face. So did You swell up the left side of Owens face and put swelling on the top of the left side of Owens head and swell his left eye shut?

3.) You were seen hitting and kicking Owens approximately 25 times or more. Why So Many times?

4.) Who knocked out Owens two teeth. Was it You When Owens face was facing Your Way?

5.) What is You guys definition of a "Nigger"?

6.) So was that the back up plan to say Owens had papered up, so that Blessing could authorize an emergency cell extraction?

7.) You stated within Your report that once Owens was on the ground he started to kick at You, but You also say that You were standing on the stairs, so which one was it?

8.) How many times did Defazio hit and kick I/M. Owens?

9.) You state that Owens was trying to headbutt Defazio, while on the ground, but Defazio report does not say that, why is that?

X.) Officer. J. Burke:

1.) Were does it say in Title 15, The D.O.M., or the O.P., that You are suppose to remove inmates from their cell. When there is no immediate threat and the

2.) We already know that owener owens front eye shut and did all the damage to the right side of owens face. So did you swell up the left side of owens face and put swelling on the top of the left side of owens head and swell his left eye shut?

3.) You were seen hitting and kicking owens approximately 25 times or more. Why so many times?

4.) Who knocked out owens two teeth. Was it you when owens face was facing your way?

5.) What is you guys definition of a "Nigger"?

6.) How many times did Defazio hit and kick owens?

7.) Could you see in side of owens cell when you came to his cell door? and if so what was he doing?

8.) You stated in your report that you observed owens moving his head towards Defazio prior to Defazio striking owens. How were you able to see all of this going on with an allegedly resisting inmate?

9.) You stated in your report. that Defazio was able to put a spit net on owens. How long did it take him to do this. and was he able to get it done the first time?

7.) Sergeant. k. Blessing:

1.) You stated in your report that you could see owens thrashing his body from side to side and that he was actively resisting. but you couldnot see everything because you were trying to clear the alarm. Is this true?

2.) Why would you be trying to clear the alarm if an inmate is still allegedly actively resisting?

3.) Why did you order the attack on I/M. owens?

4.) Why did you hit and kick owens in his face?

5.) Why did you wait for Lt. c. Martincek to go before you attacked owens. Why not do it in front of Martincek?

6.) You state that once in the rotunda owens started to let his body slump down. Why was this? Is it because you and Defazio started to hit owens in the face?

2.) Officer. J. Defazio.

1.) You stated in your report that it was brought to your attention that

8 of 9

Partner. Bettencourt had just been gassed by I.M. Owens? What does that mean, that you had to jump on Owens?

2) What is your dominant hand left or right?

3) When you allegedly pushed Owens down to the ground, what side of his body were you on at that time?

4) You stated on your CDCR 837-C1, that Owens was allegedly trying to bite your left hand. and you struck Owens in the face. and then you put your left hand back in the same place. and then Owens allegedly tried to bite you again and you struck Owens again? Why would you allegedly keep putting your hand in an area were you are continuously assaulting Owens?

5) You stated in your report that you grabbed the back of Owens head and noticed after letting go that several pieces of hair were loose from his head. but after a    Medical Staff evaluated Owens head. they found no hair missing from the back of Owens head. So why isn't your story adding up?

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE _EASTERN_ DISTRICT OF CALIFORNIA

THEON OWENS,        VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: _2:16-CV-02750-JAM-KJN._

T.T.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 602 HC (REV.04/13) PATIENT/INMATE HEALTH CARE APPEAL. LOG NO.: SAC-HC-15031546. Hosted by Plaintiff. **THEON OWENS.** Defendants- Doctor of Dental Surgery (DDS). Supervising Dentist. **C. PARK.** Chief Support Executive (Ch. S.E.) **C. REGULES.** and Deputy Director (D.D.). **I. LEWIS.** on different dates. The exhibits herein show the responses given by prison officials to the Plaintiff's grievance filed on his broken teeth and need for treatment. The exhibits show the unreasonable responses given to the Plaintiff's serious medical needs. The exhibits show the fact presented to prison officials by the Plaintiff. The exhibits show full exhaustion of administrative remedies. The exhibits show that the facts presented by the Plaintiff are serious and significant enough to state a claim.

NUMBER OF PAGE'S TO THIS EXHIBIT: _1-9_____ PAGE'S.

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,            VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

TT-1.

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: CDCR 602 HC (REV.04/11)
## PATIENT/INMATE HEALTH CARE APPEAL. LOG NO.: SAC-HC-15031546.

Hosted by Plaintiff. Theon owens, on September 11, 2015, The exhibit herein shows the
grievance filed by the Plaintiff on the need to receive treatment for his broken teeth, that
defendants knocked out. The exhibit show the actions taken by the dental department at
each level they reviewed. The exhibit clearly shows that the Plaintiff put forth all facts
ensured within the complaint in exhausting his administrative remedies. The exhibit shows
that the fact put forth are significant enough to withstand dismissal and are serious
ensurements.

## NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1-3   PAGE'S.

STATE OF CALIFORNIA                                         DEPARTMENT OF CORRECTIONS AND REHABILITATION
**PATIENT-INMATE HEALTH CARE APPEAL**
**CDCR 602 HC (REV. 6/13)**                                                                    Page 1 of 2

| STAFF USE ONLY | | | Institution: | Log #: | Category: |
|---|---|---|---|---|---|
| Emergency Appeal | ☐ Yes | ☐ No | SAC HC | 16 031546 | 8 |
| Signature: | | Date: | | *FOR STAFF USE ONLY* | |

You may appeal any medical, mental health, or dental decision, action, condition, omission, policy or regulation that has a material adverse effect upon your welfare. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Health Care Appeals Coordinator (HCAC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.**          **WRITE, PRINT, or TYPE CLEARLY.**

| Name (Last, First): | CDCR Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Owens | V60905 | | |

State briefly the subject/purpose of your appeal (Example: Medication, To See Specialist, etc.):

**SECTION A.** Explain your issue (If you need more space, use Section A of the CDCR 602-A): _____

SEE ATTACHED
CDC 1824/602

**SECTION B.** Action requested (If you need more space, use Section B of the CDCR 602-A):

☐ **Supporting Documents:** Refer to CCR 3084.3.

List supporting documents attached (e.g., Trust Account Statement; CDCR 7410, Comprehensive Accommodation Chrono; CDCR 7362, Request for Health Care Services; etc.):

☐ No, I have not attached any supporting documents. Reason : _____

Patient-Inmate Signature: _____ Date Submitted: _____

☐ By placing my initials in this box, I waive my right to receive an interview.

| SECTION C. FIRST LEVEL - Staff Use Only | Check One: Is CDCR 602-A attached? | ☑ Yes | ☐ No |
|---|---|---|---|

This appeal has been:                Check One: Is this a recategorized/converted 1824?   ☐ Yes   ☑ No
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction):   Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter):   Date: _____
☑ Accepted   Assigned to: J. Sandhu   Title: DDS   Date Assigned: _____ Date Due: 3/3/16

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: 2-17-16   Interview Location: B Dental

Your appeal issue is:   ☐ Granted   ☑ Granted in part   ☐ Denied   ☐ Other: _____
See attached letter. If dissatisfied with First Level response, complete Section D.

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Interview conducted?   ☑ Yes   ☐ No |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ P/I asked questions | Interviewer: J. Sandhu   Title: DDS |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information | (Print Name) |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | Signature: _____ Date completed: 2/25/16 |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached | Reviewer: C Park, DDS   Title: Chief Dentist |
| ☑ Not Applicable | ☐ Other* | *See chrono/notes | (Print Name) |
| 4.Comments: | | | Signature: _____ |

HCAC Use Only
Date received by HCAC: _____

HCAC Use Only
Date closed and mailed/delivered to appellant: 3/1/13

Split w/ Custody

JAN 21 2016   HC APPEALS

COMPLETED   AUG 17 2016   I CAB   HC APPEALS

AUG 17 2016   HC APPEALS

I CAB   MAY 26 2016   HC APPEALS

STATE OF CALIFORNIA — THE RIGHT TO MEDICRE — DEPARTMENT OF CORRECTIONS AND REHABILITATION

*CARE THE EIGHTH AMEN*

**PATIENT/INMATE HEALTH CARE APPEAL** - *DMENT TO THE U.S. CONSTITUTION GIVES CONVICTED*

CDCR 602 HC (REV. 04/11)  *INMATES THE RIGHT TO ADEQUATE MEDICAL CARE.*  Side 1

| STAFF USE ONLY | | | Institution: | Log #: | Category: |
|---|---|---|---|---|---|
| Emergency Appeal | ☐ Yes | ☐ No | SAC. | SAC HC 1503/546 | 8 |
| Signature: | | Date: | | **FOR STAFF USE ONLY** | |

You may appeal any California Prison Health Care Services (CPHCS) decision, action, condition, omission, policy or regulation that has a material adverse effect upon your welfare. See California Code of Regulations, Title 15, Section (CCR) **3084.1**. You must send this appeal and any supporting documents to the Health Care Appeals Coordinator (HCAC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.**     **WRITE, PRINT, or TYPE CLEARLY.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| OWENS T. | V-60905 | FB7-227 | PSU 111 |

**State briefly the subject/purpose of your appeal (Example: Medication, To See Specialist, etc.):**
DENTAL CARE TO TREAT BROKEN TEETH AND CAVITY

**A. Explain your issue (If you need more space, use Section A of the CDCR 602-A):** I am Fil ng this HC-602 on the Fact's that on February 18, 2015, on Wednesday at approximately 1315 hours, I was assaulted and battered by correctional officers and a sergeant while I was handcuffed and defenseless. correctional officers, Joseph DeFazio

**B. Action requested (If you need more space, use Section B of the CDCR 602-A):** (1) for the cavity to be fixed under **Fambro v. Fulton County, 713 F.Supp. 1426, 1429 (N.D. Ga. 1989)** hold-ing that "criticizing jail's delay of three weeks for acute dental needs and more than a month for less acute dental needs violated the Eighth Amen

☒ **Supporting Documents: Refer to CCR 3084.3.**

List supporting documents attached (e.g. Trust Account Statement; CDCR 7410, Comprehensive Accommodation Chrono; CDCR 7362, Request for Health Care Services; etc.):

CDC 7362 Log No's 0212716, 1247274 and 1234333, 1052310

☐ ·, I have ·. attached · supporting documents. Reason :_____

_____
_____
_____

| Patient/Inmate Signature: Theon Owens | Date Submitted: September 17, 2015 |
|---|---|

☐ **By placing my initials in this box, I waive my right to receive an interview.**

*(right margin stamp: COMPLETED I CAB AUG 1 2016 HC APPEALS — S F)*

**C. First Level - Staff Use Only**    Staff – Check One: Is CDCR 602-A Attached? ☒ Yes ☐ No

This appeal has been:

☒ Bypassed at the First Level of Review. Go to Section E.

☒ Rejected (See attached letter for instruction) :   Date: 9/28/15   Date: _____ Date: _____ Date: _____

☒ Cancelled (See attached letter):   Date: 11/7/15

☒ Accepted at the First Level of Review

Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: 12-26-15  *(error)*

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _____ Interview Location: _____

Your appeal issue is: ☐ Granted   ☐ Granted in part ☐ Denied   ☐ Other:_____

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: _____ Title: _____ Signature: _____ Date completed: _____
  (Print Name)

Reviewer: _____ Title: _____ Signature: _____
  (Print Name)

| | HCAC Use Only |
|---|---|
| Date received by HCAC: _____ | Date mailed/delivered to appellant: __/__/__ |

*(stamps at bottom: SEP 15 2015 — SPHX w/custody — OCT - 7 2015)*

*(right margin stamp: RECEIVED I CAB MAY 2 6 2016 HC APPEALS)*

THE RIGHT TO MEDICAL CARE

STATE OF CALIFORNIA
THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
GIVES CONVICTED INMATES THE RIGHT TO ADEQUATE MEDICAL CARE.
CDCR 602-A (REV. 03/12)
Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | SAC   SAC HC 1503154b | | 8 |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.   WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| OWENS T | V-66905 | FB7-227 | PSU111 |

A. Continuation of CDCR 602, Section A only (Explain your issue): # 71716 knocked out two of My permanent teeth completely. causing Me permanent disfigurement. (Please see Dental X-Ray's and supplemental Dental Progress Notes done by DDS. Glenn Sturges on July 2015. i had a dental examination done to develop a treatment plan for a temporary fix for the broken two teeth and cavity that was found at the time of the examination. it has been seven months since i was beaten and disfigured. and it is causing me mental anguish and emotional distress. to have to walk around bearing the scar's from these ANIMAL'S/RUFFIANS who are employed hear (CSP-SAC). Also the cavity is causing (A) bad breath, (B) pain in Mouth (C) bleed-ing and gum swelling".
NOTE'S. Jail and Prison officials may not act with deliberate indifference to serious medical needs involving inmates teeth (RAMOS V. LAMM. 639 F.2d 559.576 10 th cir. 1980) [stating that "Prisoners generally have more extensive dental problems than the average citizen. Consequently dental care is one of the Most important medical needs of inmates'.])
Inmates also have a right to be treated for teeth that are broken (WYNN V. SouthWard, 251 F.3d 588,593 (7th cir. 2001) [stating that "denial of dentur-es, resulting in eating difficulty, bleeding, headaches, and disfigurement. was serious medical need.])

Inmate/Parolee Signature: Theon Owens                 Date Submitted: september 17-15

B. Continuation of CDCR 602, Section B only (Action requested): -dment] (2) provide CHLORHEXIDINE 0.12% RINSE, for the gingivitis, to reduce the swelling in the gums. and to help with controling gum bleeding. From cavity. under Estelle v. Gamble, 429 u.s. 97.97 S. ct 285 (1976) [ The Supreme court first recognized that inmates have a right to medical care in 1976. in ESTELLE V. GAMBLE, in this case the court wrote that the denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. Id. at 103]. Finally. (3) DENTURES, for broken two teeth. under Matzker V. Herr. 748 F.2d 1142,1148 (7th cir. 1984) [ inmate who was denied care for three broken teeth stated Eighth Amendment claim, in light of potential for infection from injury.]

Inmate/Parolee Signature: Theon Owens                 Date Submitted: September 17, 2015

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

TT-2.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: **INSTITUTION RESPONSE FOR FIRST LEVEL HC APPEAL.LOG NO.: SAC-HC-15031546.**

Hosted by Defendant- **I.SANDHU**. Doctor of Dental Surgery (DDS), on 2/18/2016. The exhibit herein Shows the response give by defendant- **SANDHU**, to the Plaintiff's grievance filed. The exhibit shows the unreasonable response to the Plaintiff's Serious medical needs. The exhibit Shows that the Plaintiff did not receive Partial dentures until one Year later.Which has been condemned in Some Circuits as unreasonable response.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1-2  PAGE'S.

 **CALIFORNIA CORRECTIONAL**
# HEALTH CARE SERVICES



### Institution Response for First Level HC Appeal

**Date:**   2/18/2016

**To:**   OWENS, THEON (V60905)
B  007 2027001LZ1Z
California State Prison – Sacramento
P.O. Box 29
Represa, CA 95671-0002

**Tracking/Log #:**      SAC HC 15031546

**Appeal Issues:**
In your CDCR-602HC Inmate/Parolee Health Care Appeal Form received on 10/7/2015, you indicated that two of your teeth were knocked out by custody staff out on 2/18/2015 causing permanent disfigurement. On 7/1/2015 you had a dental exam to develop a treatment plan for a temporary fix of your broken teeth and for a cavity; it has been seven months since you were beaten and disfigured and it is causing you mental anguish and emotional distress. In addition, your cavity has caused bad breath, pain, bleeding gums, and swelling.

| | **Issue Type** | **Action Requested** |
|---|---|---|
| **Issue 1:** | Dental Services ( Fillings ) | A filling |
| **Issue 2:** | Access to Care ( No Appointment Scheduled ) | To receive timely dental care |
| **Issue 3:** | Dental Services ( Oral Hygiene / Dental Floss / Supplies ) | Chlorhexidine 012% rinse |
| **Issue 4:** | Dental Services ( Dentures / Partials ) | Replacement of two front teeth |

**Interview:**
You were interviewed by J. Sandhu, DDS on 2/17/2016 in B Dental regarding this appeal. During the interview, you were allowed the opportunity to fully explain your appeal issue(s).

**Response:**
Your appeal with attachment(s), Unit Health Record (UHR), and all pertinent departmental policies and procedures were reviewed.

The filling was completed on 9/17/2015. There are no other fillings to be done based on your last dental exam. Based on your last Dental Comprehensive Exam dated 7/2/2015, you have been receiving timely dental care. Your tooth cleaning was completed on 7/30/2015 and your filling was completed on 9/17/2015. Work to replace your two front teeth was started on 11/5/2015 and you received your two partial dentures on 2/1720/16. As for the Chlorhexidine rinse, there is no dental clinical indication for it. Your past prescriptions did not come from dentists.

**Appeal Decision:**
Based upon the aforementioned information, your appeal for Issues 1, 2 and 4 have been granted and Issue 3 is denied.

| | **Issue Type** | **Action Requested** | **Decision** |
|---|---|---|---|
| **Issue 1:** | Dental Services ( Fillings ) A filling | | Granted. |

RECEIVED
I CAB
MAY 2 6 2016
HC APPEALS

SAC HC 15031546
Page 2 of 2

| **Issue 2:** | Access to Care ( No Appointment Scheduled ) | To receive timely dental care | Granted |
| **Issue 3:** | Dental Services ( Oral Hygiene / Dental Floss / Supplies ) | Chlorhexidine 012% rinse | Denied. |
| **Issue 4:** | Dental Services ( Dentures / Partials ) | Replacement of two front teeth | Granted. |

J.Sandhu, DDS, Staff Dentist
California State Prison – Sacramento

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ P/I asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached |
| ☐ Not Applicable | ☐ Other* | |

Comments:



# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,             VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

TT-3.
EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: INSTITUTION RESPONSE FOR SECOND LEVEL HC APPEAL. LOG NO.: SAC-HC-15031546.

Hosted by Defendants- C.PARK, Doctor of Dental surgery (DDS)/supervising Dentist. And C.REGULES, chief support Executive (cSE) on 41151201b. The exhibit herein shows the response give by C.PARK, to the Plaintiff's grievance filed on defendants knocking out his teeth. The exhibit shows the actions taken by the dental department to those serious claims. The exhibit shows defendants reasons for their unreasonable response.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1-2  PAGE'S.



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Institution Response for Second Level HC Appeal

**Date:**   4/15/2016

**To:**   OWENS, THEON (V60905)
B 007-1012001L — B. 4. 207
California State Prison – Sacramento
P.O. Box 29
Represa, CA 95671-0002

**Tracking/Log #:**   SAC HC 15031546

**Appeal Issues:**
In your CDCR-602HC Inmate/Parolee Health Care Appeal Form received on 3/15/2016, you indicated:

| Issue Type | Action Requested |
|---|---|
| **Issue 1:** Dental Services ( Procedure ) | A filling |
| **Issue 2:** Scheduling ( Wait Time ) | To receive timely dental care |
| **Issue 3:** Dental Services ( Supplies ) | Chlorhexidine 012% rinse |
| **Issue 4:** Dental Services ( Procedure ) | Replacement of two front teeth |

**Interview:**
You were interviewed by J. Sandhu, DDS on 2/17/2016 regarding this appeal. During the interview, you were allowed the opportunity to fully explain your appeal issue(s).

The First Level Appeal, received on 1/21/2016 indicated that two of your teeth were knocked out by custody staff out on 2/18/2015 causing permanent disfigurement. On 7/1/2015 you had a dental exam to develop a treatment plan for a temporary fix of your broken teeth and for a cavity; it has been seven months since you were beaten and disfigured and it is causing you mental anguish and emotional distress. In addition, your cavity has caused bad breath, pain, bleeding gums, and swelling.

The response stated:
*Your appeal with attachment(s), Unit Health Record (UHR), and all pertinent departmental policies and procedures were reviewed.*

*The filling was completed on 9/17/2015. There are no other fillings to be done based on your last dental exam. Based on your last Dental Comprehensive Exam dated 7/2/2015, you have been receiving timely dental care. Your tooth cleaning was completed on 7/30/2015 and your filling was completed on 9/17/2015. Work to replace your two front teeth was started on 11/5/2015 and you received your two partial dentures on 2/1720/16. As for the Chlorhexidine rinse, there is no dental clinical indication for it. Your past prescriptions did not come from dentists.*

At the First Level of Review this appeal was Partially Granted.



| | Issue Type | Action Requested | Decision |
|---|---|---|---|
| **Issue 1:** | Dental Services ( Fillings ) | A filling | Granted. |

| **Issue 2:** | Access to Care ( No Appointment Scheduled ) | To receive timely dental care | Granted |
| **Issue 3:** | Dental Services ( Oral Hygiene / Dental Floss / Supplies ) | Chlorhexidine 012% rinse | Denied. |
| **Issue 4:** | Dental Services ( Dentures / Partials ) | Replacement of two front teeth | Granted. |

The Second Level Appeal, received on 3/15/2016 indicated you deny that you received timely dental care. Your teeth were knocked out on 2/18/2015 and you did not receive treatment for one year. On 2/17/2016 you received partial dentures although the dental department was aware of the serious injuries received on 2/18/2015. You should not have had to wait one year for treatment just because the dental department was backed up.

**Response:**

Your appeal with attachment(s), Unit Health Record (UHR), and all pertinent departmental policies and procedures were reviewed.

In addition to the information that was given in the First Formal Level Response, here are some additional facts. While you may have lost your two teeth on or around 2/18/15 and was provided follow-ups and additional urgent care on 2/23/15, 3/3/15 and 4/16/15, you are required to have a Dental Comprehensive Exam completed prior to starting routine dental care. You requested the exam on 4/16/15. According to the IDSP P&P, September 2014, Chapter 2.3, you are afforded the Exam within 90 days after the dental department receives the request, which was 4/16/15 as well. The Exam was completed on 7/2/15 and within the timeframe. According to the IDSP P&P, Chapter 2.6, all routine dental care must be completed prior to beginning work on dentures. According to your Dental Treatment Plan that included the Partial Dentures (Dental Priority Classification (DPC) 3), you had 2 other procedures (also DPC 3) that needed to be completed prior to beginning work on your partial dentures. According to the IDSP P&P, Chapter 5.4, any dental procedures designated DPC 3 are procedures that should be completed or started within a year from the date of diagnosis which was your exam date of 7/2/15. The two procedures were completed on 7/30/15 and 9/17/15 and the partial dentures were started on 11/5/15. Partial dentures can take several months since it involves several step as well as using an offsite dental laboratory to send the case to in between each of the steps. Regardless, the partial dentures were delivered to you on 2/17/16.

**Appeal Decision:**

Based upon the aforementioned information, your appeal for the 3 issues in the First Formal Level Response was already **Granted** in a timely manner in accordance to the IDSP P&P, September 2014 Version and the Chlorhexidine issue is **Denied** since there is no clinical basis from the last record completed by the dentist.

C. PARK, DDS
~~Staff Dentist~~  Supervising Dentist.

C. REGULES
Chief Support Executive
California State Prison – Sacramento

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,  _____  VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

TT-4

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: DIRECTOR'S LEVEL DECISION
TO APPEAL LOG NO.: SAC-HC-15031546.

Hosted by Defendant-J.LEWIS. DEPUTY DIRECTOR.on Aug 11,2016, The exhibit herein shows the response given by defendant.J.LEWIS, to the Plaintiff's Grievance filed for treatment to be provided for knocked out teeth and inability to perform the daily activities of life. The exhibit shows that the director's level took the Second level report at face value and based it's decision off that report. Which shows the unreasonable response.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1-2  PAGE'S.

 # CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



**Date:** AUG 1 7 2016

**To:** OWENS, THEON (V60905)
California Men's Colony
P.O. Box 8101
San Luis Obispo, CA 93409-8101

**From:** California Correctional Health Care Services
Inmate Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking/Log # :** SAC HC 15031546

This appeal was reviewed by Inmate Correspondence and Appeals Branch staff on behalf of the Deputy Director, Policy and Risk Management Services. All submitted information has been considered.

## DIRECTOR'S LEVEL DECISION:

Appeal is denied. This decision exhausts your administrative remedies.

## APPEAL REQUESTS:

You are requesting:
- To have a cavity filled.
- To receive timely dental care.
- To be provided chlorhexidine 012% rinse.
- To receive dentures.

## BASIS FOR DIRECTOR'S LEVEL DECISION:

Your appeal file and documents obtained from your Unit Health Record were reviewed by staff. These records indicate:

- On July 2, 2015, you were seen by the dentist and a Dental Treatment Plan was developed.
- All restorations, periodontal treatment, and prosthetic treatment were completed on February 17, 2016. All your treatment was completed within the timeframes stipulated within the September 2014, Inmate Dental Services Program Policies and Procedures (IDSP P&P). In addition, all treatment was performed with the standard of care. Your dental provider did not indicate need for chlorhexidine 012% rinse.
- If you feel your condition has changed and further evaluation is needed, you are advised to submit a CDC 7362, Health Care Services Request Form, to access health care services in accordance with California Correctional Health Care Services (CCHCS) policy.
- Per the IDSP P&P, Chapter 5.4, the dental treatment needs of CDCR inmate-patients shall be addressed based on the priority of need, length of incarceration, and where applicable, the inmate-patient's demonstrated willingness to engage in proper oral hygiene. A CDCR dentist shall assign an objective Dental Priority Classification (DPC) to each newly admitted inmate-patient upon entering the CDCR and after each dental encounter. In general, dental encounters shall be scheduled based on the inmate-patient's DPC, as determined by a CDCR dentist. Once a dentist has diagnosed a dental condition, treatment shall be initiated within the timeframes indicated for each DPC.

While the health care administrative appeals process is an important means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You

are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

After review, no intervention at the Director's Level of Review is necessary as your dental condition has been evaluated and you are receiving treatment deemed clinically necessary.

## RULES AND REGULATIONS:

The rules governing these issues are:  California Code of Regulations, Title 15; Inmate Dental Services Program Policies and Procedures; Inmate Medical Services Policies and Procedures; and the Department Operations Manual.

## ORDER:

No changes or modifications are required by the institution.

J. Lewis, Deputy Director
Policy and Risk Management Services
California Correctional Health Care Services

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT FOR THE <u>EASTERN</u> DISTRICT OF CALIFORNIA

<u>THEON OWENS.</u> ___ VS. <u>JOSEPH DEFAZIO</u>, ET AL.

CAES NO.: <u>2:16-CV-02750-JAM-KJN.</u> ___

UU.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 602 (REV.03|12)
INMATE|PAROLEE APPEAL LOG NO.: SAC-P-15-02287.
Hosted by the Plaintiff. **THEON OWENS**, Correctional Lieutenant (L.t) E. **RODRIGUEZ**,
Warden (W.) **JEFF MACOMBER**, Appeals Examiner. J. **DOMINGUEZ**, And chief Appeals
Officer (ch. APP. O.) M. **VOONG**, On different dates. The exhibits herein show the appeal filed
by the Plaintiff and the responses by supervising Prison officials to that appeal. The exhibits
show that **RODRIGUEZ** was permitted to review the appeal, eventhough, he was involved in
the incident being appealed. The exhibits show the unreasonable response, lies, and cover up
on the Plaintiff's appeal. And the exhibits show the exhaustion of administrative remedy for
this appeal.

NUMBER OF PAGE'S TO THIS EXHIBIT: <u>1-6</u> ___ PAGE'S.

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,_____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

UU-1.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 602 (REV. 03/12) INMATE / PAROLEE APPEAL LOG NO.: SAC-P-15-02287.

Hosted by the Plaintiff, **THEON OWENS**, on Aug 7, 2015. The exhibit herein shows the facts persented by the Plaintiff in regards to the disciplinary hearing on R.V.R. log No.: EOP-15-02-058. i See **Exhibit RR**. The exhibit clearly shows that the Plaintiff put forth all the facts and exhausted all available administrative remedies. The exhibit also shows that Lieutenant(Lt.)E. **RODRIGUEZ** was permitted to be the second Level Reviewer(SLR), eventhough, he was involved in the incident that occurred on Feb 18, 2015, see **Exhibit PP-32**. i which is a direct violation of CCR.Tit.15.Sec. 3084.7(d)(G)(A). which excludes him for participating in the appeals process.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1-2__ PAGE'S.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 03-12)
Case 2:16-cv-02750-JAM-KJN Document 300 Filed 03/04/20 Page 296 of 535
Side 1

**SAFEGUARD VIOLATIONS FOR DISCIPLINARY HEARING**

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | SAC-P | 15-02287 | (1) |

1506739

V60905

**FOR STAFF USE ONLY**

You r ... ; and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material
adver ... no other prescribed method of departmental review/remedy available. See California Code of
Regul ... nd this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar
days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further
guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.**     **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| OWENS T | V-60905 | FB7-227 | None |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.): over use of unnecessary force with serious Bodily Injuries/Racist Hate Crime/Disciplinary Hearing Safeguard and other CDCR Policy Violations and violation of the Due Process Clause of the Four-teenth Amendment:

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): I am filing this appeal on R.V.R. Log No. EOP-15-02-058 and on the hearing dated 5-28-15, con-ducted by L.t. ~~_____~~ on 5-28-2015 L.t. J. Schultz came to have the hearing for the above Log No. R.V.R., before the hearing, I asked

B. Action requested (If you need more space, use Section B of the CDCR 602-A): (1) that the finding of guilt be over turned in the interest of justice. (2) that a new hearing be Provide (reissue and rehearing) offering the appel-late a fair and just ful hearing (3) That a finding at the

**Supporting Documents: Refer to CCR 3084.3.**

☒ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

(1) R.V.R. Log No. EoF-15-02-058          (2) Photos of face injuries

(3) Medical Report of injuries          (4) letter from CMF Warden address-ed to sister.

(5) CDCR 602 Log No. CMF-M-15-00523/ SAC-O-15-00755.

☒ ~~No,~~ I have ~~not~~ attached ~~any~~ supporting documents. Reason :_____

Inmate/Parolee Signature: Theon Owens          Date Submitted: Aug 7, 2015

☐ By placing my initials in this box, I waive my right to receive an interview.

C. First Level - Staff Use Only

Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☐ No

This appeal has been:
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter) Date: _____
☐ Accepted at the First Level of Review.

**BYPASS**

Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: _____

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _____ Interview Location: _____

Your appeal issue is: ☐ Granted    ☐ Granted in Part    ☐ Denied    ☐ Other: _____
See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: _____ (Print Name)    Title: _____    Signature: _____    Date completed: _____

Reviewer: _____ (Print Name)    Title: _____    Signature: _____

Date received by AC: _____

AC Use Only
Date mailed/delivered to appellant ____ / ____ / ____

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (REV. 03/12)

SAFEGUARD VIOLATIONS DEPARTMENT OF CORRECTIONS AND REHABILITATION

FOR DISCIPLINARY HEARING.

Case 2:16-cv-02750-JAM-KJN  Document 200  Filed 09/24/20  Page 297 of 535

Side 1

1506739

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | SAC-P | 15-02287 | 1 |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.

**Appeal is subject to rejection if one row of text per line is exceeded.    WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| OWENS T | V-60905 | FB7-227 | None |

**A. Continuation of CDCR 602, Section A only (Explain your issue):** the L.t. about MY Staff assistant

(S.A.), as he wasnot there, the L.t. stated that he assigned me a new S.A. I
nformed the L.t. that I hadnot received any notice of change of Assistant
and that this violates the safeguards, that are in place, he stated that "the D.A.
didnot pick it up, so I have nothing to worry about, and that the time restrai
nt had ran out, so there is nothing he can do to me any way." He then began to
proceed with the hearing, he read the reports and then stated to me "You head-
butted C/O. J. Defazio." I responded stating "I never headbutted Defazio, he made
that up, as a job insurance plan, and I have witnesses who saw the hole incident,
and I would like them to make a statement." he told me that "this report is what he
has to go off of." I attempted to provide other evidence as a defense (e.g. Photos
ie  Medical reports), he told me that "he's not going to deal with all of that.
and that the office of the Internal Affairs (O.I.A.), can deal with that, since they
are investigating the assault and battery. the L.t. flat out denied me a fair hear-
ing by (1) Not providing me with a notice of change of S.A. (2) Finding me guilty
of something that I didnot do, and it is more likely then not that something else hap
pen. and that the R.V.R. is a cover up, of illegal criminal activity's (Please see Appeal
los No. SAC-0-15-00795. (3) by not allowing me to call witnesses at the hearing, nor
(Report continues on section "B continuation section")

Inmate/Parolee Signature: Theon Owen          Date Submitted: Aug 7, 2015

**B. Continuation of CDCR 602, Section B only (Action requested):** hearing be found on the base of justice. (4) That I get just
(5) allow me to call witnesses at the hearing.
(Report continues from section "A continuation section)did he provide me with witnesses statement
(4) Not allowing me to display a defense, or evidence, or taking that evidence that was attempted to be displ
ied into account. (5) and by attempting to put this on the O.I.A. who dont deal with R.V.R. hearing. In an attemp
to deny me due process, and get out of doing the right thing. I provided the I.E. with handwritten questions to b
asked to the involved C/O's and I/M witnesses. the I.E. refused to ask the question alleging that they were
irrelevant, the L.t. didnot address the matter of whether or not the question were relevant in his hearing sum
-ary and the denial of My witnesses wasnot justified, however the I.E. choose to pick out questions that h
He  wouldnot help in me being found not guilty, and on the questions he choose to ask, he changed the
language and didnot ask the hole question. when receiving written documentation regarding the incident
found that L.t. C. Martinez ███████████████████ N. A. Okotoike and Ptc. C. boatright ████ on th

Inmate/Parolee Signature: Theon Owen          Date Submitted: Aug 7, 2015

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL
CDCR 602 (REV. 03/12)

Case 2:16-cv-02750-JAM-KJN   Document 200   Filed 09/24/20   Page 298 of 535

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 2

**D. If you are dissatisfied with the First Level response,** explain the reason below, attach supporting documents and submit to the Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

BYPASS

Inmate/Parolee Signature: _____  Date Submitted: _____

**E. Second Level - Staff Use Only**  Staff – Check One: Is CDCR 602-A Attached? ☑ Yes ☐

This appeal has been:
- ☐ By-passed at Second Level of Review. Go to Section G.
- ☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
- ☐ Cancelled (See attached letter)
- ☑ Accepted at the Second Level of Review.

Assigned to: *Lt. me SE. Radriguez* Title: *L.T.* Date Assigned: 8/12/15 Date Due: 9/21/15

Second Level Responder: Complete a Second Level response. If an interview at the Second Level is necessary, include interviewer's name and title, interview date and location, and complete the section below.

Date of Interview: _____  Interview Location: _____

Your appeal issue is: ☐ Granted  ☐ Granted in Part  ☒ Denied  ☐ Other: _____
See attached letter. If dissatisfied with Second Level response, complete Section F below.

Interviewer: _____ (Print Name) Title: *ISJ*  Signature: _____  Date completed: 10-8-15

Reviewer: *D BAUGHMAN* (Print Name) Title: *WARDEN (a)*  Signature: _____

Date received by AC: 10/21/15

AC Use Only
Date mailed/delivered to appellant 10/21/15

**F. If you are dissatisfied with the Second Level response,** explain reason below; attach supporting documents and submit by mail for Third Level Review. It must be received within 30 calendar days of receipt of prior response. Mail to: Chief, Inmate Appeals Branch, Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, CA 94283-0001. If you need more space, use Section F of the CDCR 602-A.

The appellant respectfully submits this appeal to the Chief office of appeals, based on the following arguments **(1)** The SLR alleges that he personally interviewed the SHO, Lt. J. Schultz and the SHO stated to him that he afforded this appellant an opportunity to present his case at the time of the hearing, and that the appellant didnot request any witnesses be present prior to the hearing, or during the hearing. (statement omitted) This information is not correct for many reasons besides common sense one's. **(A)** if the above statement was true, this appeal would not have been written. **(B)** witnesses were

Inmate/Parolee Signature: *Theon Owens*  Date Submitted: 10/27/2015

**G. Third Level - Staff Use Only**
This appeal has been:
- ☐ Rejected (See attached letter for instruction) Date MAY - 2 2016 Date: _____ Date: _____ Date: _____ Date: _____
- ☐ Cancelled (See attached letter)  Date: _____
- ☑ Accepted at the Third Level of Review. Your appeal issue is ☐ Granted  ☐ Granted in Part  ☒ Denied  ☐ Other: _____
  See attached Third Level response.

Third Level Use Only
Date mailed/delivered to appellant AUG 01 2016

**H. Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

_____

Inmate/Parolee Signature: _____  Date: _____

Print Staff Name: _____  Title: _____  Signature: _____  Date: _____

**D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response):** _____

BYPASS

Inmate/Parolee Signature: _____  Date Submitted: _____

**F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response):** requested but the SHO refused to allow them to be called. (C) The original CDC 115-A issued to the appellant by C/o. **C. Dups** on 3/3/15. (Please see original CDCR 115 and highlighted name and date) shows this appellant did request witnesses. (D) Why would the appellant at the hearing allegedly not whis to call witnesses, if these called witnesses could establish this appellants innocence? and why would the appellant name and request witnesses on his attached appeal and use of force videotape, but allegedly not at the hearing? this would make know sense at all and it is because the appellant did request witnesses and the SHO is trying to conceal eye witness testimony. (2) The SLR alleges that he verified on the allegedly original CDCR 115-A issued on 4/2/15 (statement omitted) (A) This statement is no accurate as the appellant claim can be verified with the interview of the original R.V.R. Server C/o. **C. Dups**, or by viewing the original CDC 115-A issued on 3/3/15 (B) the original copy issued to the appellant was on 3/3/15. NOT 4/2/2015. as being alleged by the SLR. after the time constraints ranout on the original issued RVR the appeal was suppose to be reissued and heard. however, the R.V.R. was not reissued on this appellant. but it was heard whichin it's self is a due process violation. the date 4/2/15. was the date inwhich the SA and I.E. signed on to this case. (3) The SLR furtherly alleges that the SHO conferred on all of the witnesses and the 120 questions to be asked of them, and that he concurred that the questions were not relevant to the specific charge (statement omitted) (A) This is inadequate and a violation of CCR section 3315 (e)(2). because the SHO didnot address this alleged information of denying or screening out witnesses on ts summary. clearly a due process violation exist. (4) Finally the SLR alleges that the SHO considered all evidence presented at the R.V.R. hearing before making a decision (statement omitted) The above statement cannot be more further from the truth...

Inmate/Parolee Signature: _____ Theon Owens _____  Date Submitted: _10/27/2015_

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,                VS. JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

UU·2.
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: SECOND LEVEL RESPONSE TO LOG NO.: SAC-P-15-02287.

Hosted by Correctional Lieutenant (L.t.) E. RODRIGUEZ, and Warden, JEFF MACOMBER. on September 1, 2015. The exhibit herein shows the report give by RODRIGUEZ, in his attempt to deprive the Plaintiff of his due process, and to cover up involved defendants misconduct. RODRIGUEZ notes"... L.t. SCHULTZ stated he afforded You [the] opportunity to present Your case at the time of the hearing, and you did not request any witness be present prior to, or during the hearing process". Which is untrue, as Exhibit QQ-3.. clearly shows that the Plaintiff in fact requested witnesses prior to the hearing, and the plaintiff ensures that he made the same requests during the hearing process. but was refused live eye witnesses to attend the hearing. RODRIGUEZ notes "The SLA verified you did not request any witnesses be present prior to the hearing, by reviewing the original CDC 115-A, issued to You on April 2, 2015." which is untrue as (1.) the original CDC 115-A, was issued on March 3, 2015, (2.) Exhibit QQ-3.. clearly shows that the Plaintiff did requests witnesses prior to the hearing, (3.) the plaintiff ensures that he requested eye witnesses at the time of the hearing. RODRIGUEZ notes"... L.t. SCHULTZ stated he and the I.E...... R.COUCH. conferred on all 120 questions you provided to the I.E.". Which is untrue, as the disciplinary summary nor the I.E.'s report make any reference to this alleged conferring occurring. See Exhibits NN

## NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 2   PAGE'S.

## APPEAL ISSUE

Disciplinary

## APPEAL DECISION

Denied

## APPEAL RESPONSE

Warden Jeff Macomber reviewed this appeal at the Second Level of Review (SLR). Correctional Lieutenant (Lt.) E. Rodriguez was designated by Warden Macomber to conduct an inquiry into your appeal on his behalf, which included performing any necessary interviews and gathering the facts of this case. All submitted documentation and supporting arguments have been considered. This appeal was bypassed at the First Level of Review and assigned at the Second Level of Review. A thorough inquiry was conducted concerning the claim presented by you and evaluated in accordance with CSP-SAC Operational Procedures (OP), the Departmental Operations Manual (DOM), and the California Code of Regulations (CCR), Title 15.

## SUMMARY OF APPEAL

You claim in your appeal the Senior Hearing Officer (SHO) for Rules Violation Report (RVR) EOP-15-02-058, did not allow you to ask witnesses questions during the hearing process, did not allow you to display a defense or evidence, and did not address the relevancy of your Investigative Employee (IE) questions in the hearing summary. You also note the IE chose to ask specific questions that were re-worded to not assist in a finding of not guilty. You state the SHO found you guilty of the charge based on partial facts, and you were not afforded a fair hearing.

You request the finding of guilt be overturned, a new hearing (re-issue, re-hear) be provided, you be allowed to call witnesses, the new hearing's finding be found on justice, and that you get justice in the process.

## SUMMARY OF INQUIRY

The Department's rules regarding this issue are contained in the following CCR Section(s), and/or OP, and/or DOM Section(s):

- **CCR 3315. Serious Rule Violations.**
- **CCR 3005(d)(1). Conduct.**

A review of the Test of Adult Basic Education (TABE) score reveals you have a TABE score of 4.5. A query concerning the Developmental Disability Program code was noted as Normal Cognitive Functions (NCF) indicating you do not require adaptive support services. Your Disability Placement Program code is Non-Applicable. Lt. E. Rodriguez noted that you spoke English and were able to answer questions related to this appeal at the SLR. Effective communication was achieved by speaking slowly; using simple words and terms, and you displayed understanding of the issues related to this appeal by discussing the merits of his appeal, using your own words to relate those issues submitted on the California Department of Corrections and Rehabilitation (CDCR) Form 602, Inmate/Parolee Appeals Form.

The SLR conducted a thorough inquiry into your claims by personally interviewing the SHO, Lt. J Schultz on Tuesday, September 01, 2015. Lt. Schultz stated he afforded you opportunity to present your case at the time of the hearing, and you did not request any witnesses be present prior to, or during the hearing process. The SLR verified you did not request any witnesses be present prior to the hearing, by reviewing the original CDC 115-A, issued to you on April 2, 2015. Additionally, Lt. Schultz stated he and the IE,

Page 2 of 2

Sergeant R. Couch, conferred on all 120 questions you provided to the IE. Lt. Schultz concurred that 115 questions were not relevant to the specific charge. As a result, five questions were allowed and answered prior to the RVR hearing.

The SLR conducted a thorough inquiry into your claims by reviewing RVR EOP-15-02-058. The rule violation occurred on February 18, 2015. It was reviewed by Sergeant K. Blessing on February 25, 2015, and classified by Lt. E. Rodriguez on March 02, 2015. You received your initial copies of the RVR on March 03, 2015, which was not within the 15-day period allowed for issuance. Officer J. Protivinsky was assigned as SA; however he was unavailable for the hearing held on May 28, 2015. On April 27, 2015, Officer S. Bartlett was assigned as a secondary SA. The third SA, Officer B. Schroeder, was assigned on May 26, 2015, more than 24 hours prior to your hearing. Lt. C. Schultz conducted the RVR hearing in the presence of Officer Schroeder. The hearing was conducted beyond the 30-day period allowed to conduct the hearing, due to mental health crisis bed placements.

The SLR finds the SHO considered all evidence presented at the RVR hearing before determining a preponderance of evidence, which supported a finding of guilt. The preponderance of evidence rule requires "some" evidence is present to determine the facts of a case. The SHO must evaluate each piece of evidence as it is presented, and at the end of the hearing, determine whether the charged offense was more likely than not to have occurred, or, it did not occur. On June 24, 2015, Captain C. Cannedy reviewed the RVR and did not find or notate any discrepancies. On June 30, 2015, Associate Warden L. Eldridge reviewed the RVR and did not find or notate any discrepancies.

The SLR reviewer finds the SHO reviewed and determined 115 of the 120 proposed questions were not relevant to your charge. The reviewer finds there is insufficient evidence to support your claims you were not afforded a fair hearing.

Your request to have RVR EOP-15-02-058 finding of guilt be overturned is denied. Your request to have the aforementioned RVR reissued and reheard is denied. Your requests to be able to call witnesses in the new hearing, that the new decision be found on justice, and in the re-issue/rehearing process you receive justice, are denied, in that you will not be granted a new hearing.

## APPEAL DECISION

For the reasons cited above, your appeal is **DENIED**

JEFF MACOMBER
Warden

JM: er/le/vr


cc: Inmate Appeals Unit
    Central File

# EXHIBIT SEPARATION PAGE

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS _____ VS. JOSEPH DEFAZIO ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

UU-3.

EXHIBIT

DESCRIPTION OF THIS EXHIBIT: THIRD LEVEL RESPONSE TO LOG No.: SAC-P-15-02287.

Hosted by Appeals Examiner, J. DOMINGUEZ and Chief Appeals Officer (Ch. APP.O.) on Jul 28, 2016. The exhibit herein shows the report given by DOMINGUEZ in response to the plaintiff's appeal. The exhibit shows that the third level reviewer (TLR) took the second level reviewer (SLR) report at face value without investigating, and thus contributed to the violations of the plaintiff's rights. The exhibit also shows that "This decision exhausts the administrative remedy available to the appellant within CDCR" which shows exhaustion of administrative remedies.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 2 PAGE'S.

Case 2:16-cv-02750-JAM-KJN   Document 200-5   Filed 09/24/20   Page 304 of 535

## THIRD LEVEL APPEAL DECISION

Date:   JUL 28 2016

In re:   Theon Owens, V60905
California Men's Colony
P.O. Box 8103
San Luis Obispo, CA 93409-8103

TLR Case No.: 1506739       Local Log No.: SAC-15-02287

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Dominguez, Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #EOP-15-02-058, dated February 18, 2015, for "Battery on a Peace Officer." It is the appellant's position that on May 28, 2015, the Senior Hearing Officer (SHO) did not provide him a fair and impartial hearing. The appellant asserts he was assigned a new Staff Assistant (SA) at the time of the hearing and was never afforded the opportunity to meet with him 24 hours prior to the hearing. Additionally, the appellant claims the SHO did not allow him to call witnesses during the hearing and found him guilty of something he did not do.

The appellant is requesting his guilty finding be overturned in the interest of justice and a that a new hearing (re-issue/re-hear) be provided to him. Additionally, the appellant is requesting the new hearing's finding be found on justice, that he receive justice and that he be allowed to call witnesses.

**II   SECOND LEVEL'S DECISION:** The reviewer interviewed the SHO on September 1, 2015 and the SHO stated he afforded the appellant the opportunity to present his case at the time of the hearing. Additionally, the SHO stated that the appellant did not request any witnesses to be present prior or during the RVR hearing. The Second Level of Review (SLR)'s examination of the CDC Form 115-A, issued on April 2, 2015, verified that the appellant did not request any witnesses prior to the hearing. Moreover, the SHO stated he and the Investigative Employee conferred the 120 questions provided by the appellant and concurred that 115 of the questions were not relevant to the specific charge; therefore, only five questions were allowed and answered prior to the RVR hearing. The SLR conducted a review of the RVR and noted that the appellant did not receive his original copy within 15 days from the date of the rule violation. The SLR noted that the appellant was issued three different SAs prior to his RVR hearing, but found that the SA which was utilized during the hearing was assigned to him on May 26, 2015 which more than 24 hours prior to the hearing. The SLR found that his most current SA was present during the hearing and the hearing was held beyond the 30 allotted days due to the appellant being on a Mental Health Crisis Bed. The SLR determined that the appellant was found guilty on a preponderance of evidence pursuant to California Code of Regulations, Title 15, Section (CCR) 3320(l). The SLR noted that Correctional Captain C. Cannedy and Chief Disciplinary Officer L. Eldridge reviewed the RVR disposition and did not note any discrepancies. The SLR concluded that the appellant failed to provide sufficient evidence to support his claim that he was not afforded a fair hearing. Based upon the aforementioned the appellant's appeal was denied.

**III   THIRD LEVEL DECISION:** Appeal is denied.

**A.   FINDINGS:** The Third Level of Review (TLR) determined the appellant failed to support his appeal issue with sufficient evidence or facts to warrant modification of the SLR in regards to the guilty finding. The TLR thoroughly reviewed all documents relative to the RVR and finds that the SHO appropriately found the appellant guilty based upon the preponderance of evidence presented during the hearing and did not assess a credit loss due to the appellant not receiving his initial copy of the RVR within 15 days from the date of the rule violation.

The appeals process is not intended to provide a re-hearing of an RVR, but rather to determine whether the appellant was afforded his due process and administrative protections in the adjudication of the disciplinary. The TLR will conduct a review of the hearing and consider if the final determination of the SHO was reasonable and that the finding is supported by some evidence. Evidence and/or factors that were reasonably discoverable at the time of the disciplinary hearing, but not presented at the hearing are not evaluated at the TLR.

The CCR 3315(e)(2) states, "An inmate may request that friendly and adverse witnesses attend the hearing. If an inmate's request for a witness is denied, the reasons shall be documented on the CDC Form 115." The examiners review of the CDC Form 115-A, issued April 2, 2015 and the RVR disposition indicated the appellant did not request the presence of any witnesses prior or during the hearing.

The CCR 3315(d)(2)(B) states, "The inmate shall be provided at least a 24 hour time period to allow for preparation with the assigned staff assistant prior to participating in the disciplinary hearing." The TLR reviewed the RVR disposition and noted that the hearing was convened on May 28, 2015 and the appellant's SA was assigned on May 26, 2015. Additionally, the SHO documented the SA having indicated that he met with the appellant 24 hours prior to the RVR hearing being conducted.

The CCR 3320(l) states, "The inmate may present documentary evidence in defense or mitigation of the charges. Any finding of guilt shall be based upon determination by the official(s) conducting the disciplinary hearing that a preponderance of evidence submitted at the hearing substantiates the charge." The TLR noted that the SHO relied upon the preponderance of evidence presented during the hearing to render a guilty finding. The TLR concluded that based upon the submitted evidence the SHO had good cause to render a guilty finding. The CCR 3000 states, "Good Cause means a finding based upon a preponderance of the evidence that there is a factual basis and good reason for the decision made." After considering the evidence and arguments herein, it has been determined the California State Prison - Sacramento (SAC) acted appropriately on the appellant's request. Therefore, no relief shall be afforded to the appellant at the TLR.

**B. BASIS FOR THE DECISION:**
CCR: 3000, 3004, 3005, 3022, 3315, 3318, 3320, 3323
CDCR Operations Manual, Section: 54100.1, 54100.2, 54100.3, 54100.4

**C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.


J. DOMINGUEZ, Appeals Examiner
Office of Appeals

M. VOONG, Chief
Office of Appeals

cc:     Warden, CMC
        Appeals Coordinator, CMC
        Appeals Coordinator, SAC

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS.          VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

X X.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR-837-A(REV. 10/06) CRIME /INCIDENT REPORT LOG NO.: SAC-PSU-15-02-0191.

Hosted by several Defendants on several different dates. The exhibit herein shows that the Plaintiff did not gas any one on Feb. 18, 2018. The exhibit also shows that Supervising Prison officials were aware that Defendants used a wet swab on None-Defendant uniform and took photos of the splash mark left behind by the wet swab. and charged the Plaintiff with the splash mark. they caused. The exhibit shows that Defendants did not notify the Supervisor that they had used a wet swab before taking Photos of the wet mark.

NUMBER OF PAGE'S TO THIS EXHIBIT: 1-8          PAGE'S.

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,_____ vs. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

XX-1.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-A (Rev. 10/06)(Crime / Incident Report Part A- Cover Sheet. Log No.: SAC-PSU-15-02-0177.

Hosted by Defendant- MARTINCEK C., Correctional Lieutenant. on 2/18/2015. The exhibit herein Shows the incident Package completed by Defendant- MARTINCEK on the allegations that the Plaintiff gassed correctional officer. T. POTTER on 2/18/2015. Which untimely lead to the Plaintiff being beaten by other Defendants (compl. at PP.31:A-37.) The exhibit Shows that the Plaintiff was charged with the false Crime of "Battering an officer with an unknown liquid". The exhibit Shows that the bogus charge was referred to the D.A. office for possible Prosecution.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

# CRIME / INCIDENT REPORT

DV-1.5.4

## PART A - COVER SHEET

CDCR 837-A (REV. 10/06)

| | Page 1 of 6 | | INCIDENT LOG NUMBER | | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|---|---|
| | | | SAC-PSU-15-02-0191 | | 02/18/2015 | 11:45 |

| INSTITUTION | FACILITY | FACILITY LEVEL | INCIDENT SITE | LOCATION | | PROGRAM | AD/SEG YARD | USE OF FORCE: |
|---|---|---|---|---|---|---|---|---|
| SAC | PSU - 180 design | ☐ I ☐ II ☐ RC ☐ III ☑ IV | A FACILITY 3 BLOCK | FA3-232 | | PSU | N/A | No |

| SPECIFIC CRIME / INCIDENT | | |
|---|---|---|
| Battery on a Peace Officer With an Unknown Liquid | ☑ CCR ☐ PC ☐ N/A | NUMBER / SUBSECTION |
| | 3005-d1 Force or Violence | |

| D.A. REFERRAL ELIGIBLE | CRISIS RESPONSE TEAM ACTIVATED | MUTUAL AID | PIO/AA NOTIFIED |
|---|---|---|---|
| ☑ Yes ☐ No | ☐ Yes ☑ No | ☐ Yes ☑ No | ☑ Yes ☐ No |

### RELATED INFORMATION (CHECK ALL THAT APPLY OR N/A)

| DEATH AND CAUSE OF DEATH | ASSAULT / BATTERY | TYPE OF ASSAULT / BATTERY |
|---|---|---|
| ☑ N/A | ☐ N/A  1. STAFF | ☐ N/A  1. GASSING ON STAFF  Other Desc: |

| SERIOUS INJURY | INMATE WEAPONS | TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|---|
| ☑ N/A | ☐ N/A  1. Unknown Liquid - | ☑ N/A |

| ESCAPES | | |
|---|---|---|
| ☑ N/A | | |

| CONTROLLED SUBSTANCE | WEIGHT/ In Grams | PROGRAM STATUS | EXCEPTIONAL ACTIVITY |
|---|---|---|---|
| ☑ N/A | | ☑ N/A | ☑ N/A |
| | | | EXTRACTION:  ☑ N/A |

### BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES)

On Wednesday, February 18, 2015, at approximately 1145 hours, inmate OWENS (V-60905, FA3-232) violated the California Code of Regulations, Title 15, Section 3005 (d) (1) when he committed the act of Battery on a Peace Officer with an Unknown Liquid (Gassing).

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE | ID# | BADGE # |
|---|---|---|---|
| C Y MARTINCEK | CORRECTIONAL LIEUTENANT | | |

| SIGNATURE OF REPORTING STAFF | PHONE EXT. INCIDENT SITE | DATE |
|---|---|---|
| | | 2/18/2015 |

| NAME OF WARDEN / AOD (PRINT / SIGN) | TITLE | DATE |
|---|---|---|
| JEFF MACOMBER | WARDEN | 2/27/15 |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

XX-2

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-A1 (REV. 10/06)
CRIME / INCIDENT REPORT PART A1 SUPPLEMENT [o] No: SAC
-PSU-15-02-0191A1.

Hosted by Defendant - C. MARTINCEK. Correctional Lieutenant. On 2/
18/2015. The exhibit herein shows the "Amended Information" Provided
by MARTINCEK in his incident Package, on the allegations that the
gassed correctional officer - T. POTTER on 2/18/2015. Which allegations
lead to Plaintiff being beaten by other Defendants (compl. at PP.
31-A. -37.) The exhibit shows that "No staff or inmates were injured
as a result of this incident" Which shows that the Plaintiff never
actually gassed any one. and that the Defendants made it all up. The
exhibit shows that the Plaintiff was charged with the false
alleged gassing. Something that he did not do.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

**PART A1 - SUPPLEMENT**

| CDCR 837-A1 (REV. 10/06) | Page 2 of 6 | INCIDENT LOG NUMBER |
|---|---|---|
| | | SAC-PSU-15-02-0191A1 |

| INSTITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| SAC | PSU - 180 DESIGN | 02/18/2015 | 11:45 |

TYPE OF INFORMATION:

☐ SYNOPSIS/SUMMARY OF INCIDENT ☐ SUPPLEMENTAL INFORMATION ☑ AMENDED INFORMATION ☐ CLOSURE REPORT

On Wednesday, February 18, 2015, at approximately 1145 hours, inmate OWENS (V-60905, FA3-232) violated the California Code of Regulations, Title 15, Section 3005 (d) (1) when he committed the act of Battery on a Peace Officer with an Unknown Liquid (gassing).

Specifically, on Wednesday, February 18, 2015, at approximately 1145 hours, Officer T. Potter was providing direct observation of inmate OWENS (V-60905, FA3-232). As Officer Potter was sitting in front of cell FA3-232 he observed OWENS discharge an unknown liquid out the crack of his cell door, striking Officer Potter on the right arm of his jumpsuit. Officer Potter immediately left the tier and informed the floor staff of the gassing that had just occurred. Officer S. Byers activated his personal alarm device and summoned for assistance via institutional radio.

Psychiatric Technician (PT) A. Casborn completed a Medical Report of Injury (7219) on Officer Potter depicting an unknown liquid substance on the right arm of his jumpsuit.

Sergeant V. Vitale took six (6) photographs of the unknown substance that struck Officer Potter and the crime scene. Sergeant Vitale printed the photographs in color and processed the photographs to Compact Disk (CD) and secured the CD into evidence locker number 4 in A Facility Control. Officer P. Bettencourt then took one (1) swab sample of the liquid substance and relinquished it to Officer P. Rashev who placed it into a coin envelope and secured the sample into A Facility evidence locker #1.

Due to OWENS' participation in the Mental Health Services Delivery System at the Enhanced Outpatient Program level of care, a mental health referral (128-MH5) was completed and submitted.

No staff or inmate were injured as a result of this incident. An alarm was sounded. No force was used. All appropriate Administrative Staff were notified including the Sacramento County District Attorney's Office via notifications and the distribution of this report.

A Rules Violation Report (CDC 115) will be generated charging inmate OWENS with violation of CCR 3005 (d)(1) for Battery on a Peace Officer with an Unknown Liquid (Gassing).
The Current Amendment Record Number is SAC-PSU-15-02-0191A1 Created on 02/26/2015'

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE) | TITLE: | ID# | BADGE # |
|---|---|---|---|
| C / MARTINZEK | CORRECTIONAL LIEUTENANT | | |

| SIGNATURE OF REPORTING STAFF | PHONE EXT. INCIDENT SITE | DATE |
|---|---|---|
| | | 2/18/2015 |

| NAME OF WARDEN / AOD (PRINT/SIGN) | TITLE | DATE |
|---|---|---|
| JEFF MACOMBER | WARDEN | 2/27/15 |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,_____ VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

XX-3.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (Rev. 07/14)
CRIME/INCIDENT REPORT PART C- STAFF REPORT. Log No:
SAC-PSU-15-02-0191.

Hosted by Correctional Officer. T. POTTER. On 2/18/2015. The exhibit
herein shows the report completed by POTTER on his allegations that
the Plaintiff gassed him on 2/18/2015. Which allegations lead to the
Plaintiff being beaten by Defendants late in that day. (Compl. at PP. 31-D.
- 31. ). The exhibit shows that the alleged liquid thrown at POTTER
never made contact with his skin. according to him. Which shows that the
allegation it self. even if taken as true. does not constitute Battery. The
exhibit shows that an alarm was not immediately activated at the time of
the alleged gassing. Which shows that nothing happen to POTTER. as it was not
an urgent matter. The exhibit shows that Defendants Conspired against the
Plaintiff. to falsely charge him with a bogus crime. and to deprive him
of rights secured by the Constitution. (Compl. at PP. 31-H.).

## NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

CRIME / INCIDENT REPORT

**PART C – STAFF REPORT**

| CDCR 837-C (Rev. 07/14) | | Page 1 of 1 | INCIDENT LOG NUMBER SAC-PSU-15-02-0191 | |
|---|---|---|---|---|

| NAME: LAST POTTER | | | FIRST T | | MI | INCIDENT DATE 2-18-15 | INCIDENT TIME 1145 |
|---|---|---|---|---|---|---|---|

| POST # SW0201 | POSITION Suicide Watch | YEARS OF SERVICE 30 YR. (RA) MO | DATE OF REPORT 2-18-15 | LOCATION OF INCIDENT A-3-232 |
|---|---|---|---|---|

| RDO's S/S | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT BATTERY ON A PO (GASSING) WITH AN UNKNOWN LIQUID | CCR SECTION / RULE 3005(d)(1) |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY | (S) P. RASHEV | (S) OWENS (V-60905) |
| ☐ RESPONDER | | |
| ☐ WITNESS | | |
| ☒ VICTIM | | |
| ☐ CAMERA | | |
| ☐ SCRIBE | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE | | | | | | |
|---|---|---|---|---|---|---|---|
| | PHYSICAL: | WEAPON: | WARNING: | EFFECT: | LAUNCHER: | EFFECT: | CHEMICAL / TYPE: |
| ☐ PHYSICAL | ☐ EXPANDABLE BATON | ☐ MINI 14 | | | ☐ 37MM | | ☒ N/A |
| ☐ CHEMICAL | ☐ RESTRAINT TECHNIQUES | ☐ .38 CAL | | | ☒ L8 | | ☒ OC |
| ☐ WEAPON | ☐ HANDS | ☐ 9MM | | | ☒ 40MM | | ☒ CN |
| ☒ NONE | ☐ FEET | ☐ SHOTGUN | | | ☒ 40MM MULTI | | ☒ CS |
| FORCE OBSERVED BY YOU | | ☐ X10 | | | ☒ HFWRS | | ☒ OTHER |
| ☐ PHYSICAL | ☐ OTHER FORCE NOT LISTED ABOVE: | | | | | | |
| ☐ CHEMICAL | | | | | | | |

| ☐ WEAPON ☒ NONE | EVIDENCE DESCRIPTION ☒ N/A | EVIDENCE DISPOSITION ☒ N/A unknown | BIO HAZARD ☒ Yes ☐ No | PPE ☒ Yes ☐ No |
|---|---|---|---|---|

| EVIDENCE COLLECTED BY | | | | |
|---|---|---|---|---|

| ☒ Yes ☐ No | DESCRIPTION OF INJURY ☒ N/A | LOCATION TREATED (HOSPITAL / CLINIC) ☒ N/A | FLUID EXPOSURE | SCIF3301/3067 COMPLETED |
|---|---|---|---|---|
| REPORTING STAFF INJURED ☐ Yes ☒ No | | | ☐ N/A ☐ BODILY ☒ UNKNOWN ☐ OTHER | ☐ Yes ☒ No |

NARRATIVE:

On Wednesday 02-18-15 I was working as suicide watch officer on inmate OWENS (V-60905) housed in A-3-232. Owens had been throwing liquid out from underneath his door periodically throughout the morning. For this reason the shield was in front of his door covering the food port. At approximately 1145 hours while I was sitting directly in front of his cell I felt a liquid strike me on the right upper arm elbow and shoulder. The liquid did not make skin contact. I exited the tier and removed myself from the incident. I notified floor staff and the supervisor of what happened. I did not activate the alarm due to the fact that I removed myself from the immediate threat, no force was used and no further staff was needed. An alarm was then activated; I do not know who activated the alarm. . Responding staff arrived. Officer P. Rashev took a swab of the right arm sleeve of my uniform shirt. OWENS was removed from his cell and placed in the section upper shower while his cell was searched. I do not know the results of the search. OWENS was then placed back in his cell A-3-232, I then resumed my duties as suicide watch.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # | ID# | DATE 2/18/15 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) Sergeant Ken Blessing kn | DATE RECEIVED 2/18/2015 | APPROVED ☒ Yes ☐ No | CLARIFICATION NEEDED ☒ Yes ☐ No | DATE 2/18/2015 |
| Distribution: | Original: Incident Package | Copy: Reporting Employee | Copy: Reviewing Supervisor | |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,             VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

XX- 4.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837- C1 (Rev. 05/08.)(Crime
Incident Report Part C1- Supplement.

Hosted by TIM POTTER, Correctional Officer ("C/o."). On 2/19/2015. The
exhibit herein shows that POTTER was never actually gassed by the
Plaintiff as he alleged he was. as POTTER clarifys "This report is to
provide additional information... regarding the gassing that i was
involved in." Which shows that he was involved in an alleged
gassing, not the victim of a gassing. The exhibit shows that
POTTER was not gassed as he reports claims and that the liquid
if any was that caused by Defendant- BETTENCOURT'S use of a wet
Swab. as POTTER writes "... BETTENCOURT was rubbing the swab[ ]
against the drying shirt using a wet swab[ ]... then a picture was
taken". The exhibit shows that Defendants' conspired against the
Plaintiff to falsely frame him with a bogus crime. and to deprive
him of rights secured by the constitution. (cont. at pp. 31- H.).

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: _4_ PAGE'S.

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**PART C1 – SUPPLEMENT**

CDCR 837-C1 (Rev. 05/08)   Page __/__ of __/__

INCIDENT LOG NUMBER
SAC-PSU-15-02-0191

NAME: LAST  Potter   FIRST  T.   MI

TYPE OF INFORMATION

☐ CONTINUATION OF REPORT   ☒ ADDITIONAL INFORMATION   ☐ CLARIFICATION

This report is to provide additional information after reflecting on the incident dated 2/18/15 regarding the gassing that I was involved in.

My report reflected that officer P. Rasheve swabbed the liquid from my uniform shirt, the swabbe was actually collected by officer P. Bettencourt and was then turned over to officer P. Rasher for processing into evidence.

Following the collection of evidence from my shirt officer Bettencourt was rubbing the swabb against the drying shirt using a wet swabb and then a picture was taken.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

SIGNATURE OF REPORTING STAFF   TITLE  C/O   BADGE #   ID#   DATE 2/19/15

NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE)  C. Cannedy, FC  CO1   DATE RECEIVED 2/19/15   APPROVED ☒ Yes ☐ No   CLARIFICATION NEEDED ☒ Yes ☐ No   DATE 2/19/15

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

## XX-5.
### EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C2 (Rev. 07/05) Crime / Incident Report Part C2- Review Notice. Log No: SAC-ISU-15-02-0191.

Hosted by C.L. CANNEDY, Captain. On 2/25/2015. The exhibit herein shows that Supervising Prison Officials were aware that _Defendant BETTENCOURT used a wet swab on Officer T. POTTERS uniform prior to taking photographs of the uniform and that the photographer was not notified of their tampering with the evidence prior to photos being taken. As CANNEDY writes" on February 19, 2015. You provided additional information... You indicate officer BETTENCOURT utilized a ... swab ... already wet and then a picture was taken... Clarify if you told sergeant... that the splash marks... were just swabbed with a wet swab prior to him taking the" photos.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C2- REVIEW NOTICE**
CDCR 837-C2 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE ___1___ OF ___1___

| REPORTING EMPLOYEE NAME (*PRINT/TYPE*) | | | INCIDENT LOG NUMBER | DATE OF INCIDENT |
|---|---|---|---|---|
| LAST: Potter | FIRST: T | MI: | SAC-ISU-15-02-0191 | 02/18/15 |

Your report concerning the above referenced incident has been reviewed and the following information is required:

☐ Prepare a CDCR 837-C1 Supplement report clarifying the issues listed below:

☒ Prepare a CDCR 837-C1 Supplement report providing additional information regarding the issues listed below:

☐ Prepare a CDCR 837-A1 Supplement report clarifying the issues listed below:

☐ Prepare a CDCR 837-A1 Supplement report to amend the information regarding the issues listed below:

DUE BY: 2/24/15          RETURN TO: C. CANNEDY, FC

① Please provide your Duty Hours for the Date of this Incident.

② In the Box "Evidence Collected by" you marked "Yes" Please provide an evidence description of ALL Evidence Collected by you.

③ In the Box "Evidence Disposition" You marked "unknown". please Describe in Greater Detail your Disposition of Evidence Collected by you.

④ On February 19, 2015 you provided ADDitional information to your initial Report.

   ⓐ You indicate Officer Bettencourt utilized A Second SWAB on your uniform which was Already Wet AND then a picture was taken. Please Clarify if you told Sergeant Vitale that the SPlash marks on your uniform were just swabbed with a ~~wet~~ wet swab Prior to Him taking the Pictures?

☐ CHECK IF CONTINUED ON ADDITIONAL PART C2

| NAME OF REVIEWER (PRINT) | TITLE | SIGNATURE | | DATE |
|---|---|---|---|---|
| C. L. CANNEDY | CAPTAIN | CLL | | 2/23/15 |

Distribution:   Original: Incident Package      Canary: Reporting Employee      Pink: Reviewing Supervisor

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,　　　　VS.　JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

XX-6.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (Rev. 10/11)(Crime/
Incident Report Part C1- Supplemental. Log No.: SAC-PSU-15-02-0291.

Hosted by Correctional Officer. T. POTTER, on 02/25/2015. The exhibit herein
shows the "Additional Information" provided by POTTER in an attempt
to correct the mistakes he made within his report. The exhibit shows
the clarification responses to supervisor's request for clarification. Which
allowed for involved    staff to further their conspiracy to deprive the
plaintiff of rights secured by the constitution.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

STATE OF CALIFORNIA
CRIME/INCIDENT REPORT

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| PART C1-SUPPLEMENTAL CDCR 837-C1 (Rev 10/11) | Page 1 of 1 | | INCIDENT LOG NUMBER SAC-PSU-15-02-0191 |
|---|---|---|---|
| LAST FOTTER | FIRST T' | | MI |

TYPE OF INFORMATION

☐ CONTINUATION OF REPORT      ☐ CLARIFICATION OF REPORT      ☒ ADDITIONAL INFORMATION

NARRATIVE

**Due to unavailability, these answers were given by Officer T. Potters to Sergeant D. Gonzales via phone conversation.**

1.) 0600-1400

2.) I did not collect any evidence. (Typo)

3.) I did not collect any evidence. The box should not have been marked. (Typo)

4.) No, I did not.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF Potter, T. | TITLE CORRECTIONAL OFFICER | | BADGE # | ID # | DATE 02/25/15 |
|---|---|---|---|---|---|
| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) SGT. D. GONZALES | DATE RECEIVED 02/25/15 | APPROVED ☒ YES  ☐ NO | | CLARIFICATION NEEDED ☐ YES  ☒ NO | DATE 02/25/15 |

# EXHIBIT SEPARATION PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,             VS.  JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

XX-7.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C (Rev. 10/11) Crime/
Incident Report Part C - Staff Report. Log No. SAC-ISU-15-02-0191.

Hosted by Defendant - P. BETTENCOURT, Correctional Officer. On 02/19/2015.
The exhibit herein shows the report completed by Defendant - BETTENCOURT.
after he used a wet swab on POTTER'S Jumpsuit and Maliciously framed
the Plaintiff with the liquid stain caused by the wet swab. The exhibit
shows that Defendant - BETTENCOURT showed Defendant - RASHEV how
frame an individual by using a wet swab to "Maximize the collection of"
an unknown substance. The exhibit shows that Defendant - BETTENCOURT
Original alleged that he asked block staff where there swab kits
were so that he could collect samples off of officer POTTER'S Jumpsuit.
and that he took a clean swab (alleged unwet) from it's packaging and
swabbed the area on POTTER'S Jumpsuit. Which contradicts what he stated
later. See Ex. XX-8..

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION:   1   PAGE'S.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION
CRIME/INCIDENT REPORT
**PART C-STAFF REPORT**
CDCR 837-C (Rev 10/11)

| | | | | Page 1 of 1 | INCIDENT LOG NUMBER | |
|---|---|---|---|---|---|---|
| | | | | | SAC-PSU-15-02-0191 | |

| NAME: LAST | FIRST | | MI | | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|---|---|
| Bettencourt | P | | | | 02/18/2015 | 1145 |

| POST # | POSITION | | YEARS/MONTHS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|---|
| 285341 | HCA-A2 PSU Escort #2 | | 9 yrs 4 months | 02/19/2015 | A Facility 3 block cell 232 |

| RDOS | DUTY HOURS | DESCRIPTION OF CRIME/INCIDENT | | CCR SECTION/RULE | |
|---|---|---|---|---|---|
| S/S/H | 0600-1400 | Battery on a Peace Officer ( Gassing) | | 3005 (d)(1) | ☐ N/A |

| YOUR ROLE | WITNESSES (PREFACE (S) - STAFF, (V) - VISITOR, (O) - OTHER) | | | INMATES (PREFACE (S) - SUSPECT, (V) - VICTIM, (W) - WITNESS) | | |
|---|---|---|---|---|---|---|
| ☐ PRIMARY | (s) C/O T. Potter | | (s) | (s) OWENS (V60905/FA3-232) | | |
| ☒ RESPONDER | (s) C/O P. Rashev | | | | | |
| ☐ WITNESS | (s) Sgt. K. Blessing | | | | | |
| ☐ VICTIM | (s) C/O S. Byers | | | | | |
| ☐ CAMERA | (s) | | | | | |

| FORCE USED BY YOU | WEAPONS USED BY YOU | | CHEMICALS USED BY YOU | | SHOTS FIRED BY YOU | | |
|---|---|---|---|---|---|---|---|
| ☐ WEAPON | ☐ EXPANDABLE BATON | | CHEMICAL | TYPE | TYPE OF ROUNDS | | # OF ROUNDS |
| ☐ PHYSICAL CHEMICAL | ☐ MINI 14 | ☐ OC | MK9 SABRE | MINI 14 | | | |
| ☒ NONE | ☐ 38 CALIBER | ☐ CN | | 38 CALIBER | | | |
| FORCE OBSERVED BY YOU | ☐ 40 MM | ☐ CS | | 40 MM | | | |
| ☐ WEAPON | ☐ 40 MM MULTI | ☐ OTHER | | 40 MM MULTI | | | |
| ☐ PHYSICAL CHEMICAL | ☐ 9 MM | | | 9 MM | | | |
| ☒ NONE | ☐ HFWRS | ☒ N/A | ☒ N/A | | ☒ N/A | | |

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | | EVIDENCE DISPOSITION | | BIO HAZARD | PPE |
|---|---|---|---|---|---|---|
| ☒ YES | | | | | ☐ YES | ☒ YES |
| ☐ NO | Swab of unknown liquid substance | | Turned over to Officer P.Rashev | | ☒ NO | ☐ NO |
| | ☐ N/A | | ☐ N/A | | | |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | | LOCATION TREATED (HOSPITAL/CLINIC) | FLUID EXPOSURE | | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|---|---|
| ☐ YES | | | | ☐ BODILY | ☒ N/A | ☐ YES |
| ☒ NO | | | | ☐ UNKNOWN | | ☒ NO |
| | ☒ N/A | | ☒ N/A | ☐ OTHER _____ | | |

**NARRATIVE**

On Wednesday 02/18/15 at approximately 1147 I responded to FA3 block with Sergeant K. Blessing because an Officer from FA3 block called Sgt. Blessing to inform him that Officer T. Potter had been gassed by inmate OWENS (V60905/FA3-232). When we arrived in FA3 block Sgt. Blessing asked Officer S. Byers to activate his personal alarm to alert others that FA3 block had an incident and to conduct a staff accountability check. Once the staff accountability was completed I asked the block staff where there swab kits were at so we could collect samples off of Officer Potter's jumpsuit. Officer P. Rashev showed me the kit and I asked if he has ever done a swabbing for a gassing before. Officer Rashev told me that he was new and had never done it before. I asked if he want to learn and he replied yes. I took a clean swab from its packaging and swab the area on Officer Potter's jumpsuit on his right arm just above his elbow. I showed Officer Rashev how to roll the swab around to maximize the collection of the unknown substance. I explained that we make sure to maximize the collection because we don't know what part of the swab the laboratories test. As soon as I swabbed the effective areas I handed the swab to Officer Rashev. Officer Rashev then placed the swab into the coin envelope. I then instructed Officer Rashev to break the stick portion that was sticking out of the coin envelope so the flap can close and contain the swab completely. I then explained the rest of the evidence process to Officer Rashev. Officer Rashev maintained control of the swab and he started to write his report.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| Bettencourt | Correctional Officer | - - - | | 02/19/2015 |

| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| Sergeant Ken Blessing /KM | 2/19/2015 | ☒ YES ☐ NO | ☐ YES ☒ NO | 2/19/2015 |

STATE OF CALIFORNIA | | | | DEPARTMENT OF CORRECTIONS AND REHABILITATION

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,_____ VS. JOSEPH DEFAZIO, ET AL..

CIVIL ACTION NO.: 2:16-CV-02750-JAM-kJN.

XX-8.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR 837-C1 (Rev. 10/11) Crime/
Incident Report Part C1- Supplemental. Log No.: SAC-ISU-15-02-0191.

Hosted by Defendant-P.BETTENCOURT. Correctional officer. On 02/19/2015.
The exhibit herein shows the Clarification report completed by Defendant-
BETTENCOURT. after he used a wet swab on Officer POTTERS Jumpsuit and
falsely framed the Plaintiff with the liquid stain left behind by the wet
swab he used. The exhibit shows that Defendant-BETTENCOURT changed
his story from that originally alleged (see Ex. XX-7) in an attempt to
correct the mistakes he had made within his original report. The exhibit
shows that no swab sample was actually taken from POTTERS Jumpsuit,
because BETTENCOURT admits that he "threw the swab away". The exhibit
shows that Defendants conspired to falsely frame Plaintiff with
gassing and to deprive him of rights secured by the constitution.

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: __1__ PAGE'S.

| CRIME/INCIDENT REPORT<br>PART C1-SUPPLEMENTAL<br>CDCR 837-C1 (Rev 10/11) | Page 2 of 2 | INCIDENT LOG NUMBER<br>SAC-PSU-15-02-0191 | |
|---|---|---|---|
| NAME: LAST<br>1   .encourt | FIRST<br>P. | MI<br>NMI | |

TYPE OF INFORMATION

☐ CONTINUATION OF REPORT        ☐ CLARIFICATION OF REPORT        ☐ ADDITIONAL INFORMATION

NARRATIVE

I assumed all task where completed in the evidence collection process so I went to the sink in the Officers Office and wetted an extra swab I was holding and went and cleaned the soiled areas of Potter's jumpsuit. I threw the swab away I used to clean the affected area of Potter's jumpsuit. I went and checked on Officer Rashev progress in the Sergeants Office to see if he needed any more help. This concludes my involvement in this incident.

CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| Bettencourt, P | Correctional Officer | | | 02/19/2015 |

| NAME & TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| Sergeant Ken Blessing KN | 2/19/2015 | ☒ YES  ☐ NO | ☐ YES  ☒ NO | 2/19/2015 |

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS.          vs. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

YY

EXHIBIT.

## DESCRIPTION OF THIS EXHIBIT: THE RIGHTS OF PRISONERS REGARDING SERIOUS DISCIPLINARY CHARGES.

Hosted by The Director of The Prison Law Office. DONALD SPECTER. on 03/2010. It shows the rights of california prisoners regarding disciplinary proceeding and procedures. Pages three subsection (6) and four subsection (7) shows the procedures the plaintiff was deprived of and ensures in his complaint were a violation of his rights. It also establish's the plaintiff's claim of a fourteenth Amendment violation. as it has been well settled in 1974 in WOLFF V. McDONNELL. that prisoners retain the rights to call live witnesses and to present documentary evidence in their defense. and that if prison officials elect to disallow specific witnesses. they SHALL document that reason on the C.D.C.R. Form 115. And that their failure to document a reason within the holding of WOLFF V. McDONNELL would entitle them to liability under the XIV Amend. for due process violations.

## NUMBER OF PAGE'S TO THIS EXHIBIT: 1-6 _____ PAGE'S.



PRISON LAW OFFICE
General Delivery, San Quentin CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

Director:
Donald Specter

Managing Attorney:
Sara Norman

Staff Attorneys:
Rana Anabtawi
Rebekah Evenson
Steven Fama
Warren George
Penny Godbold
Megan Hagler
Alison Hardy
Corene Kendrick
Kelly Knapp
Millard Murphy
Lynn Wu

*Your Responsibility When Using the Information Provided Below:*

When putting this material together, we did our best to give you useful and accurate information because we know that prisoners often have trouble getting legal information and we cannot give specific advice to all prisoners who ask for it. The laws change often and can be looked at in different ways. We do not always have the resources to make changes to this material every time the law changes. If you want legal advice backed by a guarantee, try to hire a lawyer to address your specific problem. If you use this pamphlet, it is your responsibility to make sure that the law has not changed and still applies to your situation. Most of the materials you need should be available in your institution's law library.

## THE RIGHTS OF PRISONERS REGARDING SERIOUS DISCIPLINARY CHARGES
(updated 03/2010)

We have received your request for assistance in defending against disciplinary charges or in appealing a disciplinary finding of guilt. Because this office has limited staff and resources, we cannot provide you with direct assistance. We hope that this letter, which summarizes your rights in the disciplinary process, will give you guidance in preparing your defense or administrative appeal.

The rights of prisoners to fair disciplinary proceedings are rooted in the due process clauses of the U.S. and California Constitutions; however, those rights are not as broad as the rights of defendants facing criminal charges.[1] Most of the specific rights of prisoners regarding disciplinary charges are now set forth in a state statute (Penal Code § 2932) and CDCR regulations (15 CCR §§ 3310 through 3326). If you are charged with a "serious" rule violation,[2] you have the following rights:

---

[1] U.S. Const., Amend. XIV; California Const, art. I, § 7; Wolff v. McDonnell (1974) 418 U.S. 539 [94 S.Ct. 2963; 41 L.Ed.2d 935]; Baxter v. Palmigiano (1976) 425 U.S. 308 [96 S.Ct. 1551; 47 L.Ed. 2d 810]; Ponte v. Real (1985) 471 U.S. 491 [105 S.Ct. 2192; 85 L.Ed.2d 553].

[2] The CDCR differentiates between "serious" and "administrative" rule violations. See 15 CCR §§ 3314-3315. Administrative violations involve less serious types of misconduct and cannot be punished by a loss of credits. 15 CCR 3314. Some, but not all, of the same procedural rights apply. See 15 CCR §§ 3314-3321.

Board of Directors
Penelope Cooper, President • Michele WalkinHawk, Vice President
Marshall Krause, Treasurer • Christiane Hipps • Margaret Johns
Cesar Lagleva • Laura Magnani • Michael Marcum • Ruth Morgan • Dennis Roberts

Prison Law Office
Rights of Prisoners Regarding Serious Disciplinary Charges (updated 3/2010)
page 2    Case 2:16-cv-02750-JAM-KJN    Document 200    Filed 09/24/20    Page 325 of 535

(1)    Written notice of the charge. The notice must include the specific charge, the date, time, and place of the alleged violation, and a statement of the evidence relied upon.[3] CDCR Forms 115 Rules Violation Report and 115-A Serious Rules Violation Report are used to notify prisoners of rule violation charges. Generally, you must be given the CDCR Form 115 within 15 days after prison staff discover the information leading to the charge. If the CDCR fails to provide notice in this time period, then no time credits may be lost as punishment for the offense.[4] However, notice may be delayed beyond 15 days, but no more than 30 days, and credits may still be lost, if (1) the misconduct could be prosecuted as murder, attempted murder, or battery on staff; (2) an investigation is continuing to identify people involved in the misconduct; and (3) a request to delay notification is approved by the Chief Disciplinary Officer.[5] Also, notice may be delayed for up to 45 days on request of the District Attorney (DA) when a criminal investigation is in process.[6]

(2)    Notice of referral to criminal authorities if the rule violation is forwarded to the District Attorney (DA) for possible criminal prosecution.[7] If your case is referred to the DA, you can request postponement of the disciplinary hearing pending the outcome of the DA referral. One reason for postponing would be if you are concerned that what you say at the disciplinary hearing might be used against you in a criminal trial. You can revoke the request for postponement at any time up until any formal criminal proceedings begin.[8]

(3)    Assignment of an Investigative Employee (IE) to investigate the facts when the issues are complex and require further investigation or your housing status makes it unlikely that you can collect and present the evidence necessary for a fair hearing.[9] Although you may not choose the IE, you can object to the first person assigned in writing; if your objections are found to be reasonable, then a different IE will be assigned.[10] The IE gathers information and interviews witnesses, then prepares a written report for the disciplinary hearing officer; you must be provided with a copy of the IE's report at least 24 hours before the hearing.[11]

---

[3]  Penal Code § 2932(c)(1).

[4]  15 CCR § 3320(a) and (f)(1).

[5]  Penal Code § 2932(c)(1)(B); 15 CCR § 3320(a)(1).

[6]  Penal Code § 2932(f).

[7]  15 CCR § 3316(a)(3).

[8]  Penal Code § 2932(f); 15 CCR § 3316(c)(1)(A).

[9]  15 CCR §§ 3315(d)(1) and 3318(a).

[10]  15 CCR § 3315(d)(1)(D). You must object before the IE begins the investigation. 15 CCR § 3315(d)(1)(D).

[11]  15 CCR § 3318(a).

(4) <u>Assignment of a Staff Assistant</u> (SA), instead of or in addition to an IE, if you need to have a confidential relationship with the person who is helping you, if you are illiterate or non–English-speaking, or if you need assistance understanding the charges or the disciplinary process.[12] An SA must be assigned if you are in Levels DD1-DD3 of the Developmentally Disabled Program (DDP) or in the Enhanced Outpatient Program (EOP) level of mental health care.[13] An SA should keep the information that the prisoner discloses confidential if the prisoner requests confidentiality; however, confidentiality is not required if the information concerns possible future criminal conduct.[14]

(5) <u>Effective communication</u>, if you are disabled, of the CDCR Form 115 and other disciplinary documents, the hearing proceedings, and all other communications involving the disciplinary process. Depending on your disability, this may be done through assignment of a Staff Assistant (SA), a qualified interpreter or reader, or accommodations such as large print materials, sound amplification devices, or a TDD phone.[15]

(6) <u>To request witnesses</u>, both friendly and hostile, to be interviewed by the IE (if one is assigned) and to attend the hearing.[16] You should always make a written request for your witnesses; there is a place on the CDCR Form 115 where you can do this. The employee who reported the disciplinary violation must attend the hearing and testify if requested. Witnesses who cannot attend the hearing may be made available by telephone. You may ask questions of the witnesses under the direction of the hearing officer. Your requested witnesses may be disallowed only for specific reasons, such as endangerment of the witness, a finding that the witness has no relevant information, or when the witness is unavailable. Prison staff should document any reasons for denying witnesses on the CDCR Form 115.[17]

---

[12] 15 CCR §§ 3315(d)(2) and 3318(b).

[13] <u>Clark v. California</u> (N.D. Cal. Mar. 1, 2002) No. C96-1486 FMS, Remedial Plan, § VI.L.2; see also 15 CCR § 3315(2)(E)(1).

[14] 15 CCR § 3318(b)(2)(A).

[15] <u>Armstrong v. Davis</u> (N.D. Cal. Jan. 3, 2001) C94-2037 CW, Remedial Plan, § II.E.

[16] 15 CCR § 3315(e); see <u>Edwards v. Balisok</u> (1997) 520 U.S. 641 [117 S.Ct. 1584; 137 L.Ed.2d 906] (opining that complete denial of prisoner's witnesses was an "obvious procedural defect").

[17] 15 CCR § 3315(e); <u>Serrano v. Francis</u> (9th Cir. 2003) 345 F.3d 1071 (violation of due process to deny witnesses without documenting reasons).

(7)     To present documentary evidence in defense or mitigation of the charge.[18]

(8)     To receive copies of all non-confidential information relating to the charges at least 24 hours before the hearing.[19] This includes the CDCR Form 115, the Investigative Employee's (IE's) report, and any incident reports to be relied upon at the hearing. You should not waive this right even if prison staff ask you to do so; it is important to exercise this right in order to fully prepare a defense.

(9)     Notification of the existence of confidential information and disclosure of as much of the information as possible without identifying the source.[20] CDCR Form 1030 Confidential Information Disclosure is used to notify prisoners of confidential information.

(10)    A hearing within 30 days after you receive written notice of the charge. The hearing can be postponed if you have been transferred out of CDCR custody or if there are "exceptional circumstances," about which the prison officials must notify you in writing.[21] Except in these circumstances, failure to hold a hearing within 30 days bars the CDCR from taking away time credits as punishment for the offense.[22]

(11)    To request postponement of the hearing pending the outcome of a referral to the District Attorney (DA) or due to some other reasonable need. A request for postponement based on a reasonable need must be made in writing and the request may be denied if the disciplinary officer believes it is not credible. Postponement based on reasonable need may be for a period of up to 30 days.[23] If you request postponement pending the outcome of a referral to the DA, then the hearing will not be held until after the criminal case is resolved. However, you can revoke a request for postponement pending a DA referral at any time prior to filing of formal criminal charges; the disciplinary hearing then must be held within 30 days after you revoke your request for postponement.[24]

---

[18]   15 CCR § 3320(l).

[19]   15 CCR § 3320(c).

[20]   15 CCR § 3321(b)(3). The rights of prisoners regarding the use of confidential information in disciplinary hearings are discussed in greater detail in a separate information letter that can be requested from the Prison Law Office.

[21]   15 CCR § 3320(b). "Exceptional circumstances" are defined in 15 CCR § 3000.

[22]   15 CCR § 3320 (f)(3), (4), and (5).

[23]   15 CCR § 3320(d).

[24]   Penal Code § 2932(f); 15 CCR § 3316(c)(1).

(12) <u>An impartial decision-maker</u>, meaning that the hearing officer may not be someone who reported, observed, classified or investigated the alleged violation, assisted you in preparing for the hearing, or has a predetermined belief in your guilt or innocence.[25]

(13) <u>To be present at the hearing</u>, unless you waive the right to be present.[26] There are other very limited circumstances in which the hearing may be conducted in the absence of the prisoner.[27]

(14) <u>A preponderance of the evidence standard</u> to determine guilt at the hearing.[28] "Preponderance of the evidence" means the evidence as a whole must show that it is "more likely than not" that you are guilty of the charge. If confidential information is used to find you guilty, the hearing officer also must determine whether that information is reliable.[29]

(15) <u>To receive a completed copy of the CDCR Form 115</u> containing the disposition, findings, and specific evidence relied upon within 5 working days after the decision is reviewed by the Chief Disciplinary Officer (CDO).[30]

(16) <u>To appeal a finding of guilt</u> through the CDCR's administrative appeal process.[31] You should submit your CDCR Form 602 administrative appeal within 15 business days after receiving the completed CDCR Form 115.[32] You should attach a copy of the CDCR Form 115 to your appeal. It very important to file a timely administrative appeal if you might want to file any type of court action challenging the disciplinary finding of guilt.

(17) <u>Removal of disciplinary records</u> from your Central File if you are found not guilty or if the charges are dismissed.[33]

---

[25] 15 CCR § 3320(h); see also <u>People v. Superior Court (Hamilton)</u> (1991) 230 Cal App.3d 1592 [281 Cal.Rptr. 900].

[26] 15 CCR § 3320(g)(3).

[27] A hearing may be held without the prisoner if (1) the prisoner has been convicted of escape and has not been returned to the facility, or (2) a psychiatrist decides that the prisoner has a serious mental disorder and cannot understand or participate in the hearing. 15 CCR § 3320(g) (1) and (2).

[28] 15 CCR § 3320(l).

[29] 15 CCR § 3321(b) and (c); <u>Zimmerlee v. Keeney</u> (9th Cir. 1987) 831 F.2d 183; <u>In re Jackson</u> (1987) 43 Cal.3d 501 [233 Cal.Rptr. 911].

[30] Penal Code § 2932(d); 15 CCR § 3320(l).

[31] Penal Code § 2932(d); 15 CCR § 3084.7(b).

[32] 15 CCR § 3084.6(c).

[33] 15 CCR § 3326(a)(2).

If you want to challenge the disciplinary proceedings or the finding of guilt in your case, you should file a CDCR Form 602 administrative appeal. You will need to file and get responses at all three levels if you want to challenge the disciplinary charge in court; it is very important that you meet the time limits for filing your 602 appeal to each level of review.

Once you "exhaust administrative remedies" by filing your administrative appeal through the Third Level of Review, you can file a state petition for writ of habeas corpus in the Superior Court in the county in which the prison is located. In your petition you can ask the court to order prison officials to hold a new hearing with fair procedures. You can also ask the court to overturn the finding of guilt. The courts will uphold the prison officials' factual findings if there is "some evidence" in the record from which the hearing officer logically could find you guilty.[34]

This letter sets forth only an outline of your rights at disciplinary hearings. A more complete explanation of prisoners' rights regarding disciplinary violations, plus tips regarding defending against disciplinary charges and appealing findings of guilt, can be found in Chapter 6 of The California State Prisoners Handbook, Fourth Edition (2008 and periodically supplemented). This book may be available in your prison's law library, or you can get information on ordering the book from the Prison Law Office. In addition, the Prison Law Office can provide free information letters regarding administrative appeals and state petitions for writ of habeas corpus. Feel free to write the Prison Law Office to request these materials if they are not already enclosed with this letter.

---

[34] See Superintendent v. Hill (1985) 472 U.S. 445 [105 S.Ct. 2768; 86 L.Ed.2d 356]; In re Spence (1974) 36 Cal.App.3d 636 [111 Cal.Rptr.782].

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,        VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750 - JAM-KJN

22.

EXHIBIT

DESCRIPTION OF THIS EXHIBIT: OPERATIONS MANUAL 2015. January

Hosted by The State Of California on January 1, 2015. The exhibit herein Shows the rules and regulations that the California Department of Corrections and Rehabilitation ("C.D.C.R.") and it's employee must adhere to. The exhibit Shows the policies that Defendants didnot follow when Violating Plaintiff's rights. The exhibit Shows that Plaintiff's rights were Violated. The exhibit shows that punchs to head and or eyes are considered lethal target areas. (Sec. 51020.19. Reviewing the Use of Force) Which Defendants used on Plaintiff. The exhibit Shows that once a supervisor learns of allegations made by an inmate of unnecessary or excessive force, that Supervisor in required to arrange a FULL medical assessment of the inmates injuries (sec. 51020.18.1 Allegations of Excessive or Unnecessary Force - Supervisor Reporting Requirements) Which Defendant- MARTINCEK did not do in Plaintiff's case. See Ex. PP.1 and 2. And Ex. L. The exhibit shows that Once the Plaintiff has sustained serious bodily injury Defendant- MARTINCEK was suppose to notify the

NUMBER OF PAGE'S TO THIS EXHIBIT: 1-29.     PAGE'S

OIA. and the OIG. no later than one hour from the time the incident Was discovered (sec. 51020.18.1. Allegations of Excessive or unnecessary

Force - Incident Commander and Appeals
Coordinator Reporting Requirements) Which Defendant
-MARTINCEK did not do in Plaintiff's case. See
Ex. PP.1 & 2. The exhibit Shows that the
Incident Commander - Defendant. MARTINCEK-

```
CONTINUATION OF
        22.
     EXHIBIT.
```

Was Suppose to Provide an accurate Summary of the events that
occurred in his report (Id.) Which did not happen. See Ex. PP.2.. The
Exhibit shows that an employee who witnesses an inmate being
beaten by another employee Shall attempt to stop the
Violation, and Shall Verbally report the allegation to a
Supervisor as well as on paper (Sec. 51020.18. Reporting
Allegations of Unnecessary or Excessive Force). Which Defendant
GUFFEE did not do in this case. The exhibit shows that
it was Defendant - MARTINCEK'S legal Obligation     to notify
the OIA. and the OIG. that Plaintiff Sustained Serious bodily
injury during an incident that could have been cause by
a Staff use of force. (Sec. 51020.11.7. Incident Commander-
Reporting Requirements.) Which Defendant - MARTINCEK did not
do. See Ex. PP.2. The exhibit Shows that if Defendant - DEFAZIO
was actually headbutted by the Plaintiff as he alleges he
was and that he Sustained an injury "pain". Ex. PP. 10. - that
Defendant - MARTINCEK would have completed an Occupational
Injury or Illness Form (SCIF-3067)(Sec. 51020.11.7. Response
Supervisor - Reporting Requirements) Which was not completed by
either Defendant- MARTINCEK or DEFAZIO. Which Shows that
DEFAZIO was never headbutted or injured. The exhibit shows
that the Plaintiff Should not have been      removed from his
Cell Without the Presence of a first or Second Level Manager.
Or an AOD. (Sec. 51020.11. Controlled use of force General
Requirements) Which Shows that Plaintiff would not have been
injured if policy was followed.

## EXHIBIT SEPARATION CONTINUATION PAGE. ONE.

**State of California**

**California Department of Corrections and Rehabilitation**
**Adult Institutions, Programs, and Parole**

# Operations Manual



*"Public Safety, Public Service"*©

**Updated Through**
**January 1, 2015**

**OWENS 148**

**51020.20.2    Deadly Force Investigation Team Responsibility**

Trained Department investigators assigned to a Deadly Force Investigation Team shall conduct criminal and administrative investigations of every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force. All DFIT criminal investigations will be referred to the local District Attorney for review where MOU's provide for referral.

Based on certain local Memoranda of Understanding, criminal investigations may instead be conducted by an outside police department or sheriff's office. If an outside law enforcement agency is conducting the criminal investigation, the DFIT investigator will monitor the progress of the criminal investigation while providing appropriate support.

Although defined as deadly force, DFIT need not investigate the discharge of a warning shot inside an institution/facility if an ISU Sergeant or above, or an uninvolved Correctional Lieutenant, confirms that the discharge of deadly force was a warning shot and that no injuries were caused by the shot. All warning shots shall be reported to the Office of Internal Affairs/DFIT and the Office of the Inspector General (OIG).

**51020.20.3    Deadly Force Review Board**

The DFRB is the board responsible for conducting a full and complete review of all incidents involving a use of deadly force (except warning shots) and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

The DFRB shall be composed of at least four members. Three shall be non-departmental law enforcement professionals. One (1) shall be a Division, Parole Region, or Institutional/facility manager (i.e. Associate Directors, Division of Juvenile Justice Superintendents, Chiefs or designees) from outside the chain of command of the involved employee(s). Additional members may be designated by the Secretary or designee.

The reports and findings generated from the separate investigative bodies (DFIT and local law enforcement if applicable) will be presented to the DFRB. The DFRB shall be convened as soon as possible after the criminal and administrative investigations are completed.

The DFRB shall examine all aspects of the incident to determine the extent to which the use of force complied with departmental policies and procedures, and to determine the need for policy, training, and/or equipment modifications.

The DFRB shall report its findings and recommendations in writing, to the Undersecretary assigned to oversee the DAI.

**51020.21    External Review of the Use of Force - The Use of Force Coordinator Responsibility**

For purposes of an external review, the Use of Force Coordinator shall identify and retain use of force cases closed by the IERC during the review period. External reviews of closed use of force cases shall be conducted at least every 24 months

**51020.22    Revisions - Use of Force Joint Use Committee (JUC)**

The Use of Force JUC is a committee of field staff tasked with reviewing and evaluating recommended revisions to the CDCR's Use of Force Policy and Procedures.

The JUC shall be comprised of the following field staff:
- At least one Institution Head, as chairperson
- At least one staff member from each DAI, mission based region, at the level of Lieutenant or Captain

OWENS 146

The Use of Force Coordinator shall prepare complete copies of the incident packages to be reviewed by the IERC during the scheduled meeting. The OIG shall be provided reasonable notice and copies of the packages to be reviewed in advance of the meetings.

If the IERC determines additional information or clarification is required, the Use of Force Coordinator will forward a request for this information to the responsible Manager and track the assignment.

The Use of Force Coordinator will maintain a copy of the completed incident package until the information or clarification is received. The Use of Force Coordinator will then complete the analysis and resubmit the case to the IERC.

The Use of Force Coordinator will ensure the IERC findings are documented on the CDCR 3035 and CDCR 3036 following final IERC review of the completed incident package.

After final review by the IERC, any copies of staff disciplinary documents will be removed from the incident package and routed to the appropriate Manager for placement into the appropriate file.

The IERC Chairperson and the Use of Force Coordinator shall review the status of all pending use of force cases following each IERC meeting to evaluate the readiness for final review of the cases.

By the fifth day of each month, the Use of Force Coordinator shall forward a memorandum to the respective Associate Director listing the date of IERC meetings, incident package log numbers, specific crime, and disposition of all incident packages reviewed during the previous month.

### 51020.19.5   Institution Executive Review Committee Monitoring Responsibility

The IERC is a committee of executive staff tasked with reviewing reported use of force incidents and allegations of excessive or unnecessary force. The IERC shall normally be comprised of the following institutional staff:

Institution Head or Chief Deputy Warden, as chairperson and final decision maker,

At least one other manager assigned on a rotational basis,

- In-Service Training Manager,
- One health care staff, and
- A Use of Force Coordinator.

A licensed mental health practitioner shall participate in the IERC for all controlled use of force incidents. A licensed mental health practitioner shall also participate in the IERC for any immediate use of force incidents involving an inmate participant in the Mental Health Services Delivery System.

Other designated supervisors and rank and file staff may also attend, as determined by the appointing authority. A representative of the OIG may also attend and monitor IERC meetings.

The IERC shall meet to review its cases on at least a monthly basis, or on a schedule to ensure all cases are reviewed within 30 days. Unless there are outstanding issues or a corresponding investigation, this review will be both an initial/final review.

The IERC Chairperson shall personally view all video recordings arising from controlled use of force incidents. This viewing can be accomplished either before or during the IERC.

During the IERC, at a minimum, the committee members shall view the portions of the controlled use of force video from the admonishment through the last use of force.

Should an incident or allegation warrant a request for direct action or investigation by the DFIT, the OIA, or any other outside investigating agency, the IERC shall suspend all review of that incident until the investigation is completed. Upon the Hiring Authority determining a finding for the referred allegation(s), the IERC shall apply the findings as part of its own review.

The IERC shall determine if the use of force was reasonable and in compliance with policy, procedures and training. The IERC shall also examine the critique and conclusions of the managers and supervisors, and ensure the appropriateness of completed documentation.

OWENS 144

    o  What steps were taken to minimize the need for force.

    o  Any relevant comments.

In the event the Incident Commander believes an investigation may be necessary, the Incident Commander shall suspend review and recommend that the case be referred for investigation.

### 51020.19.2    First Level Manager Review

The First Level Manager of the area where the incident or allegation occurs shall reach a judgment whether the force used was in compliance with policy, procedure, and training.
The manager shall:

- Review all documentation in the incident package, including the Report of Finding-Inmate Interview (CDCR 3014).
- Review the quality of all reports to ensure the use of force was properly documented and reviewed. This includes a review of the Incident Commander's conclusions.
- Determine if any corrective action taken by his/her subordinates in relation to the incident was adequate/proper.
- Conduct an in depth analysis to determine if the use of force described in the incident package was within the guidelines of the Use of Force policy, as well as other policies, procedures and training. This analysis should address any non-compliance not identified earlier.
- Complete a review of the incident on the Manager's Review – First Level Use of Force Incidents (CDCR 3011).
- In the event the First Level Manager believes an investigation may be necessary, they shall suspend review and recommend that the case be referred for investigation.

### 51020.19.3    Second Level Manager Review

The Second Level Manager is the final level of review prior to the completed incident package being sent to the Use of Force Coordinator for review by the (IERC). The Second Level Manager shall reach a judgment whether the force used was in compliance with policy, procedure, and training.

The second level manager shall:

- Review all documentation in the incident package, including the Report of Finding-Inmate Interview (CDCR 3014).
- Review the quality of all reports to ensure the use of force was properly documented and reviewed. This includes a review of the Incident Commander's conclusions and the First Level Manager's conclusions.
- Determine if any corrective action taken by his/her subordinates in relation to the incident was adequate/proper.
- Conduct an in depth analysis to determine if the use of force described in the incident package was within the guidelines of the Use of Force policy, as well as other policies, procedures and training. This analysis should address any non-compliance not identified earlier.
- Complete a review of the incident on the Manager's Review – Second Level Use of Force Incidents (CDCR 3012).
- In the event the Second Level Manager believes an investigation may be necessary, they shall suspend review and recommend that the case be referred for investigation.

OWENS 142

document all details regarding any allegations or observations of use of force that is unnecessary or excessive. This includes a quote of the allegation, or what was seen or heard, including observations of any apparent injuries, and the name of the supervisor the employee reported the allegation to.

All reports shall be submitted to a custody supervisor.

### 51020.18.1 Allegations of Excessive or Unnecessary Force-Supervisor Reporting Requirements

Whether or not the allegation of excessive or unnecessary force is made in conjunction with a reported use of force, a supervisor who learns of such an allegation shall:

- Make a verbal notification to the Incident Commander as soon as practical.
- Arrange for the inmate to be medically examined and request a full medical assessment of injuries, if any.
- Ensure every staff member who witnessed the allegations and/or staff who witnessed the event leading to the allegations immediately submits the applicable report.
- Review any reports for clarity.
- Submit a package of all documents relating to the allegation, including a copy of the medical report, to the Incident Commander.

### 51020.18.2 Allegations of Excessive or Unnecessary Force-Incident Commander and Appeals Coordinator Reporting Requirements

When informed of allegations of the use of unnecessary or excessive force, the Incident Commander and/or the Appeals Coordinator shall make an initial assessment of the information received and notify the appropriate First or Second Level Manager as soon as practical.

Additionally, the Incident Commander and/or the Appeals Coordinator shall:

- Ensure LNS has evaluated the inmate and a CDCR 7219 has been completed.
- Review written reports of witnesses and obtain statements from inmate witnesses, if any.
- Ensure that the inmate's injuries are video recorded and the inmate is interviewed within 48 hours in accordance with the requirements set forth in DOM, Section 51020.17.3. This shall be done as soon as possible upon receiving verbal notification of the allegation.

When an allegation is received, whether verbally or through the appeals process, the Appeals Coordinator or Incident Commander shall contact ISU or the Watch Commander and determine if the related incident report exists. The respective Appeals Coordinator or Incident Commander shall note the existence of the incident report by log number in their submittal prior to forwarding the allegation for administrative review.

If the inmate has suffered serious bodily injury or great bodily injury, the Incident Commander shall notify the OIA and the OIG as soon as possible, but no later than one hour from the time the incident is discovered. In instances where the allegation was submitted through the inmate appeal process and there is no corresponding incident report, the Appeals Coordinator shall, in consultation with the hiring authority, notify the OIA and OIG.

If, at any point in the review, the Incident Commander and/or the Appeals Coordinator discovers information that leads them to reasonably believe or suspect an employee has committed any serious misconduct, the Incident Commander and/or Appeals Coordinator shall:

- Immediately forward all information to the Institution Head via the chain of command, recommending an internal affairs investigation if appropriate.
- Prepare a Report of Findings-Inmate Interview (CDCR 3014) and/or Appeal Inquiry. The report shall contain the allegations made, an explanation of the incident, the written or verbal statements of the witnesses, the health care information, and a conclusion and recommendation.

OWENS 140

**51020.17.6    Health Care Staff Use of Force-Reporting Requirements**

Health Care Services staff shall complete and submit a Crime/Incident Staff Report (CDCR 837-C) whenever a health care staff member:

- Observes use of force.
- Uses force on an inmate.
- Provides clinical intervention prior to a use of force.
- Reviews the health record for conditions that may put an inmate at increased risk for adverse outcome from the use of force.
- Hears an inmate allegation of an unnecessary or excessive use of force during a reportable incident if not already reported on a Notice of Injury or Unusual Occurrence form (CDCR 7219).

On the CDCR 837-C, the licensed mental health practitioner shall provide a timeline for the clinical assessment and intervention process. They shall also document if the inmate had the ability to understand orders, had difficulty complying with orders based on mental health issues or was at increased risk of substantial decompensation due to mental illness.

If it was determined the inmate had difficulty complying with orders or was at increased risk of substantial decompensation, the licensed mental health practitioner shall:

- Document that strategies were developed
- Document if the strategies were implemented
- Document whether those strategies were successful

On the CDCR 7230, Interdisciplinary Progress Note, the licensed mental health practitioner shall document information regarding the clinical assessment and intervention process. The licensed mental health practitioner shall document the rationale for the assessment results regarding the inmate's ability to understand direction, any difficulty complying with direction or substantial risk of decompensation. If strategies were developed, the licensed mental health practitioner shall document specific strategies, whether the strategies were implemented, and the results.

In addition to the requirements noted above, the LNS shall complete and submit a CDC 7219 upon conducting a medical evaluation after a use of force. The CDCR 7219 shall be completed and submitted to the Response Supervisor prior to the LNS leaving the institution and shall:

- Include a quote of the inmate's own words in the patient comment section.
- After examination, document observations of the area on the inmate where force was applied.
- Include comments or information garnered from custody staff regarding the type and amount of force used.
- Document the injuries sustained and the medical treatment rendered.
- Document if the inmate refuses medical examination and/or treatment.
- Document any alternative assistive device provided and any medical recommendation / accommodation suggested during and after the use of force.
- Document in-cell decontamination instructions and times of 15-minute checks, if applicable.

In addition to the above requirements, LNS shall be responsible for providing custody staff and the Use of Force Coordinator, with notification and updated information in the event that the aftercare treatment process reveals new facts about the severity of an injury.

**51020.17.7    Incident Commander-Reporting Requirements**

It is the responsibility of the Incident Commander to notify the Office of Internal Affairs (OIA) and the Office of Inspector General (OIG) as soon as possible, but no later than one hour from the time the incident is discovered, of any use of deadly force and every death, great bodily injury or serious bodily injury that could have been caused by a staff use of force. Depending on

OWENS 138

### 51020.17.1    Involved Staff-Reporting Requirements

Written reports regarding staff uses force shall be documented on a Crime/Incident Staff Report (CDCR 837-C). This requirement includes the on-site manager authorizing the use of controlled force. This requirement includes a First or Second Level Manager/AOD authorizing the use of controlled force.

Reports shall be prepared by any employee who uses or observes the use of force. The reports shall be submitted to, and reviewed by, the Response Supervisor prior to being relieved from duty. Staff shall not collaborate with each other in the preparation of reports. ·

If possible, identify important information in the contents of the report as follows: .

- Identities of staff that observed and/or participated in the use of force.
- Description of the actions of the inmate and circumstances leading to the use of force.
- Description of the specific force used or observed.
- If chemical agents were used, identify the type of projector used, and from what distance.
- Description of the inmate's level of resistance.
- Description of why force was used and description of the threat perceived.
- Description of any identified disabilities ascertained through any tracking system and what form of reasonable accommodation and/or assistance was provided during and after the controlled use of force.
- · Description and observations of staff or inmate injuries and the cause of the injury, if known.
- Description of observations of decontamination of chemical agents or medical attention given.
- Description of observations or knowledge of the steps taken to decontaminate the housing unit, and those inmates not directly exposed to chemical agents.
- Documentation of any inmate allegation of an unnecessary or excessive use of force.

### 51020.17.2    Involved Staff-Additional Reporting Requirement for Deadly Force

An employee, who intentionally or accidentally uses deadly force, whether on or off-duty, shall ensure that a supervisory employee is verbally notified of the incident without delay. A written report shall also be required. This reporting is not a requirement for the lawful discharge of a firearm during weapon's qualifications, firearms training, or other legal recreational use of a firearm.

### 51020.17.3    Video Records Made After Uses of Force That Cause Serious Bodily Injury, Great Bodily Injury, or Result in Allegations of Unnecessary or Excessive Force

Under the following circumstances, a video recorded interview of an inmate shall be conducted in accordance with the Inmate Interview Guidelines form (CDCR 3013) and documented on the Report of Findings-Inmate Interview form (CDCR 3014):

- The inmate has sustained a serious bodily injury or great bodily injury that could have been caused by a staff use of force.
- The inmate has made an allegation of an unnecessary or excessive use of force.

Any visible or alleged injuries shall be video recorded. The video recording shall be conducted by custodial supervisors (sergeants or lieutenants) who did not use, or observe the force used, in the incident.

The video recording should be made as soon as possible, but no later than 48 hours from discovery of the injury or allegation.

The video recording shall also include a request of the inmate to be interviewed regarding the circumstances of the incident. If the inmate refuses to be video recorded, such refusal shall be recorded.

OWENS 136

### 51020.15.4    Decontamination from Chemical Agents – General

Any inmate exposed to a chemical agent shall be afforded an opportunity to decontaminate as soon as practical. Staff shall provide reasonable accommodation to disabled inmates who require assistance exiting a contaminated area and during the decontamination process.

If an inmate refuses to decontaminate, no other action is necessary, unless the inmate was exposed in a cell and not removed from the cell where the exposure occurred. In these instances, refer to Section 51020.15.6. If an inmate refuses decontamination, the LNS shall be responsible to explain the importance of decontamination and encourage the inmate to decontaminate.

Inmates in an adjacent cell or in the general area where chemical agents are used shall be questioned by custody staff to determine if decontamination is warranted.

Decontamination of those inmates not directly exposed to chemical agents will be based upon obvious, physical effects of the chemical agent.

The need to medically treat an inmate for serious injury may supersede the need to decontaminate from the effects of exposure to chemical agents.

Inmates exposed to chemical agents shall be allowed to change their clothes as soon as practical. Inmates exposed to chemical agents in a cell shall be afforded the opportunity to exchange linens and bedding, including the safety blanket, when applicable.

### 51020.15.5    Decontamination from Oleoresin Capsicum

Decontamination from OC may be accomplished by exposing the individual to fresh moving air, or flushing the affected body area with cool water, e.g., shower, sink water, or wet cloths and providing clean clothing.

Except when it is determined that removing an inmate from a cell would result in additional force or give rise to an imminent threat, the inmate will be provided an opportunity to decontaminate outside of a cell in which OC has been used.

Force shall not be used to decontaminate inmates from the effects of OC unless a serious threat to the inmate's health is present and LNS determines the inmate must be decontaminated.

No other decontamination is necessary for inmates who have been medically treated and LNS has determined the inmate has been decontaminated.

As soon as it is practical and safe to do so, decontamination of the affected cell and housing unit shall be accomplished by ventilating the area to remove the airborne agent. Open doors and windows as permitted, or use portable fans to speed up the process. If applicable manually turn the air exchange system to high. A fan and the use of the air exchange system is not recommended for any dry agent that is utilized (i.e., expulsion grenades or muzzle blast). Wiping the area down with damp cloths or mopping is only necessary if a noticeable amount of residue is visible.

After decontamination, the inmate should not be returned to a contaminated cell until sufficient time has elapsed to allow for dissipation of the OC or until the cell has been cleaned.

### 51020.16    Application of Spit Hoods or Masks

Only departmentally approved spit hoods/masks are authorized for use. A spit hood/mask shall not be placed upon an inmate who:

- Is in a state of altered consciousness (visibly drowsy, stuporous, or unconscious) or;
- Has any visible signs of a seizure; or
- Is vomiting or exhibits signs of beginning to vomit.

A spit hood/mask may be applied to an inmate if:

- There is verbal or physical intent by the inmate to contaminate others with spit or other bodily fluids from the nose or mouth; or

OWENS 134

**51020.14     Use of Less Lethal Weapons**
The 37 mm and 40 mm launchers are weapons designed to discharge less lethal impact munitions or chemical agents. They are authorized for use in all areas including segregated housing units, general population housing units, cells, dayrooms, dining halls, concrete yards, exercise yards and work areas. It is recommended a Response Supervisor be assigned the duties of discharging less lethal impact munitions during controlled use of force-cell extraction.

**51020.14. 1     Use of Less Lethal Weapons During Controlled Uses of Force**
During the formation of the tactical plan defined in 51020.12, the on-site manager may authorize the use of less lethal impact munitions during controlled use of force situations in a cell, if the inmate is barricaded, or if circumstances are serious in nature calling for extreme measures to protect staff or inmates (i.e., the inmate is armed with a deadly weapon).

**51020.14.2     Use of Less Lethal Weapons for Inmates with Mental Health Issues**
In controlled use of force situations for inmates who are housed in Mental Health Crisis Bed, PIP, OHU, Psychiatric Services Unit (PSU), or have an Enhanced Outpatient Program (EOP) level of care designation, or do not possess the ability to understand orders, or have difficulty complying with orders due to mental health issues, or are at substantial risk of decompensation from the use of force, the use of less lethal weapons is prohibited for direct or indirect use, (i.e., body or barricade removal), unless the Warden or Chief Deputy Warden authorize their use. If circumstances are serious in nature and involve an imminent threat, the use of less lethal weapons in accordance with this section may be authorized. In immediate use of force situations involving an imminent threat, staff are not precluded from using less lethal weapons to gain control of a disturbance involving inmates who may have mental health issues.

**51020.15      Chemical Agents**
Departmentally approved chemical agents include, but are not limited to the following: Oleoresin Capsicum (OC), Chloroacetophenone (CN), and Orthochlorobenzalmalononitrile (CS). OC may be issued to all on-duty departmentally trained peace officers, certified in the use of chemical agents. Employees shall only administer the amount of chemical agents necessary and reasonable to accomplish the lawful objective.
While in the community, non-uniformed peace officers that are issued OC products shall carry the product in a concealed manner, unless the peace officer has a badge clearly displayed.

**51020.15.1      Chemical Agent Use During Controlled Use of Force – Small Space**
During a controlled use of force in a cell, single person holding cell, shower, or other small space, only the chemical agent products listed in 51020.15.1 may be deployed. Any future additional products authorized by the Office of Correctional Safety, Emergency Operations Unit, and approved by the Director, Division of Adult Institutions must be specifically authorized for controlled use of force in a cell or other small space in order to be utilized for this purpose.

- MK-9 OC Vapor - limited to a single burst of 1-3 seconds in duration per application with a maximum of two applications.
- MK-9 OC Fogger – limited to a single burst of 1-5 seconds in duration per application with a maximum of four applications.
- MK-9 OC Foam – limited to a single burst of 1-5 seconds in duration per application with a maximum of four applications.
- OC Vapor Grenade – limited to 2 devices
- OC Flameless Expulsion Grenade – limited to 2 devices
- X-10 Barricade Removal Device – limited to a single burst of 1-5 seconds in duration per application with a maximum of four applications. Chemical agents may only be deployed

OWENS 132

The verbal warning shall contain the following five elements:

- Address the inmate by name.
- Advise the inmate that they are being video recorded.
- Order the inmate to voluntarily comply.
- Advise the inmate of the intent to use chemical agents and/or physical force if they do not comply.
- Advise the inmate that sufficient force will be used to remove them from the area, administer medications, etc.

After the introduction of chemical agents, the camera operator should again video record the inmate and the interior of the cell/area.

If the video recording is interrupted for any reason once the incident/extraction has begun, the camera operator will give a verbal explanation of the interruption once recording has resumed. The entire incident must be video recorded in one segment or scene.

Once the inmate has been extracted, the LNS shall conduct an initial medical evaluation of the inmate and provide any necessary initial treatment. While the inmate is being evaluated or treated the camera shall continue recording, but will not be aimed at the inmate or the LNS. During this time the camera should be aimed at a clock, floor, wall, etc. If it becomes necessary for staff to use force on the inmate while they are being examined or treated, the camera will immediately be aimed at the inmate until such time as the inmate is no longer resistive and the medical evaluation resumes.

If the purpose of the controlled use of force was to administer medications, video recording shall continue as the medications are administered, and until the controlled use of force team disengages from the inmate.

If chemical agents were used and the inmate is allowed to decontaminate, ensure the decontamination is filmed.

The Incident Commander shall determine when the incident has concluded and video recording shall end. This is typically when the inmate is placed in a holding cell/area or re-housed.

### 51020.12.4 ꞏ Controlled Use of Force in Health Care Facilities

When circumstances are such that a controlled use of force is considered within a health care facility (departmental hospital, infirmary, Correctional Treatment Center (CTC), Skilled Nursing Facility (SNF), Psychiatric Inpatient Program (PIP), Outpatient Housing Unit (OHU), etc.), the LNS ꞏ shall consider the impact on medical conditions and the possible need to relocate uninvolved inmates in the immediate vicinity during a controlled use of force.

Administration of Involuntary Medication or Medical Treatment (PC 2602/Probate Code 3200): When force is necessary to administer medication or medical treatment within a health care facility, on-duty health care staff shall ensure medical authorization for the involuntary medication or treatment exists. Health care staff shall also consult with the treating psychiatrist, primary care provider or mid-level provider, if available, to verify the current and critical need for involuntary medication or treatment. If the treating psychiatrist, primary care provider or mid-level provider is not available, the physician or psychiatrist on call shall be consulted. Health care staff shall advise the Incident Commander of such prior to the application of controlled use of force procedures.

Application of Four/Five point Restraints: Only departmentally approved four/five point restraints shall be applied by authorized LNS in health care facilities. Authorization for application of four/five point restraints shall only be given by health care staff in accordance with California Code of Regulations, Title 22, Section 79801 Clinical Restraint, Treatment Restraint, and Clinical Seclusion, and the Mental Health Program Services Delivery System Program Guide, Chapter 10, Suicide Prevention and Response. On-duty health care staff shall ensure authorization exists, and shall advise the Incident Commander of such prior to the controlled use of force under these circumstances.

OWENS 130

The bloodborne pathogens protective suits, riot helmets, and protective shields are to be stored in locations that are readily accessible to the staff responding to conduct an immediate cell extraction so as not to delay entry/response.

Prior to a controlled extraction, the Response Supervisor or Incident Commander shall ensure that the members of the extraction team do not include any staff member who was directly involved in the incident precipitating the need for extracting the inmate.

The Incident Commander will ensure the Response Supervisor and extraction team members clearly understand their roles, appropriate signals, and are familiar with the departmental use of force policy.

A briefing, including possible tactics to be used, shall be given to the extraction team by the Response Supervisor and/or Incident Commander. This briefing shall not be video recorded and should be completed away from the presence of any inmates.

If time permits prior to the actual extraction, a mock extraction may be conducted in a vacated area with participating staff in order to ensure that custodial staff are familiar with their roles during the extraction. Several simulated operations will ensure smoothness, and timing during the actual extraction.

Prior to the extraction, the Incident Commander will communicate with the officer responsible/assigned to open/close cell doors and establish verbal/non-verbal signals specific to the controlled use of force.

The Incident Commander shall ensure the control officer understands that only the Incident Commander shall authorize the opening and closing of affected doors.

For the safety of staff, prior to being removed from a cell, it is preferred that the inmate submit to a visual search. The inmate should remove all clothing, except his/her underwear, and move back far enough from the cell door to allow a visual inspection. The inmate shall be visually inspected from head to toe, front and back. The inmate will run his/her fingers around the inside waistband of his/her underwear. The inmate shall be allowed to retain his/her underwear while being restrained and removed from the cell.

If the inmate refuses to cooperate,with the visual search, but is willing to submit to restraints, the inmate shall be placed in restraints and removed from the cell. The application of restraints shall not be delayed due to the inmate's refusal to submit to being searched, or to have the inmate remove any clothing. Upon removal from the cell, the inmate should be subjected to search for staff safety.

Placement of an inmate on the stomach for a short period of time to restrain an inmate is authorized; however once the inmate is exposed to chemical agents and/or if a spit hood/mask is placed on the inmate, staff shall not place the inmate on his/her stomach, or in a position that allows the inmate to end up on his/her stomach, for any period longer than necessary to gain or maintain control.

The procedure for cell extractions where two inmates are in the cell remains the same as for a single celled inmate with the following additions:

- Additional team members shall be assigned as determined by the Incident Commander.
- In the event one of the inmates is compliant with staff's instructions, and if in the judgment of the Incident Commander it is safe to open the cell door, the inmate shall be removed.
- If it is unsafe to remove the compliant inmate, they shall be required to remain in the cell and appropriate instructions shall be issued for the duration of the incident.

The procedures for an extraction from a holding cell, shower, small exercise yard, etc., whether in a segregated housing unit or general population remain the same as cell extractions except as follows:

- Additional extraction team members or an additional extraction team may be assigned as determined by the Incident Commander.

OWENS 128

During the cool down period, a tactical plan for the potential controlled use of force will be developed by the Incident Commander in collaboration with the Response Supervisor and on-site manager, with input from the LNS and a licensed mental health practitioner. During the collaboration, the possible use of chemical agents, physical force, or other approved force options that may be used to complete the lawful objective will be discussed utilizing their collective knowledge, training, and experience, as well as an evaluation of the totality of circumstances.

General circumstances to consider include but are not limited to:

- The inmate's current demeanor, (i.e., verbal vs. physical aggression / passive vs. active resistance)
- Prior incidents of violence toward staff
- The safety of inmates and staff
- Possession of a weapon
- The use of barriers, barricades or a personal barrier (i.e., cloth or plastic placed about the inmates face and head)
- The inmate's actions during any prior controlled uses of force
- Physical design of the cell
- The location of cell with regard to cross contamination (i.e., OHU/CTC/PIP/PSU, open cell front)
- Effective communication needs as identified by the Disability and Effective Communications System (DECS)
- Input from the assigned housing unit staff

Health care concerns to consider include but are not limited to:

- Current medical health
- Current and prior mental health issues
- The inmate's ability to understand orders or difficulty complying with orders due to mental health issues
- Potential for substantial risk of decompensation
- Developmental/intellectual disabilities

A decision to use chemical agents for the extraction should be based on more than passive resistance to placement in restraints or refusal to follow orders. If the inmate has not responded to staff for an extended period of time, and it appears that the inmate does not present an imminent physical threat, additional consideration and evaluation should occur before the use of chemical agents is authorized.

Based on the collaborative effort, the tactical plan will be finalized and approved by the on-site manager.

A controlled use of force shall not be accomplished without the physical presence of LNS. The LNS shall be in close proximity to the incident to facilitate an immediate medical response, but not so near as to become involved in the controlled use of force. The LNS is not required to don controlled use of force team equipment such as a helmet, Personal Protective Equipment kit, etc. Prior to commencing with the controlled use of force, the Incident Commander shall ensure the LNS is in possession of the appropriate medical supplies and equipment to respond to a medical emergency. The LNS who reviewed the health record and the LNS that is on-site during the controlled use of force is not required to be the same person.

### 51020.12.1 Controlled Use of Force Without Extraction

Not all controlled use of force situations are conducted to remove an inmate from a cell or other location. Controlled use of force may also be used to administer medications (PC 2602), provide medical treatment, or to complete mandated testing (i.e., TB testing, DNA, etc.) When circumstances are such that a controlled use of force is considered within a cell, on-duty health

OWENS 126

#### 51020.11.2    In-Cell Assaults

Unit staff discovering an in-cell assault shall sound an alarm and order the inmates to stop fighting. If the inmates continue to fight or one inmate continues to assault the other, staff are authorized to use chemical agents to stop the incident.

The cell door should not be opened until sufficient staff is present to evaluate the situation. At least two officers shall be present, prior to the door being opened.

The on-scene staff may use their discretion to order the opening of the cell without both inmates restrained in handcuffs. This discretion would apply in the event of incapacitating injuries, illness, or overriding security concerns.

Should the use of chemical agents fail to stop the incident, the supervisor shall order the assembly of a controlled use of force team and immediate physical force may be used to extract the inmates from the cell. While the team is being formed, at least one staff member shall remain at the cell to continue observation of the incident for documentation purposes.

#### 51020.11.3    Food/Security Ports

If during routine duties, correctional officers encounter an inmate who refuses to allow staff to close and lock the food/security port:

The officer shall verbally order the inmate to relinquish control of the food port and allow staff to secure it.

If the inmate relinquishes control of the food/security port, it will be secured.

In the event the inmate does not relinquish control of the food port, the officer shall back away from the cell and contact and advise the custody supervisor of the situation. Controlled force may be initiated in accordance with DOM Section 51020.12, while custody staff continues to monitor the inmate.

#### 51020.12    Controlled Use of Force General Requirements

When force is necessary but does not involve an imminent threat to subdue an attacker, effect custody or to overcome resistance, the force shall be controlled.

The controlled Use of Force involves advance planning, staffing and organization. A controlled use of force requires authorization and the presence of a First or Second Level Manager, or an AOD (on-site manager) during non-business hours. The on-site manager is ultimately responsible for the controlled use of force incident. The Incident Commander shall supervise the controlled use of force process. The Response Supervisor shall direct the controlled use of force team.

Once a situation exists that may result in a controlled use of force, a custody staff member shall remain at the location to monitor the inmate and continue to attempt to gain compliance from the inmate through attempts at verbal persuasion until the controlled use of force team arrives and the staff member is relieved by the Incident Commander to resume their regular duties. The custody staff member will be positioned as close as possible to the affected location, without jeopardizing their own safety.

All controlled uses of force shall be preceded by a cool down period to allow the inmate an opportunity to comply with custody staff orders. The cool down period shall include clinical intervention (attempts to verbally counsel and persuade the inmate to voluntarily exit the area) by a licensed mental health practitioner and may include similar attempts by custody staff if authorized by the on-site manager. This intervention shall take place for all inmates and is not limited to participants in the Mental Health Services Delivery System.

During the cool down period:

- Licensed Nursing Staff (LNS) (i.e., Registered Nurse (RN), Licensed Vocational Nurse, and Psychiatric Technician) shall review the inmate's health record for medical

OWENS 124

with extreme caution in order to minimize the risk of injury to the inmate. Additional staff may be needed to assist with the safety triangle in the event that the one staff member is insufficient to get the inmate's hands through the food port. Once the inmate's hands, wrists, and forearms are through the port, staff will grasp the inmate's forearms, the tension on the safety triangle shall be released, and the handcuffs removed.

- Prior to using a safety triangle on an inmate confirmed or suspected by health care staff to be pregnant, a physician must be consulted and any potential risks fully discussed.
- The final decision to place the device on the pregnant inmate will rest with the Warden or Chief Deputy Warden (CDW) and the reviewing physician. The consultation and its outcome must be documented for inclusion in the inmate's health record and central file.
- Leather Restraints: Leather restraints are used for four/five point restraint in a Correctional Treatment Center, General Acute Care Hospital, or community hospital. Authorization for application of four/five point restraints shall only be given by health care staff in accordance with California Code of Regulations, Title 22, Section 79801 Clinical Restraint, Treatment Restraint, and Clinical Seclusion, and the Mental Health Program Services Delivery System Program Guide, Chapter 10, Suicide Prevention and Response. Use of restraint equipment at the direction of medical staff shall be fully documented in the inmate's health record.
- Hand Isolation Devices (HID): These devices (e.g., hand mittens, etc.) are used as an additional measure to restrict an inmate's ability to use his/her hands. HIDs may only be purchased from an approved vendor and used at an institution when authorized, in writing, by the Warden or CDW. Inmates in HIDs must have constant and direct visual supervision at all times. In instances where HIDs are used for Contraband Surveillance Watch (CSW), staff must maintain a log (CDCR Form 114A) which reflects usage times and correlating actions (e.g., 1200 hrs. - One HID was removed so the inmate could eat lunch). Prior to placing a HID on an inmate confirmed, or suspected by health care staff to be pregnant, a physician must be consulted and any potential risks fully discussed. The final decision to place the device on the pregnant inmate will rest with the Warden or CDW and the reviewing physician. The consultation and its outcome must be documented for inclusion in the inmate's health care record and central file. Equipment Hygiene - HIDs must be cleaned and sanitized on an ongoing basis (e.g., if soiled after a bowel movement, after termination of the CSW, etc.).

Mechanical restraint equipment shall not be used in any manner described in CCR, Title 15, Section 3268.2(c), Use of Restraints. The use of restraint equipment not identified in this section must be preapproved at the level of Associate Director or higher. As part of the mechanical restraint maintenance process, restraints should be routinely cleaned and sanitized to adhere to an acceptable equipment hygiene standard.

Inmates who have a disability that prevents standard search methods or application of restraint equipment in the prescribed manner shall be afforded reasonable accommodation under the direction of the Response Supervisor. Mechanical restraints shall be applied to ensure effective application while reasonably accommodating the inmate's disability.

### 51020.7    Deadly Force

The CDCR recognizes the sanctity of human life. Therefore, deadly force will only be used when it is reasonably necessary to:

- Defend the employee or other persons from an immediate threat of death or great bodily injury.
- Prevent an escape from custody.

OWENS 122

**Institutional Executive Review Committee (IERC)**
The IERC is a committee of institution staff chaired by the respective Institution Head tasked with reviewing all uses of force and every allegation of excessive or unnecessary force. The IERC is the final institutional level of review.

**Department Executive Review Committee (DERC)**
The DERC is a committee of staff selected by, and including, the Associate Director who oversees the respective institution/facility Mission-based group. The DERC has oversight responsibility and final review authority over the IERC. The DERC shall review every use of deadly force and every serious injury, great bodily injury or death that could have been caused by a staff use of force. The DERC shall also review those incidents referred to the DERC by the IERC Chairperson or otherwise requested by the DERC.

**Deadly Force Investigation Teams (DFIT)**
DFIT is a team of trained department investigators that shall conducts criminal and administrative investigations into every use of deadly force and every death or great bodily injury that could have been caused by a staff use of force, except the lawful discharge of a firearm during weapons qualifications or firearms training, or other legal recreational uses of a firearm. Based on certain local Memoranda of Understanding, criminal investigations may instead be conducted by an outside police department or sheriff's office. Although defined as deadly force DFIT need not investigate the discharge of a warning shot inside an institution/facility if an Investigative Services Unit Sergeant or above, or an uninvolved Correctional Lieutenant, confirms that the discharge of deadly force was a warning shot and that no injuries were caused by the shot. All warning shots shall be reported to the Office of Internal Affairs/DFIT and the Office of the Inspector General (OIG).

**Deadly Force Review Board (DFRB)**
The DFRB conducts a full and complete review of all incidents involving a use of deadly force (except warning shots) and every death or great bodily injury that could have been caused by a staff use of force, regardless of whether the incident occurs in an institutional or community setting.

**Joint Use Committee (JUC)**
The JUC is a committee of field staff from the DAI tasked with reviewing and evaluating recommended revisions to the Division's Use of Force Policy and Procedures.

**Holding Cells**
All holding cells shall be located within buildings or sheltered areas. A holding cell shall not be used as a means of punishment, housing or long-term placement. If clothing is taken from an inmate when they are placed in a holding cell, alternate clothing shall immediately be provided unless security concerns preclude issuance.

## 51020.5     Use of Force Options

Use of Force options do not have to be utilized in any particular sequence, but should be the force option staff reasonably believes is sufficient. Verbal persuasion or orders should be issued prior to resorting to force and are required to be provided before controlled force is used. The unresisted searching or escorting of an inmate and the unresisted application of authorized restraint equipment is not a use of force. Use of force options include but are not limited to:

- Chemical agents
- Hand-held batons
- Physical strength and holds. A choke hold or any other physical restraint which prevents the person from swallowing or breathing shall not be used unless the use of deadly force would be authorized.

OWENS 120

## ARTICLE 2 – USE OF FORCE

*Revised October 30, 2014*

**51020.1     Policy**

It is the policy of the California Department of Corrections and Rehabilitation's (CDCR), Division of Adult Institutions (DAI), to accomplish custodial and correctional functions with minimal reliance on the use of force.  Employees may use reasonable force as required in the performance of their duties, but shall not use unnecessary or excessive force.  Staff may, at any point, determine the situation can be resolved without the use of force and terminate the use of force process.

This policy, in conjunction with related procedures and training, defines staff responsibilities and requirements concerning the use of force.

This policy will assist staff in identifying when and how much force is appropriate under different circumstances, ensure that supervision, monitoring, and evaluation of the use of force is consistent with procedures and training, and ensure the investigation of possible unnecessary or excessive use of force. Staff found culpable of violations of the Use of Force Policy will be subject to disciplinary (preventive, corrective, or adverse action) procedures.

**51020.2     Purpose**

The purpose of this Article is to outline DAI's procedures pertaining to the use of force, as set forth in CCR, Title 15, Section 3268.

**51020.3     Responsibility**

It is the responsibility of all employees to understand and comply with the Use of Force policy, related procedures, ongoing training, and applicable law.

It is the responsibility of each Institution Head:

- To ensure that all employees receive appropriate training annually and understand the Use of Force policy and procedures, including both the application of force and subsequent reporting and documentation requirements.
- To record and track all training and discipline related to the use of force.

**51020.4     Definitions**

The following shall define language usage in this Article:

**Reasonable Force**

Reasonable force is the force that an objective, trained, and competent correctional employee faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order.

**Unnecessary Force**

Unnecessary force is the use of force when none is required or appropriate.

**Excessive Force**

Excessive force is the use of more force than is objectively reasonable to accomplish a lawful purpose.

**Immediate Use of Force**

Immediate use of force is the force used to respond without delay to a situation or circumstance that constitutes an imminent threat to security or the safety of persons. Employees may use immediate force without prior authorization from a higher official.

**OWENS 118**

# EXHIBIT COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE __EASTERN__ DISTRICT OF CALIFORNIA

THEON OWENS.          VS. JOSEPH DEFAZIO, ET AL.

CAES No.: __2:16-CV-02750-JAM-KJN.__

AAA.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR SOMS ICCT 156
SHU TERM ASSESSMENT WORKSHEET/ICC50706 SHU TERM
COMPUTATION.

Hosted by The Institutional Classification Committee ("I.C.C.") staff member
ROSE GUITIEREZ on 12/25/2015 and on 4/6/2015. The exhibits herein show
The 18" Month aggravated SHU term' the Plaintiff endured (compl. at ff. 108)
The exhibits show the substantial deprivation the plaintiff endured as a
result of Defendants conspiring to conceal there beaten upon Plaintiff. The
exhibits support the claims against Defendants-ELDRIDGE & SCHULTZ.

NUMBER OF PAGES TO THIS EXHIBIT: __1-4__ PAGE'S.

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,          VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

AAA·1
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: CDCR SOMS ICCT 156 SHU
TERM ASSESSMENT WORKSHEET.

Hosted by The Institutional Classification Committee (ICC.) staff Member
ROSE GUITIERIZ. on 12/23/2015. at approximately 9:40. The exhibit herein
shows the ICC Members approval  of  Methods used by Defendants-ELDRIDGE:
SCHULTZ in the nuconstitutional disciplinary hearing (compl. at ff. 108) The exhibit
shows the significant hardship that was imposed on the plaintiff (compl. at ff. 108-
109).

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: 1    PAGE'S.



**CALIFORNIA DEPARTMENT of**
**Corrections and Rehabilitation**

# SHU TERM ASSESSMENT WORKSHEET

| | | | |
|---|---|---|---|
| Inmate Name: | OWENS, THEON | | Date: 12/23/2015 |
| CDC#: | V60905 | | Date of Birth: 08/12/1982 |
| Prepared Date: | 04/01/2015 | | Prepared Time: 09:40:10 |
| Facility: | CMF-Facility A [CMF-A] | | |
| Staff: | R. Guitierez | | |
| SHU Term Type: | Determinate | | |
| Status: | Audited and Approved | | As of Date: 10/19/2015 |

**Related Rule Violation**

Log Number: EOP1502058                    Violation Date: 02/18/2015

Specific Offense: Battery/Assault on a non-inmate with physical force insufficient to cause serious injury.

| | | | |
|---|---|---|---|
| Attempt (1/2 term): No | | Conspiracy: No | |
| Offense Term-Lowest: 6 | Expected: 12 | Highest: 18 | |

**Total Determinate SHU Term Assessed**

| | | | |
|---|---|---|---|
| Expected SHU Term | | 12 Months | 0 Days |
| Mitigating Factors Time | - | 0 Months | 0 Days |

☐ The inmate has a minor or no prior disciplinary history.

☐ The inmate has not been involved in prior acts of the same or of a similar nature.

☐ The misconduct was situational and spontaneous as opposed to planned in nature.

☐ The inmate was influenced by others to commit the offense.

☐ The misconduct resulted, in part, from the inmate's fear for safety.

| | | | |
|---|---|---|---|
| Aggravating Factors Time | + | 6 Months | 0 Days |

☑ The inmate's prior disciplinary record includes acts of misconduct of the same or similar nature.

Prior Offense: Threat to a non-inmate

Prior Violation Date: 04/24/2014

☐ The misconduct was planned and executed as opposed to situational or spontaneous.

☐ The misconduct for which a SHU term is being assessed involved more than one offense.

☐ The inmate influenced others to commit serious disciplinary infractions during the time of the offense.

| | | | |
|---|---|---|---|
| Maximum SHU Term | | 18 Months | 0 Days |

**MERD Calculation**

| | | |
|---|---|---|
| Term to be Served CC/CS: Concurrent | | If CS, prior SHU Term: |
| Total Determinate SHU Term Assessed: 18 Months 0 Days | | |
| Date of Admin Seg Confinement/Violation: 02/18/2015 | | |
| Maximum Date of Release from SHU: 08/10/2016 | | |

Minimum SHU Confinement Time to Serve 13 Months 15 Days
(75%):

Date of Admin Seg Confinement/Violation: 02/18/2015

Minimum Eligible Release Date (MERD): 03/28/2016

| Time Forfeited | | | | |
|---|---|---|---|---|
| **Date Forfeited** | **Days Forfeited** | **RVR Log #** | **Issued Date** | **Status** |
| None | | | | |

= Adjusted MERD: 03/28/2016

### Comments

Assessed and imposed per ICC 8/26/15.

 Audited

CDCR SOMS ICCT156 - SHU Term Assessment Worksheet

# EXHIBIT SEPARATION PAGE:

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,            VS. JOSEPH DEFAZIO, ET AL.,

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.

AAA-2
EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: ICC50170B  SHU TERM COMPUTATION.

Hosted by The Institutional Classification Committee ("I.C.C.") staff Member. ROSE GUITIERIEZ, on 10/19/2015, at approximately 9:40. The exhibit herein Shows the Substantial deprivation the plaintiff endured as a result of Defendants DEFAZIO'S conspiring to Conceal as a Job insurance (compl. at ff. 62-?) The exhibit also Shows the 18 Month aggravated SHU term the plaintiff endured without fair Procedural Protection being offered (compl. at ff. 166) The exhibit also Support the ensuring claims against Defendants - SCHULTZ & ELDRIDGE (see compl. at pp. 102-105).

NUMBER OF PAGE'S TO THIS EXHIBIT SEPARATION: _2_ PAGE'S.

Name: OWENS, THEON                                    CDC #: V60905  PID #: 11993700

ICCS070B                  **SHU Term Computation**            Monday June 11, 2018 11:23:16 AM

Prepared Date: 04/01/2015                          Prepared Time: 09:40:10
    Facility: CMF-Facility A [CMF-A]
    Staff: Guitierez, Rose                         STG Nexus: No
SHU Term Type: Determinate
    Status: Audited and Approved                   As of Date: 10/19/2015

▽ **SHU Term Status Change History** (1 - 2 of 2)

┌─ **Related Rule Violation** ─────────────────────────────────────
    Log Number: EOP1502058            Violation Date: 02/18/2015
    Specific Offense: B-3-Battery/Asslt on a non-inmate insufficient of serious injury
    Attempt (1/2 term): No                 Conspiracy: No          PC2933.6 Eligible: No
    Offense Term-Lowest: 6                 Expected: 12                 Highest: 18

┌─ **Total Determinate SHU Term Assessed** ───────────────────────────
Expected SHU Term                                      12    Months    0    Days
Mitigating Factors Time                            -      0  Months         0  Days
    ☒ The inmate has a minor or no prior disciplinary history.
    ☒ The inmate has not been involved in prior acts of the same or of a similar nature.
    ☒ The misconduct was situational and spontaneous as opposed to planned in nature.
    ☒ The inmate was influenced by others to commit the offense.
    ☒ The misconduct resulted, in part, from the inmate's fear for safety.

Aggravating Factors Time                           +      6  Months         0  Days
    ☑ The inmate's prior disciplinary record includes acts of misconduct of the same or similar nature.
    Prior Violation Date: 04/24/2014              Prior Offense: C-2-Threat to a non-inmate
    ☒ The misconduct was planned and executed as opposed to situational or spontaneous.
    ☒ The misconduct for which a SHU term is being assessed involved more than one offense.
    ☒ The inmate influenced others to commit serious disciplinary infractions during the time of the offense.

Maximum SHU Term                                       18    Months    0    Days

┌─ **MERD Calculation** ──────────────────────────────────────────
                              Term to be Served CC/CS: Concurrent
                                  If CS, prior SHU Term:

Total Determinate SHU Term Assessed      18 Months 0 Days
Date of Admin Seg Confinement/Violation  02/18/2015
Maximum Date of Release from SHU         08/10/2016

Minimum SHU Confinement Time to Serve    13 Months 15 Days
(75%)
Date of Admin Seg Confinement/Violation  02/18/2015
Minimum Eligible Release Date (MERD)     03/28/2016

    **Time Forfeited**

| Date | Days | | | |
|------|------|--|--|--|

**OWENS 213** 6/11/2018

| Forfeited | Forfeited | RVR Log # | Violation Date | Status |
|-----------|-----------|-----------|----------------|--------|
| | | No Rows Found | | |

= Adjusted MERD: 03/28/2016

**Comments**

Assessed and imposed per ICC 8/26/15.

**Related Classification Reviews** (1 - 2 of 2)

| CC Request Date/Time | Facility | Committee Type | Review Status | Status Date | Summary Comments |
|---------------------|----------|----------------|---------------|-------------|------------------|
| 12/11/2015 - 10:00:50 AM | California State Prison, Sacramento | Institution Cls. Committee (ASU/SHU/THU/PSU-ICC) | Audited | 01/25/2016 | PRE-MERD REVIEW: RETAIN PSU PENDING MERD 3/28/16; VACATE 9-MO. SHU FOR RVR 10/21/14 IEX, #B14-10-024, W/MERD 5/11/15; VACATE 9-MO. SHU FOR RVR 3/31/15 IEX, #DSH-P-0315-016, W/MERD 10/19/15; A/I 9-MO. AGG. CC SHU FOR RVR 8/14/15, IEX, LOG #DSH-P-0315-016R, W/MERD 10/19/15; A/I 9-MO. AGG. CC SHU FOR RVR 9/28/15 IEX, LOG #BPSU-15-09-042, W/MERD 2/9/16; REFER TO CSR FOR SHU AUDITS; RETAIN ON S/C AND W/A YARD (ABSENTIA) |
| 08/14/2015 - 09:37:13 AM | California State Prison, Sacramento | Institution Cls. Committee (ASU/SHU/THU/PSU-ICC) | Audited | 10/19/2015 | PRE-MERD REVIEW: RETAIN PSU PENDING MERD 3/28/16; AFFIX 'R' SUFFIX; REFER TO CSR FOR SHU AUDITS AND 'R' SUFFIX APPROVAL; RETAIN ON S/C AND W/A YARD; AFFIRM ICC 4/7/15 TO ASSESS SHU TERM FOR RVR 10/21/14; A/I 8-MO. AGG. CC SHU FOR RVR 3/2/14, IEX, LOG #BMH-14-03-001, WITH MERD 8/28/14; A/I 9-MO. AGG. CC SHU FOR RVR 11/20/14, IEX, LOG #CHCF-DSH-14-11-028R, WITH MERD 6/10/15; A/I 18-MO. AGG. CC SHU FOR RVR 2/18/15, BATT. ON P/O, LOG #EOP-15-02-058, WITH MERD 3/28/16; A/I 9-MO. AGG. CC SHU FOR RVR 3/31/15, IEX, LOG #DSH-P-0315-016, WITH MERD 10/19/15 |

**Related Scanned Documents**

| C-File Section Code | Document Type | Sub-Type | Document Date | Status |
|---------------------|---------------|----------|---------------|--------|
| | | No Rows Found | | |

OWENS 214 6/11/2018

# EXHIBIT COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS.    VS. JOSEPH DEFAZIO, ET AL.

CAES NO.: 2:16-CV-02750-JAM-KJN.

BBB.

EXHIBIT.

DESCRIPTION OF THIS EXHIBIT: DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS. SET ONE.

Hosted by Defendants on July 6. 2018. The exhibits herein show Defendants responses to Plaintiff's request for admissions Set one. The exhibit Show that Prison Policy requires that all Staff who has either used or observed force being used submit and write a report. The exhibit Shows that it is Prison Policy that custody staff are not to interfere with prisoner's ordered medical treatment. The exhibit shows that Plaintiff requested witnesses to attend his disciplinary hearing on 5/28/2015. The exhibit shows that it is Prison Policy to document a reason for denying a prisoner's request for witnesses to attend a disciplinary hearing. The exhibit shows that it is Prison Policy to have an inmate sign the form CDCR 115-A, or to document the refusal to sign on the form. The exhibit shows that it is the Supervisor job to gather incident reports from all staff involved in an use of force incident. The exhibit Shows that it is Prison Policy to notify an inmate in advance. any time a change of staff assistance has occurred during the course of the

NUMBER OF PAGE'S TO THIS EXHIBIT: 9 . PAGE'S.

disciplinary Process.

1    XAVIER BECERRA, State Bar No. 118517
     Attorney General of California
2    PHILLIP L. ARTHUR, State Bar No. 238339
     Supervising Deputy Attorney General
3    ANDREA R. SLOAN, State Bar No. 265421
     Deputy Attorney General
4     1300 I Street, Suite 125
      P.O. Box 944255
5     Sacramento, CA 94244-2550
      Telephone: (916) 210-7362
6     Fax: (916) 324-5205
      E-mail: Andrea.Sloan@doj.ca.gov
7    *Attorneys for Defendants Defazio, Bettencourt,*
     *Blessing, Brady, Burke, Drake, Eldridge, Guffee,*
8    *Lebeck, Martincek, Martinez, Matthews, Mercado,*
     *Murillo, Okoroike, Rashev, and Schultz*
9

10                  IN THE UNITED STATES DISTRICT COURT

11                FOR THE EASTERN DISTRICT OF CALIFORNIA

12                          SACRAMENTO DIVISION

13
                                        Case No. 2:16-cv-2750 JAM KJN (PC)
14   **THEON OWENS,**
                                        **DEFENDANTS' RESPONSE TO**
15                         Plaintiff,   **PLAINTIFF'S REQUEST FOR**
                                        **ADMISSIONS, SET ONE**
16          v.

17

18   **JOSEPH DEFAZIO, et al.,**

19                         Defendants.

20

21   **PROPOUNDING PARTY:**        **PLAINTIFF THEON OWENS**

22   **RESPONDING PARTY:**         **DEFENDANTS DEFAZIO, BETTENCOURT,**
                                   **BLESSING, BRADY, BURKE, DRAKE,**
23                                 **ELDRIDGE, GUFFEE, LEBECK, MARTINCEK,**
                                   **MARTINEZ, MATTHEWS, MERCADO,**
24                                 **MURILLO, OKOROIKE, RASHEV, AND**
                                   **SCHULTZ**[1]
25

26   **SET NUMBER:**              **ONE**

27   _____
          [1] Because Plaintiff served one set of Request for Admissions on all Defendants,
28   Defendants' verifications only correspond to the Requests directed at that particular Defendant.
     Defendants cannot verify the responses of other Defendants.

                                         1

1  **REQUEST FOR ADMISSION NO. 8:**

2      "Admit that Defendant-OKOROIKE did not document all of the injuries sustained to the

3  Plaintiff on Feb. 18, 2015."

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

5      Defendants object to this request for admission as it is procedurally defective because it is

6  not directed to any particular Defendant. Federal Rule of Civil Procedure 36(a)(1) does not

7  provide for joint responses by multiple parties. *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on

8  any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to

9  the "answering *party*") (emphasis added).

10      Defendants further object to this request as it assumes facts not in evidence and calls for

11  speculation.

12      Without waiving said objections, Defendant Okoroike responds as follows: Defendant

13  Okoroike admits that she documented all visible injuries and all injuries which Plaintiff informed

14  her of on February 18, 2015. Defendant Okoroike denies that she failed to document any injuries

15  that were visible when she examined Plaintiff on February 18, 2015.

16      The remaining Defendants lack sufficient information to admit or deny this request as they

17  did not perform a medical evaluation of Plaintiff on February 18, 2015.

18  **REQUEST FOR ADMISSION NO. 9:**

19      "Admit that prison policy requires that all staff who has either use or observed force being

20  used are required to subit a write report."

21  **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

22      Defendants object to this request for admission as it is procedurally defective because it is

23  not directed to any particular Defendant. Federal Rule of Civil Procedure 36(a)(1) does not

24  provide for joint responses by multiple parties. *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on

25  any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to

26  the "answering *party*") (emphasis added).

27      Without waiving said objections, Defendants respond as follows: Admit.

28  / / /

6

**REQUEST FOR ADMISSION NO. 12:**

"Admit that Defendant-MARTINCEK's incident report statement was not alleged by any of the other defendants in their report statements."

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Defendants object to this request for admission as it is procedurally defective because it is not directed to any particular Defendant. Federal Rule of Civil Procedure 36(a)(1) does not provide for joint responses by multiple parties. *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to the "answering *party*") (emphasis added).

Defendants further object as this request is unintelligible, and vague and overbroad as to what portion of Defendant Martincek's report is inconsistent with other officers' reports.

Based on the above stated objections, Defendants are unable to admit or deny this request.

**REQUEST FOR ADMISSION NO. 13:**

"Admit that it is the policy of the prison, that custody staff are not to interfere with ordered medical treatment."

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Defendants object to this request for admission as it is procedurally defective because it is not directed to any particular Defendant. Federal Rule of Civil Procedure 36(a)(1) does not provide for joint responses by multiple parties. *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to the "answering *party*") (emphasis added).

Defendants further object to this request as it presents an incomplete hypothetical and assumes facts not in evidence.

Without waiving said objections, Defendants respond as follows: Defendants admit officers are not to interfere with medical treatment so long as that medical treatment does not place staff, the inmate, or other inmates at risk of injury.

/ / /

/ / /

8

1  **REQUEST FOR ADMISSION NO. 14:**

2        "Admit that the Plaintiff requested witnesses to attend the disciplinary hearing."

3  **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

4        Defendants object to this request for admission as it is procedurally defective because it is

5  not directed to any particular Defendant.  Federal Rule of Civil Procedure 36(a)(1) does not

6  provide for joint responses by multiple parties.  *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on

7  any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to

8  the "answering *party*") (emphasis added).

9        Defendants further object to this request as it assumes facts not in evidence, specifically

10  that any alleged requested witnesses had relevant information to provide at any particular

11  disciplinary hearing.  Defendants further object to this request as it is vague as to which

12  disciplinary hearing Plaintiff refers.  Plaintiff received multiple rules violation reports on the date

13  of the incident on February 18, 2015, and surrounding that time frame which resulted in

14  disciplinary hearings.  Therefore, Defendants cannot determine which disciplinary hearing this

15  request refers to.

16        Without waiving the above objections, and assuming Plaintiff is referring to RVR log

17  number EOP-15-02-058 dated February 18, 2015, Defendants Schultz and Eldridge respond as

18  follows: Admit.

19        The remaining Defendants lack sufficient knowledge to admit or deny this request, and on

20  that basis, deny it.

21  **REQUEST FOR ADMISSION NO. 15:**

22        "Admit that the Plaintiff requested documentary evidence to accompany him at the

23  disciplinary hearing."

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

9

2        Defendants object to this request for admission as it is procedurally defective because it is

3 not directed to any particular Defendant. Federal Rule of Civil Procedure 36(a)(1) does not

4 provide for joint responses by multiple parties. *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on

5 any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to

6 the "answering *party*") (emphasis added).

7        Defendants further object to this request as it assumes facts not in evidence, specifically

8 that any alleged requested documents had relevant information to provide at any particular

9 disciplinary hearing. Defendants further object to this request as it is vague as to which

10 disciplinary hearing Plaintiff refers. Plaintiff received multiple rules violation reports on the date

11 of the incident, February 15, 2018, and surrounding that time frame which resulted in disciplinary

12 hearings. Therefore, Defendants cannot determine which disciplinary hearing this request refers

13 to.

14        Without waiving the above objections, and assuming Plaintiff is referring to RVR log

15 number EOP-15-02-058 dated February 18, 2015, Defendants Schultz and Eldridge respond as

16 follows: Deny.

17        The remaining Defendants lack sufficient knowledge to admit or deny this request, and on

18 that basis, deny it.

19 **REQUEST FOR ADMISSION NO. 16:**

20        "Admit that the reason given by Defendant-SCHULTZ for not addressing the Plaintiff's

21 requested witnesses was inadequate."

22 **RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

23        Defendants object to this request for admission as it is procedurally defective because it is

24 not directed to any particular Defendant. Federal Rule of Civil Procedure 36(a)(1) does not

25 provide for joint responses by multiple parties. *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on

26 any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to

27 the "answering *party*") (emphasis added).

28   / / /

10

1    Defendants further object to this request as it assumes facts not in evidence, specifically

2    that any alleged requested witnesses were not addressed a part of any particular disciplinary

3    hearing. Defendants further object to this request as it is vague as to which disciplinary hearing

4    Plaintiff refers. Plaintiff received multiple rules violation reports on the date of the incident,

5    February 18, 2015, and surrounding that time frame which resulted in disciplinary hearings.

6    Therefore, Defendants cannot determine which disciplinary hearing this request refers to.

7    Defendants further object as this request calls for a legal conclusion and is vague as to the term

8    "inadequate." Lastly, Defendants object because this request calls for speculation.

9    Based on the above objections, Defendants are unable to admit or deny this request.

10   **REQUEST FOR ADMISSION NO. 17:**

11   "Admit that it is not the Investigative employee's role to decline to ask questions of

12   witnesses."

13   **RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

14   Defendants object to this request for admission as it is procedurally defective because it is

15   not directed to any particular Defendant. Federal Rule of Civil Procedure 36(a)(1) does not

16   provide for joint responses by multiple parties. *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on

17   any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to

18   the "answering *party*") (emphasis added).

19   Without waiving said objections, Defendants respond as follows: Deny.

20   **REQUEST FOR ADMISSION NO. 18:**

21   "Admit that it is the policy of the prison to document a reason for denying witnesses

22   requested to attend a hearing. And that a failure to document a reason would violate prison

23   policy."

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

11

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

2  Defendants object to this request for admission as it is procedurally defective because it is

3  not directed to any particular Defendant. Federal Rule of Civil Procedure 36(a)(1) does not

4  provide for joint responses by multiple parties. *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on

5  any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to

6  the "answering *party*") (emphasis added).

7  Defendants further object to this request as it is compound. Defendants also object in that

8  this request calls for a legal conclusion.

9  Without waiving said objections, Defendants Schultz and Eldridge respond as follows:

10  Defendants admit it is policy to document the reason for denying a requested witness at a hearing

11  on a rules violation report.

12  The remaining Defendants lack sufficient knowledge to admit or deny this request, and on

13  that basis, deny it.

14  **REQUEST FOR ADMISSION NO. 19:**

15  "Admit that it is prison policy to have an inmate sign the form CDCR 115-A, or to

16  document the refusal to sign on the form."

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

18  Defendants object to this request for admission as it is procedurally defective because it is

19  not directed to any particular Defendant. Federal Rule of Civil Procedure 36(a)(1) does not

20  provide for joint responses by multiple parties. *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on

21  any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to

22  the "answering *party*") (emphasis added).

23  Defendants further object to this request as it is vague and calls for speculation.

24  Without waiving the above objections, Defendants Martincek, Schultz and Eldridge

25  respond as follows: Defendants admit that if an inmate postpones the Rules Violation Report

26  hearing pending the District Attorney referral, or if the inmate waives the assignment of an

27  Investigative Employee, it is policy for the inmate to sign a CDCR form 115-A, or for staff to

28  document the inmate's refusal to do so.

12

1  The remaining Defendants lack sufficient knowledge to admit or deny this request, and on

2  that basis, deny it.

3  **REQUEST FOR ADMISSION NO. 20:**

4  "Admit that it is the supervisor job to gather incident reports from all staff involved in the

5  incident."

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

7  Defendants object to this request for admission as it is procedurally defective because it is

8  not directed to any particular Defendant.  Federal Rule of Civil Procedure 36(a)(1) does not

9  provide for joint responses by multiple parties.  *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on

10  any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to

11  the "answering *party*") (emphasis added).

12  Without waiving said objections, Defendants respond as follows: Admit.

13  **REQUEST FOR ADMISSION NO. 21:**

14  "Admit that it is the policy of the C.D.C.R. to notify an inmate any time a changes of staff

15  assistance has occurred during the disciplinary process."

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

17  Defendants object to this request for admission as it is procedurally defective because it is

18  not directed to any particular Defendant.  Federal Rule of Civil Procedure 36(a)(1) does not

19  provide for joint responses by multiple parties.  *See* Fed.R.Civ.P. 36(a)(1) ("A party may serve on

20  any other *party* a written request to admit") (emphasis added); Fed.R.Civ.P. 36(a) (4) (referring to

21  the "answering *party*") (emphasis added).

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

13

Without waiving said objections, Defendants respond as follows: Admit.

Dated: July 6, 2018

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
PHILLIP L. ARTHUR
Supervising Deputy Attorney General

ANDREA R. SLOAN
Deputy Attorney General
*Attorney for Defendants Defazio,*
*Bettencourt, Blessing, Brady, Burke, Drake,*
*Eldridge, Guffee, Lebeck, Martincek,*
*Martinez, Matthews, Mercado, Murillo,*
*Okoroike, Rashev, and Schultz*

SA2017303176
33427362.docx

14

Theon Owens V-60905
NAME, C.D.C.R. No.:

BTA # 122.
HOUSING.

California Health Care Facility
PRISON NAME.

7707 South Austin Road
ADDRESS.

Stockton, C.A. 95215.
CITY, STATE, ZIP.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,
PLAINTIFF

VS.

JOSEPH DEFAZIO, ET AL.,
DEFENDANTS.

CIVIL ACTION NO.: 2:16-CV-02750-JAM-KJN.
District Judge: JOHN A. MENDEZ.
Magistrate Judge: KENDALL J. NEWMAN.

## PLAINTIFF'S APPENDIXES:

PLAINTIFF'S APPENDIXES, FOR PLAINTIFF'S
BRIEF AND STATEMENT OF UNDISPUTED FACTS,
SUPPORTING A MOTION FOR SUMMARY JUDGMENT.
(PARTIAL)

COVER PAGE.

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS.                    VS.   JOSEPH DEFAZIO, ET AL.,
PLAINTIFF,                            DEFENDANT.

CIVIL ACTION NO: 2:16-CV-02750-JAM-KJN.          DATE: August 7, 2020

# PLAINTIFF'S APPENDIX LIST:

For Plaintiff's Motion For Partial Summary Judgment
Against Defendants- SCHULTZ And ELDRIDGE.

| APPENDIX NUMBER | DESCRIPTION OF APPENDIX. | SPONSORING WITNESS. | DATE. Marked for Identification. | Admitted into Evidence. |
|---|---|---|---|---|
| FFF. | CDCR-804 (Rev. 08/06) Notice of Pending CDCR-115. | Prison officials. | 2/18/2015 | 8/6/2020 |
| GGG. | Case Disposition Notice. | D.A. ANNE MASI. | 7/12/2015. | 8/6/2020 |
| HHH-1 | CDCR-128-B (Rev. 4/14) General Chrono. | Def., C. MARTINCEK. | 2/18/2015. | 8/6/2020 |
| HHH-2 | CDCR-128-B (Rev 4/14) General Chrono. | Def., C. MARTINCEK. | 2/18/2015 | 8/6/2020 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

PERTINENT ATTACHMENT.

1 OF 1

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

A.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: (DCR-7381 (REV. 06/12)
NEUROLOGICAL FLOW SHEET.
Hosted by Psychiatric Technician (P.T.) JACKSON, on 2/18/2015, At 15:14
hours. It shows the P.T.'s evaluation of the Plaintiff after being
beaten by defendant's. the P.T. notes "swollen left eye" and "DizzY". Which
certifies a concussion and it's symptoms were present, but were left
untreated and or undiagnosed. Which supports Plaintiff's claims of
deliberate indifference inside of his complaint. This appendix also shows
that the Plaintiff sustained a swollen left eye from the beating".

NUMBER OF PAGE'S TO THIS APPENDIX: ___1___ PAGE'S.

STATE OF CALIFORNIA
NEUROLOGICAL FLOW SHEET
CDCR 7361 (REV. 08/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**INSTRUCTIONS:**

1. Use appropriate code to describe pupil size, reaction, and motor strength.
2. Place check (✓) in box which best describes level of consciousness.
3. Involuntary movements: indicate if present or absent; if present, describe.
4. Coordination/Balance: indicate if normal/abnormal; if abnormal, describe.

5. Tone: indicate if normal, increased (hypertonic, rigid, spastic), or decreased (hypotonic, flaccid).
6. Sensation: indicate if intact or absent; if absent, describe.
7. Facial Symmetry: indicate if symmetrical/asymmetrical; if asymmetrical, describe.

**PUPIL SIZE (mm)**

1 2 3 4 5 6 7 8

**PUPIL REACTION**

B = BRISK
S = SLUGGISH
N = NONREACTIVE

**MOTOR STRENGTH**

0 = No Movement
1 = Flicker of Movement
2 = Full ROM against gravity only
3 = ROM against resistance overcome by examiner
4 = ROM against resistance equal to examiner

| | | DATE / TIME | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Pupil Size | | | | | | | | L | R | L | R |
| | | Pupil Reaction to Light | | | | | | | | L | R | L | R |
| EYE OPENING | SPONTANEOUS | 4 | | | | | | | | | | | |
| | TO VERBAL STIMULI | 3 | | | | | | | | | | | |
| | TO PAINFUL STIMULI | 2 | 4 | 4 | 4 | 4 | | | | | | | |
| | NO RESPONSE | 1 | | | | | | | | | | | |
| VERBAL RESPONSE | ORIENTED | 5 | | | | | | | | | | | |
| | DISORIENTED | 4 | | | | | | | | | | | |
| | INAPPROPRIATE WORDS | 3 | 5 | 5 | 5 | 5 | | | | | | | |
| | INCOMPREHENSIBLE SOUNDS | 2 | | | | | | | | | | | |
| | NO RESPONSE | 1 | | | | | | | | | | | |
| MOTOR RESPONSES | OBEYS VERBAL COMMAND | 6 | | | | | | | | | | | |
| | LOCALIZES PAIN | 5 | | | | | | | | | | | |
| | WITHDRAWS FROM PAIN | 4 | 6 | 6 | 6 | 6 | | | | | | | |
| | FLEXES (DECORTICATE) | 3 | | | | | | | | | | | |
| | EXTENDS (DECEREBRATE) | 2 | | | | | | | | | | | |
| | NO RESPONSE | 1 | | | | | | | | | | | |
| | GLASGOW COMA SCALE TOTAL | | 15 | 15 | 15 | 15 | | | | | | | |

| | INVOLUNTARY MOVEMENTS | ☐ Absent ☐ Present Describe: | ☑ Absent ☐ Present Describe: | ☑ Absent ☐ Present Describe: | ☑ Absent ☐ Present Describe: | ☐ Absent ☐ Present Describe: | ☐ Absent ☐ Present Describe: |
| | COORDINATION/ BALANCE | ☐ Normal ☐ Abnormal Describe: | ☑ Normal ☐ Abnormal Describe: | ☑ Normal ☐ Abnormal Describe: | ☑ Normal ☐ Abnormal Describe: | ☐ Normal ☐ Abnormal Describe: | ☐ Normal ☐ Abnormal Describe: |
| | FACIAL SYMMETRY | ☐ Symmetrical ☑ Asymmetrical Describe: | ☐ Symmetrical ☑ Asymmetrical Describe: | ☐ Symmetrical ☑ Asymmetrical Describe: | ☐ Symmetrical ☑ Asymmetrical Describe: | ☐ Symmetrical ☐ Asymmetrical Describe: | ☐ Symmetrical ☐ Asymmetrical Describe: |
| MOTOR STRENGTH | UPPER EXTREMITIES | unable | unable | unable | unable | L R | L R |
| | LOWER EXTREMITIES | Assess | Assess | Assess | Assess | L R | L R |

ORTHOSTATIC BP/HR BASELINE
DATE/TIME/INITIALS:

BP: ___ HR: ___
BP: 159/91 HR: 91
BP: ___ HR: ___

| | | | | | | |
|---|---|---|---|---|---|---|
| TEMP | Mable | Mable | 98.8 | unable | | |
| HEART RATE | O | O | 9 | O | | |
| RESP/SPO2 | Assess | Assess | 18/100 | Assess | | |
| BP | | | 150/90 | | | |
| PAIN | | | | | | |
| INITIAL/TITLE | | | | | | |

| Printed Name/Title | Signature/Initials | | Printed Name/Title | | Signature/Initials |
|---|---|---|---|---|---|
| Jackson R.T. | | | | | |

Name (Last, First, MI), CDCR Number, DOB
Owens, T
V60905
8/12/87

NEUROLOGICAL FLOW SHEET
CDCR 7361 (REV. 08/12)

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,  VS.  JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750 -JAM-KJN.

> B.
>
> APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230F INTERDISCI-
PLINARY PROGRESS NOTES - GENERAL PSYCHIATRY. MHCB ReFERRAL INFOR-
MATION FOR PENDING ARRIVAL.

Hosted by Medical Doctor (M.D.), A. SOARES, on 2/21/2015. It shows some
of the injuries the Plaintiff suffered. The M.D. notes "Bruises and
swelling around the eyes, broken teeth in altercation recently.""

NUMBER OF PAGE'S TO THIS APPENDIX: ___1___ PAGE'S.

State of Califo[ ]

Department of Corrections and [ ]habilitation

Interdisciplinary Progress Notes- General Psychiatry: **MHCB Referral Information for Pending Arrival**

CDCR MH-7230F

Referral Date/Time: 2/21/15

| **Identifying Information:** |
|---|
| CDCR#/Last/First/DOB/Age: 32 yo m |
| Language Interpreter: |
| LOC: EOP |
| TB Code: |
| TABE Score: |
| Disability Code: |

| **Referral Source:** |
|---|
| 1' Contact/Phone Contact Information: |
| Institution: CSP Sac  Dr. Fielder  916 985 8610 |

| **Medications:** |
|---|
| Psych Rx: Depakote 100mg qhs, Li 450mg bid, Zyprexa 10mg bid prn |
| PC2602?: |
| **Medical Rx:** |
| Allergies per Maxor: Haldol, Thiothexene, Fluphenazine, PCN |

| **Data/Reason for Referral:** |
|---|
| Brief Reason for Admit: Altercation w cops, 'danger to self'. His judgement impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to to staff  CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictabl. Not DTO at this time. Med compliant |
| Main reason for admit: 'Unpredictable' |
| Reason for Referral: DTS |
| Precipitating Events: |

| **Relevant History:** |
|---|
| Prior Psych Medications/ Response: |
| Mental Health Hx: |
| Illicit Drug Use: not sure |
| Suicide History: 'Gestures usually' |
| Assault History: see above |
| Medical History: |
| ADA Needs: no |
| Dietary Needs: no |
| Cultural Issues: |
| Comments: |

| **A-Assessment –Current Dx:** |
|---|
| Axis I: Bipolar NOS |
| Axis II: ASPD |
| Axis III: Bruises and swelling around the eyes, broken teeth in altercation recently |
| Axis IV: Incaceratiom |
| Axis V: |

| **P-Plan** |
|---|
| Admission Status: |
| Tentative House: |
| Tentative Arrival: |
| Psychiatrist: |

Psychiatrist's Name: A. Soares, MD     Signature:

(Clinician taking referral)

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Inmate's Name (Last, First, MI), CDC Number, DOB: |
|---|---|---|---|
| ☐ TABE Score <4.0 | ☐ Additional Time | ☐ P/I Asked questions | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I Summed information | Owens, T |
| ☐ DPS ☐ DNH | ☐ Louder · ☐ Slower | Please Check one: | |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached | V60905 |
| ☐ Not Applicable | ☐ Other* | | 8/12/82 |
| 4. Comments: Tabe: | | | |

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-kJN.

C.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230G INTERDISCI
PLINARY PROGRESS NOTES- ROUTIAL INITIAL PSYCHIATRY EVALUATION.
Hosted by Medical Doctor (M.D.) W. BILL. WHITE, on sunday, 2/22/2015.
At 13:11-15:01 hours. It shows the M.D.'s evaluation of the Plaintiff.
The M.D. notes "Multiple injuries noted on his face & other Parts of his
body." on the M.D.'S Review of Medical History section he notes "new
Facial, eye & tooth injury." on the M.D.'S Mental Status EXamination
Section he notes "face & eyes appear swollen & bruised; 2 teeth on right
side (one upper, one lower) missing."

NUMBER OF PAGE'S TO THIS APPENDIX: 1-3 ____ PAGE'S.

## Identifying Information

| Date: | Sunday, 2015/02/22 | Time: 13:11-15:01 | | Location: CMF CTC-B IDTT Room |
|---|---|---|---|---|

| Level of Care: | ☐ CCCMS | ☐ EOP | Custody: ☐ GP | ☐ RC | ☐ ASU |
|---|---|---|---|---|---|
| | ☐ OHU | ☒ MHCB | Housing : ☒ CTC | ☐ SNY | ☐ SHU |

| Location of Interview: ☒ Face-to-Face ☐ MOD or RN | Was the setting confidential? ☒ Yes ☐ No |
|---|---|

## Comments

**Psych Rx:** Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization.
Lithium Carbonate ER 450 mg po BID for mood stabilization.
Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours.
**Medical Rx:** Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bacrim DS to 2/24. Naproxen PRN.
**Allergies per Maxor:** Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins, Haldol (haloperidol).

## Identifying Information

Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3).
Custody Level: Maximum. Placement Score: 52. Custody Suffix: **S**.
Received CDCR: 12/09/2004. **EPRD: 12/24/2021.** Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

## Chief Complaint

From Referral 7230: **Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgement impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictabl. Not DTO at this time. Med compliant. **Main reason for admit:** 'Unpredictable.' **Reason for Referral:** DTS.
Per IP 02/22/15: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

## History of Present Illness

Rx Response: "I like my medications. I don't like the Depakote because my mother just died of diabetes." After I explained relative risk, IP reported he'd like to continue it."

Most Recent Shift Reports 2w, 3w, 1w: 2015/02/21-22: **2w:** Pending. **3w:** Verified with Dr. Soares. There is no need for 1:1 watch at this time, only q15min suicide precaution for now as written on the admitting order. Arrived about 1700 from CSPSAC for DTS & DTO. Multiple injuries noted on his face & other parts of his body. 7219 done. He was ambulatory, alert, oriented x3 & coherent. He said he is going to be suicidal if he goes back to CSPSAC. He admitted homicidal feelings for custody officers at CSPSAC as well. He denied AH/VH. EKG DONE. Urine specimen not available on admission. Per SGT ther AOD wants IP seen by B1 doctor to be medically cleared. He was escorted to B1 clinic via wheelchair about 2015. He came back about 2130 with another medical clearance. Reordered antibiotic for 3 days more. Given Naproxen for HA 6/10. **1w:** Resting on bed/ mattress. Calm & quiet. No complaints made.

## Psychiatric History (Include history of suicide attempts, psychiatric hospitalizations, & medication trials/failures.)

### Suicide History:

IP reported he's been cutting on himself since age 14, last cut February 9th, 2015. IP reported only time he really wanted to die was when he got long sentence & wanted to jump off tier at the courthouse.

### Psychiatric Hospitalizations & Outpatient Treatment

"I was at Napa State Hospital from age 17 to 21, & hospitals in Vallejo, John George Forensic, Alta Bates Hospital Forensics, & more."

### Past Psychiatric Medication Trials &/or Failures:

Last PC2602 withdrawn & terminated 11/28/12. Psych Rx Hx (Per IP recall): **Antipsychotics: SGAs:** Abilify, Clozaril, Geodon, Risperdal, Risperdal Consta, Seroquel, Zyprexa. **FGAs:** Haldol, Haldol Dec, Mellaril, Prolixin, Stelazine, Thorazine, Trilafon. **Mood Stabilizers:** Lithium, Depakote, Trileptal. **Antidepressants:** Cymbalta, Effexor ("made me hypomanic, hypersexual, with Zoloft"), Celexa, Paxil, Prozac, Zoloft, Wellbutrin, Remeron, trazodone. **ADHD Rx:** Ritalin, possibly others. **Anxiolytics:** Vistaril, Ativan, Buspar, Klonopin, Valium.
S/E Rx/Misc: Artane, Benadryl, Cogentin, Inderal (?), amantadine (?).

| Psychiatrist's Name: W. White, M.D. | Signature: |
|---|---|

| 1. **Disability Code:** | 2. **Accommodation:** | 3. **Effective Communication:** | Inmate's Name (Last, First, MI), CDC Number, DOB: |
|---|---|---|---|
| ☐ TABE Score <4.0 | ☐ Additional Time | ☒ P/I Asked questions | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I Summed information | **Owens**, Theon |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please Check one:** | |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not reached* ☒ Reached | **V60905** |
| ☒ Not Applicable | ☐ Other* | | |
| 4. Comments: Tabe: 4.5 (01/30/15). NCF. | | | DOB: 08/12/1982 **CMF MHCB B-02** |

## Psychiatric Symptom History

**First reported A/H:** "I hear voices, but just when I get manic; I hear my name; I hear comments."
**Significant psychological traumas:** "I didn't have the best life, but when I was 8 years old I was molested by a 14-year old female cousin, & we had sex until I was 14, but I didn't see it as abuse."
**Mania:** IP endorses past bouts of mania, & attributes past bout of hypersexuality to mania. IP reported small ups & downs & had a brief "mixed episode" a month ago, but notes he's not had a severe bout of mania since about 5 months ago.

## Substance Abuse History

"I haven't smoked marijuana in 8 years, but I have used marijuana, ecstasy, PCP in prison. On the streets I used mostly marijuana, & some ecstasy & alcohol."

## Family Psychiatric History

"My auntie that just passed away went to Napa State Hospital. My grandmother's sister has 7 relatives on that side who've been to Napa, including two sons that have been at Napa for 15 years."

## Legal History. (Include history of assaultive behavior.)

IP reports 1st arrested as a child, even had police called when he was 9 years old for running away, & almost went to juvenile hall for kicking the policeman's walkie talkie. Attributed to ADHD.
"In 2012 I caught my first IEX for being hypersexual, & I couldn't stop masturbating, & got 20 IEX's, so they sent me to DSH to work on it. I haven't had none since got off group & got taken off Effexor & Zoloft."

## Review of Medical History. (Include allergies, past hospitalizations, and current medications.)

Shoulder issues, new facial, eyes, & tooth injury.

## Biographical (social) History

**Childhood:** "I had the best childhood I could possibly have had."
**Education:** "I went all the way up to 8th grade, but just took Tabe, & came up from old 2.6 to 4.8, & got 23 of 30 questions done, & got only 3 wrong. My math test now is 10th grade; I was studying a lot."
**Relationships/Children:** IP reported never married, no children, but says one he considers his own.
**Vocation:** "I was arrested as a teen, never had a real job, but worked as a salesman at Marine World in summer, & at a store loading up boxes, but never had a 40-hour job."

## Mental Status Examination (Include safety issues.)

**Appearance:** 6' 2" Overweight black male with dreaded hair, fair eye contact, dressed in smock. Face & eyes appear swollen & bruised; 2 teeth on right side (one upper, one lower) missing.
**Speech:** Normal flow, expressive, speaking about his distress & recent situation. However, quite talkative, but not clearly hypomanic.
**Level of Cooperation:** Good.
**Mood:** "I was already feeling bad, down, about my mother & my grandmother dying, & nobody sending me money, & then the officers did this, so I got even more upset."
**Affect:** IP was overtly anxious, distressed, with slight depressive flavor.
**S/I:** IP reported he had thoughts, but would be safe here.
**H/I:** IP reported he had thoughts of wanting to gas CO's, but only at CSP-Sac.
**Psychosis:** IP reports only has auditory hallucinations when manic; none recently.
**Cognitive:** Oriented x 3, approximate date. Able to name president, but not CA governor.
Able to spell WORLD backwards & forwards? "WORLD-DLROW."
**Insight/Judgment:** If you found an addressed, stamped envelope on the street, what would you do? "Put it in the mailbox."
**Movement:** Normal range.

## AIMS Scale (If applicable)

No obvious evidence of TD seen; intraoral observation included. Tardive Dyskinesia was discussed.

## Review of Systems (for medical issues)

No other issues identified.

## Current Psychotropic Medications & Side Effects (If any) (Review medication consent forms for signature & note heat risk medications & consents.)

7450/7454 reviewed verbally. Verbal consent.

| Psychiatrist's Name: W. White, M.D. | Signature: *W White* |
|---|---|

**Interdisciplinary Progress Note**
**Routine Initial Psychiatry Evaluation**
**CDCR MH-7230G (Rev. 01/12)**
Confidential Inmate-Patient Information

Inmate's Name (Last, First, MI), CDC Number, DOB:

**Owens**, Theon

**V60905**

DOB: 08/12/1982   **CMF MHCB B-02**

Confidential Saved 2015-09-23T14:44:03Z

**I. Comments (cont.)**

**Laboratory/Medical History Review** (within last 12 months)

EKG: None found in chart for this admission as of 02/22/15.
Labs: See Dr. Wieland's H&P dated today.

**Assessment** (include diagnosis, rationale and any collateral information)

IP with hx of mood instability suggestive of bipolar disorder, significant axis II cluster B issues, here in MHCB due to recent events at CSP-Sac in which he was physically injured; relatively stable on current Rx.

**DSM IV Diagnosis with Code**

| | | |
|---|---|---|
| **Axis I** | Psychoses | |
| | Mood Disorders | 296.80 Bipolar Disorder NOS. |
| | Substance Abuse | 304.80 Polysubstance Dependence (cannabis, PCP, alcohol, |
| | Other Diagnoses | |
| **Axis II** | Personality D/O 1 | 301.7 Antisocial Personality Disorder. |
| | Personality D/O 2 | 301.83 Borderline Personality Dxo. |
| | Intellectual/Other | |
| **Axis III** | Medical | Low back pain.  History of leucopenia, granulocytopenia.  Recent facial & eye trauma, broken teeth. |
| **Axis IV** | Stressors | Incarceration.  Recent altercation with custody.  Mother's death November 2014. |
| **Axis V** | GAF | 30. |

**Diagnoses Rationale** (include all appropriate DSM criteria and any supportive/collateral information)

As above.

**Plan** (Note medication refusals & completion of CDCR 7225.  Include rationale for admission, any medication changes, & note heat risk medication prescriptions.)

As risk appears to be primarily at Sac, advance privileges as follows: Continue full issue, reading materials, extra blanket, eyeglasses, yard, shaving privileges, eyeglasses in cell, crayon, pen filler. Continue Rx as above for indications listed.

Psychiatrist's Name: W. White, M.D.          Signature:

*W. White*

---

**Interdisciplinary Progress Note**
**Routine Initial Psychiatry Evaluation**
**CDCR MH-7230G (Rev. 01/12)**
Confidential Inmate-Patient Information

Inmate's Name (Last, First, MI), CDC Number, DOB:

# **Owens**, Theon

# **V60905**

DOB: 08/12/1982    **CMF MHCB B-02**

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

D.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7230-A MH (Rev. 12/08)
INTERDISCIPLINARY PROGRESS NOTES.
"Hosted by Psychiatric Techician (P.T.), A.NEPTUNE. on 2/22/2015, At 1315
hours. It Shows the P.T.'S notes on the Plaintiff. The P.T. notes "Seen by
Medical doctor for history and Physical. Noted visible Multiple facial
injuries, Noted Swollen Periorbital areas with several abrasions." Which
Shows some of the injuries Sustained to the Plaintiff, after being
beaten by defendants."

NUMBER OF PAGE'S TO THIS APPENDIX: ___1___ PAGE'S.

| DATE | TIME | COMMENTS |
|------|------|----------|
| 2/22/15 | 1315 | S: "I want to kill myself" |
| | | O: I/P up and about. Eating and sleeping well. Reported (+) suicidal thoughts but |
| | | denies any auditory and visual hallucination. Complaints of 6/10 headache. |
| | | Seen by medical doctor for history and physical. Noted visible multiple |
| | | facial injuries. Noted swollen periorbital areas with several abrasions. |
| | | Resting in bed most of the time. No disruptive behavior. |
| | | He refused Citalopram 20mg, no reason given. |
| | | A: Risk for suicide related to bipolar disorder AEB I/P recent verbalization of SI/HI |
| | | and stated that if ever he will be sent back CSP SAC he will be kill himself and |
| | | the custody responsible for his injuries. |
| | | P: Administer prescribed meds, identify factors that triggers stress, |
| | | Encourage to attend IDTT, monitor for changes of behavior |
| | | E: Provide a safe and calm environment. Encourage to talk about feeling and |
| | | concerns to staff. Teach relaxation techniques. |
| | | Will continue to monitor.--------------A. NEPTUNE, PT |
| | | |

**Disability Code:**
☒ TABE score ≤ 4.0
☐ DPH ☐ -DPV ☐ -LD
☐ DPS ☐ -DNH
☐ DNS ☐ -DDP
☐ Not Applicable
Comments: T.A.B.E. : 2.6

**Accommodation:**
☐ Additional time
☐ Equipment ☐ SLI
☐ Louder ☐ Slower
☒ Basic ☐ Transcribe
☐ Other*

**Effective Communication:**
☒ P/I asked questions
☒ P/I summed information
Please check one:
☐ Not reached* ☒ Reached
*See chrono/notes

| INSTITUTION | HOUSING UNIT | CDC NUMBER, NAME (LAST, FIRST, M) AND DATE OF BIRTH |
|-------------|--------------|-----------------------------------------------------|
| MHCB-CMF | B-2 | |

**INTERDISCIPLINARY PROGRESS NOTES**
CDCR 7230-A MH (Rev. 12/08)
Confidential Client/Patient Information

**OWENS, THEON**
**V60905**
**8/12/82**

STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS AND REHABILITATION

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750 - JAM-KJN.

E.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7447(Rev. 07/13)
SUICIDE RISK EVALUATION.
"Hosted by Medica Doctor (M.D.), W. BILL WHITE, on 2/22/2015, At 15:00 hours.
It shows the M.D.'s evaluation of the Plaintiff. The M.D. notes "Face & eyes
appear swollen & bruised, 2 teeth on right side (one upper, one lower)
missing. IP reports less stressed here than at CSP-SAC following recent
events there." Which shows some of the injuries that the Plaintiff
sustained from defendants beating up on him. It also shows that
the Plaintiff felt safer being at a different prison."

NUMBER OF PAGES TO THIS APPENDIX: __1__ PAGE'S.

State of California

**Suicide Risk Evaluation**

CDCR MH-7447 (Rev. 07/13)

Department of Corrections and Rehabilitation

Form: Page 2 of 2

Tracking Sheet: Page 3, Instructions: Page 4

## PART II: MENTAL STATUS EXAMINATION, ESTIMATE OF RISK, AND SAFETY/RISK REDUCTION PLAN

Mental Status Examination and Details of previous attempt, motivation, or other pertinent information

From 02/22/15 IPE:

Appearance: 6' 2" Overweight black male with dreaded hair, fair eye contact, dressed in smock. Face & eyes appear swollen & bruised; 2 teeth on right side (one upper, one lower) missing.

Speech: Normal flow, expressive, speaking about his distress & recent situation. However, quite talkative, but not clearly hypomanic.

Level of Cooperation: Good.

Mood: "I was already feeling bad, down, about my mother & my grandmother dying, & nobody sending me money, & then the officers did this, so I got even more upset."

Affect: IP was overtly anxious, distressed, with slight depressive flavor.

S/I: IP reported he had thoughts, but would be safe here.

H/I: IP reported he had thoughts of wanting to gas CO's, but only at CSP-Sac.

Psychosis: IP reports only has auditory hallucinations when manic; none recently.

Cognitive: Oriented x 3, approximate date. Able to name president, but not CA governor.

Able to spell WORLD backwards & forwards? "WORLD-DLROW."

Insight/Judgment: If you found an addressed, stamped envelope on the street, what would you do? "Put it in the mailbox."

## ESTIMATE OF RISK

**CHRONIC RISK** ☐ Low   ☒ Moderate   ☐ High      **ACUTE RISK** ☒ Low      ☐ Moderate      ☐ High

Justification of Risk Level (Required):

IP's history, losses, impulsivity, coping challenges increase his longer term risk, but appears low in this setting, as IP reports less stressed here than at CSP-Sac following recent events there.

Safety/Risk Reduction Plan (Target acute/modifiable risk factors from Part II):

Continue Rx, support, opportunities to vent and be listened to, as he appeared to benefit from this decompression here already.

| Clinician's Name/Title (Print):   W. White, M.D. | Signature: W. White | Date: 2015/02/22 | Time:  15:00 |
|---|---|---|---|

**Suicide Risk Evaluation**

**CDCR MH-7447 (Rev. 10/13)**

Confidential Inmate-Patient Information

CDCR #:   V60905

Last Name: OWENS

First Name: Theon                                    MI:

DOB:        08/12/1982

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS. VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

F.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230F INTERDISCIPLIN
ARY PROGRESS NOTES-GENERAL PSYCHIATRY.
Hosted by medical Doctor (M.D.) W. BILL WHITE. on Monday, 02.23.2015. At
09:24-10:03 hours. It shows the M.D.'s evaluation notes on the
Plaintiff. The M.D. noted "seen by PCP Dr Wieland for HTP. Noted
Multiple injuries in face/ swollen..."they beat me - The officers'. Asking
for dental appointment for his lost 2 teeth from the incident.... ①1620 given
naproxen for C/o ha 4/10. Please call dental for appointment. IP reported still
very upset about incident at SAC. face ? eyes appear swollen ? bruised, 2 teeth
on tight side (one upper, one lower) missing.... Recent Facial ? eye trauma. broken
teeth." It also shows the Plaintiff's mental injury. that he suffered from being
beaten by defendants. the M.D. notes the Plaintiff's mood as "I am stressedout.
depressed."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

State of California

Department of Corrections and Rehabilitation

Interdisciplinary Progress Notes- General Psychiatry

CDCR MH-7230F

| Identifying Information | Date: Monday, 2015/02/23 | Time: 09:24-10:03 | | Location: CMF CTC-B-Side |
|---|---|---|---|---|
| | Level of Care: ☐ CCCMS ☐ EOP ☐ OHU ☒ MHCB | | Custody Housing: ☐ GP ☐ RC ☐ ASU ☒ CTC ☐ SNY ☐ SHU | |

**Identifying Factors**: Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3).

Custody Level: Maximum. Placement Score: 532. Custody Suffix: S.

Received CDCR: 12/09/2004. **EPRD: 12/24/2021.** Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission**: From Referral 7230: **Brief Reason for Admit**: Altercation w cops, 'danger to self'. His judgement impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictabl. Not DTO at this time. Med compliant. **Main reason for admit**: 'Unpredictable.' **Reason for Referral**: DTS.
Per IP 02/22/15: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

## II. Comments / Data:

**Psych Rx**: Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization.
Lithium Carbonate ER 450 mg po BID for mood stabilization.
Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours.

**Medical Rx**: Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bacrim DS to 2/24. Naproxen PRN.

**Allergies per Maxor**: Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins, Haldol (haloperidol).

**EKG**: 02/21/15: Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.

**Labs**: See Dr. Wieland's H&P for recent labs from CSP-Sac.

**Most Recent Shift Reports** 2w, 3w, 1w: 2015/02/22-23: **2w**: Seen by PCP Dr Wieland for H&P. Noted multiple injuries in face/swollen. Needs utox= "they beat me—the officers—i want to beat them" Reported (+) suicidal thoughts stated "i want to hurt myself. Denies ah & vh. Calm & quiet. Complaints of 6/10 ha. **3w**: Chat with his neighbors after dinner. Bright affect. Did not have complaints. Asking for dental appointment for his lost 2 teeth from the incident. @1620 given naproxen for c/o ha 4/10. Please call dental for appointment. 7362 filled up for the patient if needed. Urine specimen collected. **1w**: Resting on bed. Calm & quiet. No complaints made.

| | |
|---|---|
| **S** Sub-jective | **General Dispo**: IP reported still very upset about incident at Sac, but seems a bit better. **Activities**: IP has books, etc. However, reports spending a lot of time ruminating about SAC incident. **Sleep**: "OK." **Appetite**: "OK." **Rx Response**: Medication makes me a little level, but I still be getting manic at times. I don't take the Zyprexa PRN, because it's too much. I don't like taking the Depakote much." |

| | |
|---|---|
| **O** Ob-jec-tive: | Seen for psychiatry contact ● Seen for separate IDTT with Dr. Brogdon, CC1 Moran, RN Ferrer.● IDTT Room ● Confidential. |
| | **Presentation**: 6' 2" Overweight black male with dreaded hair, good eye contact, dressed in jumpsuit. Face & eyes appear swollen & bruised; 2 teeth on right side (one upper, one lower) missing. **Speech**: Talkative, irritable, mild pressure, but not manic. **Mood**: "I'm stressed out, depressed." **Affect**: IP was overtly anxious, distressed, with slight depressive flavor at times, irritable at others. **S/I**: "I feel like hurting myself, but I'll let you know if it's worse." IP reported he was recently cutting himself at SAC in protest to Dr. Gardner moving to Ad-Seg, & need to change to another clinician, which he said he didn't want. SAC suggests clinician change protest is major reason for recent 1:1 watch, & related behavior. **H/I**: "I feel like hurting the people who did this to me." **Psychosis**: "I just hear voices when I get mad." **Cognitive**: Appears intact, oriented. **Movement/AIMS**: Normal range. No overt evidence of Tardive Dyskinesia seen. |

| | |
|---|---|
| **A** | **Dx** Axis I: 296.80 Bipolar Disorder NOS. 304.80 Polysubstance Dependence (cannabis, PCP, Alcohol). Axis II: 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. Axis III: Low back pain. History of leucopenia, granulocytopenia. Recent facial & eye trauma, broken teeth. Axis IV: Incarceration. Recent altercation with custody. Mother's death November 2014; grandmother's death December 2014. Axis V: GAF: 30. |
| | **Assessment** IP with hx of mood instability suggestive of bipolar disorder, significant axis II cluster B issues, here in MHCB due to recent events at CSP-Sac in which he was physically injured; relatively stable on current Rx. |

| **P**-Plan | As risk appears to be primarily at Sac, continue privileges as follows: full issue, reading materials, extra blanket, eyeglasses, yard, shaving privileges, eyeglasses in cell, crayon, pen filler. Continue Rx as above for indications listed. |
|---|---|

| **E**-Education | Allowing time to develop appropriate restraint. Depakote risks/benefits discussed in light of impulse reduction need. |
|---|---|

Psychiatrist's Name: W. B. White, M.D. Signature _W. B. Whitam_

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Inmate's Name (Last, First, MI), CDC Number, DOB: |
|---|---|---|---|
| ☐ TABE Score <4.0 ☐ DPH ☐ DPV ☐ LD ☐ DPS ☐ DNH ☐ DNS ☐ DDP ☒ Not Applicable | ☐ Additional Time ☐ Equipment ☐ SLI ☐ Louder ☐ Slower ☒ Basic ☐ Transcribe ☐ Other* | ☒ P/I Asked questions ☒ P/I Summed information **Please Check one:** ☐ Not reached* ☒ Reached | **Owens**, Theon |
| 4. Comments: **Tabe**: 4.5 (01/30/2015). NCF. | | | **V60905** |
| | | | DOB: 08/12/1982    **CMF MHCB B-02** |

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-0275 0-JAM-KJN.

G.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 237-F (REV. 08/10) DENTAL PAIN PROFILE.

"Hosted by the Plaintiff THEON OWENS And supervising Dentist. C.F. V. HU, D.D.S., on 02/23/2015. At 10:20 A.M., It shows a questioning Profile answering sheet. Whereon the Plaintiff answered that he was having Pain in his mouth on his gum area. From broken teeth. description given. "tender. and sore." The Plaintiff notes that he has had the Pain "since the 18 of Feb. 2015." and that the Pain level from one to ten. was a '6'. which is noted as 'Bad'. The Plaintiff notes that the Pain does impact his daily ability to function. in that "It impacts the way I eat and talk.""

NUMBER OF PAGES TO THIS APPENDIX: 1 _____ PAGES.

STATE OF CALIFORNIA
**DENTAL PAIN PROFILE**
CDCR 237-F (REV. 08/10)

# DENTAL

DEPARTMENT OF CORRECTIONS AND REHABILITATION
*Page 1 of 2*

1. Check all the following words that best describe your pain.

☐ aching ☐ burning ☐ cramping ☐ crushing ☐ dull

☐ pounding ☐ sharp ☐ shooting ☒ sore ☐ stabbing

☒ tender ☐ tingling ☐ throbbing ☐ other: _____

2. Using the picture on the far right as an example, indicate the location of your pain in the boxes to the right.

☐ Upper Right (UR)  ☒ Upper Left (UL)

☐ Lower Right (LR)  ☒ Lower Left (LL)

UR | UL

LR | LL

3. Does the pain radiate or spread?  ☐ Yes  ☒ No

If yes, where? _____

4. How long have you had this pain? _Since the 2/18-15_

5. Circle the number under the face below that best indicates your present level of pain:

SORENESS   GETTING   GOGS VLOUS   GETTING SI   EARUNDEKATED AREA

| 0 None | 1 - 2 Little | 3 - 4 More | 5 - ⑥ Bad | 7 - 8 Very Bad | 9 - 10 Unbearable |

6. Have you had treatment for this pain in the past?  ☐ Yes  ☒ No

If YES, describe: _____

7. Is there anything that relieves or lessens the pain?  ☐ Yes  ☒ No

If YES, describe: _____

8. Is there anything that makes the pain worse?  ☐ Yes  ☒ No _ESTHETIC_

If YES, describe: _____

9. What impact does the pain have on your daily functioning? _it impacts the way i eat and talk_

Owens, Theon
Print Inmate Name (Last, First; Middle Initial)

CDC Number: V b 0 5 0 5
Date (mm/dd/yy): 0 2 2 3 1 5

Theon Owen
Inmate Signature

V. Hu, D.D.S.
Supervising Dentist, CF
Healthcare Provider (Print Name or Use Stamp)

Healthcare Provider Signature

Confidential Saved 2015-05-26T16:49:59Z

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

H.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR-7230 INTERDISCIPLIN ARY PROGRESS NOTES.

Hosted by an unidentified Registered Nurse (R.N.) JANE DOE, on 2/23/2015. At 1300 hours. It shows the R.N.'S notes on the Plaintiff. The R.N. notes "Face is still swollen, and he is depressed" which shows the facial injury the Plaintiff sustained, It also show the mental injury "depression" that the Plaintiff suffered after being beaten by defendants"

NUMBER OF PAGES TO THIS APPENDIX: ___1___ PAGE'S.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INTERDISCIPLINARY PROGRESS NOTES**
CDCR 7230 (REV. 02/13)

Page 1 of 1

| DATE mm/dd/yy | TIME hh:mm AM/PM | |
|---|---|---|
| 2/23/15 | 1300 | S - "I'm okay" |
| | | O - received pt. resting in bed, alert and responding appropriately to questions asked. Face is still swollen. IP claims he ate a little bit for breakfast. Seen in IPTT today. IP has appt - E dental dro today for follow up. IP claims he is still depressed but not suicidal. |
| | | A - risk for suicide related to bipolar disorder as evidenced by IP recent verbalization of S/H I and stated that if he will be sent back to CSP he will kill himself. |
| | | P - Monitor pt. every 15 minutes for safety - Maintain a calm, quiet and safe environment - monitor any change in behavior document and report to m.d. · Administer medications as ordered |
| | | E - Encourage pt. to verbalize needs feelings and thoughts - Encourage to use positive coping skills - Emphasize compliance with medications ─ RN ___ m |

| Institution | Housing Unit |
|---|---|
| CMF | B-2 |

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | |
|---|---|---|---|
| ☑ TABE score ≤ 4.0 | ☑ Additional time | ☑ P/I asked questions | CDCR#: V60905 |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ Set | ☐ P/I summed information | Last Name: OWENS |
| ☐ DPS ☐ DNH | ☐ Louder ☑ Slower | Please check one: | First Name: THEON      MI: |
| ☐ DNS ☐ DDP | ☑ Basic ☐ Transcribe | ☐ Not reached ☑ Reached | DOB: 8/17/82 |
| ☐ Not Applicable | ☐ Other | *See chrono/notes | |
| 4. Comments: | | | |

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS. vs. JOSEPH DEFAZIO. ET AL

CAES NO. 2:16-CV-02750 - JAM-kJN.

```
┌─────────────┐
│             │
│     I.      │
│             │
│ APPENDIX.   │
└─────────────┘
```

DESCRIPTION OF THIS APPENDIX: CDCR 7388 (Rev. 06106)
MENTAL HEALTH TREATMENT PLAN.
"Hosted by Medical Doctor (M.D.) W. BILL WHITE. And Psychologist
(PSYC) LATOYA BROGDON. on 02/23/2015. It Shows their noted
evaluation of the Plaintiff on the day noted. They noted in Parts "
Eyes bruised and teeth missing from recent altercation. He was
agitated at times, Primarily when discussing the incident that
occurred at CSP-SAC (he reports he was cuffed and beaten by officers)
He describes being depressed and stressed about what happened to him."
Which shows the injuries the Plaintiff suffed to his Face and the
Mental and emotional injuries he suffered as well."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

# MENTAL HEALTH TREATMENT PLAN

| ☒ Initial | ☐ Update | ☐ Bi-Weekly MHCB Review | ☐ Quarterly Review | ☐ Annual Review |
|---|---|---|---|---|

*(double click boxes to check throughout document)*

| I. General Information | Current Level of Care: ☐ NONE ☐ CCCMS | TODAY'S DATE: |
|---|---|---|
| **Treatment Setting: MHCBF** | ☐ EOP ☒ MHCB ☐ OTHER | 02/23/2015 |

| Arrival Date This Treatment Setting: **02/21/2015** | Current Housing: ☐ RC ☐ GP ☒ CTC | NEXT UPDATE |
|---|---|---|
| From: **CSP-SAC** | ☐ ASU ☐ PSU ☐ SHU ☐ OTHER | 03/02/2015 |
| Committing Offense: **Assault w/Semi auto Firearm on PO/Fireman** | | |

| Custody Level: I/ II/ III/ IV/ AdSeg/ SHU | | EPRD: **12/24/2021** | | | |
|---|---|---|---|---|---|
| Date Reviewed: | Initials: | Date Reviewed: | Initials: | Date Reviewed: | Initials: |

## II. CLINICAL SUMMARY

**Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant.
**Main reason for admit:** 'Unpredictable'  **Reason for Referral:** DTS

**Per IP 02/22/15 during IPE:** "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, and officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there." IP reported he's been cutting on himself since age 14, last cut February 9th, 2015. IP reported only time he really wanted to die was when he got long sentence & wanted to jump off tier at the courthouse. "I was at Napa State Hospital from age 17 to 21, & hospitals in Vallejo, John George Forensic, Alta Bates Hospital Forensics, & more."

During today's IDT, IP wearing white jumpsuit. ADLs appeared intact. Eyes bruised and teeth missing from recent altercation. IP appeared cooperative. He was agitated at times, primarily when discussing the incident that occurred at CSP-SAC (he reports he was cuffed and beaten by officers). He describes being depressed and stressed about what happened to him. Affect was mood congruent. IP reports he was on suicidal watch while at CSP-SAC for cutting because he was having issues related to his mental health clinician relocating to another program. Mental status intact and IP oriented x 4. Speech fluent and spontaneous. Thought processes logical, linear and goal oriented. Thought content not bizarre at this time. IP was not noted to be responding to internal stimuli. He reports no current auditory hallucinations, although he reports hearing voices when he is manic. He reports a history of 115's for aggression, making threats, and hypersexual behavior (though he hasn't had any recently). IP reports feeling suicidal, but with no concrete plan. He is unable to contract or give his word that he will not engage in suicidal or self-injurious behaviors, but agrees that he will let the psychiatrist know if he begins to have these feelings. He also reports homicidal ideations directed towards "those who did this to me." No specific plan was discussed. At this time, will continue MHCB treatment protocol (monitoring for safety, medication management, 1:1 daily clinical contact, recreation and yard as appropriate).

## III. PROBLEM LIST

| Number | Problem | Intervention/Clinician | Goal | Progress/Date |
|---|---|---|---|---|
| 1 2 3 | SI/SIB HI Mgmt of bipolar d/o | Medication 1:1 psychotherapy | Reduce suicidal ideations and self-injurious behaviors. Maintain mood stability and continue to treat his bipolar symptoms. | Ongoing-02/23/2015 |

## IV. PSYCHOTROPIC MEDICATION

| Number | Problem/Target | Medication | Goal | Progress/Date |
|---|---|---|---|---|

| | Name (Last, First, MI), CDCR#, DOB |
|---|---|
| **MENTAL HEALTH TREATMENT PLAN** CDCR 7388 (Rev. 06/06) Confidential Client/Patient Information | **Owens, Theon** **V60905** **08/12/1982** |

Page 1 of 4

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750 - JAM-KJN.

J.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7362 (Rev. 03/04) HEALTH CARE SERVICES REQUEST FORM.
"Hosted by the Plaintiff THEON OWENS. On 2/23/2015. It Shows that the Plaintiff Put in a request slip to have a dental exam, because he was beaten up, by correctional officer at CSP-SAC, and was seriously injured resulting in two teeth being knocked completely out and two swollen eyes, including many other injuries. The Plaintiff requested that CDCR. replace both missing teeth with Permanent dental implants (Not Partials)"

NUMBER OF PAGE'S TO THIS APPENDIX: 1 PAGE'S.

**URGENT**

**DENTAL**

2006742

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

## HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|
| A fee of $5.00 may be charged to your trust account for each health care visit. |
| If you believe this is an urgent/emergent health care need, contact the correctional officer on duty. |

REQUEST FOR:    MEDICAL ☐    MENTAL HEALTH ☐    DENTAL ☑    MEDICATION REFILL ☐

NAME **OWENS  Theon**
CDC NUMBER **V-60905**
HOUSING **6 - 02   MHCB**

PATIENT SIGNATURE **Theon owen**
DATE **2-23-15**

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had
The Problem) I need a dental exam, I had two off my teeth knocked out by the clos of CSP-SAC
PSU II 3-block, They punched and kicked me in the face over 30 time and swolen both of my eyes up,
and hole face. Please have a dentist do the exam. Iam also requesting that CDCR replace my two missing
teeth with permanent dental implants (Not Partials).

*NOTE:  IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON
BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

| PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT |
|---|
| ☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.) |

| PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE |
|---|

Date / Time Received:
Date / Time Reviewed by RN:
Received by:
Reviewed by:

S:    Pain Scale:   1   2   3   4   5   6   7   8   9   10

Last seen 2/23/15 -Unscheduled

Has appt for filling on 3/3/15

**RECEIVED BY CMF DENTAL**

**FEB 2 5 2015**

O:    T:    P:    R:    BP:    WEIGHT:

A:
P:
☐ See Nursing Encounter Form

E:

| APPOINTMENT<br>SCHEDULED AS: | EMERGENCY<br>(IMMEDIATELY) ☐ | URGENT<br>(WITHIN 24 HOURS) ☐ | ROUTINE<br>(WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | V. Hu, D.D.S.<br>Supervising Dentist, CF | NAME OF INSTITUTION   CMF | |

PRINT / STAMP NAME   **V. Hu, D.D.S.**
**Supervising Dentist, CF**
SIGNATURE / TITLE
DATE/TIME COMPLETED
2-23-15  1500

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)
**O. GYAAMI, D.D.S.**

Confidential   Printed 2018-09-26 09:07:00

# APPENDIX COVER PAGE:

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

k.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: MED MATCH™ DRUG MONITORING REPORT.

"Hosted by Laboratory Director/Medical Doctor (M.D.) BASEL KASHLAN. on 02/24/2015. At 15:50 hours. It shows that the Plaintiff was not under the influence of any Drugs", that May cause increase in strength to be able to allegedly Pull off defendants Comic book strip. account of the Plaintiff beating up four trained Prison guards while handcuffed behind his back. It also shows that the Plaintiff would not have been able to fight and or resist to the extent alleged by the defendants and or be able to get off the ground and do a complete 360 degree turn with four officer's on him. all of which who were in Physically good condition and one of who which was overly Muscular. while at the same time the Plaintiff being cuffed behind the back"

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

 Quest
Diagnostics



**Report Status: Final**

**OWENS, THEON**

| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **OWENS, THEON**<br><br>DOB: 08/12/1982　**AGE: 32**<br>Gender:　M<br>Phone:　NG<br>Patient ID: V60905 | Specimen:　EN544279P<br>Requisition: 0068039<br><br>Collected:　02/22/2015 / 15:00 PST<br>Received:　02/24/2015 / 04:27 PST<br>Reported:　02/24/2015 / 15:50 PST | Client #: 36006063　EMAIL000<br>SOARES, ANA I<br>CALIF MED FACILITY VACAVILLE<br>1600 CALIFORNIA STREET<br>VACAVILLE, CA 95696 |

| Room:　MHCB B2 |
|---|

## medMATCH ™ Drug Monitoring Report

| Test Ordered | Result | Cutoff | medMATCH ™ | Lab |
|---|---|---|---|---|
| PAIN MANAGEMENT PROFILE 1 W/ CONFIRMATION, URINE | | | | SLI |
| Amphetamines | Negative | 500 ng/mL | | |
| Barbiturates | Negative | 300 ng/mL | | |
| Benzodiazepines | Negative | 100 ng/mL | | |
| Marijuana Metabolite | Negative | 20 ng/mL | | |
| Cocaine Metabolite | Negative | 150 ng/mL | | |
| Methadone Metabolite | Negative | 100 ng/mL | | |
| Opiates | Negative | 100 ng/mL | | |
| Oxycodone | Negative | 100 ng/mL | | |
| Phencyclidine | Negative | 25 ng/mL | See Note 1 | |

| Specimen Validity Testing | Test Ordered | Result | Reference Range |
|---|---|---|---|
| | Creatinine | 89.4 | >= 20.0 mg/dL |
| | pH | 7.7 | 4.5-9.0 |
| | Oxidant | Negative | < 200 mcg/mL |

Note 1

　　MedMATCH comments are:
　　- present when drug test results may be the result of
　　　metabolism of one or more drugs or when results are
　　　inconsistent with prescribed medication(s) listed.
　　- may be blank when drug results are consistent with
　　　prescribed medication(s) listed.

**PERFORMING SITE:**
SLI　QUEST DIAGNOSTICS NICHOLS VALENCIA, 27027 TOURNEY ROAD, VALENCIA, CA 91355-5386 Laboratory Director: BASEL KASHLAN,MD,FCAP, CLIA: 05D0550302

$k \, \cap \cap \cap \cap \cap$
$2/26/15'$

© 2003 Quest Diagnostics Incorporated. All rights reserved. SC2K - 149700.

CLIENT SERVICES: 866.697.8378　　　**SPECIMEN: EN544279P**　　　　PAGE 1 OF 1
Printed by Care360 AutoReceive on 02/24/15 at 04:00pm.
Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

L.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7230 (REV. 02/13) INTERDIS-CIPLINARY PROGRESS NOTES.
"Hosted by Registered Nurse (R.N.) URIARTE. on 02/25/2015. At 10:50 A.M., It shows the notes of the R.N. on the Plaintiff. Whereon the R.N. noted "IIP angry affect, with two loss tooth state he claims, that was cause by the custody who assaulted him". It also shows that the Plaintiff loss two teeth and that he was mentally effected by the defendants conduct of beating him while he was cuffed behind his back."

NUMBER OF PAGE'S TO THIS APPENDIX: __1__ PAGE'S.

STATE OF CALIFORNIA
**INTERDISCIPLINARY PROGRESS NOTES**
CDCR 7230 (REV. 02/13)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| DATE mm/dd/yy | TIME hh:mm AM/PM | |
|---|---|---|
| 02/25/15 | 10:50AM | S : "" Denies suicidal and homicidal ideation. Admits voices a little bit. |
| | | O:I/P on bed writing. Calm and quiet. I/P angry affect, with two loss tooth state he claims, |
| | | that was cause by the custody who assaulted him. Complains of pain to this writer and |
| | | medication nurse state that he says that he has no pain, PRN available as needed. No |
| | | disruptive behavior. No self injurious behavior noted. |
| | | A: Risk for Violence to directed self and others R/T Bipolar D/O AEB I/P Owens, Theon |
| | | verbalized anger towards the officer in Wasco. |
| | | P: Continue to monitor I/P for safety every 15 minutes. Maintain a calm and therapeutic |
| | | environment. I/P made aware that staff is here to help him when he need it.  Educate I/P |
| | | the importance of medication and treatment therapy. |
| | | E: Advised I/P to alert staff if he needs anything or in distress .I/P nods and agrees. |
| | | ----RN Uriarte |

| Institution | Housing Unit |
|---|---|
| CMF-MHCBF | B-2 |

| 1. Disability Code:  ☑ TABE score ≤ 4.0  ☐ DPH ☐ DPV ☐ LD  ☐ DPS ☐ DNH  ☐ DNS ☐ DDP  ☐ Not Applicable | 2. Accommodation:  ☑ Additional time  ☐ Equipment ☐ SLI  ☐ Louder  ☑ Basic  ☑ Other* ☐ Slower ☐ Transcribe | 3. Effective Communication:  ☑ PA asked questions  ☐ PA summed information  Please check one:  ☐ Not reached* ☑ Reached  *See chrono/notes | CDCR# :  V60905  Last Name: Owens  First Name: Theon  DOB:  08/12/1982 | MI |

4. Comments:  TABE 2-6

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-kJN.

M.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230F INTERDISCI-
PLINARY PROGRESS NOTES - GENERAL PSYCHIATRY.
Hosted by Medcal Doctor (M.D.), W. BILL WHITE, on Monday 03|02|2015.
At 09:40 - 10:25 hours. It Shows the M.D.'S evaluation notes of the
Plaintiff. Whereon the M.D. notes "Face & eyelid swelling & left eye redness
appear nearly completely resolved". Which Shows that facial injuries
were still visually on the Plaintiff 13 days later. The M.D. also noted
that the Plaintiff complained about "vision in his left eye". Which Shows
that the Plaintiff was having trouble seeing correctly, after being Punched
in his eye with clenched Fist's Multiple times by defendants."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

State of California                                         Department of Corrections and Rehabilitation

Interdisciplinary Progress Notes- General Psychiatry

CDCR MH-7230F

| Identifying | Date: | Monday, 2015/03/02 | Time: | 09:40-10:25 | | Location: CMF CTC-B-Side |
|---|---|---|---|---|---|---|
| Information | Level of Care: ☐ CCCMS ☐ EOP ☐ OHU ☒ MHCB | | | Custody Housing: ☐ GP ☐ RC ☐ ASU ☒ CTC ☐ SNY ☐ SHU | | |

**Identifying Factors:** Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3). Current Level of Care: Maximum. Placement Score: 532. Custody Suffix: S. Received CDCR: 12/09/2004. **EPRD: 12/24/2021.** Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission:** From Referral 7230: **Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant. **Main reason for admit:** 'Unpredictable.' **Reason for Referral:** DTS. Per IP 02/22/15: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

## II. Comments / Data:

**Psych Rx:** Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours.
Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization. ● Lithium Carbonate ER 450 mg po BID for mood stabilization.
Stelazine (trifluoperazine) 2 mg po Q4H PRN agitation/psychosis, NTE 2x in 24 hours. Added 03/02/15.

**Medical Rx:** Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bactrim DS to 2/24. Naproxen PRN.

**Allergies per Maxor:** Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins, Haldol (haloperidol).

**EKG:** 02/21/15 Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.

**Labs:** 02/26/15 Lipid Panel: WNL; cholesterol 185; HDL 49. CMP: WNL. CBC/Diff: WBC: 3.3 (L); RBC: 5.86 (h); MCH 26.2 (L); ANC: 1327 (L); AMC: 162 (L). FT4: 1.2. TSH: 1.44. HbA1C: 5.5. Lithium: 0.7. Valproic Acid: 87.6. RPR: NR.
02/22/15: UDS: negative. See also Dr. Wieland's H&P for recent labs from CSP-Sac.

**Most Recent Shift Reports** 2w, 3w, 1w: 2015/03/01-02: **2w:** IP was lying down on his bed most of the time during this shift without complaints. **3w:** Talking to his peer early on this shift. About 1600 he partially boarded up because he said he is getting only one soy milk from custody. He reasoned out that he got two when SGT Ortiz was here. Custody was notified. He took his his dinner tray & was compliant with medications. He later asked for 602 Appeal Forms. **1w:** IP was up & talking with the Sgt discussing / complaining about custody in other shift regarding messing up with his tray. IP was on call lights @ 0130Hrs – he wanted the staff to endorse to 2nd watch regarding his dietary issues regarding receiving only 1 soy milk/meal instead of 2. He requested to discuss the matter with his doctor to resolve the issue. IP reported SI with no plans.

| S | **General Dispo:** IP complained about his dietary input, vision in his left eye, lower back pain, & asked CC1 to accept a form & a piece of legal mail. He also noted he wanted to |
|---|---|
| Sub-jective | come out more to work on his issues, but did refuse an offered out of cell session yesterday. **Activities:** IP reported writing voluminously for 602 & form 22. **Sleep:** "I slept from about 12 to 4 this morning; I often need just 4 hours of sleep." **Appetite:** "Good." IP complained about soymilk portions for his Kosher diet. **Rx Response:** "I think I'm starting to go up, might need a medication adjustment." IP spoke about strong diabetes history in family, desire to avoid Zyprexa, & past benefit from Stelazine as adjunct mood stabilizer. |

| O | **Seen for psychiatry contact ● IDTT Room ● Confidential.** Also IDTT with Dr. Brogdon, Dr. Heldt, RN Kaur, CC1 Guitierez, RT Moore. |
|---|---|
| Ob-jec-tive: | **Presentation:** 6' 2" Overweight black male with dreaded hair, good eye contact, dressed in jumpsuit. Face & eyelid swelling & left eye redness appear nearly completely resolved. **Speech:** Talkative but better contained today, taking turns with team members to resolve. **Mood:** "I'm feeling a little out of it, a little high, natural high. I don't feel happy, but I don't feel bad either. I'm thinking about my Mom, haven't had a chance to mourn. My sister hasn't sent me an obituary, since doesn't want me to go off." **Affect:** IP presented as fairly neutral today, without overt mania, depression or anxiety. **S/I:** "I feel like hurting myself, because it helps me cope, but not killing myself, just to make the tension go away. **H/I:** "I feel like hurting people that hurt me, not to kill them, but to knock out of couple of teeth like they did me. He mentioned (best guess as to spelling) CO DeFazio, Sgt. Blessing, CO Lebeck, CO Martinez, CO Guthrie, & CO Morello. "I don't know everybody, because my eye were swollen shut. I'd have to ask around on the tier to see who else was there." Do you intend to harm them if you get the chance? "What would you do? I just wrote that 22-form to express my concerns. Should you really protect these officers if they beat the crap out of me? Missing these two teeth is going to be a problem for me. I don't want them to think I'm a pushover or a chump. A lot of them wished they weren't involved. Others just want to get away with it. They're not remorseful; just don't want to get caught. They asked not to have their names in the report, that they didn't do anything, but they did." **Psychosis:** "I only hear voices when I get mad." **Cognitive:** Appears intact, oriented. **Movement/AIMS:** Normal range. No overt evidence of Tardive Dyskinesia seen.Intraoral observations included. TD risks briefly discussed with addition of Stelazine. |

| A | Dx | **Axis I:** 296.80 Bipolar Disorder NOS. 304.80 Poiysubstance Dependence (cannabis, PCP, Alcohol). **Axis II:** 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. **Axis III:** Low back pain. History of leucopenia, granulocytopenia. Recent facial & eye trauma, broken teeth. **Axis IV:** Incarceration. Recent altercation with custody. Mother's death November 2014; grandmother's death December 2014. **Axis V:** GAF: 30. |
|---|---|---|
| | As-sess | IP with hx of mood instability suggestive of bipolar disorder, significant axis II cluster B issues, here in MHCB due to recent events at CSP-Sac in which he was physically injured; relatively stable on current Rx. Ready for discharge to EOP. |

| P-Plan | Continue Rx as above for indications listed, but add Stelazine PRN as above as requested by IP. Li/VPA levels (above) are in acceptable range. Continue privileges as follows: full issue, reading materials, extra blanket, eyeglasses, yard, shaving privileges, eyeglasses in cell, crayon, pen filler, jumpsuit. DCS in shared files. |
|---|---|

| E-Education | Discussed: Coping strategies. Discharge planning. Rx risks/options/benefits, including DM, TD, etc. |
|---|---|

Psychiatrist's Name: W. B. White, M.D. Signature: [signature]

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Inmate's Name (Last, First, MI), CDC Number, DOB: |
|---|---|---|---|
| ☐ TABE Score <4.0 | ☐ Additional Time | ☒ P/I Asked questions | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I Summed information | **Owens**, Theon |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please Check one:** | |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not reached* ☒ Reached | **V60905** |
| ☒ **Not Applicable** | ☐ Other* | | |
| 4. Comments: **Tabe:** 4.5 (01/30/2015). NCF. | | | DOB: 08/12/1982   **CMF MHCB B-02** |

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,   VS.   JOSEPH DEFAZIO, ET AL

N.

CAES NO. 2:16-CV-02750 - JAM-KJN.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: NURSING DISCHARGE SUMMARY.
"hosted by Registered Nurse (R.N.) KAUR, on 3/2/2015, at 1100 hours, It Shows the R.N.'S Summary notes. Whereon She notes 'Incident happen at CSP-SAC."

NUMBER OF PAGES TO THIS APPENDIX: 1 _____ PAGE'S.

**Admission Date** 2/21/15 **From** SAC

**Discharge Date** 3/2/15 ~~after to~~ **Time** 1100

**Physician** DR white **Phone** 707-449-8___ ___-___ 1,532

**Transferred To** EOP

**Reason for Referral to MHCB** Suicidal Ideation

**PSYCHIATRIC DIAGNOSES** Bipolar, ASPD

Borderline Personality

**MEDICAL DIAGNOSES**

Allergies Fluphenazine, lactose, Thiothixene, PANO

**Alerts** Haloperidol

☐ Fall Risk ☐ Suicide Risk ☐ Seizure Precautions

**MEDICATIONS** ☒ See Attached MAR

**Last Dose PRN Medications (name & time)** med the con and VHR

☐ KEYHEA: N/A

☐ Education / Evaluation Needed

## CLINICAL INFORMATION

**Orientation** ☒Person ☒Place ☒Time

☒Occasionally Confused ☐ Always Confused

☒ Auditory Hallucinations ☐ Visual Hallucinations

☐ Other

**Speech** ☐WNL ☐ Impaired ☐ Unable to Speak

Primary Language

**Hearing** ☒ WNL ☐ Impaired ☐ Deaf

**Sight** ☒WNL ☐ Impaired ☐ Blind

**Diet** KOSHER DIET

**Special Considerations** DTO

**Ambulation** ☒Independent ☐ Needs Help ☐ Unable

Supports Needed

**Appliances**

☐ Glasses ☐ Dentures: Upper / Lower

☐ Hearing Aid: R / L

Other N/A

**Dressings**

**Pressure Ulcers or Wounds**

N/A

**SOCIAL INFORMATION:** relevant behavioral issues, conflicts, medication compliance issues, etc.

**Behavior** ☒Cooperative ☐ Disruptive ☐ Withdrawn

**Triggers** Incident happen at CSP-SAC

**FOLLOW UP / SPECIAL INSTRUCTIONS:** treatments, clinical appointments, etc.

Dental as needed, 602n Process, Submitted by H/P.

**COMMENTS:** See discharge notes — AV/OCR

Successful Interventions

Attempted Interventions

Patient Goal 3/2/15

**Medical Staff Signature is Required**

# Nursing Discharge Summary

Mental Health Crisis Bed Facility

California Medical Facility

Name, CDC #, DOB

OWENS, THEON

V60905

DOB — 8/12/82

Revised on 6-18-2012

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO.: 2:16-CV-02750-JAM-KJN.

| O. |
| --- |
| APPENDIX. |

DESCRIPTION OF THIS APPENDIX: CDCR 7388 MENTAL HEALTH TREATMENT PLAN.
Hosted by Medical Doctor (M.D.) W. BILL WHITE And Psychologist (PSYC) LATOYA BROGDON. on 03/02/2015. It Shows their noted evaluation of the Plaintiff on the date noted. Whereon they noted "Agitation/Anger-he is Quite upset about his interaction With the officers at CSP-SAC". Which Shows the emotional effects that the Plaintiff went through. The two noted the Plaintiff's mood as "depressed". Which Shows the mental effects caused by the defendants actions. The two noted the Plaintiff's Appetite as "Appetite is Poor due to [difficulty With hard foods]". Which Shows that the injuries inflicted to the Plaintiff's teeth caused difficulties Performing daily activities Such as eating and chewing hard foods."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

| V. CURRENT RISK FACTORS/BEHAVIORAL ALERTS: | ☒ Suicidal | ☐ Self Injurious | ☐ Assaultive | ☐ Keyhea |
|---|---|---|---|---|
| See Form: SRE          Dated:  03/02/2015 | | For Detailed Description | | |

Summary:
Chronic risk is Moderate given presence of historic and demographic risk factors (family history of suicide, history of suicide attempts, history of depressive disorder, poor impulse control, male gender, history of violence, history of substance abuse, first prison term and sex offender status).  Acute risk is Low. Although acute risk factors have been present within the past 3 months (suicidal ideations, depressive symptoms, anxiety or panic, agitation or anger, mood disturbance, recent trauma,  recent losses, hopelessness, violent behavior, safety concerns,  single cell placement, negative staff interactions, and recent 115 disciplinary action). Risk is lowered given setting and fact that IP reports feeling safe here. He also denies suicidal ideations, plans, or intent at this time. Other protective factors are present (family support, exercises, positive coping skills (though he may not be inclined to use this skill re: officers at SAC), insight into problems, and motivated in psych treatment. Warning signs present: Agitation/Anger-he is quite upset about his interaction with the officers at CSP-SAC and would like to assault them if the opportunity presents.

| **VI. RECOMMENDED HOUSING:** | ☐ Single Cell | ☐ Double Cell | ☒ No Recommendation | | | |
|---|---|---|---|---|---|---|
| **VII. TRANSFER/DISCHARGE TO:** ☐ Non-MHSDS ☐ CCCMS ☐ EOP ☐ MHCB ☒ APP ☐ ICF ☐ DTP ☐ Parole | | | | | | |

D/C to EOP LOC Rescinded.  Referral to APP initiated at this time.

**VIII. Mental Status Examination**

A. Appearance: ADLs appear fair, well-nourished

B. Behavior/Cooperation: Cooperative

C. Orientation: Oriented x 4

D. Speech: Normal, fluent, and spontaneous

E. Affect: Wide-ranging

F. Mood: depressed

G. Sleep/ Appetite: Appetite is poor due to difficulty with hard foods; Slept well with prn

H. Cognition:

    Fund of Information:      Average

    Intellectual Functioning: Low Average-Avg (TABE =2.6; reported as 4.5 in SOMs)

    Concentration:            Adequate

    Attention:                Adequate

    Memory:                   Adequate

I. Thought Processes:      Logical, Linear, Goal Oriented

J. Perception:

    Hallucinations            ☒ None

K. Thought Content:        Not bizarre at this time

    Delusions                 ☒ None

    Ideas of Reference        ☒ None

    Obsessions                ☒ None

    Magical Thinking          ☒ None

**MENTAL HEALTH TREATMENT PLAN**
**CDCR 7388 (Rev. 06/06)**
Confidential Client/Patient Information

Page 3 of 5

Name (Last, First, MI), CDCR#, DOB
**Owens, Theon**
**V60905**
**08/12/1982**

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-kJN.

P.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MENTAL HEALTH CRISIS
BED DISCHARGE SUMMARY.
"Hosted by Medical Doctor (M.D.), W. BILL WHITE. on 03/02/2015. It
Shows the M.D.'S evaluation notes on the Plaintiff. Whereon the M.D.
noted "Recent facial & eye trauma, and broken teeth..." Which shows
some of the injuries that the Plaintiff suffered on 2/18/2015. The M.D.
noted " His bilateral eyelid swelling & left eye redness resolved over
the course of ten days here." Which shows approximately how long the
Plaintiffs injuries existed."

NUMBER OF PAGES TO THIS APPENDIX: __1__ PAGE'S.

# MENTAL HEALTH CRISIS BED DISCHARGE SUMMARY

| Admitting Date:   02/21/2015 from CSP Sac PSU | Discharge Date: 2015/03/02 to EOP. |
|---|---|

**Identifying Factors:** Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3).
Custody Level: Maximum.   Placement Score: 532. Custody Suffix: **S**.
Received CDCR: 12/09/2004. **EPRD: 12/24/2021.** Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission:** From Referral 7230: Brief Reason for Admit: Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant. **Main reason for admit:** 'Unpredictable.' **Reason for Referral:** DTS.
Per IP 02/22/15: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

| **Discharge Diagnosis With ICD Codes** | **Axis I:** 296.80 Bipolar Disorder NOS. ● 304.80 Polysubstance Dependence (cannabis, PCP, Alcohol). |
|---|---|
| | **Axis II:** 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. |
| | **Axis III:** Low back pain. History of leucopenia, granulocytopenia. Recent facial & eye trauma, broken teeth. |
| | **Axis IV:** Incarceration. Recent altercation with custody. Mother's death November 2014; grandmother's death December 2014. |
| | **Axis V:** GAF: 40. |

**Hospital Course/Response to Treatment:** He was provided Counseling, IDTT & Medication Management. Early on he spent a lot of time & energy venting about reported recent events at CSP-Sac including takedown where he was reportedly injured. He calmed somewhat over the coming week, but still reported he wanted CO's involved in the takedown to have to suffer, e.g. with disfiguring broken teeth of their own, but denied any plans or thoughts of killing anyone. Once he'd prepared paperwork (602, form-22), he appeared to calm further, though was still lobbying to go to an Ad-Seg Hub rather than return to CSP-Sac PSU program, since he presumed there might be an ongoing investigation. He reported thoughts of returning to his historic practice of SIB for relief, but denied any actual suicidal ideation. As he improved, he shifted back to practice of complaining about what appeared to be more minor things, e.g. when & how many soymilks he received as a part of his kosher diet. In discharge IDTT we explained that we could not address custody issues such as specifically what institution he'd go to at D/C. but that we felt that EOP was still his appropriate level of care, & IP was not in disagreement.
**Labs & Medical:** IP was seen for admission physical & Axis III medical issues above were addressed. He attended dental clinic once. His bilateral eyelid swelling & left eye redness resolved over the course of 10 days here, but he reported some perceived different in light perception between his two eyes at day 10, & so was referred to medical. He also complained of back pain, & that naproxen & ibuprofen were not adequate, but since not acute will likely be deferred to PCP at his receiving institution post-discharge.
**Medical Rx:** Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bactrim DS to 2/24. Naproxen PRN.
**Allergies per Maxor:** Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins, Haldol (haloperidol).
**EKG:** 02/21/15: Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.
**Labs:** 02/26/15: Lipid Panel: WNL; cholesterol 185; HDL 49. CMP: WNL. CBC/Diff: WBC: 3.3 (L); RBC: 5.86 (h); MCH 26.2 (L); ANC: 1327 (L); AMC: 162 (L). FT4: 1.2. TSH: 1.24. HgbA1C: 5.5. Lithium: 0.7. Valproic Acid: 87.6. RPR: NR.
02/22/15: UDS: negative. See also Dr. Wieland's H&P for recent labs from CSP-Sac.
**Psych Medications & Response:** IP complained about Depakote periodically throughout his stay, but also reported feeling "a little high" at end of stay, so options for more consistent mood stabilization were discussed. We felt that his personality disorder issues were likely a major contributor to this phenomenon, but also that two mood stabilizers were likely justified to contribute to the possibility of maximum control of himself. Since no longer on PC2602/Keyhea, he said he was unwilling to take Zyprexa, in part due to large number of family members who have diabetes or have died from complications of diabetes, but reported past positive response to Stelazine as a PRN, so this was restarted. See acceptable Li & VPA levels above.
**Discharge Plan:** D/C to EOP LOC. Continue Rx as below for indications listed. 5-day follow-up.

| **Psych Meds:** | Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization.
Lithium Carbonate ER 450 mg po BID for mood stabilization.
Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours.
Stelazine (trifluoperazine) 2 mg po Q4H PRN agitation/psychosis, NTE 2x in 24 hours. |
|---|---|

| Clinician: W. B. White, M.D. Clinician's Signature: | *W.B. White signature* | |
|---|---|---|
| Institution: CMF, Vacaville | | Date: 2015/03/02 |

This is not a stand-alone discharge summary. Please also see IPE/7386, 7388, & 7230's included in discharge package.

| 1. Disability Code: | 2. Accommodation | 3. Effective Communication: | Inmate's Name (Last, First, MI), CDC Number, DOB |
|---|---|---|---|
| ☐ TABE Score <4.0x | ☐ Additional Time | ☑ P/I Asked questions | **Owens**, Theon |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment SLI | ☑ P/I Summed information | |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please Check one: | **V60905** |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☑ Reached | |
| ☑ Not Applicable ☐ Other* | | | |
| 4. Comments: **Tabe:** 4.5 (01/30/2015). NCF. | | | DOB: 08/12/1982   **CMF MHCB B-02** |

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-kJN.

> Q.
>
> APPENDIX.

DESCRIPTION OF THIS APPENDIX: DOCTOR NOTES.

"Hosted by **JOHN WIELAND**, Medical Doctor (M.D.), on 3|5|2015, at 10:10 A.M., It Shows the M.D.'s Medical evaluation of the Plaintiff."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

**3/5/15 10:10   Medical Note**

Hx – 32 y/o black male admitted to CB from SAC on 2/21/15 for S.I.

Being seen for f/u on labs and abrasions sustained just prior to admission. PT had complained of blurred vision and earlier this week a referral to ophthalmology was done.

No new complaints today.

Labs 2/26/15: Chol 185, CMP nl, a1c 5.5, TSH 1.24, fTe 1.2, WBC 3.3k, Hgb 15.3, Plt nl, Li level 0.7, Depakote level 88, RPR neg, urine tox neg. Several prior WBC's dating to 4/4/13 range from 3.2k to 3.6k.

Exam – he is alert. Answers questions well. Walking easily.

Face shows no swelling or ecchymoses surround yes. The left sclera bleeding has resolved. Pupils about 3mm and equal and not reacting to light. EOM"s intact.

Abrasions above both ankles are healing without any scarring.

Reviewed labs with: he asked specific questions about level of the Hgb and platelets: answered them

Imp – Psyche issues

Abrasions essentially healed.

Complaints of blurred vision

Plan – Cont psyche care

To see ophthalmology tomorrow.

John Wieland MD

<table>
<tr><td>1. Disability Code:<br>☐ TABE Score <4.0x<br>☐DPH ☐DPV ☐LD<br>☐DPS ☐DNH<br>☐DNS ☐DDP<br>☒Not Applicable<br>4. Comments:</td><td>2. Accommodation<br>☐Additional Time<br>☐Equipment SLI<br>☐Louder ☐Slower<br>☐Basic ☐Transcribe<br>☐Other*</td><td>3. Effective Communication:<br>☐P/T Asked questions<br>☐P/I Summed information<br>Please Check one:<br>☐Not reached* ☒Reached</td><td>CMF, MHCB B-2<br>Owens, Theon, V60905, 8/12/82</td></tr>
</table>

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO. ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

R.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7526(11/12) NUTRITION ASSESSMENT.

"Hosted by DUAL MS. RD. on 3/5/2015. It Shows DUAL evaluation of the Plaintiff. DUAL note's "I/P stated that he had 2 missing teeth that were ripped off after an altercation with C/o's. and that it was sensitive to certain foods" the evaluater also note's "Multiple abrasions. Periorbital swelling" Which shows some of the injuries the Plaintiff sustained from defendants beating him".

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

State of California
**Nutrition Assessment**
CDCR 7526 (11/12)

Department of Corrections and Rehabilitation

| Admission Dx: Bipolar D/O | Admission Date: Feb 22, 2015 |
|---|---|

| PMH: HTN |
|---|

**Diet/Tube Feeding/TPN Order:**
Kosher Diet (initially was Regular Diet)

| Age: 32 | Height: 74" | Weight: 212.5# | Activity: Sedentary | BMI: 28 | Wt. Status: Overweight | Adjusted BW: |
|---|---|---|---|---|---|---|
| Sex: Male | IBW (Range): 190# | % IBW: 112 | Usual BW: | Wt Change: Stable | Amount: |

**Weight History:**
209.7# on 3/9/15. 212.5# on 2/22/15. 219# on 1/26/15.

| Food Allergy/Intolerance: n/a |
|---|

| Oral Problems: None | GI Problems: None |
|---|---|

| Feeding Ability: Independent | Intake: Good (>75%) |
|---|---|

**Notes:**
Eating 100% of meals per RN report. I/P stated that he had 2 missing teeth that were ripped off after an altercation with C/Os, and that it was sensitive to certain foods. However, dentist stated that I/P was not in need of an altered diet.

| Labs/Date | Na+/K+ | GLU | Hbg/Hct | MCV | BUN/Cr | ALB | Pre-ALB | ALT/AST | TBili | NH3 | HbA1C | CRP | ESR | TRIG |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/26 | 138/4.5 | 76 | 15.3/47 | 81 | 14/1.12 | 4.5 | | 11/25 | 0.6 | | 5.5 | | | 78 |

| Other Pertinent Labs: 2/26 - TChol 185, HDL 49, LDL 120 |
|---|

| Relevant Meds: MVI, Divalproex Na, lithium carbonate, MOM pm, olanzapine |
|---|

| Potential/Significant Food-Drug Interactions: n/a |
|---|

| Skin Status: multiple abrasions, periorbital swelling |
|---|

| Estimated Daily Needs: Calories: 2400-2900 | 25-30 kcal/kg Protein (gm): 75-95 | 0.8-1 gm/kg Fluids (ml): per MD | ml/kg |
|---|---|---|---|

*Choose one of the following:* ☐ Yes, *a Nutrition Diagnosis has been identified (proceed below).* ☒ *No nutrition diagnosis identified at this time.*

**Nutrition Diagnosis**

| P (Problem) | E (Etiology) |
|---|---|
| | |

S (Signs and Symptoms)

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional Time | ☐ P/I asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not Reached* ☐ Reached |
| ☑ Not Applicable | ☐ Other* | *See chrono/notes |
| 4. Comments: | | |

Last Name: Owens
First Name: Theon     MI:
CDCR #     V60905
DOB     08-12-1982

, Oval MS, RD

3-5-15

Nutrition Assessment, CDCR 7526 (11/12)

Page 1 of 2

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX · COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL.

CAES NO. 2:16-CV-02750-JAM-KJN.

S.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230F
INTERDISCIPLINARY PROGRESS NOTES – GENERAL PSYCHIATRY.
"Hosted by W. BILL WHITE, Medical Doctor (M.D.), on Friday 03/06/2015, At 11:02 –
11:57 hours, It shows the M.D.'s evaluation notes of the Plaintiff. Whereon
the M.D. notes "i'M still upset ± afraid of going back". which shows the
traumatize effects the beating had on the Plaintiff, and the Mental and
emotional injuries inflicted on him, It also shows a conversation the
Plaintiff had with the M.D. regarding defendant LANDON MERCADO #73156,
conduct the day before the incident."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 PAGE'S.

State of California                                                                      Department of Corrections and Rehabilitation

Interdisciplinary Progress Notes- General Psychiatry

CDCR MH-7230F

| **Identifying** | Date: | Friday, 2015/03/06 | Time: | 11:02-11:57 | | Location: CMF CTC-B-Side |
|---|---|---|---|---|---|---|
| **Information** | Level of Care: ☐ CCCMS ☐ EOP ☐ OHU ☒ MHCB | | | Custody Housing: ☐ GP ☐ RC ☐ ASU ☒ CTC ☐ SNY ☐ SHU | | |

**Identifying Factors**: Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3). Custody Level: Maximum. Placement Score: 532. Custody Suffix: S. Received CDCR: 12/09/2004. **EPRD: 12/24/2021**. Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission**: From Referral 7230: **Brief Reason for Admit**: Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant. **Main reason for admit**: 'Unpredictable.' **Reason for Referral**: DTS. **Per IP 02/22/15**: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

## II. Comments / Data:

**Psych Rx**: Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours.
Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization. ● Lithium Carbonate ER 450 mg po BID for mood stabilization. Stelazine (trifluoperazine) 2 mg po Q4H PRN agitation/psychosis, NTE 2x in 24 hours. Added 03/02/15.

**Medical Rx**: Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bactrim DS to 2/24. Naproxen PRN.

**Allergies per Maxor**: Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins; Haldol (haloperidol).

**EKG**: 02/21/15: Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.

**Labs**: 02/26/15: Lipid Panel: WNL; cholesterol 185; HDL 49. CMP: WNL. CBC/Diff: WBC: 3.3 (L); RBC: 5.86 (h); MCH 26.2 (L); ANC: 1327 (L); AMC: 162 (L). FT4: 1.2. TSH: 1.24. HgbA1C: 5.5. Lithium: 0.7. Valproic Acid: 87.6. RPR: NR. **02/22/15** UDS: negative. See also Dr. Wieland's H&P for recent CSP-Sac labs.

**Most Recent Shift Reports** 2w, 3w, 1w: 2015/03/05-06: **2w**: Reading & writing in bed mostly. Denies SI. Took AM meds. **3w**: Was asking staff to clean his cell, but custodian no longer here. He was told he can request for it to be clean tomorrow. Asked for (2) 602 forms from custody. **1w**: During the first 2 hours of the shift. IP talking to custody about his paperwork.

| **S** Subj: | **General Dispo**: "I'm still upset & afraid of going back. I heard that another sergeant at Sac said that I'd said something racist also, to try to get the white officers against me. The conversation didn't go as he said it went. They stripped me out with a female officer just 5' away; Title 15 says they're not supposed to do that." IP shared copies of his paperwork & asked that I read it, which I did,& he vented for a time after the reading, but seemed to calm somewhat after his venting. **Activities**: "I'm doing a lot of writing. They haven't asked me for yard yet (Yard order done 2/22/15)." **Sleep**: "I ain't been sleeping right, it's about 5 hours, starting to go up." **Appetite**: "I didn't eat breakfast or lunch; it's hard when I'm mad. But I will eat. When I get towards manic, I feel like I don't need to eat or drink much." **Rx Response**: "I've been taking the medication every day; but it only does so much; I still go up & down."<br><br>Seen for psychiatry contact ● RT Room ● Confidential. |
|---|---|
| **O** Objective: | **Presentation**: 6' 2" Overweight black male with dreaded hair, good eye contact, dressed in jumpsuit seen in RT Room. **Speech**: Somewhat pressured speech, loud at times when he got excitable in telling the story, but was still redirectable. **Mood**: IP reported still upset. "My mood is starting to go up because sleep is down, but I probably won't go all the way up because of the medicine." **Affect**: Anxious affect, elevated & loud at times, but able to self calm by end of visit. **S/I**: IP reported thoughts of self-harm, but no imminent plans, & denied actual suicidal ideation or intent. **H/I**: "I've got a decrease in wanting to hurt other people." **Psychosis**: IP reiterated, "No; I only hear voices when I get mad. But my vision does play tricks on me, seeing things that move that aren't there, like shadows." **Cognitive**: Appears intact, oriented. **Movement/AIMS**: Normal range. No overt evidence of Tardive Dyskinesia seen. |
| **A** Dx | **Axis I**: 296.80 Bipolar Disorder NOS. 304.80 Polysubstance Dependence (cannabis, PCP, Alcohol). **Axis II**: 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. **Axis III**: Low back pain. History of leucopenia, granulocytopenia. Recent facial & eye trauma, broken teeth. **Axis IV**: Incarceration. Recent altercation with custody. Mother's death November 2014; grandmother's death December 2014. **Axis V**: GAF: 30. |
| **A** Assess | IP with hx of mood instability suggestive of bipolar disorder, significant axis II cluster B issues, here in MHCB due to recent events at CSP-Sac in which he was physically injured; relatively stable on current Rx. Was seen as ready for discharge to EOP, but now says S/I again; likely candidate for APP referral. |
| **P-Plan** | Continue Rx as above for indications listed, including Stelazine PRN trial as above as requested by IP. Li/VPA levels (above) are in acceptable range. Continue privileges as follows: full issue, reading materials, extra blanket, eyeglasses, yard, shaving privileges, eyeglasses, crayon, pen filler, & jumpsuit. EOP DCS in shared files, but will update when we re-discharge IP formally in coming days, likely to APP or possibly ICF. |
| **E-Education** | Discussed: Coping strategies. Discharge planning. Rx revisited. |

Psychiatrist's Name: W. B. White, M.D. Signature: *[signature]*

| 1. **Disability Code:** | 2. **Accommodation:** | 3. **Effective Communication:** | Inmate's Name (Last, First, MI), CDC Number, DOB: |
|---|---|---|---|
| ☐ TABE Score <4.0<br>☐ DPH ☐ DPV ☐ LD<br>☐ DPS ☐ DNH<br>☐ DNS ☐ DDP<br>☒ **Not Applicable** | ☐ Additional Time<br>☐ Equipment ☐ SLI<br>☐ Louder ☐ Slower<br>☒ Basic ☐ Transcribe<br>☐ Other* | ☒ P/I Asked questions<br>☒ P/I Summed information<br>**Please Check on:**<br>☐ Not reached* ☒ Reached | **Owens**, Theon<br><br>**V60905** |
| 4. Comments: **Tabe:** 4.5 (01/30/2015). NCF. | | | DOB: 08/12/1982    **CMF MHCB B-02** |

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-0275 0-JAM-kJN.

T.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR-7230 (REV. 02/13)
INTERDISCIPLINARY PROGRESS NOTES.
"Hosted by J. ANGELES. Registered Nurse (R.N.), on 03/07/2015, at 0915
hours. It shows the R.N.'s notes, on the day noted she wrote the
Plaintiff as saying "I'M okay, Just need my teeth fixed." which shows the
Plaintiff was concerned about getting teeth fixed, and had made a
verbal request of this concern to her."

NUMBER OF PAGES TO THIS APPENDIX: 1 _____ PAGE'S.

STATE OF CALIFORNIA
**INTERDISCIPLINARY PROGRESS NOTES**
CDCR 7230 (REV. 02/13)

DEPARTMENT OF CORRRECTION AND REHABILITATION

Page 1 of 1

| DATE<br>mm/dd/yy | TIME<br>hh:mm AM/PM | |
|---|---|---|
| 03/07/15 | 0915 | S - " Still kinda suicidal and homicidal but I'm okay." " Just need my teeth fixed." |
| | | O- A/O x 3, ambulates with steady gait,  admits  SI/ HI ,reading and writing in bed, |
| | | no  behavioral issues. No SIB or  suicidal plan stated. |
| | | A – Ineffective Individual Coping R/T  Bipolar Disorder  AEB  history of altercation with cops, |
| | | provoking staff. |
| | | P – Continue with rounds as ordered. Continue with pt. education |
| | | E- Advised to verbalize thoughts and concerns in a calm manner, take meds as ordered, |
| | | participate in treatment plan. I/P  receptive. ---J. Angeles RN |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Institution<br>CMF-MHCBF | | Housing Unit<br>B-02 |

| 1. Disability Code:<br>☐TABE score ≤ 4.0<br>☐DPH ☐DPV ☐LD<br>☐DPS ☐DNH<br>☐DNS ☐DDP<br>☐**Not Applicable** | 2. Accommodation:<br>☐Additional time<br>☐Equipment ☐SLI<br>☐Louder ☐Slower<br>☐Basic ☐Transcribe<br>☐Other* | 3. Effective Communication:<br>☐P/I asked questions<br>☐P/I summed information<br>Please check one:<br>☐Not reached* ☐Reached<br>*See chrono/notes | CDCR# :      V60905<br>Last Name:  OWENS<br>First Name:  THEON<br>DOB:         08/12/82         MI |
| 4. Comments: | | | |

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

U.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230F
INTERDISCIPLINARY PROGRESS NOTES -GENERAL PSYCHIATRY.
Hosted by W. BILL WHITE, Medical Doctor (M.D.), on 03/08/2015, At
09:43 - 10:13 hours, It Shows the M.D.'s evaluation notes of the Plaintiff
whereon the M.D. notes the Plaintiff's as saying "The Psychologist
yesterday said that the situation is probably driving this, I've
written 20 sheets of paper on this situation alone, I think that's
why I took the medication, even though I figure it's supposed to be
on my mind. it was life changing, because it disfigured me, under
certain circumstances I might still want to kill myself, like if I
were to be sent back to the institution I came from. I'd rather
do it than have them get me again." Which shows the painful
uneasiness of the Plaintiff mind and the fearful concern's he had.
It also shows the mental and emotional injuries the Plaintiff
suffered."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

**State of California**                                    **Department of Corrections and Rehabilitation**

**Interdisciplinary Progress Notes- General Psychiatry**

**CDCR MH-7230F**

| Identifying | Date: | Sunday, 2015/03/08 | Time: | 09:43-10:13 | | Location: CMF CTC-B-Side |
|---|---|---|---|---|---|---|
| Information | Level of Care: ☐ CCCMS ☐ EOP ☐ OHU ☒ MHCB | | | | Custody Housing: ☐ GP ☐ RC ☐ ASU ☒ CTC ☐ SNY ☐ SHU | |

**Identifying Factors:** Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3). Custody Level: Maximum. Placement Score: 532. Custody Suffix: S. Received CDCR: 12/09/2004. **EPRD: 12/24/2021.** Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission:** From Referral 7230: **Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant. **Main reason for admit: 'Unpredictable.' Reason for Referral:** DTS. Per IP 02/22/15: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

## II. Comments / Data:

**Psych Rx:** Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours. Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization. • Lithium Carbonate ER 450 mg po BID for mood stabilization. Stelazine (trifluoperazine) 2 mg po Q4H PRN agitation/psychosis, NTE 2x in 24 hours. Added 03/02/15.

**Medical Rx:** Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bactrim DS to 2/24. Naproxen PRN. **Allergies per Maxor:** Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins, Haldol (haloperidol).

**EKG:** 02/21/15: Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.

**Labs:** 02/26/15: Lipid Panel: WNL; cholesterol 185; HDL 49. CMP: WNL. CBC/Diff: WBC: 3.3 (L); RBC: 5.86 (h); MCH 26.2 (L); ANC: 1327 (L); AMC: 162 (L). FT4: 1.2. TSH: 1.24. HgbA1C: 5.5. Lithium: 0.7. Valproic Acid: 87.6. RPR: NR. 02/22/15: UDS: negative. See also Dr. Wieland's H&P for recent CSP-Sac labs.

**Most Recent Shift Reports 2w, 3w, 1w:** 2015/03/07-08: **2w:** Seen by clinician.@1130 Given Olanzapine 10mg for agitation. Said he is still "kind of suicidal & homicidal." No SIB . Reading & writing in bed, then went out for yard in the afternoon. **3w:** No disruptive behavior. Calm. Wanted to give his graham crackers to B9. When staff refused to give the crackers to B9, he argued that B9 takes medication that can irritate his stomach & needs to take the meds with food. IP earlier wanted to get the Benadryl for himself, stated "is that Benadryl, can I have it too?". Keeps asking several staff to give his crackers to B9. **1w:** Resting on bed. Calm & quiet. No complaints

| S Subj: | **General Dispo:** "My mind been like racing. A lot of stressing & distressing. The Zyprexa PRN yesterday knocked me all the way down. I thought I wouldn't get to the other one." **Activities:** "I'm doing a lot of writing. I went to yard yesterday, but the Sgt had to do an override. **Sleep:** "I ain't been sleeping right, about 5 hours, starting to go up." **Appetite:** "I've been eating certain foods, but not an apple." **Rx Response:** "I've been taking the medication every day; but it only does so much; I still go up & down." |
|---|---|

| O Ob-jec-tive: | Seen for psychiatry contact • IDTT Room • Confidential. Also for IDTT with Dr. Brogdon, RT Mihalik, CTRS. |
|---|---|
| | **Presentation:** 6' 2" Overweight black male with dreaded hair, good eye contact, dressed in jumpsuit seen in IDTT Room. **Speech:** Quieter speech today, but still talkative, expressive. **Mood:** "My head feels a little bit better. My thoughts have slowed down a bit. But I still feel depressed, about a 5." **Affect:** Anxious affect, overall calmer. **S/I:** "I have thoughts to hurt myself, but no plans, except for cutting, for relief. The psychologist yesterday said that the situation is probably driving this. I've written 20 sheets of paper on this situation alone. I think that's why I took the medication, even though I figure it's supposed to be on my mind. It was life changing, because it disfigured me. Under certain circumstances I might still want to kill myself, like if I were to be sent back to the institution I came from. I'd rather do it than have them get me again." **H/I:** "That thought to hurt others kind of went away." **Psychosis:** IP reiterated, "No; I've only hear voices when I get mad, last time 4 months ago." **Cognitive:** Appears intact, oriented. **Movement/AIMS:** Normal range. No overt evidence of TD seen. |

| A | Dx | **Axis I:** 296.80 Bipolar Disorder NOS. 304.80 Polysubstance Dependence (cannabis, PCP, Alcohol). **Axis II:** 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. **Axis III:** Low back pain. History of leucopenia, granulocytopenia. Recent facial & eye trauma, broken teeth. **Axis IV:** Incarceration. Recent altercation with custody. Mother's death November 2014; grandmother's death December 2014. **Axis V:** GAF: 30. |
|---|---|---|
| | As-sess | IP with hx of mood instability suggestive of bipolar disorder, significant axis II cluster B issues, here in MHCB due to recent events at CSP-Sac in which he was physically injured; relatively stable on current Rx. Was seen as ready for discharge to EOP, but now says SI today, likely candidate for APP referral. |

| P-Plan | Continue Rx as above for indications listed, including Stelazine PRN trial as above as requested by IP. Li/VPA levels (above) are in acceptable range. Continue privileges as follows: full issue, reading materials, extra blanket, eyeglasses, yard, shaving privileges, eyeglasses, crayon, pen filler, & jumpsuit. EOP DCS in shared files, update today, 3/08/15 for APP referral. Re-discharged (referred) to **APP**, today, 03/08/15. |
|---|---|

| E-Education | Discussed: Coping strategies. Discharge planning. Rx revisited. |
|---|---|

**Psychiatrist's Name:** W. B. White, M.D. **Signature:**

| 1. **Disability Code:** ☐ TABE Score <4.0 ☐ DPH ☐ DPV ☐ LD ☐ DPS ☐ DNH ☐ DNS ☐ DDP ☒ Not Applicable | 2. **Accommodation:** ☐ Additional Time ☐ Equipment ☐ SLI ☐ Louder ☐ Slower ☒ Basic ☐ Transcribe ☐ Other* | 3. **Effective Communication:** ☒ P/I Asked questions ☒ P/I Summed information **Please Check one:** ☐ Not reached* ☒ Reached | Inmate's Name (Last, First, MI), CDC Number, DOB: **Owens,** Theon |
|---|---|---|---|
| 4. Comments: **Tabe:** 4.5 (01/30/2015). NCF. | | | **V60905** |
| | | | DOB: 08/12/1982   **CMF MHCB B-02** |

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

V.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7482 (Rev. 06/14)
REFERRAL: INPATIENT MENTAL HEALTH SERVICES.
Hosted by Medical Doctor (M.D.). W. BILL WHITE And Psychologist (PSYC)
LATOYA BROGDON, on 03/08/2015. It shows their notes. Whereon they noted "He
was lobbying not to return to CSP-SAC. due to his allegations of excessive
force (investigation is pending). which shows that the Plaintiff didnot wish to
return back to CSP-SAC were incident happen. The Doctor's noted "his
condition was Precipitated by an altercation with the correctional officers at
CSP-SAC where he sustained Multiple injuries." Which shows that the altercation
with the officers caused Mental and emotional injuries and that the Plaintiff
Sustained Multiple injuries from the incident as well. The Doctor's also noted
that "He also reports depression and anxiety." Which shows the Mental and
emotional injuries the Plaintiff suffered."

NUMBER OF PAGES TO THIS APPENDIX: 1 _____ PAGE'S.

State of California
**Referral: Inpatient Mental Health Services**
CDCR MH-7482 (Rev. 06/14)

[Print Form] [Reset Form]

Department of Corrections and Rehabilitation
Form: Page 1 of 5
Instructions: Page 6 and 7

## I. REFERRAL INFORMATION

| Date of Referral: 03/08/2015 | Current LOC: MHCB | Requested LOC: ☒ Acute ☐ ICF | Inmate-Patient DOB: 08/12/1982 | CDCR Institution: CMF MHCB |
|---|---|---|---|---|

| CDCR Psychiatrist: Dr. White | Contact Number: 707/448-6841 x 5493 | E-mail: Bill.White@cdcr.ca.gov |
|---|---|---|

| CDCR Clinician: Dr. Brogdon | Contact Number: 707/448-6841 x 5482 | E-mail: Latoya.Brogdon@cdcr.ca.gov |
|---|---|---|

## II. INMATE-PATIENT IDENTIFYING INFORMATION

| Ethnicity: African American | Religion: Jewish | Children: No | Marital/Partnership Status: Single |
|---|---|---|---|

| Voluntary Admission: ☒Yes ☐No | Due Process Hearing Date: 03/08/2015 | Involuntary Medication: ☐Yes ☒No Expiration Date: |
|---|---|---|

## III. PRESENTING SYMPTOMS/CHIEF COMPLAINT

Reason for referral, nature of target symptoms, when they first started, clinical course, precipitating factors, and previous treatment.
IP reports being suicidal contingent upon returning to his sending institution. He also reports thought about self-injurious behaviors. He was lobbying not to return to CSP-SAC due to his allegations of excessive force (investigation is pending). His condition was precipitated by an altercation with the correctional officers at CSP-SAC where he sustained multiple injuries. Factual details of the incident are unknown. He also reports depression and anxiety. He was initially discharged back to EOP, but then stated he was suicidal when transportation arrived to return him to CSP-SAC. He has previously been treated at DSH for IEX amongst other problems. He has a long history of mental health problems dating back to age 8. There is also an MDO evaluation pending as it gets closer to his release date.

## IV. RISK ASSESSMENT

Comments: ☒ Suicide and Self Injurious Behaviors (See SRE) ☒ Assault/Aggression
IP reports thoughts of being aggressive towards correctional officers at CSP-SAC. He reports wanting to make them suffer the same way he did. He denies that he is homicidal.

## V. STRENGTH AND ASSETS

List personal strengths and assets.
-Appears motivated for treatment
-Advocates for self and able to communicate needs
-Likes Poetry

## VI. PSYCHIATRIC AND MEDICAL HISTORY

| DSH Hospitalization: ☒Yes ☐No | Reason for Admission: |
|---|---|
| Hospital Name: NSH; ASH; VPP;Stockton | Patient reports about 5-7 prior admissions at NSH (PC 1370 from 2000 for 1.5 year; 2002 for 9 months; 2004 ), ASH (2005). NSH 5150 (age 10). VPP 3/2013-5/2013' VPP in 2014; ASH in 2005. |
| Treatment Date(s): All dates are estimated | |

| Community Hospitalization: ☒Yes ☐No | Reason for Admission: |
|---|---|
| Hospital Name: Multiple | John George Forensic Center-1999 for manic symptoms and staff unable to control; IEX; Seneca-1994 for 5150, courts took him, teachers saw whip marks, animal cruelty |
| Treatment Date(s): Dates are approximate | Alta Bates Forensic Center @14, problems at group home; First Hosp. of Vallejo @ 8 yrs. old-5150 |

| **Referral: Inpatient Mental Health Services** CDCR MH-7482 (Rev. 06/14) Confidential Inmate-Patient Information | CDCR #: V60905 Last Name: OWENS MI: First Name: THEON DOB: 08/12/1982 |
|---|---|

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JM-KJN.

W.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MENTAL HEALTH CRISIS BED DISCHARGE SUMMARY.

"Hosted by W. BILL WHITE, Medical Doctor (M.D.) on 03/08/2015, It Shows the M.D. notes on the Plaintiff.Whereon the M.D. notes in Parts "Early on he spent alot of time! energy venting about reported recent events at CSP-SAC including takedown were he was reportedly injured.He calmed somewhat over the coming week, but still reported he wanted clo's involved in the takedown to have to suffer, e.g. with disfiguring broken teeth of their own, but denied any plans or thoughts of killing anyone." Which shows the mental and emotional injuries the Plaintiff suffered after being disfigured by the defendant's. The M.D. noted "He attended dental clinic once, His bilateral eyelid swelling ! left eye redness resolved over the course of 10 days here". Which shows an approximate time it took for the Plaintiff's injuries to clear up. The M.D. also notes "but he reported some perceived different in light perception between his two eyes, at day 10." which shows the injuries suffered to the Plaintiff's eye caused additional vision problem's."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

# MENTAL HEALTH CRISIS BED DISCHARGE SUMMARY

| Admitting Date:   02/21/2015 from CSP Sac PSU | Discharge Date: 2015/03/08 to APP. |
|---|---|

**Identifying Factors:** Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14–12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3). Custody Level: Maximum. Placement Score: 532. Custody Suffix: S. Received CDCR: 12/09/2004. **EPRD: 12/24/2021.** Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission:** From Referral 7230: **Brief Reason for Admit:** Altercation w cops, 'danger to self.' His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO or DTS at this time. Med compliant. **Main reason for admit:** 'Unpredictable.' **Reason for Referral:** DTS.
Per IP **02/22/15:** "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

| Discharge Diagnosis With ICD Codes | Axis I: 296.80 Bipolar Disorder NOS. ● 304.80 Polysubstance Dependence (cannabis, PCP, Alcohol). |
|---|---|
| | Axis II: 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. |
| | Axis III: Low back pain. History of leucopenia, granulocytopenia. Recent facial & eye trauma, broken teeth. |
| | Axis IV: Incarceration. Recent altercation with custody. Mother's death November 2014; grandmother's death December 2014. |
| | Axis V: GAF: 40. |

**Hospital Course/Response to Treatment:** He was provided Counseling, IDTT & Medication Management. Early on he spent a lot of time & energy venting about reported recent events at CSP-Sac including takedown where he was reportedly injured. He calmed somewhat over the coming week, but still reported he wanted CO's involved in the takedown to have to suffer, e.g. with disfiguring broken teeth of their own, but denied any plans or thoughts of killing anyone. Once he'd prepared paperwork (602, form-22), he appeared to calm further, though was still lobbying to go to an Ad-Seg Hub rather than return to CSP-Sac PSU program, since he presumed there might be an ongoing investigation. He reported thoughts of returning to his historic practice of SIB for relief, but denied any actual suicidal ideation. As he improved, he shifted back to practice of complaining about what appeared to be more minor things, e.g. when & how many soymilks he received as a part of his kosher diet. In discharge IDTT we explained that we could not address custody issues such as specifically what institution he'd go to at D/C, but that we felt that EOP was still his appropriate level of care, & IP was not in disagreement. **03/08/15 Update:** 2 days after EOP discharge, just as CSP-Sac was arriving for pickup, IP reported he was suicidal, so discharge was rescinded. Revisiting issue at 03/08/15 IDTT, team decided APP was most appropriate, given IP's reports of H/I, albeit waning, & conditional S/I if returned to CSP Sac. Beyond our current scope is the possibility that a transfer to PBSP PSU might resolve IP's concerns & support an EOP discharge with resolution of S/I & H/I, but might warrant exploration by CSP-Sac C&PR.

**Labs & Medical:** IP was seen for admission physical & Axis III medical issues above were addressed. He attended dental clinic once. His bilateral eyelid swelling & left eye redness resolved over the course of 10 days here, but he reported some perceived different in light perception between his two eyes at day 10, & so was referred to medical. He also complained of back pain, & that naproxen & ibuprofen were not adequate, but since not acute will likely be deferred to PCP in his receiving institution post-discharge.

**Medical Rx:** Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bactrim DS to 2/24. Naproxen PRN.
**Allergies per Maxor:** Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins; Haldol (haloperidol).
**EKG: 02/21/15:** Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.
**Labs: 02/26/15:** Lipid Panel: WNL; cholesterol 185; HDL 49. CMP: WNL. CBC/Diff: WBC: 3.3 (L); RBC: 5.86 (h); MCH 26.2 (L); ANC: 1327 (L); AMC: 162 (L). FT4: 1.2. TSH: 1.24. HgbA1C: 5.5. Lithium: 0.7. Valproic Acid: 87.6. RPR: NR.
**02/22/15:** UDS: negative. See also Dr. Wieland's H&P for recent labs from CSP-Sac.

**Psych Medications & Response:** IP complained about Depakote periodically throughout his stay, but also reported feeling "a little high" at end of stay, so options for more consistent mood stabilization were discussed. We felt that his personality disorder issues were likely a major contributor to this phenomenon, but also that two mood stabilizers were likely justified to contribute to the possibility of maximum control of himself. Since no longer on PC2602/Keyhea, he said he was unwilling to take Zyprexa, in part due to large number of family members who have diabetes or have died from complications of diabetes, but reported past positive response to Stelazine as a PRN, so this was restarted. See acceptable Li & VPA levels above. **03/08/15 Update:** IP did take one dose of Zydis 3/07 to curb what he felt could be an emerging bout of hypomania, with reported quieting effect.

**Discharge Plan:** D/C to APP. Continue Rx as below for indications listed.

| Psych Meds: | Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization. |
|---|---|
| | Lithium Carbonate 450 mg po BID for mood stabilization. |
| | Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours. |
| | Stelazine (trifluoperazine) 2 mg po Q4H PRN agitation/psychosis, NTE 2x in 24 hours. |

| Clinician: W. B. White, M.D. | | |
|---|---|---|
| Clinician's Signature: *WBWhitemn* | | |
| Institution: CMF, Vacaville | | **Updated:** 2015/03/08 |

This is not a stand-alone discharge summary. Please also see IPE/7386, 7388, & 7230's included in discharge package.

| 1. Disability Code: | 2. Accommodation | 3. Effective Communication: | Inmate's Name (Last, First, MI), CDC Number, DOB |
|---|---|---|---|
| ☐ TABE Score <4.0x | ☐Additional Time | ☑ P/I Asked questions | **Owens**, Theon |
| ☐DPH ☐DPV ☐LD | ☐Equipment SLI | ☑ P/I Summed information | |
| ☐DPS ☐DNH | ☐Louder ☐Slower | Please Check one: | **V60905** |
| ☐DNS ☐DDP | ☑ Basic  ☐Transcribe | ☐Not reached*  ☑ Reached | |
| ☑ Not Applicable | ☐Other* | | DOB: 08/12/1982   **CMF MHCB B-02** |
| 4. Comments:  **Tabe:** 4.5 (01/30/2015). NCF. | | | |

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL.

CAES NO. 2:16-CV-02750-JAM-KJN.

| X. |
| APPENDIX. |

DESCRIPTION OF THIS APPENDIX: CDCR 7371 (Rev. 03/04) CONFIDENTIAL MEDICAL / MENTAL HEALTH INFORMATION TRANSFER - SENDING INSTITUTION.

"Hosted by Registered Nurse (R.N.) J. ANGELES. on 3/8/2015. It shows a summary of the Plaintiff's Medical history. Whereon the R.N. notes "C/o change in vision left eye." which shows that the Plaintiff was having vision problem's for injury suffered to the left eye. from defendants punch's. The R.N. also notes urgent 'refferal to optometry.'"

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
**CONFIDENTIAL MEDICAL/MENTAL HEALTH**
**INFORMATION TRANSFER-SENDING INSTITUTION**                    ☐ **NEEDS IMMEDIATE ATTENTION**
CDC 7371 (Rev. 03/04)          ☐ Medical and Return   ☒ Psychiatric and Return   ☐ Return from Medical and Return

| SENDING INSTITUTION | INMATE NAME | | CDC NUMBER |
|---|---|---|---|
| CMF/MHCB - PIP(?) | OWENS, THEON | | V60905 |

Allergies: HALOPERIDOL. PENICILLIN.   No known allergies ☐
THIS OTHER ZONE **SIGNIFICANT MEDICAL / DENTAL / MENTAL HEALTH PROBLEMS / COMMENTS**

| (e.g. suicide attempts, dental needs, special diet, pending or incomplete consults, laboratory tests, x-rays) | Chronic Care Program (List type) | Date of Last Visit |
|---|---|---|
| - BIPOLAR DISORDER.  | CHRONIC LOW BACK PAIN | 3/2/15 |
| - POLY SUBSTANCE DEPENDENCE, ASPI | 4° CHANGE IN VISION  (D) EYE | |

Date of Last Physical: 2/22/15.        Keyhea ☐
Mental Health Level of Care ☐ APP. ☐ None ☐ CCCMS ☐ EOP ☐ MHCB   Suicide History ☐ Yes ☒ No
Prosthetic device?   ☐ Yes ☒ No   Type: _____ = c.c/c; 2 PREDULTED~
Medical Hold Initiated? ☐ Yes ☒ No   Reason: _____ FULL DUTY.
Medical Chronos reviewed? ☒ Yes ☐ No   Type of Medical Chrono: 123, C3, 7410.   TB alert code: 22.

**MEDICATIONS PRESCRIBED**
Medication Administration Recorded Attached ☐ Yes ☒ No   Pharmacy Profile Attached ☐ Yes ☒ No

| Name of Medication (including TB) | Dose | Route | Frequency | Start Date | Stop Date | Heat Risk Med |
|---|---|---|---|---|---|---|
| SEE MED RECORDS | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| **DIAGNOSTIC TESTS PERFORMED** | **Disability (See CDC 1845)** | | **Developmental Disability** | |
|---|---|---|---|---|
| Is inmate pregnant? ☐ Yes ☐ No   ☐ EDC ____ | | | | |
| Tuberculosis | DPW ☐ | DPS ☐ | DDI ☐ | DD2 ☐ |
| PPD Test ∅ mm   Date Read 4/28/19. | DPV ☐ | DPM ☐ | DDIA ☒ | DD3 ☐ |
| Chest X-ray | DPH ☐ | DPO ☐ | | |
| ☐ Normal ☐ Abnormal   Date Read ____ | TABE 9.5. | | | |

MISC TESTS (Check each box that applies to inmate)
RPR/VDRL: ☐ Reactive ☐ Non-reactive   Treated? ☐ Yes ☐ No   Date treated: ____
Hepatitis: ☐ Positive ☐ Negative   Type: ____   Treated? ☐ Yes ☐ No   Date treated: ____
Other screening test results & date    Other Laboratory Data

| Pending Medical/Mental Health Appointments | Date | Attachments ☐ Yes ☐ No |
|---|---|---|
| ☐ Chronic Care | | Special Transport Instructions |
| ☒ Specialty URGENT REFERRAL TO OPHTHALMOLOGY | | UNIVERSAL PRECAUTION / |
| ☐ Telemedicine | | |
| ☒ Other FOLLOW IN 5 DAYS @ M.D. | | |

| COMPLETED BY SENDING INSTITUTION RN (Print/Stamp Name) | SIGNATURE / TITLE / DATE / TIME | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| A NBORGAS RN  CMF-MHCB. | Alborges RN.  3/8/15 @ 1100. | OWENS, THEON  V60905  8-12-82. |
| REVIEWED BY RECEIVING INSTITUTION RN/MTA/LPT (Print/Stamp Name) | SIGNATURE / TITLE /DATE / TIME | |
| | | |

ORIGINAL - RECEIVING INSTITUTION       RECEIVING INSTITUTION
CANARY - SENDING INSTITUTION

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

Y.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230A (Rev. 01/12)
INTERDISCIPLINARY PROGRESS NOTES-GENERAL.
"Hosted by L. BROGDON, PSYchologist (PSYC), on 03/09/2015, at 1200 hours.
It shows the PSY'S notes on the Plaintiff. Whereon she notes "He
continues Perseverate about his missing teeth, and states he is having
a hard time getting over his appearance" Which shows the injuries
the Plaintiff suffered (Missing teeth) and the Mental and emotional
injuries he has been going through over his disfigured protracted
appearance. The PSY notes "but states his appetite is poor because
the food are too hard to bite with the missing teeth." Which shows that the
injuries suffered to the Plaintiff's Mouth were more the just disfigurement.
they were serious enough to cause an inability to perform daily activit-
ies (eating hard foods)."

NUMBER OF PAGES TO THIS APPENDIX: 1            PAGE'S.

State of California                                      Department of Corrections and Rehabilitation

**Interdisciplinary Progress Notes – General**

CDCR MH-7230A (Rev. 01/12)

| Comments (Use SOAPE Format) |
|---|

**Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant.

**Main reason for admit:** 'Unpredictable'  **Reason for Referral:** DTS

IP was seen in confidential treatment module for 1:1 clinical contact.

S: IP reports he is not having any problems. He was interviewed for his ICF referral. He denied suicidal ideations, plans, or intent. However, he reports having thought of about engaging in self-injurious behaviors, but with no plans to do so at this time. He denied homicidal ideations, plans, or intent; however, he stated he believes in the saying "an eye for an eye" and would like to "do to the officers what they did to me." He did not discuss any concrete plans.

O: IP wearing white jumpsuit. His demeanor cooperative, but he attempts to be overly familiar by commenting on clinician's appearance, requesting that certain things not be written in his file. ADLs appear intact. Mental status was generally intact. IP was oriented x 4. He continues perseverate about his missing teeth, and states he is having a hard time getting over his appearance. Speech was normal for rate, rhythm, and prosody, although IP constantly changes the subject when asked a question and has to be prompted several times before responding to the question at hand. Thought processes were logical, linear, and goal oriented. Thought content was not bizarre. He does not report problems with sleep, but states his appetite is poor because the foods are too hard to bite with the missing teeth. IP denied auditory hallucinations, visual hallucinations or any other crises at this time. He was not noted to be responding to internal stimuli. Insight is limited and judgment is poor.

A: IP does not appear to be in distress at this time.

P: Continue to work on developing communication skills with treatment team members. Referral to APP LOC in progress. Continue MHCB protocol which includes monitoring for safety, medication management, 1:1 daily clinical interaction, recreation and yard as appropriate and weekly IDTT.

E: Encouraged IP to be open with his treatment team from his sending institution regarding his concerns about his clinicians. Encouraged IP to follow treatment plan and notify staff if he has questions or concerns.

| Date: | 2015.03.09 | Time: | 1200 | Housing: | B-02 |
|---|---|---|---|---|---|
| Institution: | CMF-MHCB | Clinician: | L. Brogdon, Ph.D. | Signature: | |

| 1. Disability Code: | 2. Accommodations: | 3. Effective Communication: | Name, CDCR#, DOB |
|---|---|---|---|
| ☐ TABE Score ≤ 4.0 | ☒ Additional Time | ☒ P/I Asked Questions | **Owens, Theon** |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I Summed Information | **V60905** |
| ☐ DPS ☐ DNH | ☐ Louder ☒ Slower | **Please Check One:** | **08/12/82** |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not Reached*☒ Reached | |
| ☒ Not Applicable | ☐ Other* | *See chrono/notes | |
| **4. Comments:** TABE=4.5 (Previous 2.4) | | | |

Confidential Saved 2015-09-23 14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

Z.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: (DCR 7230 (REV. 02/13)
INTERDISCIPLINARY PROGRESS NOTES.
"Hosted by Registered Nurse (R.N.) MANAGO, on 3/10/2015, at 0615 hours,
It shows the R.N.'s notes on the Plaintiff. Whereon the R.N. notes "Inmate
requesting to see Medical Doctor in the Morning concerning his right
ankle pain". Which shows the injury the Plaintiff sustained to his ankle
(Fracture), however the R.N. noted Right instead of left. Which is
incorrect, it should have been left ankle. corrected".

NUMBER OF PAGE'S TO THIS APPENDIX: __1__ PAGE'S.

STATE OF CALIFORNIA
**INTERDISCIPLINARY PROGRESS NOTES**
CDCR 7230 (REV. 02/13)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| DATE mm/dd/yy | TIME hh:mm AM/PM | |
|---|---|---|
| 3/10/15 | 0000 | Inmate observed lying on bed/mattress resting quietly. No physical distress or discomfort |
| | | Noted at the moment. Breathing has been even and unlabored. No verbal complaints made |
| | | And no SIB noted . Monitoring continued q 15 minutes for safety checks. RN Manago |
| 3/10/15 | 0530 | Inmate remained rested on bed. No significant changes of behavior noted. Monitoring |
| | | Continued. RN Manago --- |
| 3/10/15 | 0615 | Inmate requesting to see medical doctor in the morning for c/o his (R) ankle pain. RN Manago |

| Institution | Housing Unit |
|---|---|
| CMF-MHCBF | B-2 |

1. Disability Code:
☐ TABE score ≤ 4.0
☐ DPH ☐ DPV ☐ LD
☐ DPS ☐ DNH
☐ DNS ☐ DDP
☐ Not Applicable

2. Accommodation:
☐ Additional time
☐ Equipment ☐ SLI
☐ Louder ☐ Slower
☐ Basic ☐ Transcribe
☐ Other*

3. Effective Communication:
☐ P/I asked questions
☐ P/I summed information
Please check one:
☐ Not reached* ☐ Reached
*See chrono/notes

CDCR# : V60905
Last Name: OWENS
First Name: THEON
DOB: 8/12/1982

4. Comments: observation only

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-0275.0-JAM-KJN.

A A.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230A (Rev. 01/12)
INTERDISCIPLINARY PROGRESS NOTES-GENERAL.
Hosted by LATOYA BROGDON, PSYChologist (PSYC), on 03/10/2015, At 1525 hours,
It shows the PSYC notes on the Plaintiff. Whereon the PSYC notes "He contines
Perseverate about his Missing teeth, and the incident that occurred at
CSP-SAC." Which clearly shows that the event that occurred traumatized
the Plaintiff, as the Plaintiff has not gotten over the internal scars."

NUMBER OF PAGE'S TO THIS APPENDIX: 1          PAGE'S.



State of California                                Department of Corrections and Rehabilitation
**Interdisciplinary Progress Notes – General**
CDCR MH-7230A (Rev. 01/12)

| **Comments (Use SOAPE Format)** |
| --- |

**Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant.
**Main reason for admit: 'Unpredictable'    Reason for Referral: DTS**

IP was seen cell side for 1:1 clinical contact.

S: IP reports he is doing "alright." He reported his sister received his letters and she has written him back. He reports she is attempting to get him a lawyer. He requested a release of medical information form so that his sister can have access to his medical records. Will consult with medical records on proper process. He denied suicidal ideations, plans, or intent. However, he continues to consistently report having thoughts of about hurting himself, but with no plans to act on these. He denied homicidal ideations, plans, or intent; however, he continues to state he believes in "an eye for an eye" and would like to do to the officers what they did to him.

O: IP wearing white jumpsuit. His demeanor was overly friendly and attempting to be overly familiar by asking clinician where she is from. ADLs appear intact. Mental status was generally intact. IP was oriented x 4. He continues perseverate about his missing teeth, and the incident that occurred at CSP-SAC. Speech was fluent and spontaneous. Thought processes were logical, linear, and goal oriented. Thought content was not bizarre. He reports his appetite is fair and that he is not getting enough sleep. IP denied auditory hallucinations, visual hallucinations or any other crises at this time. He was not noted to be responding to internal stimuli. Insight is limited and judgment is poor.

A: IP does not appear to be in distress at this time.

P: IP does not appear interested in working on any treatment goals. He only wants to discuss the incident that happened at SAC. Referral to APP LOC in progress. Continue MHCB protocol which includes monitoring for safety, medication management, 1:1 daily clinical interaction, recreation and yard as appropriate and weekly IDTT.

E: Encouraged IP to notify staff of any problems.

| Date: | 2015.03.10 | Time: | 1525 | Housing: | B-02 |
| --- | --- | --- | --- | --- | --- |
| Institution: | CMF-MHCB | Clinician: | L. Brogdon, Ph.D. | Signature: | |

| 1. Disability Code:<br>☐ TABE Score ≤ 4.0<br>☐ DPH ☐ DPV ☐ LD<br>☐ DPS ☐ DNH<br><br>☐ DNS ☐ DDP<br>☒ Not Applicable<br><br>4. Comments: TABE=4.5 (Previous 2.4) | 2. Accommodations:<br>☒ Additional Time<br>☐ Equipment ☐ SLI<br>☐ Louder ☒ Slower<br><br>☒ Basic ☐ Transcribe<br>☐ Other* | 3. Effective Communication:<br>☒ P/I Asked Questions<br>☒ P/I Summed Information<br>**Please Check One:**<br>☐ Not Reached*☒ Reached<br>    *See chrono/notes | **Name, CDCR#, DOB**<br>**Owens, Theon**<br>**V60905**<br>**08/12/82** |
| --- | --- | --- | --- |

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2 : 16 - CV - 02750 - JAM-kJN.

BB.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: VCGCB-GC-00028104
GOVERNMENT CLAIMS FORM.
"Hosted by The Plaintiff, THEON OWENS, on 3-10-2015, It shows the form
the Plaintiff completed and then filed With the california victim
compensation and Government claims Board, to try and solve the issues
presented in this case, and to complete the Exhaustion of Administrative
Remedies Requirement"

NUMBER OF PAGE'S TO THIS APPENDIX: 6. PAGE'S.



STATE OF CALIFORNIA
EDMUND G. BROWN JR., Governor

**GOVERNMENT CLAIMS PROGRAM**
400 R Street, 5th Floor • Sacramento, California 95811
Mailing Address: P.O. Box 3035 • Sacramento, California 95812
Toll Free Telephone Number 1-800-955-0045 • Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

Government Claims Program

APR 2 1 2015

RECEIVED

MARYBEL BATJER
Secretary
Government Operations Agency
Chairperson

BETTY T. YEE
State Controller
Board Member

MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member

JULIE NAUMAN
Executive Officer

Theon Owens V60905
PO Box 2000
Vacaville, CA 95696

April 08, 2015

RE: Claim G623624 for Theon Owens, V60905

Dear Theon Owens,

The Victim Compensation and Government Claims Board (Board) received your claim on March 17, 2015.

Based on its review of your claim, Victim Compensation and Government Claims Board (Board) staff believes that the court system is the appropriate means for resolution of these claims, because the issues presented are complex and outside the scope of analysis and interpretation typically undertaken by the Board. The Board will act on your claim at the May 21, 2015 meeting. You do not need to appear at this meeting. The Board's rejection of your claim will allow you to initiate litigation should you wish to pursue this matter further.

If you have questions about this matter, please mention letter reference 99 and claim number G623624 when you call or write your claim technician/analyst at (800) 955-0045 or (916) 491-3700.

Sincerely,

Government Claims Program
Victim Compensation and Government Claims Board

cc: Corrections and Rehabilitation

    Ltr 99 Complex Issue Reject

STATE OF CALIFORNIA
GOVERNMENT CLAIMS DIVISION
PO BOX 3035
SACRAMENTO CA 95812

95812@3035

P.O. Box 290002
REPRESA CA 95671

U.S. POSTAGE≫PITNEY BOWES

ZIP 95811 $ 000.48⁰
02 1W
0001377572 APR 09 2015

FIRST CLASS

RECEIVED
Victim Compensation Board

APR 21 2015

MailRoom - C

NIXIE      957    DC 1      0004/18/15

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

BC: 95812303535      *0341-10485-09-44

# Government Claims Form

**California Victim Compensation and Government Claims Board**
P.O. Box 3035
Sacramento, CA 95812-3035

1-800-955-0045 ▪ www.governmentclaims.ca.gov

**State of California**
**Government Claims Program**

**MAR 19 2015**

**RECEIVED**

For Office Use Only
Claim No.: _623624_

## Is your claim complete?

| | |
|---|---|
| ☐ | **New!** Include a check or money order for $25 payable to the State of California. |
| ☐ | Complete all sections relating to this claim and sign the form. Please print or type all information. |
| ☐ | Attach receipts, bills, estimates or other documents that back up your claim. |
| ☐ | Include two copies of this form and all the attached documents with the original. |

## Claimant Information

**1** OWENS   THEON   O
Last name   First Name   MI

**2** Tel:

**3** Email:

**4** SAC - State Prison   RePresa   C.A.   95671
Mailing Address   City   State   Zip

**5** Best time and way to reach you: BY MAIL, ANY time

**6** Is the claimant under 18? ☐ Yes ☒ No   If YES, give date of birth: ☐ ☐ ☐
MM   DD   YYYY

## Attorney or Representative Information

**7** _____   _____   ___
Last name   First Name   MI

**8** Tel:

**9** Email:

**10** _____
Mailing Address   City   State   Zip

**11** Relationship to claimant:

## Claim Information

**12** Is your claim for a stale-dated warrant (uncashed check) or unredeemed bond? ☐ Yes ☒ No

State agency that issued the warrant:   If NO, continue to Step **13**

Dollar amount of warrant:   Date of issue: ☐ ☐ ☐
Proceed to Step **22**.   MM   DD   YYYY

**13** Date of Incident: FEB 18-2015

Was the incident more than six months ago? ☐ Yes ☒ No
If YES, did you attach a separate sheet with an explanation for the late filing? ☐ Yes ☒ No

**14** State agencies or employees against whom this claim is filed:

California DePartment of corrections And Rehadilitation - SacraMento New FolsoM State Prison - Division. SGt.k.Blessing.C/o⁵ MattheW.Martinez,(Please see attachment)

**15** Dollar amount of claim: $1,000,000.⁰⁰ (one Million Dollars)

If the amount is more than $10,000, indicate the type of civil case:
☐ Limited civil case ($25,000 or less)
☒ Non-limited civil case (over $25,000)

Explain how you calculated the amount:

From Federal and state case's for overuse of Force / Raciall hate crime ✓/serious Bodily injury.

**16** Location of the incident:

California State Prison - Sacramento (CSP-SAC)

**17** Describe the specific damage or injury:

I received active bleeding bruising /Discolored area, abrasion /Scratchs, and Swollen to the right Side of MY Face and eye to the Point the eye Swollen Shut. I received active bleeding bruising /Discoired area, abrasion /Scratchs, and Swollen to the left Side of MY Face and eye to the Point the eye swollen shut. I received Two knock out teeth and abrasion /Scratchs to MY right arm, leg and ankles.

**18** Explain the circumstances that led to the damage or injury:

On FEB 18 - 2015 i Was brutaly beatten at CSP-SAC. BY More then Five ruffian officer's. They Are Medi-tately conspired with one another to carries out their Wolf Puck STYle like attack. Their STYle of attack Was Well calculated. Four ruffian came to MY cell door. TheY alleged that i had Sassed one them. But Which Was teally them thying to Manipulate Me so they could attack, theY instructed Me to cuff uP. Because L+. C. Martincek and k. Blessing Wanted to talk With Me (Please see attachment for detail)

**19** Explain why you believe the state is responsible for the damage or injury:

Because state emPloYees attacked Me like Mobster's and caused the inJurY.

**20** Does the claim involve a state vehicle?  ☐ Yes  ☒ No

If YES, provide the vehicle license number, if known:

## Auto Insurance Information

**21**

*Name of Insurance Carrier*

| *Mailing Address* | | *City* | | | *State* | *Zip* | |
|---|---|---|---|---|---|---|---|
| Policy Number: | | | Tel: | | | | |
| Are you the registered owner of the vehicle? | | | | | ☐ Yes | | ☐ No |
| If NO, state name of owner: | | | | | | | |
| Has a claim been filed with your insurance carrier, or will it be filed? | | | | | ☐ Yes | | ☐ No |
| Have you received any payment for this damage or injury? | | | | | ☐ Yes | | ☐ No |
| If yes, what amount did you receive? | | | | | | | |
| Amount of deductible, if any: | | | | | | | |
| Claimant's Drivers License Number: | | | Vehicle License Number: | | | | |
| Make of Vehicle: | Model: | | | Year: | | | |
| Vehicle ID Number: | | | | | | | |

## Notice and Signature

**22** I declare under penalty of perjury under the laws of the State of California that all the information I have provided is true and correct to the best of my information and belief. I further understand that if I have provided information that is false, intentionally incomplete, or misleading I may be charged with a felony punishable by up to four years in state prison and/or a fine of up to $10,000 (Penal Code section 72).

Theon owem                                    3.-10-2015

*Signature of Claimant or Representative*          Date

**23** Mail the original and two copies of this form and all attachments with the $25 filing fee or the "Filing Fee Waiver Request" to: Government Claims Program, P.O. Box 3035, Sacramento, CA, 95812-3035. Forms can also be delivered to the Victim Compensation and Government Claims Board, 400 R St., 5th flr, Sacramento.

## For State Agency Use Only

**24**

*Name of State Agency*                          Fund or Budget Act Appropriation No.

*Name of Agency Budget Officer or Representative*          Title

*Signature*                                    Date

VCGCB-GC-002 (Rev. 8/04)

# AFFIDAVIT FOR WAIVER OF GOVERNMENT CLAIMS FILING FEE AND FINANCIAL INFORMATION FORM

*(Request for Permission to Proceed In Forma Pauperis)*
California Victim Compensation and Government Claims Board
P.O. Box 3035
Sacramento, CA 95812-3035

1-800-955-0045 ▪ www.governmentclaims.ca.gov

Government Claims Program

MAR 19 2015

RECEIVED
**For Office Use Only**

Claim No.:

---

**I request a fee waiver so that I do not have to pay the $25 fee to file a government claim with the Victim Compensation and Government Claims Board. I cannot pay any part of the fee.**

## Claimant Information

**1** | OWENS | THEON | | O | **2** Tel: None
Last name | First Name | MI

**3** | Claim Number (if known): | None

## Employment Information

**4** My occupation: None

My employer: None

| Employer's Mailing Address | | City | | State | Zip |

My spouse's or partner's employer:

None

| Employer's Mailing Address | | City | | State | Zip |

**5** If you are an inmate in a correctional facility, please attach a certified copy of your trust account balance, enter your inmate identification number below and skip to step **23**.

Inmate Identification Number: V-60905

## Financial Information

**6** I am receiving financial assistance from one or more of the following programs. [ ] Yes [ ] No

If no, proceed to step **7** If yes, check all that apply, then skip to step **24**.

- [ ] SSI and SSP: Supplemental Security Income and State Supplemental Payments Programs
- [ ] CalWORKS: California Work Opportunity and Responsibility to Kids Act
- [ ] Food Stamps
- [ ] County Relief, General Relief (GR), or General Assistance (GA)

**7** Number in my household and my gross monthly household income, if it is the following amount or less:

| | Number | Monthly family income | | Number | Monthly family income |
|---|---|---|---|---|---|
| **A** [ ] | 1 | $969.79 | **F** [ ] | 6 | $2,626.04 |
| **B** [ ] | 2 | $1,301.04 | **G** [ ] | 7 | $2,957.29 |
| **C** [ ] | 3 | $1,632.29 | **H** [ ] | 8 | $3,288.54 |
| **D** [ ] | 4 | $1,963.54 | **I** [ ] | There are more than 8 people in my family | |
| **E** [ ] | 5 | $2,294.79 | | Add $331.25 for each additional person. | |
| | | | | Number: [    ] Total Income: [    ] | |

If you checked a box in step **7** A through I, complete steps **9** through **15**. Then skip to step **24**.

**8** My income is not enough to pay for the common necessities of life for me and the people in my family, and also pay the filing fee. [ ] Yes [ ] No

If yes, fill in steps **9** through **24**.

## Monthly Income and Expenses

| (9) | My gross monthly pay is: | $ | | | (10) | My income changes each month: | | | Yes | | No |
|---|---|---|---|---|---|---|---|---|---|---|---|

**(11)** Number of persons living in my home:

**(12)** Other money I get each month

| | Name | Age | Relationship | | Monthly Income | | Source: | | |
|---|---|---|---|---|---|---|---|---|---|
| A | | | | | $ | A | | | $ |
| B | | | | | $ | B | | | $ |
| C | | | | | $ | C | | | $ |
| D | | | | | $ | D | | | $ |
| E | | | | | $ | E | | | $ |
| F | | | | | $ | F | | | $ |

| (15) | My total gross monthly household income: | | $ | 0.00 | (13) | Total other money: | $ | 0.00 |
|---|---|---|---|---|---|---|---|---|

| (16) | My payroll deductions are: | | | (14) | My monthly income: | $ | 0.00 |
|---|---|---|---|---|---|---|---|

| A | | $ | E | | $ |
|---|---|---|---|---|---|
| B | | $ | F | | $ |
| C | | $ | G | | $ |
| D | | $ | H | | $ |

| | | (17) | My total payroll deduction amount is: | $ | 0.00 |
|---|---|---|---|---|---|

| (18) | My monthly take home pay is | $ | 0.00 | (19) | My net monthly income: | $ | 0.00 |
|---|---|---|---|---|---|---|---|

**(20)** I own or have interest in the following property:

| A | Cash | $ | C | Cars, other vehicles, and boats (List make and year) | | | |
|---|---|---|---|---|---|---|---|
| B | Checking and savings (List banks): | | | Property | Value | | Loan Balance |
| | 1) | $ | | 1) | | $ | $ |
| | 2) | $ | | 2) | | $ | $ |
| | 3) | $ | | 3) | | $ | $ |
| | 4) | $ | D | Real estate (List addresses) | | | |
| | | | | 1) | | $ | $ |
| | | | | 2) | | $ | $ |

**(21)** My monthly expenses are:

| A | Rent or house payment | $ | J | Installment payments (specify) | | |
|---|---|---|---|---|---|---|
| B | Food and household supplies | $ | | 1) | | $ |
| C | Utilities and telephone | $ | | 2) | | $ |
| D | Clothing | $ | | 3) | | $ |
| E | Laundry and cleaning | $ | | Total installment payments: | | $ | 0.00 |
| F | Medical and dental | $ | K | Wage assignment or withholdings | | $ |
| G | Insurance | $ | L | Spousal or child support | | $ |
| H | School, child care | $ | M | Other: | | |
| I | Transportation and auto expenses | $ | | 1) | | $ |
| | | | | 2) | | $ |
| | | | | Total other expenses: | | $ | 0.00 |

| (22) | | | Total monthly expenses: | $ | 0.00 |
|---|---|---|---|---|---|

| (23) | I have attached other information that supports this application on a separate sheet. | ☒ Yes | No |
|---|---|---|---|

## Signature Section

**(24)** *I declare under penalty of perjury under the laws of the state of California that the information on this form and all the attachments is true and correct.*

*Theon owens*
_____
Signature of Claimant

3-10-2015
_____
Date

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CC.

CAES NO. 2:16-CV-02750-JAM-KJN.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230F
INTERDISCIPLINARY PROGRESS NOTES - GENERAL PSYCHIATRY.
Hosted by W. BILL WHITE. Medical Doctor (M.D.), on Wednesday, 03/11/2015, At
09:49 -10:14 hours. It shows the M.D. notes on the Plaintiff. Whereon The
M.D. notes "I have a new Problem with MY ankle, from the incident" which
shows that official's had actual knowledge of the Plaintiff serious
Medical need, but failed to respond and order X-Ray's. The M.D. notes on
the Plaintiff's Appetite as "I'm eating certain foods that are softer."
Which shows that the Plaintiff was having Problem's eating certain
foods. that were hard. The M.D. also notes some of the injuries that
the Plaintiff sustained (e.g. teeth broken, facial and eye trauma. etc...) Which
shows some of the injuries sustained to the Plaintiff."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

State of California

Interdisciplinary Progress Notes- General Psychiatry

Department of Corrections and Rehabilitation

CDCR MH-7230F

| Identifying | Date: Wednesday, 2015/03/11 | Time: 09:49-10:14 | Location: CMF CTC-B-Side |
|---|---|---|---|
| Information | Level of Care: ☐ CCCMS ☐ EOP ☐ OHU ☒ MHCB | Custody Housing: ☐ GP ☐ RC ☐ ASU ☒ CTC ☐ SNY ☐ SHU | |

**Identifying Factors**: Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3). Custody Level: Maximum. Placement Score: 532. Custody Suffix: S. Received CDCR: 12/09/2004. **EPRD: 12/24/2021**. Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission**: From Referral 7230: **Brief Reason for Admit**: Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant. **Main reason for admit**: 'Unpredictable.' **Reason for Referral**: DTS. Per IP 02/22/15: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

## II. Comments / Data:

**Psych Rx**: Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours.
Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization.
Lithium Carbonate ER 450 mg po QAM & ER 600 mg po QHS  for mood stabilization.
Stelazine (trifluoperazine) 2 mg po Q4H PRN agitation/psychosis, NTE 2x in 24 hours.  Added 03/02/15.

**Medical Rx**: Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bactrim DS to 2/24. Naproxen PRN.

**Allergies per Maxor**: Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins; Haldol (haloperidol).

**EKG**: 02/21/15: Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.

**Labs**: 02/26/15: Lipid Panel: WNL; cholesterol 185; HDL 49. CMP: WNL. CBC/Diff: WBC: 3.3 (L); RBC: 5.86 (h); MCH 26.2 (L); ANC: 1327 (L); AMC: 162 (L). FT4: 1.2. TSH: 1.24. HgbA1C: 5.5.  Lithium: 0.7. Valproic Acid: 87.6. RPR: NR.  02/22/15: UDS: negative. See also Dr. Wieland's H&P for recent CSP-Sac labs.

**Most Recent Shift Reports** 2w, 3w, 1w: 2015/03/10-11: **2w**: Pacing in cell. Window half covered with papers. **3w**: Admits 5/10 depression, "bec of life in general." Denies SI, HI, AH, VH. Asking if it was documented that Soymilk will continuously be given to him, bec he is lactose intolerant.  It was never documented that IP is allergic to milk. Should an iGE blood test be requested? **1w**: Pt resting. No acute distress noted. Movements & repositioning observed. Monitoring for safety continues.

| **S** Subj. | **General Dispo**: "I'm a little tired; didn't want to get up because of the rain; I like it." "I have a new problem with my ankle, from the incident. **Activities**: "I'm doing a lot of writing.  I'll go to yard if they ask me." **Sleep**: "I slept good. "**Appetite**: "I'm eating certain foods that are softer." **Rx Response**: "I've been taking it, but not getting long-acting lithium." -To be addressed by LPT Fune. |
|---|---|
| **O** Objective | Seen for psychiatry contact ● IDTT Room ● Confidential. Also for IDTT with Dr. Brogdon, RT Moore, Dr. Heldt, CC1 Moran, LPT Fune.  **Presentation**: 6' 2" Overweight black male with dreaded hair, good eye contact, dressed in jumpsuit seen in IDTT Room. **Speech**: Normal speech expression today, but still talkative, expressive. **Mood**: "I don't know; sometimes I feel real good, it fluctuates, still waiting for the lithium to catch up. I feel all right." **Affect**: Anxious affect, but now presents as overall calmer. **S/I**: "I haven't had an opportunity to think about those things; I did have thoughts about hurting but not killing myself yesterday." **H/I**: "I haven't thought about doing something. It's not as much as when I came here." **Psychosis**: "No; I've only hear voices when I get mad, last time 4 months ago." **Cognitive**: Appears intact, oriented. **Movement/AIMS**: Normal range.  No overt evidence of TD  seen. |
| **A** | **Dx** Axis I: 296.80 Bipolar Disorder NOS. 304.80 Polysubstance Dependence (cannabis, PCP, Alcohol). **Axis II**: 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. **Axis III**: Low back pain. History of leucopenia, granulocytopenia.  Recent facial & eye trauma, broken teeth. **Axis IV**: Incarceration.  Recent altercation with custody.  Mother's death November 2014; grandmother's death December 2014. **Axis V**: GAF: 30. |
| | **Assess** IP with hx of mood instability suggestive of bipolar disorder, significant axis II cluster B issues, here in MHCB due to recent events at CSP-Sac in which he was physically injured; relatively stable on current Rx.  Was seen as ready for discharge to EOP, but recently aid S/I again; APP referral pending but could be reassessed depending on ultimate endorsement, e.g. to PBSP. |
| **P-Plan** | Continue Rx as above for indications listed, including Stelazine PRN trial as requested by IP. Li/VPA levels (above) are in acceptable range.  Continue privileges as follows: full issue, reading materials, extra blanket, eyeglasses, yard, shaving privileges, eyeglasses, crayon, pen filler, & jumpsuit.  EOP DCS in shared files, updates 3/08/15 for APP referral.  Re-discharged (referred) to **APP**, 03/08/15. |
| **E-Education** | Discussed: Coping strategies.  Discharge planning.  Rx revisited.  IP reports he's able to go to court safely. |

*W B White* (signature)

Psychiatrist's Name: W. B. White, M.D. Signature:

| 1. **Disability Code:** | 2. **Accommodation:** | 3. **Effective Communication:** | Inmate's Name (Last, First, MI), CDC Number, DOB: |
|---|---|---|---|
| ☐ TABE Score <4.0 | ☐ Additional Time | ☒ P/I Asked questions | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I Summed information | **Owens**, Theon |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please Check one:** | |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not reached* ☒ Reached | **V60905** |
| ☒ Not Applicable | ☐ Other* | | |
| 4. Comments: **Tabe:** 4.5 (01/30/2015). NCF. | | | DOB: 08/12/1982   **CMF MHCB B-02** |

# APPENDIX COVER PAGE:

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

DD.

CAES NO. 2:16-CV-02750-JAM-KJN.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7230 (REV.02/13)
INTERDISCIPLINARY PROGRESS NOTES.
"Hosted by Registered Nurse (R.N.) FUNE, on 3/11/2015. At 1320 hours. It
shows the R.N.'s notes on the Plaintiff. Whereon the R.N. notes "MY ankle
is hyperextended. It's Painful. i want to see a doctor. I can still walk on
it though." Which shows the Plaintiff was complaining of his ankle
being hurt, but was not seen, due to him being able to walk on it. The R.N.
notes " Inmate/Patient Attended his IDTT. Inmate/Patient reported feeling
like his Ankle is hyperextended & would like to see a doctor for it." Which
shows that Prison officials were fully aware of the serious and Painful
medical need, but failed to respond reasonably, by Providing adequate
treatment (x-Ray's), due to them being deliberately indifferent to the
Plaintiff's Pain and suffering".

NUMBER OF PAGE'S TO THIS APPENDIX: __1__ PAGE'S.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INTERDISCIPLINARY PROGRESS NOTES**
CDCR 7230 (REV. 02/13)

Page 1 of 1

| DATE mm/dd/yy | TIME hh:mm AM/PM | |
|---|---|---|
| 03-11-15 | 1320 | S" MY ANKLE IS HYPEREXTENDED, IT'S PAINFUL, I WANT TO SEE A DOCTOR, I CAN STILL WALK ON IT THOUGH." "I DON'T WANT THE CAPSULE LITHIUM, THEY ARE NOT EXTENDED REVERSE." |
| | | D. I/P ATTENDED HIS IDTT. I/P REPORTED FEELING LIKE HIS ANKLE IS HYPEREXTENDED & WOULD LIKE TO SEE A DOCTOR FOR IT. C/O CAPSULE LITHIUM NOT EFFECTIVE. I/P REPORTS NOT SLEEPING WELL DUE TO THE RAIN. REFUSED PAIN RELIEF PRN IE: MOTRIN OR MOTRIN FOR ANKLE DISCOMFORT. |
| | | A. RISK FOR VIOLENCE DIRECTED TO SELF / OTHERS R/T MENTAL ILLNESS AEB RECENT DESTRUCTIVE BX'S. RISK FOR INEFFECTIVE COPING R/T MENTAL ILLNESS AEB NEGATIVE BX'S TOWARDS SELF & OTHERS. RISK FOR POTENTIAL SUICIDE R/T SUICIDAL THREATS AEB SUICIDAL IDEATIONS. |
| | | P. MONITOR FOR STANDARD SAFETY PRECAUTIONS AS ORDERED BY DOCTOR. MONITOR FOR MEDICATION COMPLIANCE & REPORT W/ DOCUMENTATION ANY S/E. |
| | | E. TEACH I/P TO UTILIZE COPING SKILLS THAT HAVE WORKED IN THE PAST THAT HELPED I/P REFRAIN FROM DESTRUCTIVE BX'S & SUICIDAL IDEATIONS. ————— FUND"2 |

| Institution | | Housing Unit |
|---|---|---|
| CMF - MHCB | | B·02 |

1. Disability Code:
☒ TABE score ≤ 4.0
☐ DPH☐ DPV☐ LD
☐ DPS☐ DNH
☐ DNS☐ DDP
☒ Not Applicable

2. Accommodation:
☐ Additional time
☐ Equipment☐ SLI
☐ Louder☐ Slower
☒ Basic ☐ Transcribe
☐ Other*

3. Effective Communication:
☐ P/I asked questions
☒ P/I summed information
Please check one:
☐ Not reached*☒ Reached
*See chrono/notes

CDCR#: V60905
Last Name: OWEN
First Name: THEO    MI:
DOB: 08·12·82

4. Comments: T·S·-2.6

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

E.E.

CAES NO. 2:16-CV-02750-JAM-KJN.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7230 INTERDISCIPLIN-ARY PROGRESS NOTES.

"Hosted by Registered Nurse (R.N.). J. ANGELES. on 03/12/2015. At 0900 hours, It Shows the R.N.'s notes on the Plaintiff on the date she noted. The R.N. wrote the Plaintiff as saying "I'M okay. I just need to see the doctor for my ankle." Which shows that Prison officials were made aware again by the Plaintiff of the injured ankle. but again failed to respond resonablely. by ordering x-rays and treatment. The R.N noted "No swelling or redness noted on left ankle. Went out for Yard." Which shows her noted reasons for her "Deliberate Indifference." as the injury tuned out to be a tiny avulsion fracture arising from the Medial Malleolus. inwhich is considered a serious bodily injury. Per the "2015" California code of Regulations Title 15. crime Prevention and corrections Division 3. Article 1. Section 3000 Definitions Page #15 Serious Bodily Injury."

NUMBER OF PAGE'S TO THIS APPENDIX: __1__ PAGE'S.

STATE OF CALIFORNIA
**INTERDISCIPLINARY PROGRESS NOTES**
CDCR 7230 (REV. 06.)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| DATE mm/dd/yy | TIME hh:mm AM/PM | |
|---|---|---|
| 03/12/15 | 0900 | S - "I'm okay." " I just need to see the doctor for my ankle". |
| | | O- A/O x 3, ambulates with steady gait, denies SI/ HI , no SIB, reading and writing in bed, |
| | | no behavioral issues. No swelling or redness noted on left ankle. Want ont for appt. grv |
| | | A – Ineffective Individual Coping R/T Bipolar Disorder AEB history of altercation with cops, |
| | | provoking staff. |
| | | P – Continue with rounds as ordered. Continue with pt. education |
| | | E- Advised to verbalize thoughts and concerns in a calm manner, take meds as ordered, |
| | | participate in treatment plan. I/P receptive. ---J. Angeles RN |
| 03/12/15 | 1240 | Resting and reading. Requesting to speak with Sgt. Sgt not here at this time, I/P replied, |
| | | " Okay. Thank you". J. Angeles RN |

| Institution CMF-MHCBF | Housing Unit B-02 |
|---|---|

| 1. Disability Code: ☐TABE score ≤ 4.0 ☐DPH ☐DPV ☐LD ☐DPS ☐DNH ☐DNS ☐DDP ☐ Not Applicable | 2. Accommodation: ☐Additional time ☐Equipment ☐SLI ☐Louder ☐Slower ☐Basic ☐Transcribe ☐Other* | 3. Effective Communication: ☐P/I asked questions ☐P/I summed information Please check one: ☐Not reached* ☐Reached *See chrono/notes | CDCR# : V60905 Last Name: OWENS First Name: THEON DOB: 08/12/82 | MI |

4. Comments:

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

FF.

CAES NO. 2:16-CV-02750-JAM-KJN.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: (DCR MH-7230F INTERDIS-
CIPLINARY PROGRESS NOTES - GENERAL PSYCHIATRY.
Hosted by W. BILL WHITE. Medical Doctor (M.D.), on Friday 03/13/2015,
At 09:15-09:20, It shows the M.D.'s notes on the Plaintiff. Whereon the
M.D. noted "Still asking to see M.D. reason: Pain on left ankle. No
swelling or redness on ankle Pain six out of ten when hyper extended".
Which shows that Official's had actual knowledge, but through their
"Deliberate Indifference". failed to respond reasonably, by Providing
adequate treatment. The M.D. noted the Plaintiff as saying "I am
eating certain foods that are softer". Which shows that the Plaintiff
was having trouble at this time eating hard foods and Performing
that daily activity."

NUMBER OF PAGE'S TO THIS APPENDIX: __1__ PAGE'S.

**State of California**

Interdisciplinary Progress Notes- General Psychiatry

**Department of Corrections and Rehabilitation**

CDCR MH-7230F

| Identifying | Date: Friday, 2015/03/13 | Time: | 09:15-09:20 | | Location: CMF CTC-B-Side |
|---|---|---|---|---|---|
| Information | Level of Care: ☐ CCCMS ☐ EOP ☐ OHU ☒ MHCB | | Custody Housing: ☐ GP ☐ RC ☐ ASU ☒ CTC ☐ SNY ☐ SHU | | |

**Identifying Factors**: Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3). Custody Level: MHCB. Placement Score: 532. Custody Suffix: S. Received CDCR: 12/09/2004. **EPRD: 12/24/2021**. Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission**: From Referral 7230: Brief Reason for Admit: Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO or this time. Non compliant. **Main reason for admit**: 'Unpredictable.' **Reason for Referral**: DTS. **Per IP 02/22/15**: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

## II. Comments / Data:

**Psych Rx**: Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours.
Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization.
Lithium Carbonate ER 450 mg po QAM & ER 600 mg po QHS for mood stabilization.
Stelazine (trifluoperazine) 2 mg po Q4H PRN agitation/psychosis, NTE 2x in 24 hours. Added 03/02/15.

**Medical Rx**: Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bactrim DS to 2/24. Naproxen PRN.
**Allergies per Maxor**: Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins, Haldol (haloperidol).

**EKG**: 02/21/15: Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.

**Labs**: 02/26/15: Lipid Panel: WNL; cholesterol 185; HDL 49. CMP: WNL. CBC/Diff: WBC: 3.3 (L); RBC: 5.86 (h); MCH 26.2 (L); ANC: 1327 (L); AMC: 162 (L). FT4: 1.2. TSH: 1.24. HgbA1C: 5.5. Lithium: 0.7. Valproic Acid: 87.6. RPR: NR. 02/22/15: UDS: negative. See also Dr. Wieland's H&P for recent CSP-Sac labs.

**Most Recent Shift Reports** 2w, 3w, 1w: 2015/03/12-13: **2w**: Still asking to see MD re: pain on left ankle. No swelling or redness on ankle. Pain 6/10 when hyper extended. Denies SI. Reading or writing. Out for yard. Walking with no limping noted. **3w**: Talking to peer across his cell (B09). Denies psych issues. Insisting to send a confidential letter, he wants custody to sign it but not read it. **1w**: D/C on 3/13/15. Resting in bed most of the shift. No complaints.

| **S** Subj: | **General Dispo**: IP reported doing OK. Safe to go to court? "Yes." **Activities**: IP has continued his writing. Attended yard yesterday. **Sleep**: Recent: "I slept good."**Appetite**: Recent: "I'm eating certain foods that are softer." **Rx Response**: Not addressed today. Recent issues about belief he was receiving immediate release lithium not mentioned in shift report, so hopefully resolved. |
|---|---|
| **O** | Seen for psychiatry contact ● Front Lobby. ● Non-Confidential as IP was being prepared to leave for court. |
| Ob-jec-tive: | **Presentation**: 6' 2" Overweight black male with dreaded hair, poor eye contact, dressed in jumpsuit seen in front lobby. **Speech**: Quiet today; minimal speech. **Mood**: Didn't state. **Affect**: Reserved; appeared preoccupied as he was being prepared for travel to court. **H/I**: Recent: "I haven't thought about doing something. It's not as much as when I came here." **Psychosis**: Recent: "No; I've only hear voices when I get mad, last time 4 months ago." **Cognitive**: Appears intact, baseline. **Movement/AIMS**: Normal range. No overt evidence of TD now. |
| **A** | **Dx** | **Axis I**: 296.80 Bipolar Disorder NOS. 304.80 Polysubstance Dependence (cannabis, PCP, Alcohol). **Axis II**: 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. **Axis III**: Low back pain. History of leucopenia, granulocytopenia. Recent facial & eye trauma, broken teeth. **Axis IV**: Incarceration. Recent altercation with custody. Mother's death November 2014; grandmother's death December 2014. **Axis V**: GAF: 30. |
| | **As-sess** | IP with hx of mood instability suggestive of bipolar disorder, significant axis II cluster B issues, here in MHCB due to recent events at CSP-Sac in which he was physically injured; relatively stable on current Rx. Was recently seen as ready for discharge to EOP, but recently said he had S/I again at prospect of returning to CSP-Sac; APP referral pending but could be reassessed depending on ultimate endorsement, e.g. to PBSP. IP anticipated will just be out to court for the day. |
| **P**-Plan | | Continue Rx as above for indications listed, including Stelazine PRN trial as requested by IP. LiVPA levels (above) are in acceptable range. Continue privileges as follows: full issue, reading materials, extra blanket, eyeglasses, yard, shaving privileges, eyeglasses, crayon, pen filler, & jumpsuit.<br>EOP DCS updated 3/08/15 for APP referral. Re-discharged (referred) to **APP**, 03/08/15. |
| **E**-Education | | IP reports he's able to go to court safely today, which was the entire focus of our contact. |

*W B White* (signature)

**Psychiatrist's Name: W. B. White, M.D. Signature:**

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Inmate's Name (Last, First, MI), CDC Number, DOB: |
|---|---|---|---|
| ☐ TABE Score <4.0 | ☐ Additional Time | ☒ P/I Asked questions | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I Summed information | **Owens**, Theon |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please Check one:** | |
| ☐ DNS ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not reached* ☒ Reached | **V60905** |
| ☒ **Not Applicable** | ☐ Other* | | |
| 4. Comments: **Tabe**: 4.5 (01/30/2015). NCF. | | | DOB: 08/12/1982 **CMF MHCB B-02** |

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN

G G.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230A (Rev. 01/12)
INTERDISCIPLINARY PROGRESS NOTES-GENERAL.
"Hosted by Psychologist (PSYC) LATOYA BROGDON. On 03/21/2015. At 1145
hours. It shows the PSYC's notes on the Plaintiff. The PSYC noted "He reports
having problems eating food he is being provided (hard fruit and
vegetables)." Which shows that the Plaintiff was having problems eating
hard food's. The PSYC notes "He wants to get documentation 'as soon as
possible' as things tend to get lost. Doctor's tend to minimize things." Which
shows that this Plaintiff is well aware of C.D.C.R.'s history and the California
correctional peace officers Association (CCPOA) all for one and one for all "code of
silence" Policy. The PSYC notes "They did not document everything like they should
have, when I came here, things were done correctly." which shows the claims
the Plaintiff ensure's against defendants-ALICE OKOROIKE And CORY
MARTINCEK, therein the complaint are true, as the corrected CDCR 7219 (Rev.
11/05) Medical Report of injury or unusual occurrence and Exhibit [L] clearly
point out. The PSYC notes the Plaintiff as saying "so i want the documentation
so it's not my word against five other people." Which shows that the Plaintiff
is fully aware of the defendants Plan' not to tell on each other (code of silence)."
NUMBER OF PAGE'S TO THIS APPENDIX: ___1___ PAGE'S.

State of California

Department of Corrections and Rehabilitation

**Interdisciplinary Progress Notes – General**

CDCR MH-7230A (Rev. 01/12)

## Comments (Use SOAPE Format)

**Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant.

**Main reason for admit:** 'Unpredictable'  **Reason for Referral:** DTS

IP (Owens V60905) was seen in confidential treatment module for his 1:1 daily clinical contact.

S: IP reports he is doing "fair." He reports having problems eating the food he is being provided (hard fruit and vegetables). He reports having thoughts to hurt self at times. But no specific thoughts or plans, he thought about trying to hang self, but has no way to do it in the cell. He feels safe with his full issue. IP asked what a Ph.D. means, says he is writing a letter to someone and he wants to know how to describe them to the person. He reported that his case has to go back to court. He reported that he submitted his release of information, and wants to know why he has not heard anything yet. He wants to get documentation "as soon as possible as things tend to get lost. Doctors tend to minimize things. They did not document everything like they should have. When I came here, things were done correctly, so I want the documentation so it's not my word against five other people. He denies homicidal ideations, plans, and intent.

O: IP wearing white t-shirt and jumpsuit. Demeanor is slightly agitated. ADLs appear intact. Mental status was generally intact. IP was oriented x 4. Speech was fluent and spontaneous. Thought processes were linear, and goal oriented. Thought content was not bizarre, but focused on physical injuries sustained from the incident at SAC. He continues perseverate about these events, and does not demonstrate any interest in focusing on mental health issues. Insight and judgment appear limited. No problems with sleep or appetite were reported. He denied any auditory hallucinations since a week. Visual hallucinations (shadows on the wall) were reported as recently as today. He was not noted to be responding to internal stimuli.

A: IP does not appear to be in distress at this time, but rather preservative. Diagnoses: Bipolar I disorder, Most recent episode Manic (with mood congruent psychotic features); Substance Use Disorder (Alcohol, Cannabis, PCP); Antisocial Personality Disorder; Borderline Personality Disorder; V62.5 Imprisonment or Other Incarceration; and (newly added) V62.4 target of perceived adverse discrimination or persecution.

P: IP referred to APP LOC and is awaiting placement at this time. Continue MHCB protocol which includes monitoring for safety; medication management; 1:1 daily clinical interaction to provide supportive therapy; recreation and yard as appropriate and weekly IDTT.

E: Encouraged IP to notify staff of any problems. As above.

| Date: | 2015.03.21 | Time: | 1145 | Housing: | B-02 |
|---|---|---|---|---|---|
| Institution: | CMF-MHCB | Clinician: | L. Brogdon, Ph.D. | Signature: | |

1. **Disability Code:**
☐ TABE Score ≤ 4.0
☐ DPH ☐ DPV ☐ LD
☐ DPS ☐ DNH

☐ DNS ☐ DDP
☒ Not Applicable

2. **Accommodations:**
☒ Additional Time
☐ Equipment ☐ SLI
☐ Louder ☒ Slower

☒ Basic ☐ Transcribe
☐ Other*

3. **Effective Communication:**
☒ P/I Asked Questions
☒ P/I Summed Information
**Please Check One:**
☐ Not Reached* ☒ Reached
*See chrono/notes

**Name, CDC#, DOB**
**Owens, Theon**
**V60905**
**08/12/82**

4. **Comments:** TABE=4.5 (Previous 2.4)

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750- . - JAM-KJN.

H H.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR MH-7230F INTERDISCIPLIN-
ARY PROGRESS NOTES - GENERAL PSYCHIATRY.
Hosted by Medical Doctor (M.D.) W. BILL WHITE, on Monday 03/23/2015. At 12:15-
12:40. It Shows the M.D.'s notes on the Plaintiff. Whereon the M.D. notes "Im
ok I want to get MY 115 heard here, because I hear the L.t. is fair, not
racist." Which Shows that official's Were Made aware of the Plaintiff
concerns to have the Rules violation Report (R.V.R.) heard by a neutral
Party, due to the Facts that every correctional staff at CSP-SAC being
aware of the event, and the conflict of interest it would cause to have
Staff at CSP-SAC hear the R.V.R. knowing that it would cause a whistle blowing
effect and infrace their "code of Silence". and that due Process violation's were
Sure to Follow if the R.V.R. Was heard at CSP-SAC, See coMPlaint claims
against defendants-JASON SCHULTZ #70063, RYAN COUCH #61097, And
LAVRA ELDRIDGE, to See Why. The M.D. noted "I eat, but I can't eat the onions".
Which shows that the Plaintiff was having Problems eating hard Foods. From
his Serious injuries."

NUMBER OF PAGE'S TO THIS APPENDIX: ____1____ PAGE'S.

State of California     Department of Corrections and Rehabilitation

**Interdisciplinary Progress Notes- General Psychiatry**

CDCR MH-7230F

| **Identifying** | **Date:** Monday, 2015/03/23 | **Time:** 12:15-12:40 | | **Location:** CMF CTC-B-Side |
|---|---|---|---|---|
| **Information** | Level of Care: ☐ CCCMS ☐ EOP ☐ OHU ☒ MHCB | | Custody Housing: ☐ GP ☐ RC ☐ ASU ☒ CTC ☐ SNY ☐ SHU | |

**Identifying Factors:** Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3). Custody Level: Maximum. Placement Score: 532. Custody Suffix: S. Received CDCR: 12/09/2004. **EPRD: 12/24/2021.** Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission:** From Referral 7230: Brief Reason for Admit: Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time. Med compliant. **Main reason for admit:** 'Unpredictable.' **Reason for Referral:** DTS. Per IP 02/22/15: "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

## II. Comments / Data:

**Psych Rx:** Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours.
Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization.
Lithium Carbonate ER 450 mg po BID for mood stabilization.
Stelazine (trifluoperazine) 2 mg po Q4H PRN agitation/psychosis, NTE 2x in 24 hours. Added 03/02/15.

**Medical Rx:** Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bactrim DS to 2/24. Naproxen PRN.

**Allergies per Maxor:** Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins, Haldol (haloperidol).

**EKG:** 02/21/15: Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.

**Labs:** 03/17/15: Renal Function Panel: WNL. CBC/Diff: wnl X MCH 26.1 (L); MCHC 31.7 (L), RDW 16.7 (H), Abs. monocytes 184 (L). Lithium 0.5. 03/16/15: U/A: WNL. 02/26/15: Lipid Panel: WNL; cholesterol 185; HDL 49. CMP: WNL. CBC/Diff: WBC: 3.3 (L); RBC: 5.86 (h); MCH 26.2 (L). ANC: 1327 (L); AMC: 162 (L). FT4: 1.2. TSH: 1.24. HgbA1C: 5.5. Lithium: 0.7. Valproic Acid: 87.6. RPR: NR. 02/22/15: UDS: negative. See also Dr. Wieland's H&P for recent CSP-Sac labs.

**Most Recent Shift Reports 2w, 3w, 1w:** 2015/03/22-23: **2w:** Calm & quiet, reading in bed. Lying on bed writing some notes. No complain. Asked to remove papers from back window & light coverings. Which he did. **3w:** Happy with his kosher on this shift. "this is what I am talking about. I got bread & dessert!" Reading in bed. @2145 given naproxen for back pain 6/10. **1w:** Requesting to see medical doctor for complaints of dry skin. Resting. Calm & quiet. No disruptive behavior noted.

| **S**<br>Subj | **General Dispo:** "I'm OK. I want to get my 115 heard here because I hear the Lt. is fair, not racist." **Activities:** IP has continued writing a lot, & working out. Reports no interest in yard. **Sleep:** "I'm still sleeping but have to wait for Lopez to stop banging; he stopped at 2 AM last night; I don't say anything so he doesn't know if I'm up or sleep." **Appetite:** "I eat, but I can't eat the onions." **Rx Response:** IP reported back to taking his medications regularly, using PRNs. |
|---|---|
| **O**<br>Ob-<br>jec-<br>tive: | Seen for psychiatry contact ● IDTT Room ● Confidential.<br><br>**Presentation:** 6' 2" overweight black male with dreaded hair, good eye contact, dressed in jumpsuit seen in IDTT Room. **Speech:** Talkative, energetic speech, but somewhat able to take turns in conversation. Rambling. Elevated today. **Mood:** "Fair". **Affect:** Able to engage, but somewhat hypomanic. **S/I:** "No, just thoughts of hurting myself, not suicidal." **H/I:** "No." **Psychosis:** Recent: "No; I've only hear voices when I get manic." "I heard some earlier in week." **Cognitive:** Appears intact, baseline. **Movement/AIMS:** Normal range. No overt evidence of TD seen. No tremor in evidence; IP was well-observed. |
| **A**<br>Dx<br><br>As-<br>sess | **Axis I:** 296.80 Bipolar Disorder NOS. 304.80 Polysubstance Dependence (cannabis, PCP, Alcohol). **Axis II:** 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. **Axis III:** Low back pain. History of leucopenia, granulocytopenia. Recent facial & eye trauma, broken teeth. **Axis IV:** Incarceration. Recent altercation with custody. Mother's death November 2014; grandmother's death December 2014. **Axis V:** GAF: 30.<br><br>IP with hx of mood instability suggestive of bipolar disorder, significant axis II cluster B issues, here in MHCB due to recent events at CSP-Sac in which he was physically injured; relatively stable on current Rx. Was recently seen as ready for discharge to EOP, but recently said he had S/I again at prospect of returning to CSP-Sac; APP referral pending but could be reassessed depending on ultimate endorsement, e.g. to PBSP. Had cutting incident yesterday, frustration, now says better. |
| **P-Plan** | Continue Rx as above for indications listed. Li/VPA levels (above) are in acceptable range. Continue privileges as follows: full issue, reading materials, extra blanket, eyeglasses, yard, shaving privileges, eyeglasses, crayon, pen filler, & jumpsuit. EOP DCS updated 3/08/15 for APP referral. Re-discharged (referred) to **APP**, 03/08/15. |
| **E-Education** | Discussed: Rx issues. Strategies for self-calming attempted. |

*W B Whitams*

**Psychiatrist's Name: W. B. White, M.D. Signature:**

| 1. **Disability Code:**<br>☐ TABE Score <4.0<br>☐ DPH ☐ DPV ☐ LD<br>☐ DPS ☐ DNH<br>☐ DNS ☐ DDP<br>☒ **Not Applicable**<br>4. Comments: **Tabe:** 4.5 (01/30/2015). NCF. | 2. **Accommodation:**<br>☐ Additional Time<br>☐ Equipment ☐ SLI<br>☐ Louder ☐ Slower<br>☒ Basic ☐ Transcribe<br>☐ Other* | 3. **Effective Communication:**<br>☒ P/I Asked questions<br>☒ P/I Summed information<br>**Please Check one:**<br>☐ Not reached* ☒ Reached | Inmate's Name (Last, First, MI), CDC Number, DOB:<br><br>**Owens**, Theon<br><br>**V60905**<br><br>DOB: 08/12/1982    **CMF MHCB B-02** |
|---|---|---|---|

Confidential Saved 2015-09-23T14:44:03Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

```
I I.
APPENDIX.
```

DESCRIPTION OF THIS APPENDIX: MENTAL HEALTH CRISIS
BED DISCHARGE SUMMARY.
Hosted by W. BILL WHITE. MEDICAL DOCTOR(M.D.) on 03/23/2015. It shows
the M.D. notes on the Plaintiff. Whereon the M.D. notes "Recent facial and
eye trauma, broken teeth.... He attended dental clinic once." Which shows
some of the injuries sustained to the Plaintiff and the treatment provided
for theos injuries. The M.D. notes "His bilateral eyelid swelling and lefe eye
redness resolved over the course of 10 days here, but he reported some
perceived different in light perception between his two eyes at day 10.
and so was referred to medical". Which shows an appropriate time line
it took for the Plaintiff's eye injuries to resolve, and the vision
problems the Plaintiff began to experience".

NUMBER OF PAGE'S TO THIS APPENDIX: ___1___ PAGE'S.

# MENTAL HEALTH CRISIS BED DISCHARGE SUMMARY

| Admitting Date: 02/21/2015 from CSP Sac PSU | Discharge Date: 2015/03/08 to APP. |
|---|---|

**Identifying Factors:** Theon OWENS V60905 is a 32-year-old black male admitted 02/21/15 from CSP-Sac. Recently 06/24/14-12/09/14 at CHCF Stockton. Not previously at CMF inside or MHCB, but has been at CMF DSH several times. Now in Sac PSU (A-3). Custody Level: Maximum. Placement Score: 532.
Custody Suffix: **S**. Received CDCR: 12/09/2004. **EPRD: 12/24/2021**. Max Date: 12/25/2021. Commitment Offense: P245(D)(2).

**Reason for admission:** From Referral 7230: **Brief Reason for Admit:** Altercation w cops, 'danger to self'. His judgment impaired; has teeth broken, he provokes others, remains unpredictable. Not psychotic. Well known to staff CSP Sac OHU; has h/o IEX – none recently. Mainly admit since unpredictable. Not DTO at this time.
Med compliant. **Main reason for admit:** 'Unpredictable.' **Reason for Referral:** DTS.
**Per IP 02/22/15:** "I've been better. Dr. Gyorkey, Sr. Psychologist, wanted to get me off the unit, not the best place for me to be after what just happened with the officers. I lost 2 teeth, injury to my face, eyes swollen shut, officers afraid I'd retaliate against all officers. He thought I ought to leave for a minute until this investigation plays out. So they asked if I wanted to come to Vacaville, & I said I really wanted revenge, so they'd go through what I went through. Then I thought about suicide by cop, but not here. I felt like I HAD to do something; I was going to gas custody there."

| Discharge Diagnosis With ICD Codes | **Axis I:** 296.80 Bipolar Disorder NOS. ● 304.80 Polysubstance Dependence (cannabis, PCP, Alcohol). |
|---|---|
| | **Axis II:** 301.7 Antisocial Personality Disorder. 301.83 Borderline Personality Dxo. |
| | **Axis III:** Low back pain. History of leucopenia, granulocytopenia. Recent facial & eye trauma, broken teeth. |
| | **Axis IV:** Incarceration. Recent altercation with custody. Mother's death November 2014; grandmother's death December 2014. |
| | **Axis V:** GAF: 40. |

**Hospital Course/Response to Treatment:** He was provided Counseling, IDTT & Medication Management. Early on he spent a lot of time & energy venting about reported recent events at CSP-Sac including takedown where he was reportedly injured. He calmed somewhat over the coming week, but still reported he wanted CO's involved in the takedown to have to suffer, e.g. with disfiguring broken teeth of their own, but denied any plans or thoughts of killing anyone. Once he'd prepared paperwork (602, form-22), he appeared to calm further, though was still lobbying to go to an Ad-Seg Hub rather than return to CSP-Sac PSU program, since he presumed there might be an ongoing investigation. He reported thoughts of returning to his historic practice of SIB for relief, but denied any actual suicidal ideation. As he improved, he shifted back to practice of complaining about what appeared to be more minor things, e.g. when & how many soymilks he received as a part of his kosher diet. In discharge IDTT we explained that we could not address custody issues such as specifically what institution he'd go to at D/C. but that we felt that EOP was still his appropriate level of care, & IP was not in disagreement. **03/08/15 Update:** 2 days after EOP discharge, just as CSP-Sac was arriving for pickup, IP reported he was suicidal, so discharge was rescinded. Revisiting issue at 03/08/15 IDTT, team decided APP was most appropriate, given IP's reports of H/I, albeit waning, & conditional S/I if returned to CSP Sac. Beyond our current scope is the possibility that a transfer to PBSP PSU might resolve IP's concerns & support an EOP discharge with resolution of S/I & H/I, but might warrant exploration by CSP-Sac C&PR. **03/23/15 Update:** IP reported with passage of time that his H/I decreased, mitigated by time & by thoughts about his family's values, but he continued to perseverate about damage he felt was done to him. He reported bouts of feeling manic, but ultimately was able to regroup after each brief bout of anger & activation. He did some cutting, but for relief of extremities of emotions, he said, but not for suicidal intent.

**Labs & Medical:** IP was seen for admission physical & Axis III medical issues above were addressed. He attended dental clinic once. His bilateral eyelid swelling & left eye redness resolved over the course of 10 days here, but he reported some perceived different in light perception between his two eyes at day 10, & so was referred to medical. He also complained of back pain, & that naproxen & ibuprofen were not adequate, but since not acute will likely be deferred to PCP at his receiving institution post-discharge.

**Medical Rx:** Chlorhexidine swish & spit. Ibuprofen PRN. Milk of Magnesia. Multivitamin. Bactrim DS to 2/24. Naproxen PRN.

**Allergies per Maxor:** Prolixin (fluphenazine); Lactose; Navane (thiothixene); Penicillins, Haldol (haloperidol).

**EKG:** 02/21/15: Machine read. Heart Rate: 75 bpm. QT/QTc: 366/409. Sinus Rhythm. Normal ECG.

**Labs:** 02/26/15: Lipid Panel: WNL; cholesterol 185; HDL 49. CMP: WNL. CBC/Diff: WBC: 3.3 (L); RBC: 5.86 (h); MCH 26.2 (L); ANC: 1327 (L); AMC: 162 (L). FT4: 1.2. TSH: 1.24. HgbA1C: 5.5. Lithium: 0.7. Valproic Acid: 87.6. RPR: NR.
02/22/15: UDS: negative. See also Dr. Wieland's H&P for recent labs from CSP-Sac.

**Psych Medications & Response:** IP complained about Depakote periodically throughout his stay, but also reported feeling "a little high" at end of stay, so options for more consistent mood stabilization were discussed. We felt that his personality disorder issues were likely a major contributor to this phenomenon, but also that two mood stabilizers were likely justified to contribute to the possibility of maximum control of himself. Since no longer on PC2602/Keyhea, he said he was unwilling to take Zyprexa, in part due to large number of family members who have diabetes or have died from complications of diabetes, but reported past positive response to Stelazine as a PRN, so this was restarted. See acceptable Li & VPA levels above. **03/08/15 Update:** IP did take one dose of Zydis 3/07 to curb what he felt could be an emerging bout of hypomania, with reported quieting effect. **03/23/15 update:** Higher dose of lithium tried for IP's d/o activation, but he found change from 450-ER too difficult on GI, so returned to previous dose & formulation. It was surmised that much of activation was Axis II driven, though risk of mania needs ongoing scrutiny.

**Discharge Plan:** D/C to APP. Continue Rx as below for indications listed.

| Psych Meds: | Depakote-ER (divalproex ER) 1000 mg po QHS for mood stabilization. |
|---|---|
| | Lithium Carbonate ER 450 mg po BID for mood stabilization. |
| | Zydis (olanzapine RapDis Wafer) 10 mg po BID PRN restlessness; NTE 2x in 24 hours. |
| | Stelazine (trifluoperazine) 2 mg po Q4H PRN agitation/psychosis, NTE 2x in 24 hours. |

| Clinician: W. B. White, M.D. | |
|---|---|
| Clinician's Signature: | *W B White* |
| Institution: CMF, Vacaville | **Updated:** 2015/03/23 |

This is not a stand-alone discharge summary. Please also see IPE/7386, 7388, & 7230's included in discharge package.

| 1. Disability Code: | 2. Accommodation | 3. Effective Communication: | Inmate's Name (Last, First, MI), CDC Number, DOB |
|---|---|---|---|
| ☐ TABE Score <4.0x | ☐ Additional Time | ☑ P/I Asked questions | |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment  SLI | ☑ P/I Summed information | **Owens**, Theon |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please Check one: | |
| ☐ DNS ☐ DDP | ☑ Basic  ☐ Transcribe | ☐ Not reached*  ☑ Reached | **V60905** |
| ☑ **Not Applicable** | ☐ Other* | | |
| 4. Comments: **Tabe:** 4.5 (01/30/2015). NCF. | | | DOB: 08/12/1982   **CMF MHCB B-02** |

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

J J.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDC-7362 (Rev. 03l04)HEALTH
CARE SERVICES REQUEST FORM, LOG NO.: 0058072.
"Hosted by the Plaintiff, THEON OWENS, on 4-9-2015. The appendix
herein shows that the Plaintiff put in a slip for Dental care. The
Plaintiff noted on the form "I need a dental exam, I had two of my
teeth knocked out by the clo's, on Feb 18. They punched and kicked
me in the face over 30 times and swollen both of my eyes up
(Please see dental and medical reports on the day of Feb 18-2015)
Please have a dentist do an exam immediately. I am also requesting
that CDCR replace my two missing teeth with permenent dental
implants (not partials) Thank You..." Which shows that the Plaintiff
notified prison officials of the curren situation and the need for
treatment."

NUMBER OF PAGES TO THIS APPENDIX: 1 _____ PAGE'S.

EMERGENCY
EXAM NEEDED

0058072

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

**HEALTH CARE SERVICES REQUEST FORM**

DEPARTMENT OF CORRECTIONS

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|
| A fee of $5.00 may be charged to your trust account for each health care visit. |
| If you believe this is an urgent/emergent health care need, contact the correctional officer on duty. |

REQUEST FOR:        MEDICAL ☐        MENTAL HEALTH ☐        DENTAL ☒        MEDICATION REFILL ☐

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| oWens T | V-60905 | B-7-cell 226 |

PATIENT SIGNATURE        *Theon Ower*        D.O.B. 5/12/82        DATE 4-9-15

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) I need a dental exam, I had two of my teeth knocked out by the clo's, on Feb 18, They punched and kicked me in the face over 30 time and swollen both of my eyes up (Please see dental and medical reports on the day of Feb 18-15) please have a dentist do an exam immediately, Iam also requesting that cdcr replace my two missing teeth with permenent dental implants (Not partials) Thank you...

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*        Face to Face + filling

| PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT |
|---|

☒ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

| PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE |
|---|

| Date / Time Received: 4/10/15 @ 0605 | Received by: J. L. Reyes, RN |
|---|---|
| Date / Time Reviewed by RN: 4/10/15 @ 0605 | Reviewed by: J. L. Reyes, RN |

S:        Pain Scale:   1   2   3   4   5   6   7   8   9   10

PRC - Exam ○        J. SANDHU, DDS
CSP-SAC

4/10/15

O:    T:        P:        R:        BP:        WEIGHT:

**RECEIVED**

**APR 1 0 2015**

A:

P: Refer to Dental        **SAC DENTAL**

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |

PRINT / STAMP SANDHU, DDS
CSP-SAC

SIGNATURE / TITLE

DATE/TIME COMPLETED
4/16/15

CDC 7362 (Rev. 03/04)        Original - Unit Health Record        Yellow - Inmate (if copayment applicable)        Pink - Inmate Trust Office (if copayment applicable)        Gold - Inmate
Confidential Saved 2016-04-19T14:56:38Z

# APPENDIX COVER PAGE:

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

k k.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7362 (Rev. 03|04)HEALTH CARE SERVICES REQUEST FORM. LOG NO. 0058073.
"Hosted by The Plaintiff Theon owens And Registered Nurse (R.N.) J.L. REYES on April 13, 2015. It shows the Plaintiff' requesting treatment. The Plaintiff notes" on February 18, 2015. I was assaulted and battered by correctional staff. I was sent to the california Medical Facility on the 21 of February, While there I notice that left ankle was sore and injured, from the incident, I notified Medical Staff of the pain I was having, they told me that they documented it and put me on the list to see the doctor, but that it was not an emergency, because I could walk on it, and that Mostlikely it is just hyper-exstended. Today it is still sore, and it has been over 30 days, and I noticed swelling on each Side of the ankle." Which shows what was going on at this time with the injured ankle. The R.N. noted "URGENT... Refered to Primary care Provider."

NUMBER OF PAGE'S TO THIS APPENDIX: ___1___ PAGE'S.

URGENT

❋058073

Broken Ankle

| STATE OF CALIFORNIA<br>CDC 7362 (Rev. 03/04) | **HEALTH CARE SERVICES REQUEST FORM** | DEPARTMENT OF CORRECTIONS |

| **PART I: TO BE COMPLETED BY THE PATIENT** |
| --- |

*A fee of $5.00 may be charged to your trust account for each health care visit.*

*If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.*

| **REQUEST FOR:** | MEDICAL ☒ | MENTAL HEALTH ☐ | DENTAL ☐ | **MEDICATION REFILL ☐** |
| --- | --- | --- | --- | --- |
| **NAME**<br>OWENS THEON | | **CDC NUMBER**<br>V-60905 | | **HOUSING**<br>B-7-226 |
| **PATIENT SIGNATURE**<br>Them owens | | | | **DATE**<br>APRIL-13-2015 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) on February 18, i was assaulted and butter by correctional staff. I was sent to CMF on the 21 OF FEB while there i notice that left ankle was sore and injured from the incedent. I notifiy Medical staff of the Pain i was having. They told me that they document it and Put me on the list see the doc-ter, but that it was not an emergency because i could walk on it, and that mostlikely in is just hyper exstened. To day it is still sore and it has been over 30 day and i notice swelling on each side of the ankle

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

| **PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT** |
| --- |

☒ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

| **PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE** |
| --- |

| **Date / Time Received:** APR 18 2015 | @ 1630 | **Received by:** | VALERIE C. DONELSON, R.N. |
| --- | --- | --- | --- |
| **Date / Time Reviewed by RN** APR 18 2015 | @ 1633 | **Reviewed by:** | VALERIE C. DONELSON, R.N. |

**S:**   Pain Scale: 1   2   3   4   5   ⑥   7   8   9   10

**O:**  T: 97.9  P: 61  R: 16  BP: 134/82   WEIGHT: 2/7/16<   √ B2 /MTS RA

**A:**

**P:** (alini

⊕ See Nursing Encounter Form   Muscoskeletal complaint

**E:**

| **APPOINTMENT**<br>**SCHEDULED AS:** | **EMERGENCY** ☐<br>(IMMEDIATELY) | **URGENT** ☒<br>(WITHIN 24 HOURS) | **ROUTINE** ☐<br>(WITHIN 14 CALENDAR DAYS) |
| --- | --- | --- | --- |
| **REFERRED TO PCP:** Yu | | **DATE OF APPOINTMENT:** 4/20/15 | |
| **COMPLETED BY**<br>J. L. Reyes, RN | | **NAME OF INSTITUTION**<br>CSP-SAC | |
| **PRINT / STAMP NAME**<br>J. L. Reyes, RN | **SIGNATURE / TITLE**<br>Mayne m | | **DATE/TIME COMPLETED**<br>4/10/150 0830am |

| CDC 7362 (Rev. 03/04) | Original - Unit Health Record | Yellow - Inmate (if copayment applicable) | Pink - Inmate Trust Office (if copayment applicable)   Gold - Inmate |

Confidential Saved 2015-05-26T15:15:44Z

# APPENDIX COVER PAGE:

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

L L.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 237-F (REV. 08 ho) DENTAL PAIN PROFILE.
"Hosted by The Plaintiff THEON OWENS. And Dentist. J. SANDHU. on 04/16/2015. It shows the Questionnaire that the Plaintiff filled out. Whereon the Plaintiff was asked Q: How long have you had this Pain?. A: "Since February 18." The Plaintiff was asked Q: Have you had treatment for this Pain in the Past?. A: " No. Waiting". Which shows that the Plaintiff had been without teeth for approximately two Months. The Plaintiff was asked Q: Is there anything that relieves or lessens the pain? A: The Plaintiff Marked "Yes." The Plaintiff was then asked Q: If yes, describe? A: "Yes, some replacement teeth (dental implants). Which the Plaintiff was not provided. but still ask's for in his complaint under relief."

NUMBER OF PAGE'S TO THIS APPENDIX: __1__ PAGE'S.

STATE OF CALIFORNIA
**DENTAL PAIN PROFILE**
CDCR 237-F (REV. 08/10)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 1 of 2*

1. Check all the following words that best describe your pain.

   ☐ aching      ☐ burning      ☐ cramping      ☐ crushing      ☐ dull

   ☐ pounding    ☐ sharp        ☐ shooting      ☐ sore          ☐ stabbing

   ☐ tender      ☐ tingling     ☐ throbbing     ☐ other: _none_

2. Using the picture on the far right as an example, indicate the location of your pain in the boxes to the right.

   ☐ Upper Right (UR)     ☒ Upper Left (UL)

   ☐ Lower Right (LR)     ☐ Lower Left (LL)

3. Does the pain radiate or spread?     ☐ Yes     ☐ No

   If yes, where? _not any more_

4. How long have you had this pain? _since Feb 18_

5. Circle the number under the face below that best indicates your present level of pain:

   | 0 None | 1 - 2 Little | 3 - 4 More | 5 - 6 Bad | 7 - 8 Very Bad | 9 - 10 Unbearable |
   |--------|--------------|------------|-----------|----------------|-------------------|

6. Have you had treatment for this pain in the past?     ☐ Yes     ☒ No

   If YES, describe: _no waiting_

7. Is there anything that relieves or lessens the pain?     ☒ Yes     ☐ No

   If YES, describe: _yes some replaced teeth (dental implants)_

8. Is there anything that makes the pain worse?     ☐ Yes     ☒ No

   If YES, describe: _____

9. What impact does the pain have on your daily functioning? _grate_

_OWENS,   THEON_
Print Inmate Name (Last, First, Middle Initial)

_Theon owen_
Inmate Signature

**J. SANDHU, DDS**
**CSP-SAC**
Healthcare Provider (Print Name or Use Stamp)

CDC Number: V-160905
Date (mm/dd/yy): 04-16-15
D.O.B. 8/12/82

Healthcare Provider Signature

**CDCR 237-F DENTAL PAIN PROFILE**

Confidential Saved 2015-05-26T16:49:59Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO ET AL

CAES NO. 2:16-CV-02750-JAM-kJN.

M M.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDC-7221(4/90)PHYSICIAN'S ORDERS.
Hosted by Doctor. A. NANGALAMA. on 4/20/2015. At 0828 hours. It shows his written order to have the Plaintiff's left ankle x-rayed."

NUMBER OF PAGE'S TO THIS APPENDIX: ____1____ PAGE'S.

8110050898 RR Donnelley ©2011. All rights reserved. DRC - 0667

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 4/20/15 | 0828 | | Left Ankle Xray |
| | | | History of Injury 2 - Months ago. |
| | | | |
| | | | |
| | | | |

2015 APR 21 PM 1:59

ALLERGIES:

INSTITUTION: CSPSAC

ROOM / WING: B7-226

CDC NUMBER, NAME (LAST, FIRST, MI)

Owens, Theon
V60905
8/12/1982

Confidential
client information
See W & I Code, Sections 4514 and
5328

**PHYSICIAN'S ORDERS**

CDC 7221 (4/90)
STATE OF CALIFORNIA          OSP 09 116447          DEPARTMENT OF CORRECTIONS

Confidential Saved 2015-05-26T15:04:17Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

N.N.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR ENCOUNTER FORM
MUSCULOSKELETAL COMPLAINTS (NOW - TRAUMATIC)
Hosted by Registered NURSE (R.N.), J.L. REYES. on 4/20/2015. It Shows
the R.N.'s encounter notes with the Plaintiff. Whereon the R.N. notes
her finding on the Plaintiff's left ankle injury."

NUMBER OF PAGE'S TO THIS APPENDIX: 2        PAGE'S.

*FMNF 005807?*

California Correctional Health Care Services

Institution: CSP-Sac    **Encounter Form: Musculoskeletal Complaint (Non-Traumatic)**

Name: Owens, Theon    CDC# V60905    DOB: 8/17/1982   Date/Time 4/20/15 @ 0700AM

Fill in the blanks and check all that apply

**SUBJECTIVE:**

Chief Complaint: _Left knee pain and sore_

Date and time of onset: _Feb. 18, 2015_

Location and description of problem: _left ankle_
_sore and injured from the incident_

Pain: Scale of 0-10 (0=no pain 10=worst pain): _6/10_

Area of pain: _left ankle_

Quality of pain: ☐ dull ☑ sharp ☑ aching
☐ throbbing ☐ spasm

If low back pain or flank pain assess for urinary symptoms: ☐ Low back pain ☐ Flank pain

Urinary symptoms: ☐ Urinary frequency ☐ Dysuria
☐ Burning on urination ☐ Hematuria

What makes it better? _"I need X-ray"_

History of prior pain / duration: _"I was assaulted and beaten by correctional staff on Feb.18 2015"_

Accompanying symptoms: ☐ Muscle spasms
☐ Numbness ☐ Tingling
☐ Other:

History of: ☑ fever ☐ chills ☐ headache
☐ nausea ☐ vomiting ☐ diarrhea ☐ fatigue
☐ trauma

History of chronic illness: ☐ Arthritis ☐ Cancer
☐ Diabetes ☐ Blood dyscrasias ☐ Renal Disease

Other: _Leukopenia_

Allergies: _Vistoril, Ciprofloxacin, Methadone, Haldol, PCNS_

Current medications: _Tylenol_

**OBJECTIVE:**

Vital signs: BP: _134/86_ Pulse: _61_ Resp: _16_
Temp: _97.4_ ☐ Urine dipstick Weight: _217 lbs_

Observe the following: Extremity: _ankle_
☐ Upper ☐ Lower ☐ Right ☑ Left
Describe: Color: _WNL_
☐ Warmth ☐ Tenderness ☐ Deformity
☐ Swelling
☑ Circulation ☑ Sensation _good_
Describe: _left pedal pulses regular strong, open wound, no neurovascular deficit required intact_
Muscle: ☐ Atrophy ☐ Hypertrophy ☐ Weakness
☐ Tremors

Range of motion to affected extremity:
☐ limited ☑ full ☐ other:

Pain or discomfort with or without movement.
For back pain observe curvature, gait, and stance;
test for straight leg raising: _ambulatory w/_
_steady gait_

Dipstick urine if current symptoms or history of flank pain, urinary frequency, dysuria, and/or burning on urination and hematuria

Results of dipstick / urinalysis: :_____

**ASSESSMENT:**

☐ Impaired physical mobility related to: _____

☑ Pain related to / evidenced: _c/o 6/10 pain in left knee R/T per inmate was attacked and beaten by Correctional staff_

**PLAN:**

MD referral completed: (circle) NO (YES) If yes:

☐ STAT ( Positive urine dipstick and patient has signs
and symptoms consistent with a UTI; alterations in
circulation or sensation, new deformity or discoloration,
or patient appears ill or has history of fever, chills,
headache, nausea, vomiting, or diarrhea; severe muscle
cramps; muscle weakness with or without fever; warm or
acutely swollen, joints)

☑ Urgent ☐ Routine

☑ Orders received by phone from POC
Physician notified (name / time) _Dr. Naguera during huddle_
Physician Responded (time) _A. Naguera - during huddle_

**Extremity pain or stiffness:**

☐ If alteration in circulation or sensation, new
deformity or discoloration, or patient appears ill
or has history of fever, chills, headache, nausea,
vomiting, or diarrhea notify physician STAT.

☑ If none of the above signs and symptoms are
present:

☐ Apply ice or heat as deemed appropriate.

☐ Ibuprofen 200mg 1-2 tabs PO Q4-6 hours
PRN pain while symptoms persist; not to
exceed 6 tabs in 24 hours or

_J. L. Reyes, RN_
Signature / Title

ENCOUNTER FORM: MUSCULOSKELETAL COMPLAINTS (NON-TRAUMATIC)     7/26/2011

Confidential Saved 2015-05-26T15:15:44Z

*Thea# 005073*

California Correctional Health Care Services

Institution: _CSPSAC_ **Encounter Form: Musculoskeletal Complaint (Non-Traumatic)**

Name: _Morris, Thean_ CDC# _V60905_ DOB: _8/9/82_ Date/Time _4/25/12 07:00am_
Fill in the blanks and check all that apply

## EDUCATION:
- ☑ Assess patient's potential for understanding the health information to be provided.
- ☑ Provide patient education consistent with the assessment of the condition.
- ☑ Document the education provided and the patient's level of understanding on the nursing protocol encounter form.
- ☑ Refer patient to other resources as needed.
- ☐ Document all referrals on the nursing protocol encounter form.

## DISPOSITION:
Time released _07:00am_
- ☑ Condition on release: _stable, no s/s of acute distress aff._
- ☑ Returned to housing unit
- ☐ Housing reassignment to: _____
- ☐ Referred for follow-up
  - ☐ Physician clinic   ☐ RN clinic
- ☐ Referred to higher level of care: (specify) _____

Person/time contacted: _____
Time/Mode of transfer: _____
ERV contacted (time) _____
ERV arrived (time) _____

[handwritten notes, partially legible]
_seen in clinic, ambul-
atory, steady gait, no s/s
of acute distress, alert,
c/o "lower back pain, full ROM
on exam, extremity ... "f/hand,
when I've been down, but when I'm
walking" No shelve deformity noted
noted. c/o stinging X-ray to denied
pain ... mild ... PO Motrin tt
or KOP relieve w/ cold/heat care, Trx
pain was as needed, educated on
Trx, need that he can get f/u of charge
at the canteen over-a month ... daily,
to f/u if conditions would worsen ...
understood ..._

[more handliwritten] _... cunical aff Dr. Natalapa..._
_any ..._
_... ... abene._

### List name(s) of RN Protocols used:
_Musculoskeletal Complaint_

Signature/Title RN

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☑ Pt asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☑ Pt summed information |
| ☐ DPS ☐ DNM | ☐ Louder ☐ Slower | Please check one: |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached |
| ☑ Not Applicable | ☐ Other* | *See chrono/notes |
| 4. Comments: | | _4.5 ref_ |

**ENCOUNTER FORM: MUSCULOSKELETAL COMPLAINTS (NON-TRAUMATIC)** 7/26/2011

3 of 3

Confidential Saved 2015-05-26T15:15:44Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO.: 2:16-CV-02750-JAM-KJN.

O.O.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: (DCR-7431 (REV. 08/10)
PERIODONTAL CHART.
"Hosted by Dentist, J. SANDHU, on 7/2/2015. It shows the teeth that are
missing from the Plaintiff's Mouth after he was beaten by defendants".

NUMBER OF PAGES TO THIS APPENDIX: _____1_____ PAGE'S.

STATE OF CALIFORNIA
**PERIODONTAL CHART**
CDCR 7431 (REV. 08/10)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 1 of 2*



IMP – Impacted.
X – Missing.
|| – To be Extracted.
S – Suppuration.
Circle in red the probing depth number for any area where there is bleeding.
Circle the tooth letter for primary teeth.

Food Impacted Open Contact

Furcation (^△▲)

Restoration Overhang

Muco-Gingival Problem

| CDC Number: | V | - | 6 | 0 | 9 | 0 | 5 | | Dentist's Signature: | |
|---|---|---|---|---|---|---|---|---|---|---|
| Name: | OWENS, THEON | | | | | | | | | |
| | (Last, First, Middle Initial) | | | | | | | | | |
| Date of Birth: | 0 | 8 | - | 1 | 2 | - | 8 | 2 | | |
| | (mm/dd/yy) | | | | | | | | | |

Dentist (Stamp or Print Name):
**J. SANDHU, DDS
CSP-SAC**

**CDCR 7431 PERIODONTAL CHART**

Confidential Saved 2016-04-19T14:56:38Z

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

P.P.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7214 (REV. 02/13)
RADIOLOGY SERVICE(S) REQUEST.
"Hosted by Medical Doctor(M.D.), A. NANGALAMA, on 4/20/2015. It shows the M.D.'s
written order, to have left ankle x-rayed."

NUMBER OF PAGE'S TO THIS APPENDIX: 1-2 PAGE'S.



STATE OF CALIFORNIA
**RADIOLOGY SERVICE(S) REQUEST**
CDCR 7214 (REV.02/13)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

| Type of Service (Check all that apply): ☐ CT/MRI ☐ Ultrasound ☑ X-ray | Inmate Housing | B7-226 | | |
|---|---|---|---|---|

| Date of Request: 4/20/15 | Date Received: 4-20-15 | Radiology Staff Initials 5D | Yard | Bldg | Room | Bed |
|---|---|---|---|---|---|---|

Referring Provider: *Dr. Nangalama*

Clinical History: *Left Ankle X ray history of injury : 2 months ago*

| Date of Service: | | Technologist Initials: | ☑ Routine | ☐ TTA | ☐ STAT |
|---|---|---|---|---|---|

### Please Indicate Exam Order Below

| UNIT | CODE | DESCRIPTION | UNIT | CODE | DESCRIPTION | UNIT | CODE | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|
| | | **Head & Neck** | | | **Upper Extremity** | | | **Ultrasound** |
| | 70100 | Mandible / 2 VW | | 73000 | Clavicle | | 76700 | Abdomen Comp |
| | 70110 | Mandible / Comp | | 73010 | Scapula | | 76705 | Abdomen Lt |
| | 70130 | Mastoids / Comp | | 73020 | Shoulder / Ltd | | 76730 | Renal |
| | 70140 | Facial Bones / 2 VW | | 73030 | Shoulder / Comp | | 76765 | Aorta |
| | 70150 | Facial Bone / Comp & Or Orbits | | 73050 | A – C Joints / Bilats | | 76850 | Pelvis |
| | 70154 | Facial Bones / Comp c̄ Nasal Bones | | 73060 | Humerus | | 76870 | Prostate |
| | 70160 | Nasal Bones | | 73070 | Elbow / 2 VW | | 76872 | Testicular |
| | 70120 | Paranasal Sinuses / 2 VW | | 73080 | Elbow / Comp | | 76855 | Trans Vaginal |
| | 70220 | Paranasal Sinuses / Comp | | 73090 | Forearm | | 76536 | Thyroid |
| | 70250 | Skull / 2 VW | | 73100 | Wrist / 2 VW | | | **Vascular** |
| | 70260 | Skull / Comp | | 73110 | Wrist / Comp | | | Carotid DOP |
| | 70330 | Temporomandibular Joints | | 73120 | Hand / 2 VW | | | LLE DOP |
| | 70360 | Neck for Soft Tissue | | 73130 | Hand / Comp | | | Misc. DOP |
| | | **Chest** | | 73140 | Finger(s) | | | |
| | 71020 | Chest – 2 VW | | | **Lower Extremity** | | | |
| | 71021 | Chest – 3 VW | | 73500 | Hip / Unilat 2 VW | | | |
| | 71100 | Ribs / Unilat CXR | | 73510 | Hip / Unilat Incl AP / Pelvis | | | **Mobile Services** |
| | 71101 | Ribs / Unilat | | 73520 | Hip / Bilat Incl AP/ Pelvis | | | |
| | 71110 | Ribs / Bilat CXR | | 73550 | Femur | | | CT |
| | 71111 | Ribs / Bilat | | 73560 | Knee / 2 VW | | | |
| | 71120 | Sternum | | 73564 | Knee / Comp c̄ Tun / Sunrise | | | MRI |
| | 71130 | Sternoclavicular Joints | | 73562 | Knee / Comp | | | |
| | 72090 | Scoliosis | | 73590 | Tibia / Fibula | | | |

Special Instructions:

| Name (Last, First, MI), CDCR Number, DOB |
|---|
| *Owens, Theon* |
| *V60905* |
| *8/12/1982* |

Confidential Saved 2015-05-26T16:14:09Z



STATE OF CALIFORNIA
**RADIOLOGY SERVICE(S) REQUEST**
CDCR 7214 (REV.02/13)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 2 of 2

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Please Indicate Exam Order Below** | | | | | | | | |
| UNIT | CODE | DESCRIPTION | UNIT | CODE | DESCRIPTION | UNIT | CODE | DESCRIPTION |
| | | **Spine** | | | **Lower Extremity** | | | **Abdomen** |
| | 72010 | CTL Spine AP & Lateral | X | 73600 | Ankle / 2 VW | | 74000 | Abdomen (K.U.B.) |
| | 72040 | C – Spine AP & Lateral | | 73610 | Ankle / Comp | | 74020 | Abdomen 2V |
| | 72050 | C – Spine / Comp | | 73620 | Foot / 2 VW | | 74022 | Abdomen 2V & IV CXR |
| | 72052 | C – Spine / Comp c̄ Flex / Ent | | 73630 | Foot / Comp | | | |
| | 72070 | Thoracic Spine | | 73650 | Os Calcis | | | |
| | 72080 | Thoraco – Lumbar Spine | | 73660 | Toe(s) | | | |
| | 72100 | Lumbar Spine / 2 VW | | | | | | |
| | 72110 | Lumbosacral Spine / Comp | | | | | | |
| | 72170 | Pelvis | | | | | | |
| | 72020 | Spine, Any Single VW | | | | | | |
| | 72202 | Sacro – iliac Joints | | | | | | |
| | 72220 | Sacrum & Coccyx | | | | | | |
| | 72090 | Scoliosis Study Erect | | | | | | |

Special Instructions:

| Name (Last, First, MI), CDCR Number, DOB |
|---|
| Owens, Theon V60905 8hr / gn |

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

Q Q.
APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7393 (Rev. 07/13) NOTIFICATION OF DIAGNOSTIC TEST RESULTS.
"Hosted by Medical Doctor (M.D.) A. NANGALAMA, on 4/22/2015. It shows that the Plaintiff would be scheduled for a follow-up appointment, due to the X-Rays showing a fractured left ankle."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

State of California
**NOTIFICATION OF DIAGNOSTIC TEST RESULTS**
CDCR 7393 (Rev. 07/13)

Department of Corrections and Rehabilitation

Page 1 of 1

| Name: | Owens, Theo | CDCR Number: V60905 |
|---|---|---|
| Institution: | SAC | Housing: B 7-22 6 |
| Type of Test: | X-Ray | Date of Test: 4-28-15 |

**YOUR TEST RESULTS HAVE BEEN EVALUATED AND THE FOLLOWING HAS BEEN DETERMINED:**

☐ Your test results are essentially within normal limits or are unchanged and no provider follow-up is required.

☒ You are being scheduled for a follow-up appointment. You will be receiving a ducat indicating your appointment time.

☐ A repeat test will be ordered. You will be ducated for this test.

☐ A chronic care appointment has been scheduled for you. You will be receiving a ducat indicating your appointment time.

Provider Name/Title (Print):

Provider Signature: _____ Date: 4/22/15

Distribution: Original - eUHR; Copy - Scheduler, Patient

Confidential Printed 2015.05.26 09:09:17 -07:00

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

RR.

APPENDIX.

CAES NO. 2:16-CV-02750-JAM-KJN.

DESCRIPTION OF THIS APPENDIX: CDC 7362 (Rev. 03/64)
HEALTH CARE SERVICES REQUEST FORM. LOG NO. 0206689.
"Hosted by the Plaintiff THEON OWENS, on 7-21-2015 It shows the
Plaintiff's request to be treated for the fracture he received from
defendants beating him while cuffed behind his back. It shows that
the Plaintiff Put the request in because he was still having pain
in that ankle when ever he walked on it."

NUMBER OF PAGE'S TO THIS APPENDIX: ___1___ PAGE'S.

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

## PART I: TO BE COMPLETED BY THE PATIENT

A fee of $5.00 may be charged to your trust account for each health care visit.

If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.

| REQUEST FOR: | MEDICAL ☒ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| OWENS T | V-60905 | IB7-227 |

| PATIENT SIGNATURE | DATE |
|---|---|
| Theon Owens | 1-21-2015 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) on 4/20/2015, I was seen by J.L. Reyes, R.N., Regarding a injury i received on 1/18/2015 (Fracture to Ankle) by A-Yard correctional Staff. When they beat Me. R.N. Reyes referred me to M.D. A. Nangalama who referred me for a X-ray, it was found that i received a Fracture to my ankle and a follow-up appointment was scheduled for me to see M.D. A. Nangalama but this appointment never happen and my ankle is still hurting when i walk on it. I need a ankle brace IMMEDIATELY

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM.

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

SS.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 237-C1 (REV. 08/10)
SUPPLEMENTAL DENTAL PROGRESS NOTES.
Hosted by Dentist. GLENN STURGES. on 5/29/2015. At 1200 hours. The
appendix herein Shows the dentist notes. were he noted " Patient (Pt)
Wants missing teeth replaced... Pt missing #8 #26" which shows that
the Plaintiff notified Prison officials that he wanted missing
teeth replaced with permenent dental implants, due to defendants
knocking them out."

NUMBER OF PAGE'S TO THIS APPENDIX: __1__ PAGE'S.




STATE OF CALIFORNIA
**Supplemental Dental Progress Notes**
CDCR 237-C-1 (REV. 08/10)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

**Prior to each treatment, the clinician _must_ review the inmate-patient's health history, note changes or specify no change. Use S.O.A.P.E. format to document patient care.**

| Date (mm/dd/yy) | | Tooth # | PROGRESS NOTES (Include signature at the end of each data entry) | DPC After Encounter | Prison Acronym |
|---|---|---|---|---|---|
| 5 | 29 15 | | WT: 211    BP B9/80 P-82 | A. Nannen, RDA CSP-SAC | |
| | 2 00 | | | | |
| | | | S: Pt wants missing teeth replaced. | | |
| | | | O: Pt missing #8-26. Pt has upcoming comp. | | |
| | | | exam appt. in a few weeks. HQR: No changes | | |
| | | | A: Needs comp. exam + Tx plan soon. HTN controlled + OK | | |
| | | | P: Triage done. | | |
| | | | Glenn Sturges, DDS | | |
| | | | N-V- Comp. Exam    CSP-SAC | | |
| | | | | 3 | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**DRUG ALLERGIES?**
☐ NO   ☒ YES

**SUPPLEMENTAL DENTAL PROGRESS NOTES**
CDCR 237- C - 1

CDC Number:  V 6 0 9 0 5

Inmate Name:  OWENS, THEON
(Last, First, Middle Initial)

Date of Birth:  0 8 / 2 8 8 2
(mm/dd/yy)

CDCR 237-C-1 SUPPLEMENTAL DENTAL PROGRESS NOTES

Confidential Saved 2016-04-19T14:56:38Z

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

TT.

APPENDIX

CAES NO: 2:16-CV-02750-JAM-KJN.

DESCRIPTION OF THIS APPENDIX: CDCR 237-C1 (REV. 08|10)
SUPPLEMENTAL DENTAL PROGRESS NOTES.
"Hosted by Dentist. J. SANDHU. on 6|18|2015. At 0950 hours. The appendix
herein Shows the Dentist notes on the Plaintiff. The Dentist noted
"Want to get exam. limited time to do exam" Which Shows the Dentist
reason for not providing treatment to the Plaintiff's broken
teeth."

NUMBER OF PAGES TO THIS APPENDIX: 1 _____ PAGE'S.



STATE OF CALIFORNIA
**Supplemental Dental Progress Notes**
CDCR 237-C-1 (REV. 08/10)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 1 of 2*

**Prior to each treatment, the clinician *must* review the inmate-patient's health history, note changes or specify no change. Use S.O.A.P.E. format to document patient care.**

| Date (mm/dd/yy) | Tooth # | PROGRESS NOTES (include signature at the end of each data entry) | DPC After Encounter | Prison Acronym |
|---|---|---|---|---|
| 6/18/15 | | wt 216, BP 127/83  pulse 64    M. Johnston, RDA CSP-SAC | | SAC |
| | | S: I/P Presented w/ Face to Face. | | |
| | | O: HOR. no Significant in MHx. | | |
| | | no pain/swelling Today. | | |
| | | A: needs new exam. | | |
| | | P: Face to Face - want to get exam. | | |
| | | Limited time to do exam. | | |
| | | I/P in mental health crisis bed - MHCB | | |
| | | for 27 days. | | |
| | | E: Advised pt. he will be seen for his | | |
| | | exam. Today | | |
| | | NV: Comp. exam. | | |
| | | J. SANDHU, DDS CSP-SAC | 3 | SAC |

I request further dental treatment and understand I may
be charged a $5.00 co-pay fee at my next visit.

**Owens, Theon**
Print inmate-patient name (Last, First, Middle Initial)

**V60905   Theon owen        6-18-15**
CDCR#              Signature              Date

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**DRUG ALLERGIES?**
☐ NO   ☑ YES

**SUPPLEMENTAL DENTAL PROGRESS NOTES**
**CDCR 237- C - 1**

CDC Number:  V 6 0 9 0 5

Inmate Name:  Owens, Theon
(Last, First, Middle Initial)

Date of Birth:  0 8 / 2 8 7 2
(mm/dd/yy)

CDCR 237-C-1 SUPPLEMENTAL DENTAL PROGRESS NOTES

Confidential Saved 2016-04-19T14:56:38Z

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-0275 0-JAM-KJN.

U U.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7410 (10/13)
COMPREHENSIVE ACCOMMODATION CHRONO.
"Hosted by Medical Doctor. ARYA AFSHIN. on 7/3/2015. It shows that
the Doctor ordered a Permanent ankle brace. For the Plaintiff
Fractured left ankle. due to defendants breaking it on 2/18/2015."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

STATE OF CALIFORNIA
**COMPREHENSIVE ACCOMMODATION CHRONO**
CDCR 7410 (10/13)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 1

| **A. HOUSING** | |
|---|---|
| ☑ Unrestricted | |
| ☐ Barrier Free/Wheelchair Access | |
| ☐ Ground Floor- Limited Stairs | ☑ ▬▬▬▬ |
| ☐ Ground Floor- No Stairs | ○ Temporary |
| ☐ Bottom Bunk | ○ Expires on |

**B. OTHER**

☐ Inmate Attendant/ Assistance

☐ Full Time Wheelchair User Accommodations

☐ Limited Wheelchair User Accommodations

☐ Transport Vehicle with Lift

☐ Special Cuffing for Non-Emergent Escort or Transportation

☐ Extra Time for Meals

**C. PHYSICAL LIMITATIONS TO JOB ASSIGNMENTS**

☐ UV Exposure Restriction - Restricting direct unprotected sunlight exposure for more than 30 minutes between the hours of 1000-1600

☐ Lifting Restriction - Unable to lift more than 19 pounds

☐ No rooftop work, no ladders, no hazardous machinery, no sharp objects, and no operating a motorized vehicles

☐ **D. NON FORMULARY ACCOMMODATION(S)**

**E. COMMENTS**

prescription glasses. ▬▬▬▬

☐ See 7536 Durable Medical Equipment and Supply Receipt

| Clinician Name: | Arya, Afshin@CDCR | CDCR#: | V60905 | |
|---|---|---|---|---|
| Clinician Signature: | Digitally Authenticated | Last Name: | OWENS | |
| CME Name: | | First Name: | THEON | MI: |
| CME Signature: (Non-Formulary Only) | | DOB: | 8/12/1982 | |
| Date: | 7/31/2015 | Institution: | SAC | |
| | | Housing: | B 007 2027001L | |

This form has been approved electronically by Arya, Afshin@CDCR on 2015-07-31 13:16:23.

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

```
V V.

APPENDIX.
```

DESCRIPTION OF THIS APPENDIX: CDCR 128-C3 (REV 10/13)
MEDICAL CLASSIFICATION CHRONO.
"Hosted by Medical Doctor (MD) AFSHIN ARYA, on 8/3/2015. It shows
that the M.D. ordered a Permanent ankle brace. for the Plaintiff's
Fractured left ankle. due to defendants breaking in on 2/18/2015."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

**CDCR 128-C3 (REV. 10/13)**                                                                                                            Page 1 of 2

## Central File Medical Chrono

| ⊙ Permanent | O Temporary | ☐ Expires on: | | ☐ Expiration Unspecified, Review in 6 Months |
|---|---|---|---|---|

| Level of Care Based on Patient Need | | Classification Factors | |
|---|---|---|---|
| OP ⊙ | Acute Rehab O | Temp. Medical Hold* ☐ | Long Term Stay ☐ |
| SOP O | Hospice O | Temp. Medical Isolation* ☐ | Override²* ☐ |
| OHU O | SNF O | | |
| CTC O | GACH/Outside Hospital O | | |

**Intensity of Services**

| Proximity to Consult | Functional Capacity | Medical Risk | Nursing Care Acuity |
|---|---|---|---|
| No Particular Need ⊙ | Vigorous Activity O | Low Risk O | Basic Nursing ⊙ |
| Infreq. Basic Consultation O | Full Duty ⊙ | Medium Risk ⊙ | Uncomplicated Nursing O |
| Freq. Basic Consultation O | Limited Duty* O | High Risk O | Low-Intensity Nursing O |
| Tertiary Consultations* O | Totally Disabled* O | | Medium-Intensity Nursing O |
| Community Placement* O | | | High-Intensity Nursing O |
| | | | Special Nursing O |

| Specialized Services | | Institutional-Environmental | |
|---|---|---|---|
| Clinical Category 1 ☐ | Therapeutic Diet¹* ☐ | Restricted-Altitude* ☐ | Req. Electrical Access¹* ☐ |
| Clinical Category 2 ☐ | Respiratory Isolation ☐ | Restricted-Cocci Area 1 ☐ | Req. Adaptive Equip.¹* ☐ |
| Pregnancy Program ☐ | Speech/Occ. Therapy ☐ | Restricted-Cocci Area 2 ☑ | Req. Medical Transport* ☐ |
| Transplant Center ☐ | Physical Therapy ☐ | Restricted-No Stairs¹* ☐ | See CDCR 1845 and 7410¹* ☑ |
| Hemodialysis ☐ | Durable Med. Equip.¹* ☑ | | |
| Dementia ☐ | Transgender ☐ | | |

Comments (all * items)
(non-confidential)

prescription glasses. Ankle brace.

(medically-confidential)

| Completed by (Print Name: )Afshin Arya | | CDCR: V60905 | |
|---|---|---|---|
| Signature: DIGITALLY AUTHENTICATED | | Last Name: OWENS | |
| Title: Physician | Date: 8/3/2015 | First Name: THEON | MI: |
| Institution: HCSSAC-CSP - Sacramento-10002238 | | DOB: 8/12/1982 | |

* Include details in Comments
¹ Include detail in CDCR 1845 or CDCR 7410 as appropriate
² Regional Medical Executives Only. State Factors overridden in Comments

Distribution: Original - eUHR, Chrono Section; Copy - C&PR or RC CCIII, Central File, Medical Chrono Section; CCI; Inmate (Housing: SAC B  007 2 027001L )

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-0275 0 - JAM-KJN.

W.W.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: (DCR-237-B (REV. 08/10)
DENTAL EXAMINATION AND TREATMENT PLAN.
"Hosted by Dentist. J. SANDHU, on 2.17/2016. It shows the Missing teeth the
Plaintiff lost. It also shows the date inwhich the Plaintiff was provided the
denture's."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

STATE OF CALIFORNIA
**DENTAL EXAMINATION AND TREATMENT PLAN**
CDCR 237-B (REV. 08/10)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 1 of 2*

| **SECTION I:** | **DENTAL EXAMINATION AND RADIOGRAPHS** |
|---|---|
| **A. MISSING TEETH AND EXISTING RESTORATIONS** | **B. DISEASES AND ABNORMALITIES** |



**C. ADDITIONAL INFORMATION**

Medical Alert: Allergy to:
fluphenazine HCl, Lactose, Thiothixene,
PCN's, Haloperidol

Comprehensive Periodontal Exam:   Yes ☒ No ☐
Consent for Tx Form Signed:   Yes ☒ No ☐
Patient has received DMFS:   Yes ☒ No ☐
Oral Cancer Screening:   neg.   Yes ☒ No ☐
Indicate Radiographs Used in this Examination: (Check all that apply). Full Mouth Periapicals: ☒
Other: ☐ (Specify): FMX

**Existing Dentures**
(Circle as appropriate)
Full            U / L (None)
Partial         U / L (None)

**Dentures Needed**
(Circle as appropriate)
Full            U / L / None
Partial         U / L (None)

Calculus: (Check one)
Slight: ☒   Moderate: ☐   Heavy: ☐

| PSR | 2 | 2 | 2 | Plaque | 35 |
|---|---|---|---|---|---|
| | 2 | 2 | 2 | Index | |

Periodontal Health: (Check only one box)
Healthy: ☐                     Gingivitis: ☒
Periodontitis:
Mild: ☐   Moderate: ☐   Advanced: ☐
Posterior Bitewings: ☐   Panoramic Film: ☒
Date radiographs taken (mm/dd/yy)
if different from date of examination:

| **SECTION II:** | | | **TREATMENT PLAN SEQUENCE (List in descending order of urgency).** | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Date of Diagnosis (mm/dd/yy) | Tooth # | Treatment Needed | DPC | Date Tx Completed (mm/dd/yy) | | | Date of Diagnosis (mm/dd/yy) | Tooth # | Treatment Needed | DPC | Date Tx Completed (mm/dd/yy) |
| 7 2 15 | | prophy | 3 | 7 | 30 | 15 | | | | | |
| | 5 | DO amalgm | 3 | 9 | 17 | 15 | | | | | |
| | U | PUD. #8 | 3 | 2 | 17 | 16 | | | | | |
| | L | PLD. #26 | 3 | 2 | 17 | 16 | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

| **SECTION III: PATIENT DATA** | **SECTION IV: PROVIDER DATA** Prison Acronym: CSP-SAC |
|---|---|
| Sex: M   Race: Black   Housing: | Dentist's Signature: |
| EPRD (mm/dd/yy): 1 2 24 21 | J. SANDHU, DDS |
| Name Owens, Theon (Last, First, Middle Initial) | Dentist (Stamp or Print Name): CSP-SAC |
| Date of Birth (mm/dd/yy): 08 12 82   CDC Number: V-60905 | Examination Date (mm/dd/yy): 07 02 15 |

**CDCR 237-B DENTAL EXAMINATION AND TREATMENT PLAN**

Confidential Saved 2016-04-19T14:56:38Z

# APPENDIX COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

XX...

**APPENDIX**

DESCRIPTION OF THIS APPENDIX: PRISON INDUSTRY AUTHORITY. AND CDCR 237-C1 (Rev. 08/10) Supplemental Dental Progress Notes. Hosted by Doctor Of Dental Surgery ("D.D.S.") NAPOLES, On 7-9-2018 The appendix herein shows the encounter Plaintiff had with NAPOLES. And the construction Process of the dentures for Plaintiff two Missing teeth that Defendants knocked out.

NUMBER OF PAGE'S TO THIS APPENDIX: ___2___ PAGE'S.

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, vs. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

XX.
APPENDIX

DESCRIPTION OF THIS APPENDIX: PRISON INDUSTRY AUTHORITY, AND CDCR 237-C1 (Rev. 08/10) Supplemental Dental Progress Notes. Hosted by Doctor Of Dental Surgery ("D.D.S.") NAPOLES, On 7-9-2018. The appendix herein shows the encouter Plaintiff had with NAPOLES. And the construction Process of the dentures for Plaintiff two missing teeth that Defendants knocked out.

NUMBER OF PAGE'S TO THIS APPENDIX: ____2____ PAGE'S.

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS. VS. JOSEPH DEFAZIO. ET AL

CAES NO.: 2:16-CV-02750-JAM-KJN.

Y Y

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7362 (Rev. 03/04) HEALTH CARE SERVICES REQUEST. FORM. LOG NO.: 0212842.

Hosted by The Plaintiff THEON OWENS. on Aug 26, 2015. It shows a request slip that the Plaintiff put in for additional treatment for the fracture that he suffered from defendants beating him. The Plaintiff complained on the slip that he was having pain in his ankle, with the level of pain being eight out of ten."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.

Case 2:16-cv-02750-JAM-KJN   Document 200   Filed 09/24/20   Page 477 of 535

0212842

Appeal Log No. SAC-HC-1503118

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

## HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

### PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

| REQUEST FOR: | MEDICAL ☒ | MENTAL HEALTH ☐ | DENTAL ☐ | MEDICATION REFILL ☐ |
|---|---|---|---|---|

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| THEON OWENS | V-60905 | FB7-227 |

| PATIENT SIGNATURE | DATE |
|---|---|
| Theon Owen | Aug 26, 2015 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) I need to have my left ankle x-rayed again, because iam still having pain in it, and i dont think that the fracture is healing correctly. on a level of pain 1-10, and 10 being severe pain, I have at least an 8 in pain. Please let me see a doctor about it!

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

### PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

22.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 7362 (Rev. 03/04) HEALTH CARE SERVICES REQUEST FORM: LOG NO.: 0212776
Hosted by The Plaintiff THEON OWENS. It Shows a request slip Put in to the Dental Department by the Plaintiff. to have his two broken teeth fixed, It also Shows that seven Months had went Pass an no treatment had been Provided to the Plaintiff. to fix his two broken teeth. The Plaintiff complained that dental department's delay in treating his two broken teeth was causing him additional Mental and emotional destress. Which Shows deliberate indifference in Prison officials failure to fix the Plaintiff's teeth, knowing that this failure was causing the Plaintiff an inability to Perform the daily activities of life (eat hard foods and articulate)."

NUMBER OF PAGE'S TO THIS APPENDIX: 1        PAGE'S.

Jail and Prison of 16 ... 0750-JAM-KJN document 208 Filed 09/24/20 Page 479 of 535 involving inmates teeth.

0212776

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

**HEALTH CARE SERVICES REQUEST FORM**

DEPARTMENT OF CORRECTIONS

| PART I: TO BE COMPLETED BY THE PATIENT |
|---|
| A fee of $5.00 may be charged to your trust account for each health care visit. |
| If you believe this is an urgent/emergent health care need, contact the correctional officer on duty. |

**REQUEST FOR:** MEDICAL ☐    MENTAL HEALTH ☐    DENTAL ☒    MEDICATION REFILL ☐

| NAME | CDC NUMBER | HOUSING |
|---|---|---|
| OWENS T | V-60905 | FB7-227 |

PATIENT SIGNATURE

Theon cullen

**D.O.B.** 8/12/82

**DATE** September 6, 2015

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) I am writing this because it has been seven months since i was beaten and disfigured, by Joseph Defazio # 71470. and the rest of the animal's that work in A1.2, and 3 PSU's, and it is causing me mental anguish and emotional destress, to have to walk around bearing the scar's from these ANIMAL'S /RUFFIAN'S who are employed hear (CSP-SAC) I had a dental examination done to develop a treatment plan for a temporary fix for the two broken teeth, but relief has not been provided. Please fix Problem..

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

**PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT**

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

**PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE**

Date / Time Received: SEP 06 2015

Date / Time Reviewed by: SEP 06 2015

Received by:

Reviewed by

**S:**    Pain Scale: 1 2 3 4 5 6 7 8 9 10

PRC - "other"

**J. SANDHU, DDS**
**CSP-SAC**

9/8/15

**O:** T:    P:    R:    BP:    WEIGHT:

**A:**

**P:**

☐ **See Nursing Encounter Form**

**E:**

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |

PRINT / STAMP NAME **J. SANDHU, DDS** CSP-SAC

SIGNATURE / TITLE

DATE/TIME COMPLETED 9/17/15

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

AAA.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDCR 22 (10/09) INMATE /
PAROLEE REQUEST FOR INTERVIEW. ITEM OR SERVICE.
"Hosted by the Plaintiff, THEON OWENS, on several different dates.
It shows several correspondence that the Plaintiff Presented to
Prison officials regarding the handaling of his grievance and
Subsequent First Amendment claim there in the complaint."

NUMBER OF PAGE'S TO THIS APPENDIX: 1-5 _____ PAGE'S.

PAGE(3)

STATE OF CALIFORNIA
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**
CDCR 22 (10/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print)   (LAST NAME)          (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|
| Theon Owens | V-60905 | Theon Ow |

| HOUSING/BED NUMBER: | ASSIGNMENT: | | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| DSH-P2-cell-19 | EOP | HOURS FROM 24 TO 7 | |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:
Iam writing this because the appeals office at CSP-SAC is delaying my appeals with out justication and violating the CDCR policy, It is being said that iam unavailable for an interview due to me being at CTC and now DSH, The appeals office has not made any attempt to contact me by phone for an interview, there is nothing perventing Me from fully putricipating in an interview. (Please contact CCII y. Glee at (707) 448-6841 ext: 5435

METHOD OF DELIVERY (CHECK APPROPRIATE BOX ) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **
☑ SENT THROUGH MAIL: ADDRESSED TO: CSP - SAC - Appeals office          DATE MAILED: 3/31/15
☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| S. Howard | 3/31/15 | SHHoward | (CIRCLE ONE) (YES)   NO |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| CSP-SAC appeals office | 3/31/15 | (CIRCLE ONE)  IN PERSON   (BY US MAIL) |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| C. RASMUSSEN | 4-9-15 | C. R | 4-9-15 |

THIS INFORMATION IS CORRECT AS FAR AS BEING ABLE TO INTERVIEW YOU. I HAVE MADE CALLS TO THE NUMBER YOU PROVIDED AND BECAUSE OF YOUR HOUSING, I WAS NOT ABLE TO TALK TO YOU. SO, NUMEROUS ATTEMPTS HAVE BEEN MADE TO INTERVIEW YOU.

## SECTION C:  REQUEST FOR SUPERVISOR REVIEW
PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

Iam writing You back, because You stated on the ~~attached~~ CDCR 22 that You sent back appeal log # SAC-0-15-00795, because i wrote in (section D) I havenet recieved this appeal back. And i dont know which appeal this is, could You please tell Me what this appeal is in regards to and when and were did You send this appeal to   Thank You...

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| Theon owens | 4-13-2015 |

## SECTION D:  SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| C. RASMUSSEN | 4-20-15 | C. R | 4-20-15 |

LOG # SAC-0-15-00795 IS REGARDING A STAFF COMPLAINT. YOU WERE ASKED TO REWRITE APPEAL FORM ON 3-25-15. I WOULD S~~UGGE~~ SUGGEST THAT YOU KEEP TRACK OF YOUR APPEALS AND KNOW WHAT APPEAL LOG #'S ARE REGARDING.

## SECTION A: INMATE/PAROLEE REQUEST

| 1E (Print):   (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| OWENS      .T |  | V-60905 | Theon owens |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM 24 TO 7 : | TOPIC TO BE ADDRESSED, I.E. MAIL, PROPERTY, ETC.: |
|---|---|---|---|
| B-7-226 | EOP/PSU |  | Appeal issue |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

aM Writing in regards to appeal SAC-P-14-01601. that has been exceptionally delayed due to me
eing at CMF-DSH. im back at SAc and ready to Perseed.

aM also Writing in regards to appeal SAc-P-15-00582 Which had a due date of 3-25-15, which
as Pass. iam ready to Perseed in this Matter as well.

also have other appeal that have exceptional delays that i Wish to have heard. can you please
n sure that these appeals are heard With out further delay...

hank you...

METHOD OF DELIVERY (CHECK APPROPRIATE BOX ) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **

☒ SENT THROUGH MAIL:  ADDRESSED TO: To appeals office _____     DATE MAILED: 4 / 9 / 15

☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE CANARY COPY TO INMATE/PAROLEE)

| RECEIVED BY: PRINT STAFF NAME | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| V. Wright | 4.9.15 | V. W | (CIRCLE ONE)  (YES)   NO |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| Appeals office | 4.9.15 | (CIRCLE ONE)  IN PERSON  (BY US MAIL) |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| C. RASMUSSEN | 4-15-15 | C.R | 4-15-15 |

SAC-P-14-01601 WAS REVIEWED AND IS NOW BEING REVIEWED BY THE ASSOCIATE WARDEN. WE
SHOULD HAVE IT BACK TO You MOMENTARILY.

SAC-P-15-00582 HAS BEEN ASSIGNED AND WAITING TO BE REVIEWED.

## SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL GOLDENROD COPY.

Thank You for that information. could You Please tell Me what is going on With appeal LOg No.CMF-
M-15-00523/ SAC-0-15-00795. You late told Me that you Sent it back to Me. I Wrote you and told
You that i didn't receive it. I want to continue to appeal the Wrong. I don't know Were it is, and
or Were it was sent. So i file a new one and sent it to You on 4-13-15.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| Theon owen | 4/16/15 |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| C. RASMUSSEN | 4-20-15 | C.R | 4-20-15 |

You WILL NEED TO CONTACT CMF TO OBTAIN INFORMATION REGARDING
CMF-M-15-00523. CSP-SAC DOES NOT HANDLE OTHER INSTITUTION APPEALS.

SAC-0-15-00795 —— Look AT THE FORM 22 THAT PERTAINS TO YouR
INQUIRY ABOUT THIS APPEAL. SEE HIGHLIGHTED

STATE OF CALIFORNIA    STATE DEPARTMENT APPEALS OFFICE     DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CDCR 22 (10/09)    Case 2.16-cv-02730-JAM-KJN Document 200    Filed 09/24/20    Page 483 of 535

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print): (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| Wiens T | | V-60905 | Theon Owen |

| JSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM 24 TO 7 | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| FB7-227 | PSU111 | | Investigation result |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

nderson Iam writing you because i received a letter from Robert A. Barton, Inspector General,
ithin the letter he advised me to contact my correctional counselor (you) for the status result
F Appeal log No. SAC-P-15-00582. regarding the beaten i received from C/o Joseph Defazio # 71470. and
ther CSP-SAC custody staff. Note per ccR Title 15 Section 3391(d) I have a right to know upon the complet
on of the investigation. Whether the claim's were sustained. Not sustained. unfounded. Exonerated or
rere was No finding.

METHOD OF DELIVERY (CHECK APPROPRIATE BOX) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **

☐ SENT THROUGH MAIL: ADDRESSED TO: CCI, Anderson      DATE MAILED: 10 / 9 / 2015

☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| N. KOMNEY | 10-4-15 | | (CIRCLE ONE) YES NO |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| CCI Anderson | | (CIRCLE ONE) IN PERSON BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| Anderson CCI | 10/6/15 | | 10/6/15 |

Copies of Appeal Log # SAC-P-15-00582 was sent
to Inmate Owens (v60905) on October 5, 2015.

IF you have any questions about this Appeal you
can contact the Appeals Office.

## SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

To: CSP-SAC Appeals office, can you please answer the highlighted question above. Thank
you...

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| Theon Owen | 10-9-2015 |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| M. Ramirez CCII(A) | 10-12-15 | | 10-12-15 |

Appeal SAC-P-15-00582 was completed on 4/29/15 at SCR. Appeal
was Granted in part in that it was referred to OIA for follow up. and possible
investigation. If investigated you will be notified. team

PAGE (2)

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE
CDCR 22 (10/09)

Case 2:16-cv-02750-JAM-KJN   Document 200   Filed 09/24/20   Page 484 of 535

## SECTION A: INMATE/PAROLEE REQUEST

| NAME (Print): (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| OWEN S   T | | V-60905 | Thea owen |

| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM 24 TO 7 | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
|---|---|---|---|
| CMF-CTC-MHCBU-B2 | EOP | | APPeal issue |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:
Iam trying to Find out what is going on with My appeal Log No: CMF-M-15-00525, Iam trying to get a due date
and a person to contact, if need be, so could you send me a inmate notice sheet.

METHOD OF DELIVERY (CHECK APPROPRIATE BOX ) **NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED **
☒ SENT THROUGH MAIL: ADDRESSED TO: APPeal S OFFice        DATE MAILED: 3 / 17 / 15
☐ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| AZIZ | 3/18/15 | | (CIRCLE ONE)   YES   NO |

| IF FORWARDED - TO WHOM: | | DATE DELIVERED/MAILED | METHOD OF DELIVERY: |
|---|---|---|---|
| APPeals OFFice | | 3/18/15 | (CIRCLE ONE)  IN PERSON   BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| S. Jensen | 3/19/15 | Sjen | 3/19/15 |

This appeal was forwarded to CSP-Sacramento on 3/4/15. we have no
further information on this appeal. You must contact CSP-Sacramento
on this issue.

## SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

Iam writing because the appeals office hear at CSP-CMF sent an appeal i File on overuse of force with
serious Bodily injury/Raciall hate crime. I havenot received an inmate notice with due date for an interview,
iam trying to get that, could you Please send me one or Send one to the appeals office hear. Thank You...
Also i got the appeal Log No: SAC-P-15-00582 with a due date of 3-25-15, But know one has contacted me For an
Phone interview, can Same one please call CC II, Y. Glee at (707)448-6841 ext:5935 Thank you.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| Thea owen | 3-27-15 |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| C. RASMUSSEN | 4-7-15 | C. R | 4-7-15 |

APPEAL Log # SAC-O-15-00795 WAS SCREENED BACK To You BECAUSE You WERE ASKED To
REWRITE Your APPEAL. You WROTE IN A SECTION OF THE APPEAL (SECTION D) THAT You CANNOT
WRITE IN AT THIS TIME. IN REFERENCE To SAC-P-15-00582, I CAN ONLY ASSUME You HAVE
NOT BEEN INTERVIEWED BECAUSE OF Your CURRENT HOUSING ASSIGNMENT. TODAY (4-7-15)
I MADE AN ATTEMPT To CONTACT You AT THE PHONE NUMBER You PROVIDED ABOVE BUT I WAS
UNABLE TO GET THEM TO PULL You OUT FOR AN INTERVIEW BECAUSE OF Your HOUSING ASSIGNMENT.

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS AND REHABILITATION
**INMATE/PAROLEE REQUEST FOR INTERVIEW, ITEM OR SERVICE**
CDCR 22 (10/09)

## SECTION A: INMATE/PAROLEE REQUEST  BRUTAL BEATING ON AN INMATE

| NAME (Print): (LAST NAME) | (FIRST NAME) | CDC NUMBER: | SIGNATURE: |
|---|---|---|---|
| OWENS T | | V-60905 | Theron Owen |
| HOUSING/BED NUMBER: | ASSIGNMENT: | HOURS FROM _N_ TO _A_ | TOPIC (I.E. MAIL, CONDITION OF CONFINEMENT/PAROLE, ETC.): |
| CTC-MHCB-82 | NONE | | Housing issues |

CLEARLY STATE THE SERVICE OR ITEM REQUESTED OR REASON FOR INTERVIEW:

aM Writing this Most urgent request 3liP. Because i have sufficientconcerns related to MY housing. And i Feel that they would be addressed immiately. As i feel unsafe and that further harm will be done to Me or that i may feel comPelled > seek justice MY self, due to the seriousness of the injurys an the manner inwhich they were given (inhumanely and it haribly) on Feb 18-15 i was brutaly beaten at csP-SAC-Psu II-3 block. BY CDCR emPloyees. over five ruffian cio and a it were involved in the Wolf Pack style like attack and in the Premeditated conspiring to do the attack. Their form of attack veary calculated and the administration can not stop these cio from Jeting to Me. As they Work every Yard and block at iP-SAC. I neionger feel safe being housed at csP-SAC with hand cuFF on. I would like to be sent to a EoP.HuB.

METHOD OF DELIVERY (CHECK APPROPRIATE BOX ) **\*\*NO RECEIPT WILL BE PROVIDED IF REQUEST IS MAILED \*\***

☐ SENT THROUGH MAIL:  ADDRESSED TO:_____  DATE MAILED: __3/2/2015__

☑ DELIVERED TO STAFF (STAFF TO COMPLETE BOX BELOW AND GIVE GOLDENROD COPY TO INMATE/PAROLEE):

| RECEIVED BY: PRINT STAFF NAME: | DATE: | SIGNATURE: | FORWARDED TO ANOTHER STAFF? |
|---|---|---|---|
| R. Guitierez, MCI | 3/2/15 | R. Hue | (CIRCLE ONE)  YES  **NO** |

| IF FORWARDED – TO WHOM: | DATE DELIVERED/MAILED: | METHOD OF DELIVERY: |
|---|---|---|
| | | (CIRCLE ONE)  IN PERSON  BY US MAIL |

## SECTION B: STAFF RESPONSE

| RESPONDING STAFF NAME: | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| R. Guitierez, CCI | 3/3/15 | R. Hue | |

You are at CMF-MHCB to recieve treatment for your Mental Health needs. Your housing placement upon discharge from MHCB is not up to us. It will be determined by Sacramento based upon your level of care and other pertinent case factors.

## SECTION C: REQUEST FOR SUPERVISOR REVIEW

PROVIDE REASON WHY YOU DISAGREE WITH STAFF RESPONSE AND FORWARD TO RESPONDENT'S SUPERVISOR IN PERSON OR BY US MAIL. KEEP FINAL CANARY COPY.

iam not satisfied with this response. Do to the immiate threat i would be Place in. If i was to return to csP-SAC-3U. If the staff heat cant ensure that i wont return to sac or that i wont have any contact with any of the Hracket. Then staff heat are Placing MY safty in ieopardy if staff hear dont have the iurisdiction or authority ot send me back then Please reFer this CDCR 22 to a Petson Whe can helP me. It doesn't take a rocket scientist > see that the RVR is an attempt cover uP and that the CDCR 7219 Finding do not back the RVR report and the RVR it's self s Many Fault and doessay how all of these injurys came about. J. DeFaio report sounds more like a Comic book then a RVR.

| SIGNATURE: | DATE SUBMITTED: |
|---|---|
| Theron Owen | 3-4-2015 |

## SECTION D: SUPERVISOR'S REVIEW

| RECEIVED BY SUPERVISOR (NAME): | DATE: | SIGNATURE: | DATE RETURNED: |
|---|---|---|---|
| | | | |

LOG # CMF-M-15-00523

Distribution: Original - Return to Inmate/Parolee; Canary - Inmate/Parolee's 2nd Copy; Pink - Staff Members Copy; Goldenrod - Inmate/Parolee's 1st Copy.

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

BBB.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: TYPED LETTER.

"Hosted by ROBERT A. BARTON. Inspector General. on August 4, 2015. It Shows the inspector's response to the Plaintiffs first handwritten letter."

NUMBER OF PAGES TO THIS APPENDIX: ___1___ PAGE'S.

*Robert A. Barton, Inspector General*



*Office of the Inspector General*

August 4, 2015

Theon Owens V60905
California State Prison - Sacramento
P.O. Box 290066
Represa CA 95671

Dear Theon Owens:

The Office of the Inspector General has received your correspondence.

We reviewed the issues you raised and forwarded your letter to our regional field staff for follow-up.

As part of our statutory mandates, the Office of the Inspector General oversees the internal affairs investigations and employee disciplinary process of the California Department of Corrections and Rehabilitation (CDCR), monitors CDCR's use-of-force review process, and conducts reviews of CDCR's policies, practices, and procedures.

The Office of the Inspector General does not conduct independent investigations; however, our regional field staff work directly with prison administrators to resolve issues at the local level. Since CDCR employee investigations are confidential, the Office of the Inspector General cannot provide you with information regarding the results of any ensuing CDCR investigations we are monitoring.

Thank you for bringing your concerns to our attention.

INTAKE AND REVIEW UNIT
Office of the Inspector General

BL: 15-0023980-02 (15-0001066-PI)

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

CCC.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: HANDWRITTEN LETTER.

"Hosted by the Plaintiff THEON OWENS. On August 31, 2015. addressed
to the office of the Inspector General. ROBERT A. BARTON. Chief (A)
office of Appeals. M. VOONG. The office of the ombudsman. JEAN WEISS.
Witten for the purpose of correcting concern's of the First Amendment being
violated. and referral for possible investigation"

NUMBER OF PAGE'S TO THIS APPENDIX: 2 _____ PAGE'S.

DATE: August 31, 2015

TO: _____

_____

_____

_____

RE: TO Redress The concern's of the First Amendment Violation and referral for Possible investigation.


Dear

I am writing you this urgent letter because California State Prison - Sacramento (C.S.P. - SAC) Appeals office (AO) Staff, M. Ramirez. CCI, C. Burnett. Appeals coordina-tor. C. Rasmussen. Appeals coordinator, R. Compton. Appeals Analyst, and B. Hoimes, Appeals Analyst Appeals Coordinator SAC. have been obstructing MY ability to access the courts. I have been filing appeals surrounding an incident that happen on February 18, 2015. inwhich correctional officers here at CSP-SAC beat me significantly, causing serious Bodily Injuries. The AO has not been sending me Log Number's for MY appeals that I have sent. they have been acting like they havenot been receiving the appeals that I sent. even those I have Proof of Service receipts showing that Staff sent the appeals to the AO, and receipts showing that the AO staff received the appeals, as Proof that the appeals were sent and received. The AO has been willfully losing MY appeals. in the hope's that I will stop filing them, and give up on receiving justice, They havenot been responding to MY appeals within the time limits. All of Which has been violating MY right under the First Amendment to the u.s. constitution. each AO Staff named acted willfully and Deliberately.

ACTION REQUESTED: (1) for some one to contact the CSP-SAC AO and tell them
1 of 1

(a) stop violating my first Amendment right to Petition the government for a redress of grievances.(b) To correct the wrongs described herein. (2) For someone to contact my witnesses thereon the CDCR 22 (10/09)/ Proof of service's. to verify that the name's and signature's are correct. and that they did serve upon the no the appeals in question thereon the CDCR 22 (10/09)/ Proof of service's. as described. (3) For all no staff named to be disciplined.

WITNESSES: Correctional officer's. Martell 3/w infirmary. Neal 3/w PSU III 7-Block. and T. Beeby 3/w PSU III 7-Block.

The Rules That govern This Matter are: The First Amendment to the u.s. constitution. Title 42 u.s.c. section 1997 et seq., Public Law 96-247. 94 stat. 349; section 35.107. Title 28. Code of federal Regulations; and <u>Wolff v. McDonnell</u> (1974) 418 u.s. 539. 558-560.

EVIDENCE IN SUPPORT OF CLAIM: CDCR 22 forms dated 6/6/15. signed by C/o. MARTELL and by C/o. Neal on 6/17/15. CDCR 22 form dated 7/19/15. signed by C/o. Neal. CDCR 22 form dated 8-5-15. signed by C/o. wheeler. CDCR 22 form dated 7-4-15. signed by C/o. Sharts.          CDCR 22 form dated Aug 9, 2015. signed by C/o. Neal and by C/o. T. Beeby on 8-10-15.

CC: office of The Inspector General, Robert A. Barton
     M.voong. chief(A) office of Appeals
     Jean weiss. office of The ombudsman

Sincerely
Theon Owens
Theon Owens

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

D D D.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: TYPED LETTER.

"Hosted by D. MORENO, P.N., and SARA MALONE, Chief office of the ombudsman. on September 23, 2015. It Shows the response to the Plaintiff letter dated August 31 2015. It also Shows that after an inquiry into concerns of First Amendment violations against CSP-SAC Appeals office Staff, it was found that "staff has Processed 'MANY' of Your appeals." Which shows that Many appeals had been Processed. but not [all] appeals, which confirms concerns that First Amendment was broken. It also shows that the facts Presented in this complaint were "referred to the office of The Internal Affairs for follow-up and Possible investigation. as the appeal Log No.: SAC-P-15-00582 was Partially granted."

NUMBER OF PAGE'S TO THIS APPENDIX: 1-2 _____ PAGE'S.

**OFFICE OF THE OMBUDSMAN**

1515 S Street, Sacramento, CA 95811
P.O. Box 942883
Sacramento, CA 94283-0001

September 23, 2015

T. Owens, V60905
SAC, B-7-227L
P.O. Box 290066
Represa, CA 95671

Subject: **RECEIPT OF CORRESPONDENCE**

Your letter to the Office of the Ombudsman has been received. Due to the high volume of inquiries received, the Ombudsman cannot intervene in all individual cases. However, please note that the Office monitors all correspondence to identify systemic issues, which is a critical element of the Ombudsman's roles as a liaison between institutions and Headquarters and as a policy advisor for the Administration.

☒ Your recent letter to the Office of the Ombudsman was received and based on a review of your letter and of the appropriate policies and procedures relevant to your concerns, the Ombudsman has determined that:

An inquiry into your concern that the SAC Appeal Office staff has not provided you with appeal log numbers or processed your appeals is completed. A review of your Appeal Tracking report from February 2015 through present reflects staff has processed many of your appeals. Additionally, the February 28, 2015 staff complaint you filed was reviewed on 4/3/15, Log SAC-P-15-00582. Your appeal was partially granted and the matter has been referred to the Office of Internal Affairs for follow-up and possible investigation. For your reference and review, a copy of the appeals tracking record with a copy of the response prepared for your February 2015 appeal is attached. If you have specific questions concerning any one of your appeals, submit a Form 22 request to the Appeal Office. If you do not receive a response to your Form 22, you may file an appeal on the issue and in your appeal state you have submitted the Form 22 with no response. You must attach a copy of the Form 22 to your appeal. This concludes our review of this issue.

☐ A review of the information you provided indicates that you have not exhausted your administrative remedies to resolve your issue and/or staff complaint. In accordance with CCR, Title 15 § 3084, you may appeal any departmental decision, action, condition, or policy which you can demonstrate as having a material adverse effect upon your welfare.

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    EDMUND G. BROWN JR., GOVERNOR

**OFFICE OF THE OMBUDSMAN**

1515 S Street, Sacramento, CA 95811
P.O. Box 942883
Sacramento, CA 94283-0001

Please file an appeal to resolve this matter. If you would like to send a copy, this Office can monitor your appeal for a timely and accurate response. Please note: this Office does not process appeals, nor does contacting this Office extend your timeframe for filing an appeal.

☐ An inquiry relative to your issue has been forwarded to the appropriate staff for review.

☐ No review will be conducted. This issue is outside of the scope this Office.

Thank you for contacting the Office of the Ombudsman.

D. Moreno for

Sara Malone, Chief
Office of the Ombudsman

# APPENDIX SEPARATION PAGE

THEON OWENS.              vs. JOSEPH DEFAZIO. ET AL.

**CIVIL ACTION NUMBER.:** 2:16-CV-02750-JAM-KJN.



E.E.E.1.

APPENDIX

**DESCRIPTION OF THIS APPENDIX:** CDCR 237-C1 (Rev. 08/10) SUPPLEMENTAL DENTAL PROGRESS NOTES.

Hosted by Doctor Of Dental Surgery ("D.D.S.") NAPOLES, on 7-9-2018. The appendix herein shows the encounter between the Plaintiff and NAPOLES. The appendix shows the plans to construct Partial dentures for the Plaintiff's now missing teeth.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILATATION

**Supplemental Dental Progress Notes**

*Page 1 of 2*

CDCR 237-C-1 (REV.08/10)

**Prior to each treatment, the clinician must review the inmate-patient's health history, note changes or specify no change. Use S.O.A.P.E format to document patient care.**

| Date (mm/dd/yy) | | Tooth # | PROGRESS NOTES (include signature at the end of each data entry) | DPC After Encounter | Prison Acronym |
|---|---|---|---|---|---|
| 7 | 9 | 18 | B/P: 125/85  P: 77  T: /  Wt 200  TABE: 4.5 | M Berber | |
| | | | ☒ HQR   ☒ CAR Discussed | | |
| | | | S- Wax Try In USP, LSP, IM approves | | KVSP |
| | | | of fit, bite, esthetics of USP, Wants "shade | | |
| | | | change for Lower (too light), requests shade | 3 | |
| | | | 69. | | |
| | | | O- HQR-No Change. USP try in - fit, bite, | | |
| | | | esthetics acceptable. IM wants shade change | | |
| | | | for lower. | | |
| | | | A- IM wants USP processed for delivery, | | |
| | | | redo try in LSP | | |
| | | | P- Time out protcol √. USP, LSP try in- | | |
| | | | E. Went over design of USP in detail, | | |
| | | | placement of clasps (circumferential instead | | |
| | | | of ball clasps on prior USP). | | |
| | | | N Del USP, LSP re-try. | | |
| | | | Dr. Napoles, DDS Kern Valley State Prison | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | — |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

DRUG ALLERGIES? *2CN*

☐ NO — ☒ YES

SUPPLEMENTAL DENTAL PROGRESS NOTES CDCR 237- C - 1

| CDC Number: | V | 6 | 0 | 9 | 0 | 5 |
|---|---|---|---|---|---|---|

Inmate Name: OWENS, THEON
(Last, First, Middle Initial)

| Date of Birth: | 0 | 8 | 1 | 2 | 8 | 2 |
|---|---|---|---|---|---|---|
(mm/dd/yy)

CDCR 237-C-1 SUPPLEMENTAL DENTAL PROGRESS NOTES



# APPENDIX  SEPARATION  PAGE

THEON OWENS. _____ vs. JOSEPH DEFAZIO, ET AL.,

**CIVIL ACTION NUMBER:** 2:16-CV-02750-JAM-KJN.

EEE· 2.

APPENDIX

**DESCRIPTION OF THIS APPENDIX:** PRISON INDUSTRY AUTHORITY.

Hosted by Doctor Of Dental Surgery ("D.D.S."), NARDLES, on 7-9-2018. The appendix herein Shows the Plans to construct Partial dentures for the Plaintiff's now Missing teeth.

**CALPIA**
Quality Products • Changed Lives • A Safer California

**Prison Industry Authority**
Central California Womens Facility • 23370 Road 22
Chowchilla, CA 93610-1501 • (559) 665-5531 ext. 7405
Fax (559) 665-3155

| FR: Napoles (·KVSP) Ayard | DATE 7-9-18 |
| ADDRESS 3000 W. Cecil Ave | PHONE (66)721-6300 | EXT 6274 |
| CITY Delano | STATE Ca. | ZIP 93215 |
| PATIENT Owens, T | CDC# V60905 | DUE DATE | TIME |

☒ Male ☐ Female

AGE ☐ 35-Under ☐ 35-55 ☐ 55-Over

| FULL DENTURES | U | L | ADDITIONAL INSTRUCTIONS |
|---|---|---|---|
| CUSTOM TRAY | | | SHADE ____ ☐ PLASTIC ☐ PORCELAIN |
| SHELLAC BITE BLOCK | | | POSTDAM ☐ LIGHT ☐ MEDIUM |
| ACRYLIC BITE BLOCK | | | ☐ HEAVY ☐ None |
| TRY-IN | | ✗ | FESTOONING ☐ YES ☐ NO |
| RESET | | | REPAIRS TOOTH # |
| FINISH | ✗ | | ☐ REPLACE TOOTH ____ |
| SOFT/HARD RELINE | | | ☐ FRACTURES ____ |
| PROCESSED NIGHTGUARD | | | ☐ ADD-ON ____ |
| IMMEDIATE | | | ☐ MESH/LINGUAL BAR ____ |
| SOFT/HARD NIGHTGUARD | | | ☐ CAST CLASP ____ |
| STAYPLATE | ✗ | ✗ | ☐ WROUGHT WIRE CLASP ____ |

SHADE 69
for Lower
stay plate

☐ SPECIAL RUSH
☐ INFECTION CONTROL



1 RIGHT   LEFT 16   (UPPER)

32 RIGHT   LEFT 17   (LOWER)

COPY

**PARTIAL FRAMES**

| MAJOR CONNECTORS | CLASP TOOTH# | REST TOOTH# | FINISH |
|---|---|---|---|
| ☐ HORSESHOE | AKERS # ____ | MESIAL # ____ | |
| ☐ PALATAL | RPI # ____ | DISTAL # ____ | ☐ Light |
| ☐ PALATAL PLATE | ROACH # ____ | LINGUAL # ____ | ☐ Medium |
| ☐ CIRCULAR BAR | CRIB # ____ | DIMPLE # ____ | ☐ Heavy |
| ☐ LINGUAL BAR | OTHER # ____ | OTHER # ____ | |
| ☐ LINGUAL PLATE | | | |
| ☐ UPPER SKELETON | RELIEVE OPPOSING O.K. | | ☐ Yes ☐ No |
| ☐ LOWER SKELETON | CHANGE CLASP TYPE O.K. | | ☐ Yes ☐ No |
| ☐ OTHER | CHANGE MAJOR CONNECTOR O K | | ☐ Yes ☐ No |
| DR SIGNATURE | Dr Napoles, DDS | LICENSE NO 34583 | |

HAVE ALL INSTRUCTIONS BEEN COMPLETED?

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO ET AL

FFF.

CAES NO. 2:16-CV-02750-JAM-KJN.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: CDC 804 (Rev. 08/00) NOTICE OF PENDING CDCR-115.
Hosted by Prison officials, on 2/18/15. The appendix herein Shows that the Plaintiff was Written up for allegation of Battery on a Peace Officer on 2/18/15, as a Job insurance Plan by defendants"

NUMBER OF PAGE'S TO THIS APPENDIX: ___1___ PAGE'S.

STATE OF CALIFORNIA                                  DEPARTMENT OF CORRECTIONS AND REHABILITATION

## NOTICE OF PENDING CDCR-115
CDC 804 (Rev 08/00)

**CHIEF DISCIPLINARY OFFICER:** *This form is to be filled in at the time the CDCR-115 is typed. The form is then immediately routed to the Records Office.*

**RECORDS OFFICER:** *Attach to the inside top-right of the inmate's Central File. Remove upon filing of finalized CDCR-115.*

THE BELOW INDICATED INMATE HAS RECEIVED A CDCR-115 RULES VIOLATION REPORT (RVR), WHICH IS CURRENTLY BEING PROCESSED

| INMATE NUMBER | NAME | | HOUSING | CDCR-115 LOG NUMBER |
|---|---|---|---|---|
| V-60905 | OWENS | | FA3-232 | EOP-15-02-058 |
| **DATE OF CDCR-115** | **VIOLATED RULE NUMBER AND TITLE** | | | **INCIDENT TYPE** |
| 2/18/15 | 3005(d)(1) - BATTERY ON A PEACE OFFICER | | | |

**ISL INFORMATION**

| ☐ RECISSION HEARING PENDING | RELEASE DATE EPRD *12-24-21* | BOARD DATE |
|---|---|---|

**DSL INFORMATION**

| MINIMUM DATE EPRD | This disciplinary infraction may result in the loss of the below indicated type and amount of credit: | | | | | | |
|---|---|---|---|---|---|---|---|
| | Div. A-1 | Div. A-2 | Div. B | Div. C | Div. D | Div. E | Div. F |
| MAXIMUM DSL DATE | 181-360 | 151-180 | 121-150 | 91-120 | 61-90 ☑ | 31-60 | 0-30 |
| | ☐ | ☐ | ☐ | ☐ | | ☐ | ☐ |

| ☐ D.A. REFERRAL | ☐ RELEASE DATE WITHIN 90 DAYS |
|---|---|

# CDCR-115 PENDING

---

STATE OF CALIFORNIA                                  DEPARTMENT OF CORRECTIONS AND REHABILITATION

## NOTICE OF PENDING CDCR-115
CDCR-804 (Rev 08/00)

**CHIEF DISCIPLINARY OFFICER:** *This form is to be filled in at the time the CDCR-115 is typed. The form is then immediately routed to the Records Office.*

**RECORDS OFFICER:** *Attach to the inside top-right of the inmate's Central File. Remove upon filing of finalized CDCR-115.*

THE BELOW INDICATED INMATE HAS RECEIVED A CDCR-115 RULES VIOLATION REPORT (RVR), WHICH IS CURRENTLY BEING PROCESSED

| INMATE NUMBER | NAME | | HOUSING | CDCR-115 LOG NUMBER |
|---|---|---|---|---|
| V-60905 | OWENS | | FA3-232 | EOP-15-02-058 |
| **DATE OF CDCR-115** | **VIOLATED RULE NUMBER AND TITLE** | | | **INCIDENT TYPE** |
| 2/18/15 | 3005(d)(1) - BATTERY ON A PEACE OFFICER | | | |

**ISL INFORMATION**

| ☐ RECISSION HEARING PENDING | RELEASE DATE | BOARD DATE |
|---|---|---|

**DSL INFORMATION**

| MINIMUM DATE EPRD | This disciplinary infraction may result in the loss of the below indicated type and amount of credit: | | | | | | |
|---|---|---|---|---|---|---|---|
| | Div. A-1 | Div. A-2 | Div. B | Div. C | Div. D | Div. E | Div. F |
| MAXIMUM DSL DATE | 181-360 | 151-180 | 121-150 | 91-120 | 61-90 | 31-60 | 0-30 |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| ☐ D.A. REFERRAL | ☐ RELEASE DATE WITHIN 90 DAYS |
|---|---|

# CDCR-115 PENDING

# APPENDIX COVER PAGE:

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

| GGG. |
| --- |
| APPENDIX. |

DESCRIPTION OF THIS APPENDIX: CASE DISPOSITION NOTICE.

"Hosted by **ANNE MASI SCHUBERT**, Sacramento District Attorney(D.A), on April 27, 2015. Received APR 28, 2015. at 06:41 AM. It shows that the California State Prison - Sacramento referred the defendant's allegations and Job insurance Plan to the Sacramento D.A.'S office on APR 02, 2015. It also shows that the D.A. Declined to Prosecute the Plaintiff for the allegations alleged by the defendants. The D.A.'s reason for declining to File charges was noted as "interest of Justice". Which shows that the D.A. sew through the defendants lies, and didnot buy the bogus comic strip that the defendants tried to sale the People of california. It also shows that the Plaintiff will Pervail."

NUMBER OF PAGE'S TO THIS APPENDIX: __1__ PAGE'S.



OFFICE OF THE
# DISTRICT ATTORNEY

STEPHEN J. GRIPPI
CHIEF DEPUTY

SACRAMENTO COUNTY

ANNE MARIE SCHUBERT
DISTRICT ATTORNEY

LORI GREENE
CHIEF DEPUTY

·CASE DISPOSITION NOTICE

| | |
|---|---|
| For Arrested Subject: _____ | For Warrant Request: _____ |
| Date: | Arrest No: 09867284-01 . |
| | Case No: SAC-PSU-15-02-0194 (02-16-15) |
| AGENCY: CSP-SACRAMENTO | ATTN: L. QUINN Sergeant CSP-SAC |

| SUSPECT | CUSTODY STATUS (PC) | X-REFERENCE # |
|---|---|---|
| 1. OWENS, THEON V60905 /. | 4501.5 | 4526025 / |
| 2. | | |
| 3. | | |

☑ I. WE ARE DECLINING TO FILE CHARGES FOR THE FOLLOWING REASONS:
No reasonable likelihood of conviction;
Search and Seizure problem;
Interest of Justice;
Additional investigation required, see attached request;
Victim(s) unavailable/declines to prosecute;
Witness(es) unavailable;
Joined with other charges;
Other – see explanation below

☐ II. CASE REFERRED TO MISD. BUREAU FOR THE FOLLOWING REASONS:
Minimal quantity of narcotics, drugs, or property value;
Defendant's minimal or non-existent prior record;
Reported injuries not aggravated;
Sufficient remedies exist at Muni Court level;
Other – see explanation below

RECEIVED
APR 27 2015
INVESTIGATIVE SERVICES UNIT

EXPLANATION: _____ Administration Remedies Insufficient

---

ATTENTION PROPERTY:    IF BOX IS CHECKED DISTRICT ATTORNEY HAS NO REQUEST TO HOLD EVIDENCE.  DETECTIVE MAY MAKE DISPOSITION DECISION.

If you have any questions concerning this decision, please contact me at ___916-874-8750___ Mackenzie.

(SAC ISU only)                                                                                         APR 02 2015.
This case was referred to the District Attorney's Office for possible felony prosecution on _____

State Targeted Offenses Program
906 G Street, Suite 620, Sacramento, California 95814
Telephone: (916) 874-8750 * FAX (916) 321-2222

# APPENDIX COVER PAGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

H H H.

APPENDIX

DESCRIPTION OF THIS APPENDIX: GENERAL CHRONOS.

Hosted by Defendant-MARTINCEK, In February 18,2015. The appendice herein
Show the immediate deprivation the Plaintiff endured after Defendants beat him
and falsely accused him with battery on an officer, as their job insurance. The
appendixs Shows that after the first alleged gassing, the Plaintiff did not have
any more containers to have Possibly        gassed some one else. The appendics show
that MARTINCEK removed all of the containers from the Plaintiff's assigned cell
that could Possibly     held liquid, during the first alleged incident.

NUMBER OF PAGE'S TO THIS APPENDIX: TWO        PAGE'S.

# APPENDIX   SEPARATION   PAGE

THEON OWENS.         VS.  JOSEPH DEFAZIO. ET AL.

**CIVIL ACTION NUMBER.: 2:16-CV-02750-JAM-KJN.**



HHHH-1

APPENDIX

DESCRIPTION OF THIS APPENDIX: CDCR-128-B (Rev. 4/7-i)GENERAL CHRONO

Hosted by Defendant· MARTINCEK. on February 18. 2015. The appendix herein shows
the immediate deprivation the plaintiff endure after he was beaten and  defendants
falsified reports on him as their Job insurance.

| NAME and NUMBER | **OWENS** | **V-60905** | **FA3-232** | **CSP-SAC** | CDCR-128-B (Rev. 4/74) |
|---|---|---|---|---|---|
| | **NAME** | **CDC#** | **CELL#** | | |

On February 18, 2015, you were observed committing the act of, Battery on a Peace Officer refer to IR# (SAC-PSU-15-02-0194) necessitating the implementation of the following behavior control status.

### RESTRICTION(S) / STATUS IMPOSED:

| CUSTODY/PRECAUTIONS | STATUS/.PRECAUTIONS |
|---|---|
| ☐ **LEG IRONS:** | ☐ NO TEAR BLANKET |
| ☐ IN-CELL ALTERNATE FEEDING STATUS | ☐ PAPER TRAY |
| ☐ SECURITY TRIANGLE | ☐ YELLOW LEXAN/PLACARD) |
| ☒ SPIT NET | ☐ INDECENT EXPOSURE CONTROL JUMPSUIT |
| ☐ SMALL SECURITY CUFFS | ☐ PAPER BAG STATUS |
| ☐ OTHER | ☐ OTHER |

| RESTRICTION/.PRECAUTIONS | RESTRICTIONS/.PRECAUTIONS |
|---|---|
| ☐ YARD (00 YARD DAYS LOSS) EXP: | ☐ SHOE |
| ☐ APPLIANCE RESTRICTION EXP. | ☐ CLIPPERS/SHAVERS |
| ☐ LINEN | ☐ SPOON |
| ☐ CLOTHING | ☐ PEN FILLER |
| ☐ MATTRESS | ☐ NO TEAR SMOCK |
| ☐ CUP/CONTAINER | ☐ OTHER |
| ☐ GROUP (30 DAYS) EXP: | |
| ☐ MODIFIED ESCORTS EXP: | |
| ☐ NO GROUP ESCORT | |

DURATION: UFN

☐ CONTINUE PER CUSTODY  ☐ *CONTINUE PER IDTT    EXPIRES:

REQUESTED BY: C. Martincek, Lt

_____
Correctional Sergeant, A-Facility

APPROVED / DISAPPROVED

C. Martincek, Correctional Lieutenant
A-Facility Psychiatric Services Unit (PSU)
APPROVED / DISAPPROVED

_____
*Clinician/Facilitator
A-Facility Psychiatric Services Unit (PSU)
APPROVED / DISAPPROVED

_____
C. Cannedy, Facility Captain
A-Facility Psychiatric Services Unit (PSU)
APPROVED / DISAPPROVED

ORIG:  CENTRAL FILE-CANARY   PSU/HCA PROGRAM OFFICE
   cc:  INMATE             CORRECTIONAL COUNSELOR II
        PAR BOOK

DATE     **02/22/14**          **(A-FACILITY PSYCHIATRIC SERVICES UNIT)**          GENERAL CHRONO

# APPENDIX  SEPARATION  PAGE

THEON OWENS.            VS. JOSEPH DEFAZIO. ET AL..

**CIVIL ACTION NUMBER.:** 2:16-CV-02750-JAM-KJN.

HHH·2

**APPENDIX**

**DESCRIPTION OF THIS APPENDIX:** CDCR-128-B (Rev. 4/14) GENERAL CHRONO.

Hosted by Defendant - MARTINCEK. on February 18. 2015. The appendix herein shows
that the Plaintiff was Placed on "No cup / container." after an alleged incident of
"Gassing" (See compl. at PP.31-D ). The appendix supports the Plaintiff's claim of MARTINCEK
removing "all containers that could hold liquid" from his cell (see compl. at PP. 31-D). The
appendix also shows that after the first incident and allegation of gassing. the
Plaintiff did not have any more containers to gass anyone else. Which shows that
Defendants are lying about the Plaintiff gassing Defendant BETTENCOURT  Which
supports the Plaintiff's claims that defendants made that Part up. to try an justify
beating the crap out of the Plaintiff and needing access to the Plaintiff.

| NAME and NUMBER | **OWENS** | **V-60905** | **FA3-232** | **CSP-SAC** | CDCR-128-B (Rev. 4/74) |
|---|---|---|---|---|---|
| | **NAME** | **CDC#** | **CELL#** | | |

On February 18, 2015, you committed the act of Battery on a Peace Officer - Gassing, (refer to IR# SAC-PSU-15-02-0191) necessitating the implementation of the following behavior control status.

### RESTRICTION(S) / STATUS IMPOSED:

| **CUSTODY/PRECAUTIONS** | **STATUS/.PRECAUTIONS** |
|---|---|
| ☐ LEG IRONS | ☐ NO TEAR BLANKET |
| ☐ IN-CELL ALTERNATE FEEDING STATUS | ☐ PAPER TRAY |
| ☐ SECURITY TRIANGLE | ☐ YELLOW LEXAN/PLACARD |
| ☐ SPIT NET | ☐ INDECENT EXPOSURE CONTROL JUMPSUIT |
| ☐ SMALL SECURITY CUFFS | ☐ PAPER BAG STATUS |
| ☐ OTHER | ☐ OTHER |

| **RESTRICTION/.PRECAUTIONS** | **RESTRICTIONS/.PRECAUTIONS** |
|---|---|
| ☐ YARD (10 YARD DAYS LOSS) EXP: | ☐ SHOE |
| ☐ APPLIANCE RESTRICTION EXP. | ☐ CLIPPERS/SHAVERS |
| ☐ LINEN | ☐ SPOON |
| ☐ CLOTHING | ☐ PEN FILLER |
| ☐ MATTRESS | ☐ NO TEAR SMOCK |
| ☒ NO CUP/CONTAINER – POWDERED BEVERAGE | ☐ OTHER: |
| ☐ GROUP (30 DAYS) EXP: | |
| ☐ MODIFIED ESCORTS EXP: | |
| ☐ NO GROUP ESCORT | |

*DURATION: NO CUP/CONTAINER – POWDERED BEVERAGE, until further notice.*

☒ CONTINUE PER CUSTODY  ☐ *CONTINUE PER IDTT     EXPIRES:

REQUESTED BY: C. Martincek, Lt.

C. Martincek, Correctional Lieutenant
A-Facility Psychiatric Services Unit (PSU)
APPROVED / DISAPPROVED

Correctional Sergeant, A-Facility
APPROVED / DISAPPROVED

*Clinician/Facilitator
A-Facility Psychiatric Services Unit (PSU)
APPROVED / DISAPPROVED

C. Cannedy, Facility Captain
A-Facility Psychiatric Services Unit (PSU)
APPROVED / DISAPPROVED

ORIG: CENTRAL FILE-CANARY  PSU/HCA PROGRAM OFFICE
  cc: INMATE              CORRECTIONAL COUNSELOR II
      PAR BOOK

DATE

GENERAL CHRONO

**02/18/2015**          **(A-FACILITY PSYCHIATRIC SERVICES UNIT)**

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

III.

CAES NO. 2:16-CV-02750-JAM-KJN.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: TYPED LETTER.

"Hosted by ROBERT A. BARTON, Inspector General, on September 29, 2015. It shows a response to the Plaintiff letter dated August 31, 2015. It also shows that the letter was forwarded to regional field staff for follow-up."

NUMBER OF PAGES TO THIS APPENDIX: __1__ PAGE'S.



*Robert A. Barton, Inspector General*

*Office of the Inspector General*

December 29, 2015

Theon Owens V60905
California State Prison - Sacramento
P.O. Box 290066
Represa CA 95671

Dear Theon Owens:

The Office of the Inspector General has received your correspondence.

As stated in our earlier letters to you, we are unable to provide further assistance. We encourage you to pursue the available administrative remedies available to you.

In regard to your transfer, each institution considers an inmate's case factors – including, in part, length of term, and appropriateness of current housing, safety concerns, and availability of appropriate housing. OIG is not involved in the department's decision making to endorse an inmate to (or from) a particular institution.

Thank you for bringing your concerns to our attention. The Office of the Inspector General considers this matter closed.

INTAKE AND REVIEW UNIT
Office of the Inspector General

JD: 15-0023980-04 (15-0002807-PI)

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS.  JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

J J J,

APPENDIX.

## DESCRIPTION OF THIS APPENDIX: TYPED LETTER.

"Hosted by the California State Prison-Sacramento Litigation coordinator. T. kraemer, on october 1, 2015. It shows that the institution policies regarding clearing of the alarm is within the confidential Department operational Manual (DOM), which will require in-camera review. Please see claims ensured against defendant kenneth Blessing # 63591."

NUMBER OF PAGE'S TO THIS APPENDIX: 1          PAGE'S.

CALIFORNIA STATE PRISON-SACRAMENTO
LITIGATION OFFICE
F    Box 290027
Represa, CA 95671-0027



Date:        October 1, 2015

To:          Theon Owens (V60905)

Housing:     B7-227

Regarding:   Public Records Request

This letter is in response to your request for public records dated September 20, 2015, and received on September 22, 2015, for records regarding the following:

"Can you provide me with a copy of the CSP-SAC policie and procedures regarding the clearing of an alarm before, during and after an emergency situation (2) Can you identify CSP_SAC policie or procedures which state therein that any staff who is named as a witness or a participant in the use of force must write a report. (3) Can you identify any CSP-SAC police that states that if a staff member is named on a report involving use of force then that staff need write a report."

The California Department of Corrections and Rehabilitation reviewed and partially grants your request.

Our institution's policies regarding clearing alarms is within the Confidential Department Operations Manual (DOM). Per DOM Section 13040.12, Confidential DOM material is exempt from disclosure.

Use of force reporting requirements are documented in DOM Sections 51020.17 and 51020.17.1.

T. KRAEMER
Litigation Coordinator

PRA File

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS. VS. JOSEPH DEFAZIO. ET AL    k k k..

CAES No. 2:16-CV-02750 -JAM-KJN.    APPENDIX.

## DESCRIPTION OF THIS APPENDIX: TYPED LETTER.

"Hosted by The Inspector General (I.G.). RoBERT A. BARTON, on December 29. 2015. It shows The I.G.'s response to the Plaintiff's letter requesting a transfer in the handaling of the investigation on the issues presented in this case. It also shows the I.G.'s response to the Plaintiff request to be transfered to a different Prison."

NUMBER OF PAGE'S TO THIS APPENDIX: 1 _____ PAGE'S.



*Robert A. Barton, Inspector General*                                    *Office of the Inspector General*

September 29, 2015

Theon Owens V60905
California State Prison - Sacramento
P.O. Box 290066
Represa CA 95671

Dear Theon Owens:

The Office of the Inspector General has received your correspondence. We reviewed the issues you raised and forwarded your letter to our regional field staff for follow-up.

As part of our statutory mandates, the Office of the Inspector General oversees the internal affairs investigations and employee disciplinary process of the California Department of Corrections and Rehabilitation (CDCR), monitors CDCR's use-of-force review process, and conducts reviews of CDCR's policies, practices, and procedures. The Office of the Inspector General does not conduct independent investigations; however, our regional field staff work directly with prison administrators to resolve issues at the local level. Since CDCR employee investigations are confidential, the Office of the Inspector General cannot provide you with information regarding the results of any ensuing CDCR investigations we are monitoring.

If you have not done so already, we encourage you to continue using available administrative grievance remedies. Please contact your correctional counselor for advice and assistance regarding questions about the process or the status of your appeal/grievance. If your appeal has been cancelled, and you dispute the reasons for cancelling your appeal, you may file a new appeal disputing the appeal coordinator's reasons for cancelation, explaining why the cancelation was improper or why the appeal should have been processed anyway. You should attach the original appeal and the cancelation notice with any documentation supporting your claim that the appeal was improperly rejected, and submit the whole package to the appeals coordinator.

In your complaint to the Office of the Inspector General, you included a copy of a citizen's complaint. Please note, we do not submit forms or complaints on behalf of inmates or citizens. The Office of the Inspector General recommends you, or your family, follow directions provided on the reverse side of the citizen's complaint and submit the form to the appropriate party listed on the form.

Thank you for bringing your concerns to our attention.

INTAKE AND REVIEW UNIT
Office of the Inspector General

RG: 15-0023980-03 (15-0001895-PI)

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

L.L.L.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: HANDWRITTEN LETTER.

"Hosted by The Plaintiff THEON OWENS, on Feb 9, 2016. It Shows the letter that the Plaintiff Written to Prison officials and attachment agencies. inZuiring into the Final status of the departments investigation."

NUMBER OF PAGE'S TO THIS APPENDIX: __1__ PAGE'S.

CONFIDENTIAL CORRESPONDENCE:

TO: D. GRANT, Deputy Director of the O.I.A.
P.O. Box 3009
Sacramento C.A. 95812

DATE: February 9, 2016

RE: Status of investigation Appeal Log No: SAC-15-00582, TLR case No.: 1414306.

Dear D. GRANT

I am writing you because i was advised by the CSP-SAC Correctional Counselor II. R. LARGENT, that your office is the one's who conducted the investigation on the handcuffed beating i received on my person on February 18, 2015. by sgt. kenneth Blessing # 63591 and c/o. JOSEPH DEFAZIO # 71470, and other officers working on the of, the beating i receive caused me many injuries, some of which were serious and are listed within CCR Title 15. Section 3000 under "S.B.I.", I am trying to find out the result's of the investigation in consistent with id, at section 3391 (d) which require the finding of such an investigation to be disclosed to the claimant, Also one of the C/O'S RASHEV PETYO # 85293 that participated in the beating on me is now working in my assigned block, he has been continuously coming to my cell door trying to handcuff me up. I think he is up to something, and is trying to administer more cruel, and unusual corporal punishment, he has been laughing and joking with inmates on the tier about my now knocked out teeth, I dont want to have to write the courts about his threatening demeanor and taunting, for a temporary restraining order, could Your office please contact the warden and notify him of his subordinate misconduct. Thank You.

Sincerely
Theon owens
Theon owens

Theon owens V-60905 FB7-112
California State Prison - Sacramento
P.O. Box 290066
Represa C.A. 95671

cc: Retain in File.

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS. VS. JOSEPH DEFAZIO. ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

MMM.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: HANDWRITTEN LETTER.

"Hosted by The Plaintiff THEON OWENS. on 4/20/2015. Addressed to the Warden of California State Prison - Sacramento (CSP-SAC). The office of The Internal Affairs. The office of The Inspector General. The office of The Ombudsmen. The Department of Justice. and CSP-SAC B-Yard Lieutenant. C. Finnegan. The letter was written for the purpose of filing a complaint on prison officials for violating the Plaintiff's First Amendment right."

NUMBER OF PAGE'S TO THIS APPENDIX: __1__ PAGE'S.

To:

RE: To file a complaint and to get help.

Dear Sir or Madam

I am writing you this most urgent letter, because i file a complaint on 2-28-15 log No. CMF-M-15-00523/SAC-0-15-00795. regard C/O's heat at CSP-SAC assaulting and battering me. that cause me to become disfigured, the problem now is that the appeals office staff are playing games with my appeal. I file an appeal on this. The appeals office is alleging that they sent the appeal back to me. for it to be rewritten. because they say "i wrote in A-Section continue in section D', in which i did. because there was not enough room to state in detail all the facts that were the basis for the complaint, and i wanted to be as clear as possible. ~~But the problem is that i never received the appeal back~~. I feel that the appeals office staff are purposefully violating my rights to appeal and to access the court.

action requested. could you contact CSP-SAC appeals staff C. BURNETT. Appeals coordinator, C. RASMUSSEN. CCI, T. HRONEK. CCII, and R. COMPTON. Appeals Analyst. Appeals Coordinator. and tell them to (1) Respect my rights to appeal. (2) Respect my right to access the court. (3) have them send me my appeal SAC-0-15-00795/CMF-M-15-00523, and (4) could you ensure that they hear the appeal A.S.A.P...

The rules governing this issue are CCR Title 15 Sections 3084.1(a) and (d) Right to Appeal, and 3160.(a) Inmate Access to Courts.

Sincerely
THEON OWENS V-60905
CSP-SAC. P.O. Box 29
Represa A.C. 95671

CC: WARDEN OF CSP-SAC
O. I. A.
O. I. G.
Office of the Ombudsman
The Department of Justice
C. Yard Lieutenant. C. FINNEGAN

# APPENDIX  COVER  PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS,  VS.  JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

N NN.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: HANDWRITTEN LETTER.

"Hosted by the Plaintiff Theon Owens on 5/ /2015. addressed to The Inspector
General office, The International Affairs office, The Department of Justice,
and Warden of California State Prison - Sacramento. Written for the purpose of
having the inspector General office perform a polygraph examination on the
Plaintiff and defendants. So that the defendants unlawful beating could be
exposed."

NUMBER OF PAGE'S TO THIS APPENDIX: 1          PAGE'S.

TO:

RE: Request for Polygraph Examination.

Dear Sir or Madam

I am writing you this urgent letter. on the facts that on 5-7-15. D. Martinez, one of the c/o's who assaulted and battered me on Wednesday February 18. 2015 at approximately 1315 hours (Please see unnecessary excessive force video tapes dated Feb 18-15. and Feb 21-15), came to my cell door B-7-226, as one of the c/os assigned as Medical escort, for an appointment that i had with the Optometrist. While at my cell front, i told him that i did not feel comfortable being escorted by him after he and the rest of the c/o's jumped on me with my hands cuffed behind my back, he began to discuss with me, his involvement in the incident that caused serious bodily Injuries (S.B.I.) to me, that subsequently ended in aggravated battery on a inmate. he expressed his dislike for being named on the CDCR 602 Log No. CMF-M-15-00523/SAC-0-15-00195. and on the video tapes but that he was not regretful nor remorseful, because he said he was not the one who kicked me in the testicles. and that the other involved staff did not tell him that they were going to do what they did. I asked him would he be willing to submit to a polygraph examination, by the inspector General office. he said "Yes" "I will submit to a test" upon information and belief several officer have relayed to me that c/o. J.Defazio also said he would submit to an examination, and that he said he wasn't the one who knocked out my two teeth. and or the one who called me a "NIGGER" and that i did try an headbutted and try to bite him, and he would take a test on all of the above stated. I ACCEPT BOTH OF THEIR OFFERS. and i as well would like to be an examinee, so that a clear full decription of the event of Feb 18 can be met, and a path to the hole truth can be salute, by having the victim and the aggressor's be examine. Because i know beyond a reasonable doubt that. WHAT I WROTE AND SAID IN FACT HAPPEN. THE WAY I WROTE AND SAID IT HAPPEN. AND I KNOW THAT THEY DONT WANT THE REAL TRUTH TO COME OUT. BECAUSE THERE'S BIG CONSEQUENCES FOR THAT. So i feel that the best way to find out the truth of what happen. is not to go on my word or their, but to allow a officer of correctional safety with the IGO. to conduct an examination, and let that be the truth of what infact happen !!!....

ACTION REQUESTED: (1) For the inspector General office to grant having one of their correctional safety officers performing a polygraph examination on me (theon owens). c/os J.Defazio, D. Martinez, M. Brady, J. Lebeck, and J. Burke. (2) I would like to beable to sign a consent for the examination to happen immediately. (3) immediately after the examination i would like disciplinary action and criminal charges file against all the people named for assault and aggravated battery w/ s.B.I.

CC: Inspector general
    International Affairs
    Department of Justice
    Warden of CSP-SAC

# APPENDIX COVER PAGE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO, ET AL

CAES NO. 2:16-CV-02750-JAM-KJN.

QQQ.

APPENDIX.

DESCRIPTION OF THIS APPENDIX: "TYPED LETTER FROM WARDEN (A) ROBERT W. FOX."

Hosted by California Medical Facility (C.M.F.). Warden (A) ROBERT W. FOX, on March 12, 2015. The Appendix herein shows the letter writing by FOX in response to a letter written by the Plaintiff's sister. ZANA RUBIN. The exhibit shows the facts known to the Plaintiff's sister, relayed to FOX. The exhibit also shows that the claims relayed were allegedly "being investigated by the Department."

NUMBER OF PAGE'S TO THIS APPENDIX: ____1____ PAGE'S.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                                          EDMUND G. BROWN, GOVERNOR

**DIVISION OF ADULT OPERATIONS**
**CALIFORNIA MEDICAL FACILITY**
 300 California Dr.
Vacaville, CA 95696



Ms. Zana Rubin
466 Arabian Way
Antioch, CA 94531

Dear Ms. Rubin:

I am in receipt of your correspondence dated March 1, 2015, regarding your brother, Theon Owens, V-60905, who is currently incarcerated at the California Medical Facility (CMF).

In your letter, you express concern about your brother's welfare, indicating staff is trying to kill him. You state staff used excessive force to the point of blackening both eyes, causing swelling to his entire face, knocking out two teeth, pulling out his hair and kicking him over 30 times. Additionally, you state you attempted to visit your brother on March 1, 2015, but were turned away.

When a complaint of this nature is received by my office, all circumstances surrounding the complaint are investigated. On March 12, 2015, D. Hurtado, Correctional Lieutenant, was assigned to review this matter. Lieutenant Hurtado discovered your brother arrived at CMF on February 21, 2015. At the time of his arrival, he made allegations of unnecessary force which he claimed occurred at his previous institution. His allegations were immediately reported by my staff and are currently being investigated by the Department. As such, I cannot elaborate on this matter; nevertheless, your brother will be notified of the outcome once the investigation is complete.

In regards to your attempt to visit, your brother is currently housed in an area where his visiting privileges are contingent on the approval of his interdisciplinary treatment team. At this time, your brother has not been approved for visiting privileges.

I apologize for any hardship this may cause you or your family. However, it is necessary to maintain public safety and the security of the institution.

If you have any further questions or concerns regarding this matter, please contact Y. Glee, Correctional Counselor II, at (707) 448-6841, extension 5435.

(A) **ROBERT W. FOX**
Warden (A)

# APPENDIX COVER PAGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

THEON OWENS, VS. JOSEPH DEFAZIO ET AL

CAES NO. 2.16·CV·02750·JAM·KJN.

PPP.

APPENDIX

DESCRIPTION OF THIS APPENDIX: BILLS & RECEIPTS.

Hosted by Plaintiff. THEON OWENS. And Different   Prison officials on
different dates. The appendixes herein show the bills and receipts Plaintiff
received as a  result  of Defendants actions and for Medical Supplies
records for litigation in this case, and for partial upper and lower denture
set.

NUMBER OF PAGES TO THIS APPENDIX: 1- 7____ PAGE'S.

# APPENDIX   SEPARATION   PAGE

THEON OWENS.                    **VS.** JOSEPH DEFAZIO. ET AL..

**CIVIL ACTION NUMBER.:** 2:16-CV-02750-JAM-KJN.

PPP- 1

**APPENDIX**

**DESCRIPTION OF THIS APPENDIX:** CDCR-7536 (12/14) DURABLE MEDICAL EQUIPMENT AND MEDICAL SUPPLY RECEIPT.

Hosted by the Plaintiff THEON OWENS And Registered Nurse (R.N.) J. L. REYES, on 8/14/ 2015. It shows that the Plaintiff was charged $10.73 for an ankle brace Purchase, for his fractured left ankle injury, caused by Defendants excessive force (see compl. at ¶¶. 5 8. )

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**DURABLE MEDICAL EQUIPMENT AND MEDICAL SUPPLY RECEIPT**
CDCR 7536 (12/14)

Form: Page 1 of 1
Instructions: Pages 2-3

*Sections A-C Fill Out Completely and Check all Applicable Boxes*

**Section A:**

Date: 8|14|15    CDCR #: V60905    Patient-Inmate Name (Print): Owens, Theon

I have received the following items today:

Make: _____ ☒ N/A    DME/PHC Type: ankle brace    Quantity: 1

Model: _____ ☒ N/A    ☒ Purchased ☐ Loaned    Cost of DME: $10.73    ☐ N/A

Serial Number: _____ ☒ N/A

Size: large

Vendor: Medical

Type of Issuance:    **New    Temporary    Loaner (Circle one)**

Comments:

Patient-Inmate Signature: Theon Owen    Date: 8-14-2015

**Section B:**

☒ Patient-inmate received DME or medical supply

☐ Patient-inmate received DME or medical supply and refused to sign the receipt

☐ Patient-inmate refused DME or medical supply

☐ Patient-inmate refused DME or medical supply and refused to sign the receipt

Issued by (Print Name and Title): J. L. Reyes, RN    Signature: _____    Date: 8/14/15

Staff Witness (Print Name and Title): _____

Signature: _____    Date: _____

Staff Witness (Print Name and Title): _____

Signature: _____    Date: _____

**Section C:**

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☒ P/I asked questions | CDCR #: V60905 |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☒ P/I summed information. | Last Name: Owens |
| ☐ DPS ☒ DNH | ☐ Louder ☐ Slower | Please check one: | First Name: Theon    MI: |
| ☐ DPM ☐ DDP | ☒ Basic ☐ Transcribe | ☐ Not reached* ☒ Reached | DOB: 8/12/62    Housing: 67-227 |
| ☒ Not Applicable | ☐ Other* | *See chrono/notes | |
| 4. Comments: _____ | | | |

NOTE: Staff shall forward the original to Health Information Management (HIM) to be scanned into the patient-inmate's electronic health record, send the patient-inmate copy via institutional mail or in person, and send a copy to the C&PR/RC CCIII for Reception Centers for tracking and further distribution according to the instructions below.

**Original:** HIM; **Copy:** Patient-Inmate; **Fax:** Nurse Staffing Office x3089

**HCCA:** Scan to Health Care Access OT, ADA Coordinator, CME, CP&S, R&R Sgt, C&PR, Asst. C&PR, CAMU CCII, Health Care Access CCII, R&R Sgt, Trust Office

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and / or protected health information may subject individuals to civil liability under applicable federal and state laws.*

Fax 3089, copy to I/P

# APPENDIX SEPARATION PAGE

THEON OWENS _____ VS. JOSEPH DEFAZIO, ET AL..

**CIVIL ACTION NUMBER.:** 2:16-CV-02750-JAM-KJN.

PPP-2.

APPENDIX

**DESCRIPTION OF THIS APPENDIX:** CDC-193 (1/88) TRUST ACCOUNT WITHDRAWAL ORDER.

Hosted by The Plaintiff Theon Owens And Health Records Technician ("HRT") JOHN DOE. on 8/3/2018. The appendix herein shows that the Plaintiff was charged $121.70 for copies of Medical Records For Defendants Counsel's Deposition dated September 18, 2018 at 9:00 AM. and For Defendant Defazio's first set of Request for Production of Documents dated June 7, 2018.

STATE OF CALIFORNIA                                                        DEPARTMENT OF CORRECTIONS
CDC - 193 (1/88)

# TRUST ACCOUNT WITHDRAWAL ORDER

Date ___8 / 3___ 20_1 8___

To: Warden                          Approved ___AB2  PM7___

I hereby request that my Trust Account be charged $ ___121. 70___ for the purpose stated below and authorize
the withdrawal of that sum from my account:

___VL0905___                                   ___Theo owen___
NUMBER                                          NAME (Signature please, DO NOT PRINT)

State below the PURPOSE for which withdrawal is requested       PRINT PLAINLY BELOW name and address of person
(do not use this form for Canteen or Hobby purchase).           to whom check is to be mailed.

PURPOSE_____            NAME_____

___Cepu  01  MD/MH/DY___                ADDRESS_____
___735 date  7/m/l1___
___Pg# 531313y___                       _____

                                        _____

                                        ___Theo  Owens___
                                        PRINT YOUR FULL NAME HERE

# APPENDIX  SEPARATION  PAGE

THEON OWENS.           **VS.** JOSEPH DEFAZIO. ET AL.

**CIVIL ACTION NUMBER.:** 2:16-CV-02750-JAM-KJN.

PPP-3

**APPENDIX**

**DESCRIPTION OF THIS APPENDIX:** CDC-193 TRUST ACCOUNT WITHDRAWAL ORDER.

Hosted by Health care Records Technician (HRT) J.De La Cruz. on 9/28/2015. The appendix herein shows the receipt   for a charge of $31.80. that the plaintiff received as a result   of litigating  this suit against defendants. The appendix shows that the plaintiff purchased Medical records for exhibits and appendixes.

NOV 0 3 2015

STATE OF CALIFORNIA - DEPARTMENT OF CORRECTIONS AND REHABILITATION    JERRY BROWN, GOVERNOR

**CALIFORNIA STATE PRISON - SACRAMENTO**
HEALTH CARE DIVISION
PO BOX 290012
Represa, CA 95671-0012
Phone (916) 985-1610 Ext. 6152
Fax (916) 249-3113



**TRUST ACCOUNT WITHDRAWAL ORDER**

|                                          | Approved by: | DATE: | | **9/28/2015** |
|---|---|---|---|---|
|                                          | J.DeLaCruz, HRT I / Medical Records Dept. | | | |

To: Warden                                                                HOUSE:    **B7-227**

I herby request that my Trust Account be charged $ 34.80  th for the purpose stated below and authorized the withdrawal of that sum from my account.

**V60905**

CDCR #

_Theor Owen_
NAME (Signature please: Do not print)

State below the PURPOSE for
which withdrawal is requested.
(do not use this form for Canteen or
hobby purchase.)

PURPOSE: **Health Record File Review**          **NAME : OWENS**
      e-uhr/uhr
      **COPIES**                    **DATE:**   9/28/2015

**Dr's Orders**
**Progress Notes**
**MARS**
**Public Health**
**Labs**
**X-Ray/Opto**              xray result 4/23
**Chrono's**                xray chrono 4/23
**Consulations/Opto**
**Dental**
**Mental Health**           mh chrono 4/23

**Infirmary Stays**
**Hospital/OF**
**I/P Records**             **2/21/2015-3/24/2015**

· Treatment Plans Dr White
· Suicide Precaution Record
· 3/11/15 complaint of ankle
· 7230MH Notes

# APPENDIX  SEPARATION  PAGE

THEON OWENS,                    VS.  JOSEPH DEFAIO, ET AL.,

CIVIL ACTION NUMBER.: 2:16-CV-02750-JAM-KJN.

PPP-4

APPENDIX

**DESCRIPTION OF THIS APPENDIX**: CSP-SAC DENTAL DEPARTMENT PROSTHODONTIC APPLIANCE RECEIVED.

Hosted by The Plaintiff, THEON OWENS, And Doctor of Dental Surgery (DDS) J. SANDHU, on 11-5-2015. It shows that the Plaintiff was charged $150.00 for Partial upper and lower dentures.

 California State Prison – Sacramento
Dental Department

**PROSTHODONTIC APPLIANCE RECEIVED.**

DENTIST: _DR. SANDHU_

DENTAL FACILITY: _B_

INMATE NAME (print): _OWENS, THEON_

INMATE CDCR NUMBER: _V 60905_

DATE TRUST ACCOUNT WITHDRAWAL ORDER WAS SIGNED: _11-5-15_

AMOUNT CHARGED TO INMATE'S ACCOUNT: $ _150.00_
(Use "Inmate Dental Prosthodontic Price List – March 1, 2009")

DATE INMATE RECEIVED PROSTHODONTIC APPLIANCE: _2-17-16_

PROSTHODONTIC APPLIANCE: (Use "Inmate Dental Prosthodontic Price List" for description)

_Partial Upper & Lower Denture del._

☐ I refuse to continue with the denture construction process and / or receive my completed dental appliance(s). I understand that since the order was authorized by my signature at a previous dental appointment, I will be charged for the full cost of the appliance(s). (Inmates who were indigent at the time the order was placed will not be charged.) I also understand that shall I change my mind at a later date, all materials related to my current appliance(s) will have been destroyed. Therefore, the dental appliance construction process will start from the beginning and I will be charged again for the appliance(s).

☒ I hereby acknowledge receipt of the above described prosthodontic appliance(s).

_V 60905_
CDC NUMBER

_Theon oau_
INMATE'S SIGNATURE

D.O.B. _8/12/82_

Confidential Saved 2016-04-19T14:56:38Z

# APPENDIX SEPARATION PAGE

THEON OWENS,                    **VS.** JOSEPH DEFAZIO, ET AL.

**CIVIL ACTION NUMBER.**: 2.16-CV-02750-JAM-KIN.

PPP.5

**APPENDIX**

**DESCRIPTION OF THIS APPENDIX**: CDCR-7428 (Rev. 08/10) Full AND PARTIAL DENTURE AGREEMENT.

Hosted by the Plaintiff, THEON OWENS, Doctor of Dental Surgery (D.D.S.) J. SANDHU, And Dental Assistant (DDS. A.) J. ATIENZA, on 11-5-2015, It shows that the Plaintiff was Charged $150.00 for dentures to mask the teeth knocked out by Defendants.

STATE OF CALIFORNIA
**FULL AND PARTIAL DENTURE AGREEMENT**
CDCR 7428 (REV. 08/10)

D.O.B. 12-24-82

DEPARTMENT OF CORRECTIONS AND REHABILITATION

*Page 1 of 1*

Patient Name (last, first, MI): __OWENS   THEON__     CDC #: __V-60905__

Earliest Possible Release Date (EPRD): __12-24-2021__
<span style="font-size:smaller">(mm/dd/yy)</span>

A. The **dentist** will determine your eligibility and need for full or partial dentures based on the criteria listed below. The dentist will mark each of the following three boxes when completed.

   1. ☑ All questionable/non-restorable teeth have been removed and all gum tissues are stable.

   2. ☑ All new or replacement restorations (fillings) have been completed and all supporting teeth are stable.

   3. ☑ Oral hygiene (keeping your teeth/mouth clean) is consistent, evident and documented at each visit.

B. After each of the three items in section A. is completed, your EPRD will be verified to ensure that you have enough time on your sentence for the completion, delivery and adjustments of your dentures.  You must still have on the day of your first impression for dentures either of the following:

   • For a complete denture or a partial denture where you have no front or back teeth that touch together when you chew (essentially edentulous), a minimum of 6 months remaining to serve on your sentence, **OR**

   • For a partial denture where you have 7 or fewer back teeth that touch together when you chew or for an anterior partial denture, a minimum of 12 months remaining to serve on your sentence and you must meet oral hygiene requirements.

C. Dentures will **not** be made for inmate-patients that have completed the three items in section A., but do not have the required time remaining to serve on their sentence.  **This means that teeth could be removed and not replaced before your release date.**

D. The dentist has indicated that the following denture is to be made.

**Type of Prosthesis to be Fabricated** (*Dentist, please place an "X" in the box for each prosthesis to be fabricated*)

☑ Partial Upper Denture (PUD) Replacing teeth numbers: __#8__     ☐ Full Upper Denture (FUD)

☑ Partial Lower Denture (PLD) Replacing teeth numbers: __#26__     ☐ Full Lower Denture (FLD)

At the time of your first impression you will be charged $ __150-00__ for your denture(s).

E. Dentures cannot and will not be mailed to Parole Agents or to your family.

I have read this document, I understand it and agree to comply with it's requirements.

D.O.B. 12-24-82

| | | |
|---|---|---|
| ✗ _Theon Owens_ | | _11-5-15_ |
| **Patient's Signature** | | Date (mm/dd/yy) |
| **J. SANDHU, DDS** | | _11-5-15_ |
| CSP-SAC | | |
| Dentist's Printed Name or Stamp | Dentist's Signature | Date (mm/dd/yy) |
| **J. ATIENZA, RDA** | | _11-5-15_ |
| CSP-SAC | | |
| Witness' Printed Name or Stamp | Witness' Signature | Date (mm/dd/yy) |

# APPENDIX   SEPARATION   PAGE

THEON OWENS.                          **VS.** JOSEPH DEFAZIO. ET AL..

**CIVIL ACTION NUMBER.:** 2:16-CV-02750-JAM-KJN.

PPP-6

APPENDIX

**DESCRIPTION OF THIS APPENDIX:** CDC-193 (1/88) TRUST ACCOUNT WITHDRAWAL ORDER.

Hosted by the Plaintiff. THEON OWENS And Doctor of Dental Surgery ("DDS") J. SANDHU. on 11/15/2015. It shows that the Plaintiff was charged $150⁰⁰ for an impression of his teeth that were knocked out by Defendants excessive force (see compl. at PP. 58 ).

I understand that I may not receive my dental appliance if I am released or paroled prior completion of the dental appliance. I further understand that **THERE ARE NO REFUNDS.**

Signing below indicates that:

I, _OWENS_ , *agree to an irreversible transfer of funds* from my trust account.
(Inmate-patient name printed)

Patient Signature (to authorize Trust Fund transfer) _X  Theon over_

---

STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC – 193 (1/88)

TRUST ACCOUNT WITHDRAWAL ORDER DDS

To:  Warden or Superintendent  Approved _____  CSP-SAC _11-5-15_
Date

I hereby request that my Trust Account be charged $ _150.00_ for the purpose stated below and authorize the withdrawal of that sum from my account.

_V-60905_
Inmate Number

X _Theon Over_
Inmate Signature

State below the PURPOSE for which withdrawal requested (do not use this form for Canteen or Hobby purchases).
_PUD/PLD Impression_

PRINT PLAINLY BELOW name and address to whom check is to be mailed.

Name: SAC Dental Department
_OWENS, THEON_
Inmate Name printed here

Confidential Saved 2016-04-19T14:56:38Z

# APPENDIX  SEPARATION  PAGE

THEON OWENS.          VS. JOSEPH DEFAZIO, ET AL.

CIVIL ACTION NUMBER.: 2.16-CV-02750-JAM-KJN.

PPP-7

**APPENDIX**

## DESCRIPTION OF THIS APPENDIX: CDC-193 TRUST ACCOUNT WITHDRAWAL ORDER.

Hosted by The Trust office, on Feb 14th 2017, at california State Prison-Sacramento. the appendix herein Shows the trust Account Withdrawal order. the Plaintiff filled out to further this litigation and Suit against defendants. The Prison charges litigants $.10 Per Page, Totaling the Plaintiff's loss at $19.30.

COPY

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC-193

## TRUST ACCOUNT WITHDRAWAL ORDER

Date FEB. 14th .................. 20 17 ..........

To :  Warden or Superintendent        Inmate Identified by:.......................

I hereby request that my Trust Account be charged $ ............................................ for the purpose stated below and authorize
the withdrawal of that sum from my account:

V-60905                                              Thean Owen
............................................                  ..........................................................
           NUMBER                                   NAME (Signature please, DO NOT PRINT)

State below the Purpose for which withdrawal is requested      PRINT PLAINLY BELOW name and address for person
(do not use this form for Canteen or Hobby purchases).          to whom check is to be mailed .

PURPOSE Legal Copies  —  147 pages           NAME ..................................................................
........................................ +  120 pages         ADDRESS ...........................................................
........................................ +  125 pages         ..........................................................................

........................................                  ..........................................................................

                                                     Thean Owens
                                                     ..........................................................................
                                                     PRINT YOUR FULL NAME

CDC-193(9/01)