1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   THEON OWENS,                           No.  2: 16-cv-2750 JAM KJN P

12                    Plaintiff,

13         v.                               FINDINGS AND RECOMMENDATIONS

14   JOSEPH DEFAZIO, et al.,

15                    Defendants.

16

17      I.      Introduction

18           Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment.

20   (ECF No. 216.)  Also pending are four separate motions for partial summary judgment filed by

21   plaintiff.  (ECF Nos. 181, 182, 193, 203.[1])  Plaintiff separately filed a packet of exhibits in

22   support of his partial summary judgment motions.[2]  (ECF No. 200.)  Defendants filed a single

23   opposition to plaintiff's motions for partial summary judgment.  (ECF No. 217.)

24   ////

25   _____
     [1]  On October 26, 2020, plaintiff filed a partial motion for summary judgment (see ECF No. 210)
26   that appears to be virtually identical to the partial motion for summary judgment filed October 5,
     2020 (see ECF No. 203).
27
     [2] Plaintiff's exhibit package is lengthy, i.e., 535 pages long.  (ECF No. 200.)  However, plaintiff's
28   exhibits are well organized and contain cover pages.

                                                1

1    For the reasons stated herein, the undersigned recommends that defendants' summary

2    judgment motion be granted in part and denied in part.  The undersigned recommends that

3    plaintiff's summary judgment motion as to defendant Schultz be granted in part.  The undersigned

4    recommends that plaintiff's summary judgment motions be denied in all other respects.

5    II.    Legal Standards for Summary Judgment

6    Summary judgment is appropriate when it is demonstrated that the standard set forth in

7    Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

8    movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

9    judgment as a matter of law."  Fed. R. Civ. P. 56(a).

10             Under summary judgment practice, the moving party always bears
             the initial responsibility of informing the district court of the basis
11           for its motion, and identifying those portions of "the pleadings,
             depositions, answers to interrogatories, and admissions on file,
12           together with the affidavits, if any," which it believes demonstrate
             the absence of a genuine issue of material fact.
13

14    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

15    56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

16    only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

17    Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

18    387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

19    committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

20    burden of production may rely on a showing that a party who does have the trial burden cannot

21    produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

22    should be entered, after adequate time for discovery and upon motion, against a party who fails to

23    make a showing sufficient to establish the existence of an element essential to that party's case,

24    and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

25    "[A] complete failure of proof concerning an essential element of the nonmoving party's case

26    necessarily renders all other facts immaterial."  Id. at 323.

27    Consequently, if the moving party meets its initial responsibility, the burden then shifts to

28    the opposing party to establish that a genuine issue as to any material fact actually exists.  See

2

1   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

2   establish the existence of such a factual dispute, the opposing party may not rely upon the

3   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

4   form of affidavits, and/or admissible discovery material in support of its contention that such a

5   dispute exists.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

6   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

7   of the suit under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

8   (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.

9   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

10  a verdict for the nonmoving party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436

11  (9th Cir. 1987), <u>overruled in part on other grounds</u>, <u>Hollinger v. Titan Capital Corp.</u>, 914 F.2d

12  1564, 1575 (9th Cir. 1990).

13          In the endeavor to establish the existence of a factual dispute, the opposing party need not

14  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

15  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

16  trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

17  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

18  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

19  amendments).

20          In resolving a summary judgment motion, the court examines the pleadings, depositions,

21  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

22  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See</u> <u>Anderson</u>, 477 U.S. at

23  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

24  drawn in favor of the opposing party.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587; <u>Walls v. Central Costa</u>

25  <u>County Transit Authority</u>, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not

26  drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

27  which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224,

28  1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a

1   genuine issue, the opposing party "must do more than simply show that there is some

2   metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

3   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

4   trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

5          "[W]hen simultaneous cross-motions for summary judgment on the same claim are before

6   the court, the court must consider the appropriate evidentiary material identified and submitted in

7   support of both motions, and in opposition to both motions, before ruling on each of them."

8   Tulalip Tribes of Wash. v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting Fair Hous.

9   Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)).  The

10  court "rule[s] on each party's motion on an individual and separate basis, determining, for each

11  side, whether a judgment may be entered in accordance with the Rule 56 standard."  Id. (quoting

12  10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure

13  § 2720 (3d ed. 1998)); see also ACLU of Nev. v. City of Las Vegas, 466 F.3d 784, 790-91 (9th

14  Cir. 2006) ("We evaluate each motion separately, giving the nonmoving party in each instance

15  the benefit of all reasonable inferences.") (citations and internal quotation marks omitted).

16         By contemporaneous notice provided on January 4, 2017 (ECF No. 14), plaintiff was

17  advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

18  Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

19  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

20     III.    Plaintiff's Claims

21         *Factual Allegations*

22         This action proceeds on plaintiff's original verified complaint against defendants

23  Bettencourt, Blessing, Brady, Burke, Defazio, Drake, Eldridge, Guffee, Lebeck, Martincek,

24  Martinez, Matthews, Mercado, Murillo, Okoroike, Rashev and Schultz.

25         Plaintiff alleges that on February 18, 2015, he became upset after he was allegedly denied

26  meals.  (ECF No. 1 at 15.)  Plaintiff threw water at his cell door throughout the morning to protest

27  his failure to receive meals.  (Id. at 16.)  At approximately 1225 hours, defendants Martincek,

28  Blessing, Bettencourt and Rashev approached plaintiff's cell door.  (Id.)  Defendant Martincek

1  told plaintiff that non-defendant Potter had accused plaintiff of gassing him, i.e., throwing urine

2  or feces at him.  (Id.)  Defendant Martincek asked plaintiff to submit to mechanical restraints so

3  that his cell could be searched and all liquid could be removed from his cell.  (Id.)

4       Plaintiff complied with defendant Martincek's request and submitted to restraints.  (Id.)

5  Defendant Martincek instructed his subordinates to take plaintiff to the upper tier shower.  (Id. at

6  16-17.)  Once plaintiff was in the shower, defendant Martincek instructed his subordinates to

7  search plaintiff's cell and remove all containers.  (Id. at 17.)  Once the cell was searched,

8  defendant Martincek instructed his subordinates to put plaintiff back in his cell.  (Id.)

9       Defendant Bettencourt then used a wet swab on non-defendant Potter's shirt sleeve.  (Id.)

10  Plaintiff was written up for a rules infraction.  (Id.)  Non-defendant Potter then sat in front of

11  plaintiff's cell.  (Id.)

12       At approximately 1315 hours, defendants Defazio, Brady, Lebeck and Burke came to

13  plaintiff's cell.  (Id.)  These defendants instructed plaintiff to cuff up, informing him that an

14  "unidentified c/o (defendant Bettencourt)" said he had been gassed by plaintiff.  (Id.)  Plaintiff

15  told defendants that he had not gassed anyone and did not want to come out of his cell.  (Id.)

16  Plaintiff told them that defendant Martincek had already addressed the allegation and had already

17  searched his cell.  (Id. at 17-18.)

18       Defendant Defazio told plaintiff that defendants Blessing and Martincek wanted him to

19  cuff up and come down to the rotunda to talk and that if he refused, he would be extracted from

20  his cell.  (Id. at 18.)  Plaintiff then agreed to submit to mechanical restraints.  (Id.)  Defendant

21  Defazio then signaled for tower officer defendant Matthews to open plaintiff's cell door.  (Id.)

22  Defendant Defazio then grabbed plaintiff's arm and slammed him on the concrete floor.  (Id.)

23  Plaintiff alleges that the other defendants who were present then began to strike plaintiff in the

24  face with their clenched fists.  (Id.)

25       Plaintiff alleges that this beating took place in the presence of defendant Matthews and

26  non-defendant Brown.  (Id. at 19.)  Plaintiff alleges that neither defendant Matthews nor non-

27  defendant Brown attempted to stop the attack or sound the unit alarm.  (Id.)

28  ////

1    Plaintiff alleges that during the beating, defendant Defazio punched plaintiff in the mouth,

2    knocking out several of his teeth.  (Id.)  Plaintiff alleges that defendant Defazio also tore 25 to 30

3    dreadlocks out of plaintiff's head.  (Id.)

4    After plaintiff saw blood gushing from his mouth, he yelled out, "HIV," in an attempt to

5    stop the attack.  (Id. at 20.)  At that time, all defendants stopped attacking plaintiff except for

6    defendant Defazio.  (Id.)  Defendant Defazio said to plaintiff, "No you don't, nigger. You think

7    you run this place, you walk around here like you run this place.  You're going to learn nigger."

8    (Id.)  One of the correctional officers then told defendant Matthews to sound the unit alarm,

9    which then occurred.  (Id.)

10    Defendant Martinez then ran into the section and up the stairs.  (Id.)  Defendant Martinez

11    pulled plaintiff's legs up and kicked him in the testicles.  (Id.)

12    Defendants Rashev and Bettencourt came up the stairs, and were later joined by defendant

13    Blessing.  (Id.)  After he came up the stairs, defendant Blessing kicked plaintiff in the face with

14    his steel work boot.  (Id.)  Then "all present defendants" began to kick and hit plaintiff in the

15    face."  (Id.)  Defendant Guffee, who was at the bottom of the stairs, observed this violence.  (Id.

16    at 21.)  Defendant Guffee did not attempt to stop this violence, nor did he object.  (Id.)  Plaintiff

17    alleges that defendant Matthews saw this violence and failed to intervene.  (Id.)

18    By this time, plaintiff's left eye was completely swollen shut and bleeding, and his right

19    eye was swollen shut approximately 80%.  (Id.)  Defendants Drake and Murillo entered the

20    section and came up the stairs.  (Id.)  Defendant Blessing told defendants Drake and Murillo to

21    take plaintiff to the rotunda holding cell.  (Id.)  Defendants Drake and Murillo grabbed plaintiff

22    and began to drag him down the stairs.  (Id.)

23    Once defendants Drake and Murillo had dragged plaintiff to the bottom of the stairs, they

24    slammed plaintiff's head into the door frame.  (Id. at 21-22.)  Plaintiff alleges that once

25    defendants Drake and Murillo had dragged him into the rotunda, they held him up so that the

26    other defendants could strike plaintiff.  (Id. at 22.)  Defendants Defazio and Blessing then began

27    striking and kicking plaintiff in the face.  (Id.)  While plaintiff was being struck in the head, he

28    saw a flash of light which was a concussion.  (Id.)  Defendants Murillo and Drake then threw

1   plaintiff into the holding cage.  (Id.)

2          Plaintiff alleges that defendant Blessing then called the other defendants into the office.

3   (Id. at 23.)  Defendant Blessing told the other defendants, "We have to cover our asses."  (Id.)

4   Plaintiff alleges that the defendants began to conspire regarding how to cover-up what they had

5   done to plaintiff.  (Id.)  Plaintiff heard defendant Defazio say, "I'm going to put in my report that

6   he attempted to head butt me and spit on me."  (Id. at 24.)  Plaintiff heard non-defendant Potter

7   tell the inmate worker to clean up the blood and hair on the tier.  (Id.)

8          Approximately fifteen minutes later, a guard contacted defendant Nurse Okoroike,

9   requesting that she medically evaluate plaintiff.  (Id.)  Defendant Okoroike asked plaintiff what

10  happened to him.  (Id.)  Plaintiff told defendant Okoroike what happened, i.e., he was beaten and

11  kicked by defendants.  (Id.)  Plaintiff alleges that defendant Okoroike did not ask the Correctional

12  Officers to pull plaintiff from the holding cell so that she could perform her duty and do a full

13  body inspection.  (Id.)  Defendant Okoroike noted a few injuries on plaintiff's face, then left.

14  (Id.)

15         Approximately three minutes later, defendant Martincek arrived on the unit.  (Id. at 24-

16  25.)  Defendant Martincek grabbed the CDCR 7219 Medical Report of Injury or Unusual

17  Occurrence from defendant Blessing.  (Id. at 25.)  Defendant Martincek instructed defendant

18  Blessing to follow him out on to the yard.  (Id.)  Plaintiff was unable to make out what they were

19  saying.  (Id.)  While defendant Blessing was talking, defendant Martincek became agitated and

20  began talking in a loud, aggressive manner.  (Id.)

21         Defendant Martincek returned to the rotunda and began to exit the unit door.  (Id.)

22  Plaintiff asked if he could speak with him.  (Id.)  Defendant Martincek said, "not now, I have to

23  take care of something."  (Id.)  As defendant Martincek exited the unit, defendant Blessing held

24  up his middle finger toward defendant Martincek and said in a low tone, "Fuck you.  You're

25  going to take his side over me.  He is an inmate."  (Id.)

26         At approximately 1335 hours, plaintiff was taken to A Facility Triage by non-defendant

27  McCarval and defendants Murillo and Drake.  (Id.)  Plaintiff complained that he was unable to

28  focus his vision, seeing double and feeling dizzy.  (Id.)  Non-defendant Dr. Wedell told plaintiff

7

1  that these symptoms would pass.  (Id.)  Defendant Mercado then entered the Triage area to relieve

2  McCarval, so that McCarval could prepare his report regarding his involvement in the incident.

3  (Id.)

4      Plaintiff alleges that Dr. Wedell instructed his assistant, non-defendant Nurse Nicolaou, to

5  apply an ice pack to plaintiff's eyes to stop them from swelling shut.  (Id. at 27.)  Defendant

6  Mercado told Nurse Nicolaou, "No, he cannot have an ice pack."  (Id.)  Nurse Nicolaou told

7  plaintiff that she would document that defendant Mercado said that he could not have an ice pack.

8  (Id.)

9      On March 3, 2015, non-defendant Demps came to plaintiff's housing unit and provided

10  plaintiff with a copy of the Rules Violation Report that had been written against plaintiff.  (Id. at

11  30.)  Demps asked plaintiff to write down the names of any witnesses and documentary evidence

12  he wanted to present at the disciplinary hearing.  (Id.)

13      After reviewing the documentation regarding the incident, plaintiff discovered that

14  defendant Martincek had helped to cover-up the incident.  (Id. at 31.)  Defendant Martincek

15  allowed staff to change their story and report things that did not happen.  (Id.)  Plaintiff also

16  alleges that he discovered that defendant Okoroike had attempted to conceal the injuries he

17  suffered.  (Id.)

18      Plaintiff alleges that on May 28, 2018, defendant Schultz held the disciplinary hearing

19  regarding the charges made against plaintiff by defendant Defazio.  (Id. at 34.)  Plaintiff alleges

20  that defendant Schultz refused plaintiff's request for witnesses and to present documentary

21  evidence.  (Id. at 34-35.)  Defendant Schultz found plaintiff guilty of head butting defendant

22  Defazio.  (Id.)  Defendant Schultz allegedly told plaintiff that he would not consider his evidence

23  and witnesses because, "I am not going to deal with all of that, the office of Internal Affairs can

24  deal with that since they are investigating the assault and battery that happen[ed] to you."  (Id. at

25  35.)  Plaintiff alleges that defendant Shultz denied his request for witnesses by stating, "This

26  R.V.R. [rules violation report] is what I have to go off of."  (Id.)

27      Plaintiff alleges that on June 30, 2015, defendant Eldridge upheld defendant Schultz's

28  findings.  (Id. at 35-36.)

8

1    *Legal Claims*

2    This action proceeds on the following legal claims.[3]

3    Plaintiff alleges three separate incidents of excessive force on February 18, 2015.  In the

4    first incident, defendants Defazio, Brady, Lebeck and Burke allegedly beat plaintiff after

5    removing him  from his cell.  Plaintiff alleges that defendants Matthews witnessed the first

6    incident of excessive force, but failed to sound the unit alarm.  As part of the first incident,

7    plaintiff alleges that defendant Martinez arrived and pulled plaintiff's legs up and kicked him in

8    the testicles.

9    In the second incident of excessive force, plaintiff alleges that defendants Blessing,

10   Bettencourt and Rashev kicked and hit him.  Plaintiff alleges that defendants Guffee and

11   Matthews witnessed this incident but failed to intervene.

12   In the third incident of excessive force, plaintiff alleges that defendants Drake and Murillo

13   dragged plaintiff to the bottom of the stairs, slammed his head into a door frame and held plaintiff

14   up so that defendants Defazio and Blessing could hit and kick him.

15   Plaintiff alleges the following additional legal claims:  1) defendant Mercado denied him

16   an ice pack in violation of the Eighth Amendment; 2) defendants Okoroike and Martincek

17   conspired to cover-up the excessive force; and 3) defendants Schultz and Eldridge violated

18   plaintiff's right to due process based on the alleged denial of plaintiff's request to call witnesses

19   and present documentary evidence at his disciplinary hearing, and the alleged insufficient

20   evidence to support the disciplinary conviction.

21   ////

22   ////

23   ////

24   _____

25   [3] On March 19, 2018, the court dismissed the following claims raised in the complaint:  1) claim alleging that defendants Byers and Rashev denied plaintiff food; 2) conspiracy claim against defendant Staggs-Boatright; 3) claim that defendant Okoroike denied plaintiff medical care in

26   violation of the Eighth Amendment; 4) claim alleging verbal harassment by defendant Mercado; 5) due process claim against defendant Couch; and 6) claim that defendant Eldridge violated

27   plaintiff's right to due process by upholding alleged misconduct by defendant Couch.  (ECF No. 75.)

28

9

IV.     Defendants' Summary Judgment Motion

A.   Excessive Force Claims

1.   Legal Standard

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).  While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

2.   Discussion re:  Excessive Force Claims Against Defendants Defazio, Brady, Lebeck, Burke, Martinez, Blessing, Bettencourt, Rashev, Drake and Murillo

*Defendants' Evidence*

At the outset, the undersigned observes that defendants move for summary judgment as to the first alleged incident of excessive force on the grounds that the force used did not violate the Eighth Amendment.  Defendants deny that the second and third alleged incidents of excessive force occurred.  The undersigned sets forth defendants' relevant evidence herein.[4]

---

[4]  Because so many facts regarding plaintiff's Eighth Amendment excessive force claims are disputed, the undersigned describes each party's evidence as to these claims separately, rather than setting forth disputed and undisputed facts.

At the time of the alleged events, plaintiff was housed in the Psychiatric Services Unit ("PSU") at California State Prison-Sacramento ("CSP-Sac").  (ECF No. 216-4 at 6.)

All inmate-patients housed in the PSU are required to be escorted at all times when they are outside of their respective housing unit sections.  (Id. at 176.)  Individual escorts shall be performed by a minimum of two custody officers, and the inmate-patient shall be secured by mechanical wrist restraints at all times.  (Id.)

Regarding the first incident of alleged excessive force, defendants contend that on February 17, 2015, at approximately 8:30 p.m., staff informed defendant Mercado that plaintiff wanted to talk to a sergeant.  (Id. at 114.)  When defendant Mercado arrived at plaintiff's cell, plaintiff stated, "I'm no joke!  You know why I'm here?  I shot three cops!  That's right.  Check my file!"  (Id.)  Defendant Mercado asked plaintiff why he was telling him that information.  (Id.)  Plaintiff responded, "I'm gonna kill one of you white cops.  As soon as I get the chance, one of you is dead.  Just wait!"  (Id.)  Defendant Mercado wrote plaintiff a rules violation report charging him with threatening staff.  (Id.)

Defendants contend that on February 18, 2015, at approximately 8:00 a.m., Licensed Clinical Social Worker ("LCSW") Riley arrived at plaintiff's cell.  Defendants contend that she noted that plaintiff was on suicide watch and was agitated.  Defendants contend that plaintiff told LCSW Riley, "get out of my window bitch, before I gas you."  Defendants cite Exhibit C, p. 19, in support of their claims regarding LCSW Riley's interaction with plaintiff.  (ECF No. 216-3 at 4.)  However, defendants' exhibit C does not contain a page 19.

Defendants contend that on February 18, 2015, at approximately 11:45 a.m., Correctional Officer Potter was providing direct observation for plaintiff, who was on suicide watch.  (ECF No. 216-4 at 6, 30.)  Officer Potter was sitting in front of the cell and saw plaintiff discharge an unknown liquid out the crack of his cell door, striking Officer Potter's jumpsuit.  (Id. at 6, 30.)  Officer Potter notified floor staff and the supervisor about what happened.  (Id. at 30.)

Officer Byers contacted defendant Blessing and informed him about the "gassing" of Officer Potter.  (Id. at 26.)  Defendant Blessing told Officers Byers to activate his personal alarm device to advise that there was an incident on the floor.  (Id.)

11

1    Officer Vitale arrived and took photographs of the spots on Potter's uniform and

2    photographs of plaintiff's cell.  (Id. at 14.)  Officer Vitale wrote in his report that a view of the

3    toilet in plaintiff's cell depicted a large amount of what appeared to be urine purposefully stored

4    inside the toilet.  (Id. at 15.)

5    Defendant Rashev took swabs of Officer Potter's jumpsuit and processed the evidence.

6    (Id. at 34.)

7    On February 18, 2015, at approximately 12:45 p.m., defendant Blessing responded to

8    another inmate, and defendant Bettencourt was assisting by retrieving a security shield from in

9    front of plaintiff's door.  (Id. at 43.)  As defendant Bettencourt came back down the stairs with the

10   shield, plaintiff threw a large amount of liquid out of his cell door, striking defendant Bettencourt

11   in the back.  (Id. at 44.)

12   When defendant Bettencourt returned to the injured inmate's cell, defendant Blessing

13   smelled a "pungent odor" coming from the liquid on defendant Bettencourt's jumpsuit.  (Id. at

14   43.)  Defendant Blessing ordered defendant Bettencourt to stop assisting the injured inmate and to

15   get a "gassing" kit completed.  (Id.)

16   Defendant Blessing ordered defendants Burke and Defazio to remove plaintiff from his

17   cell to allow defendants Lebeck and Brady to search plaintiff's cell.  (Id. at 70.)

18   Citing Exhibit A, pp. 29-43, defendants contend that before arriving at plaintiff's cell on

19   February 15, 2018, defendants Defazio, Lebeck, Burke and Brady were aware that plaintiff had

20   already gassed two officers that morning.  (ECF No. 216-3 at 5.)  The undersigned has reviewed

21   the fifteen pages of exhibits cited by defendants, and it is not clear that these exhibits demonstrate

22   that defendants Defazio, Lebeck, Burke and Brady knew that plaintiff had already gassed two

23   officers that morning.  (See ECF No. 216-4 at 30-44).

24   Citing Exhibit A, p 18, defendants argue that these officers were also aware of plaintiff's

25   dislike of white correctional officers.  (ECF No. 216-3 at 6.)  However, defendants' Exhibit A at

26   page 18 is a photograph of Officer Potter's sleeve.  (ECF No. 216-4 at 19.)

27   At approximately 1:15 p.m., defendants Defazio, Lebeck, Brady and Burke arrived at

28   plaintiff's cell.  (Id. at 70.)  Plaintiff complied with defendant Defazio's order to submit to

12

1   handcuffs.  (Id.)  Defendant Defazio signaled to have plaintiff's cell door opened.  (Id.)

2   Defendant Matthews opened the cell door.  (ECF No. 216-5 at 6.)  In his report, defendant

3   Defazio describes what allegedly happened next:

4   > Cell FA3-232 opened and inmate OWENS spun around before I
   > could grab his left forearm.  Inmate OWENS sudden attack made me

5   > fear for my safety and I stepped back as he was attempting to strike
   > my facial area with his forehead/head area.  I could not step back fast

6   > enough to completely avoid being struck and inmate OWENS struck
   > me in my chest area with his head.  I used immediate force to subdue

7   > OWENS and overcome his attack.  With my left fist I struck inmate
   > OWENS in his facial area to stop the assault with his head.  I grabbed

8   > inmate OWENS by the back of head, grabbing a handful of his hair
   > with my right hand; with my left hand I grabbed inmate OWENS by

9   > his left arm bicep area and pushed inmate OWENS to the ground.
   > Inmate OWENS struck the tier floor face first.  As I re-adjusted my

10  > right hand I noticed several pieces of inmate OWENS hair on the tier
   > floor, loose from his head.

11  
   > My left hand was now positioned on inmate OWENS shoulder area.

12  > Inmate OWENS continued thrashing his body around on the ground
   > attempting to batter on scene staff.  Inmate OWENS at this time spun

13  > his head in my direction and attempted to bite my left hand.  I
   > immediately moved my left hand away from inmate OWENS attack

14  > while simultaneously hitting OWENS with my left fist
   > approximately 2 times to his facial area.  My punches had no effect

15  > on inmate OWENS and he continued to try and bite me.  Inmate
   > OWENS continued to spin his head in my direction attempting to bite

16  > me again.  At this time with my left fist I struck inmate OWENS in
   > the facial area 1 time.  The last strike I struck inmate OWENS facial

17  > area stopped him from attempting to bite me further.  Officer Brady
   > at this time grabbed inmate OWENS head and forced it down to the

18  > ground causing his face to strike the ground.  Officer Brady then
   > assisted me in holding down inmate OWENS head by utilizing both

19  > hands on the back of his head.  Inmate OWENS continued to
   > violently thrash his body from side to side.  Inmate OWENS

20  > continued to kick Officer Lebeck and Officer M. Brady went to
   > OWENS legs and applied leg irons to inmate OWENS.  Once we had

21  > inmate OWENS head area under control officer Brady re-positioned
   > himself to his lower body.  I went to place the spit net on inmate

22  > OWENS.  As I was applying the spit net to inmate OWENS he began
   > throwing his head from side to side.  Due to the thrashing of his head

23  > I could not properly apply the spit net.  I removed the spit net and
   > was able to properly apply it to inmate OWENS head.  At this time

24  > Officer J. Murrillo and Officer D. Drake relieved us and escorted
   > inmate OWENS  to the FA3 rotunda holding cell.  This concludes

25  > my involvement in this incident.

26  (ECF 216-4 at 70-71.)

27          Defendant Brady prepared a report regarding the incident.  (Id. at 74-75.)  Defendant

28  Brady's description of the incident is consistent with defendant Defazio's description of the

13

1    incident.  (Id.)  Defendant Brady also states that during the incident, while trying to hold

2    plaintiff's head down, defendant Brady grasped plaintiff's hair because of his large amount of

3    braids.  (Id. at 75.)  Defendant Brady states that because plaintiff was thrashing his head so

4    violently while defendant Brady grasped his braids, some of plaintiff's braids came off his head.

5    (Id.)

6            Defendant Burke prepared a report regarding the incident.  (Id. at 78-79.)  Defendant

7    Burke's description of the incident is consistent with defendant Defazio's description of the

8    incident.  (Id.)

9            Defendant Lebeck prepared a report regarding the incident.  (Id. at 82-83.)  Defendant

10   Lebeck's description of the incident is consistent with defendant Defazio's description of the

11   incident.  (Id.)

12           Defendant Matthews sounded his alarm.  (ECF No. 216-5 at 6.)  In response to the alarm,

13   and apparently before defendants Murillo and Drake arrived, defendant Blessing arrived.  (ECF

14   No. 216-4 at 64.)  In his report, defendant Blessing states that when he arrived, he saw plaintiff

15   lying in the prone position on his stomach, actively resisting.  (Id.)  Plaintiff thrashed his body

16   and head from side to side.  (Id.)  Defendant Blessing observed on scene staff using their hands to

17   push down on various parts of plaintiff's body parts and trying to overcome plaintiff's resistance.

18   (Id.)  Defendant Blessing observed that after defendant Defazio got the spit net on plaintiff,

19   plaintiff started to calm down.  (Id.)

20           In his report, defendant Blessing states that defendants Drake and Murillo arrived on the

21   scene.  (Id.)  Defendant Blessing ordered defendants Drake and Murillo to escort plaintiff for a

22   7219 medical clearance.  (Id.)  Defendant Blessing states that defendants Drake and Murillo each

23   lifted plaintiff to his feet where plaintiff walked on his own power.  (Id.)  Defendant Blessing

24   states that once in the rotunda, it appeared that plaintiff started to let his body slump down and

25   defendants Drake and Murillo had to support plaintiff's weight while he walked.  (Id. at 64-65.)

26           Defendants claim that defendant Rashev was not present during the use of force because

27   he (defendant Rashev) was processing the evidence that was collected following the first gassing

28   incident.  (ECF No. 216-3 at 12.)  In support of this claim, defendants cite a report prepared by

1  defendant Rashev stating that he responded to the alarm sounded after Officer Potter was gassed.

2  (ECF No. 216-4 at 34.)  Defendant Rashev wrote that he immediately retrieved the gassing kit

3  from the office and swabbed Officer Potter's jacket.  (Id.)  Defendant Rashev wrote that he then

4  took the swab to A Facility Control and placed it in evidence locker A-1.  (Id.)

5       In undisputed fact no. 80, defendants contend that defendant Martinez did not use force on

6  plaintiff and nor did he see anyone use force on plaintiff.  (ECF No. 216-3 at 12.)  However,

7  defendants cite no evidence in support of this claim.  (Id.)

8       Defendants argue that defendant Bettencourt did not use force against plaintiff, nor did he

9  see anyone else use force against plaintiff.  Defendants argue that defendant Bettencourt was not

10 in the area when the incident occurred as he was ordered to submit to a "gassing" kit by defendant

11 Blessing.  Defendants cite defendant Bettencourt's report prepared regarding the alleged gassing

12 incident in support of this claim.  In this report, defendant Bettencourt wrote that he and

13 defendant Blessing responded to a call informing defendant Blessing that Officer Potter had been

14 gassed.  (ECF No. 216-4 at 24.)  Defendant Bettencourt offered to help defendant Rashev swab

15 Officer Potter.  (Id.)  After the swab sample was taken, defendant Bettencourt explained the rest

16 of the evidence process to defendant Rashev, who apparently took the sample away.  (Id.)

17 Defendant Bettencourt then wrote,

18       I assumed all tasks were completed in the evidence collection process
         so I went to the sink of the Officers Office and wetted an extra swab
19       I was holding and went and cleaned the soiled areas of Potter's
         jumpsuit.  I went and checked on Officer Rashev progress in the
20       Sergeant's Office to see if he needed any more help.  This concludes
         my involvement in this incident.
21

22 (Id. at 25.)

23      *Discussion*

24      Regarding the first alleged excessive force incident, defendants argue that the force used

25 by defendants Defazio, Lebeck Burke and Brady did not violate the Eighth Amendment because

26 it was applied in a good-faith effort to maintain or restore discipline.

27 ////

28 ////

1    Based on the allegations in the verified complaint, the undersigned first finds that the

2    events leading up to the first alleged incident of excessive force are largely disputed.[5]  (See ECF

3    No. 221 at 39-61 (plaintiff's response to defendants' statement of undisputed facts, citing verified

4    complaint).)

5    Whether plaintiff made the statements defendants claim he made to defendant Mercado

6    and LCSW Riley before the alleged excessive force incidents is disputed.[6]  (ECF No. 221 at 43-

7    44.)  The parties also dispute the circumstances of the first gassing incident involving Officer

8    Potter.  In relevant part, plaintiff admits that he threw water at his cell door but claims that none

9    of the water touched Officer Potter.  The parties dispute whether the second alleged gassing

10   incident involving defendant Bettencourt occurred.  The parties also dispute whether plaintiff's

11   cell had been previously searched when defendants Defazio, Lebeck, Burke and Brady arrived to

12   search plaintiff's cell.

13   While it is undisputed that plaintiff consented to application of handcuffs, the parties

14   dispute what happened next.  In his verified complaint, plaintiff alleges that after removing him

15   from his cell, defendants Defazio, Brady, Lebeck and Burke assaulted plaintiff without

16   provocation.  Plaintiff denies headbutting defendant Defazio or otherwise resisting defendants.  In

17   contrast, defendants claim that plaintiff assaulted defendant Defazio.  Defendants claim that

18   plaintiff suffered injuries when he resisted their attempts to control him.  Based on these disputed

19   facts, the undersigned cannot determine whether defendants Defazio, Brady, Lebeck and Burke

20

21   [5] A verified complaint signed under penalty of perjury may be considered an affidavit in
     opposition to a motion for summary judgment to the extent that it sets forth facts within the
22   plaintiff's personal knowledge that are admissible into evidence.  See Schroeder v. McDonald, 55
     F.3d 454, 460 (9th Cir. 1995).

23   In addition to his verified complaint, plaintiff submitted additional evidence in support of his
     opposition.  With respect to plaintiff's excessive force claims, the undersigned need not discuss
24   all of this additional evidence because the allegations in plaintiff's verified complaint are
     sufficient to create disputed material facts.

25   The undersigned notes that plaintiff has filed declarations from inmate witnesses Terrell Wolff
     (ECF No. 200 at 92-94 (exhibit GG)), Carlos Hendon (id. at 108-10 (exhibit KK)), and inmate
26   Sanchez (ECF No. 221 at 70-73) in support of his excessive force claims.

27
     [6]  As discussed above, defendants' summary judgment motion does not contain any evidence
28   regarding the statements plaintiff allegedly made to LCSW Riley.

1    applied force in a good faith effort to maintain and restore discipline, or maliciously and

2    sadistically for the purpose of causing plaintiff harm.  For these reasons, the undersigned

3    recommends that defendants Defazio, Brady, Lebeck and Burke be denied summary judgment

4    regarding the first alleged incident of excessive force.[7]

5          Turning to defendant Martinez's involvement in the first alleged incident of excessive

6    force, plaintiff alleges that after the beating by defendants Defazio, Brady, Lebeck and Burke,

7    defendant Martinez arrived and pulled plaintiff's legs up and kicked him in the testicles.  As

8    discussed above, in the summary judgment motion, defendants argue that defendant Martinez did

9    not use force on plaintiff and nor did he see anyone use force on plaintiff.  However, defendants

10   provide no evidence in support of this claim.  Based on defendants' failure to provide any

11   evidence regarding defendant Martinez, defendants' motion for summary judgment as to

12   defendant Martinez should be denied.

13         In the second incident of excessive force alleged in the verified complaint, plaintiff claims

14   that defendants Blessing, Bettencourt and Rashev arrived and kicked and hit plaintiff in the face.

15   Defendants admit that defendant Blessing arrived at the scene after the first incident, but deny

16   that defendant Blessing used excessive force.  Thus, whether defendant Blessing kicked and hit

17   plaintiff in the face is a disputed material fact.  Accordingly, defendant Blessing should be denied

18   summary judgment as to this claim.

19          Defendants move for summary judgement as to defendants Bettencourt and Rashev on

20   the grounds that they were not in the area where the excessive force allegedly occurred.

21   Defendants contend that at the time of the incident, defendant Rashev had taken the swab sample

22   from Officer Potter's jacket to A Facility Control.  Defendants contend that at the time of the

23   incident, defendant Bettencourt went to the Officer's Office and then to check on Officer Rashev

24   in the Sergeant's Office.

25   _____

26   [7]  Even assuming it was undisputed that plaintiff gassed two officers and/or made the statements
     defendants claim he made to defendant Mercado and LSCW Riley, defendants would not be
27   entitled to summary judgment as to this claim based on the disputed facts regarding the actual
     alleged excessive force incident.
28

Whether defendants Bettencourt and Rashev were present during the second incident of excessive force, and kicked and hit plaintiff in the face, are disputed material facts.  See Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (the court must not make any credibility determinations on summary judgment).[8]  Accordingly, the undersigned recommends that defendants motion for summary judgment as to Bettencourt and Rashev be denied.

Regarding the third incident of excessive force, in the verified complaint plaintiff alleges that defendants Drake and Murillo dragged him to the bottom of the stairs, slammed his head in a door frame and held him up so that defendants Defazio and Blessing could hit him.  In contrast, defendants allege that defendants Drake and Murillo escorted plaintiff for a 7219 medical clearance.  Defendants claim that defendants Drake and Murillo lifted plaintiff to his feet where plaintiff walked on his own power.  Defendants claim that once in the rotunda, it appeared that plaintiff started to let his body slum down and defendants Drake and Murillo had to support plaintiff's weight while he walked.  Defendants dispute plaintiff's claim that defendants Defazio and Blessing hit plaintiff once defendants Drake and Murillo dragged plaintiff to the bottom of the stairs.

Whether defendants Drake and Murillo dragged plaintiff down the stairs, slammed his head in the door frame and held him up so that defendants Defazio and Blessing could beat plaintiff are materially disputed facts.  Accordingly, defendants Drake, Murillo, Defazio and Blessing should be denied summary judgment as to plaintiff's claim regarding the third alleged incident of excessive force.

3.    Discussion re:  Excessive Force Claims Against Defendants Matthews and Guffee

Regarding the first alleged incident of excessive force, plaintiff claims that defendant Matthews witnessed the beating but failed to sound the unit alarm.  Regarding the second alleged

---

[8] In making this finding, the undersigned observes that the first incident of excessive force occurred at approximately 1315 hours, i.e., 1:15 pm.  (ECF No. No. 216-4 at 70.)  In his report, defendant Rashev states that at 11: 45, he responded to the alarm regarding the gassing of Officer Potter.  (ECF No. 216-4 at 34.)  It is not clear from these exhibits whether defendant Rashev (or defendant Bettencourt) would have been unable to be present during the second alleged incident of excessive force.

18

1    incident of excessive force, plaintiff alleges that defendants Guffee and Matthews witnessed this

2    incident but failed to intervene.

3           A prison official who does not himself use force may violate the Eighth Amendment if he

4    has a reasonable opportunity to intervene in other officials' use of excessive force but does not do

5    so. See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

6           *Defendant Matthews*

7           Defendants move for summary judgment as to defendant Matthews on the grounds that he

8    was unable to see the area where the first alleged incident of excessive force occurred.[9]  As

9    discussed above, defendants deny that the second alleged incident of excessive force occurred.

10   Defendants argue that defendant Matthews could not have left his post to intervene because he

11   was in the control booth and could not leave the area.  Defendants also argue that defendant

12   Matthews did sound the alarm.  In support of these arguments, defendants cite defendant

13   Matthews' declaration.

14          In his declaration, defendant Matthews states, in relevant part, that in February 2015, he

15   was assigned as a tower officer in the PSU at CSP-Sac.  (ECF No. 216-5 at 5.)  As a tower

16   officer, his duties included monitoring movements on the tier, providing coverage, opening doors

17   to cells and for access to the yard.  (Id. at 6.)  As a tower officer, defendant Matthews could not

18   leave the tower in case of an incident.  (Id.)  However, defendant Matthews could sound an alarm

19   to signal other staff as needed.  (Id.)

20          From his vantage point in the tower, defendant Matthews did not have a clear view of all

21   areas on the tier.  (Id.)  On the afternoon of February 18, 2015, at approximately 1:15 p.m., an

22   incident occurred involving plaintiff.  (Id.)  Officers were attempting to remove plaintiff from his

23   cell because of an earlier "gassing" incident.  (Id.)  One of the officers applied handcuffs through

24   the food port, and signaled defendant Matthews to open the cell door.  (Id.)

25          Defendant Matthews states that as he opened the door, he noticed some sort of struggle

26   occurring.  (Id.)  From his vantage point, which was approximately 80 feet from the cell, he could

27   _____

28   [9]  Plaintiff appears to allege that the first and second incidents of excessive force occurred in the same area.

1    not see what started the incident.  (Id.)  Defendant Matthews states that plaintiff ended up in a

2    prone position on the ground just outside of the cell.  (Id.)

3         Defendant Matthews states that due to the number of officers involved, "I could not have

4    a clear view of what was happening.  In addition, there is a lip, or curb, on the upper tier that

5    holds the railing in place.  That curb also blocked my view once Owens was on the ground."  (Id.)

6    Defendant Matthews states that he sounded his alarm and called over the radio, "we have a code

7    one in A Facility, three block."  (Id.)

8         Defendants Matthews states that as the tower officer, he could not leave his post to assist.

9    (Id.)  Defendant Matthews states that he then turned back to the incident and was able to see

10   officers having to apply downward pressure to plaintiff's torso in an attempt to prevent him from

11   moving.  (Id.)  Responding staff arrived and defendant Matthews noticed one of the officers

12   struggling with plaintiff and having difficulty applying a spit mask as plaintiff moved his head

13   back and forth.  (Id.)  Plaintiff appeared angry and was yelling something defendant Matthews did

14   not understand.  (Id.)

15        Defendant Matthews states that defendants Murillo and Drake each took hold of one of

16   plaintiff's arms and escorted him down the stairs for medical evaluation.  (Id.)  Defendant

17   Matthews did not observe plaintiff being dragged down the stairs.  (Id.)  Defendant Matthews

18   states that plaintiff was placed in a wheelchair and escorted to the Triage and Treatment area.  (Id.

19   at 7.)

20        In his opposition, plaintiff does not dispute that defendant Matthews was unable to leave

21   his post.  However, plaintiff argues that defendant Matthews did not sound the alarm until after

22   the first incident of excessive force was almost over.  In support of this argument, plaintiff cites

23   his verified declaration submitted in support of his summary judgment motion, which is

24   consistent with the allegation in the verified complaint.  In this declaration, plaintiff alleges that

25   after defendant Defazio stated, "No you don't nigger.  You think you run this place, you walk

26   around here like you run this place, you're going to learn nigger," one of the correctional officers

27   yelled to defendant Matthews, "who was standing at the booth and watching the beating," to

28   sound the alarm.  (ECF No. 200 at 78.)

20

1   It is undisputed that defendant Matthews could not leave his post during the alleged

2   incident of excessive force.  Accordingly, defendant Matthews should be granted summary

3   judgment as to any claim by plaintiff that his failure to leave his post and intervene violated the

4   Eighth Amendment.

5   The undersigned now turns to plaintiff's claim that defendant Matthews violated the

6   Eighth Amendment by failing to sound the alarm when the alleged beating began, but instead

7   waited until it was almost over after being instructed by one of the defendants.  After reviewing

8   defendant Matthews' declaration, the undersigned is puzzled by defendant Matthews' alleged

9   ability to witness some parts of the incident, but not other parts of the incident.  For example,

10  defendant Matthews states he did not have a clear view of what happened due to the number of

11  officers involved and because a curb blocked his view of plaintiff once he was on the ground.

12  However, defendant Matthews was able to see officers applying pressure to plaintiff when

13  plaintiff was on the ground.  Defendant Matthews was also able to see an officer having difficulty

14  applying a spit mask when plaintiff was on the ground.  The undersigned also observes that in his

15  declaration, defendant Matthews does not address what prompted him to sound the alarm when he

16  did.

17  To the extent defendant Matthews could see defendants Defazio, Burke, Brady and

18  Lebeck interacting with plaintiff, it appears that defendant Matthews denies witnessing any

19  excessive force committed by these defendants.

20  Without further explanation regarding why defendant Matthews sounded the alarm when

21  he did and the confusing statements in his declaration regarding his ability to witness some parts

22  of the incident but not others, the undersigned cannot determine whether defendant Matthews'

23  failed to intervene in violation of the Eighth Amendment.  Accordingly, defendant Matthews

24  should be denied summary judgment as plaintiff's Eighth Amendment claim regarding the first

25  incident of alleged excessive force.

26  Plaintiff alleges that defendants Matthews failed to sound the alarm during the second

27  incident of excessive force.  Defendants deny that this second incident occurred.  Assuming that

28  the second incident occurred as alleged, it is unclear if defendant Matthews could have sounded

21

1  the alarm a second time, i.e., what purpose it would have served.  However, without further

2  factual development of this issue, the undersigned cannot determine whether defendant

3  Matthews' alleged failure to sound the alarm a second time during the alleged second alleged

4  incident violated the Eighth Amendment.  Accordingly, defendant Matthews should be denied

5  summary judgment as to this claim.

6        *Defendant Guffee*

7        In the verified complaint, plaintiff alleges that during the second alleged incident of

8  excessive force, defendant Guffee observed the violence from the bottom of the stairs.  Plaintiff

9  alleges that defendant Guffee failed to intervene.

10       Defendants move for summary judgment as to defendant Guffee on the grounds that he

11  was not in a position to intervene.  In support of this argument, defendants cite defendant

12  Guffee's declaration.

13       In his declaration, defendant Guffee states that on February 18, 2015, he was working as a

14  search and escort officer, and was not assigned to the PSU.  (ECF No. 216-5 at 9.)  At

15  approximately 1:15 p.m., an alarm sounded for Facility A-3, Section C.  (Id.)  Defendant Guffee

16  was in a building approximately thirty feet away from the building.  (Id. at 10.)  Defendant

17  Guffee ran to A-Facility and through a side entrance.  (Id.)  Defendant Guffee went to section B,

18  and realized that he was in the wrong section.  (Id.)  Defendant Guffee then ran to C section,

19  where the incident had occurred.  (Id.)  Defendant Guffee states that by the time he arrived, the

20  incident was over.  (Id.)  Officers waived him off and defendant Guffee left the area.  (Id.)

21  Defendant Guffee states that he did not see any officer use force on plaintiff, as the incident was

22  over when he reached the building.  (Id.)  Defendant Guffee states that because he did not see

23  force being used, there was no chance for him to intervene in the incident.  (Id.)

24       Based on the allegations in the verified complaint and defendant Guffee's declaration, the

25  undersigned finds that whether defendant Guffee witnessed the second alleged incident of

26  excessive force is a disputed material fact.  Accordingly, defendants' motion for summary

27  judgment as to defendant Guffee should be denied.

28  ////

22

B. <u>Defendant Mercado</u>

*Legal Standard*

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096.  A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  Deliberate indifference is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm.  <u>Jett</u>, 439 F.3d at 1096.

*Discussion*

Plaintiff alleges that defendant Mercado denied him an ice pack in violation of his Eighth Amendment right to adequate medical care.  In the verified complaint, plaintiff alleges that non-defendant Dr. Wedell instructed his assistant, non-defendant Nurse Nicolaou, to apply an ice pack to plaintiff's eyes to stop them from swelling shut.  Plaintiff alleges that defendant Mercado told Nurse Nicolaou, "No, he cannot have an ice pack."  Plaintiff alleges that Nurse Nicolaou told plaintiff that she would document that defendant Mercado said that he could not have an ice pack.

As clarified herein, the evidence demonstrates that defendant Mercado denied plaintiff permission to take the ice pack back to his cell.

Defendants move for summary judgment on the grounds that defendant Mercado did not act with deliberate indifference when he denied plaintiff the ice pack.  In support of this argument, defendants cite defendant Mercado's declaration.  In his declaration, defendant Mercado states, in relevant part, that when he (defendant Mercado) arrived at the PSU on the evening of February 18, 2015, Sergeant McCargle advised that plaintiff was in the A-Facility

1    Triage and Treatment Area ("ATTA").  (ECF No. 216-5 at 3.)  Defendant Mercado relieved

2    Sergeant McCargle in the ATTA, and Sergeant McCargle told defendant Mercado that plaintiff

3    was agitated and that defendant Mercado should stay with him.  (Id.)

4            Defendant Mercado remained in the ATTA until plaintiff was released back to his cell.

5    (Id.)  As they were leaving, a nurse asked if plaintiff could have an ice pack.  (Id.)  In his

6    declaration, defendant Mercado states that because plaintiff was on suicide watch, he was only

7    allowed certain items such as a security smock, a security blanket, and a security mattress.  (Id.)

8    Defendant Mercado states that before an inmate on suicide watch can obtain other items, there

9    must be an order from a doctor, which has to be reviewed and signed by a psychiatrist.  (Id.)

10   Defendant Mercado states that because there was no doctor's order, plaintiff could not have the

11   ice pack.  (Id.)  Defendant Mercado also states that at that time, PSU ice packs were made up of

12   ice cubes in a plastic bag or a "blue pack" frozen block.  (Id.)  Defendant Mercado states that

13   because plaintiff "had a history of gassing staff by throwing feces and urine out of his cell,"

14   plaintiff could not have those items for security reasons.  (Id.)

15           Defendants have also cited an entry in plaintiff's medical record for February 18, 2015, at

16   1400 hours stating, in relevant part, "Eye clearly swollen shut.  Custody said could not have ice

17   on block."  (ECF No. 216-4 at 215.)  It appears that the nurse who asked defendant Mercado if

18   plaintiff could have the ice pack made this entry.

19           In his opposition, in response to defendants' statement of undisputed facts, plaintiff does

20   not dispute that he was on suicide watch.  (ECF No. 221 at 41.)  Plaintiff contends that he had an

21   order for an ice pack from the doctor and that there is no rule that says that non-medical officials

22   must sign off on medical treatment ordered by a doctor.  (Id. at 55-56.)  Elsewhere in his

23   opposition, plaintiff argues that his Exhibit F demonstrates that he had an order from a doctor.

24   (Id. at 30.)  Plaintiff's exhibit F is an entry in his medical record dated February 18, 2015, at 1700

25   hours by Nurse Nicolaou stating, "Icepacks to face …barrier between skin and ice pack.  On 20

26   min., off 20 min., prn swelling x 24 hours."  (ECF No. 200 at 24.)  This note appears to contain

27   the signature of Dr. Wedell.  (Id.)

28   ////

1    The undersigned now considers whether defendant Mercado acted with deliberate

2    indifference when he denied the ice pack to plaintiff.  In his declaration, defendant Mercado states

3    that plaintiff was not allowed to have an ice pack in his suicide watch cell for two reasons:  1) he

4    did not have an order for an ice pack from a doctor, also signed by a psychiatrist; and 2) for

5    security reasons, based on plaintiff's history of gassing staff by throwing feces and urine.

6    The medical record cited above states that "custody," presumably defendant Mercado,

7    denied the nurse's request for plaintiff to take an ice pack back to his cell because plaintiff could

8    not have ice "on block."  This entry suggests that defendant Mercado denied plaintiff the ice pack

9    for security reasons, rather than based on the lack of an order from the doctor and psychiatrist.[10]

10   The entry suggests that even with an order from a doctor and psychiatrist, plaintiff would not

11   have been permitted to have the ice pack.

12   According to defendant Mercado, plaintiff could not have the ice pack in his cell based on

13   his history of gassing staff by throwing feces and urine out of his cell.  Because neither the ice

14   pack nor the bluepack contained urine or feces, it appear that defendant Mercado's alleged

15   security concern was plaintiff throwing water out of his cell.  It is unclear to the undersigned how

16   a bluepack frozen block could be converted to liquid.  If plaintiff was given an ice pack, it is also

17   unclear how much water plaintiff would have been able to obtain from the ice to throw out of his

18   cell.  The fact that plaintiff was apparently permitted to have an ice pack 3 hours later, pursuant to

19   an order signed by Dr. Wedell only, also undermines defendants' claim that plaintiff's possession

20   of the ice pack created a security risk.

21   Without further information regarding the security risk created by plaintiff's possession of

22   the ice pack, the undersigned cannot find that defendant Mercado did not act with deliberate

23   indifference when he denied the nurse's request for plaintiff to have an ice pack in his cell to

24   apply to his swollen shut eye.  Accordingly, defendants' motion for summary judgment as to

25   defendant Mercado should be denied.

26   ////

27

28   _____

[10]  The entry in plaintiff's medical record does not state that plaintiff could not have an ice pack
because it was not ordered by a doctor and psychiatrist.

1          C.   Defendants Okoroike and Martincek

2          *Legal Standard*

3          A conspiracy claim under § 1983 requires factual allegations supporting "an agreement or

4    'meeting of the minds' to violate constitutional rights."  Franklin v. Fox, 312 F.3d 423, 441 (9th

5    Cir. 2002) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41

6    (9th Cir. 1989)).  "To be liable, each participant in the conspiracy need not know the exact details

7    of the plan, but each participant must at least share the common objective of the conspiracy."

8    Franklin, 312 F.3d at 441 (quoting United Steelworkers of Am., 865 F.2d at 1541

9          The elements of a conspiracy claim under § 1983 are:  "(1) the existence of an express or

10   implied agreement among the defendant officers to deprive [the plaintiff] of his constitutional

11   rights, and (2) an actual deprivation of those rights resulting from that agreement."  Avalos v.

12   Baca, 596 F.3d 583, 592 (9th Cir. 2010) (internal quotation marks omitted).

13         *Clarification of Plaintiff's Conspiracy Claims*

14         Plaintiff alleges that defendants Okoroike and Martincek conspired to cover-up the

15   excessive force incidents.  Plaintiff alleges that defendant Okoroike prepared a report minimizing

16   plaintiff's injuries.  Plaintiff alleges that defendant Martincek allowed staff to change their stories

17   and report things that did not happen.

18         In the summary judgment, defendants argue that plaintiff failed to provide any factual

19   information showing that there was a conspiracy between defendants Okoroike and Martincek.

20   (ECF No. 216-2 at 23.)  Defendants have misunderstood plaintiff's conspiracy claims against

21   these defendants.  As discussed in the October 3, 2017 findings and recommendations addressing

22   defendants' motion to dismiss, plaintiff claims that defendants Okoroike and Martincek conspired

23   to cover-up the excessive force incidents, i.e., they conspired with the defendants involved in the

24   excessive force incidents.  (ECF No. 49 at 20-21.)  Plaintiff does not allege a conspiracy

25   exclusively between defendants Okoroike and Martincek.  Nevertheless, the undersigned herein

26   addresses defendants' arguments to the extent they are relevant to plaintiff's conspiracy claims.

27   ////

28   ////

                                             26

1          *Defendant Okoroike*

2          Defendants argue that any failure by defendant Okoroike to document plaintiff's injuries

3   was due to plaintiff's refusal to participate in the examination.  In support of this argument,

4   defendants cite defendant Okoroike's declaration and plaintiff's medical records.

5          In their declaration, defendant Okoroike states that on February 18, 2015, at

6   approximately 1:30 p.m., they were called to the A3 housing unit to complete an assessment on

7   an inmate and document injuries as a result of an unusual occurrence.  (ECF No. 216-5 at 13.)

8   When defendant Okoroike arrived, plaintiff was in a holding cell.  (Id.)  Defendant Okoroike

9   asked plaintiff about the circumstances of his injuries, and he stated, "they jumped on me, kicked

10  me in on my chest, knocked my front tooth out, and pulled my hair out."  (Id.)  Defendant

11  Okoroike documented plaintiff's statement on a form CDCR 7219.  (Id.)

12         In their declaration, defendant Okoroike states that they documented all of the injuries

13  they observed, including a scratch on plaintiff's lip, two teeth knocked out with active bleeding, a

14  swollen and dislocated area above the left eye, and a reddened area on the forehead.  (Id.)

15  Defendant Okoroike asked plaintiff to stand and turn around so that they could document any

16  other injuries, but he refused.  (Id.)  Defendant Okoroike states that plaintiff was so agitated that

17  correctional staff would not remove him from the holding cell so that defendant Okoroike could

18  document any other injuries plaintiff had.  (Id.)

19         Defendants provided a copy of defendant Okoroike's report, i.e., the 7219 form, which is

20  consistent with the information in defendant Okoroike's declaration.  (ECF No. 216-4 at 92.)

21         In undisputed fact no. 69, defendants state that on February 21, 2015, plaintiff was

22  transferred to the California Medical Facility ("CMF").  (ECF No. 216-3 at 10.)  Defendants cite

23  plaintiff's medical records following his arrival at CMF.  (Id.)  An entry by Nurse Plasencia on

24  February 21, 2015, states that plaintiff had moderate swelling and bruising on both eyes.  (ECF

25  No. 216-3 at 223.)

26         An entry by Dr. Mathis from February 21, 2015, states that plaintiff has injuries on inner

27  thighs that are four days old and facial injuries that are about three days old.  (Id. at 224.)  This

28  report states that plaintiff has medial periorbital ecchymosis, i.e., dark circles under his eyes.  (Id.)

27

1   The report states that plaintiff has minimal swelling.  (Id.)  The report states, "Tender over the

2   nasal bridge, but not swollen."  (Id.)  The report states, "Bilaterally tender zygomatic

3   prominences," which apparently means that the area near plaintiff's cheeks was tender.  (Id.)  The

4   report notes plaintiff's missing teeth.  (Id.)  The report notes minor bruises on plaintiff's legs.

5   (Id.)  Finally, the report states, "Subacute facial contusions w/o evidence of fracture.  No x-ray

6   required.  Absent teeth, acute."  (Id.)

7          In his opposition, in support of his claim that defendant Okoroike minimized his injuries

8   in their report in an attempt to cover-up the excessive force, plaintiff cites his exhibits B and JJ.

9   (ECF No. 221 at 53.)  Plaintiff also references his exhibit L.  (See ECF No. 193-2 at 4.)

10         Plaintiff's exhibit B is the CDCR 7219 form prepared by defendant Okoroike.  (ECF No.

11   200 at 14.)  Plaintiff's exhibit JJ is plaintiff's declaration.  (Id. at 102-07.)  In this declaration

12   plaintiff states, in relevant part, that after he was beaten, "medical staff witness that I was

13   seriously injured, yet they did not document so."  (Id. at 103.)  Plaintiff goes on to state, "[D]ays

14   after I was beaten, I was evaluated by non-biased medical staff and they correctly documented all

15   of the injuries suffered to me except for the broken ankle sustained."  (Id.)

16         Plaintiff's exhibit L is a report prepared by Nurse Valera dated February 21, 2015, on a

17   form which appears identical to the form completed by defendant Okoroike.  (Id. at 37.)  A

18   handwritten note at the top of the form states, "Pre-crisis unit admission."  (Id.)  The report states

19   that plaintiff reported that, "Those C.O. beat me and dragged me.  This happened 3-4 days ago."

20   (Id.)  The report identifies more injuries than the report prepared by defendant Okoroike.  (Id.)

21   The undersigned discusses these differences herein.

22         Defendant Okoroike identified five injuries to plaintiff, all on his head.  (Id. at 14.)  In

23   particular, defendant Okoroike identified two missing teeth, an abrasion around plaintiff's mouth,

24   discoloration around plaintiff's left eye, swelling around plaintiff's left eye and a reddened area

25   on plaintiff's forehead.  (Id.)

26         Nurse Valera identified three missing teeth and the same injuries around plaintiff's head

27   as identified by defendant Okoroike, as well as dried blood.  (Id. at 37.)  Nurse Valera also

28   identified additional injuries to plaintiff's body, including an abrasion and a reddened area on

1   plaintiff's right arm, an abrasion and reddened area on plaintiff's right knee, an abrasion on

2   plaintiff's right ankle, an abrasion and healing scabs on plaintiff's left thigh and an abrasion on

3   plaintiff's left ankle.  (Id.)

4        In his verified declaration submitted in support of his opposition, plaintiff alleges that he

5   told defendant Okoroike that "the officers beat me up while I was in handcuffs behind my back

6   and hit and kicked me in the face."  (ECF No. 221 at 83.)  Plaintiff alleges that instead of

7   recording this statement, defendant Okoroike wrote that plaintiff told her that the officers jumped

8   him, kicked him, knocked out his front tooth and pulled his hair out.  (Id.)

9        Plaintiff also alleges that during his encounter with defendant Okoroike, she never asked

10  plaintiff to stand or turn around so that she could document any other injuries.  (Id.)  Plaintiff

11  alleges that during his encounter with defendant Okoroike, he remained standing and facing

12  towards her the entire time.  (Id.)  Plaintiff alleges that defendant Okoroike failed to perform a

13  thorough medical evaluation.  (Id.)

14       For the reasons stated herein, the undersigned finds that plaintiff has not met his summary

15  judgment burden of demonstrating a genuine issue of material fact with respect to his conspiracy

16  claim against defendant Okoroike.

17       With the exception of the number of missing teeth, the facial injuries described in the

18  reports by defendant Okoroike and Nurse Valera are the same.  While plaintiff alleges that

19  defendant Okoroike inaccurately recorded his statement regarding how he suffered his injuries,

20  defendant Okoroike's description of plaintiff's statement is not inconsistent with what plaintiff

21  claims happened, i.e., he was assaulted by correctional staff.  The undersigned also finds that

22  defendant Okoroike's description of plaintiff's facial injuries is not inconsistent with the

23  description of his facial injuries made by Nurse Plasencia and Dr. Mathis.

24       Whether defendant Okoroike asked plaintiff to stand up and turn around so that she could

25  examine the rest of his body is disputed.  However, as discussed above, defendant Okoroike

26  appears to have accurately documented plaintiff's facial injuries and plaintiff's explanation of

27  their cause.  For this reason, the undersigned finds that it is not reasonable to infer that defendant

28  Okoroike failed to document the injuries to plaintiff's arms, legs and ankles in order to cover-up

1    the alleged excessive force.

2         For these reasons, the undersigned recommends that defendant Okoroike be granted

3    summary judgment as to plaintiff's claim that defendant conspired to cover-up the alleged

4    excessive force by preparing a report that minimized his injuries.

5         *Defendant Martincek*

6         As stated above, plaintiff alleges that defendant Martincek conspired to cover-up the

7    alleged excessive force by allowing staff to change their stories and report things that did not

8    happen.  In the summary judgment motion, defendants argue that plaintiff offers only conclusory

9    allegations in support of his conspiracy between defendants Martincek and Okoroike.  (ECF No.

10   216-2 at 23.)  Defendants cite their undisputed facts nos. 52, 55 and 56 in support of this

11   argument.  (Id.)

12        Defendants' undisputed facts nos. 52, 55 and 56 do not address plaintiff's claim that

13   defendant Martincek conspired to cover-up the alleged excessive force by allowing staff to

14   change their stories and report things that did not happen.  (See ECF No. 216-3 at 8.)

15        The undersigned recommends that defendant Martincek be denied summary judgment

16   because defendants do not address plaintiff's conspiracy claim against this defendant.

17              D. Defendant Schultz

18        Plaintiff alleges that defendant Schultz denied him due process during his disciplinary

19   hearing regarding the charges made against plaintiff by defendant Defazio.  Plaintiff alleges that

20   defendant Schultz refused plaintiff's request for witnesses and to present documentary evidence.

21   Plaintiff also alleges that there was insufficient evidence to support defendant Schultz's finding

22   that he was guilty of the charges.

23        *Legal Standards*

24        When determining whether an inmate has been deprived of due process during a

25   disciplinary hearing, the court considers the hearing requirements laid out in Wolff v. McDonnell,

26   418 U.S. 539 (1974).  The Wolff procedural due process requirements are:  (1) advance, written

27   notice of violation; (2) provision of at least 24 hours to prepare for committee appearance; (3)

28   written statement of fact-finding; (4) the right to present witnesses and present documentary

1   evidence where it would not be unduly hazardous to institutional safety; (5) an impartial decision-

2   making body, and (6) assistance if inmate is illiterate or if issues are complex.  Wolff, 418 U.S. at

3   564-70.

4          When reviewing a prison disciplinary decision, the appropriate standard for federal courts

5   to apply is the "some evidence" standard outlined in Superintendent, Massachusetts Correctional

6   Institution, Walpole v. Hill, 472 U.S. 445 (1985).  Specifically, if there is any evidence in the

7   record that could support the conclusion reached by the disciplinary board, the requirements of

8   due process are satisfied.  See Hill, 472 U.S. at 455-56.

9          Determining whether the "some evidence" standard is satisfied in a particular case does

10  not require examination of the entire record, independent assessment of the credibility of

11  witnesses, or the weighing of evidence.  Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir.

12  1986), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995)).  Thus, with a

13  decision on a disciplinary charge, if there is any reliable evidence in the record that could support

14  the conclusion reached by the fact finder, the decision must be upheld.  See Powell v. Gomez, 33

15  F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-65 and Cato v. Rushen, 824 F.2d 703,

16  705 (9th Cir. 1987)).  "The fundamental fairness guaranteed by the Due Process Clause does not

17  require courts to set aside decisions of prison administrators that have some basis in fact."  Hill,

18  472 U.S. at 456.

19         *Was Plaintiff Entitled to Due Process?*

20         In the verified complaint, plaintiff alleges that he was sentenced to an 18 month Security

21  Housing Unit ("SHU") term as a result of being found guilty of battery on defendant Defazio by

22  defendant Schultz.  (ECF No. 1 at 37.)  In the summary judgment motion, defendants suggest that

23  plaintiff was not entitled to due process because he was not deprived of a liberty interest as a

24  result of the rules violation.  Defendants contend that plaintiff was not assessed time credits and

25  was already serving a SHU term, albeit in the PSU.

26         The due process protections provided for in Wolff, supra, "adhere only when the

27  disciplinary action implicates a protected interest in some 'unexpected matter' or imposes an

28  'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

31

1  life.'"  <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting <u>Sandin v. Conner</u>, 515

2  U.S. 472, 484 (1995)).

3         In his opposition plaintiff does not dispute that he was not assessed time credits.

4  Accordingly, the undersigned herein discusses defendants' argument that plaintiff did not have a

5  liberty interest because he was already serving a SHU term.

6         By arguing that plaintiff was "already" serving a SHU term, defendants appear to argue

7  that the SHU term plaintiff was assessed was ordered to be served concurrently to a SHU term

8  plaintiff was already serving.  In support of this argument, defendants cite their undisputed facts

9  nos. 3-4.  (ECF No. 216-2 at 25.)  Defendants' undisputed fact no. 4 discusses the PSU and does

10 not address plaintiff's SHU term.  (ECF No. 216-3 at 2.)  Accordingly, defendants' undisputed

11 fact no. 4 is not relevant to defendants' argument that plaintiff was "already" serving a SHU term.

12        Defendants' undisputed fact no. 3 states, "At the time of the alleged events, plaintiff was

13 housed in the Psychiatric Services Unit (PSU) at CSP-Sacramento.  (DX A, p. 5)."  (<u>Id.</u>)

14 Defendants' Exhibit A, p. 5, is a document titled "Bed Assignments."  (ECF No. 216-4 at 6.)

15 This document shows plaintiff's bed assignments from May 1, 2014, to February 20, 2015.  (<u>Id.</u>)

16 The disciplinary hearing regarding the rules violation charging plaintiff with battery on defendant

17 DeFazio was conducted after February 20, 2015.  (<u>Id.</u> at 141.)  Therefore, it does not appear that

18 defendants' Exhibit A, p. 5, showing plaintiff's bed assignments through February 20, 2015,

19 demonstrates that plaintiff's at-issue 18 month SHU term was served concurrently with another

20 SHU term.  Accordingly, defendants' motion for summary judgment on the grounds that plaintiff

21 was not deprived of a liberty interest should be denied.[11]

22 ////

23 ////

24 _____

25 [11] In his verified complaint, plaintiff alleges that the conditions of the SHU term included
   confinement to an isolated cell for up to 22 hours per day, and sometimes longer as well as the
26 denial of various privileges.  (ECF No. 1 at 37-38.)  Plaintiff alleges that the conditions of the
   SHU imposed "a significant hardship that is not endured in the general population ("GP")…"  (<u>Id.</u>
27 at 37.)  Defendants do not move for summary judgment on the grounds that the conditions of the
   SHU did not constitute an atypical and significant hardship.  Accordingly, the undersigned does
28 not reach this issue in addressing defendants' summary judgment motion.

1          *Was Plaintiff Denied Witnesses in Violation of Due Process?*

2                In his verified complaint, plaintiff alleges that at the disciplinary hearing he told defendant

3     Schultz that he had eyewitnesses who he wanted to call as witnesses.  (ECF No. 1 at 34-35.)

4     Plaintiff alleges that defendant Schultz responded, "this R.V.R. is what I go off of."  (Id. at 35.)

5     Plaintiff alleges that he was not allowed to call any witnesses.  (Id.)

6                In the summary judgment motion, defendants argue that "while plaintiff was denied the

7     full twenty-two witnesses he wanted to call at the second hearing, he was allowed to ask

8     questions of relevant witnesses, which plaintiff provided to the SHO."  (ECF No. 216-2 at 25.)

9     Defendants cite undisputed fact no. 76 in support of this claim.  (Id.)  Defendants' undisputed fact

10    no. 76 cites defendants' Exhibit A at p. 145.  (Id.)

11               Defendants' Exhibit A, p. 145 is a page from the report of the at-issue disciplinary

12    hearing.  (ECF No. 216-4 at 146.)  This page of the report addresses plaintiff's request to the

13    Investigative Employee ("IE") to interview twenty-two witnesses, apparently before the hearing.

14    (Id.)  In other words, this page of the report does not address plaintiff's request to call witnesses

15    at the actual disciplinary hearing.

16               Defendants' Exhibit A, p. 140, is another page from the report from the at-issue

17    disciplinary hearing.  (Id. at 141.)  This page of the report states, "Witnesses:  Inmate OWENS

18    requested no witnesses at the time of the disciplinary hearing."  (Id.)  The word "no" is

19    handwritten, whereas the remaining words in this sentence are typewritten.  (Id.)

20               Based on the evidence cited above, the undersigned finds that whether defendant Shultz

21    denied plaintiff's request to call witnesses at the disciplinary hearing is a materially disputed fact.

22    Accordingly, defendant Shultz should be denied summary judgment as to this claim.

23          *Did Defendant Schultz Deny Plaintiff's Request to Present Documentary Evidence in*

24    *Violation of Due Process?*

25               In the verified complaint, plaintiff alleges that he attempted to produce documentary

26    evidence at the disciplinary hearing in support of his defense.  (ECF No. 1 at 35.)  Plaintiff alleges

27    that defendant Shultz denied plaintiff's request to produce documentary evidence because he did

28    not want to "deal with all of that."  (Id.)

1   Defendants' summary judgment motion does not address plaintiff's claim that defendant

2   Schultz denied his request to present documentary evidence.  (See ECF No. 216-2 at 25.)

3   In defendants' description of the due process rights inmates are entitled to in prison

4   disciplinary proceedings pursuant to Wolff v. McDonnell, defendants do not include the right to

5   present documentary evidence.  (Id. at 24.)  As stated above, and observed in the October 3, 2017

6   findings and recommendations addressing defendants' motion to dismiss, in Wolff v. McDonnell,

7   the Supreme Court stated, "[w]e are also of the opinion that the inmate facing disciplinary

8   proceedings should be allowed to call witnesses and present documentary evidence in his defense

9   when permitting him to do so will not be unduly hazardous to institutional safety or correctional

10  goals."  418 U.S. at 566.  (See ECF No. 49 at 23.)

11  For the reasons discussed above, the undersigned finds that defendants' summary

12  judgment motion does not address plaintiff's claim that defendant Schultz denied his request to

13  present documentary evidence.

14  *Was There Some Evidence to Support the Guilty Finding?*

15  Defendants' summary judgment motion does not directly address plaintiff's claim that

16  defendant Schultz's decision finding him guilty was not supported by adequate evidence.

17  In the October 3, 2017 findings and recommendations addressing defendants' motion to

18  dismiss, the undersigned found that plaintiff stated a potentially colorable due process claim

19  against defendant Shultz on the grounds that the disciplinary conviction was not supported by

20  adequate evidence.  (ECF No. 49 at 25.)  In making this finding, the undersigned cited Hines v.

21  Gomez, 108 F.3d 265, 268 (9th Cir. 1997), for the proposition that the "some evidence" standard

22  set forth in Superintendent v. Hill, supra, does not apply where a prisoner alleges that a rules

23  violation report is false.  (Id. at 25.)  The undersigned herein reconsiders this finding.

24  In Hines v. Gomez, the Ninth Circuit held that, "where a prisoner alleges a correctional

25  officer has falsely accused him of violating a prison rule in retaliation for the prisoner's exercise

26  of his constitutional rights, the correctional officer's accusation is not entitled to the 'some

27  evidence' standard of review ... afford[ed] disciplinary administrative decisions."  Id. at 269.

28  In Church v. Naftzger, 2019 WL 5784903 (E.D. Cal. Nov. 6, 2019), Magistrate Judge

34

1   Thurston found that the <u>Hines</u> standard only applies in cases where the prisoner alleges that the

2   rules violation is false *and* retaliatory:

> Although not stated explicitly, the Ninth Circuit's phrasing strongly
> suggests that, to avoid the deferential "some evidence" standard, a
> plaintiff must allege that a prison guard has made an accusation that
> is not only false, but also retaliatory. In follow-up cases, the Ninth
> Circuit and district courts have continued to suggest this. <u>See</u>, <u>e.g.</u>,
> <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1289 (9th Cir. 2003) ("In <u>Hines</u>, ... we
> held that 'some evidence' standard of <u>Hill</u> did not apply to retaliation
> claims."); <u>McQuillion v. McKenzie</u>, 35 F. App'x 547, 549, 551 (9th
> Cir. 2002) (denying summary judgment under <u>Hines</u> where plaintiff
> alleged false and retaliatory chronos); <u>McClenton v. Hubbard</u>, No.
> 2009 WL 2488144, at *6 (E.D. Cal. Aug. 13, 2009) (<u>Hines</u> not
> applicable because plaintiff did not allege defendant acted in
> retaliation); <u>Jones v. Lopez</u>, 2007 WL 951658, at *14 (D. Nev. Mar.
> 26, 2007) ("some evidence" standard not applicable because no due
> process violation alleged, only retaliation claim). Because Plaintiff
> has not alleged that Defendant falsified his March 2014 disciplinary
> chrono in retaliation for engaging in protected activity, (see Docs. 1,
> 19, 21), Plaintiff's due process claim is subject to the "some
> evidence" standard.

13   2019 WL 5784903, *6.

14       Based on Magistrate Judge Thurston's reasoning in <u>Church v. Naftzger</u>, the undersigned

15   finds that <u>Hines</u> applies in cases where the prisoner alleges that the rules violation report is both

16   false and issued in retaliation for the exercise of a First Amendment right.  <u>See</u>, <u>e.g.</u>, <u>McQuillion</u>

17   <u>v McKenzie</u>, 35 Fed.Appx. 547, at *1-2 (plaintiff alleged disciplinary reports issued in retaliation

18   for activity protected under the First Amendment.)

19       In the instant case, plaintiff does not allege that the rules violation report charging him

20   with battery on defendant Defazio was issued in retaliation for exercising his First Amendment

21   rights.  Accordingly, the undersigned considers whether the guilty finding is supported by "some

22   evidence."

23       The rules violation report states that defendant Schultz found plaintiff guilty based on the

24   following evidence:

> The written Rules Violation Report by Correctional Officer J.
> Defazio, which states in part, "I signaled to have cell FA3-232
> opened. Cell 232 opened and Owens spun around before I could grab
> his left forearm.  Owens sudden attack made me fear for my safety
> and I stepped back as he as attempting to strike my facial area with
> his forehead/head area.  I could not step back fast enough to
> completely avoid being struck and Owens struck me in my chest area

35

with his head.

The CDCR-837C Incident Report authored by Correctional Officer J. Burke, which states in part, "Once the door opened inmate Owens spun towards Officer J. Defazio and lunged forward with his head striking Officer J. Defazio in the upper chest area forcing Officer Defazio to move back.

(ECF No. 216-4 at 141.)

The undersigned finds that the reports by defendants Defazio and Burke constituted "some evidence" that plaintiff committed battery on defendant Defazio.  See Hill, 472 U.S. at 455-56. Accordingly, the undersigned recommends that defendant Shultz be granted summary judgment as to plaintiff's claim that his disciplinary conviction was not supported by sufficient evidence in violation of due process.

    E.  Defendant Eldridge

Plaintiff alleges that defendant Eldridge violated his right to due process by approving defendant Schultz's decisions denying his request for witnesses and to present documentary evidence.  Plaintiff also argues that because his prison disciplinary conviction was not supported by sufficient evidence, defendant Eldridge violated his right to due process by upholding the guilty finding.

The undersigned clarifies that plaintiff's claim against defendant Eldridge is based on her signature on the rules violation report, as the Chief Disciplinary Officer, approving defendant Schultz's decision finding plaintiff guilty.  (See ECF No. 200 at 259.)  Plaintiff alleges that defendant Eldridge failed to correct the due process violations by signing (and approving) the rules violation report following his conviction.

Defendants argue that defendant Eldridge's involvement in reviewing the disciplinary documents after the fact provides no basis for the imposition of liability under section 1983. Citing Matthews v. Eldridge, 424 U.S. 319, 333 (1976), defendants argue that due process requires only that plaintiff receive notice and "the opportunity to be heard at a meaningful time and in a meaningful manner."  (ECF No. 216-2 at 25.)  Defendants go on to argue that plaintiff, "does not have a broader right to notice and the opportunity to be heard at every step of the process by every individual who sat in on a hearing or touched a piece of paper relating to his

1    revalidation, but he does not have the right to be heard by a critical decision-maker."  (Id.)

2    Defendants then cite Castro v. Terhune, 712 F.3d 1304, 1308 (9th Cir. 2013), Stewart v.

3    Alameida, 418 F.Supp.2d 1154, 1167 (N.D. Cal. 2006) (citing Madrid v. Gomez, 889 F.Supp.

4    1146, 1276 (N.D. Cal. 1995)).  (Id.)  Defendants argue that because defendant Eldridge was not

5    directly involved in the alleged violation of plaintiff's due process rights at the disciplinary

6    hearing, her decision upholding the finding of guilt does not subject her to liability for any

7    underlying violation allegedly committed by defendant Schultz.  (Id. at 25-26.)

8         The cases cited by defendants above concern due process rights in prison gang-validation.

9    After reviewing these cases, the undersigned finds that the law discussed in these cases regarding

10   due process in gang validation is not the correct legal standard under which to evaluate plaintiff's

11   claims against defendant Eldridge.  The undersigned herein sets forth the correct legal standard to

12   evaluate plaintiff's claim against defendant Eldridge.

13        Government officials may not be held liable for the unconstitutional conduct of their

14   subordinates under a theory of respondeat superior.  See Ashcroft v. Iqbal, 556 U.S. 662, 676

15   (2009).  Rather, to be held liable, a supervising officer has to personally take some action against

16   the plaintiff or "set in motion a series of acts by others ... which he knew or reasonably should

17   have known, would cause others to inflict the constitutional injury" on the plaintiff.  Larez v. City

18   of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations omitted).  This is not to

19   say that a plaintiff is required to allege that a supervisor was physically present when the injury

20   occurred.  Starr v. Baca, 652 F.3d 1202, 1205 (9th Cir. 2011).  Instead, to assert liability, the

21   plaintiff must articulate specific facts from which the court can plausibly infer that the supervisor

22   participated in the violation by his or her "own culpable action or inaction in the training,

23   supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of

24   which the complaint is made, or conduct that showed a reckless or callous indifference to the

25   rights of others."  Id. at 1205-06.

26        Plaintiff does not allege, or provide any evidence demonstrating, that defendant Eldridge

27   took any actions that caused or otherwise contributed to defendant Schultz's alleged failure to

28   allow him to present witnesses and documentary evidence.  Instead, plaintiff's claims against

1  defendant Eldridge are based on her conduct after the alleged deprivations occurred.  For these

2  reasons, the undersigned recommends that defendants' motion for summary judgment be granted

3  as to plaintiff's claim that defendant Eldridge violated his right to due process by approving his

4  disciplinary conviction.[12]

5          The undersigned also finds that defendant Eldridge is entitled to summary judgment as to

6  plaintiff's claim alleging that she violated due process by approving his disciplinary conviction

7  because it  was not supported by sufficient evidence.  As discussed above, plaintiff's disciplinary

8  conviction was supported by "some evidence."  See Hill, 472 U.S. at 455-56.  For this reason,

9  defendant Eldridge should be granted summary judgment as to this claim.

10          F. Qualified Immunity

11          *Legal Standard*

12          In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to

13  determine whether qualified immunity exists.  First, the court asks:  "Taken in the light most

14  favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated

15  a constitutional right?"  Id. at 201.  If "a violation could be made out on a favorable view of the

16  parties' submissions, the next, sequential step is to ask whether the right was clearly established."

17  Id.  To be "clearly established," "[t]he contours of the right must be sufficiently clear that a

18  reasonable official would understand that what he is doing violates that right."  Id. at 202 (internal

19  quotation marks and citation omitted).  Accordingly, for the purposes of the second prong, the

20  dispositive inquiry "is whether it would be clear to a reasonable officer that his conduct was

21  unlawful in the situation he confronted."  Id.  Courts have the discretion to decide which prong to

22  address first, in light of the particular circumstances of each case.  See Pearson v. Callahan, 555

23  U.S. 223, 236 (2009).

24

25  [12]  The undersigned also observes that in his opposition plaintiff presents no evidence
    demonstrating that, at the time she approved his conviction, defendant Eldridge knew that
26  defendant Schultz allegedly denied his requests for witnesses and to present documentary
    evidence.  As discussed above, the rules violation report prepared by defendant Schultz states that
27  plaintiff did not request witnesses.  The undersigned also finds no mention of plaintiff's request to
    present documentary evidence in the rules violation report.
28

1          *Analysis*

2          Defendants argue that defendants DeFazio, Burke, Lebeck and Brady are entitled to

3   qualified immunity because they faced a situation in which the use of force was compelled by

4   necessity or exigency.  Defendants argue that they are entitled to qualified immunity because the

5   force they used was only the force necessary to maintain safety and restore order.

6          For the following reasons, the undersigned finds that defendants DeFazio, Burke, Lebeck

7   and Brady are not entitled to qualified immunity.  Taking the facts in the light most favorable to

8   plaintiff, these defendants assaulted plaintiff without provocation, in violation of the Eighth

9   Amendment.  The undersigned also finds that if plaintiff's allegations are true it would be clear to

10  a reasonable officer that defendants' alleged conduct was unlawful.  Accordingly, the

11  undersigned finds that defendants DeFazio, Burke, Lebeck and Brady are not entitled to qualified

12  immunity.

13         Defendants argue that defendant Mercado is entitled to qualified immunity because

14  plaintiff did not have an order for an ice pack from a physician that was signed by a psychiatrist,

15  which is required for inmates on suicide watch.  Defendants argue that because there was not a

16  medical order for an ice pack, no reasonable prison official in defendant Mercado's position

17  would have believed that he was denying plaintiff access to necessary medical care.

18         As discussed above, the record suggests that defendant Mercado denied plaintiff an ice

19  pack for security reasons, and not because plaintiff did not have a doctor's order signed by a

20  psychiatrist.  The evidence suggests that the security risk caused by plaintiff having the ice pack

21  in his cell was low.  Without further explanation of the security risk caused by plaintiff having the

22  ice pack in his cell, the undersigned cannot determine whether defendant Mercado acted with

23  deliberate indifference.[13]

24         Without further explanation of the security risk caused by the ice pack, the undersigned

25  also cannot determine whether it would be clear to a reasonable officer that denying the ice pack

26

27  [13]   Moreover, plaintiff presented a medical record indicating that he was allowed to have an ice
     pack several hours after defendant Mercado denied the request.  This order appears to have been
28  signed by a doctor only.

1  to plaintiff was unlawful.  Accordingly, based on the current record, undersigned cannot find that

2  defendant Mercado is entitled to qualified immunity.

3  V.      Plaintiff's Motions for Partial Summary Judgment

4        A.   Summary Judgment Motion Addressing Claims Against Defendants Schultz and

5             Eldridge (ECF No. 181)

6          *Did Plaintiff Have a Liberty Interest Entitling Him to Procedural Due Process?*

7        In his verified summary judgment motion, as in the verified complaint, plaintiff alleges

8  that after defendant Shultz found him guilty of the rules violation, he was assessed an 18 month

9  SHU term.  (ECF No. 181 at 15.)  Plaintiff argues that he had a liberty interest in not being

10  arbitrarily placed in the SHU for 18 months.  (Id. at 21.)  The October 3, 2017 findings and

11  recommendations addressing defendants' motion to dismiss also found that plaintiff's allegations

12  regarding the 18 month SHU term were sufficient to state a potentially colorable liberty interest in

13  support of his due process claim.  (ECF No. 49 at 25.)

14        In the points and authorities filed in support of the opposition, defendants argue that

15  plaintiff failed to establish a liberty interest entitling him to due process.  (ECF No. 217 at 5.)

16  Defendants argue that in his complaint, plaintiff only alleged that his disciplinary conviction

17  resulted in a 90 days loss of quarterly packages and telephone use, but these deprivations did not

18  cause an atypical or significant hardship in relation to the ordinary incidents of prison life.  (Id.)

19  The undersigned agrees with defendants that the deprivation of these privileges for 90 days does

20  not create a liberty interest.

21        However, in the points and authorities in opposition to plaintiff's summary judgment

22  motion, defendants do not address plaintiff's claim that his 18 month SHU term created a liberty

23  interest.  In their response to plaintiff's statement of undisputed facts, defendants contend that

24  plaintiff's allegations regarding his SHU term are "immaterial."  (ECF No. 217-1 at 11.)  The

25  undersigned discusses this argument herein.

26        In undisputed fact no. 28, plaintiff states that on August 26, 2015, the ICC affirmed the

27  disciplinary conviction and sentenced him to the 18 month SHU term.  (Id.)  Plaintiff indicates

28  that undisputed fact no. 28 is relevant to his claims against both defendants Schultz and Eldridge.

1    (Id.)  In response to plaintiff's undisputed fact no. 28, defendants state, "Objection:  immaterial.

2    Members of the Institutional Classification Committee are not defendants in this matter, and these

3    allegations as to defendant Eldridge are outside the scope of the complaint."  (Id.)

4          In their response to undisputed fact no. 28, defendants seem to argue that defendants

5    Schultz and Eldridge did not cause plaintiff to suffer the 18 month SHU term because it was

6    assessed by the ICC, and not defendants Schultz and Eldridge.  In Buren v. Waddle, 2016 WL

7    4474601 (E.D. Cal. Aug. 24, 2016), Magistrate Judge Seng rejected a similar argument:

8                Defendant Lesniak argues it was not he who assessed Plaintiff the
             eighteen month SHU term; he merely referred Plaintiff's case to the
9             ICC for possible confinement in the SHU while the ICC imposed the
             actual sentence. Furthermore, loss of good time credits has no effect
10            on a prisoner serving a life sentence. In Defendant Lesniak's view,
             the only liberty interest Plaintiff has been deprived of was his ten
11            days loss of privileges.

12                The Court must reject this argument. One cannot conclude that
             Defendant Lesniak is not responsible for placing Plaintiff in the SHU
13            merely because he only referred Plaintiff for a possible SHU term
             and another committee imposed that term. Based on the evidence
14            presently before the Court, a reasonable juror could conclude
             Plaintiff was assessed an eighteen month SHU term on the basis of
15            Defendant Lesniak's findings at the RVR hearing that Plaintiff was
             guilty of Battery on a Peace Officer.
16

17    2016 WL 4474601, at *8.

18          The undersigned agrees with the reasoning of Magistrate Judge Seng set forth above.  In

19    the instant case, defendant Schultz referred plaintiff to the ICC for a SHU assessment.  (See ECF

20    No. 216-4 at 142.)  Based on this evidence, the undersigned finds that plaintiff was assessed the

21    18 month SHU term on the basis of defendant Schultz's finding that plaintiff was guilty of battery

22    on defendant Defazio.  The fact that defendant Schultz did not himself assess the SHU term is

23    immaterial.

24          The undersigned now turns to plaintiff's unopposed claim in his summary judgment

25    motion that his 18 month SHU term created a liberty interest.[14]  For the reasons stated herein, the

26    ─────────────────────
     [14]  In his statement of undisputed facts filed in support of the summary judgment motion, plaintiff
27    states that he was assessed a SHU term.  However, plaintiff does not address the conditions of the
     SHU in his statement of undisputed facts.
28          The undersigned finds that plaintiff's failure to address the conditions of the SHU in his

41

1  undersigned finds that plaintiff has demonstrated that his 18 month SHU term created a liberty

2  interest entitling him to procedural due process.

3         In his verified complaint, plaintiff alleges that during his 18 month SHU term, he was

4  subject to the following conditions: 1) confined to an isolated cell for up to 22 hours per day,

5  sometimes longer or shorter, depending on the program schedule; 2) allowed two visits per week,

6  if space was available, while the general population received two visits per week; 3) denied

7  allowable personal property and telephone privileges, while the general population received these

8  privileges; 4) limited commissary and commissary items at a $50 dollar limit, while the general

9  population had a $220 limit; 5) limited receipt of package privileges and package items, and

10  limited to one package per year; the general population received four packages per year; 6)

11  limited participation in educational, rehabilitative and religious programs; these programs at times

12  may not be offered to SHU inmates; 7) restricted movement to mechanical restraints (handcuffs

13  and leg irons) at all times; 8) two hours of exercise every other day inside of a 15 by 10 foot cage;

14  GP inmates receive four hours of exercise daily, on a large yard; 9) inability to carry out a job in

15  the prison system to earn good time credits; and 10) two hours of  law library access per week.

16  (ECF No. 1 at 37-38.)

17         Although the level of the hardship must be determined on a case-by-case basis, and "[i]n

18  Sandin's wake the Courts of Appeals have not reached consistent conclusions for identifying the

19  baseline from which to measure what is atypical and significant in any particular prison system,"

20  Wilkinson v. Austin, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

21         "whether the conditions of confinement mirrored those imposed
           upon inmates in analogous discretionary confinement settings;" (2)
22         "the duration and intensity of the conditions of confinement;" and (3)
           "[w]hether the change in confinement would inevitably affect the
23         duration of the [prisoner's] sentence."

24  Chappell v. Mandeville, 706 F.3d 1052, 1064-65 (9th Cir. 2013).

25  _____
    statement of undisputed facts does not undermine his summary judgment motion as to this claim
26  because plaintiff's pleadings (i.e., his complaint and motion for partial summary judgment) and
    the findings and recommendations addressing defendants' motion to dismiss made clear the
27  grounds of plaintiff's alleged liberty interest claim.  Moreover, based on defendants' argument
    that plaintiff's allegations regarding the SHU are "immaterial," defendants can show no prejudice
28  as a result of plaintiff's failure to address the SHU conditions in his statement of undisputed facts.

1    "Only if the prisoner alleges facts sufficient to show a protected liberty interest must

2    courts next consider 'whether the procedures used to deprive that liberty satisfied Due Process.'"

3    Rider v. Sanchez, 2020 WL 6287457, *4 (S.D. Cal. Oct. 27, 2020) (quoting Ramirez v. Galaza,

4    334 F.3d 850, 860 (9th Cir. 2003)).

5        The undersigned has reviewed several cases considering whether lengthy sentences in

6    disciplinary housing invoke liberty interests.  See e.g., Williams v. Foote, 2009 WL 1520029

7    (C.D. Cal. May 28, 2009) (no liberty interest based on 701 days in SHU); Bryant v. Cortez, 536

8    F.Supp.2d 1160, 1166-67 (C.D. Cal. 2008) (18-month period of confinement in administrative

9    segregation unit where restrictions on plaintiff's exercise, shower, hygiene, visitation, telephone,

10   work and education privileges did not create an atypical and significant hardship); but see Buren

11   v. Waddle, 2016 WL 4474601, at *8 (E.D. Cal. Aug. 24, 2016) (finding a reasonable juror could

12   conclude an 18 month confinement in segregated housing unit with loss of privileges, personal

13   property and isolation from family members amounted to an atypical hardship).

14       In a case analogous to the instant action, the Ninth Circuit found that an 18 month term in

15   disciplinary housing created a liberty interest.  See  Mizzoni v. Nevada, 795 F.3d.Appx. 521 (9th

16   Cir. 2020).  The undersigned discusses this case herein.

17       In Mizzoni v. Nevada, 2018 WL 444049 (D. Nev. March 12, 2018), the magistrate judge

18   recommended that defendants' summary judgment motion be granted on the grounds that plaintiff

19   had not demonstrated a liberty interest based on his 18 month term in disciplinary segregation

20   ("DS").  In Mizzoni, the plaintiff received the 18 month DS term after being found guilty of

21   battery on a correctional officer.  2018 WL 4444059 at *4 (D. Nev. March 12, 2018).

22       The magistrate judge in Mizzoni stated that plaintiff identified the following DS

23   conditions that were different than GP conditions:  1) inmates in GP get clothing and food

24   packages, but DS inmates do not; 2) GP inmates have access to the coffee shop, but DS inmates

25   do not; 3) GP inmates get yard and gym time all day with access to weights and the recreation

26   yard, while DS inmates get one hour a day; 4) GP inmates have access to the church and choir

27   and DS inmates do not; 5) GP inmates have visiting room privileges with contact visits, and the

28   opportunity to get food from family members, while DS inmates have visits behind glass with no

1   contact, must wear their orange jumpsuits and are shackled with belly chains and leg shackles the

2   entire time; 6) GP inmates get to wear regular prison clothes and have property privileges, while

3   DS inmates have to wear orange jumpsuits and have limited property access; 7) GP inmates can

4   shower every day at any time, while DS inmates can shower every three days when the officer

5   says they can do so; 8) GP inmates have tier time, while DS inmates have none; 9) GP inmates

6   can walk to culinary or work, while DS inmates may not; 10) GP inmates are free of restraints,

7   and DS inmates have their legs and hands cuffed wherever they go; 11) GP inmates have phone

8   privileges any time, but DS inmates can only use the phone once a week; 12) GP inmates have

9   access to hobby craft, and DS inmates do not; 13) GP inmates have access to food and appliances

10   in the prison store, but DS inmates have much more limited access.  Id. at *7.

11       The magistrate judge in Mizzoni found that the plaintiff did not describe any DS condition

12   with specificity or show how it exceeded the conditions of the GP so as to raise a genuine dispute

13   of material fact as to whether the conditions were atypical and significant.  Id. at *8.  The

14   magistrate judge found that "this factor weighs against finding a liberty interest was implicated."

15   Id.  The magistrate judge found that the duration of the plaintiff's DS term, 18 months, weighed

16   in favor of finding a liberty interest.  Id.  The magistrate judge found that plaintiff did not show

17   that the length of his sentence was affected by his disciplinary conviction and that he had no

18   liberty interest in earning work and good time credits while in DS.  Id. at 9.  The magistrate judge

19   concluded that, "[o]n balance, the factors discussed above weigh against finding that plaintiff

20   faced an atypical and significant hardship in disciplinary segregation."  Id.

21       The district court adopted the magistrate judge's findings and recommendations and

22   granted defendants' summary judgment motion.  See 2018 WL 3000544.

23       On February 25, 2020, the Ninth Circuit Court of Appeals reversed the district court's

24   order granting defendants' summary judgment motion.  See Mizzoni v. Nevada, 795 F3d.Appx.

25   521 (9th Cir. 2020).

26       Defendants do not contest that this term of disciplinary segregation
    entailed conditions of significant isolation. [Footnote 2.] A lengthy,

27       functionally unreviewable term of disciplinary segregation that
    imposes such conditions is not meaningfully distinguishable from the

28       confinement at issue in Brown v. Oregon Department of Corrections,

751 F.3d 983 (9th Cir. 2014). [Footnote 3.] Such confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and accordingly entitles the inmate to the protections of procedural due process. See id. at 987-90 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). [Footnote 4.]

[Footnote 2:  Mizzoni was pro se before the district court, and thus defendants' concession on this point may not have been clearly reflected in the summary judgment record before the district court.]

[Footnote 3:  No different conclusion is warranted based on our prior unpublished decision that a different term of disciplinary segregation to which Mizzoni was previously sentenced did not implicate a liberty interest. See Mizzoni v. McDaniel, 601 F. App'x 553 (9th Cir. 2015). In that case, which involved detention at a different facility than this one, see Mizzoni v. Nevada ex rel. Nev. Dep't of Corr., No. 3:11-cv-00186-LRH-WGC, 2014 WL 4162252, at *2 (D. Nev. Aug. 20, 2014), there was no apparent agreement that Mizzoni was detained in conditions of significant isolation

[Footnote 4:  Because this conclusion is sufficient to warrant reversal, we do not address whether Mizzoni's disciplinary hearing implicated any further liberty interests.

795 F.Appx. at 521-22.

The undersigned has reviewed the briefing filed in the Ninth Circuit in Mizzoni regarding plaintiff's appeal.  In his opening brief, plaintiff addressed the "significant isolation" he experienced during his 18 month DS term, referred to by the Ninth Circuit.  Plaintiff alleged that he was "kept alone in his small and barren cell for 23 hours each day, day after day, for a year and a half." (Case no. 18-16184, ECF No. 24: 14.)  Plaintiff argued, "[t]hat dramatic isolation from prisoners and guards was paired with severe limitations on communicating with the outside world." (Id.)  Plaintiff was allowed to use the phone once per week.  (Id.)  During visits, plaintiff was restrained with cuffs, shackles and a belly chain, and always separated from his visitor by glass.  (Id.)  "All that isolation was compounded by a lack of environmental stimulation, through severe limitations on keeping personal property, accessing the prison store, using appliances like televisions and radios and receiving packages of clothing or food." (Id.)

In the instant case, plaintiff's description of the SHU conditions (compared with the GP conditions) is similar to the DS conditions alleged by the plaintiff in Mizzoni.  In the instant case and Mizzoni, both plaintiffs were confined to their cells for lengthy periods of time.  Regarding

exercise, the plaintiff in <u>Mizzoni</u> received one hour of yard per day, whereas plaintiff in the instant case received two hours every other day in a 10 by 15 foot cage.  In the instant case, plaintiff alleges that he was denied phone privileges, while the inmate in <u>Mizzoni</u> alleged that he was allowed to use the phone once per week.

The SHU conditions alleged by plaintiff were different in some respects from the DS conditions alleged in <u>Mizzoni</u>.  Plaintiff in the instant case alleged that inmates in the SHU were allowed to receive one package per year, whereas the inmate in <u>Mizzoni</u> alleged that inmates in DS were not allowed to receive packages.  The plaintiff in <u>Mizzoni</u> alleged that he was denied contact visits.  In the instant case, plaintiff alleges that he received only two visits per week, but he does not allege a denial of contact visits.  The plaintiff in <u>Mizzoni</u> also alleged a limitation on personal property in his cell, including television and radios.  In the instant case, plaintiff alleges that he was denied "allowable personal property."

The undersigned finds that the undisputed SHU conditions, described by plaintiff in his verified complaint, "entailed conditions of significant isolation," like the DS conditions alleged in <u>Mizzoni</u>.  Although some of the SHU conditions alleged by plaintiff were less restrictive, i.e., he was apparently not denied contact visits, the undersigned finds the SHU conditions entailed significant isolation.  Plaintiff was confined to his cell for up to 22 hours per day, allowed to exercise every other day in a 15 by 10 foot cage, denied telephone and personal property privileges, allowed to receive one package per year and permitted two visits per week.  "Such confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and accordingly entitles the inmate to the protections of procedural due process."  <u>Mizzoni</u>, 795 F.3d at 522.

*Did Defendant Schultz Deny Plaintiff's Right to Call Witnesses in Violation of Due Process?*

Plaintiff's undisputed facts nos. 6-7 directly address plaintiff's claim that defendant Schultz denied his request to present witnesses at his disciplinary hearing.  (ECF No. 217-1 at 3-4.)

////

1    In undisputed fact no. 6, plaintiff alleges that defendant Schultz denied his request for

2    witnesses at the disciplinary hearing.  (Id. at 3.)  In support of this claim, plaintiff cites exhibits

3    RR-2, EE and his verified complaint.  (Id.)  In the verified complaint, plaintiff alleges that he told

4    defendant Schultz, "I have eye-witnesses who saw the whole incident and I would like them to

5    make a statement." (ECF No. 1 at 34-35.)  Plaintiff alleges that defendant Schultz denied this

6    request, stating, "this R.V.R is what I have to go off of."  (Id.)

7    Plaintiff's exhibit EE is plaintiff's declaration containing his allegations that defendant

8    Schultz denied his request for witnesses because, "This R.V.R. is what I have to go off of."  (ECF

9    No. 200 at 85.)

10    Plaintiff's Exhibit RR-2 is a page from the Rules Violation Report prepared by defendant

11    Schultz stating, in relevant part, "Inmate Owens requested no witnesses at the time of the

12    disciplinary hearing." (Id. at 262.)  In the title page for exhibit RR-2, plaintiff cites his exhibit

13    QQ-3 as evidence that he requested witnesses at his evidentiary hearing.  (Id. at 261.)  Plaintiff's

14    exhibit QQ-3 is a document prepared by Officer Demps stating that plaintiff requested six inmate

15    witnesses at his disciplinary hearing.  (Id. at 252.)

16    Defendants object to plaintiff's undisputed fact no. 6 on the grounds that it presumes facts

17    that have not been established as true, misstates the evidence, and does not meet plaintiff's burden

18    of establishing an undisputed fact.  (ECF No. 217-3 at 3.)  Defendants cite no evidence in support

19    of their objections.  (Id.)

20    In undisputed fact no. 7, plaintiff argues that defendant Schultz falsely documented that he

21    did not request any witnesses at the hearing.  (Id.)  In support of this claim, plaintiff cites his

22    verified complaint and the documents cited in support of undisputed fact no. 6.  (Id.)  Defendants

23    object to plaintiff's undisputed fact no. 7 as argumentative, vague as to which hearing plaintiff

24    refers to, misstate the facts, and fails to meet the burden of establishing an undisputed fact.  (Id.)

25    Defendants cite no evidence in support of their objections.  (Id.)

26    Although defendants cite no evidence in opposition to plaintiff's undisputed facts nos. 6

27    and 7, the undersigned finds that plaintiff has not met his summary judgment burden of

28    demonstrating that defendant Schultz denied his request for witnesses.  See Celotex Corp. v.

1    <u>Catrett</u>, 477 U.S. at 323.  Plaintiff's evidence demonstrating that he requested witnesses conflicts

2    with his evidence indicating that he did not request witnesses, i.e., the rules violation report

3    prepared by defendant Schultz.  While plaintiff claims that defendant Schultz's statement in the

4    report that plaintiff did not request witnesses is not true, the undersigned cannot make this finding

5    in summary judgment.  <u>See Soremuken v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007)

6    (in judging evidence at the summary judgment stage, the court does not make credibility

7    determinations or weigh conflicting evidence).  For these reasons, plaintiff's motion for summary

8    judgment as to his claim that defendant Schultz denied his request for witnesses should be denied.

9        *Did Defendant Schultz Deny Plaintiff's Request to Present Documentary Evidence in*

10   *Violation of Due Process?*

11       In defendants' points and authorities filed in opposition to plaintiff's summary judgment

12   motion, defendants fail to recognize plaintiff's constitutional right to present documentary

13   evidence at his disciplinary hearing.  (See ECF No. 217 at 5-7.)  However, defendants' response

14   to plaintiff's undisputed facts addresses plaintiff's undisputed facts regarding defendant Schultz's

15   alleged denial of his request to present documentary evidence, i.e., plaintiff's undisputed facts

16   nos. 8 and 9.  (ECF No. 217-1 at 4.)  The undersigned herein addresses plaintiff's undisputed

17   facts nos. 8 and 9 and defendants' responses.

18       Plaintiff's undisputed fact no. 8 states that the record shows that defendant Schultz did not

19   provide an adequate reason for depriving plaintiff's request for documentary evidence.  (<u>Id.</u>)

20   Plaintiff cites his verified complaint at pp. 29-30 and Exhibits RR-2 and BBB in support of this

21   undisputed fact.  (<u>Id.</u>)

22       At pages 29-30 of his verified complaint, plaintiff alleges that defendant Schultz failed to

23   provide any reason for denying his request for witnesses.  (ECF No. 1 at 38-40.)  However, as

24   discussed above, in the verified complaint plaintiff also alleges that when he attempted to produce

25   documentary evidence, defendant Schultz stated, "I am not going to deal with all of that, the

26   office of Internal Affairs can deal with that since they are investigating the assault and battery that

27   happen to you."  (<u>Id.</u> at 35.)  Plaintiff's failure to cite the correct page of his complaint in support

28   of this claim is not material.

1          As discussed above, plaintiff's Exhibit RR-2 is a page from the Rules Violation Report

2   prepared by defendant Schultz.  (ECF No. 200 at 262.)  This document makes no mention of

3   plaintiff's request to present documentary evidence.  (Id.)  In the title page for exhibit RR-2,

4   plaintiff cites his exhibit QQ-3 as evidence of his intent to produce documentary evidence at the

5   disciplinary hearing  (Id. at 261.)  Plaintiff's exhibit QQ-3 is a document prepared by Officer

6   Demps stating that plaintiff requested the following evidence:  medical report CDCR 7219,

7   photos taken on the day of the incident, dental reports and RN reports.  (Id. at 252.)

8          Plaintiff's exhibit BBB contains defendants' responses to plaintiff's requests for

9   admissions.  (Id. at 355.)  Plaintiff does not identify which request for admissions supports his

10   claim that defendant Schultz denied his request to present documentary evidence.  However, the

11   responses to plaintiff's request for admissions contained in exhibit BBB are unverified in that

12   they are signed by defense counsel.  (Id. at 364.)  Accordingly, defendants' responses to

13   plaintiff's requests for admissions are not admissible.  See Blevins v. Marin, 2013 WL 718869, at

14   *1 (E.D. Cal. Oct. 11, 2013) ("[A]ll responses to interrogatories and requests for admission must

15   be verified—that is, bear plaintiff's signature attesting under penalty of perjury that his responses

16   are true and correct—in order to be an admissible form at summary judgment or trial.").

17          In response to plaintiff's undisputed fact no. 8, defendants object, "Misstates the evidence.

18   Plaintiff feels to meet his burden of establishing an undisputed fact."  (ECF No. 217-1 at 4.)

19   Defendants' objection that plaintiff's undisputed fact no. 8 misstates the evidence is overruled.

20   Plaintiff's undisputed fact no. 8 does not misstate the evidence.  The admissible evidence cited in

21   support of undisputed fact no. 8 demonstrates the alleged undisputed fact, i.e., that defendant

22   Schultz failed to provide an "adequate" reason for refusing plaintiff's request to present

23   documentary evidence.  Plaintiff's admissible evidence demonstrates that defendant Schultz

24   denied his request to present relevant, documentary evidence at his disciplinary hearing, i.e., the

25   medical report CDCR 7219, photos taken on the day of the incident, dental reports and RN

26   reports, for reasons unrelated to institutional security or correctional goals.

27          Plaintiff's undisputed fact no. 9 states, "the record shows that Schultz did not even address

28   the plaintiff's requested documentary evidence in his summary."  (ECF No. 217-1 at 4.)  In

1   support of undisputed fact no. 9, plaintiff cites exhibits RR-2 and EE.  (Id.)  As discussed above,

2   exhibit RR-2 is a page from the Rules Violation Report prepared by defendant Schultz.  (ECF No.

3   200 at 262.)  The page from this report does not discuss any request by plaintiff to present

4   documentary evidence.  (Id.)

5          Plaintiff's exhibit EE is plaintiff's declaration addressing his due process claims against

6   defendant Schultz.  (Id. at 83.)  In this declaration, plaintiff states (in relevant part), that he

7   (plaintiff) attempted to provide evidence as a defense, including photographs, letters and medical

8   reports.  (Id. at 85.)  Plaintiff alleges that defendant Schultz told him, "I am not going to deal with

9   all of that.  The office of Internal Affairs can deal with that since they are investigating the assault

10  and battery that happen to you…I am finding you guilty."  (Id.)

11         Defendants' object to plaintiff's undisputed no. 9 fact as vague as to what documentary

12  evidence plaintiff is referring.  (ECF No. 217-1 at 4.)  Defendants' vagueness objection is

13  overruled because plaintiff's declaration cited in undisputed fact no. 9 describes this documentary

14  evidence.  Defendants also object that plaintiff has not met his burden of establishing an

15  undisputed fact in undisputed fact no. 9.  (Id.)  This objection is overruled.  Plaintiff's claim that

16  defendant Schultz did not address his requested documentary evidence is supported by plaintiff's

17  declaration, cited in undisputed fact no. 9.

18         Plaintiff's undisputed evidence demonstrates that defendant Schultz denied his request to

19  present relevant documentary evidence because defendant Schultz did not want to "deal with all

20  of that."  In other words, plaintiff's undisputed evidence demonstrates that defendant Schultz did

21  not consider institutional safety or correctional goals when denying plaintiff's request to present

22  relevant documentary evidence.  For these reasons, the undersigned finds that defendant Schultz

23  violated plaintiff's right to due process when he denied plaintiff's request to present documentary

24  evidence at his disciplinary hearing.  Wolff, 418 U.S. at 566.  Accordingly, plaintiff's summary

25  judgment motion as to this claim should be granted.

26         *Did Defendant Schultz Violate Plaintiff's Right to Due Process by Finding Plaintiff Guilty*

27  *Based on Insufficient Evidence?*

28          It is unclear whether plaintiff moves for summary judgment as to his claim against

1  defendant Schultz alleging insufficient evidence to support his conviction.  However, for the

2  reasons discussed above addressing defendants' summary judgment motion as to this claim, the

3  undersigned finds that plaintiff's guilty finding was supported by "some" evidence.  See Hill, 472

4  U.S. at 455-56.  Accordingly, to the extent plaintiff moves for summary judgment as to this claim,

5  plaintiff's motion for summary judgment should be denied.

6      *Defendant Eldridge*

7      As discussed above, plaintiff alleges that defendant Eldridge ratified the alleged due

8  process violations committed by defendant Schultz at the disciplinary hearing when she approved

9  the guilty finding.  As discussed above, to succeed on this claim, plaintiff would have to

10  demonstrate some involvement by defendant Eldridge in the alleged deprivations before or at the

11  time they occurred, rather than after.  For the reasons stated herein, the undersigned finds that

12  plaintiff has not met this burden.

13      In his declaration submitted in support of his motion for summary judgment as to

14  defendant Eldridge, plaintiff alleges that after the disciplinary hearing, defendant Eldridge, "seen

15  that the plaintiff had requested witnesses prior to the hearing to attend the hearing on his behalf,

16  and that those specifically identified witnesses were not allowed to attend."  (ECF No. 200 at 86.)

17  Plaintiff also states in his declaration that defendant Eldridge also saw that "the plaintiff had

18  requested documentary evidence for his defense at the hearing and that the request was not

19  provided or addressed in the disciplinary summary," yet defendant Eldridge affirmed the guilty

20  finding anyway.  (Id.)

21      Plaintiff's declaration does not demonstrate that defendant Eldridge participated in the

22  alleged violations either before or during the disciplinary hearing.  The undersigned also observes

23  that in his declaration, plaintiff does not allege how he knows that defendant Eldridge knew that

24  defendant Schultz denied his request for witnesses and to present documentary evidence when she

25  (defendant Eldridge) approved the rules violation report.  The rules violation report states that

26  plaintiff did not request witnesses and does not discuss plaintiff's request to present documentary

27  evidence.

28  ////

1    Assuming plaintiff could base defendant Eldridge's liability on her approval of the rules

2    violation report, plaintiff's conclusory declaration regarding defendant Eldridge's alleged

3    knowledge of the denial of his requests for witnesses and to present documentary evidence is

4    insufficient at summary judgment.  See Head v. Glacier Nw. Inc., 413 F.3d 1053, 1059 (9th Cir.

5    2005) (noting the "longstanding precedent that conclusory declarations are insufficient to raise a

6    question of material fact"), abrogated on other grounds by Unit. Of Tex. S.W. Med. Ctr. v.

7    Nassar, 133 S.Ct. 2517 (2013).

8    In the opposition, defendants argue that plaintiff's motion for summary judgment as to

9    defendant Eldridge should be denied on the grounds that plaintiff's due process rights were not

10   violated.  The undersigned recommends that plaintiff's summary judgment motion as to

11   defendant Eldridge be denied on the alternative grounds that plaintiff has presented no evidence

12   demonstrating that defendant Eldridge took action that caused or contributed to the alleged due

13   process violations at his disciplinary hearing.

14       B.  Summary Judgment Motion Addressing Claims Against Defendant Mercado (ECF

15          No. 182)

16   As discussed above, plaintiff alleges that defendant Mercado violated his Eighth

17   Amendment right to adequate medical care when he denied the order from the nurse and Dr.

18   Wedell that he be allowed to bring an ice pack to his cell to apply to his swollen-shut eye.[15]  In

19   support of his summary judgment motion addressing this claim, plaintiff cites his complaint and

20   medical records (discussed in the section above addressing defendants' summary judgment

21   motion) showing that the nurse and Dr. Wedell recorded that plaintiff should have an ice pack to

22   apply to his swollen-shut eye, but defendant Mercado denied this request because ice was not

23   allowed on the block.

24   Neither defendants' points and authorities nor their response to plaintiff's statement of

25   undisputed facts address plaintiff's motion for summary judgment as to defendant Mercado.

26

27   [15]  Plaintiff's summary judgment motion appears to address other claims against defendant
     Mercado.  However, the only claim proceeding against defendant Mercado at this stage of the
28   proceedings is plaintiff's Eighth Amendment claim based on the alleged denial of the ice pack.

52

1  (ECF Nos. 217, 217-1.)  Defendants' failure to oppose this claim could be deemed a waiver of

2  opposition.  However, because defendants addressed the merits of this claim in their summary

3  judgment motion, the undersigned prefers to consider the merits of this claim raised in plaintiff's

4  motion.  Based on the fact that plaintiff filed four separate motions for summary judgment,

5  supported by a large volume of exhibits, it is clear that defendants' failure to address plaintiff's

6  motion for summary judgment as to defendant Mercado was inadvertent.  See In re Online DVD

7  Rental Antitrust Litigation, 2011 WL 5883772, at *12 (N.D. Cal. Nov. 23, 2011) (despite

8  plaintiff's failure to oppose claim in summary judgment opposition brief, court exercises

9  discretion to considers merits of claim).

10       As discussed above, in support of their summary judgment motion, defendants submitted

11  evidence suggesting that defendant Mercado denied the request for plaintiff to have an ice pack

12  because of security concerns.  As the undersigned previously stated, the record suggests that even

13  with an order signed by both a doctor and a psychiatrist, defendant Mercado would not have

14  permitted plaintiff to have the ice pack in his cell.

15       While the alleged security risk created by plaintiff's possession of an ice pack in his cell is

16  not well explained, the undersigned finds that defendants have presented sufficient evidence (via

17  their summary judgment motion) to create a material dispute as this contention, i.e., did plaintiff's

18  possession of an ice pack in his cell create a sufficient security risk?  As discussed above, in the

19  endeavor to establish the existence of a factual dispute, the opposing party need not establish a

20  material issue of fact conclusively in its favor.

21       Because defendants have presented sufficient evidence to create a factual dispute as to

22  whether defendant Mercado acted with deliberate indifference when he denied plaintiff the ice

23  pack, plaintiff's summary judgment motion as to defendant Mercado should be denied.

24       C.   Summary Judgment Motion Addressing Claims Against Defendants Okoroike and

25            Martincek (ECF No. 193)

26       1.   Defendant Okoroike

27  Plaintiff alleges that defendant Okoroike conspired with the other defendants to cover-up

28  the alleged excessive force by preparing a report minimizing plaintiff's injuries.  In support of his

53

1    summary judgment motion as to these claims, plaintiff cites his verified complaint and exhibit B.

2    (ECF No. 193 at 7.)  Plaintiff's exhibit B is a copy of the February 18, 2015 report prepared by

3    defendant Okoroike describing plaintiff's injuries, discussed above in the section addressing

4    defendants' summary judgment motion.  (ECF No. 200 at 14.)

5         In his statement of undisputed facts, plaintiff argues that days later, he was evaluated by

6    non-biased medical staff who documented additional injuries, which defendant Okoroike failed to

7    document.  (ECF No. 193-2 at 4.)  In support of this argument, plaintiff cites exhibit L.  (Id.)

8    Plaintiff's exhibit L is the February 21, 2015 report prepared by Nurse Valera, discussed above in

9    the section addressing defendants' summary judgment motion.  (ECF No. 200 at 37.)

10        In the opposition, defendants argue that plaintiff failed to set forth any meaningful and

11   competent facts to suggest that defendants Okoroike and Martincek conspired to falsely document

12   plaintiff's injuries.  (ECF No. 217 at 7.)  As discussed above, plaintiff does not allege a

13   conspiracy only between defendants Okoroike and Martincek.  Rather, plaintiff alleges that

14   defendants Okoroike and Martincek conspired with the defendants, who allegedly committed the

15   excessive force, to cover-up the excessive force incidents.

16        In their response to plaintiff's undisputed fact alleging that non-biased staff identified

17   additional injuries, defendants cite defendants' undisputed fact no. 69.  (ECF No. 217-1 at 14.)

18        Defendants' undisputed fact no. 69 cites medical records at defendants' exhibit C, pp. 14-

19   15.  (ECF No. 216-3 at 10.)  These medical records indicate that plaintiff transferred to the

20   California Medical Facility ("CMF") on February 21, 2015.  (ECF No. 216-4 at 223-24.)  An

21   entry by Nurse Plasencia states that plaintiff had moderate swelling and bruising on both eyes.

22   (Id. at 223.)

23        The second entry by Dr. Mathis states that plaintiff has injuries on inner thighs that are

24   four days old and facial injuries that are about three days old.  (Id. at 224.)  This report states that

25   plaintiff has medial periorbital ecchymosis, i.e., dark circles under his eyes.  (Id.)  The report

26   states that plaintiff has minimal swelling.  (Id.)  The report states, "Tender over the nasal bridge,

27   but not swollen."  (Id.)  The report states, "Bilaterally tender zygomatic prominences," which

28   apparently means that the area near plaintiff's cheeks was tender.  (Id.)  The report notes

54

1   plaintiff's missing teeth.  (Id.)  The report notes minor bruises on plaintiff's legs.  (Id.)  Finally,

2   the report states, "Subacute facial contusions w/o evidence of fracture.  No x-ray required.

3   Absent teeth, acute."  (Id.)

4          Having compared defendant Okoroike's report with the report prepared by Nurse Valera

5   as well as the two February 21, 2015 entries in plaintiff's medical records following his transfer

6   to CMF, the undersigned finds that defendant Okoroike did not fail to accurately record plaintiff's

7   injuries to his face.  Defendant Okoroike also wrote in her report that plaintiff reported that his

8   injuries were caused by an assault by prison staff.

9          While defendant Okoroike failed to document the injuries to the rest of plaintiff's body,

10  the undersigned finds that it is not reasonable to infer that defendant Okoroike failed to document

11  these other injuries in an attempt to cover-up the alleged excessive force.  For these reasons,

12  plaintiff's motion for summary judgment as to defendant Okoroike should be denied.

13                    2.  Defendant Martincek

14         Plaintiff alleges that defendant Martincek conspired with the defendants involved in the

15  excessive force incidents to cover-up these incidents.  As discussed in the October 3, 2017

16  findings and recommendations addressing defendants' motion to dismiss, plaintiff alleges that

17  defendant Martincek added things to the incident report that did not happen and minimized

18  plaintiff's injuries.  (ECF No. 49 at 21.)  Plaintiff also alleged that defendant Martincek allowed

19  staff to change their story in an attempt to cover-up the alleged excessive force.  (Id.)

20         In the points and authorities filed in support of their opposition, defendants incorrectly

21  argue that "plaintiff now alleges that defendant Martincek conspired with all of the other

22  defendants because he had the other defendants change their reports.  This is not alleged in the

23  complaint."  (ECF No. 217 at 2; see also id. at 8.)

24         In the response to plaintiff's statement of undisputed facts filed in support of his motion

25  for summary judgment as to defendant Martincek, defendants object to plaintiff's evidence on

26  various grounds.  (See ECF No. 217-1 at 16- 23.)

27         Despite defendants' failure to properly address plaintiff's claim against defendant

28  Martincek, for the reasons stated herein, the undersigned finds that plaintiff failed to meet his

1   initial summary judgment burden of demonstrating the absence of a genuine material fact as to his

2   claim that defendant Martincek conspired to cover-up the alleged excessive force.

3       *Plaintiff's Undisputed Fact No. 35*[16]

4       Citing exhibits PP and PP-1, plaintiff argues that the record shows that defendant

5   Martincek conspired to conceal plaintiff's injuries and the excessive force.  (ECF No. 193-2 at 4.)

6       Defendants object to this undisputed fact:  "Objection: legal conclusion, plaintiff's self-

7   serving testimony lacks foundation and personal knowledge. Fed. R. Evid. 602, 701. Summary

8   judgment requires facts not simply unsupported denials or rank speculation…Plaintiff fails to

9   meet his burden of establishing this as an undisputed fact. Disputed. See DSUP No. 56." (ECF

10  No. 217-1 at 14.)

11      Defendants' objections have merit.  For the reasons stated herein, the undersigned further

12  finds that plaintiff's exhibits do not demonstrate that defendant Martincek conspired to conceal

13  his injuries and the excessive force.

14      Plaintiff describes his exhibit PP as the crime/incident report prepared by all defendants.

15  (ECF No. 200 at 170.)  It appears that plaintiff has organized this report into different exhibits,

16  from PP-1 to PP-34.  While each of plaintiff's PP exhibits contains a cover page describing its

17  relevance, not all of plaintiff's PP exhibits are relevant to plaintiff's claims against defendant

18  Martincek.  For example, plaintiff describes exhibit PP-33 as a report prepared by defendant

19  Mercado and signed by defendant Blessing.  (Id. at 242.)

20      It is not the undersigned's duty to go through each of plaintiff's PP exhibits in order to

21  determine which are relevant to his claims against defendant Martincek.  Accordingly, the

22  undersigned discusses only the specific PP exhibits identified by plaintiff.

23      Plaintiff's exhibit PP-1 is page 1 of 8 of a "Crime/Incident Report, Part A-Cover Sheet,"

24  prepared by defendant Martincek on February 18, 2015, regarding the February 18, 2105 incident.

25  (Id. at 172.)  This document states that plaintiff was charged with battery on a peace officer

26

27  ───────────────
    [16] The undersigned refers to these undisputed facts by the number contained in defendants'
    response to plaintiff's statement of undisputed facts.

28

56

1  resulting in use of force.  (Id.)  The document describes the use of force used against plaintiff:  "1.

2  PHYSICAL FORCE- # Warning:  0  # Effect: 0 # Chemical: 0; 2) PHYSICAL FORCE-OTHER

3  # Warning: 0 # Effect: 0 # Chemical: 0.  Other Description:  4 punches."  (Id.)

4       While exhibit PP-1 does not discuss plaintiff's injuries, this page of the report does not

5  contain a section for documenting plaintiff's injuries.  Accordingly, the undersigned does not find

6  that plaintiff's exhibit PP-1 demonstrates that defendant Martincek conspired to conceal

7  plaintiff's injuries.

8       Exhibit PP-1 states that 4 punches were used against plaintiff, which is not inconsistent

9  with defendant Defazio's report.  Plaintiff's argument that this exhibit demonstrates that

10  defendant Martincek covered-up the alleged excessive force is speculative and lacks personal

11  knowledge.  See Rule 602, Federal Rules of Evidence (witness may testify to a matter only if the

12  evidence is introduced sufficient to support a finding that the witness has personal knowledge of

13  the matter).

14       *Undisputed Fact No. 36*

15       Citing exhibits PP-1, PP-2 and JJ, plaintiff argues that the record shows that defendant

16  Martincek did not document all of plaintiff's injuries in an attempt to cover-up the excessive

17  force.  (ECF No. 193-2 at 4.)

18       Defendants object to plaintiff's undisputed fact no. 36:  "Objection:  Immaterial as this

19  fact is outside the scope of the complaint, is an unsupported legal conclusion, and argumentative.

20  Plaintiff fails to meet his burden of establishing an undisputed fact."  (ECF No. 217-1 at 14.)

21       Defendants' objection that plaintiff's undisputed fact no. 36 is outside the scope of the

22  complaint is overruled.

23       As discussed above, exhibit PP-1 does not contain a section for documenting plaintiff's

24  injuries.  For this reason, the undersigned finds that exhibit PP-1 does not establish undisputed

25  fact no. 36.

26       Plaintiff's exhibit PP-2 is page 2 of 8 of a report titled, "Crime/Incident Report, Part A1,

27  Supplement," signed by defendant Martincek on February 18, 2015.  (ECF No. 200 at 174.)  This

28  document contains a "synopsis/summary of incident."  (Id.)  The report describes plaintiff's

1   injuries by noting the report prepared by defendant Okoroike: "Registered Nurse (RN) A.

2   Okoroike completed a Medical Report of Injury (7219) on OWENS noting he sustained a missing

3   tooth, an abrasion to his lip, a swollen and dislocated left eye, as well [as] a reddened forehead

4   area." (Id.)

5        But for the fact that defendant Okoroike reported that plaintiff lost two teeth, defendant

6   Martincek's description of defendant Okoroike's report is not inaccurate. (See ECF No. 216-4 at

7   92.) The undersigned does not find that defendant Martincek's description of plaintiff's injuries

8   in exhibit PP-2, based on defendant Okoroike's report, demonstrates his attempt to conceal the

9   extent of plaintiff's injuries.

10       Plaintiff's exhibit JJ is a declaration by plaintiff. (ECF No. 200 at 101-07.) In this

11  declaration, plaintiff generally argues that defendants provided false information in their reports

12  and minimized his injuries in order to cover-up the incident. (Id.) This declaration contains no

13  specific information in support of plaintiff's claims against defendant Martincek. (Id.)

14       For the reasons discussed above, the undersigned does not find that plaintiff's exhibits PP-

15  1, PP-2 and JJ demonstrate that defendant Martincek failed to document plaintiff's injuries in an

16  attempt to cover-up the alleged excessive force.

17       *Plaintiff's Undisputed Fact no. 37*[17]

18       Citing exhibits PP-8, PP-9, PP-10, PP-13, PP-14, PP-17, PP-18, PP-20 and PP-21,

19  plaintiff argues that these exhibits show that defendant Martincek allowed the other defendants to

20  continuously change the story of their involvement in the incident. (ECF No. 193-2 at 4-5.)

21       Defendants' object to plaintiff's undisputed fact no. 37 as immaterial as this fact is outside

22  the scope of the complaint. (ECF No. 217-1 at 15.) Defendants' objection that plaintiff's

23  undisputed fact no. 37 is immaterial is overruled.

24       Citing Federal Rules of Evidence 602 and 701, defendants also object that plaintiff's

25  undisputed fact no. 37 contains plaintiff's self-serving testimony that lacks foundation and

26  personal knowledge. (Id.) Defendants object that plaintiff fails to meet his burden of establishing

27  _____

28  [17]   Plaintiff's undisputed fact no. 38 is duplicative of undisputed fact no. 37. (See ECF No. 217-1 at 15.)

1    this as an undisputed fact.  (Id.)

2           Plaintiff's exhibit PP-8 contains six questions defendant Martincek submitted to defendant

3    Defazio regarding the incident.  (ECF No. 200 at 190.)  Plaintiff describes these questions as

4    "leading clarification questions" which allowed defendant DeFazio to further lie and conceal

5    plaintiff's unlawful beating.  (Id. at 189.)  Plaintiff focuses primarily on question 1, which asked,

6    "In your report you indicate that while on the ground, inmate Owens was thrashing his body from

7    side to side attempting to further batter staff.  During this time did you or any responding staff

8    give verbal orders to Owens to stop his resistive behavior?"  (Id. at 190.)

9           Plaintiff's exhibit PP-9 contains defendant Defazio's response to the questions identified

10   in exhibit PP-8.  (Id. at 192.)  In response to question no. 1, defendant Defazio stated, "I gave

11   order to Owens to stop resisting and I recall hearing orders given to Owen to stop resisting as

12   well.  (Id.)  Plaintiff argues that defendant Defazio's initial report does not state that he told

13   plaintiff to stop resisting.  Plaintiff argues that in question no. 1, defendant Martincek "coached"

14   defendant DeFazio to state that he ordered plaintiff to stop resisting, in order to justify the use of

15   force.  (Id. at 191.)

16          The undersigned finds that defendant Martincek's question to defendant Defazio

17   regarding whether he, or anyone else, told plaintiff to stop resisting is not persuasive evidence

18   that defendant Martincek attempted to "coach" defendant Defazio in an attempt to cover-up the

19   alleged excessive force.

20          Plaintiff's exhibit PP-10 is a report prepared by Staggs-Boatright, who plaintiff describes

21   as a psychiatric technician, describing the injuries allegedly suffered by defendant Defazio during

22   the incident.  (Id. at 193-94.)  The report states that defendant Defazio described the

23   circumstances leading to his injuries as, "Inmate Owens headbutted me in the upper chest area

24   and I have soreness on my left hand from trying to subdue inmate Owens."  (Id. at 194.)  The

25   report indicates that defendant Defazio reported pain in his chest.  (Id.)  It is not clear to the

26   undersigned how exhibit PP-10 demonstrates that defendant Martincek allowed defendant

27   DeFazio to change his story in order to cover-up the alleged excessive force.

28   ////

1    Plaintiff's exhibit PP-13 contains two questions from defendant Martincek to defendant

2    Brady regarding the incident.  (Id. at 200.)  Plaintiff's exhibit PP-14 contains defendant Brady's

3    response to these questions.  (Id. at 202.)  Plaintiff's exhibit PP-17 contains four questions from

4    defendant Martincek to defendant Lebeck regarding the incident.  (Id. at 208.)  Plaintiff's exhibit

5    PP-18 contains defendant Lebeck's response to these questions.  (Id. at 210.)  Plaintiff's exhibit

6    PP-21 contains two questions from defendant Martincek to defendant Burke regarding the

7    incident.  (Id. at 217.)  Plaintiff's exhibit PP-20 contains defendant Burke's response to these

8    questions.  (Id. at 215.)

9    Plaintiff argues that exhibits PP-13, PP-14, PP-17, PP-18, PP-20 and PP-21 demonstrate

10   that  Martincek allowed defendants Brady, Lebeck and Burke to change their reports to correct

11   faults within their original reports through "guiding questions."

12   After reviewing these exhibits, it is unclear to the undersigned how the questions asked by

13   defendant Martincek sought to "guide" defendants Brady, Lebeck and Burke in an attempt to

14   cover-up the alleged excessive force.  The undersigned does not find that these exhibits are

15   persuasive evidence of defendant Martincek attempting to cover-up the alleged excessive force.

16   *Plaintiff's Undisputed Fact No. 39*

17   Citing exhibits PP-1, PP-2 and JJ, plaintiff argues that the record shows that defendant

18   Martincek provided false information in his incident report that he knew was untrue.  (ECF No.

19   193-2 at 5.)

20   Defendants object that undisputed fact no. 39 is immaterial as this fact is outside the scope

21   of the complaint.  (ECF No. 217-1 at 15.)  This objection is overruled.  Defendants also object

22   that undisputed fact no. 39 contains plaintiff's self-serving testimony that lacks foundation and

23   personal knowledge.  (Id. at 16.)  Defendants argue that plaintiff failed to meet his burden of

24   establishing this as an undisputed fact.  (Id.)

25   As discussed above, PP-1 is titled, "Crime/Incident Report, Part A-Cover Sheet."  (ECF

26   No. 200 at 172.)  This cover-sheet state that plaintiff committed battery on a peace officer.  (Id.)

27   Exhibit PP-2 is titled, "Crime-Incident Report, Part A1-Supplement," page 2 of 8, prepared by

28   defendant Martincek.  (Id. at 174.)  This report contains a "synopsis/summary of incident."  (Id.)

1    This report contains a description of the incident and describes plaintiff's injuries, as reported by

2    defendant Okoroike.  (Id.)

3         The undersigned finds that plaintiff's claims that exhibits PP-1 and PP-2 demonstrate that

4    defendant Martincek knowingly provided false information is speculative and unsupported.

5         Plaintiff's exhibit JJ is plaintiff's declaration.  (Id. at 102-07.)  Plaintiff's declaration does

6    not directly address his claims against defendant Martincek.

7         *Plaintiff's Undisputed Fact No. 40*

8         Citing exhibits PP-5, PP-11, JJ and BBB, plaintiff argues that defendant Martincek did not

9    have all staff that were mentioned by defendants as being involved in the incident write reports, in

10   violation of prison policy.  (ECF No. 193-2 at 5.)

11        Defendants object that undisputed fact no. 40 is immaterial as this fact is outside the scope

12   of the complaint.  (ECF No. 217-1 at 16.)  This objection is overruled.  Defendants also object

13   that undisputed fact no. 40 contains plaintiff's self-serving testimony that lacks foundation and

14   personal knowledge.  (Id.)  Defendants argue that plaintiff failed to meet his burden of

15   establishing this as an undisputed fact.  (Id.)

16        Plaintiff's exhibit BBB are defendants' response to plaintiff's request for admissions.

17   (ECF No. 200 at 355-64.)  In relevant part, plaintiff argues that in these responses, defendants

18   admit that prison policy requires that all staff who either use or observe force used are required to

19   submit a report.  (Id.)  The undersigned observes that California Code of Regulations title 15,

20   § 3268.1(a)(1) provides that any employee who uses force or observes a staff use of force shall

21   report it to a supervisor as soon as practical and submit the appropriate documentation.

22        Plaintiff's exhibit PP-5 is a holding cell log dated February 18, 2015 for plaintiff.  (ECF

23   No. 200 at 184.)  This document states that plaintiff was placed in the holding cell by defendants

24   Drake and Murillo for plaintiff to receive a 7219 medical evaluation.  (Id.)  This report states,

25   "holding cell searched by:  Bettencourt."  (Id.)  The document is signed by defendant Blessing.

26   (Id.)  Plaintiff argues that exhibit PP-5 shows that defendant Bettencourt was involved in the

27   incident, and that defendant Martincek failed to ask defendant Bettencourt to write a report.  (Id.

28   at 183.)

1     Plaintiff's exhibit PP-5 indicates that defendant Bettencourt searched the holding cell

2  plaintiff was placed in after the incident.  This exhibit does not directly implicate defendant

3  Bettencourt in the alleged excessive force incident, although it suggests defendant Bettencourt

4  may have been in the area where the incidents of excessive force occurred on or around the time

5  they occurred, contrary to the arguments made by defendants in the summary judgment motion.

6  In any event, because this document only shows that defendant Bettencourt searched the holding

7  cell plaintiff waited in for his medical evaluation, the undersigned does not find that this

8  document supports plaintiff's claim that defendant Martincek knew of defendant Bettencourt's

9  involvement in the alleged excessive force and failed to order him to prepare a report.

10     Plaintiff's exhibit PP-11 is page 1 of 2 of a report prepared by defendant Brady titled,

11  "Crime/Incident Report, Part C-Staff Report."  (Id. at 196.)  The report describes the

12  crime/incident as, "battery on a peace officer resulting in the use of force (physical)."  (Id.)  This

13  report lists defendant Bettencourt as being a witness to the incident.  (Id.)  Plaintiff argues that

14  defendant Martincek failed to require defendant Bettencourt to write a report as required by

15  California Code of Regulations, title 15, § 3268.1 (a)(1).   (Id. at 195.)

16     Defendant Brady's report describes defendant Bettencourt's involvement in the incident

17  as follows:  "The reason for removing Owens from his cell was Owens gassed Officer P.

18  Bettencourt, and follow up search was needed."  (Id.)

19     Although defendant Brady identifies defendant Bettencourt as a witness, defendant

20  Brady's report does not demonstrate that defendant Bettencourt witnessed the use of force

21  incident.  Instead, defendant Brady apparently listed defendant Bettencourt as a witness because

22  plaintiff was accused of gassing defendant Bettencourt.  For these reasons, the undersigned does

23  not find that plaintiff's exhibit P-11 is persuasive evidence of defendant Martincek's alleged

24  cover-up of the excessive force.

25     Plaintiff's exhibit JJ is plaintiff's declaration.  (Id. at 102-07.)  Plaintiff's declaration does

26  not directly address his claims against defendant Martincek.

27  ////

28  ////

1          *Plaintiff's Undisputed Fact No. 41*

2          Citing exhibits PP-1, PP-2, PP-3 and PP-4, plaintiff argues that defendant Martincek

3  personally participated in the creation of the false incident report and assisted other defendants in

4  violating plaintiff's constitutional rights.  (ECF No. 193-2 at 5.)

5          Defendants object that undisputed fact no. 41 is immaterial as this fact is outside the scope

6  of the complaint.  (ECF No. 217-1 at 17.)  This objection is overruled.  Defendants also object

7  that undisputed fact no. 40 contains plaintiff's self-serving testimony that lacks foundation and

8  personal knowledge.  (Id.)  Defendants argue that plaintiff failed to meet his burden of

9  establishing this as an undisputed fact.  (Id.)

10         As discussed above, plaintiff's exhibit PP-1 is the "Crime/Incident Report, Part A-Cover

11  Sheet," prepared by defendant Martincek.  (Id. at 172.)  Plaintiff's exhibit PP-2 is a page from the

12  "Crime/Incident Report, Part A-1, Supplement," prepared by defendant Martincek.  (Id. at 174.)

13  This document contains a summary of the incident and a description of plaintiff's injuries, taken

14  from defendant Okoroike's report.  (Id.)

15         Plaintiff's claim that exhibits PP-1 and PP-2 show that defendant Martincek created false

16  reports is conclusory and unsupported.

17         Plaintiff's Exhibit PP-3 is a page from the, "Crime/Incident Report, Part B1-Inmate."  (Id.

18  at 176.)  It is unclear who prepared this report.  This document describes plaintiff's injuries.  (Id.)

19  The description of plaintiff's injuries in this document is consistent with defendant Okoroike's

20  report.  (Id.)  Plaintiff's claim that this document demonstrates that defendant Martincek created

21  false reports is conclusory and speculative.

22         Finally, plaintiff's exhibit PP-4 is a page from the, "Crime/Incident Report, Part B2-

23  Staff."  (Id. at 178-82.)  This document shows that defendants Martincek, Blessing, Mercado,

24  Burke, Drake, Lebeck, Murillo and Okoroike  reported no injuries as a result of the incident.  (Id.)

25  The report shows that defendant Defazio reported an injured left hand and pain in the chest area.

26  (Id. at 180.)

27         Plaintiff argues that exhibit PP-4 demonstrates that defendant Martincek knew that

28  plaintiff did not commit the acts alleged by the other defendants because the only "victim"

1    identified in this document is defendant Defazio.  (Id. at 177.)  Plaintiff argues that defendant

2    Defazio's alleged injuries show that defendant Defazio did not suffer an actual injury.  (Id.)

3          Plaintiff's argument that exhibit PP-4 demonstrates that defendant Martincek knew that

4    plaintiff did not commit the acts alleged by the other defendants is conclusory and unsupported.

5          *Plaintiff's Undisputed Fact No. 42*

6          Citing exhibit OO, plaintiff argues that the record shows that defendant Martincek knew

7    of prison policy violations and failed to prevent the violations.  (ECF No. 193-2 at 6.)  Plaintiff's

8    exhibit OO consists of copies of various sections from the CDCR Operations Manual.  (ECF No.

9    200 at 150-69.)  These regulations are not direct evidence of defendant Martincek's alleged

10   failure to follow prison policies in an attempt to cover-up the excessive force.

11         *Plaintiff's Undisputed Fact No. 43*

12         Citing exhibits B, L and PP-1, plaintiff argues that the record shows that there are some

13   facts to support the existence of a conspiracy among that defendants and that all defendants

14   conspired to violate plaintiff's rights.  (ECF No. 193-2 at 6.)

15         Defendants object that undisputed fact no. 49 is immaterial as this fact is outside the scope

16   of the complaint.  (ECF No. 217-1 at 17.)  This objection is overruled.  Defendants object that

17   plaintiff's undisputed fact no. 43 is an unsupported legal conclusion, speculative and

18   argumentative.  (Id.)  Defendants object that plaintiff's self-serving testimony lacks foundation

19   and personal knowledge.  (Id.)

20         As discussed above, plaintiff's exhibit PP-1 is the "Crime/Incident Report, Part A-Cover

21   Sheet," prepared by defendant Martincek.  (Id. at 172.)  Plaintiff's exhibit B is the form CDCR

22   7219 prepared by defendant Okoroike describing plaintiff's injuries  (Id. at 14.)  Plaintiff's

23   exhibit L is the February 21, 2015 report prepared by Nurse Valera.  (Id. at 37.)

24         Plaintiff's claim that exhibits PP-1, L and B demonstrate that defendant Martincek

25   conspired to cover-up the alleged excessive force is an unsupported legal conclusion, speculative

26   and not based on personal knowledge.

27   ////

28   ////

*Plaintiff's Undisputed Fact No. 44*

Citing exhibit JJ, plaintiff argues that the record reflects that there are "several assertions on the record that defendants conspired and acted in concert." (ECF No. 193-2 at 6.) Defendants object to plaintiff's undisputed fact no. 44. (ECF No. 217-1 at 18.)

Plaintiff's exhibit JJ is plaintiff's declaration. (ECF No. 200 at 101-07.) This declaration does not specifically discuss plaintiff's claims against defendant Martincek. Accordingly, plaintiff's undisputed fact no. 44 is an unsupported legal conclusion.

*Plaintiff's Undisputed Fact no. 45*

Citing exhibits B, PP-1 and PP-2, plaintiff argues that the record shows that "some overt act was done in furtherance of the defendants' conspiracy, and that defendants' actions were obviously intended to deprive plaintiff of his rights." (ECF No. 193-2 at 6.)

Defendants object that undisputed fact no. 45 is immaterial as this fact is outside the scope of the complaint. (ECF No. 217-1 at 18.) This objection is overruled. Defendants also object that undisputed fact no. 45 is an unsupported legal conclusion, speculative and argumentative. (Id.) Defendants also object that plaintiff's self-serving testimony lacks foundation. (Id.)

As discussed above, plaintiff's exhibit PP-1 is the "Crime/Incident Report, Part A-Cover Sheet," prepared by defendant Martincek. (ECF No. 200 at 172.) Plaintiff's exhibit PP-2, the incident summary, states (in relevant part) that defendant Defazio struck plaintiff in the facial area. (Id. at 174.) Plaintiff's exhibit B is the form CDCR 7219 prepared by defendant Okoroike describing plaintiff's injuries (Id. at 14.)

To the extent plaintiff claims that exhibits PP-1, PP-2 and B demonstrate overt acts by defendant Martincek in furtherance of the alleged conspiracy, this claim is an unsupported legal conclusion and speculative.

*Plaintiff's Undisputed Fact No. 46*

Citing exhibit JJ, plaintiff argues that the record shows that "defendants" deprived him of his rights secured by the Constitution and other laws of the United States. (ECF No. 193-2 at 7.)

Defendants object that undisputed fact no. 46 is immaterial because there are no allegations of violations of "other laws of the United States." (ECF No. 217-1 at 18.) This

1    objection has merit and is granted.

2           Defendants also object that undisputed fact no. 46 is an unsupported legal conclusion,

3    speculative and argumentative.  (Id.)  Defendants object that plaintiff's self-serving testimony

4    lacks foundation and personal knowledge.  (Id.)

5           Plaintiff's exhibit JJ is plaintiff's declaration.  (ECF No. 200 at 101-07.)  This declaration

6    does not specifically discuss plaintiff's claims against defendant Martincek.  Accordingly,

7    plaintiff's undisputed fact no. 46 is an unsupported legal conclusion.

8           *Plaintiff's Undisputed Fact No. 47*

9           Citing exhibits L, JJ and PP-2, plaintiff argues that the record reflects that defendants

10   acted with intentions that harm would result from their actions to plaintiff, and without regard to

11   the consequences that would follow their actions.  (ECF No. 193-2 at 7.)

12          Defendants object that undisputed fact no. 47 is vague as to which defendants and actions

13   plaintiff is referring.  (ECF No. 217-1 at 19.)  Defendants further object that undisputed fact no.

14   47 is an unsupported legal conclusion, speculative and argumentative.  (Id.)  Defendants also

15   object that plaintiff's self-serving testimony lacks foundation and personal knowledge.  (Id.)

16          Plaintiff's exhibit JJ is plaintiff's declaration.  (ECF No. 200 at 101-07.)  This declaration

17   does not specifically discuss plaintiff's claims against defendant Martincek.  Plaintiff's exhibit L

18   is the February 21, 2015 report prepared by Nurse Valera documenting plaintiff's injuries.  (Id. at

19   37.)  Plaintiff's exhibit PP-2 is the incident summary prepared by defendant Martincek.  (Id. at

20   174.)

21          Assuming that undisputed fact no. 47 addresses defendant Martincek, defendants'

22   objection that undisputed fact no. 47 is vague as to which actions plaintiff refers has merit.

23   Undisputed fact no. 47 is also speculative.

24          *Plaintiff's Undisputed Fact No. 48*

25          Citing exhibit JJ, plaintiff argues that the record shows that defendants were "fully aware

26   that their conduct was unlawful and that it could and would cause plaintiff damages.  Yet they

27   each disregarded this awareness and instead acted maliciously and sadistically with the hopes of

28   getting away with their crimes."  (ECF No. 193-2 at 7.)

66

1    Defendants object that undisputed fact no. 48 is vague as to which defendants and what

2    conduct plaintiff is referring.  (ECF. No. 217-1 at 19.)  Defendants object that undisputed fact is

3    an unsupported legal conclusion, speculative and argumentative.  (Id.)  Defendants object that

4    plaintiff's self-serving testimony lacks foundation and personal knowledge.  (Id.)

5    Plaintiff's exhibit JJ is plaintiff's declaration.  (ECF No. 200 at 101-07.)  This declaration

6    does not specifically discuss plaintiff's claims against defendant Martincek.

7    Assuming that undisputed fact no. 47 addresses defendant Martincek, defendants'

8    objection that undisputed fact no. 47 is vague as to which actions plaintiff refers has merit.  The

9    undersigned also finds that undisputed fact no. 47 is an unsupportive legal conclusion and

10   speculative.

11   *Plaintiff's Undisputed Fact No. 49*

12   Citing exhibits ZZ, OO, PP-1 and PP-2, plaintiff argues that the record shows that

13   defendant Martincek did not properly categorize the other defendants' strikes to plaintiff's face,

14   head and eyes as lethal target areas.  (ECF No. 193-2 at 7.)

15   Defendants object that undisputed fact no. 49 is immaterial as this fact is outside the scope

16   of the complaint.  (ECF No. 217-1 at 20.)  This objection is overruled.  Defendants also object

17   that undisputed fact no. 49 contains plaintiff's self-serving testimony that lacks foundation and

18   personal knowledge.  (Id.)  Defendants argue that plaintiff failed to meet his burden of

19   establishing this as an undisputed fact.  (Id.)

20   Plaintiff's exhibit OO consists of copies of various sections from the CDCR Operations

21   Manual.  (ECF No. 200 at 150-69.)

22   Plaintiff's Exhibit PP-1, the Crime/Incident Report Cover Sheet, describes the force used

23   against plaintiff as four punches, although it does not identify where on plaintiff the punches

24   landed.  (Id. at 172.)  Plaintiff's exhibit PP-2, the incident summary prepared by defendant

25   Martincek, states (in relevant part) that defendant Defazio struck plaintiff in the facial area.  (Id.

26   at 174.)

27   Plaintiff's exhibit ZZ are 14 pages from the CDCR Department Operations Manual.  (Id.

28   at 332-47.)  Plaintiff contends that § 51020.19, contained within exhibit ZZ, shows that punches

67

1    to the head are considered lethal target areas.  (Id. at 330.)  The undersigned cannot locate

2    § 51020.19 in plaintiff's exhibit ZZ.

3        Having reviewed these exhibits, the undersigned cannot determine the relevance of

4    defendant Martincek's alleged failure to classify defendant Defazio's strikes to plaintiff's face as

5    strikes to a lethal area to plaintiff's claim against defendant Martincek.

6        *Plaintiff's Undisputed Fact No. 53*

7        Citing exhibits ZZ, PP-2 and PP-6, plaintiff argues that if "defendant did not actually

8    sustain an injury from his use of force on plaintiff, because he had, defendant Martincek would

9    have been required to complete an 'Occupational Injury or Illness Form (SCIF-3067)' which was

10   not completed by him."  (ECF No. 193-2 at 8.)

11       Defendants object to plaintiff's undisputed fact no. 53 as vague as to which defendant

12   plaintiff is referring, and presumes as true facts that have not been established as true.  (ECF No.

13   217-1 at 21.)  To the extent plaintiff is referring to the injuries sustained by defendant Defazio,

14   defendants dispute plaintiff's undisputed fact by citing their the CDCR 7219 form indicating that

15   defendant Defazio sustained injuries to his chest and hand.  (Id.)

16       Plaintiff argues that the CDCR Department Operations Manual, contained in exhibit ZZ,

17   contained the requirement for defendant Martincek to prepare an Occupational Injury or Illness

18   form, i.e., SCIF-3067.  (ECF No. 200 at 331).  The undersigned cannot locate this document .

19   However, a SCIF-3067 appears to be a form required in order to obtain worker's compensation

20   benefits.

21       The undersigned finds that Martincek's alleged failure to complete a SCIF-3067 form is

22   not persuasive evidence of his attempt to cover-up the alleged excessive force.

23       *Conclusion*

24       After considering the undisputed facts and exhibits submitted in support of the undisputed

25   facts, the undersigned finds that plaintiff has not met his initial summary judgment burden of

26   demonstrating the absence of genuine issues of material facts as to his claim that defendant

27   Marticek conspired to cover-up the alleged excessive force.  For these reasons, plaintiff's

28   summary judgment motion as to defendant Martincek should be denied.

1    D. <u>Plaintiff's Summary Judgment Motion Addressing Claims Against Defendants</u>

2       <u>DeFazio, Lebeck, Burke, Brady, Blessing, Rashev, Guffee, Matthews, Bettencourt,</u>

3       <u>Martinez, Drake and Murillo (ECF No. 203)</u>

4        In this motion for summary judgment, plaintiff relies largely on the same evidence cited in

5    his opposition to defendants' motion for summary judgment as to these defendants.  (<u>See</u> ECF

6    No. 203.)  In opposition, defendants cite evidence submitted in support of their summary

7    judgment motion.  (<u>See</u> ECF No. 217-1 at 28-80.)  The undersigned has again reviewed the

8    evidence cited by plaintiff and defendants.

9        As discussed above, the undersigned recommends that defendants' summary judgment

10   motion as to defendants Defazio, Lebeck, Burke, Brady, Blessing, Rashev, Guffee, Matthews,

11   Bettencourt, Martinez, Drake and Murillo be denied based on disputed material facts.  For the

12   same reasons in the section above addressing defendants' summary judgment motion, the

13   undersigned finds that plaintiff is not entitled to summary judgment as to defendants Defazio,

14   Lebeck, Burke, Brady, Blessing, Rashev, Guffee, Matthews, Bettencourt, Martinez, Drake and

15   Murillo.  Accordingly, the undersigned recommends that plaintiff's summary judgment motion as

16   to these defendants be denied.

17       Accordingly, IT IS HEREBY RECOMMENDED that:

18   1.   Defendants' summary judgment motion (ECF No. 216) be granted as to all claims

19        against defendant Okoroike and Eldridge and plaintiff's claim alleging that defendant

20        Schultz denied him due process by finding him guilty of a rules violation report based

21        on insufficient evidence; defendants' summary judgment motion should be denied in

22        all other respects;

23   2.   Plaintiff's motion for partial summary judgment as to defendant Schultz (ECF No.

24        181) be granted as to the claim that defendant Schultz violated plaintiff's right to due

25        process when he denied plaintiff's request to present documentary evidence at the

26        disciplinary hearing; plaintiff's motion for partial summary judgment as to defendants

27        Schultz and Eldridge (ECF No. 181) be denied in all other respects;

28   3.   Plaintiff's motions for partial summary judgment (ECF Nos. 182 193, 203) be denied.

1        These findings and recommendations are submitted to the United States District Judge

2   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3   after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

6   objections shall be filed and served within fourteen days after service of the objections.  The

7   parties are advised that failure to file objections within the specified time may waive the right to

8   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9   Dated:  March 3, 2021

10

11                                                         KENDALL J. NEWMAN

12  Owen2750.sj(2)                                         UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28